UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY,

        Plaintiff,

vs.

LN APARTMENTS, LLC, a Florida limited liability company, PORTRAIT CONSTRUCTION OF FLORIDA, INC., a Florida corporation, ARMSTRONG AIR & ELECTRIC, INC., a Florida corporation, BARRIOS ROOFING & WATERPROOFING, LLC, a Florida limited liability company, BFARR EXTERIORS, LLC, a Florida limited liability company, CEMPLEX GROUP FLORIDA, LLC, a Florida limited liability company, EXPRESS PLUMBING, INC., a Florida corporation, FLORIDA CONSTRUCTION & FRAMING, LLC, a Florida limited liability company, SOUSA CABINETS, INC., a Florida corporation, and KP'S CONTRACT FLOORING, LLC, a Florida limited liability company

        Defendants.
_____/

Case No. 6:24-cv-1416-JSS-DCI

## AMENDED COMPLAINT FOR DECLARATORY RELIEF

CRUM & FORSTER SPECIALTY INSURANCE COMPANY ("CFSIC") sues LN APARTMENTS, LLC ("LN" or the "Owner"), PORTRAIT CONSTRUCTION OF FLORIDA, INC. ("Portrait"), ARMSTRONG AIR & ELECTRIC, INC. ("Armstrong"), BARRIOS ROOFING & WATERPROOFING, LLC ("Barrios"), BFARR EXTERIORS, LLC ("BFarr"), CEMPLEX GROUP

1

FLORIDA, LLC ("Cemplex"), EXPRESS PLUMBING, INC. ("Express"), FLORIDA CONSTRUCTION & FRAMING, LLC ("FCF"), SOUSA CABINETS, INC. ("Sousa"), and KP'S CONTRACT FLOORING, LLC ("KP") (sometimes collectively referred to herein as "Defendants" or "Insureds"), and states:

## NATURE OF ACTION

1.     This is an action for declaratory relief under 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy by and between the parties, wherein CFSIC seeks a judicial determination of its rights and obligations to Defendants under a project-specific commercial general liability policy and form-following excess liability policy in an Owner Controlled Insurance Program.

## THE PARTIES

2.     CFSIC is a Delaware corporation with a statutory home office in Delaware and its principal place of business in Morristown, New Jersey. CFSIC is authorized as a surplus lines insurer in the state of Florida and issued the surplus lines insurance policies at issue in this action under which all Defendants are Named Insureds.

3.     LN is a Florida limited liability company. All of its members and managers are citizens of Florida, and its principal place of business is in Boca Raton, Florida.

4.     Portrait is a Florida corporation with its principal place of business in Altamonte Springs, Florida

5. Armstrong is a Florida corporation with its principal place of business in Winter Garden, Florida.

6. Barrios is a Florida limited liability company. All of its members and managers are citizens of Florida, and its principal place of business is in Ft. Myers, Florida.

7. BFarr is a Florida limited liability company. All of its members and managers are citizens of Florida, and its principal place of business is in Winter Park, Florida.

8. Cemplex is a Florida limited liability company. All of its members and managers are citizens of Florida, and its principal place of business is in Largo, Florida.

9. Express Plumbing, Inc. is a Florida corporation with its principal place of business in Lake City, Florida.

10. FCF is a Florida limited liability company. All of its members and managers are citizens of Florida, and its principal place of business is in Clearwater, Florida.

11. Sousa is a Florida corporation with its principal place of business in Orlando, Florida.

12. KP is a Florida limited liability company. All of its members and managers are citizens of Florida, and its principal place of business is in Sanford, Florida.

**JURISDICTION AND VENUE**

13. Jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

14. Venue is proper in this district because a substantial part of the events giving rise to the claim occurred in this district. 28 U.S.C. § 1391(a)(2). Specifically, the underlying lawsuit is venued in this district, the underlying claims accrued in this district, and the construction project from which the claims arise is located in this district.

15. All conditions precedent have occurred, been performed, or have been waived.

## FACTS

### A.  The Project

16. This action relates to an in-progress, five-story, 260-unit rental apartment project with an attached 6-story garage located at 19465 Boggy Creek Road, Orlando, Florida 32832, known as Futura at Nona Cove Apartments (the "Project"). The Project is Phase I of a larger, three-phase construction project.

17. Construction of the Project commenced in November 2020 under a contract between LN, as the owner, and Portrait, as the general contractor.

### B.  The Underlying Lawsuit

18. On March 11, 2023, Portrait filed a lawsuit against the Owner in Orange County, Florida Circuit Court styled, *Portrait Construction of Florida, Inc. v. LN*

*Apartments, LLC*, Case No. 2023-CA-008213-O, seeking payment for work performed under the construction contract (the "Underlying Lawsuit").

19. On April 29, 2024, Portrait filed its Second Amended Complaint in which Portrait alleges that, on April 10, 2023, the Owner wrongfully terminated Portrait as the general contractor on the "in-progress construction" Project when it was "approximately 92% complete" and that the Project has "not reached the stage of completion under Section 558.003." (A true and correct copy of Portrait's Second Amended Complaint is attached hereto as **Exhibit A**.)

20. On August 30 2023, the Owner filed an Answer and Affirmative Defenses, and Amended Counterclaim against Portrait, in which it asserts counts against Portrait for Breach of Contract (Count I), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II), Liquidated Damages (Count III), Fraudulent Lien (Count IV), Violation of Fla. Stat. § 553.84 (Count V), and Violation of Florida Deceptive and Unfair Trade Practices Act (Count VI). (A true and correct copy of the Answer and Affirmative Defenses, and Amended Counterclaim is attached hereto as **Exhibit B**.) The Amended Counterclaim seeks damages for, among other things, the costs of completing the project and repairing or replacing allegedly faulty work.

21. On May 15, 2024, the Owner filed an Answer and Affirmative Defenses to Portrait's Second Amended Complaint. In that pleading the Owner asserts in a footnote that "LN expressly preserves and re-states its First Amended Counterclaim as previously asserted in LN's Answer and Affirmative Defenses, and Counterclaim, filed by LN on August 30, 2023."

22. The Owner's count for breach of contract alleges various contractual breaches and other contract-related malfeasance by Portrait, including that Portrait installed "damaged, defective, non-conforming product / work or material, including but not limited to . . . plumbing and HVAC system, roof and structure systems, window and door waterproofing, exterior stucco and painting, cabinetry and countertops, balconies, and various other defective and non-compliant work."

23. In its count for Liquidated Damages, the Owner alleges that the parties' contract calls for daily liquidated damages if Portrait failed to achieve "Substantial Completion" by a pre-set deadline, which Portrait failed to meet. The Owner alleges that, as a result, liquidated damages "will continue to accrue and increase until [the Owner] is able to achieve the Project's Substantial Completion Deadline . . . using a replacement contractor." The Owner seeks liquidated damages in excess of $2 million.

24. The violation of Florida Building Code count references a June 14, 2023 expert report, which is attached as Exhibit "A" to the Amended Counterclaim. The report details a significant amount of incomplete work, states that the Project "is under construction" and is "approximately 80% complete," and chronicles various instances of allegedly shoddy or defective work in multiple building systems that does not comply with the contract or the Florida Building Code.

25. On April 24, 2024, Portrait filed a Third-Party Complaint asserting pass-through contractual claims and negligence claims related to non-conforming or defective work allegedly causing property damage against its subcontractors. On December 23, 2024, Portrait filed its Amended Third-Party Complaint. The Amended

6

Third-Party Complaint asserts claims against the following subcontractors: Armstrong Air (HVAC); Barrios (roofing); BFarr (exterior cladding); Cemplex (elevated concrete and gypcrete); Express (plumbing); FCF (framing and rough carpentry); Sousa (cabinetry); and KP (flooring) (collectively referred to below as the "Subcontractors"). (A true and correct copy of the Amended Third-Party Complaint is attached hereto as **Exhibit C**.)

## THE POLICIES

26.     The Project is insured under an Owner Controlled Insurance Program ("OCIP") in which CFSIC issued to the Owner, as the first named insured, commercial general liability policy number GLO-067512, effective from September 30, 2020 to August 31, 2024. (the "Primary Policy"). (A true and correct copy of the Primary Policy is attached hereto as **Exhibit D**.)

27.     The Primary Policy contains a Commercial General Liability Coverage Form (CG 00 01 04 13) (the "CGL Coverage Form"), which is amended by a "Construction Project Endorsement – OCIP/CCIP Version 8" endorsement (CFSIC-GL-2624A(07/2019) (the "OCIP Endorsement").

28.     As amended by the OCIP Endorsement, the insuring agreement in the CGL Coverage Form provides, in relevant part, as follows:

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.      Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. . . .

* * *

    **b.**    This insurance applies to 'bodily injury' and 'property damage' only if:

        **(1)**    The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

        **(2)**    The 'bodily injury' or 'property damage' occurs during the policy period, or during the Coverage Extension Periods as set forth under Paragraph **F.** of this endorsement; and

* * *

        **(4)**    The 'bodily injury' or 'property damage' occurs at the Project(s) or arises out of construction operations performed at the Project(s) shown and as described in the Project Schedule (hereafter referred to as the Project), and pursuant to a contract involving an owner controlled insurance program or a contractor controlled insurance program, whichever is applicable.

29.    The Primary Policy's CGL Coverage Form contains the following definitions relevant to the insuring agreement quoted above:

    **13.**    'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**17.** 'Property damage' means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the 'occurrence' that caused it. . . .

30. The OCIP Endorsement contains the following Project Schedule:

### Project Schedule

**Project Name:** Nona Cove

**Project Location:** Apartments Lot 1: 32-24-31-5148-01-000  19465 Boggy Creek Rd – leasing office/apartments 19467 Boggy Creek Rd - trash compactor/dumpster pad 19463 Boggy Creek Rd - illuminated monument sign; Storage / Retail Lot 3: 32-24-31-5148-03-000  14800 Narcoossee Rd - retail units 14804 Narcoossee Rd - transformer 14808 Narcoossee Rd - transformer 14812 Narcoossee Rd - storage building; Retail Lot 4 32-24-31-5148-04-000 Lot 5 32-24-31-5148-05-000 Lot 2 32-24-31-5148-02-000, Orlando, FL 32832

**Project Description:** Phase I – Apartments + Parking - Apartments 5 story wood frame – 260 units with 6 story parking garage(GC: Mark Portrait Construction); Phase II – Commercial/Retail Space - 28,000 square feet of commercial/retail space (GC: Mark Construction); Phase III – Self Storage Facility - 122,000 Square feet, four story, climate controlled building (GC: Park & Eleazer). All construction operations taking place within 1,000 feet of the project location that are directly related to the designated project, including staging areas within 1,000 feet.

31. The OCIP Endorsement further adds to the Primary Policy a coverage extension period, which in relevant part, states as follows:

    **F.** **Coverage Extension Period**

1. This insurance for the Project(s) is extended for an additional period of time with respect to liability for 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.' This Coverage Extension Period will commence at the earlier of:

   a. the date that 'your work' is 'completed'; or

   b. the end of the policy period shown in the Declarations

2. This insurance for the Project(s) is extended for an additional period of time for 'bodily injury' or 'property damage' not included in the 'products-completed operations hazard' arising out of 'repair work' performed after the Project(s) is 'completed,' provided such 'repair work' was performed:

   a. By a licensed contractor(s) 'enrolled' during the policy period; and

   b. Pursuant to a statute or express warranty pertaining to such 'repair work.'

   This Coverage Extension Period will commence at the earlier of:

   (1) the date that 'your work' is 'completed'; or

   (2) the end of the policy period shown in the Declarations.

   Any damages we pay for 'bodily injury' or 'property damage' arising out of such 'repair work' will reduce and be subject to the Products-Completed Operations Aggregate Limit rather than the General Aggregate Limit.

3. The Coverage Extension Periods set forth under subparagraphs **F. 1.** and **F. 2.** above will be equal to the time period imposed under the statute of repose or statute of limitations, whichever is applicable, for any claim or

'suit' for such 'bodily injury' or 'property damage' as provided by the controlling law of the jurisdiction where the Project(s) is located.

32. The OCIP Endorsement amends the "Product-Completed Operations Hazard" definition in the CGL Coverage Form and defines the term "completed6 " as follows:

> **H.** The following definitions are added to **SECTION V – DEFINITIONS:**
>
>> **1.** Paragraph **a.** of definition **16.** 'Products-completed operations hazard' is deleted and replaced with the following:
>>
>>> **16.** 'Products-completed operations hazard':
>>>
>>>> **a.** Includes all 'bodily injury' and 'property damage' arising out of 'your product' or 'your work' except:
>>>>
>>>>> **(1)** Products that are still in your physical possession; or
>>>>>
>>>>> **(2)** Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:
>>>>>
>>>>>> **(a)** Completion and acceptance of the entire Project(s) by all parties designated in its construction agreement;
>>>>>>
>>>>>> **(b)** When all of the work to be done at a location shown in the **Project Schedule** has been completed if the Project(s) calls for work at more than one location;

11

>> **(c)** When that part of the work done at the Project(s) has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same Project(s).
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

> **2.** The following definitions are added:
>
> **a.** 'Completed' means deemed completed as set forth under subparagraph **a. (2)** of Definition **16.** 'products-completed operations hazard' (in paragraph **H. 1.** above).

33. Section B. of the OCIP Endorsement adds a course of construction exclusion to the CGL Coverage Form, which states as follows:

> This insurance does not apply to 'property damage' to the Project(s) or any part of the Project(s) that occurs during the course of construction. The Project(s) or any part of the Project(s) will be deemed to be within the course of construction until the Project(s) is 'completed.'

34. Also as part of the OCIP, CFSIC issued to the Owner, as the First Named Insured, excess liability insurance policy number SEO-110003, effective from September 30, 2020 through August 31, 2024 (the "Excess Policy"). (A true and correct copy of the Excess Policy is attached hereto as **Exhibit E**.)

35. The Excess Policy applies in excess of all underlying insurance, including the Primary Policy, which is "controlling underlying insurance." The insuring agreement in the Excess Policy states, in relevant part, that it follows "the same

provisions, exclusions, conditions and limitations that are contained in the" Primary Policy. The Excess Policy provides no duty to defend until the applicable limits of the underlying insurance have "been paid in full."

36. Upon information and belief, because the Owner's Amended Counterclaim and Portrait's Amended Third-Party Complaint were tendered to CFSIC, Portrait and the Subcontractors believe there is coverage under the Primary Policy.

37. CFSIC is defending Portrait under the Primary Policy against the Owner's Amended Counterclaim and is defending the Subcontractors against Portrait's Amended Third-Party Complaint, all subject to complete reservations of rights.

38. CFSIC has incurred and will continue to incur expenses associated with the investigation, defense, and handling of the claims.

39. All conditions precedent to bringing this action have been performed or otherwise waived.

## CLAIM FOR DECLARATORY JUDGMENT

40. A justiciable controversy exists between CFSIC and the Defendants about whether the Primary and Excess policies provide coverage for the claims alleged against the Defendants in the Underlying Lawsuit.

41. CFSIC thus seeks the Court's declaration of the parties' rights and duties under the policies under 28 U.S.C. § 2201.

## COUNT I – NO COVERAGE UNDER THE
## COURSE OF CONSTRUCTION EXCLUSION

42. CFSIC re-alleges paragraphs 1 through 39 as if fully set forth herein.

43. Because the Project is not "completed," as defined in the Primary Policy, any claims for "property damage" to the Project or any part of it contained in the Owner's Amended Counterclaim and Portrait's Amended Third-Party Complaint are excluded from coverage under the Primary Policy's course of construction exclusion.

44. As a result, CFSIC has no duty to defend or indemnify the Defendants against claims for "property damage" or potential "property damage" made in the Underlying Lawsuit.

## COUNT II – NO PROPERTY DAMAGE CAUSED BY AN OCCURRENCE

45. CFSIC re-alleges paragraphs 1 through 42 as if fully set forth herein.

46. All remaining claims in Owner's Amended Counterclaim and Portrait's Amended Third-Party Complaint in the Underlying Lawsuit are claims for purely contractual or economic losses that do not constitute claims for "property damage" caused by an "occurrence," as those terms are defined in the Primary Policy, and are thus not within the policies' insuring agreements.

47. CFSIC therefore has no duty to defend or indemnify any of the Defendants against any claims alleged against them in the Underlying Lawsuit.

## RELIEF SOUGHT

**WHEREFORE**, CFSIC respectfully requests the following:

a. That the Court take jurisdiction and adjudicate the rights of the parties under the Primary and Excess Policies;

b. That the Court declare that CFSIC has no obligation to defend any of the Defendants in this action in the Underlying Lawsuit under the Primary or Excess Policies;

c. That, if the Court determines that CFSIC has no duty to defend, it also declare that CFSIC has no duty to indemnify any of the Defendants in this action in the Underlying Lawsuit under either of the policies; and

d. That the Court award CFSIC all costs incurred to prosecute this action, as well as any other relief the Court deems just, equitable, and proper.

DATED: April 15, 2025.                    Respectfully submitted,

**KENNEDYS CMK LLP**
*Counsel for Crum & Forster Specialty Insurance Company*
1111 Brickell Avenue, Suite 1300
Miami, FL 33131
Tel: (305) 371-1111
Fax: (305) 374-8066

*/s/ Spencer R. Booth*
**JORGE A. MAZA**
Fla. Bar No. 94882
Email: jorge.maza@kennedyslaw.com
Secondary: jamservice@kennedyslaw.com
**HOLLY S. HARVEY**
Fla. Bar No. 970190
Email: holly.harvey@kennedyslaw.com
**SPENCER R. BOOTH**
Fla. Bar No. 1017750
Email: spencer.booth@kennedyslaw.com