# EXHIBIT C

# IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
## IN AND FOR ORANGE COUNTY, FLORIDA

CASE NUMBER: 2023-CA-8213-O,
Consolidated W/ 2023-CA-15429;
2024-CA-3146-O

DIVISION 43 - BUSINESS COURT

PORTRAIT CONSTRUCTION OF FLORIDA,
INC. f/k/a MARK BARON CONSTRUCTION,
INC. d/b/a MARK PORTRAIT CONSTRUCTION,
a Florida corporation,

        Plaintiff/Counter-Defendant

vs.

LN APARTMENTS, LLC, a Florida limited
liability company,

        Defendant/Counter-Plaintiff,

CHARLAN BROCK & ASSOCIATES, INC.,
a Florida corporation,

        Defendant,

_____/

LN APARTMENTS, LLC, a Florida limited
liability company,

        Third-Party Plaintiff,

vs.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA, et al.,

        Third-Party Defendants.

> **PORTRAIT CONSTRUCTION OF FLORIDA, INC.'S FIRST AMENDED THIRD-PARTY COMPLAINT**

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

PORTRAIT CONSTRUCTION OF FLORIDA,
INC., a Florida corporation,

     Third-Party Plaintiff,

vs.

ARMSTRONG AIR & ELECTRIC, INC f/k/a
ARMSTRONG AIR CONDITION & HEATING
OF CENTRAL FLORIDA, INC., a Florida
corporation; BARRIOS ROOFING &
WATERPROOFING, LLC, a Florida Limited liability
company; BFARR EXTERIORS, LLC, a Florida
limited liability company; CEMPLEX GROUP
FLORIDA, LLC, a Florida limited liability
company; EXPRESS PLUMBING, INC., a Florida
corporation; FLORIDA CONSTRUCTION &
FRAMING, LLC, a Florida limited liability
company; SOUSA CABINETS, INC.,
a Florida corporation; and KP'S CONTRACT
FLOORING, LLC, a Florida limited liability
company,

     Third-Party Defendants.

                          /

## PORTRAIT CONSTRUCTION OF FLORIDA, INC.'S
## FIRST AMENDED THIRD-PARTY COMPLAINT

Plaintiff/Counter-Defendant/Third-Party Plaintiff, PORTRAIT

CONSTRUCTION OF FLORIDA, INC. ("Portrait"), by and through its

undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.180(a),

brings this action against Third-Party Defendants, ARMSTRONG AIR &

ELECTRIC, INC. f/k/a ARMSTRONG AIR CONDITION & HEATING OF

2

CENTRAL FLORIDA, INC.; BARRIOS ROOFING & WATERPROOFING, LLC; BFARR EXTERIORS, LLC; CEMPLEX GROUP FLORIDA, LLC; EXPRESS PLUMBING, INC.; FLORIDA CONSTRUCTION & FRAMING, LLC; SOUSA CABINETS, INC.; and KP'S CONTRACT FLOORING, LLC (collectively "Third-Party Defendants"), and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.  Damages in this action against each Third-Party Defendant exceeds $50,000.00, exclusive of interest, attorneys' fees, and costs.

2.  Portrait is a Florida corporation licensed and authorized to do business in Orange County, Florida.

3.  At all times relevant to this action, Armstrong Air & Electric, Inc. f/k/a Armstrong Air Condition & Heating of Central Florida, Inc. ("Armstrong") was a Florida corporation licensed and authorized to conduct business in Orange County, Florida.

4.  At all times relevant to this action, Barrios Roofing & Waterproofing, LLC ("Barrios") was a Florida limited liability company licensed and authorized to conduct business in Orange County, Florida.

5.  At all times relevant to this action, BFarr Exteriors, LLC ("BFarr") was a Florida limited liability company licensed and authorized to conduct business in

3

Orange County, Florida.

6.    At all times relevant to this action, Cemplex Group Florida, LLC ("Cemplex") was a Florida limited liability company licensed and authorized to conduct business in Orange County, Florida.

7.    At all times relevant to this action, Express Plumbing, Inc. ("Express") was a Florida corporation licensed and authorized to conduct business in Orange County, Florida.

8.    At all times relevant to this action, Florida Construction & Framing, LLC ("FCF") was a Florida limited liability company licensed and authorized to conduct business in Orange County, Florida.

9.    At all times relevant to this action, Sousa Cabinets, Inc. ("Sousa") was a Florida corporation licensed and authorized to conduct business in Orange County, Florida.

10.    At all times relevant to this action, KP's Contracting Flooring, LLC ("KP") was a Florida limited liability company licensed and authorized to conduct business in Orange County, Florida.

11.    Venue is proper pursuant to Florida Statutes Sections 47.011 and 47.051, as the cause of action accrued in Orange County, Florida.

12.    All conditions precedent to the filing of this action have been performed

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

or were waived or excused.

13.    Portrait hired the undersigned law firm to represent it in this matter and is obligated to pay reasonable fees for the firms' services.

## GENERAL ALLEGATIONS

14.    Portrait served as the general contractor of the original construction of the residential apartment building complex commonly referred to as Futura at Nona Cove Apartments located at 19465 Boggy Creek Road, Orlando, Florida, ("the Project"), which is the subject of the underlying litigation.

15.    In order to construct the Project, Portrait contracted with and relied on multiple companies and independent subcontractors to perform work and/or provide materials related to the Project.

16.    Defendant/Counterclaim-Plaintiff, LN Apartments, LLC's ("LN Apts") filed a counterclaim action against Portrait, which is incorporated herein by reference. A true and correct copy of LN Apts' Counterclaim, with exhibits, is attached hereto as **Exhibit A.**

17.    Upon information and belief, the named Third-Party Defendants performed work and/or furnished services or supplies to the Project pursuant to respective subcontract agreements.

18.    Though Portrait disputes LN Apts' Counterclaim, if Portrait bears any

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

liability for the claims raised by LN Apts, that liability is derivative of the ultimate

responsibility borne by the Third-Party Defendants named herein.

19.   If any of LN Apts' disputed allegations set forth in its Counterclaim

prove to be true, then Third-Party Defendants' respective work fell below acceptable

standards of practice in the construction industry, failed to comply with the contract

documents and applicable building codes, and caused property damage to other

building components, damage to building materials, and resulting damage to

physical aspects of the Project and personal property outside of the respective Third-

Party Defendants' own work.

20.   All labor, services, and materials furnished by all the Third-Party

Defendants were required to comply with the plans for the Project, the applicable

Florida Building codes, and applicable industry standards.

21.   Portrait is not asserting any claims against Third-Party Defendants for

which Third-Party Defendants are covered under any OCIP or WRAP insurance

policy for the Project.

22.   Portrait is not required to comply with Florida Statute Section 558 as

Portrait does not meet the definition of a "Claimant" under Section 558.002(3) and

the Project has not reached the stage of completion under Section 558.003.

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

## COUNT I – BREACH OF CONTRACT (Failure to Perform)
### (against Armstrong)

23.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

24.    On or about July 27, 2021, Armstrong and Portrait entered into a subcontract pursuant to which Armstrong agreed to perform the scope of work set forth therein, and to otherwise execute the terms of the agreement (the "Armstrong Subcontract"). A true and correct copy of the Armstrong Subcontract is attached hereto as **Exhibit B** and its contents are incorporated herein by reference.

25.    Pursuant to the Armstrong Subcontract, Armstrong agreed to perform its scope of work in accordance with the terms and conditions of the Armstrong Subcontract, the requirements of the construction documents (drawings and written specifications), and all applicable construction industry standards.

26.    To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of Armstrong's material breach of the Armstrong Subcontract by, inter alia, failing to perform its scope of work fully and properly in those areas, including, but not limited to, those aspects of Armstrong's scope of work implicated in LN Apts' Counterclaim.

27.    To the extent Portrait is found liable, Portrait will be damaged by Armstrong's breaches in that Portrait has been sued through a counterclaim action

by LN Apts, who is seeking damages arising out of work performed by Armstrong pursuant to the Armstrong Subcontract.

28. Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the Armstrong Subcontract.

29. Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT II – BREACH OF CONTRACT (Liquidated Damages)
### (against Armstrong)

30. Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 24 above of its Third-Party Complaint as if fully set forth herein.

31. Pursuant to the Armstrong Subcontract, Armstrong agreed to pay Portrait liquidated damages at the agreed rate as set forth in the Armstrong Subcontract for Armstrong's failure to complete its work within a specified

8

timeframe. See **Exhibit B.**

32.     Additionally, pursuant to the Armstrong Subcontract, since Portrait's prime contract agreement with the owner, LN Apts, provides for liquidated damages for delay, which such damages are being sought through LN Apts' Counterclaim, Portrait seeks to assess a share of the said damages against Armstrong in proportion to Armstrong's share of responsibility for the delay. The apportionment is in addition to Portrait's liquidated damages against Armstrong.

33.     Armstrong breached the Armstrong Subcontract by failing to pursue its work in accordance with the applicable construction schedule.

34.     Armstrong's failure to timely pursue its work resulted in a delay to the applicable construction schedule.

35.     As a result of Armstrong's delay breach, Portrait suffered damages in an amount to be determined at trial.

36.     Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the Armstrong Subcontract.

37.     Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred

9

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

**COUNT III – CONTRACTUAL DUTY
TO INDEMNIFY
(against Armstrong)**

38.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 24 above of its Third-Party Complaint as if fully set forth herein.

39.    Pursuant to Article 10 of the Armstrong Subcontract, Armstrong agreed to indemnify and hold harmless Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of Armstrong's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the Armstrong Subcontract or contract documents. See **Exhibit B**.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

40.     LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

41.     Pursuant to Article 10 of the Armstrong Subcontract, Portrait has demanded Armstrong to indemnify Portrait for any and all damages arising from said lawsuit.

42.     Armstrong has refused and failed to indemnify Portrait as related to the underlying action.

43.     If Portrait is found liable to LN Apts for any damages, costs, fees, expenses, interest, or other sums as a direct or indirect result of any act or omission of Armstrong or its sub-subcontractors or suppliers, then Portrait is entitled to be fully indemnified and held harmless from liability by Armstrong.

44.     Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services.  Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the Armstrong Subcontract.

45.     Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT IV – CONTRACTUAL DUTY TO DEFEND
### (against Armstrong)

46.     Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 24 of its Third-Party Complaint as if fully set forth herein.

47.     Pursuant to Article 10 of the Armstrong Subcontract, Armstrong agreed to defend Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of Armstrong's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the Armstrong Subcontract or contract documents. See **Exhibit B.**

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

48.     LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

49.     Pursuant to Article 10 of the Armstrong Subcontract, Portrait has demanded Armstrong to provide Portrait a defense as related to the underlying action.

50.     Armstrong has refused and failed to provide Portrait a defense as related to the underlying action.

51.     As a result of Armstrong's refusal and failure to provide a defense for Portrait in the underlying action, Armstrong has breached its contractual duty to defend obligations pursuant to the Armstrong Subcontract.

52.     As a direct and proximate result of Armstrong's breach of its contractual duty to defend obligations, Portrait has incurred and will continue to incur damages and is entitled to recover same from Armstrong together with attorneys' fees, costs, and expenses.

53.     Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the Armstrong Subcontract.

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

54.    Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT V – NEGLIGENCE
### (against Armstrong)

55.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

56.    Armstrong acted as a subcontractor for the Project who, in that capacity, provided labor, materials, and services for the construction of the Project.

57.    Armstrong owed a duty to Portrait, as general contractor on the Project, to exercise reasonable care, technical skill, good practice, ability and diligence as is ordinarily required of like professionals in the same locality in providing labor, materials, and services to the Project.

58.    Upon information and belief, Plaintiff contends that Portrait negligently constructed the Project.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

59.    To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of Armstrong's breach of its duty to Portrait in that it failed to use the degree of care and skill ordinarily exercised by members of its profession and industry, thereby causing the damages on the Project as alleged in LN Apts' Counterclaim, which said allegations are incorporated herein by reference.

60.    As a direct and proximate result of Armstrong's breaches of duty, Portrait has or will suffer damages in an amount not yet known.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT VI – BREACH OF CONTRACT (Failure to Perform)
### (against Barrios)

61.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

62.    On or about June 9, 2021, Barrios and Portrait entered into a subcontract pursuant to which Barrios agreed to perform the scope of work set forth therein, and to otherwise execute the terms of the agreement (the "Barrios Subcontract"). A true and correct copy of the Barrios Subcontract is attached hereto

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

as **Exhibit C** and its contents are incorporated herein by reference.

63.    Pursuant to the Barrios Subcontract, Barrios agreed to perform its scope of work in accordance with the terms and conditions of the Barrios Subcontract, the requirements of the construction documents (drawings and written specifications), and all applicable construction industry standards.

64.    To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of Barrios's material breach of the Barrios Subcontract by, inter alia, failing to perform its scope of work fully and properly in those areas, including, but not limited to, those aspects of Barrios's scope of work implicated in LN Apts' Counterclaim.

65.    To the extent Portrait is found liable, Portrait will be damaged by Barrios's breaches in that Portrait has been sued through a counterclaim action by LN Apts, who is seeking damages arising out of work performed by Barrios pursuant to the Barrios Subcontract.

66.    Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the Barrios Subcontract.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

67.     Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT VII – BREACH OF CONTRACT (Liquidated Damages)
### (against Barrios)

68.     Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 62 above of its Third-Party Complaint as if fully set forth herein.

69.     Pursuant to the Barrios Subcontract, Barrios agreed to pay Portrait liquidated damages at the agreed rate as set forth in the Barrios Subcontract for Barrios's failure to complete its work within a specified timeframe. See **Exhibit C**.

70.     Additionally, pursuant to the Barrios Subcontract, since Portrait's prime contract agreement with the owner, LN Apts, provides for liquidated damages for delay, which such damages are being sought through LN Apts' Counterclaim, Portrait seeks to assess a share of the said damages against Barrios in proportion to Barrios's share of responsibility for the delay. The apportionment is in addition to Portrait's liquidated damages against Barrios.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

71.    Barrios breached the Barrios Subcontract by failing to pursue its work in accordance with the applicable construction schedule.

72.    Barrios's failure to timely pursue its work resulted in a delay to the applicable construction schedule.

73.    As a result of Barrios's delay breach, Portrait suffered damages in an amount to be determined at trial.

74.    Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the Barrios Subcontract.

75.    Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

## COUNT VIII – CONTRACTUAL DUTY
## TO INDEMNIFY
### (against Barrios)

76. Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 62 above of its Third-Party Complaint as if fully set forth herein.

77. Pursuant to Article 10 of the Barrios Subcontract, Barrios agreed to indemnify and hold harmless Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of Barrios's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the Barrios Subcontract or contract documents. See **Exhibit C**.

78. LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

79. Pursuant to Article 10 of the Barrios Subcontract, Portrait has demanded Barrios to indemnify Portrait for any and all damages arising from said lawsuit.

19

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

80.    Barrios has refused and failed to indemnify Portrait as related to the underlying action.

81.    If Portrait is found liable to LN Apts for any damages, costs, fees, expenses, interest, or other sums as a direct or indirect result of any act or omission of Barrios or its sub-subcontractors or suppliers, then Portrait is entitled to be fully indemnified and held harmless from liability by Barrios.

82.    Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the Barrios Subcontract.

83.    Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

### COUNT IX – CONTRACTUAL DUTY TO DEFEND (against Barrios)

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

84. Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 62 of its Third-Party Complaint as if fully set forth herein.

85. Pursuant to Article 10 of the Barrios Subcontract, Barrios agreed to defend Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of Barrios's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the Barrios Subcontract or contract documents. See **Exhibit C**.

86. LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

87. Pursuant to Article 10 of the Barrios Subcontract, Portrait has demanded Barrios to provide Portrait a defense as related to the underlying action.

88. Barrios has refused and failed to provide Portrait a defense as related to the underlying action.

89. As a result of Barrios's refusal and failure to provide a defense for

Portrait in the underlying action, Barrios has breached its contractual duty to defend obligations pursuant to the Barrios Subcontract.

90.    As a direct and proximate result of Barrios's breach of its contractual duty to defend obligations, Portrait has incurred and will continue to incur damages and is entitled to recover same from Barrios together with attorneys' fees, costs, and expenses.

91.    Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the Barrios Subcontract.

92.    Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT X – NEGLIGENCE
### (against Barrios)

93.    Portrait re-alleges and incorporates the allegations of paragraphs 1

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

through 22 above of its Third-Party Complaint as if fully set forth herein.

94.    Barrios acted as a subcontractor for the Project who, in that capacity,
provided labor, materials, and services for the construction of the Project.

95.    Barrios owed a duty to Portrait, as general contractor on the Project, to
exercise reasonable care, technical skill, good practice, ability and diligence as is
ordinarily required of like professionals in the same locality in providing labor,
materials, and services to the Project.

96.    Upon information and belief, Plaintiff contends that Portrait negligently
constructed the Project.

97.    To the extent that LN Apts proves its claims and damages as set forth
in its Counterclaim, such damages would be the result of Barrios's breach of its duty
to Portrait in that it failed to use the degree of care and skill ordinarily exercised by
members of its profession and industry, thereby causing the damages on the Project
as alleged in LN Apts' Counterclaim, which said allegations are incorporated herein
by reference.

98.    As a direct and proximate result of Barrios's breaches of duty, Portrait
has or will suffer damages in an amount not yet known.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC.
respectfully requests this honorable Court enter a judgment for damages in favor of

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

### COUNT XI – BREACH OF CONTRACT (Failure to Perform)
### (against BFarr)

99.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

100.    On or about August 26, 2021, BFarr and Portrait entered into a subcontract pursuant to which BFarr agreed to perform the scope of work set forth therein, and to otherwise execute the terms of the agreement (the "BFarr Subcontract"). A true and correct copy of the BFarr Subcontract is attached hereto as **Exhibit D** and its contents are incorporated herein by reference.

101.    Pursuant to the BFarr Subcontract, BFarr agreed to perform its scope of work in accordance with the terms and conditions of the BFarr Subcontract, the requirements of the construction documents (drawings and written specifications), and all applicable construction industry standards.

102.    To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of BFarr's material breach of the BFarr Subcontract by, inter alia, failing to perform its scope of work fully and properly in those areas, including, but not limited to, those aspects of BFarr's scope of work implicated in LN Apts' Counterclaim.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

103.   To the extent Portrait is found liable, Portrait will be damaged by BFarr's breaches in that Portrait has been sued through a counterclaim action by LN Apts, who is seeking damages arising out of work performed by BFarr pursuant to the BFarr Subcontract.

104.   Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services.  Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the BFarr Subcontract.

105.   Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XII – BREACH OF CONTRACT (Liquidated Damages)
### (against BFarr)

106.   Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 100 above of its Third-Party Complaint as if fully set forth herein.

107.   Pursuant to the BFarr Subcontract, BFarr agreed to pay Portrait liquidated damages at the agreed rate as set forth in the BFarr Subcontract for

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

BFarr's failure to complete its work within a specified timeframe. See **Exhibit D**.

108.    Additionally, pursuant to the BFarr Subcontract, since Portrait's prime contract agreement with the owner, LN Apts, provides for liquidated damages for delay, which such damages are being sought through LN Apts' Counterclaim, Portrait seeks to assess a share of the said damages against BFarr in proportion to BFarr's share of responsibility for the delay. The apportionment is in addition to Portrait's liquidated damages against BFarr.

109.    BFarr breached the BFarr Subcontract by failing to pursue its work in accordance with the applicable construction schedule.

110.    BFarr's failure to timely pursue its work resulted in a delay to the applicable construction schedule.

111.    As a result of BFarr's delay breach, Portrait suffered damages in an amount to be determined at trial.

112.    Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the BFarr Subcontract.

113.    Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

**COUNT XIII – CONTRACTUAL DUTY
TO INDEMNIFY
(against BFarr)**

114.  Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 100 above of its Third-Party Complaint as if fully set forth herein.

115.  Pursuant to Article 10 of the BFarr Subcontract, BFarr agreed to indemnify and hold harmless Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of BFarr's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the BFarr Subcontract or contract documents. See **Exhibit D**.

116.  LN Apts has sued Portrait for alleged claims and damages as set forth

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

117.    Pursuant to Article 10 of the BFarr Subcontract, Portrait has demanded BFarr to indemnify Portrait for any and all damages arising from said lawsuit.

118.    BFarr has refused and failed to indemnify Portrait as related to the underlying action.

119.    If Portrait is found liable to LN Apts for any damages, costs, fees, expenses, interest, or other sums as a direct or indirect result of any act or omission of BFarr or its sub-subcontractors or suppliers, then Portrait is entitled to be fully indemnified and held harmless from liability by BFarr.

120.    Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the BFarr Subcontract.

121.    Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

deemed appropriate by this Court.

## COUNT XIV – CONTRACTUAL
## DUTY TO DEFEND
## (against BFarr)

122.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 100 of its Third-Party Complaint as if fully set forth herein.

123.    Pursuant to Article 10 of the BFarr Subcontract, BFarr agreed to defend Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of BFarr's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the BFarr Subcontract or contract documents. See **Exhibit D**.

124.    LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

125.    Pursuant to Article 10 of the BFarr Subcontract, Portrait has demanded BFarr to provide Portrait a defense as related to the underlying action.

29

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

126.   BFarr has refused and failed to provide Portrait a defense as related to the underlying action.

127.   As a result of BFarr's refusal and failure to provide a defense for Portrait in the underlying action, BFarr has breached its contractual duty to defend obligations pursuant to the BFarr Subcontract.

128.   As a direct and proximate result of BFarr's breach of its contractual duty to defend obligations, Portrait has incurred and will continue to incur damages and is entitled to recover same from BFarr together with attorneys' fees, costs, and expenses.

129.   Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services.  Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the BFarr Subcontract.

130.   Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

deemed appropriate by this Court.

## COUNT XV – NEGLIGENCE
### (against BFarr)

131.   Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

132.   BFarr acted as a subcontractor for the Project who, in that capacity, provided labor, materials, and services for the construction of the Project.

133.   BFarr owed a duty to Portrait, as general contractor on the Project, to exercise reasonable care, technical skill, good practice, ability and diligence as is ordinarily required of like professionals in the same locality in providing labor, materials, and services to the Project.

134.   Upon information and belief, Plaintiff contends that Portrait negligently constructed the Project.

135.   To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of BFarr's breach of its duty to Portrait in that it failed to use the degree of care and skill ordinarily exercised by members of its profession and industry, thereby causing the damages on the Project as alleged in LN Apts' Counterclaim, which said allegations are incorporated herein by reference.

136.   As a direct and proximate result of BFarr's breaches of duty, Portrait

has or will suffer damages in an amount not yet known.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC.
respectfully requests this honorable Court enter a judgment for damages in favor of
Portrait, together with interest, costs, attorneys' fees, and any such other relief
deemed appropriate by this Court.

## COUNT XVI – BREACH OF CONTRACT (Failure to Perform)
### (against Cemplex)

137.   Portrait re-alleges and incorporates the allegations of paragraphs 1
through 22 above of its Third-Party Complaint as if fully set forth herein.

138.   On or about October 13, 2021, Cemplex and Portrait entered into a
subcontract pursuant to which Cemplex agreed to perform the scope of work set
forth therein, and to otherwise execute the terms of the agreement (the "Cemplex
Subcontract"). A true and correct copy of the Cemplex Subcontract is attached
hereto as **Exhibit E** and its contents are incorporated herein by reference.

139.   Pursuant to the Cemplex Subcontract, Cemplex agreed to perform its
scope of work in accordance with the terms and conditions of the Cemplex
Subcontract, the requirements of the construction documents (drawings and written
specifications), and all applicable construction industry standards.

140.   To the extent that LN Apts proves its claims and damages as set forth
in its Counterclaim, such damages would be the result of Cemplex's material breach

32

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

of the Cemplex Subcontract by, inter alia, failing to perform its scope of work fully

and properly in those areas, including, but not limited to, those aspects of Cemplex's

scope of work implicated in LN Apts' Counterclaim.

141. To the extent Portrait is found liable, Portrait will be damaged by

Cemplex's breaches in that Portrait has been sued through a counterclaim action by

LN Apts, who is seeking damages arising out of work performed by Cemplex

pursuant to the Cemplex Subcontract.

142. Portrait has retained the undersigned counsel to enforce and protect

their rights and is obligated to pay a reasonable sum for their services. Portrait is

entitled to recover its attorneys' fees pursuant to Article 10 of the Cemplex

Subcontract.

143. Portrait claims as special damages all costs, expenses and attorneys'

fees incurred not only in pursuit of its Third-Party Complaint but also those incurred

in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC.

respectfully requests this honorable Court enter a judgment for damages in favor of

Portrait, together with interest, costs, attorneys' fees, and any such other relief

deemed appropriate by this Court.

33

## COUNT XVII – BREACH OF CONTRACT (Liquidated Damages)
### (against Cemplex)

144.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 138 above of its Third-Party Complaint as if fully set forth herein.

145.    Pursuant to the Cemplex Subcontract, Cemplex agreed to pay Portrait liquidated damages at the agreed rate as set forth in the Cemplex Subcontract for Cemplex's failure to complete its work within a specified timeframe. See **Exhibit E**.

146.    Additionally, pursuant to the Cemplex Subcontract, since Portrait's prime contract agreement with the owner, LN Apts, provides for liquidated damages for delay, which such damages are being sought through LN Apts' Counterclaim, Portrait seeks to assess a share of the said damages against Cemplex in proportion to Cemplex's share of responsibility for the delay. The apportionment is in addition to Portrait's liquidated damages against Cemplex.

147.    Cemplex breached the Cemplex Subcontract by failing to pursue its work in accordance with the applicable construction schedule.

148.    Cemplex's failure to timely pursue its work resulted in a delay to the applicable construction schedule.

149.    As a result of Cemplex's delay breach, Portrait suffered damages in an amount to be determined at trial.

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

150.   Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the Cemplex Subcontract.

151.   Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XVIII – CONTRACTUAL DUTY
## TO INDEMNIFY
### (against Cemplex)

152.   Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 138 above of its Third-Party Complaint as if fully set forth herein.

153.   Pursuant to Article 10 of the Cemplex Subcontract, Cemplex agreed to indemnify and hold harmless Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner,

35

Case 6:24-cv-01416-JSS-DCI    Document 96-3    Filed 04/15/25    Page 37 of 655 PageID
2221
*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

directly or indirectly, out of or in connection with, or in the course of , or incidental

to any of Cemplex's work and obligations as provided in the contract documents,

including any extra work (regardless of cause or of any concurrent or contributing

fault of negligence of Portrait, LN Apts, or any of their agents, officers, or

employees), or any breach of or failure to comply with any of the provisions of the

Cemplex Subcontract or contract documents. See **Exhibit E**.

154.    LN Apts has sued Portrait for alleged claims and damages as set forth

in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

155.    Pursuant to Article 10 of the Cemplex Subcontract, Portrait has

demanded Cemplex to indemnify Portrait for any and all damages arising from said

lawsuit.

156.    Cemplex has refused and failed to indemnify Portrait as related to the

underlying action.

157.    If Portrait is found liable to LN Apts for any damages, costs, fees,

expenses, interest, or other sums as a direct or indirect result of any act or omission

of Cemplex or its sub-subcontractors or suppliers, then Portrait is entitled to be fully

indemnified and held harmless from liability by Cemplex.

158.    Portrait has retained the undersigned counsel to enforce and protect

their rights and is obligated to pay a reasonable sum for their services. Portrait is

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

Case 6:24-cv-01416-JSS-DCI    Document 96-3    Filed 04/15/25    Page 38 of 655 PageID
2222
*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

entitled to recover its attorneys' fees pursuant to Articles 10 of the Cemplex Subcontract.

159. Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XIX – CONTRACTUAL
## DUTY TO DEFEND
## (against Cemplex)

160. Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 138 of its Third-Party Complaint as if fully set forth herein.

161. Pursuant to Article 10 of the Cemplex Subcontract, Cemplex agreed to defend Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of Cemplex's work and obligations as provided in the contract documents, including any extra work

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

(regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the Cemplex Subcontract or contract documents. See **Exhibit E**.

162.  LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

163.  Pursuant to Article 10 of the Cemplex Subcontract, Portrait has demanded Cemplex to provide Portrait a defense as related to the underlying action.

164.  Cemplex has refused and failed to provide Portrait a defense as related to the underlying action.

165.  As a result of Cemplex's refusal and failure to provide a defense for Portrait in the underlying action, Cemplex has breached its contractual duty to defend obligations pursuant to the Cemplex Subcontract.

166.  As a direct and proximate result of Cemplex's breach of its contractual duty to defend obligations, Portrait has incurred and will continue to incur damages and is entitled to recover same from Cemplex together with attorneys' fees, costs, and expenses.

167.  Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

entitled to recover its attorneys' fees pursuant to Articles 10 of the Cemplex

Subcontract.

168.    Portrait claims as special damages all costs, expenses and attorneys'

fees incurred not only in pursuit of its Third-Party Complaint but also those incurred

in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC.

respectfully requests this honorable Court enter a judgment for damages in favor of

Portrait, together with interest, costs, attorneys' fees, and any such other relief

deemed appropriate by this Court.

## COUNT XX – NEGLIGENCE
### (against Cemplex)

169.    Portrait re-alleges and incorporates the allegations of paragraphs 1

through 22 above of its Third-Party Complaint as if fully set forth herein.

170.    Cemplex acted as a subcontractor for the Project who, in that capacity,

provided labor, materials, and services for the construction of the Project.

171.    Cemplex owed a duty to Portrait, as general contractor on the Project,

to exercise reasonable care, technical skill, good practice, ability and diligence as is

ordinarily required of like professionals in the same locality in providing labor,

materials, and services to the Project.

172.    Upon information and belief, Plaintiff contends that Portrait negligently

39

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

constructed the Project.

173.    To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of Cemplex's breach of its duty to Portrait in that it failed to use the degree of care and skill ordinarily exercised by members of its profession and industry, thereby causing the damages on the Project as alleged in LN Apts' Counterclaim, which said allegations are incorporated herein by reference.

174.    As a direct and proximate result of Cemplex's breaches of duty, Portrait has or will suffer damages in an amount not yet known.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

### COUNT XXI – BREACH OF CONTRACT (Failure to Perform)
### (against Express)

175.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

176.    On or about February 12, 2021, Express and Portrait entered into a subcontract pursuant to which Express agreed to perform the scope of work set forth therein, and to otherwise execute the terms of the agreement (the "Express

Subcontract"). A true and correct copy of the Express Subcontract is attached hereto as **Exhibit F** and its contents are incorporated herein by reference.

177.    Pursuant to the Express Subcontract, Express agreed to perform its scope of work in accordance with the terms and conditions of the Express Subcontract, the requirements of the construction documents (drawings and written specifications), and all applicable construction industry standards.

178.    To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of Express's material breach of the Express Subcontract by, inter alia, failing to perform its scope of work fully and properly in those areas, including, but not limited to, those aspects of Express's scope of work implicated in LN Apts' Counterclaim.

179.    To the extent Portrait is found liable, Portrait will be damaged by Express's breaches in that Portrait has been sued through a counterclaim action by LN Apts, who is seeking damages arising out of work performed by Express pursuant to the Express Subcontract.

180.    Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the Express Subcontract.

181.    Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXII – BREACH OF CONTRACT (Liquidated Damages)
### (against Express)

182.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 176 above of its Third-Party Complaint as if fully set forth herein.

183.    Pursuant to the Express Subcontract, Express agreed to pay Portrait liquidated damages at the agreed rate as set forth in the Express Subcontract for Express's failure to complete its work within a specified timeframe. See **Exhibit F**.

184.    Additionally, pursuant to the Express Subcontract, since Portrait's prime contract agreement with the owner, LN Apts, provides for liquidated damages for delay, which such damages are being sought through LN Apts' Counterclaim, Portrait seeks to assess a share of the said damages against Express in proportion to Express's share of responsibility for the delay. The apportionment is in addition to Portrait's liquidated damages against Express.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

185. Express breached the Express Subcontract by failing to pursue its work in accordance with the applicable construction schedule.

186. Express's failure to timely pursue its work resulted in a delay to the applicable construction schedule.

187. As a result of Express's delay breach, Portrait suffered damages in an amount to be determined at trial.

188. Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the Express Subcontract.

189. Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

## COUNT XXIII – CONTRACTUAL DUTY TO INDEMNIFY
### (against Express)

190.  Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 176 above of its Third-Party Complaint as if fully set forth herein.

191.  Pursuant to Article 10 of the Express Subcontract, Express agreed to indemnify and hold harmless Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of Express's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the Express Subcontract or contract documents. See **Exhibit F**.

192.  LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

193.  Pursuant to Article 10 of the Express Subcontract, Portrait has demanded Express to indemnify Portrait for any and all damages arising from said lawsuit.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

194.   Express has refused and failed to indemnify Portrait as related to the underlying action.

195.   If Portrait is found liable to LN Apts for any damages, costs, fees, expenses, interest, or other sums as a direct or indirect result of any act or omission of Express or its sub-subcontractors or suppliers, then Portrait is entitled to be fully indemnified and held harmless from liability by Express.

196.   Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services.  Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the Express Subcontract.

197.   Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXIV – CONTRACTUAL DUTY TO DEFEND
### (against Express)

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

198.  Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 176 of its Third-Party Complaint as if fully set forth herein.

199.  Pursuant to Article 10 of the Express Subcontract, Express agreed to defend Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of Express's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the Express Subcontract or contract documents. See **Exhibit F**.

200.  LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

201.  Pursuant to Article 10 of the Express Subcontract, Portrait has demanded Express to provide Portrait a defense as related to the underlying action.

202.  Express has refused and failed to provide Portrait a defense as related to the underlying action.

203.  As a result of Express's refusal and failure to provide a defense for

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

Portrait in the underlying action, Express has breached its contractual duty to defend

obligations pursuant to the Express Subcontract.

204.   As a direct and proximate result of Express's breach of its contractual

duty to defend obligations, Portrait has incurred and will continue to incur damages

and is entitled to recover same from Express together with attorneys' fees, costs, and

expenses.

205.   Portrait has retained the undersigned counsel to enforce and protect

their rights and is obligated to pay a reasonable sum for their services.  Portrait is

entitled to recover its attorneys' fees pursuant to Articles 10 of the Express

Subcontract.

206.   Portrait claims as special damages all costs, expenses and attorneys'

fees incurred not only in pursuit of its Third-Party Complaint but also those incurred

in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC.

respectfully requests this honorable Court enter a judgment for damages in favor of

Portrait, together with interest, costs, attorneys' fees, and any such other relief

deemed appropriate by this Court.

## COUNT XXV – NEGLIGENCE
### (against Express)

207.   Portrait re-alleges and incorporates the allegations of paragraphs 1

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

through 22 above of its Third-Party Complaint as if fully set forth herein.

208.    Express acted as a subcontractor for the Project who, in that capacity, provided labor, materials, and services for the construction of the Project.

209.    Express owed a duty to Portrait, as general contractor on the Project, to exercise reasonable care, technical skill, good practice, ability and diligence as is ordinarily required of like professionals in the same locality in providing labor, materials, and services to the Project.

210.    Upon information and belief, Plaintiff contends that Portrait negligently constructed the Project.

211.    To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of Express's breach of its duty to Portrait in that it failed to use the degree of care and skill ordinarily exercised by members of its profession and industry, thereby causing the damages on the Project as alleged in LN Apts' Counterclaim, which said allegations are incorporated herein by reference.

212.    As a direct and proximate result of Express's breaches of duty, Portrait has or will suffer damages in an amount not yet known.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of

Portrait, together with interest, costs, attorneys' fees, and any such other relief
deemed appropriate by this Court.

## COUNT XXVI – BREACH OF CONTRACT (Failure to Perform)
### (against FCF)

213.   Portrait re-alleges and incorporates the allegations of paragraphs 1
through 22 above of its Third-Party Complaint as if fully set forth herein.

214.   On or about May 5, 2021, FCF and Portrait entered into a subcontract
pursuant to which FCF agreed to perform the scope of work set forth therein, and to
otherwise execute the terms of the agreement (the "FCF Subcontract"). A true and
correct copy of the FCF Subcontract is attached hereto as **Exhibit G** and its contents
are incorporated herein by reference.

215.   Pursuant to the FCF Subcontract, FCF agreed to perform its scope of
work in accordance with the terms and conditions of the FCF Subcontract, the
requirements of the construction documents (drawings and written specifications),
and all applicable construction industry standards.

216.   To the extent that LN Apts proves its claims and damages as set forth
in its Counterclaim, such damages would be the result of FCF's material breach of
the FCF Subcontract by, inter alia, failing to perform its scope of work fully and
properly in those areas, including, but not limited to, those aspects of FCF's scope
of work implicated in LN Apts' Counterclaim.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

Case 6:24-cv-01416-JSS-DCI    Document 96-3    Filed 04/15/25    Page 51 of 655 PageID
2235
*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

217.  To the extent Portrait is found liable, Portrait will be damaged by FCF's breaches in that Portrait has been sued through a counterclaim action by LN Apts, who is seeking damages arising out of work performed by FCF pursuant to the FCF Subcontract.

218.  Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the FCF Subcontract.

219.  Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXVII – BREACH OF CONTRACT (Liquidated Damages) (against FCF)

220.  Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 214 above of its Third-Party Complaint as if fully set forth herein.

221.  Pursuant to the FCF Subcontract, FCF agreed to pay Portrait liquidated damages at the agreed rate as set forth in the FCF Subcontract for FCF's failure to

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

complete its work within a specified timeframe.  See **Exhibit G**.

222.  Additionally, pursuant to the FCF Subcontract, since Portrait's prime contract agreement with the owner, LN Apts, provides for liquidated damages for delay, which such damages are being sought through LN Apts' Counterclaim, Portrait seeks to assess a share of the said damages against FCF in proportion to FCF's share of responsibility for the delay.  The apportionment is in addition to Portrait's liquidated damages against FCF.

223.  FCF breached the FCF Subcontract by failing to pursue its work in accordance with the applicable construction schedule.

224.  FCF's failure to timely pursue its work resulted in a delay to the applicable construction schedule.

225.  As a result of FCF's delay breach, Portrait suffered damages in an amount to be determined at trial.

226.  Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services.  Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the FCF Subcontract.

227.  Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXVIII – CONTRACTUAL DUTY
## TO INDEMNIFY
### (against FCF)

228. Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 214 above of its Third-Party Complaint as if fully set forth herein.

229. Pursuant to Article 10 of the FCF Subcontract, FCF agreed to indemnify and hold harmless Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of FCF's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the FCF Subcontract or contract documents. See **Exhibit G**.

230. LN Apts has sued Portrait for alleged claims and damages as set forth

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

231.    Pursuant to Article 10 of the FCF Subcontract, Portrait has demanded FCF to indemnify Portrait for any and all damages arising from said lawsuit.

232.    FCF has refused and failed to indemnify Portrait as related to the underlying action.

233.    If Portrait is found liable to LN Apts for any damages, costs, fees, expenses, interest, or other sums as a direct or indirect result of any act or omission of FCF or its sub-subcontractors or suppliers, then Portrait is entitled to be fully indemnified and held harmless from liability by FCF.

234.    Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services.  Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the FCF Subcontract.

235.    Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

deemed appropriate by this Court.

## COUNT XXIX – CONTRACTUAL
## DUTY TO DEFEND
### (against FCF)

236.  Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 214 of its Third-Party Complaint as if fully set forth herein.

237.  Pursuant to Article 10 of the FCF Subcontract, FCF agreed to defend Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of FCF's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the FCF Subcontract or contract documents. See **Exhibit G**.

238.  LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

239.  Pursuant to Article 10 of the FCF Subcontract, Portrait has demanded FCF to provide Portrait a defense as related to the underlying action.

Case 6:24-cv-01416-JSS-DCI    Document 96-3    Filed 04/15/25    Page 56 of 655 PageID
2240
*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

240.  FCF has refused and failed to provide Portrait a defense as related to the underlying action.

241.  As a result of FCF's refusal and failure to provide a defense for Portrait in the underlying action, FCF has breached its contractual duty to defend obligations pursuant to the FCF Subcontract.

242.  As a direct and proximate result of FCF's breach of its contractual duty to defend obligations, Portrait has incurred and will continue to incur damages and is entitled to recover same from FCF together with attorneys' fees, costs, and expenses.

243.  Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the FCF Subcontract.

244.  Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief

deemed appropriate by this Court.

## COUNT XXX – NEGLIGENCE
### (against FCF)

245.  Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

246.  FCF acted as a subcontractor for the Project who, in that capacity, provided labor, materials, and services for the construction of the Project.

247.  FCF owed a duty to Portrait, as general contractor on the Project, to exercise reasonable care, technical skill, good practice, ability and diligence as is ordinarily required of like professionals in the same locality in providing labor, materials, and services to the Project.

248.  Upon information and belief, Plaintiff contends that Portrait negligently constructed the Project.

249.  To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of FCF's breach of its duty to Portrait in that it failed to use the degree of care and skill ordinarily exercised by members of its profession and industry, thereby causing the damages on the Project as alleged in LN Apts' Counterclaim, which said allegations are incorporated herein by reference.

250.  As a direct and proximate result of FCF's breaches of duty, Portrait has

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

or will suffer damages in an amount not yet known.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXXI – BREACH OF CONTRACT (Failure to Perform)
### (against Sousa)

251.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

252.    On or about May 14, 2021, Sousa and Portrait entered into a subcontract pursuant to which Sousa agreed to perform the scope of work set forth therein, and to otherwise execute the terms of the agreement (the "Sousa Subcontract"). A true and correct copy of the Sousa Subcontract is attached hereto as **Exhibit H** and its contents are incorporated herein by reference.

253.    Pursuant to the Sousa Subcontract, Sousa agreed to perform its scope of work in accordance with the terms and conditions of the Sousa Subcontract, the requirements of the construction documents (drawings and written specifications), and all applicable construction industry standards.

254.    To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of Sousa's material breach of

57

Case 6:24-cv-01416-JSS-DCI    Document 96-3    Filed 04/15/25    Page 59 of 655 PageID
2243
*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

the Sousa Subcontract by, inter alia, failing to perform its scope of work fully and properly in those areas, including, but not limited to, those aspects of Sousa's scope of work implicated in LN Apts' Counterclaim.

255.   To the extent Portrait is found liable, Portrait will be damaged by Sousa's breaches in that Portrait has been sued through a counterclaim action by LN Apts, who is seeking damages arising out of work performed by Sousa pursuant to the Sousa Subcontract.

256.   Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services.  Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the Sousa Subcontract.

257.   Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXXII – BREACH OF CONTRACT (Liquidated Damages)
### (against Sousa)

258.   Portrait re-alleges and incorporates the allegations of paragraphs 1

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

through 22 and 252 above of its Third-Party Complaint as if fully set forth herein.

259.    Pursuant to the Sousa Subcontract, Sousa agreed to pay Portrait liquidated damages at the agreed rate as set forth in the Sousa Subcontract for Sousa's failure to complete its work within a specified timeframe. See **Exhibit H**.

260.    Additionally, pursuant to the Sousa Subcontract, since Portrait's prime contract agreement with the owner, LN Apts, provides for liquidated damages for delay, which such damages are being sought through LN Apts' Counterclaim, Portrait seeks to assess a share of the said damages against Sousa in proportion to Sousa's share of responsibility for the delay. The apportionment is in addition to Portrait's liquidated damages against Sousa.

261.    Sousa breached the Sousa Subcontract by failing to pursue its work in accordance with the applicable construction schedule.

262.    Sousa's failure to timely pursue its work resulted in a delay to the applicable construction schedule.

263.    As a result of Sousa's delay breach, Portrait suffered damages in an amount to be determined at trial.

264.    Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the Sousa Subcontract.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

Case 6:24-cv-01416-JSS-DCI    Document 96-3    Filed 04/15/25    Page 61 of 655 PageID
2245
*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

265.  Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

**COUNT XXXIII – CONTRACTUAL DUTY
TO INDEMNIFY**
**(against Sousa)**

266.  Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 252 above of its Third-Party Complaint as if fully set forth herein.

267.  Pursuant to Article 10 of the Sousa Subcontract, Sousa agreed to indemnify and hold harmless Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of Sousa's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or

Case 6:24-cv-01416-JSS-DCI    Document 96-3    Filed 04/15/25    Page 62 of 655 PageID
2246
*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

employees), or any breach of or failure to comply with any of the provisions of the

Sousa Subcontract or contract documents. See **Exhibit H**.

268.  LN Apts has sued Portrait for alleged claims and damages as set forth

in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

269.  Pursuant to Article 10 of the Sousa Subcontract, Portrait has demanded

Sousa to indemnify Portrait for any and all damages arising from said lawsuit.

270.  Sousa has refused and failed to indemnify Portrait as related to the

underlying action.

271.  If Portrait is found liable to LN Apts for any damages, costs, fees,

expenses, interest, or other sums as a direct or indirect result of any act or omission

of Sousa or its sub-subcontractors or suppliers, then Portrait is entitled to be fully

indemnified and held harmless from liability by Sousa.

272.  Portrait has retained the undersigned counsel to enforce and protect

their rights and is obligated to pay a reasonable sum for their services.  Portrait is

entitled to recover its attorneys' fees pursuant to Articles 10 of the Sousa

Subcontract.

273.  Portrait claims as special damages all costs, expenses and attorneys'

fees incurred not only in pursuit of its Third-Party Complaint but also those incurred

in defense of LN Apts' Counterclaim.

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXXIV – CONTRACTUAL
## DUTY TO DEFEND
### (against Sousa)

274. Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 252 above of its Third-Party Complaint as if fully set forth herein.

275. Pursuant to Article 10 of the Sousa Subcontract, Sousa agreed to defend Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of Sousa's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the Sousa Subcontract or contract documents. See **Exhibit H**.

276. LN Apts has sued Portrait for alleged claims and damages as set forth

in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

277. Pursuant to Article 10 of the Sousa Subcontract, Portrait has demanded Sousa to provide Portrait a defense as related to the underlying action.

278. Sousa has refused and failed to provide Portrait a defense as related to the underlying action.

279. As a result of Sousa's refusal and failure to provide a defense for Portrait in the underlying action, Sousa has breached its contractual duty to defend obligations pursuant to the Sousa Subcontract.

280. As a direct and proximate result of Sousa's breach of its contractual duty to defend obligations, Portrait has incurred and will continue to incur damages and is entitled to recover same from Sousa together with attorneys' fees, costs, and expenses.

281. Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the Sousa Subcontract.

282. Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

Case 6:24-cv-01416-JSS-DCI    Document 96-3    Filed 04/15/25    Page 65 of 655 PageID
2249
*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXXV – NEGLIGENCE
### (against Sousa)

283.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

284.    Sousa acted as a subcontractor for the Project who, in that capacity, provided labor, materials, and services for the construction of the Project.

285.    Sousa owed a duty to Portrait, as general contractor on the Project, to exercise reasonable care, technical skill, good practice, ability and diligence as is ordinarily required of like professionals in the same locality in providing labor, materials, and services to the Project.

286.    Upon information and belief, Plaintiff contends that Portrait negligently constructed the Project.

287.    To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of Sousa's breach of its duty to Portrait in that it failed to use the degree of care and skill ordinarily exercised by members of its profession and industry, thereby causing the damages on the Project

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

as alleged in LN Apts' Counterclaim, which said allegations are incorporated herein by reference.

288.   As a direct and proximate result of Sousa's breaches of duty, Portrait has or will suffer damages in an amount not yet known.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXXVI – BREACH OF CONTRACT (Failure to Perform)
### (against KP)

289.   Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

290.   On or about May 14, 2021, KP and Portrait entered into a subcontract pursuant to which KP agreed to perform the scope of work set forth therein, and to otherwise execute the terms of the agreement (the "KP Subcontract"). A true and correct copy of the KP Subcontract is attached hereto as **Exhibit I** and its contents are incorporated herein by reference.

291.   Pursuant to the KP Subcontract, KP agreed to perform its scope of work in accordance with the terms and conditions of the KP Subcontract, the requirements of the construction documents (drawings and written specifications),

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

and all applicable construction industry standards.

292.   To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of KP's material breach of the KP Subcontract by, inter alia, failing to perform its scope of work fully and properly in those areas, including, but not limited to, those aspects of KP's scope of work implicated in LN Apts' Counterclaim.

293.   To the extent Portrait is found liable, Portrait will be damaged by KP's breaches in that Portrait has been sued through a counterclaim action by LN Apts, who is seeking damages arising out of work performed by KP pursuant to the KP Subcontract.

294.   Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services.  Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the KP Subcontract.

295.   Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief

Kirwin Norris, P.A. • 840 South Denning Dr., Suite 200, Winter Park, Florida • T: (407) 740-6600 • F: (407) 740-6363

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

deemed appropriate by this Court.

## COUNT XXXII – BREACH OF CONTRACT (Liquidated Damages)
### (against KP)

296.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 290 above of its Third-Party Complaint as if fully set forth herein.

297.    Pursuant to the KP Subcontract, KP agreed to pay Portrait liquidated damages at the agreed rate as set forth in the KP Subcontract for KP's failure to complete its work within a specified timeframe. See **Exhibit I**.

298.    Additionally, pursuant to the KP Subcontract, since Portrait's prime contract agreement with the owner, LN Apts, provides for liquidated damages for delay, which such damages are being sought through LN Apts' Counterclaim, Portrait seeks to assess a share of the said damages against KP in proportion to KP's share of responsibility for the delay. The apportionment is in addition to Portrait's liquidated damages against KP.

299.    KP breached the KP Subcontract by failing to pursue its work in accordance with the applicable construction schedule.

300.    KP's failure to timely pursue its work resulted in a delay to the applicable construction schedule.

301.    As a result of KP's delay breach, Portrait suffered damages in an amount to be determined at trial.

302. Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Article 10 of the KP Subcontract.

303. Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXXIII – CONTRACTUAL DUTY
## TO INDEMNIFY
### (against KP)

304. Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 290 above of its Third-Party Complaint as if fully set forth herein.

305. Pursuant to Article 10 of the KP Subcontract, KP agreed to indemnify and hold harmless Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

to any of KP's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the KP Subcontract or contract documents. See **Exhibit I**

306. LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

307. Pursuant to Article 10 of the KP Subcontract, Portrait has demanded KP to indemnify Portrait for any and all damages arising from said lawsuit.

308. KP has refused and failed to indemnify Portrait as related to the underlying action.

309. If Portrait is found liable to LN Apts for any damages, costs, fees, expenses, interest, or other sums as a direct or indirect result of any act or omission of KP or its sub-subcontractors or suppliers, then Portrait is entitled to be fully indemnified and held harmless from liability by KP.

310. Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services. Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the KP Subcontract.

311. Portrait claims as special damages all costs, expenses and attorneys'

fees incurred not only in pursuit of its Third-Party Complaint but also those incurred in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

## COUNT XXXIV – CONTRACTUAL DUTY TO DEFEND (against KP)

312.  Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 and 290 of its Third-Party Complaint as if fully set forth herein.

313.  Pursuant to Article 10 of the KP Subcontract, KP agreed to defend Portrait from all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and courts costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of , or incidental to any of KP's work and obligations as provided in the contract documents, including any extra work (regardless of cause or of any concurrent or contributing fault of negligence of Portrait, LN Apts, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of the KP Subcontract or contract

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

documents. See **Exhibit I**.

314.  LN Apts has sued Portrait for alleged claims and damages as set forth in LN Apts' Counterclaim, to which Portrait is required to defend said lawsuit.

315.  Pursuant to Article 10 of the KP Subcontract, Portrait has demanded KP to provide Portrait a defense as related to the underlying action.

316.  KP has refused and failed to provide Portrait a defense as related to the underlying action.

317.  As a result of KP's refusal and failure to provide a defense for Portrait in the underlying action, KP has breached its contractual duty to defend obligations pursuant to the KP Subcontract.

318.  As a direct and proximate result of KP's breach of its contractual duty to defend obligations, Portrait has incurred and will continue to incur damages and is entitled to recover same from KP together with attorneys' fees, costs, and expenses.

319.  Portrait has retained the undersigned counsel to enforce and protect their rights and is obligated to pay a reasonable sum for their services.  Portrait is entitled to recover its attorneys' fees pursuant to Articles 10 of the KP Subcontract.

320.  Portrait claims as special damages all costs, expenses and attorneys' fees incurred not only in pursuit of its Third-Party Complaint but also those incurred

Case 6:24-cv-01416-JSS-DCI    Document 96-3    Filed 04/15/25    Page 73 of 655 PageID
2257
*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

in defense of LN Apts' Counterclaim.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

**COUNT XXXV – NEGLIGENCE**
**(against KP)**

321.    Portrait re-alleges and incorporates the allegations of paragraphs 1 through 22 above of its Third-Party Complaint as if fully set forth herein.

322.    KP acted as a subcontractor for the Project who, in that capacity, provided labor, materials, and services for the construction of the Project.

323.    KP owed a duty to Portrait, as general contractor on the Project, to exercise reasonable care, technical skill, good practice, ability and diligence as is ordinarily required of like professionals in the same locality in providing labor, materials, and services to the Project.

324.    Upon information and belief, Plaintiff contends that Portrait negligently constructed the Project.

325.    To the extent that LN Apts proves its claims and damages as set forth in its Counterclaim, such damages would be the result of KP's breach of its duty to Portrait in that it failed to use the degree of care and skill ordinarily exercised by

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

members of its profession and industry, thereby causing the damages on the Project as alleged in LN Apts' Counterclaim, which said allegations are incorporated herein by reference.

326.  As a direct and proximate result of KP's breaches of duty, Portrait has or will suffer damages in an amount not yet known.

**WHEREFORE**, PORTRAIT CONSTRUCTION OF FLORIDA, INC. respectfully requests this honorable Court enter a judgment for damages in favor of Portrait, together with interest, costs, attorneys' fees, and any such other relief deemed appropriate by this Court.

Dated December 19, 2024

**KIRWIN NORRIS, P.A.**

/s/ KENNETH J. IDLE
BRIAN P. KIRWIN, ESQ.
Florida Bar No.: 867799
KENNETH J. IDLE, ESQ.
Florida Bar No.: 20988
ANDREW S. YATKMAN, ESQ.
Florida Bar No.: 1023231
840 South Denning Dr., Suite 200
Winter Park, FL 32789
bpk@kirwinnorris.com
kji@kirwinnorris.com
jaf@kirwinnorris.com
asy@kirwinnorris.com

*Portrait Construction of Florida, Inc. v. LN Apartments, LLC, et al.*

Ph.    (407) 740-6600
Fax.   (407) 740-6363
*Counsel for Portrait Construction of Florida, Inc.*
*a Florida Corporation*

# EXHIBIT A

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
BUSINESS COURT

PORTRAIT CONSTRUCTION OF
FLORIDA, INC. f/k/a MARK BARON
CONSTRUCTION, INC. d/b/a MARK
PORTRAIT CONSTRUCTION, a Florida
corporation,

        Plaintiff,

                                 Case No.   2023-CA-008213-O

vs.

LN APARTMENTS, LLC, a Florida limited
liability company,

        Defendant.

_____

## LN APARTMENTS, LLC's ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT AND AMENDED COUNTERCLAIM

Defendant, LN APARTMENTS, LLC ("LN"), by and through its undersigned

counsel, files its Answer and Affirmative Defenses to the Amended Complaint filed

by Plaintiff, PORTRAIT CONSTRUCTION OF FLORIDA, INC. f/k/a Mark Baron

Construction, Inc. d/b/a Mark Portrait Construction, ("PORTRAIT") and states:

### PARTIES, JURISDICTION AND VENUE

1.    Without knowledge, therefore denied.

2.    Without knowledge, therefore denied.

3.    Admitted for jurisdictional purposes only, otherwise denied.

4.    Admitted for jurisdictional and venue purposes only, otherwise
denied.

## **GENERAL ALLEGATIONS**

5.    Admitted that Portrait served as General Contractor for the Project
prior to being terminated for cause by LN on April 20, 2023.

6.    Admitted.

7.    Admitted only that the terms and provisions of the HUD Contract, the
A201, the Ancillary Agreement and the Contract speak for themselves, otherwise,
denied.

8.    Admitted only that the terms and provisions of the HUD Contract, the
A201, the Ancillary Agreement and the Contract speak for themselves, otherwise,
denied.

9.    Admitted.

10.    Admitted only that the terms and provisions of the HUD Contract, the
A201, the Ancillary Agreement and the Contract speak for themselves, otherwise,
denied.

11.    Admitted only that the terms and provisions of the HUD Contract, the
A201, the Ancillary Agreement and the Contract speak for themselves; otherwise,
denied.

12.    Admitted.

13.    Without knowledge, therefore denied.

14.    Admitted the Portrait was terminated for cause. LN denies the allegation of paragraph 14 that insinuates LN terminated Portrait as a consequence of Portrait brining a lawsuit against LN.

15.    Denied.

16.    Denied.

17.    Admitted that Portrait recorded a Claim of Lien on July 7, 2023, but denies that the dollar amount in Portrait's Claim of Lien is an accurate representation of what it is owed.

18.    Admitted that Portrait served a Contractor's Final Payment Affidavit. Denied as to the representations made in the Contractor's Final Payment Affidavit.

19.    Denied.

20.    Denied.

21.    Without knowledge, therefore denied.

22.    Without knowledge, therefore denied.

## COUNT I – FORECLOSURE OF CONSTRUCTION LIEN

23.    LN realleges its responses as set forth above in Paragraphs 1-22 as if fully set forth herein.

24.    Admitted only that this count appears to be a count for foreclosure of a Construction Lien.

25.    Without knowledge and therefore denied.

26.    Without knowledge and therefore denied.

27.    Denied.

28.    Denied.

29.    Denied.

30.    Denied.

31.    Admitted.

32.    Without knowledge, therefore denied.

As to the unnumbered wherefore clause, LN denies that Portrait is entitled to

any of the relief requested.

## COUNT II - BREACH OF CONTRACT AGAINST LN APARTMENTS FOR WRONGFUL TERMINATION

33.    LN realleges its responses as set forth above in Paragraphs 1-22 as if

fully set forth herein.

34.    Admitted only that the documents attached as composite Exhibit A are

documents that speak for themselves, otherwise denied.

35.    Admitted only that the terms and provisions of the A201 Agreement

speaks for itself, otherwise, denied.

36.    Admitted only that the A201 Agreement speaks for itself, otherwise

denied.

4854-7803-8903 v.2 078615/01500

37.    Denied. The April 10, 2023 letter referenced provides Portrait and

Travelers with Notice of LN's intent to terminate the Contract if Travelers did not

cure Portrait's breaches.

38.    Admitted only that the terms of termination letter speaks for itself,

otherwise denied.

39.    Admitted only that the A201 Agreement is a document that speaks for

itself, otherwise denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Admitted only that Exhibit F is a document that speaks for itself,

otherwise denied.

44.    Denied.

    a. Denied.

        i. Denied.

        ii. Denied.

        iii. Denied.

        iv. Denied.

        v. Denied.

        vi. Denied.

4854-7803-8903 v.2 078615/01500

      vii. Denied.

    b. Denied.

    c. Denied.

    d. Denied.

45.   Denied.

46.   Denied.

47.   Denied.

As to the unnumbered wherefore clause, LN denies that Portrait is entitled to any of the relief requested.

## COUNT III - BREACH OF CONTRACT AGAINST LN APARTMENTS FOR FAILURE TO MAKE PROGRESS PAYMENTS

48.   LN realleges its responses as set forth above in Paragraphs 1-22 as if fully set forth herein.

49.   Admitted only that the documents attached as composite Exhibit A are documents that speak for themselves, otherwise denied.

50.   Admitted only that the terms and provisions of the HUD Contract, the A201, the Ancillary Agreement and the Contract speak for themselves; otherwise, denied.

51.   Denied.

52.   Denied.

4854-7803-8903 v.2 078615/01500

53.   Denied.

54.   Denied.

As to the unnumbered wherefore clause, LN denies that Portrait is entitled to any of the relief requested.

## COUNT IV - BREACH OF CONTRACT AGAINST LN APARTMENTS FOR OWNER INTERFERENCE

55.   LN realleges its responses as set forth above in Paragraphs 1-22 as if fully set forth herein.

56.   Admitted only that the documents attached as composite Exhibit A are documents that speak for themselves, otherwise denied.

57.   Admitted only that the terms and provisions of the HUD Contract, the A201, the Ancillary Agreement and the Contract speak for themselves; otherwise, denied.

58.   Denied.

59.   Denied.

60.   Denied.

61.   Denied.

62.   The allegations set forth in Paragraphs 44(a), 58-61 are denied.

63.   Denied.

64.   Denied.

As to the unnumbered wherefore clause, LN denies that Portrait is entitled to any of the relief requested.

## COUNT IV – QUANTUM MERUIT AGAINST LN APARTMENTS

65.    LN realleges its responses as set forth above in Paragraphs 1-22 as if fully set forth herein.

66.    Denied.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Denied.

71.    Denied.

As to the unnumbered wherefore clause, LN denies that Portrait is entitled to any of the relief requested.

## FIRST AFFIRMATIVE DEFENSE

As its First Affirmative Defense, LN asserts Portrait fails to state a claim for breach of contract insofar as Portrait's claimed damages are barred by the express terms of the Contract, including any damages specifically waived by the parties. Specifically, insofar as any claims alleged by Portrait are for consequential damages, inefficiencies, extended overhead, administrative expenses, and other similar

damages, all such damages are expressly waived by the terms of the Contract, including but not limited to Section 15.1.7 of the A201 Agreement.

### SECOND AFFIRMATIVE DEFENSE

As its Second Affirmative Defense, LN asserts that Portrait has waived its claims by virtue of its failure to comply with the claim notice requirements and procedures set forth in the Contract Documents, including the notice requirements of Article 15 of the A201 Agreement, causing prejudice to LN. In the event Portrait failed to provide proper notice and supporting documentation of the claims asserted in the Complaint within the time period required by its Contract, Portrait knowingly and intentionally waived its claims against LN. Insofar as Portrait waived its claims against LN, Portrait also therefore failed to perform a condition precedent to the initiation of this action.

### THIRD AFFIRMATIVE DEFENSE

As its Third Affirmative Defense, LN asserts that Portrait has unclean hands and acted in bad faith, including but not limited to, failing to honor the claim notice requirements of the Contract, failing to provide sufficient and competent manpower, refusing to comply with the Contract's administrative processes for claim resolution, failing to proceed with the work as required by the Contract, and knowingly and deliberately installing unapproved materials, defective Work and altered

construction details in an effort to reduce costs contrary to the terms of the Contract Documents, to the benefit of Portrait and the detriment of LN.

## FOURTH AFFIRMATIVE DEFENSE

As its Fourth Affirmative Defense, LN asserts that Portrait has waived its claim asserted in the Complaint in whole or in part, by executing lien waivers. Specifically, in the course of Portrait's work on the underlying construction project, Portrait executed multiple interim waivers and releases, each expressly waiving and releasing any and all claims and acknowledging that upon receipt of payment from LN, such payment would constitute full and complete payment and the full and equitable adjustment and compensation attributable to such work though a certain date. Accordingly, Portrait's alleged damages must be reduced or barred insofar as they have been satisfied, released or waived.

## FIFTH AFFIRMATIVE DEFENSE

As its Fifth Affirmative Defense, LN asserts that it is entitled to set off/recoup of any and all damages (including liquidated damages) and costs for extra work that it may or will incur as a result of Portrait's breach of the Contract, including any additional costs and damages related to actual completion of the Project, and all of the additional costs and damages that the LN has or will incur in order to remediate the defective or noncompliant work supplied or installed by Portrait, including but not limited to the costs LN has or will incur in order to bring the Project into

4854-7803-8903 v.2 078615/01500

compliance with the Contract Document and applicable building codes and regulations.

## SIXTH AFFIRMATIVE DEFENSE

As its Sixth Affirmative Defense, LN asserts Portrait has failed to mitigate its claimed damages to the extent that it caused certain delays and schedule impacts, by failing to provide adequate manpower, failing to diligently commence and complete the work, failing to proceed with disputed work as required by the terms of the Contract, failing to install material and work consistent with the Contract Documents including installation of low quality and substandard materials, failing to submit shop drawings and material product data, and committing other breaches as set forth in the counterclaim below.

## SEVENTH AFFIRMATIVE DEFENSE

As its Seventh Affirmative Defense, LN asserts that it is entitled to a set-off for actions of third parties not within the control of LN, which act as an intervening or superseding cause of Portrait's alleged damages. Portrait's claimed damages must be reduced or barred accordingly.

## EIGHTH AFFIRMATIVE DEFENSE

As its Eighth Affirmative Defense, LN asserts that Portrait's claims are barred and LN was excused from any further obligation to perform by reason of the fact that Portrait committed material breaches of the Contract alleged herein. Those

4854-7803-8903 v.2 078615/01500

breaches are more specifically identified in the counterclaim set forth below.

## NINTH AFFIRMATIVE DEFENSE

As its Ninth Affirmative Defense, LN asserts that Portrait's claims are barred by the doctrine of abandonment of contract in that Portrait abandoned the Contract prior to the completion of the Project referenced herein.

## TENTH AFFIRMATIVE DEFENSE

As its Tenth Affirmative Defense, LN asserts that to the extent Portrait seeks equitable relief herein, its claims are barred by the doctrine of unclean hands. A more specific recitation of the facts which support this affirmative defense is provided in the counterclaim set forth below.

## ELEVENTH AFFIRMATIVE DEFENSE

As its Eleventh Affirmative Defense, LN asserts that Portrait's own negligence in managing, constructing, and scheduling the Project caused or contributed significantly to the problems complained of. In particular, the damages claimed by Portrait are a direct result from its own lack of management and oversight, failure to adhere to the Contract Documents, and other breaches as set forth in the counterclaim below. Accordingly, Portrait's claims are barred or should be reduced to the extent caused by Portrait's own negligence, errors, or omissions.

## TWELFTH AFFIRMATIVE DEFENSE

As its Twelfth Affirmative Defense, LN asserts that Portrait is estopped from

asserting its claim for delay, disruption, acceleration, and the like by misrepresenting to LN that it possessed the requisite skill and the ability to perform the scope contemplated within the time frame established by the Contract. LN relied upon these misrepresentations to its own detriment in awarding the Contract to Portrait.

<b>THIRTEENTH AFFIRMATIVE DEFENSE</b>

As its Thirteenth Affirmative Defense, LN asserts that the sole consideration for the execution of Portrait's Contract with LN was Portrait's commitment to perform its work in accordance with the Contract requirements. Portrait's provision of labor, services, and materials was of sufficiently poor quality and so untimely that there was failure of consideration to justify Portrait's Contract.

<b>FOURTEENTH AFFIRMATIVE DEFENSE</b>

As its Fourteenth Affirmative Defense, LN asserts that as a result of its failure to timely notify, submit, and quantify its claims to LN, Portrait's claims are barred by the doctrine of laches.

<b>FIFTEENTH AFFIRMATIVE DEFENSE</b>

As its Fifteenth Affirmative Defense, LN asserts that during the Project, delays to the timely completion of the work were caused by the failure of Portrait and its subcontractors, suppliers, and agents to properly and timely perform work in accordance with the Contract. Portrait was either solely responsible for delayed completion of the Project or Portrait and others, for whose actions LN is not

responsible, caused the delayed completion of the Project. Alternatively, the claims alleged by Portrait to be the responsibility of LN were at best concurrent to other delays caused by Portrait's breach of its contractual obligations. Accordingly, Portrait has suffered no injuries or damages as a result of the acts and omissions alleged in the complaint and fails to state a cause of action against LN for which relief can be granted.

## SIXTEENTH AFFIRMATIVE DEFENSE

As its Sixteenth Affirmative Defense, LN asserts that Portrait's claims are barred or limited to the extent that Portrait failed to mitigate its damages alleged in the Complaint by failing to take appropriate remedial action, including but not limited to: (1) failing to timely and properly notify LN of alleged impacts to Portrait's performance of the work; (2) failing to obtain appropriate written authorization to proceed with additional work or obtain appropriate extensions of time; (3) failing to quantify its claims for additional work and extensions of time as required by the Contract Documents; (4) failing to submit and update schedules for the Project in accordance with the Contract Documents; (5) failing to maintain adequate personnel including the contractually required scheduler during the terms of performance; (6) failing to properly and timely coordinate or sequence its work on the Project as required by the terms of the Contract; (7) breaching these terms of

the Contract for failing to complete the work in a timely and proper manner; (8) failing to quantify any claims it had relating to the alleged actions by LN as required by the Contract Documents; (9) failing to properly re-sequence its work to overcome the alleged impacts to its work; and (10) failing to provide proper and adequate credits to the Owner for any replacements or deviations in the Work from the Contract Documents.

## SEVENTEENTH AFFIRMATIVE DEFENSE

As its Seventeenth Affirmative Defense, LN asserts that Portrait's action for lien foreclosure should be dismissed because Portrait has acted willfully or with malice, gross negligence or willful exaggeration by filing an excessive Claim of Lien, as set forth in greater detail in LN's Counterclaim below.

## EIGHTEENTH AFFIRMATIVE DEFENSE

As its Eighteenth Affirmative Defense, LN asserts that Portrait's claims are barred by the doctrine of prior material breach, as a result of Portrait's failure to pursue its work in accordance with the Project Schedule and phasing plan, resulting in a delay to the Project's Substantial Completion date. Portrait further breached the Contract by failing to install the work correctly, failing to correct its defective or deficient work when brought to Portrait's attention, and failing to remedy its defaults, causing significant damages and delay to the Project.

## NINETEENTH AFFIRMATIVE DEFENSE

4854-7803-8903 v.2 078615/01500

As its Nineteenth Affirmative Defense, LN asserts that Portrait's claim for breach of contract for wrongful termination fails to state a claim upon which relief can be granted, as LN properly terminated Portrait for cause pursuant to Article 14.2 of the A201 Agreement. Article 14.2 does not require LN provide Portrait with an opportunity or instruction to cure its defaults. Rather, Article 14.2 only requires that LN provide Portrait with seven days notice of LN's intent to terminate Portrait. Furthermore, LN attached the required certification from the Architect, and Portrait's claims that the Architect did not render an impartial decision are baseless and not supported by the facts.

## TWENTIETH AFFIRMATIVE DEFENSE

As its Twentieth Affirmative Defense, LN asserts that Portrait's claim of lien is invalid as it is willfully exaggerated and thus a fraudulent lien pursuant to Section 713.31(2)(a), Florida Statutes, as set forth in greater detail in LN's Counterclaim below.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

As its Twenty-First Affirmative Defense, LN asserts that Portrait's claim of lien is invalid as Portrait failed to substantially complete its work and effectively abandoned the Project, as set forth in greater detail in LN's Counterclaim below.

## RESERVATION OF RIGHTS

LN reserves their rights to allege any further affirmative defenses that become known in the course of this litigation and related discovery.

## AMENDED COUNTERCLAIM

Defendant/Counter-Plaintiff, LN APARTMENTS, LLC ("LN"), brings this Amended Counterclaim against Plaintiff/Counter-Defendant, PORTRAIT CONSTRUCTION OF FLORIDA, INC. f/k/a Mark Baron Construction, Inc. d/b/a Mark Portrait Construction ("Portrait") as set forth below.

1.     This is a Counterclaim for damages in excess of $3,600,000, exclusive of interest, costs and attorneys' fees, that arises from property located in and services performed in Orange County, Florida.

2.     LN Apartments is a Florida limited liability company licensed and authorized to conduct business in Orange County, Florida.

3.     Upon information and belief, Portrait is a Florida corporation licensed and authorized to do business in Orange County, Florida.

4.     Venue is appropriate in Orange County, Florida pursuant to Section 47.011, *Florida Statutes*, because the property that is the subject matter of this litigation is located in Orange County, Florida and all claims alleged herein occurred in Orange County, Florida.

5.     All conditions precedent to this initiation of this action have been met or waived by the Parties.

-17-

## GENERAL ALLEGATIONS

6.    LN adopts and realleges the allegations contained in Paragraphs 1 through 5 above as though fully set forth herein.

7.    LN entered into the Contract with Portrait to serve as the General Contractor for the Construction of the Futura at Nona Cove Apartments located at 19465 Boggy Creek Road, Orlando, Florida ("the Project").

8.    On or about November 5, 2020, Portrait and LN Apartments entered into a U.S. Department of Housing and Urban Development ("HUD") Construction Contract (the "HUD Contract"); AIA A201-2017 Modified General Conditions of the Contract for Construction (the "A201"); and Ancillary Agreement to Construction Contract (the "Ancillary Agreement") (the HUD Contract, the A201, and the Ancillary Agreement are collectively referred to as the "Contract" or "Contract Documents") for the construction of the Project. A true and correct copy of the Contract was attached to Portrait's Complaint as "Composite Exhibit A" which is reincorporated into this Counterclaim.

9.    Portrait agreed to use its best skill and attention to timely and properly complete the work in strict accordance with the Contract Documents, plans, and specifications for the Project (the "work").

10.   Portrait committed numerous breaches of the Contract, including but not limited to, failing to pursue their work in accordance with the Project Schedule

-18-

and phasing plan, failing to provide sufficient and competent manpower, intentionally slowing down its work on the Project, failing to pay subcontractors despite having been paid for the work by LN, installing damaged and/or defective work, and failing and refusing to correct deficient and defective work. Portrait's failure to timely and properly pursue their work resulted in a delay to the Project's Substantial Completion date.

11.    Additionally, during the course of Portrait's performance of the work under the Contract, Portrait breached the Contract by failing to properly perform and complete its work pursuant to the Contract.  The work was defective and was not performed in a good, workmanlike fashion or in accordance with industry standards and the approved plans and specifications. Portrait failed to install the work correctly, failed to correct its defective or deficient work, and failed to remedy its defaults, causing significant damage and delay to the Project.

12.    At the outset of the Project, Portrait expressly assured LN that it had sufficient skill, experience, and competent team members to perform the work required by the Contract. As a result of these assurances, LN agreed to award the Project to Portrait.

13.    However, throughout the entirety of the Project, Portrait failed to properly and sufficiently staff the Project with skilled and competent workers as promised and as required by the Contract, and virtually abandoned the Project

-19-

despite repeated requests from LN to sufficiently staff the Project in accordance with the Contract.

14.     Furthermore, Portrait intentionally slowed down its work and further delayed the Project Schedule, all while negotiating with LN on way to remediating and finalize the Project, in an attempt to facilitate Portrait Construction Inc.'s CEO, Thomas Day, improper purchase of the property at a significantly diminished value.

15.     Beginning in approximately June 2022, Thomas Day and LN entered into discussions regarding the potential for Mr. Day, in his individual capacity, to replace LN's equity investor on the Project.

16.     However, shortly thereafter, Mr. Day utilized his influence as CEO of Portrait Construction Inc. (which is part owner of the Defendant Portrait Construction of Florida) to slow down Portrait's work on the Project, creating additional delays and impacts to an already delayed Project, so as to impact the value of the Project and improperly attempt to purchase the entire Project at a significantly diminished rate, citing the delays and issues with the Project as the reason for the significantly undervalued offer.

17.     At the same time that Portrait was intentionally slowing down its work on the Project, it was also actively negotiating a "reset" of the Project with LN wherein the Parties were negotiating and attempting to resolve the outstanding issues

and come to an agreement wherein Portrait would resolve the outstanding defects and deficiencies and complete the remaining work to the performed on the Project.

18.    Portrait's actions were deceptive, improper, and caused significantly damage to LN.

19.    On or about April 10, 2023, LN provided a Notice of Intent to Terminate the Contract to Portrait and Travelers, stating that LN would terminate Portrait's Contract within seven (7) days if Travelers did not cure Portrait's breaches. A copy of this notice of intent to terminate letter is attached to Plaintiff's Complaint as Exhibit E.

20.    On April 20, 2023, LN terminated Portrait for cause in accordance with the Contract.  A copy of this termination letter is attached to Plaintiff's Complaint as Exhibit F.

21.    LN has been damaged and continues to be damaged by Portrait's actions and inactions, including but not limited to resulting damages such as the cost to complete Portrait's work to complete the Project, cost of replacement and correction of Portrait's deficient and defective work, liquidated damages/delay damages, cost for additional testing, inspections, cost for uncovering defective and replacement work, additional program and project management, additional compensation for replacement services, increased and extended insurance costs,

additional lending and financing costs, lost revenue, loss of goodwill, and additional expenses made necessary by Portrait's default and termination of the Contract.

## COUNT I – BREACH OF CONTRACT

22.    LN adopts and realleges the allegations contained in Paragraphs 1 through 21 of this Counterclaim as though fully set forth herein.

23.    Portrait materially breached the Contract by failing to perform and timely complete the work in strict accordance with the Contract documents, plans, and specifications for the Project required under the Contract, including but not limited to:

     a. Failure to provide adequate Project labor and manpower, including but not limited to the failure to provide adequate and qualified Project management personnel. Portrait also failed to provide sufficient manpower necessary to perform their work in accordance with the Project Schedule. Throughout the Project, Portrait has failed to man the Project with adequate manpower to advance the work.

     b. Failure to supervise and direct the work using Portrait's "best skill and attention" as required by the Contract.

     c. Repeated replacement of project personnel without necessary approval by LN, resulting in a revolving door of project and site management with no continuity of leadership.

d. Failure to provide reliable construction schedule and construction schedule updates.

e. Failure to perform work in accordance with the logic and sequence as provided in the Construction Schedule.

f. Failure to meet and comply with schedule durations and milestones as set forth in the Construction Schedule.

g. Failure to implement necessary quality control and installation practices resulting in substandard work throughout the Project.

h. Failure to comply with applicable codes and regulations causing delay to the Project, including but not limited to at least two Project shutdowns by the Fire Marshal due to Portrait's failure to follow and comply with applicable codes and regulations.

i. Installation of damaged, defective, non-conforming product / work or material, including but not limited to the damaged, defective, non-complaint installation of the Project's: plumbing and HVAC system, roof and structure systems, window and door waterproofing, exterior stucco and painting, cabinetry and countertops, balconies, and various other defective and non-compliant work.

j. Failure to take prompt and appropriate corrective action to repair its defective and non-compliant work, including those provided in the preceding paragraph.

k. Failure and deliberate refusal to conduct and/or schedule necessary inspections, including but not limited to inspections required by the threshold inspector.

l. Failure to comply with safety protocols, including but not limited to fall protection protocols.

m. Failure to complete all work as set forth in the Contract Documents, including but not limited to refusal to install the Project's catwalk and refusal to install portions of the work in accordance with the Interior Design Drawings.

n. Failure to install work according to Contract Documents, including Portrait's action of unilaterally, and without LN's authorization, installing simpler, cheaper products and features than those required by the Contract Documents. Moreover, Portrait failed to pass the cost-savings related to such actions to LN.

o. Failure to provide financial information as required by the Contract despite requests for same by LN.

4854-7803-8903 v.2 078615/01500

p. Failure to comply with the Contract's Pay Application process, including but not limited to failing to provide the required lien waivers as part of the payment applications.

q. Failure to complete the work within the established Contract time and subsequent delay in Substantial Completion.

r. Acting with bad faith by continually submitting incorrect and exaggerated pricing for changes or claims for additional costs to LN, causing delay and additional costs relating to LN's project management operations.

s. Failure to provide appropriate credits to LN for deductive changes, including but not limited to, for example, credits related to Value Engineering.

t. Abandoning the Project prior to Final Completion.

u. Failure to timely pay subcontractors despite receiving monies for the subs as paid by LN.

v. Failure to manage its subcontractors as to ensure adequate staffing and manpower of subcontractors to achieve schedule commitments and quality control requirements.

w. Failure to comply with applicable HUD guidelines and notice requirements.

4854-7803-8903 v.2 078615/01500

x. Failure to uphold express and implied contractual duties, including but not limited to Portrait's failure to act in good faith in the performance of the Contract.

24.    These material breaches caused or substantially contributed to damages suffered by LN on the Project.

25.    As a result of Portrait's material breaches of the Contract, LN has been and continues to be damaged, including but not limited to resulting damages such as the cost to complete Portrait's work to complete the Project, cost of replacement and correction of Portrait's deficient and defective work, liquidated damages/delay damages, cost for additional testing, inspections, cost for uncovering defective and replacement work, additional program and project management, additional compensation for replacement services, increased and extended insurance costs, additional lending and financing costs, lost revenue, loss of goodwill, and additional expenses made necessary by Portrait's default and abandonment of the Project, which necessitated LN's termination of the Contract.

26.    LN hired the undersigned law firm to represent it in this matter and is obligated to pay reasonable fees for the firm's services.

WHEREFORE, Defendant/Counter-Plaintiff, LN APARTMENTS, LLC respectfully requests this Honorable Court enter judgment against Plaintiff/Counter-Defendant, PORTRAIT CONSTRUCTION OF FLORIDA, INC., and awarding

4854-7803-8903 v.2 078615/01580

Portrait nothing on its complaint, and for all damages resulting from and related to its breach of contract, including costs and interest, and grant LN any such further relief as this Court deems just and proper.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

27.     LN adopts and realleges the allegations contained in Paragraphs 1 through 26 of this Counterclaim as though fully set forth herein.

28.     LN and Portrait are parties to the written Contract attached to Portrait's Amended Complaint as Exhibit A, and under Florida law Portrait owes to LN an implied covenant of good faith and fair dealing associated with the Contract.

29.     The purpose of the implied covenant of good faith is "to protect the reasonable expectations of the contracting parties." *Ins. Concepts & Design, Inc. v. Healthplan Services, Inc.*, 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001); *see also, Cox v. CSX Intermodel, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999) ("[T]he implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations.").

30.     Portrait's conduct relating to every contractual provision cited in Count I (Breach of Contract) did not comport with LN's reasonable expectations related to Austin's performance under the Contract.

-27-

31.    For example, Portrait failed to install its work in accordance with the Contract Documents, and in at least one instance, Portrait unilaterally and without LN's authorization, installed simpler, cheaper products and features for the Project's cabinets and countertops than those required by the Contract Documents, failed and refused to remove the non-conforming cabinets once directed, and subsequently failed to pass along the cost-savings related to such actions to LN.

32.    Furthermore, there are numerous instances of Portrait acting in bad faith by repeatedly submitting incorrect and exaggerated pricing for changes or claims for additional costs to LN and failing to provide appropriate credits to LN for deductive changes, or to provide credits to LN where otherwise due, causing delay and additional costs relating to LN's project management operations.

33.    Additionally, Portrait failed or refused to timely pay its subcontractors despite receiving payment for said subcontractors from LN.

34.    Finally, Portrait intentionally slowed down its work on the Project, which was already significantly behind schedule due to delays caused by Portrait, so as to further distress the Project and attempt to pressure LN to sell the Project to Portrait Construction Inc.'s CEO, Thomas Day, in his individual capacity, at a price substantially less than its value.

35.    Portrait's failure to discharge its contractual responsibilities unfairly frustrated the purposes of the Contract and disappointed LN's reasonable expectations.

36.    Portrait's breaches unfairly interfered with LN's receipt of the benefits of the Contract, and LN has suffered damages as a result.

WHEREFORE, Defendant/Counter-Plaintiff, LN APARTMENTS, LLC respectfully requests this Honorable Court enter judgment against Plaintiff/Counter-Defendant, PORTRAIT CONSTRUCTION OF FLORIDA, INC., and awarding Portrait nothing on its complaint, and for all damages resulting from and related to its breach of the implied covenant of good faith and fair dealing, including costs and interest, and grant LN any such further relief as this Court deems just and proper.

## COUNT III – LIQUIDATED DAMAGES

37.    LN adopts and realleges the allegations contained in Paragraphs 1 through 21 and 23 of this Counterclaim as though fully set forth herein.

38.    Portrait breached the Portrait Contract by failing to pursue their work in accordance with the Project schedule. Portrait's failure to timely pursue their work resulted in a delay to the Project's Substantial Completion date.

39.    Article 3 of the Contract sets forth daily Liquidated Damages that shall be assessed against Portrait for failure to achieve the Project's Substantial

Completion Deadline.

40.    Portrait failed to meet the Project's Substantial Completion Deadline.

41.    The Liquidated Damages are currently valued at $2,012,072.    The Liquidated Damages will continue to accrue and increase until LN is able to achieve the Project's Substantial Completion Deadline of the Project using a replacement contractor.

42.    As a direct and proximate result of Portrait's breaches, LN has incurred damages, including, but not limited to delays and delay damages, which the parties had contractually agreed would be addressed via the assessment of liquidated damages by LN.

43.    LN hired the undersigned law firm to represent it in this matter and is obligated to pay reasonable fees for the firm's services.

WHEREFORE, Defendant/Counter-Plaintiff, LN APARTMENTS, LLC respectfully requests this Honorable Court enter judgment against Plaintiff/Counter-Defendant, PORTRAIT CONSTRUCTION OF FLORIDA, INC., and awarding Portrait nothing on its complaint, for all damages resulting from and related to its breach of contract, including costs and interest, and grant LN any such further relief as this Court deems just and proper.

## COUNT IV – FRAUDULENT LIEN

44.    LN adopts and realleges the allegations contained in Paragraphs 1

through 21 and 23 of this Counterclaim as though fully set forth herein.

45.    LN Apartments, LLC, as the record owner of the Property and the party who paid for the improvements on the Property, bring this action pursuant to Florida Statute § 713.31(2)(c) against Portrait for the declaration of a fraudulent lien as defined in Florida Statute § 713.31(2)(c), and for damages and all other appropriate statutory remedies available under Florida Statutes § 713.31(2)(b) and (c), plus an award of costs and attorney's fees pursuant to Florida Statutes § 713.29 and § 713.31(2)(c).

46.    On or about July 7, 2023, Portrait recorded its Claim of Lien in the amount of $6,976,419.34. *See* Portrait's Amended Complaint Exhibit "C".

47.    Portrait improperly and wrongfully recorded Portrait's Liens against the Property.

48.    Portrait's Lien is a "fraudulent lien" under Florida law, because Portrait has asserted a lien which Portrait has "willfully exaggerated the amount for which such lien is claimed or in which [Portrait] has willfully included a claim for work not performed upon or materials not furnished for the property upon which he or she seeks to impress such lien or in which [Portrait] has compiled his or her claim with such willful and gross negligence as to amount to a willful exaggeration." *See* § 713.31, Fla. Stat. Pursuant to Florida Statute § 713.31, the lien "shall be deemed a fraudulent lien."

49.     First, upon information and belief, Portrait's Claim of Lien is a "fraudulent lien" under Florida law because Portrait included amounts for (1) delays and (2) work which was not approved. For instance, despite the express provisions in the Contract that require changes to be approved in writing and other admonitions that Portrait would assume the risk of doing work without approval, Portrait improperly included in its Claim of Lien amounts for delays and unapproved change orders. *See* Contract Document A201, Article 7. *See also, Onionskin, Inc. v. Deciccio,* 720 So. 2d 257, 258 (Fla. 5th DCA 1998) (Lien willfully exaggerated amount when it included alleged breach of the contract costs, such as delay expenses, outside the fixed price contract amount); *Delta Painting v. Baumann,* 710 So. 2d 663, 664 (Fla. 3d DCA 1998) (Fraudulent lien determination supported by evidence that claim of lien included amounts for additional work unauthorized by owners.); *Hobbs Const. and Develop., Inc. v. Presbyterian Homes of the Synod of Florida,* 440 So. 2d 673 (Fla. 1st DCA 1983).

50.     Second, upon information and belief, Portrait's Claim of Lien is a "fraudulent lien" under Florida law because Portrait improperly included amounts for incomplete, defective, and/or deficient work, which, upon information and belief, included, but was not limited to, work performed on the main entranceway, defective installation of balcony / patio doors, balcony topping slabs with excessive slope, defective shoring support of the columns supporting the balconies, noncompliant

-32-

troughs and deficient stormwater roof drains, defective plumbing systems, deficient refrigerant piping, and failure to complete the Project's HVAC system. *See Onionskin, Inc. v. DeCicco*, 720 So. 2d at 258 ("…the basis of the lien is essentially for the value added to the property.") and *Viyella Co. v. Gomes*, 657 So. 2d 83 (Fla. 3d DCA 1995) (Lien deemed fraudulent where lienor had included claims for work even though lienor had not fully performed the contract.).

51.    Third, upon information and belief, Portrait's Claim of Lien is a "fraudulent lien" under Florida law because Portrait has failed to provide LN a credit for the liquidated damages incurred as a result of delays to the completion of the Project for which Portrait has acknowledged its responsibility for certain delays.

52.    Fourth, upon information and belief, Portrait's Claim of Lien is a "fraudulent lien" under Florida law because it includes costs associated with profit Portrait would have made had under the Contract and costs Portrait has not yet earned, including all retainage on the Project.

53.    As a direct and proximate result of Portrait's fraudulent lien, LN has sustained and will in the future continue to sustain losses, damages, and injury.

54.    Said losses, damages, and injury include, but are not limited to, court costs, clerk's fees, reasonable attorneys' fees and costs for services in securing the discharge of the lien, the amount of any premium for a bond given to obtain the discharge of the lien, interest on any money deposited for the purposes of

-33-

discharging the lien, and also costs to correct the defective and deficient work.

55.    LN is entitled to punitive damages in an amount not exceeding the difference between the amount actually due to Portrait, if any, and the amount of the fraudulent lien pursuant to Florida Statute § 713.31(2)(c).

56.    LN hired the undersigned law firm to represent it in this matter and is obligated to pay reasonable fees for the firm's services for which Portrait is liable pursuant to Florida Statutes § 713.29 and § 713.31.

WHEREFORE, Defendant/Counter-Plaintiff, LN APARTMENTS, LLC respectfully requests this Honorable Court to:

A. Determine that Portrait's Claim of Lien is improper, unenforceable, and fraudulent;

B. Enter an Order vacating and canceling Portrait's Claim of Lien;

C. Award all statutory remedies, including losses, damages, and injury including, but not limited to, court costs, clerk's fees, reasonable attorneys fees and costs for services in securing the discharge of the lien, the amount of any premium for a bond given to obtain the discharge of the lien, interest on any money deposited for the purpose of discharging the lien, and also costs to correct the defective and deficient work.

D. Award statutory punitive damages in an amount not exceeding the different between the amount actually due to Portrait, if any, and the

-34-

amount of the fraudulent lien pursuant to Florida Statute §713.31.

E. Award court costs and attorney's fees pursuant to Florida Statutes § 713.29 and/or §713.31; and

F. Award such other and further relief that this Court deems just, equitable and proper.

## COUNT V – VIOATION OF FLA. STAT. § 553.84

57.     LN adopts and realleges the allegations contained in Paragraphs 1 through 19 and 21 of this Counterclaim as though fully set forth herein.

58.     The purpose of the Florida Building Code (the "Code") is to establish minimum requirements to protect the health, safety, and welfare of the public. Its provisions apply to, among other things, construction, alteration, modification, and repairs of buildings and structures.

59.     At all times relevant to this cause of action, Portrait was required to perform its Work in accordance with the Code.

60.     Throughout the course of the Project, Portrait violated numerous sections of the Code while performing its Work, thereby giving rise to LN's claim for damages under § 553.84, Florida Statutes.

61.     At all times relevant to this cause of action, Portrait knew or reasonably should have known during its Work that Code violations existed. In addition to the numerous notices provided by LN during the course of the Project, LN also provided

Portrait with a copy of Partner Engineering and Science, Inc.'s ("Partner Engineering") June 14, 2023 detailed assessment and assessment of the Project, which outlined significant defects and deficiencies with Portrait's work. A true and correct copy of Partner Engineering's letter is attached hereto as **Exhibit "A".**

62.    As a direct and proximate result of Portrait's violations of the Code, LN has been damaged.

WHEREFORE, Defendant/Counter-Plaintiff, LN APARTMENTS, LLC respectfully requests this Honorable Court enter judgment against Plaintiff/Counter-Defendant, PORTRAIT CONSTRUCTION OF FLORIDA, INC., and awarding Portrait nothing on its complaint, for all damages resulting from and related to its negligence, including costs and interest, and grant LN any such further relief as this Court deems just and proper.

## COUNT VI – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, *Fla. Stat. § 501.201, et seq.*

63.    LN adopts and realleges the allegations contained in Paragraphs 1 through 19 of this Counterclaim as though fully set forth herein.

64.    This count seeks damages against Portrait for violating Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501.

65.    FDUTPA broadly prohibits all "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the

conduct of any trade of commerce."

66.     Portrait has engaged in trade and/or commerce within the meaning of FDUTPA, and LN has the right to pursue remedies under the FDUTPA.

67.     LN is a consumer under § 501.203(7).

68.     At all material times, Portrait was engaged in trade or commerce as defined by § 501.203(8).

69.     At the outset of the Project, Portrait expressly assured LN that it had sufficient skill, experience, and competent team members to perform the work required by the Contract. As a result of these assurances, LN agreed to award the Project to Portrait.

70.     Furthermore, under the Contract, Portrait was to provide full and complete services necessary for the construction of the Project.

71.     Portrait engaged in deceptive or unfair practices in the course of trade or commerce by promising it could and would properly and sufficiently staff the Project with skilled and competent workers, but repeatedly and consistently failed and refused to do so.

72.     Portrait further engaged in deceptive or unfair practices in the course of trade or commerce by intentionally slowing down and delaying its work on the Project in an effort to decrease the value of the Project and aid Portrait Construction Inc.'s CEO Thomas Day 's efforts to purchase the Project at a significantly

4854-7803-8903 v.2 078615/01500

diminished value.

73.    Portrait committed these intentional actions and inactions all while actively negotiating a "reset" of the Project that would resolve the outstanding defects and deficiencies in Portrait's work and provide for Portrait to complete the remaining work on the Project.

74.    Shortly after Mr. Day's improper attempts to purchase the Project at a significantly diminished amount, for which he cited the Project delays and issues as justification for the significantly undervalued offer, LN terminated Portrait for cause on or about April 20, 2023.

75.    As a direct and proximate result of Portrait's deceptive behavior and injurious conduct, LN has sustained actual damages in an amount equal to the costs associated with the extensive delays incurred as a result of Portrait's failure to properly staff the Project, the costs necessary to remedy the various defects and deficiencies in the work performed by Portrait, the costs to complete the remaining work on the Project that Portrait abandoned, increased Project management costs, increased interest costs, increased insurance premiums, costs incurred in hiring consultants to evaluate and document Portrait's defective work, lost profits, loss of reputation, and loss of good will.

WHEREFORE, Defendant/Counter-Plaintiff, LN APARTMENTS, LLC respectfully requests this Honorable Court enter judgment against Plaintiff/Counter-

4854-7803-8903 v.2 078615/01500

Defendant, PORTRAIT CONSTRUCTION OF FLORIDA, INC., and awarding

Portrait nothing on its complaint, awarding LN actual damages, consequential

damages, special damages, costs, attorney's fees pursuant to Section 501.2105, and

grant LN any such further relief as this Court deems just and proper.

Respectfully submitted this 30th day of August, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: */s/ Michael K. Wilson*
**MICHAEL K. WILSON, ESQ.**
Florida Bar 0657069
**PAUL A. BENNETT, ESQ.**
Florida Bar 0106278
390 North Orange Avenue, Suite 1400
Orlando, FL 32801
T: 407.669.4200
F: 407.425.8377
mike.wilson@nelsonmullins.com
paul.bennett@nelsonmullins.com
tracy.wilson@nelsonmullins.com
melissa.tejada@nelsonmullins.com
*Attorneys For Defendant, LN Apartments, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of August, 2023, a true and correct

copy of the foregoing has been filed with the Clerk of Court by using the Florida

Court's eFiling Portal, which will send notice and electronic copy to: **Brian P.**

**Kirwin, Esq.** and **April A. Rocke, Esq.,** Kirwin Norris, P.A., 15 West Church

Street, Suite 301, Orlando, FL 32801 (bpk@kirwinnorris.com and

aar@kirwinnorris.com) *(Counsel for Plaintiff)*.

By    */s/ Michael K. Wilson*
**MICHAEL K. WILSON, ESQ.**
Florida Bar 0657069

4854-7803-8903 v.2 078615/01500

# EXHIBIT "A"



## PROPERTY CONDITION REPORT

Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832

June 14, 2023
Partner Project Number: 23-402327.2

Prepared for:

**Nelson Mullins**
**Futura**
Orlando, Florida 32801
Winter Park, Florida 32789



Engineers who understand your business

**PARTNER**
**Engineering and Science, Inc.**

June 14, 2023

Mr. Michael Wilson, Esq.
Partner
Nelson Mullins
390 North Orange Ave., Suite 1400
Orlando, Florida 32801

Mr. Reinerio P. Faife
President
Futura
147 East Lyman Avenue, Suite C
Winter Park, Florida 32789

Subject:        Property Condition Report
                Futura at Nona Cove Apartments
                19465 Boggy Creek Road
                Orlando, Florida 32832
                Partner Project No. 23-402327.2

Dear Mr. Wilson:

Partner Engineering and Science, Inc. (Partner) is pleased to provide the results of the assessment performed on the above-referenced property. At a minimum, this assessment was performed in conformance with the scope and limitations as set forth by ASTM E2018-15 "Standard Guide for Property Condition Assessments: Baseline Property Condition Assessment Process" and as specified in the engagement agreement that initiated this work.

The purpose of this assessment is to describe the primary systems and components of the subject property and to identify conspicuous defects or material deficiencies.

This assessment was performed utilizing methods and procedures consistent with good commercial or customary practices designed to conform to acceptable industry standards. The independent conclusions represent Partner's best professional judgment based upon existing conditions and the information and data available to us during the course of this assignment.

We appreciate the opportunity to provide these assessment services. If you have any questions concerning this report, or if we can assist you in any other matter, please contact Drew McCreery at 310-357-8318 or dmccreery@partneresi.com.

Sincerely,

Partner Engineering and Science, Inc.

**DRAFT**

Justin M Lia P.E
Principal | Director, Institutional A.E Services

**DRAFT**

Drew McCreery
National Client Manager

# EXECUTIVE SUMMARY AND PROPERTY DESCRIPTION

## Executive Summary

In accordance with the requirements of Futura, Partner Engineering and Science, Inc. (Partner) has performed a property condition assessment (PCA) of the parcel and improvements located at 19465 Boggy Creek Road, Orlando, Florida (subject property). The assessment was performed in accordance with ASTM E2018-15 "Standard Guide for Property Condition Assessments: Baseline Property Condition Assessment Process". The purpose of this PCA was to observe and document readily-visible materials and building system defects that might significantly affect the value of the subject property, and determine if conditions exist which may have a significant impact on the continued operation of the facility.

The subject property improvements are placed upon one parcel. Per the ALTA/ACSM survey, dated February 4, 2010, the parcel is irregularly-shaped and comprise 5.58 acres. The subject property is bound by Narcoossee Road to the Northeast, Boggy Creek Road to the South, adjacent single-family homes to the West, and retail properties to the East.

| Parcel | Assessor's Parcel Number (APN) | Square Feet | Acreage | Parcel Improvements |
|---|---|---|---|---|
| A | 32-24-31-5148-01-000 | 243,064 | 5.58 | One 5-story building with attached parking structure |
| | Total: | 243,064 | 5.58 | |

The subject property is a single-building, five-story multi-family residential property containing approximately 258,760 square feet of rentable space with an attached parking structure.

The subject property features 260 apartment units and amenity spaces. The building is currently under construction and is approximately 80% complete. Detailed physical measurements were not performed as part of this assessment. Parking is not included in the gross area calculations.

The subject property is located on a relatively flat parcel with access from street level from the North from Narcoossee Road and from the South from Boggy Creek Road.

Parking is provided by a six level, attached concrete parking structure and a small surface lot near the leasing office. According to the information provided, the subject property contains a total of 442 parking spaces, including nine surface spaces and 433 spaces within the parking garage. Parking spaces have not been striped yet, therefore no accessible spaces are currently in place.

The building is founded on a post tension reinforced concrete slab-on-grade system with perimeter strip footings and interior footings below bearing locations. Post tension rods provide reinforcement to the slab. The elevated floor systems for the building consist of conventional wood stud and joist platform framing. Roof framing appears to consist of wood trusses and joists supporting a plywood deck. Roof coverings consist of a single-ply thermoplastic (TPO) membrane over low-slope construction.

The exterior walls of the building consist of fiber cement board siding, stucco, and dry stack manufactured stone with caulked joints at each panel intersection as well as at the interface with dissimilar materials. The flat roofing areas consist of a single-ply, 60 mil, adhered thermoplastic polyolefin (TPO) roofing system. The



main entrance consists of a pair of aluminum-framed doors with full-height glazing set in an aluminum storefront system. Secondary doors are painted, hollow metal set in metal frames and tenant unit entrance doors are painted hollow metal set in metal frames.

Windows are part of the storefront entry system or are punch-type windows at the office floors. The windows consist of tinted, double-pane glazing in clear anodized-aluminum frames. A glass panel curtain wall system was observed at the main entrance and pool deck entrance of the subject building. The curtain wall consists of tinted insulated glass.

Single hung windows appeared to be double-pane fixed and operable units. Window framing was observed to be vinyl. Windows at the building entrances are part of a storefront window system consisting of full height, low-e glazing in aluminum frames that incorporates the entry doors.

Heating, ventilation, and air conditioning for the buildings are provided by direct expansion (DX) split systems. The residential apartment units are provided with units ranging in capacity from 1.5 to 2.5 tons, the common areas are provided with units ranging in capacity from 1.5 to 4 tons. Additionally, ductless mini-split systems are provided for the garage elevator lobbies and trash room areas. Outside air is directly introduced into the return air plenum of the residential apartment units via concealed ductwork from the exterior façade. Ventilation is further provided by a series of exhaust fans.

Domestic water is supplied from a single, 6-inch municipally owned and maintained water main entering the subject property from the northwest into the domestic water booster pump room in the ground floor level of the parking garage. Water distribution lines are CPVC and drainage lines are PVC. Sanitary drainage and vent piping were both reported and observed to be PVC. Natural gas was not observed to be provided.

The building is sprinklered with a wet pipe, automatic fire sprinkler system.

The residential apartment building is serviced with primary power at 4 locations on the ground floor, that each feed an additional 4 locations on the fourth floor. Power riser and meter centers tag: A1 & A4 are rated at 1,400 and 1,200 amps, respectively; power riser and meter centers tag: B1 & B4, C1 & C4, D1& D4 are rated at 1,600 and 1,200 amps, respectively. All residential services are 120 / 208 volts, 3 phase. The parking garage is fed separately by a dedicated 2,000 amp, 120 / 208 volts, 3 phase main, located on the ground floor at the northwest corner.

The subject property has 3 passenger elevators servicing the residential apartment units, rated at 3,500 lbs. capacity, each. Two are accessible from the parking garage and one is located centrally within the subject building. The elevators were manufactured by Otis Elevator Company. The elevators are traction with electronic controls.

## Overall Condition

Based on the systems and components observed during the site visit, the subject property appeared to be in varied states of construction with numerous deficiencies and poor workmanship observed.. The detailed observations of reviewed systems are presented in the following Sections of this report, with tabulated summary of deficiencies provided in the Appendices.



**Reported Capital Expenditures**

Ongoing construction of the site building and site elements.

**Immediate and Short-Term Repair Items**

This report presents a list of deficiencies for items or conditions that require immediate action as a result of the following: Material existing or potentially unsafe conditions, material code violations, or any other physical deficiencies that if left uncorrected would be expected to result in or contribute to the failure of critical elements or systems within one year which may result in additional remediation. These items should be addressed at the first practical opportunity.

In addition, this report presents a list of deficiencies for items or conditions that may not require immediate action, but should be conducted on a priority basis..

Deferred maintenance items and/or physical deficiencies that are considered significant are also identified in the Deficiency Table - Immediate Repair and Short Term repair.

**Expected Useful Life**

Unless noted otherwise, the subject property appeared to be performing within its intended purpose. Assuming the collective building systems are maintained within industry-recognized standards of care with respect to scope and frequency and correction of apparent deficiencies, the remaining useful life of the subject property is estimated to be no less than 35 years from date of substantial completion. This opinion assumes indemnity from natural disaster and is based on observations within the limits of ASTM E 2018-15.

**Deviation from ASTM E2018**

The deviations listed below are part of the Partner standard operating procedures or were specified in the Client's scope of work.

- This report includes seismic zone information that is not required by the Standard.
- This report includes an evaluation of the condition of the observed components and systems.
- This report excludes Opinions of Costs for suggested remedies of the physical deficiencies identified.

**Recommendations for Additional Investigations**

During the observations at the subject property, the following suspect conditions were determined to warrant further investigation. Further detail of the issues observed is provided in the following sections of the report.

- Additional structural engineering assessment is recommended to evaluate the saw cut framing members in load bearing walls done by the general contractor to recess the refrigerators in the apartments to gain proper clearance for FHA regulations.
- Window Destructive Investigation - Contractor shall remove finishes so installation and repair methods for windows can be observed directly, and a corrective scope of work can be developed, citing reasonable doubt of proper installation of waterproofing details.
- Detailed analysis by an architect, interior designer, installer, and cabinet manufacturer should be performed to remedy non-compliant cabinet and island details to remedy FHA non-compliance



issues regarding knee space, distance between islands, and cabinets, poor installation details, and material defects citing reasonable doubt for proper installation.



# DEFICIENCY TABLE - IMMEDIATE AND SHORT TERM REPAIRS

**PARTNER**
Engineering and Science, Inc.

Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832
June 14, 2023

Project Number: 23-402327.2
Project Type: Multi-family
ber of Square Feet: 331,150
Year Built: 2024

| SECT. # | ITEM | QTY | UNIT | CONDITION |
|---|---|---|---|---|
| **§2.0 - RECON, REGULATORY & DOCUMENT REVIEW** | | | | |
| | No significant items noted. | | | |
| **§3.0 - PROPERTY CHARACTERISTICS** | | | | |
| 3.2.4 | Verification that irrigation lines and drainage pipes are not encroaching on proposed landscaping needs (tree root balls, shrubs, etc.) | 1 | AL | Underground utilities / irrigation lines should be surveyed to verify that all items are in proper locations per the construction plans. A number of issues arose during installation of landscaping, where irrigation and drain lines were located where trees were planned to be planned. |
| 3.2.5 | Replace deflecting retaining walls bordering the on-site retention pond near the pool area along the Western perimeter of courtyard A. | 2,500 | SF | The retaining wall between the retention pond and the site walkways in the Southern section of the site exhibit lateral movement as a result of heavy machinery driving too close to the retaining wall. |
| 3.2.8 | Replace damaged and non-compliant exterior lighting and complete the remaining installation. | 1 | AL | The exterior lighting installation was observed to be incomplete, damaged and non-compliant with the contract documents. An allowance for the replacement with the correct lighting and completion of the installation is recommended. |
| **§4.1 & 4.2 - STRUCTURAL FRAME** | | | | |
| 4.1 | Verification that all foundation post tension rods are present without slack. | 1 | AL | Post tension cables in select areas were reported to have excessive slack. Testing to verify that all tension rods are intact and properly tensioned is recommended to ensure proper reinforcement of the foundation slab. |
| 4.2 | Allowance for additional structural engineering assessment to evaluate the saw cut framing members in load bearing walls done by the general contractor to recess the refrigerators in the apartments to gain proper clearance for FHA regulations. | 1 | AL | Wood studs were saw cut to recess the fridges in the kitchens of the apartment units. Many of these framing members in load bearing walls were damaged due to over-cuts performed by the contractors as they cut into the walls. These cuts could compromise the structural integrity of these walls, therefore a structural analysis of these walls should be performed to determine the proper course of action to remedy the damaged framing members, and to verify that the building framing will be able to properly disburse loads. |
| 4.2 | Repair damaged framing members cut as a result of cuts made into the walls behind fridges in the apartments. | 104 | EA | Repair allowance to remedy the cut structural members in each unit following structural analysis. |

**DEFICIENCY TABLE - IMMEDIATE AND SHORT TERM REPAIRS**

**PARTNER**
Engineering and Science, Inc.

Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832
June 14, 2023

Project Number: 23-402327.2
Project Type: Multi-family
ber of Square Feet: 331,150
Year Built: 2024

| SECT. # | ITEM | QTY | UNIT | CONDITION |
|---|---|---|---|---|
| **4.3 - FACADES OR CURTAIN WALLS** | | | | |
| 4.3.1 | Complete main entrance and pool deck entrance walls from the ground level to the parapet. | 1 | AL | The main entranceway is not per plans and specifications. An allowance for removal and reinstallation, compliant with design documents is recommended. |
| 4.3.1 | Touch up of the sealant joints at the parking garage. | 1 | AL | The tilt-wall panels that were observed to be exhibiting loss of adhesion. |
| 4.3.2 | Window Destructive Investigation – Contractor shall remove finishes so installation and repair methods for windows can be observed directly, and a corrective scope of work can be developed. | 1 | AL | Remove siding / stucco around windows, remove the windows, repair waterproofing details around windows, repair weather barrier, apply self adhered flashing, and replace previously removed siding / stucco. |
| 4.3.2 | Repair waterproofing details on windows. | 152,880 | SF | Remove siding / stucco around windows, remove the windows, repair waterproofing details around windows, repair weather barrier, apply self adhered flashing, and replace previously removed siding / stucco. |
| 4.3.3 | Remove and reset patio / balcony doors that are inoperable. | 30 | EA | Balcony / patio doors were either inoperable or required excessive force to open. The door jambs and thresholds on these doors appeared to be too tight and not allowing the doors to open properly. The doors need to be removed, properly shimmed, then reinstalled and sealed. |
| 4.3.3 | Install proper weatherstripping on patio / balcony doors. | 260 | EA | Patio / balcony doors were observed with insufficient weatherstripping with a number of doors missing weatherstripping all together. Replace all weather stripping. |
| 4.5 | Remove and replace balcony topping slabs. | 16,900 | SF | Balcony topping slabs were observed with excessive slope, with many topping slabs observed to be higher than the interior finished floor in the apartments. The excessive height also becomes and ADA concern as the threshold is too high and creates a potential tripping hazard. |
| 4.5 | Destructive testing of deflected balcony columns at courtyard A and B. | 1 | AL | The columns supporting the balcony stacks at the Southwest corners of courtyards A and B exhibit damage from previous shoring operations. It was reported that the footers of these columns were replaced as a result of the original footings sinking and causing the balcony stacks to deflect. When shoring operations were completed, no verification of condition of balcony framing was performed to verify that no damage to framing was present. |
| 4.5 | Allowance to repair deflected balconies in courtyard A and B | 10 | EA | Repair allowance to repair the stucco fascia, soffits, and any damaged framing members following the destructive testing of these balcony stacks. |

# DEFICIENCY TABLE - IMMEDIATE AND SHORT TERM REPAIRS

**PARTNER**
Engineering and Science, Inc.

Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832
June 14, 2023

Project Number: 23-492327.2
Project Type: Multi-family
ber of Square Feet: 331,150
Year Built: 2024

| SECT. # | ITEM | QTY | UNIT | CONDITION |
|---|---|---|---|---|
| **4.4 - ROOF** | | | | |
| 4.4.1 | Roof replacement and install tapered insulation | 52,262 | SF | Remove roof membrane and install tapered insulation to provide proper slope to remedy ponding on roof surface. |
| 4.4.1 | Roof drain height adjustment / coordination. | 40 | EA | The stormwater roof drains were observed to be installed above the roof, at incorrect height levels, disallowing drainage of stormwater from the roof. The drains will been to be removed and reinstalled in coordination with the roof pitch. |
| **55.1 - PLUMBING, DOMESTIC WATER, & SEWER SYSTEMS** | | | | |
| 5.1 | Clean / flush plumbing systems. | 1 | LS | The plumbing systems have been left in state of partial operation. Cleaning and flushing of the plumbing systems (i.e. domestic water and sanitary, drainage and vent piping systems) is recommended in order to ensure proper operation. |
| 5.1 | Energize /start / commission domestic water booster pump. | 1 | EA | The domestic water booster pump was observed to be off-line and was reported to have never been started. Start-up and commissioning by the manufacturer's representative is recommended. |
| 5.1 | Completion of the plumbing systems installation - Building - Remaining unbilled balance on contract (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The remaining unbilled balance of the Building Plumbing line item to be used for completion of the Building Plumbing systems installation. |
| 5.1 | Completion of the plumbing systems installation - Building - plumbing retainage amount (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The value of the retainage of the Building Plumbing line item is recommended to be included for the completion of the Building Plumbing system installation. |
| 5.1 | Smoke testing, dye testing, and video scoping of underground sanitary sewer pipes to verify that all pipes are functional. | 1 | AL | Smoke tests, dye tests, and scoping of sanitary sewer systems is recommended to verify that drain plumbing is not leaking or blocked, and is venting properly. This testing can verify that all sewer mains tie into the municipal system and identify any potential problem areas. |
| 5.1 | Completion of the plumbing systems installation - Building - 10% of the scheduled value of the plumbing line item (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | An amount equal to 10% of the total scheduled value of the Building Plumbing line item is recommended to be included for the completion of the Building Plumbing system installation. |

# DEFICIENCY TABLE - IMMEDIATE AND SHORT TERM REPAIRS

**PARTNER**
Engineering and Science, Inc.

Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832
June 14, 2023

Project Number: 23-402127.2
Project Type: Multi-Family
ber of Square Feet: 331,150
Year Built: 2024

| SECT. # | ITEM | QTY | UNIT | CONDITION |
|---|---|---|---|---|
| | **§5.2 - HEATING, VENTILATION, & AIR CONDITIONING** | | | |
| 5.2 | Clean supply air ductwork and DX split system evaporator coils. | 270 | EA | The DX split system air handling units have been placed in operation, while construction activities were taking place. This has resulted in the evaporator coils and supply air ductwork being exposed to dust, etc. for which specialized professional cleaning is recommended. |
| 5.2 | Roof mounted DX split system refrigerant line-set coordination with condensing unit racks. | 20 | EA | The refrigerant piping for the DX split systems, between the gooseneck fittings and the condensing unit racks on the roof has been improperly coordinated. This has resulted in multiple areas of impeded accessibility and excessive refrigerant piping runs. Proper coordination and corresponding adjustment is recommended. |
| 5.2 | Completion of the HVAC systems installation - Building - Remaining unbilled balance on contract (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The remaining unbilled balance of the Building HVAC line item to be used for completion of the Building HVAC systems installation. |
| 5.2 | Completion of the HVAC systems installation - Building - HVAC retainage amount (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The value of the retainage of the Building HVAC line item is recommended to be included for the completion of the Building HVAC system installation. |
| 5.2 | Completion of the HVAC systems installation - Building - 10% of the scheduled value of the Building HVAC line item (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | An amount equal to 10% of the total scheduled value of the Building HVAC line item is recommended to be included for the completion of the Building HVAC system installation. |
| 5.2 | Completion of the HVAC systems installation - Garage - Remaining unbilled balance on contract (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The remaining unbilled balance of the Garage HVAC line item to be used for completion of the Garage HVAC systems installation. |
| 5.2 | Completion of the HVAC systems installation - Garage - HVAC retainage amount (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The value of the retainage of the Garage HVAC line item is recommended to be included for the completion of the Garage HVAC system installation. |
| 5.2 | Completion of the HVAC systems installation - Garage - 10% of the scheduled value of the Garage HVAC line item (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | An amount equal to 10% of the total scheduled value of the Garage HVAC line item is recommended to be included for the completion of the Garage HVAC system installation. |

# DEFICIENCY TABLE - IMMEDIATE AND SHORT TERM REPAIRS

**PARTNER** Engineering and Science, Inc.

Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832
June 14, 2023

Project Number: 23-403327.2
Project Type: Multi-family
...ber of Square Feet: 331,150
Year Built: 2024

| SECT. # | ITEM | QTY | UNIT | CONDITION |
|---|---|---|---|---|
| **53 - ELECTRICAL SUPPLY & NATURAL GAS** | | | | |
| 5.3 | Completion of the Electrical systems installation - Building - Remaining unbilled balance on contract (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA. | The remaining unbilled balance of the Building Electrical line item to be used for completion of the Building Electrical systems installation. |
| 5.3 | Completion of the Electrical systems installation - Building - Electrical retainage amount (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA. | The value of the retainage of the Building Electrical line item is recommended to be included for the completion of the Building Electrical system installation. |
| 5.3 | Completion of the Electrical systems installation - Building - 10% of the scheduled value of the Building Electrical line item (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA. | An amount equal to 10% of the total scheduled value of the Building Electrical line item is recommended to be included for the completion of the Building Electrical system installation. |
| 5.3 | Completion of the Electrical systems installation - Garage - Remaining unbilled balance on contract (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA. | The remaining unbilled balance of the Garage Electrical line item to be used for completion of the Garage Electrical systems installation. |
| 5.3 | Completion of the Electrical systems installation - Garage - Electrical retainage amount (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA. | The value of the retainage of the Garage Electrical line item is recommended to be included for the completion of the Garage Electrical system installation. |
| 5.3 | Completion of the Electrical systems installation - Garage - 10% of the scheduled value of the Electrical line item (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA. | An amount equal to 10% of the total scheduled value of the Garage Electrical line item is recommended to be included for the completion of the Garage Electrical system installation. |
| 5.3 | Completion of the DAS - Emergency Response RF systems installation - Building - Remaining unbilled balance on contract (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA. | The remaining unbilled balance of the Building DAS - Emergency Response RF line item to be used for completion of the Building DAS - Emergency Response RF systems installation. |
| 5.3 | Completion of the DAS - Emergency Response RF systems installation - Building - DAS - Emergency Response RF retainage amount (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA. | The value of the retainage of the Building DAS - Emergency Response RF line item is recommended to be included for the completion of the Building DAS - Emergency Response RF system installation. |
| 5.3 | Completion of the DAS - Emergency Response RF systems installation - Building - 10% of the scheduled value of the Building DAS - Emergency Response RF line item (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA. | An amount equal to 10% of the total scheduled value of the Building DAS - Emergency Response RF line item is recommended to be included for the completion of the Building DAS - Emergency Response RF system installation. |
| 5.3 | Completion of the Low Voltage A/V systems installation - Building - Remaining unbilled balance on contract (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA. | The remaining unbilled balance of the Building Low Voltage A/V line item to be used for completion of the Building Low Voltage A/V systems installation. |

# DEFICIENCY TABLE - IMMEDIATE AND SHORT TERM REPAIRS

Futura at Nona Cove Apartments
19445 Boggy Creek Road
Orlando, Florida 32832
June 14, 2023

Project Number: 23-402327.2
Project Type: Multi-family
ber of Square Feet: 331,150
Year Built: 2024



**PARTNER** Engineering and Science, Inc.

| SECT. # | ITEM | QTY | UNIT | CONDITION |
|---|---|---|---|---|
| 5.3 | Completion of the Low Voltage A/V systems installation – Building – Low Voltage A/V retainage amount (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The value of the retainage of the Building Low Voltage A/V line item is recommended to be included for the completion of the Building Low Voltage A/V system installation. |
| 5.3 | Completion of the Low Voltage A/V systems installation – Building – 10% of the scheduled value of the Building Low Voltage A/V line item (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | An amount equal to 10% of the total scheduled value of the Building Low Voltage A/V line item is recommended to be included for the completion of the Building Low Voltage A/V system installation. |
| **5.5.4 VERTICAL CONVEYANCES** | | | | |
| 5.4.1 | Completion of the Elevator systems installation – Building – Remaining unbilled balance on contract (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The remaining unbilled balance of the Building Elevator line item to be used for completion of the Building Elevator systems installation. |
| 5.4.1 | Completion of the Elevator systems installation – Building – Elevator retainage amount (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The value of the retainage of the Building Elevator line item is recommended to be included for the completion of the Building Elevator system installation. |
| 5.4.1 | Completion of the Electrical systems installation – Building – 10% of the scheduled value of the Building Elevator line item (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | An amount equal to 10% of the total scheduled value of the Building Elevator line item is recommended to be included for the completion of the Building Elevator system installation. |
| 5.4.1 | Completion of the Elevator systems installation – Garage – Remaining unbilled balance on contract (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The remaining unbilled balance of the Garage Elevator line item to be used for completion of the Garage Elevator systems installation. |
| 5.4.1 | Completion of the Elevator systems installation – Garage – Elevator retainage amount (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | The value of the retainage of the Garage Elevator line item is recommended to be included for the completion of the Garage Elevator system installation. |
| 5.4.1 | Completion of the Elevator systems installation – Garage – 10% of the scheduled value of the Elevator line item (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). | 1 | EA | An amount equal to 10% of the total scheduled value of the Garage Elevator line item is recommended to be included for the completion of the Garage Elevator system installation. |

DEFICIENCY TABLE - IMMEDIATE AND SHORT TERM REPAIRS

**PARTNER** Engineering and Science, Inc.

Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832
June 14, 2023

Project Number: 23-402327.2
Project Type: Multi-family
ber of Square Feet: 331,150
Year Built: 2024

| SECT. # | ITEM | QTY | UNIT | CONDITION |
|---|---|---|---|---|
| | **5.5 - LIFE SAFETY & FIRE PROTECTION** | | | |
| 5.5 | Fire Seal HVAC refrigerant line-set penetrations at gooseneck fittings on roof. | 30 | EA | The fire sealing of the DX split system refrigerant piping at the gooseneck fittings on the roof was noted to be missing. Per detail entitled "Roof Jack Installation Detail" on Dwg M7.02, fire stop compound is shown to be installed at the roof penetration points where the refrigerant lines enter and exit. |
| 5.5.1 | Review hydraulic calculations. | 1 | LS | Revise hydraulic calculations to align with actual pump installed (Fairbanks Nijhuis 1000 GPM installed vs. Fairbanks Morse 500 GPM). (Note that a more recent hydraulic flow test may be required.) |
| 5.5.1 | Sprinkler installation incomplete. | 60 | EA | Approximately 20% of units and hallways were observed to have protective covers installed. Remove/discard covers and install escutcheons in these locations. |
| 5.5.1 | Verification of Previous Sprinkler Work. | 80 | EA | If a new contractor is selected to complete work, they will want to verify that previous piping/sprinkler heads/equipment are installed properly. |
| 5.5.1 | Sprinkler Coordination. | 30 | EA | Sprinklers were observed to hang below ceiling in the fitness club, coworking space, and the two-story clubhouse areas. Unclear whether a drop ceiling is planned to be installed. Coordinate to ensure that sprinklers are installed at an appropriate height relative to the final planned ceilings. |
| 5.5.1 | Stair 1 Riser Uncharged. | 1 | LS | It was observed that Riser 1 was at 0 psi, implying that one of the risers was not charged with water. |
| 5.5.1 | Missing In-Unit Fire Extinguishers. | 130 | EA | Fire extinguishers were observed in roughly half of the units surveyed, under the kitchen sink. Provide fire extinguishers in the remaining half of units. |
| 5.5.2 | Fire Alarm Panel Installation Incomplete. | 1 | LS | Firelite ES-200X observed to be installed in fire alarm closet, but interior of panel appeared to be unfinished. Assumes programming sequence of operations and interfacing with relays has not been started. Complete installation of fire alarm panel. (Note that the FA drawings indicate a second fire alarm control panel in an electrical closet in the parking garage that was not accessible by JH on site, so the status of that panel could not be verified. It is assumed this second panel is in an equivalent state.) |
| 5.5.2 | Verification of Previous FA Work. | 80 | EA | If a new contractor is selected to complete work, they will want to verify that previous wiring/devices are installed properly. |
| 5.5.2 | Missing Smoke Detectors at Elevator. | 5 | EA | Elevator inside apartment building missing smoke detector. Wiring appears to have been pulled, install smoke detector. These detectors will also need to be interfaced with elevator controls/the alarm system. |
| 5.5.2 | Covers Provided on Smoke Detectors. | 56 | EA | Nearly all smoke detectors installed in the building were covered by caps. These must be removed in order for them to function properly. |
| 5.5.4 | Corridor Smoke Barrier Door Installation Incomplete. | 6 | EA | Life safety drawings indicate cross-corridor doors on Level 1. Corridors are slated to be one-hour rated, and per Table 716.5, opening protectives in corridor walls must be 1/3 hour rated. Provide appropriately rated door and frame assembly in these locations. |
| 5.5.4 | Fire Barrier Door Installation Incomplete. | 10 | EA | Life safety drawings indicate doors in 3-hour fire-resistance rated barrier at building separations. Per Table 716.5, opening protectives in 3 hour fire barriers must be 3 hour rated. Provide appropriately rated door and frame assembly in these locations. |

DEFICIENCY TABLE - IMMEDIATE AND SHORT TERM REPAIRS

**PARTNER**
Engineering and Science, Inc.

Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832
June 14, 2023

Project Number: 23-402327.2
Project Type: Multi-Family
ber of Square Feet: 331,150
Year Built: 2024

| SECT. # | ITEM | QTY | UNIT | CONDITION |
|---|---|---|---|---|
| 5.5.3 | Horizontal Exit Fire Door Swing. | 6 | EA | Verify that the horizontal exit fire door from the garage to the apartment building (which acts as the second exit from each floor of the garage, in its southeast corner) swings into the apartment building. If it does not, reinstall door/frame so that the door swings in the direction of egress travel for the occupants. |
| | **16.0 - INTERIOR ELEMENTS** | | | |
| 6.0 | Detailed analysis by an architect, interior designer, installer, and cabinet manufacturer should be performed to remedy non-compliant cabinet and island details to remedy FHA non-compliance issues regarding knee space and distance between islands and cabinets. | 1 | AL | The cabinets and islands were observed to be non-compliant with current design drawings and FHA regulations. Clearance between islands and refrigerators is not sufficient to meet FHA standards. Many of the cabinet details called for in the original drawings do not match what was installed. |
| 6.0 | Refacing bathroom cabinets. | 1 | AL | The bathroom cabinets installed are not compliant with design drawings, an allowance for resurfacing the installed cabinetry is included. |
| 6.0 | Anticipated replacement of non-compliant cabinet and island details. | 1 | AL | Many of the cabinets installed are not compliant with design drawings and utilize improper hardware and excessive use of spacers. Cabinet hardware is not consistent throughout, and no soft-close drawers were installed. Replacement of the cabinetry should remedy the accessibility concerns flagged in the stand alone ADA report. |
| 6.0 | Allowance to send a sample of the counter top material to verify material installed. | 1 | AL | Concerns were raised that the countertop material installed is not actual quartz, as countertops are exhibiting excessive wear. A sample of the countertop material should be removed and sent to a lab to determine if the material installed is the material that was billed. |
| 6.0 | Anticipated replacement of non-compliant countertops. | 1 | AL | Countertops were observed to be poorly installed in a number of units with widespread damage (chipped corners, cracks, and scratches). Improper counter top sizes were observed on the islands where the overhangs were not sufficient enough to allow knee space for a person to sit at the islands. Installation of proper countertops with proper size details to provide the proper clearances for FHA compliance is recommended. |
| 6.0 | Replacement of damaged vinyl plank flooring in apartment units. | 124,900 | SF | Approximately 80% of the units were observed with excessive debris and cosmetic damage to the vinyl plank flooring. Damage was most likely caused during construction as the contractors did not utilize any paper floor protection after floors were installed. The damaged flooring will need to be replaced. |
| 6.0 | Re-level finished floors in apartment units. | 156 | APT | Approximately 60% of the units were observed with poor finish floor leveling details, leading to large gaps between baseboards and the finished floor. Proper leveling of the finished floor with Gypcrete is recommended to alleviate the gaps and provide a level floor. |

8 of 9

DEFICIENCY TABLE - IMMEDIATE AND SHORT TERM REPAIRS

**PARTNER**
Engineering and Science, Inc.

Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832
June 14, 2023

Project Number: 23-402327.2
Project Type: Multi-Family
ber of Square Feet: 331,150
Year Built: 2024

| SECT. # | ITEM | QTY | UNIT | CONDITION |
|---|---|---|---|---|
| **57.0 - ACCESSIBILITY** | | | | |
| 7.0 | Exterior Accessible Route. | 1 | AL | Please see standalone ADA report for an in depth analysis of this line item. |
| 7.0 | Interior Access and Access to Goods and Services. | 1 | AL | Please see standalone ADA report for an in depth analysis of this line item. |
| 7.0 | Dwelling Units. | 1 | AL | Please see standalone ADA report for an in depth analysis of this line item. |

**ABBREVIATIONS**

AL - Allowance  APT - Apartment  CD - Crew Day  EA - Each  AVG - Average
FL - Floor  MD - Man Day  LS - Lump Sum  SF - Square Feet  LF - Linear Feet
EUL - Expected Useful Life  RUL - Remaining Useful Life  EFF - Effective
QTY - Quantity

# TABLE OF CONTENTS

1.0   INTRODUCTION ........................................................................................................ 1
1.1   Purpose .......................................................................................................... 1
1.2   Scope of Work ................................................................................................. 1
1.3   Descriptive Qualifiers ...................................................................................... 1
1.4   User Reliance .................................................................................................. 1

2.0   RECONNAISSANCE, REGULATORY AND DOCUMENT REVIEW ............................ 3
2.1   Site Reconnaissance ....................................................................................... 3
2.2   Property Personnel Interviewed/Contacted ...................................................... 3
2.3   Regulatory Compliance Inquiry ........................................................................ 3
2.4   Code Review ................................................................................................... 4
2.5   Document Review ............................................................................................ 4

3.0   PROPERTY CHARACTERISTICS ............................................................................ 5
3.1   Parcel Configuration ....................................................................................... 5
3.2   Site Improvements .......................................................................................... 5
    3.2.1   Topography and Storm Water Drainage ...................................................... 5
    3.2.2   Vehicular Access, Paving ........................................................................... 5
    3.2.3   Walkways, Grade-Level Steps and Ramps .................................................. 6
    3.2.4   Landscaping and Irrigation ......................................................................... 6
    3.2.5   Retaining Walls .......................................................................................... 6
    3.2.6   Site and Building Signage ........................................................................... 7
    3.2.7   Perimeter Walls, Gates, and Fences .......................................................... 7
    3.2.8   Exterior Lights ........................................................................................... 7
    3.2.9   Site Amenities ........................................................................................... 8
    3.2.10  Refuse Transfer Areas ............................................................................... 8
    3.2.11  Special Utility Systems .............................................................................. 8
    3.2.12  Utility Service Providers ............................................................................ 8

4.0   STRUCTURAL FRAME AND BUILDING ENVELOPE ................................................ 10
4.1   Foundation/Substructure ................................................................................. 10
4.2   Building Frame ................................................................................................ 10
4.3   Facades or Curtain Walls ................................................................................ 10
    4.3.1   Exterior Walls ............................................................................................ 11
    4.3.2   Windows .................................................................................................... 11
    4.3.3   Doors ........................................................................................................ 12
4.4   Roof ............................................................................................................... 12
    4.4.1   Roofing Materials ...................................................................................... 12
    4.4.2   Roof Drainage ........................................................................................... 13
4.5   Fire Escapes, Stairs or Balconies .................................................................... 13

5.0   MECHANICAL AND ELECTRICAL SYSTEMS .......................................................... 15
5.1   Plumbing, Domestic Hot Water, and Sewer Systems ........................................ 15
5.2   Electrical Supply and Natural Gas Distribution ................................................. 16
5.3   Vertical Conveyances ...................................................................................... 17



5.3.1   Elevators ........................................................................................... 17

5.3.2   Escalators .......................................................................................... 18

5.4   Life Safety and Fire Protection ............................................................ 18

5.4.1   Fire Suppression Systems ................................................................ 18

5.4.2   Alarm Systems .................................................................................. 20

5.4.3   Means of Egress ............................................................................... 21

5.4.4   Passive Fire Protection Systems ...................................................... 21

6.0   INTERIOR ELEMENTS ........................................................................... 23

6.1   Common Areas .................................................................................... 23

6.2   Amenities and Special Features .......................................................... 23

6.3   Support Areas ...................................................................................... 23

6.4   Commercial Tenant Spaces ................................................................. 23

6.5   Residential Spaces .............................................................................. 23

6.5.1   Unit Types and Quantities ............................................................... 23

6.5.2   Finishes ............................................................................................ 24

6.5.3   Cabinetry and Fixtures .................................................................... 24

6.5.4   Soft Goods ....................................................................................... 25

6.5.5   Hard Goods and Appliances ............................................................ 25

7.0   ACCESSIBILITY ...................................................................................... 26

8.0   SUSPECT WATER INTRUSION AND MICROBIAL GROWTH .................. 28

9.0   NATURAL HAZARD INFORMATION ....................................................... 29

9.1   Flood Zone ........................................................................................... 29

9.2   Seismic Zone ....................................................................................... 29

9.3   Wind Zone ........................................................................................... 29

10.0   OUT OF SCOPE CONSIDERATIONS ....................................................... 30

11.0   LIMITATIONS ......................................................................................... 32

**FIGURES AND APPENDICES**

The following report Figures and Appendices are attached at the end of this report.

Figure 1: Site Location Map

Figure 2: Site Plan

Figure 3: Roof Map

Appendix A: Site Photographs

Appendix B: Supporting Documentation

Appendix C: Qualifications



# 1.0 INTRODUCTION

## 1.1 Purpose

The purpose of this assessment is to provide information to evaluate the condition of the subject property in order to facilitate completion of due diligence by the addressee. The purpose is accomplished by describing the primary systems and components of the subject property, identifying conspicuous defects or material deferred maintenance, and presenting an opinion of cost to remedy the observed conditions. In addition, this report identifies systems or components that are anticipated to reach the end of their expected useful life during the specified evaluation period and includes an opinion of cost for future capital replacements.

## 1.2 Scope of Work

This assessment was performed in conformance with the scope and limitations as set forth by ASTM E2018-15 "Standard Guide for Property Condition Assessments: Baseline Property Condition Assessment Process" (the Standard) and as specified in the engagement agreement that initiated this work. Specific requirements or deviations from the minimum ASTM standard are described herein.

This assessment was performed utilizing methods and procedures consistent with good commercial or customary practices designed to conform to acceptable industry standards. The independent conclusions represent Partner's best professional judgment based upon existing conditions and the information and data available to us during the course of this assignment.

## 1.3 Descriptive Qualifiers

The following definitions and terminology are used in this report regarding the physical condition of the project, and the estimated life expectancies/age of the components and systems.

| | |
|---|---|
| Good | In working condition and does not require immediate or short-term repairs above an agreed threshold. |
| Fair | In working condition, but may require immediate or short-term repairs above an agreed threshold. |
| Poor | Not in working condition or requires immediate or short-term repairs substantially above an agreed threshold. |

The agreed threshold is presumed to be the de minimis reporting threshold, unless otherwise specified in this report.

Unless stated otherwise in this report, the systems reviewed are considered to be in good condition and their performance appeared to be satisfactory.

## 1.4 User Reliance

Partner was engaged by the Addressee, or their authorized representative, to perform this assessment. The engagement agreement specifically states the scope and purpose of the assessment, as well as the contractual obligations and limitations of both parties. This report and the information therein, are for the exclusive use of the Addressee. This report has no other purpose and may not be relied upon, or used, by



any other person or entity without the written consent of Partner. Third parties that obtain this report, or the information therein, shall have no rights of recourse or recovery against Partner, its officers, employees, vendors, successors or assigns. Any such unauthorized user shall be responsible to protect, indemnify and hold Partner, the Addressee and their respective officers, employees, vendors, successors and assigns harmless from any and all claims, damages, losses, liabilities, expenses (including reasonable attorneys' fees) and costs attributable to such use. Unauthorized use of this report shall constitute acceptance of, and commitment to, these responsibilities, which shall be irrevocable and shall apply regardless of the cause of action or legal theory pled or asserted. Additional legal penalties may apply.



# 2.0   RECONNAISSANCE, REGULATORY AND DOCUMENT REVIEW

## 2.1   Site Reconnaissance

| | |
|---|---|
| Date: | May 17th, 18th 22nd and 23rd, 2023 |
| Weather: | Sunny, approximately 90 degrees Fahrenheit |
| Observation Team: | The project observation was conducted by a Partner team comprised of TJ Magliano, Justin Lia, Tom Favino and Gerald Delaune. |
| Escort: | Reinerio Faife, Futura, President, 561-718-4648 |

**Limiting Conditions**

The performance of this assessment was limited by the following condition(s):

- No limiting conditions beyond those specified by ASTM were encountered while preparing this report.

## 2.2   Property Personnel Interviewed/Contacted

The site escort was interviewed during the course of the survey. Mr. Faife has been associated with the subject property since construction began and was cooperative during the property observations. Mr. Faife appeared to be knowledgeable about the subject property history and maintenance practices.

In addition to the above-referenced escort, the following personnel associated with the subject property were interviewed as part of the preparation of this report. Information obtained from the interviews is incorporated into the appropriate Sections of this report.

| Individual | Position or Title | Contact Number/Email |
|---|---|---|
| Ryan Mesce | Director of Operations | 561-727-9748 |
| Phil Davis, Sr. | President, PC Construction Solutions | 407-350-6215 |

The persons interviewed were cooperative and appeared to be knowledgeable about the subject property history and maintenance practices.

## 2.3   Regulatory Compliance Inquiry

| Building Codes | | | | |
|---|---|---|---|---|
| Contact: | N/A | | Telephone: | N/A |
| Findings: | ☐ No Violations | ☐ Violations | | ☐ Awaiting response |
| | Municipal inspections are performed following construction completion. Construction has not been completed, final inspections have not been performed, correspondingly, municipal records of violations are not likely. | | | |
| **Fire or Life Safety** | | | | |
| Contact: | N/A | | Telephone: | N/A |
| Findings: | ☐ No Violations | ☐ Violations | | ☐ Awaiting response |
| | Municipal inspections are performed following construction completion. Construction has not been completed, final inspections have not been performed, correspondingly, municipal records of violations are not likely. | | | |



| Zoning | | | | |
|---|---|---|---|---|
| Contact: | N/A | | Telephone: | N/A |
| Findings: | ☐ No Violations | ☐ Violations | | ☐ Awaiting response |
| | Municipal inspections are performed following construction completion. Construction has not been completed, final inspections have not been performed, correspondingly, municipal records of violations are not likely. According to a review of the zoning map obtained from the City of Orlando, the subject property is zoned PD (Planned Development). The permitted uses listed in the zoning regulations mixed use. Based on limited review, the subject property appeared to be compliant. | | | |

This information does not constitute a detailed regulatory-compliance investigation and any code compliance issues noted in this report are based on information provided by the regulatory agencies noted above. If possible, the provided information was confirmed with on-site observations. Additional information that is received within 30 days of the site visit will be forwarded upon receipt.

## 2.4  Code Review

The information provided below is generally obtained from the design documents and/or the building owner/manager.

According to information provided in the architectural drawings reviewed, the project was constructed under the 2017 Edition, Florida Building Code. General construction is as follows:

- Apartment Buildings – Type III-A Construction, One Hour Sprinklered, R2 Occupancy
- Parking Garages – Type II-A Construction, One Hour Sprinklered, S-2 Occupancy

## 2.5  Document Review

The following documents were readily available or provided to Partner for reference as part of this assessment.

- Tax Assessor property information
- Zoning Map
- On-line building code violation database
- Federal Emergency Management Agency (FEMA) flood hazard layer map
- Architectural Plans
- Previous consulting reports



# 3.0 PROPERTY CHARACTERISTICS

## 3.1 Parcel Configuration

The subject property improvements are placed upon one parcel. The parcel is rectangular-shaped and comprises approximately 5.58 acres.

## 3.2 Site Improvements

### 3.2.1 Topography and Storm Water Drainage

The general vicinity is relatively flat with mild slopes. The subject property slopes gradually West. Most areas within the subject property are hardscaped for erosion control.

Storm water is removed primarily by sheet flow action across the paved surfaces towards storm water drains located throughout the subject property and in the public right of way. A large storm water retention pond is located in on the West edge of the property to collect runoff from storm drains on site. Roof drainage flows into internal roof drains provided at the edges of low-slope roof areas. Internal roof leaders are connected to the underground storm drain system. Through-parapet scuppers are also provided at the building edges and appear to be designed as primary drainage and not as overflows. Storm water at paved and landscaped areas is directed to various area drains distributed throughout the subject property. Storm water at the upper-level parking area is collected by area drains located at intervals on the deck and piped to the city storm system.

**Survey Condition and Analysis**

The topography appeared to be in varied states of construction. Civil, site work and grading activities appeared to be mostly complete.

Precipitation was not present during the walk-through survey; consequently, direct observation of the operation of the storm water drainage system was not possible. Evidence of improper operation was not readily apparent or reported. Routine maintenance, including clearing of debris from inlets, channels, piping, and outlets, is anticipated throughout the evaluation period.

### 3.2.2 Vehicular Access, Paving

The subject property is bound by Boggy Creek Road to the South, and Narcoossee Road to the Northeast and is accessed from one entrance from Boggy Creek Road, and one entrance from Narcoossee Road. There are no signals at any of the subject property entrances.

Pedestrian access is provided via sidewalks that run along Narcoossee Road and Boggy Creek Road.

Concrete pavement is provided at the right-of-way approaches. Asphalt is utilized throughout the subject property in drive aisles that have been completed. According to the construction drawings, the asphalt pavement section consists of a two-inch wear course over an eight-inch binder course, over a twelve-inch compacted gravel sub-base.

Curbing placed at the parking area perimeters and interior islands consists of cast-in-place concrete.

On-site parking consists of surface lots and a multi-level parking garage discussed further in Section 3.2.9



According to the construction drawings, parking areas provide a total of 442 spaces, accessible spaces have not yet been striped. According to the construction documents, 13 accessible spaces are proposed, eight in the 12 in the parking garage and one in the surface lot.

**Survey Condition and Analysis**

Pavement appeared to be in varied states of construction. The parking garage and the access drive aisle providing access to the entrance appears to be complete and in good condition. The surface lot at the main entrance to the leasing office is incomplete and is currently gravel. Installation of remaining pavement can be completed as part of normal construction activities.

### 3.2.3  Walkways, Grade-Level Steps and Ramps

Broom-finish concrete sidewalks lead from the parking areas to the building entrances. Grade changes were minimal, therefore significant ramps are not provided. Cast in place concrete steps accommodated grade changes between ground floor patios and courtyard areas in courtyards C and D.

**Survey Condition and Analysis**

The pedestrian walkways appeared to be in good overall condition. However, several areas remain incomplete. Installation of remaining walkways can be completed as part of normal construction activities.

### 3.2.4  Landscaping and Irrigation

Landscaping has not been completed at the time of this assessment. Based on review of landscaping plans, the landscaping at the subject property will consist of grass-covered lawns, floral plantings, trees, and shrubs provided in areas not occupied by the building, walkways, or pavement.

Landscaped areas are serviced by an underground irrigation system.

**Survey Condition and Analysis**

Vegetative materials appeared to be minimal, with many elements yet to be installed. Installation of remaining landscaping can be performed as part of normal construction activities.

Concerns were raised about locations of underground irrigation and drainage not in the designated locations based on the plans, causing issues when planting trees and landscaping etc. A survey should be completed to verify location of underground utilities and irrigation lines. A summary of this deficiency has been included in the Deficiency Table.

### 3.2.5  Retaining Walls

Retaining walls with an average height of six feet were observed along the Eastern perimeter of the retention pond which runs along the pedestrian walkway by courtyard B and courtyard A. The walls are constructed with stacked segmental concrete blocks. According to the construction drawings provided, a crushed stone drainage system protected with filter fabric is provided behind the retaining wall.



**Survey Condition and Analysis**

The retaining walls appeared to be in fair overall condition.

The walls appeared to exhibit lateral movement along the section bordering courtyard A and the pool area. Movement was reported to be as a result of heavy machinery driving too close to the wall, causing the wall to bow outward towards the retaining pond. Replacement of damaged sections of retaining wall is recommended. A summary of this deficiency has been included in the Deficiency Table.

### 3.2.6  Site and Building Signage

Site identification signage is provided by façade mounted metal signage. Temporary paper signage was located adjacent the apartment entry doors. Apartment units had unit numbers removed by the general contractor prior to vacating the project. Units are primarily identified by spray painted numbers on floors in front of the entry doors, or handwritten numbers adjacent to the unit.

**Survey Condition and Analysis**

Exterior signage appeared to be complete while unit identification signage has not been installed or was removed prior to the site assessment. Installation of unit number plaques can be completed as part of normal construction activities.

### 3.2.7  Perimeter Walls, Gates, and Fences

Temporary chain link security fencing is present around all perimeters of the subject property. Security fencing is expected to be removed from the property upon completion of construction.

### 3.2.8  Exterior Lights

Outdoor lighting is provided by pole-mounted light fixtures generally located in parking areas and along the subject property drive aisles. The fixtures are equipped with LED lamps. The poles are constructed with elevated concrete bollard bases. Timers and photocells control exterior lighting.

The parking garage has LED fixtures mounted to the undersides of the ceilings.

**Survey Condition and Analysis**

The walk-through survey was conducted during daylight hours and lighting operation could not be verified. Based on the number of lights provided and the spacing, the lighting appeared to be adequate and was reported to be sufficient for the subject property.

The exterior lighting installation is incomplete. In addition, several of the previously installed lighting fixtures were observed to be damaged and constructed of fiberglass, inconsistent with contract documents. Replacement with light poles compliant with contract documents is recommended. A summary of this deficiency has been included in the Deficiency Table.



### 3.2.9  Site Amenities

Recreational facilities and additional site have not been completed and are in varied stages of construction.

Parking is provided in a five-level parking structure located at the Northwest corner of the site building.

The property has one in-ground, outdoor swimming pool located to the West of courtyard A, adjacent the retention pond. The pool foundation is constructed of concrete. The pool did not have any finishes or mechanical equipment installed at the time of this assessment. A large deck is provided to the West of the pool area, extending over a portion of the retention pond. The deck is constructed with wood joists and posts, while the top decking is composite planks.

**Survey Condition and Analysis**

The recreational facilities and site amenities appeared to be in various states of construction with many elements still requiring completion. Completion of the site amenities should be performed as part of normal construction activities.

### 3.2.10 Refuse Transfer Areas

A refuse collection enclosure is located along the North exterior wall of the parking structure. The enclosure is constructed with CMU block with painted stucco cladding and is open on one side.

**Survey Condition and Analysis**

The refuse transfer areas appeared to be in good overall condition and appeared to be mostly complete. Completion should be performed as part of normal construction activities.

### 3.2.11 Special Utility Systems

Special utility systems are not present.

### 3.2.12 Utility Service Providers

Domestic water service is provided from the northwest section of the subject property, entering the domestic water booster pump room located in the ground floor level of the parking garage. A backflow preventer is provided at the service entrance location. Sanitary Sewer service is provided from an 8 inch sanitary line at Christina Drive, entering the building at the northwest section. Utility-owned electrical transformers are located at the exterior of the electrical room at the northwest side of the parking garage.

| Utility | Provider | Meter configuration and location |
|---|---|---|
| Storm Water | Onsite stormwater retention pond | |
| Electric | Orlando Utilities Commission (O.U.C.) | Unit meters are located in dedicated meter bank utility rooms located on the ground and fourth floors. |
| Gas | Not provided | Not provided |
| Water | Orlando Utilities Commission (O.U.C.) | The building meter is located at the main service RPZ-backflow preventer assembly |
| Sanitary Sewer | Orlando Utilities Commission (O.U.C.) | |



**Survey Condition and Analysis**

No issues or service deficiencies were reported. Utility services are the responsibility of the various purveyors to maintain. The provided services are reported to be adequate. Routine maintenance is anticipated during the evaluation period.



# 4.0   STRUCTURAL FRAME AND BUILDING ENVELOPE

At the request of the Client, Partner performed a Building Envelope Specialty Evaluation, and a Roofing Specialty Evaluation. The following information is a summary of the report findings.

## 4.1   Foundation/Substructure

Based on review of the provided construction documents, foundations are presumed to consist of a conventional reinforced-concrete slab-on-grade with continuous strip footings at the perimeter and continuous grade beams at interior bearing locations According to the various construction documents, the system includes the following attributes:

| Governing code | ACI-301 |
|---|---|
| Soil-bearing capacity | 3,000 PSF for the apartments and 5,000 PSF for the garage |
| Foundation thickness | 12" depending on location |
| Foundation reinforcement | ½" post tension rods in various configurations depending on location |
| Slab thickness | 3" to 5" depending on location |
| Slab reinforcement | ½" post tension rods |

***Survey Condition and Analysis***

Foundations appeared to be in functional condition with no significant movement anticipated. Note; Post tension cables in select areas were reported to have excessive slack. Concerns were raised due to saw cuts through the concrete slab performed by the contractors resulting in tension cables being cut. Testing to verify that all tension rods are intact and properly tensioned is recommended to ensure proper reinforcement of the foundation slab. A summary of this deficiency has been included in the Deficiency Table.

## 4.2   Building Frame

The apartment building is constructed of conventional, wood-stud platform framing with isolated areas of concrete masonry unit (CMU) walls. Upper floors consist of wooden beams and joists with concrete-topped, wooden sheathing supported by interior wooden columns. The pitched roof structure consists of engineered-wood trusses with wooden decking.

The parking garage walls are primarily constructed of precast concrete panels. The upper floors are constructed with precast concrete T-form panels.

***Survey Condition and Analysis***

Wood studs were saw cut to recess the fridges in the kitchens of the apartment units. Many of these framing members in load bearing walls were damaged due to over-cuts performed by the contractors as they cut into the walls. These cuts could compromise the structural integrity of these walls; therefore, a structural analysis of these walls should be performed to determine proper course of action to remedy the damaged framing members, and to verify that the building framing will be able to properly disburse loads. A summary of this deficiency has been included in the Deficiency Table.

## 4.3   Facades or Curtain Walls

At the request of the Client, Partner performed a Building Envelope Specialty Evaluation. The following information is a summary of the report findings.



### 4.3.1  Exterior Walls

The exterior walls of the building consist of fiber cement board siding, stucco and dry stack manufactured stone with caulked joints at each panel intersection as well as at the interface with dissimilar materials. Single hung windows and fixed windows with tinted insulated glazing at the tenant units. Storefront framing systems with tinted insulated glass at the main and pool deck entrances.

Horizontal and vertical sealant joints are provided between dissimilar materials. According to the drawings provided, wall insulation consists of R-19 batt with an exterior vapor barrier.

The exterior wall extends to the parapet and is covered by a metal parapet cap.

**Survey Condition and Analysis**

The exterior walls appeared to be in generally good overall condition. Routine maintenance is anticipated during the evaluation period.

The main entrance (east side) and the pool deck entrance (west side) from the ground floor to the parapet cap requires completion. The balcony topping slabs require waterproofing repair as well as finish materials installed over the exterior sheathing/waterproofing layers. The separation wall between units to the left of the Clubhouse require rework due to an out of plumb condition.

Cleaning of exterior walls is considered normal maintenance and should be performed as needed.

The sealant joints appeared to be in generally good-fair overall condition. Routine maintenance is anticipated during the evaluation period. Some touch-up is required as some of the sealant joints at the parking garage tilt-wall panels exhibit signs of loss of adhesion. A summary of these deficiencies has been included in the Deficiency Table.

### 4.3.2  Windows

Windows are part of the storefront entry system or are punch-type windows at the office floors. The windows consist of tinted, double-pane glazing in clear anodized-aluminum frames. A glass panel curtain wall system was observed at the main entrance and pool deck entrance of the subject building. The curtain wall consists of a tinted insulated glass.

Single Hung Windows appeared to be double-pane fixed and operable units. Window framing was observed to be vinyl. Windows at the building entrances are part of a storefront window system consisting of full height, low-e glazing in aluminum frames that incorporates the entry doors.

Windows are aluminum-framed storefront units with fixed panes of tinted, insulated glazing. Vinyl gaskets are used at the joints between glazing panes and the framing.

**Survey Condition and Analysis**

Single Hung Windows were reported and appeared to be in varying condition due to number of windows observed to be improperly installed. No signs of window leaks or condensation were evident during the observation. However, reports of improper waterproofing and weather barrier details around the windows have been observed. An investigation is recommended to remove the wall finishes and inspect the as built condition to determine the proper repair methods and scope of work to be developed. In addition, the bottom sash did not close and lock at approximately 75% of the windows. The bottom sill member is pushed



up and creates a crown in the middle of the sill stopping the window sash from seating correctly. The locks do not align causing an unlocked window as well as an avenue for moisture intrusion. Window sealants appeared to be intact, with no signs of deterioration. Window gaskets were found to be in new condition. This deficiency has been included in the Deficiency Table. These deficiencies were generally observed to be present in all units on the ground floor and second floor and were specifically observed in units: 102, 106, 238, 240, 245, 256, 307, 311, 312, 322, 326, 327, 331, 406, 407, 418, 503, 515, 518, 520, 529, 548, 551, 552.

### 4.3.3 Doors

The main entrance consists of a pair of aluminum-framed doors with full-height glazing set in an aluminum storefront system. Hardware includes horizontal exit bars, exterior pulls, closers, and deadbolts.

Secondary doors are painted, hollow metal set in metal frames. The doors have horizontal exit bars, exterior lever handles, closers, and deadbolts.

Tenant unit entrance doors are painted hollow metal set in metal frames. The doors have twist knobs and deadbolts. Tenant unit balcony doors are painted hollow metal with glass set in metal frames. The doors have twist knobs and deadbolts.

**Survey Condition and Analysis**

Doors were reported and appeared to be in good overall condition. Routine maintenance is anticipated during the evaluation period. The balcony door thresholds are crowned caused by the high level of the topping slab. Weatherstripping at the bottom of the doors is deteriorated and requires replacement. The doors and thresholds should be removed and reinstalled when the topping slab removal takes place. This deficiency has been included in the Deficiency Table.

### 4.4  Roof

At the request of the Client, Partner performed a Roofing Specialty Evaluation. The following information is a summary of the report findings.

### 4.4.1  Roofing Materials

Partner utilized in house Building Envelope consultants to assess the roofing systems. The following information is a summary of the report findings. The flat roofing areas consist of a single-ply, 60 mil, adhered thermoplastic polyolefin (TPO) roofing system. The roofs are generally sloped at the minimum slope of ¼". Internal roof drains are utilized for drainage of the roof system.

The roofing materials extend vertically up the inboard side of the parapet walls, terminating under counter-flashings and metal copings.

Flashing materials appeared to be similar to the roofing membrane.

Roof areas are accessible by an exit door from the stair.

According to provided information, the roofs are original and are under warranty.

Roof insulation was not observed; however, the architectural drawings reviewed specified that tapered rigid insulation was to be used for slope to drains.



**Survey Condition and Analysis**

The roofing systems appeared to be in fair - poor overall condition. While the roofing system doesn't leak that Partner is aware of, the roofing system ponds water in locations around the roof drains of upwards of 1". The roof drains are not sumped as indicated within detail on 3/A7.51, of the drawings. The drain bowls currently sit proud of the roof membrane surface. A summary of the observed roof deficiencies has been included in the Deficiency Table.

In addition to the above corrections, it is also recommended that corrosion be removed/neutralized on the equipment screen panels and support structure and then prepped and painted.

### 4.4.2   Roof Drainage

The roofing slope appeared to be adequate and appears to meet industry standards for the type of roof installed. Storm water runoff for the roof is directed to roof drains connected to internal leaders that exit through the exterior walls and discharge at grade and directly into the storm drain collection system.

**Survey Condition and Analysis**

Roof drains appeared to be in good - poor overall condition. Roof drains should be repaired or replaced as needed during roof replacement activities and set to the correct height with a sump.

Isolated areas of roof ponding were noted around most drains. Ponding typically occurs when the roof insulation or decking is not properly sloped to allow for complete drainage or water flow through the roof drainage system is impeded.

The ponding appears to be due to a lack of installed tapered insulation and drain sumps. This issue should be addressed in the immediate term. A summary of these deficiencies has been included in the Deficiency Table.

### 4.5   Fire Escapes, Stairs or Balconies

Balconies are constructed of concrete topping over OSB sheathing and elastomeric waterproofing. Balconies are supported by columns or walls at each corner. Guardrails are located at the open sides of the balcony and are constructed of metal.

**Survey Condition and Analysis**

Balconies appeared to be in poor overall condition. The topping slabs were found to be poured high to the threshold, cupping the threshold causing doors to not close properly. In some cases, the threshold had to be lifted a minimum of 3/4" to meet the topping slab height. Counterflashings under the balcony door thresholds are bent and disfigured due to improper deck pour and threshold installation.

Partner recommends the topping slab be removed, waterproofing be repaired, thresholds and counterflashing be removed and reinstalled to the correct height to align with the interior finish out. Re-pour topping slab to the correct height and slope. This deficiency has been included in the Deficiency Table. Units where these conditions were specifically observed include 201, 223, 232, 245, 304, 325, 328, 349, 351, 356, 401, 402, 403, 404, 408, 409, 410, 412, 413, 414, 416, 417, 418, 427, 441, 452, 501, 510, 511, 514, 539, 546 and 551.



The columns supporting the balcony stacks at the Southwest corners of courtyards A and B exhibit damage from previous shoring operations. It was reported that the footers of these columns were replaced as a result of the original footings sinking and causing the balcony stacks to deflect. When shoring operations were completed, no verification of condition of balcony framing was performed to verify that no damage to framing was present. Destructive testing is required of deflected balcony columns at courtyard A and B. This deficiency has been included in the Deficiency Table. Units affected by this condition were observed to include: 107, 145, 207, 245, 307, 345, 407, 445, 507, 545.



# 5.0   MECHANICAL AND ELECTRICAL SYSTEMS

At the request of the Client, Partner performed an MEP Specialty Evaluation. The following information is the summary of the evaluation.

At the request of the Client, Partner retained Jensen Hughes to assess the Life Safety and Fire Protection systems. The following information is a summary of the report findings.

## 5.1   Plumbing, Domestic Hot Water, and Sewer Systems

The building is provided with domestic water from a single, 6-inch municipally owned and maintained water main entering the subject property from the northwest into the domestic water booster pump room, located in the ground floor level of the parking garage. Domestic water piping was reported to be CPVC by Mr. Phil Davis, Sr.. Observation of visible piping at water heaters and plumbing stub-outs indicates that the piping is CPVC. Backflow preventers were observed on the domestic and fire protection system supplies.

Sanitary drainage and vent piping was reported to be PVC by Mr. Phil Davis Sr. Observation of visible vent piping indicates that the piping is PVC.

Domestic hot water to the individual residential apartment unit spaces is provided by 38- and 45-gallon, tank-type, electric units; semi-instantaneous electric waters heaters supply the common area restrooms.

### *Survey Condition and Analysis*

The residential apartment buildings plumbing systems were reported be 93% completed, as per the last payment application (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). Observation confirmed the installation of the plumbing systems to be incomplete and below the level of completion reported in the last application for payment. It is recommended that the installation be completed and that the plumbing piping systems be thoroughly cleaned and flushed. It is further recommended that the triplex domestic water booster pump be energized, started and commissioned by the pump equipment manufacturer's authorized representative. Numerous instances of remedial work were observed (i.e.; removal and reinstallation of improperly located shower installations, etc.) in addition to the incomplete work, that will also need to be completed. This deficiency has been included in the Deficiency Table.

Heating, Ventilation, and Air Conditioning

| HVAC unit Location | Building area served | Manufacturer name and date | Model number | Capacity (tons) | CFM |
|---|---|---|---|---|---|
| Units "A" & "S" | Residential Apartment Units | Goodman 2021 | AWUF019 (AHU) & GSZ14018 (Condenser) | 1.5 Tons | 600 |
| "B" Units | Residential Apartment Units | Goodman 2021 | AWUF025 (AHU) & GSZ14024 (Condenser) | 2 Tons | 800 |
| "C" Units | Residential Apartment Units | Goodman 2021 | AWUF030 (AHU) & GSZ14030 (Condenser) | 2.5 Tons | 1000 |
| | Common Area Units - Typical | Goodman 2022 | ASPT49D14AD (AHU) - Typical | 1.5 to 2- Tons | 400 - 1650 |
| | Elevator Lobbies, Trash room - Typical | Daikin 2022 | RXB18AXVJU (Condenser) - Typical | 1.5 | - |



Heating and cooling are provided by direct expansion HVAC split systems. Each residential apartment unit system has a condensing unit located on the roof (or at grade, for select common area units) and a fan coil/furnace unit located within a dedicated utility closet. Manufactured by Goodman, the condensing units have a typical input capacity of 1.5 to 2.5 tons and use R410A refrigerant. The furnace units provide heat through electric resistance coils. Distribution of the conditioned air is by concealed fiberglass-type ductwork and temperature control is by a local thermostat. Ductless mini-split systems are also utilized for heating and cooling at select common areas (i.e., elevator lobbies and the trash room).

Outside air is directly introduced into the return air plenum of the residential apartment units via concealed ductwork from the exterior façade. Ceiling mounted exhaust fans serve the residential apartment unit bathrooms. The parking garage is ventilated using natural ventilation.

### Survey Condition and Analysis

The residential apartment building's HVAC systems were reported be 97% completed and the garage's were reported to be 85% completed, as per the last payment application (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). Observation confirmed the installation of the HVAC systems to be incomplete and below the level of completion reported in the last application for payment. It is recommended that the installations be completed.

The below instances of remedial work were observed in addition to the incomplete work, that will also need to be completed

- The DX split system air handling units have been placed in operation, while construction activities were taking place. This has resulted in the evaporator coils and supply air ductwork being exposed to dust and particulate, etc., for which specialized professional cleaning is recommended.
- The refrigerant piping for the DX split systems, between the gooseneck fittings and the condensing unit racks on the roof has been improperly coordinated. This has resulted in multiple areas of impeded accessibility and excessive refrigerant piping runs. Proper coordination and corresponding adjustment is recommended.
- The fire sealing of the DX split system refrigerant piping at the gooseneck fittings on the roof was noted to be missing. Per detail entitled "Roof Jack Installation Detail," on Dwg M7.02, fire stop compound is shown to be installed at the roof penetration points where the refrigerant lines enter and exit.

A summary of these deficiencies has been included in the Deficiency Table.

## 5.2   Electrical Supply and Natural Gas Distribution

Electrical service is delivered via several pad-mounted, utility-owned transformers located on the building's exterior at the northwest corner of the subject property. The residential apartment building is serviced by primary power at 4 locations on the ground floor, that additionally feed 4 locations on the fourth floor. Power riser and meter centers tag: A1 & A4 are rated at 1,400 and 1,200 amps, respectively; power riser and meter centers tag: B1 & B4, C1 & C4, D1& D4 are rated at 1,600 and 1,200 amps, respectively. All residential services are 120 / 208 volts, 3 phase. The parking garage is fed separately by a dedicated 2,000 amp, 120 / 208 volts, 3 phase main that is located on the ground floor at the northwest corner.

Breaker panels for the individual residential units are rated at 125 amps, 120/208 volts, 3 phase. Observed panels were manufactured by Siemens.



Electrical branch wiring was reported to be copper by Mr. Phil Davis, Sr.. Service panel covers were not removed to verify electrical panel feeds. Ground-fault circuit interrupter (GFCI) breakers were observed in either the code-mandated wet locations, or in the residential unit breaker panels.

Lighting throughout the subject property was observed to be LED-type fixtures.

Natural gas service was not observed.

### Survey Condition and Analysis

The residential apartment building's Electrical systems were reported be 95% completed and the garage's were reported to be 95% completed, as per the last payment application (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r). Further, the residential apartment building's DAS and Low Voltage systems were reported to be 99% and 50% completed, respectively, as per the last payment application (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r).

Observation confirmed the installations of the above Electrical systems to be incomplete and below the level of completion reported in the last application for payment (i.e., lighting fixture installation incomplete, DAS and Low Voltage systems installations incomplete, etc.). It is recommended that the installations be completed.

A summary of these deficiencies has been included in the Deficiency Table.

## 5.3   Vertical Conveyances

### 5.3.1   Elevators

Overhead traction (machine room-less type) passenger elevators are provided. According to posted signs and placards, the elevators are manufactured by Otis Elevator Company.

| Elevator number | Serial number | Duty | Type | Capacity (lbs) | Speed (fpm) | Levels served |
|---|---|---|---|---|---|---|
| 1 | N1P026 | Passenger | Overhead traction | 3,500 | 150 | 1 though 5 |
| 2 | N1P027 | Passenger | Overhead traction | 3,500 | 150 | 1 though 5 |
| 3 | N1P028 | Passenger | Overhead traction | 3,500 | 150 | 1 though 5 |

Per the submittal data, the interior cab finishes consist of stainless-steel doors and panels, and metal handrails. Floors and the ceilings consist of metal panels with LED-type lighting. Elevators are machine room-less types, hoist motors are located within the respective elevator shafts.

According to the submittal data, the control panel are provided with illuminated push button floor indicators, alarm button and emergency outcall capability. The elevators are provided with audible floor indicators and manual sensors that automatically open the doors when an obstruction is encountered.

### Survey Condition and Analysis

The residential apartment building's Elevator systems were reported be 95% completed and the garage's were reported to be 95% completed, as per the last payment application (per Fully Executed Draw #28 FHA #067-35564 Futura @ Nona Cove 3.20.23 r).



Observation confirmed that the installation of the Elevator systems to be incomplete and below the level of completion reported in the last application for payment (i.e., cabs inaccessible, call buttons at elevator lobbies not installed, etc.). It is recommended that the installations be completed.

A summary of these deficiencies has been included in the Deficiency Table.

### 5.3.2   Escalators

Escalators are not provided.

### 5.4   Life Safety and Fire Protection

Below is a description of the fire protection and life safety systems of the buildings identified during the survey.

### 5.4.1   Fire Suppression Systems

General – Both the apartment building and the parking garage are designed to be fully protected with NFPA 13-compliant sprinkler systems. All floors are sprinklered with a wet-pipe automatic sprinkler system. The sprinkler system installation appeared to be incomplete. Plugged-up blank spaces where sprinklers were seen on other floors were observed in select units and corridors. It is assumed sprinklers are installed underneath these plugged-up blank spaces. Additionally, one of the sprinkler risers was observed not to be charged.

Water Service/FDC – Permanent fire department connections were not observed to be installed. A temporary fire department connection was observed to be installed on the ground floor of one of the egress stairs. The water service connection enters the Parking Garage at the Level 1 Fire Pump Room through a Zurn Wilkins 8-inch backflow preventer.

Sprinkler/Standpipe System Zones – The parking garage has one dry-pipe zone per floor, each provided with its own riser/dry-pipe valve. Inside the apartment building, half of each floor is served by a sprinkler riser in Stair 1, while the other half is served by a sprinkler riser in Stair 4. A floor control valve assembly is provided at each floor landing. Standpipes are similarly zoned by floor and are provided in the following locations: Stair 1, Stair 2, Stair 3, Stair 4, Stair 5, and in two locations in the corridor.

Water Tank – The apartment building and parking garage are not provided with a water tank.

Fire Pump – The building fire protection systems are supplemented by one (1) automatic fire pump and one (1) jockey pump that feed all building sections. One (1) automatic centrifugal horizontal split-case fire pump is located on 1st floor fire pump room off of the parking garage. The automatic fire pump is Pentair Fairbanks Nijhuis model 5" 1822-CF (Serial #22 2629507) and provides 1,000 GPM at 90 PSI. A WEG electric motor provides 75 HP, which drives the automatic fire pump at 3550 RPM. The fire pump is controlled by an Eaton pump. An automatic jockey pump, controlled by an Eaton jockey pump controller, maintains pressure within the sprinkler system. A test connection for the automatic fire pump is provided outside the pump location. Emergency power is not provided for the fire pump.



Sprinklers – Recessed pendent sprinklers are installed in areas with suspended or finished ceilings, while upright sprinkler heads were installed in the garage. Apartment units were protected with residential recessed pendant sprinklers, Reliable model R3513, rated for 155°F. Garages were protected by standard response, extended coverage, dry upright sprinklers, Reliable model RA7326, rated for 200°F. Balconies were provided by dry pendent quick response sprinkler heads, Reliable model R5714, rated for 155°F. Electrical rooms were and similar spaces were protected with quick response pendent sprinkler heads, Reliable model RA1414, rated for 155°F. Sprinkler spacing and coverage, where fully installed, appears to be in accordance with NFPA 13 for the areas surveyed.

Special Suppression Systems – None provided.

Fire Extinguishers – Fire extinguishers were observed in some, but not all, individual dwelling units underneath the kitchen sink.

### Survey Condition and Analysis

Sprinkler installation incomplete - Approximately 20% of units and hallways were observed to have protective covers installed. Removed and discard these covers and install escutcheons on their place so that recessed sprinklers may function as designed.

Sprinkler coordination required in common areas - Sprinklers were observed to hang below the ceiling in the fitness club, coworking space, and the two-story clubhouse areas. It is unclear whether a drop ceiling is planned to be installed in any of these locations. Coordinate to ensure that sprinklers are installed at an appropriate height relative to the final planned ceilings.

Revise hydraulic calculations - Provided hydraulic calculations specify a 500 GPM Fairbanks Morse fire pump, but a 1000 GPM Fairbanks Nijhuis fire pump was observed in the field. Revise the hydraulic calculations to reflect the installed conditions.

Verification of previous sprinkler work - If a new contractor is selected to complete the remaining sprinkler work, they will want to verify the previous piping/sprinkler heads/associated equipment have been installed properly before they take responsibility for the completion of the system.

Stair 1 sprinkler riser uncharged - It was observed that Riser 1 was at 0 psi water pressure, implying that one of the risers was not charged with water. The system will need to be charged once completed and tested for leaks.

Missing in-unit fire extinguishers - Per FBC Section 906.1.1's exception, fire extinguishers must be installed in each dwelling unit. Fire extinguishers were observed under the sink in roughly half of the units surveyed. Furnish the other half of the dwelling units with fire extinguishers.

A summary of these deficiencies has been included in the Deficiency Table.



### 5.4.2  Alarm Systems

General – The apartment building and parking garage are each designed to be protected by a Fire-Lite ES-200X fire alarm system by Honeywell. The apartment building fire alarm control panel sits in the fire alarm closet on the first floor, while the garage fire alarm control panel since in a fire alarm closet on the ground floor near the pump room (access was not provided to this room). The fire alarm systems are designed to monitor manual pull stations, smoke detectors, sprinkler waterflow switches, valve supervisory switches, fire pump status, and circuit integrity. Single station combination detectors that do not report to the panel are provided in each apartment unit. The fire alarm system was not observed to be fully installed/active during the inspection.

The fire alarm system provides audible and visual signal via low-frequency audible notification appliances in dwelling units and through audible/visual appliances in corridors and other shared spaces. The fire alarm systems are reportedly provided with battery backup.

Devices and Appliances – Per Section 907.2.9, fire alarm systems and smoke alarms shall be provided throughout Group R-2 occupancies as described in this section of the code. A manual fire alarm system is required in R-2 occupancies where any dwelling unit is located three or more stories above the lowest level of exit discharge. Single station smoke alarms are provided on the ceiling outside of each separate sleeping area and in each room used for sleeping purposes as required by Section 907.2.11.2 for Group R-2 occupancies. Low-frequency audible notification appliances are provided for each sleeping area as required by NFPA 72 Section 18.4.5.1 through 18.4.5.3. Manual pull stations are provided within the appropriate distance of each exit and at the proper height. Horn-strobes were provided throughout the corridors (using corridor spacing), in the garage, and in common amenity spaces in NFPA 72-compliant spacing.

#### Survey Condition and Analysis

Fire alarm panel installation incomplete –A Firelite ES-200X fire alarm control panel was observed to be installed in the ground floor apartment fire alarm closet, but the interior of the panel appeared to be unfinished. Based on the current condition, it is assumed that the interfacing the fire alarm system with other functions via relays and programming of the sequence of operations have not been started. Complete the installation of the fire alarm control panel. (Note that JH was unable to access the second fire alarm panel supposedly installed in the garage, so its installation status could not be verified. For the purpose of this report, it is assumed that this panel is in an equivalent state to that of the other panel.)

Verification of previous fire alarm work - If a new contractor is selected to complete the remaining fire alarm work, they will want to verify that previous wiring and devices are properly installed before they take responsibility for the completion of the system.

Missing smoke detectors at the elevator - The elevator serving the interior of the apartment building was missing a smoke detector at each floor landing. Wiring appears to have been pulled for these detectors, but the detector has yet to be installed. These detectors will also need to be interfaced with elevator controls and the fire alarm system.

Covers provided on smoke detectors - Nearly all smoke detectors in the building were observed to be covered by protective caps. These caps must be removed in order for them to function properly.

A summary of these deficiencies has been included in the Deficiency Table.



### 5.4.3  Means of Egress

General – All exits appear to provide adequate exit capacity for the anticipated occupant load of the buildings. Per the life safety plans, exits appear to be located such that adequate travel distances, common paths of travel, and limited dead-ends are achieved. All exits maintained a minimum clear height and width.

Exit Stairways – All exit stairs are at least 44 inches wide. Stairs have a tread depth of at least 11½ inches and a tread height of no greater than 7 inches. Handrails are provided on both sides of all stairways located at a height of approximately 36 inches above the tread nose.

Access Stairways – Not provided.

Dead-Ends – In accordance with the FBC Section 1020.4, in Group R-2 occupancies fully protected by a sprinkler system, the dead end in a corridor is not permitted to exceed 50 feet. Any dead-end corridors observed in the buildings at the time of the survey did not exceed 50 feet.

No dead ends were observed in the parking garage.

Separation of Exits – In accordance with FBC Section 1007.1.1, where two exits are required from any portion of the exit access, they shall be placed a distance apart equal not less than one third of the length of the overall diagonal dimension of the area served (where a building is fully sprinkler protected). This requirement is satisfied.

In the garage, where an NFPA 13 compliant sprinkler system is provided, where two exits are required, they shall be placed a distance apart equal to not less than one third of the length of the overall diagonal dimension of the area served. This requirement is also satisfied.

Signage – In accordance with FBC Section 1013, all building exits are provided with illuminated exit signs. Emergency lighting is provided within the stairways and common areas. Exit signs and emergency lighting are connected to battery backup for secondary power.

**Survey Condition and Analysis**

Horizontal exit fire door swing direction - Verify that the horizontal exit fire door from the garage into the apartment building (which acts as the second exit from each floor of the garage, in its southeast corner) swings into the apartment building. If it does not, reinstall door/frame so that the door swings in the direction of egress travel for the occupants.

A summary of these deficiencies has been included in the Deficiency Table.

### 5.4.4  Passive Fire Protection Systems

General – The apartment building is reportedly constructed of Type IIIA construction – combustible construction, based on the drawings and observed conditions. All walls and structural members are made of wood. In accordance with FBC Table 601 for Type 3A structures, the primary structural frame, floor construction and roof construction are required to be 1-hour rated.

The parking garage is reportedly constructed of Type IIA construction – noncombustible construction, based on the drawings and observed conditions. All walls and structural members are made of concrete. In accordance with FBC Table 602 for Type 2A structures, the primary structural frame, floor construction and roof construction are required to be 1-hour rated.



Exit Stairways – Stair enclosures in both buildings are made of gypsum board and appear to be 2-hour fire resistance rated. Most stair doors appear to have a 1½ hour FRR based on the manufacturer's labels.

Interior Corridors – In accordance with FBC Section 1017.1, in Group R-2 occupancies, corridors must be provided with a one-hour fire resistance rating. Corridor doors were observed to be the required 1/3-hour rated.

Unit Separations - 1-hour rated apartment unit separations were provided per FBC Section 708.3 and were not observed to have any unsealed penetrations between units.

Building Separations – Per FBC Section 706.4, a 3-hour fire resistance rated separation must be provided between adjacent, separate, buildings. While construction appeared consisted with this FRR and no unsealed penetrations were observed in the barriers, fire resistance rated doors were observed to be missing in the building separation walls.

Other Fire Barriers – 1/3 hour rated cross-corridor doors shown on the life safety drawings were observed as not installed in the corridors.

**Survey Condition and Analysis**

Fire Barrier Door Installation Incomplete – Life safety drawings indicate doors in the 3-hour fire resistance rated barrier between the two sections of the apartment building. Per Table 716.5, opening protectives in 3-hour fire barriers must be 3-hour rated. Provided appropriately rated door and frame assembly in these locations.

Corridor smoke barrier door installation incomplete - Life safety drawings indicate cross-corridor doors on Level 1. Corridors are stated to be one-hour rated, and per Table 716.5, opening protectives in corridor walls must be 1/3-hour rated. Provide an appropriately rated door and frame assembly in these locations.

A summary of these deficiencies has been included in the Deficiency Table.



## 6.0    INTERIOR ELEMENTS

### 6.1    Common Areas

Significant common areas at the subject property consist of the leasing office, clubhouse, fitness center, elevator cabs, stairwells, corridors, and elevator lobbies. In addition, restrooms are provided on the first floor near the fitness center.

Common area finishes have not yet been installed with the exception of drywall finishes. Flooring is not installed in corridors or amenity spaces.

Stairwell and interior corridor doors are solid-wood or painted metal doors equipped with panic-bar hardware and closers. The restrooms are mostly unfinished.

***Survey Condition and Analysis***

Common area finishes appeared to be in various stages of construction with many components / finishes awaiting installation. Unfinished common area elements should be installed during normal construction practices.

### 6.2    Amenities and Special Features

The building is constructed with spaces for a leasing office, clubhouse area with resident lounge, and fitness center, all located on the ground floor near the main entrance. The amenity spaces were observed to be incomplete and in the early stages of construction with minimal components installed.

***Survey Condition and Analysis***

Amenities and furnishings have not been completed as of the date of this assessment. Installation of finishes and amenity furnishings can be completed as part of normal construction activities.

### 6.3    Support Areas

No support areas are present.

### 6.4    Commercial Tenant Spaces

Commercial tenant spaces are not provided.

### 6.5    Residential Spaces

#### 6.5.1    Unit Types and Quantities

| Type | Quantity | Average Area (SF) | Total Square Footage | Occupied Units | Vacant Units | Down Units |
|------|----------|-------------------|----------------------|----------------|--------------|------------|
| A1 (1 Bed / 1 Bath) | 25 | 799 | 19,975 | N/A | N/A | N/A |
| A2 (1 Bed / 1 Bath) | 2 | 873 | 1,746 | N/A | N/A | N/A |
| A3 (1 Bed / 1 Bath) | 60 | 888 | 53,280 | N/A | N/A | N/A |
| B1 (2 Bed / 2 Bath) | 40 | 1,125 | 45,000 | N/A | N/A | N/A |
| B2 (2 Bed / 2 Bath) | 54 | 1,158 | 62,532 | N/A | N/A | N/A |



| Type | Quantity | Average Area (SF) | Total Square Footage | Occupied Units | Vacant Units | Down Units |
|------|----------|-------------------|----------------------|----------------|--------------|------------|
| B3 (2 Bed / 2 Bath) | 44 | 1,168 | 51,392 | N/A | N/A | N/A |
| C1 (3 Bed / 2 Bath) | 15 | 1,425 | 21,375 | N/A | N/A | N/A |
| S1 (Studio) | 20 | 623 | 12,460 | N/A | N/A | N/A |
| Total | 260 | 1,007 | 258,760 | 0 | 0 | 0 |

100 % of the residential units were observed during this assessment.

Wide-ranging conditions were observed. Units are present in various stages of completion.

### 6.5.2   Finishes

Floors are typically finished with vinyl plank flooring throughout, while the bedrooms in upper floor units have carpet. Walls and ceilings are typically painted gypsum board.

Ceramic tile is used around the shower/tub enclosure.

Entrance doors are typically solid core wood set in metal frames. Hardware includes a handle, separate deadbolt, closer, and peep hole. Interior doors are hollow core wood set in wood frames with a locking lever handle.

**Survey Condition and Analysis**

The residential unit finishes appeared to be in varying stages of construction. They were present with multiple cosmetic defects relating to poor installation and improper protection of installed finishes. The vinyl plank flooring was not properly protected with any drop cloths or paper during construction, therefore most of the vinyl was observed to be damaged. Damage includes large paint drips / spills, chipped corners, and deep scratches. The damaged vinyl planks will need to be pulled up and new planks installed.

The finished floor in approximately 60% of the units was observed to be out of level with dips. When the sub-flooring was installed with a self-leveler (Gypcrete), the resultant finished sub-floor has excessive gaps in various sizes between the baseboards and the sub-flooring. Many of these conditions are visible where the gap in the center of the base boards is larger than at the cut edges. This deficiency was observed and documented in a report issued by the Calic Group on their last visit on February 2, 2023. The vinyl floor planks will need to be removed, and an appropriate self-leveling underlayment used bring the floor in plane and flat. This work is recommended to be completed before replacing the damaged vinyl planks previously mentioned.

A summary of these deficiencies has been included in the Deficiency Table.

### 6.5.3   Cabinetry and Fixtures

The kitchens are equipped with stainless steel sinks, composition board cabinets, and quartz countertops. Typical bathroom fixtures include a floor-mounted, tank-type commode, a lavatory with a vanity, and a shower/bathtub arrangement with a ceramic tile surround.



### Survey Condition and Analysis

The cabinetry in the kitchens was observed to be non-compliant to the design requirements provided in the construction documents and were not FHA compliant. Many of the cabinets were observed with excessive use of filler panels as a result of installing cabinets that were not properly sized to fill the area required per design specifications. A number of cabinets were installed that were present with cosmetic damage (chipped corners, broken hinges, large scratches, and overspray from paint), or had doors that were improperly installed. Drawers were also not installed with soft-close hardware as specified in the design documents. Countertops in all units was observed to be non-compliant compared to the design documents and FHA regulations. Deficiencies regarding cabinets and countertops are described in depth in the standalone Accessibility report. A detailed analysis by an architect, interior designer, installer, and cabinet manufacturer should be performed to remedy non-compliant cabinet and island details and to redesign these items to be compliant with FHA regulations and develop a comprehensive plan of correction. A summary of these deficiencies has been included in the Deficiency Table.

### 6.5.4  Soft Goods

Soft goods are not provided.

### 6.5.5  Hard Goods and Appliances

Kitchens are provided with one-piece electric range-ovens with vent hoods, full size refrigerators, dishwashers, and built-in microwaves. All observed appliances were stainless steel.

Stackable or Side-by-side washers and dryers are provided in each of the units.

### Survey Condition and Analysis

Hard goods and appliances were observed to be in various stages of construction with many of the units still requiring installation of appliances. These items can be installed as part of normal construction activities.



# 7.0  ACCESSIBILITY

## Americans with Disabilities Act

The Americans with Disabilities Act (ADA) of 1990 prohibits discrimination against people with disabilities in employment, transportation, public accommodation, communications, and governmental activities. Title III of the ADA covers the private sector. It requires that a wide range of public accommodations in the private sector remove physical, communication, and procedural barriers to access by people with disabilities. Title III addresses the widespread exclusion of people with disabilities from the routine activities of everyday life. Title III covers sales, rental, and service establishments, as well as educational institutions, recreation facilities and service centers.

As part of this assessment, Partner performed a standalone, accessibility survey which has been included in the appendices of this report.

### Survey Condition and Analysis

Building components were observed that are not compliant with ADA regulations such as insufficient clearance between cabinets and islands, balcony door threshold heights, improper shower clearances in dwelling units, exterior site tripping hazards, non-conforming interior door widths etc. Please refer to the accessibility report for a comprehensive breakdown of observed deficiencies. A summary of these deficiencies has been included in the Deficiency Table of this report as well as the standalone accessibility report.

## Fair Housing Amendments Act

The Fair Housing Amendments Act of 1988 (FHAA) requirements cover buildings consisting of four or more dwelling units with first occupancy after March 13, 1991. If such buildings have one or more elevators, all dwelling units are covered by the Act; otherwise, in buildings without elevators, only ground floor dwelling units are covered by the Act. Townhouses are exempted from the Act. The Department of Housing and Urban Development (HUD) has published Final Design Guidelines (see Federal Register, 24 CFR, Vol. 56, No. 44, March 6, 1991, page 9497). The Act requires design and construction to meet the seven design requirements listed below.

1. An accessible building entrance on an accessible route that can be used by a person using a wheelchair must be provided.

2. Public and common use areas of the dwellings must be readily accessible to and usable by persons with disabilities.

3. Doors designed to allow passage into and within all premises, usable to a person in a wheelchair, must be provided.

4. An accessible route must be provided into and through the covered dwelling unit to allow passage by a person in a wheelchair.

5. All light switches, electrical outlets, thermostats and other environmental controls requiring access must be provided at accessible locations.

6. Bathroom walls must provide reinforcements to allow for later installation of grab bars and shower seats.



7. Kitchens and bathrooms must be designed to allow an individual in a wheelchair to maneuver about the space.

The subject property was first occupied after March 13, 1991; as such, it is required to comply with the provisions for new construction buildings under the FHAA. Based on our observations, violations were observed. Please reference the accessibility report for a comprehensive breakdown of observed deficiencies

A summary of these deficiencies has been included in the Deficiency Table of this report as well as the standalone accessibility report.



## 8.0  SUSPECT WATER INTRUSION AND MICROBIAL GROWTH

As part of performing this PCA, visual observations for overt signs of suspect mold growth were also performed. These observations were not performed to discover all affected areas, nor were areas of the subject property observed specifically for the purpose of identifying areas of suspect mold growth. The subject property areas viewed were limited to those necessary to perform the primary scope of this PCA.

### *Survey Condition and Analysis*

Visual or olfactory indications of significant suspect microbial growth were not observed.



# 9.0   NATURAL HAZARD INFORMATION

Partner reviewed readily and publicly available maps, materials or models to obtain the following information related to the identification of natural hazards, including those caused by or made more extreme by climate change. Further evaluation of site specific conditions, and development of property adaptive resiliency measures and overall mitigation strategies is beyond the scope of this report and may require additional investigation.

## 9.1   Flood Zone

According to Flood Insurance Rate Map, Community Panel Number 12095C0675G, dated June 20, 2018, the subject property appears to be located in

Zone X (unshaded); defined as minimal risk areas outside the 1-percent and .2-percent-annual-chance floodplains.

## 9.2   Seismic Zone

According to the seismic zone map, published in the Uniform Building Code 1997, Volume 2, Table 16.2, the subject property appears to be located in Seismic Zone 0.

## 9.3   Wind Zone

Partner performed a review of the Wind Zone Map, published by the Federal Emergency Management Agency. According to the map, the subject property appears to be located in Wind Zone III, an area with design winds speeds up to 200 miles per hour. The subject property does appear to be located in a special wind region or hurricane-susceptible zone.



## 10.0  OUT OF SCOPE CONSIDERATIONS

These following items are categorically excluded from the scope of work.

- Utilities: Operating conditions of any systems or accessing manholes or utility pits.
- Structural Frame and Building Envelope: Entering of crawl or confined space areas (however, the field observer will observe conditions to the extent easily visible from the point of access to the crawl or confined space areas), determination of previous substructure flooding or water penetration unless easily visible or if such information is provided.
- Roofs: Walking on pitched roofs, or any roof areas that appear to be unsafe, or roofs with no built-in access, or determining any roofing design criteria.
- Plumbing: Determining adequate pressure and flow rate, fixture unit values and counts, verifying pipe sizes, or verifying the point of discharge for underground systems.
- Heating: Observation of flue connections, interiors of chimneys, flues or boiler stacks, or tenant owned or maintained equipment.  Entering of plenum or confined space areas.
- Air conditioning & Ventilation: Process-related equipment or condition of tenant owned or maintained equipment. Entering of plenum or confined space areas.  Testing or measurements of equipment or air flow.
- Electrical: Removing of electrical panel and device covers, except if removed by building staff, EMF issues, electrical testing, or operating any electrical devices. Opining on process related equipment or tenant-owned equipment.
- Vertical Transportation: Examining of cables, sheaves, controllers, motors, inspection tags, or entering elevator/ escalator pits or shafts.
- Life Safety/ Fire Protection: Determining NFPA hazard classifications, classifying, or testing fire rating of assemblies. Determination of the necessity for or the presence of fire areas, fire walls, fire barriers, paths of travel, construction groups or types, or use classifications.
- Interior Elements: Operating appliances or fixtures, determining or reporting STC (Sound Transmission Class) ratings, and flammability issues/regulations.

**Activity Exclusions-** These activities listed below generally are excluded from or otherwise represent limitations to the scope of a PCA prepared in accordance with this guide (ASTM 2018-15). These should not be construed as all-inclusive or imply that any exclusion not specifically identified is a PCA requirement under this guide.

- Providing opinions of costs for identified deficiencies,
- Identifying capital improvements, enhancements, or upgrades to building components, systems, or finishes;
- Removing, relocating, or repositioning of materials, ceiling, wall, or equipment panels, furniture, storage containers, personal effects, debris material or finishes; conducting exploratory probing or testing; dismantling or operating of equipment or appliances; or disturbing personal items or property, that obstruct access or visibility;
- Determining adequate pressure and flow rate, fixture-unit values and counts, verifying pipe sizes, or verifying the point of discharge for underground drains;



- Determining NFPA hazard classifications, identifying, classifying, or testing fire rating of assemblies. Determination of the necessity for or the presence of fire areas, fire walls, fire barriers, accessible routes, construction groups or types, or use classifications;
- Preparing engineering calculations to determine any system's, component's or equipment's adequacy or compliance with any specific or commonly accepted design requirements or building codes, or preparing designs or specifications to remedy any physical deficiencies;
- Identification of code or OSHA compliance beyond what has been reported through communication with local regulatory offices.
- Taking measurements or quantities to establish or confirm any information provided by the owner or user;
- Reporting on the presence or absence of pests or insects;
- Reporting on the condition of subterranean or concealed conditions as well as items or systems that are not permanently installed or are tenant-owned and maintained;
- Entering or accessing any area deemed to potentially pose a threat of dangerous or adverse conditions with respect to the field observer's health or safety;
- Performing any procedure, that may damage or impair the physical integrity of the property, any system, or component;
- Providing an opinion on the operation of any system or component that is shut down;
- Evaluating the Sound Transmission Class or acoustical or insulating characteristics of systems or components;
- Providing an opinion on matters regarding security and protection of occupants or users from unauthorized access;
- Evaluating the flammability of materials and related regulations;
- Providing an opinion on matters regarding security of the subject property and protection of its occupants or users from unauthorized access;
- Operating or witnessing the operation of lighting or any other system controlled by a timer, operated by the maintenance staff, or operated by service companies;
- Providing an environmental assessment or opinion on the presence of any environmental issues such as potable water quality, asbestos, hazardous wastes, toxic materials, the location and presence of designated wetlands, IAQ, etc. unless specifically defined within the agreed scope;
- Evaluating systems or components that require specialized knowledge or equipment;
- Entering of plenum or confined space areas.



# 11.0  LIMITATIONS

This assessment is based upon the guidelines set forth by the ASTM Standard current to the issuance of this report and subject to the limitations stated therein. Our review of the subject property consisted of a visual assessment of the site, the structure(s) and the accessible interior spaces. Any technical analyses made are based on the appearance of the improvements at the time of this assessment and the evaluator's judgment of the physical condition of the subject property components, their ages and their EUL. Consequently, this report represents the condition of the subject property at the time of observation. Acceptance and use of this report infers acknowledgment that the condition of the property may have changed subsequent to site observations and/or that additional information may have been discovered, and that Partner, its officers, employees, vendors, successors or assigns, are not liable for changes in the condition of the property, failures in property components or systems, and damages that may occur as a result of the changes or failures.

Information regarding the subject property is obtained from a site walk-through survey, local government agency records review, interviews and client-, tenant- or property owner-provided documents. No material sampling, invasive or destructive investigations, equipment or system testing was performed. The observations and related comments within this report are limited in nature and should not be inferred as a full and comprehensive survey of the building components and systems.

Information regarding operations, conditions, and test data provided by the Addressee, property owner, or their respective representatives has been assumed to be factual and complete. Information obtained from readily-available sources, including internet research and interview of municipal officials or representatives is assumed to be factual and complete. No warranty is expressed or implied, except that the services rendered have been performed in accordance with generally-accepted practices applicable at the time and location of the study.

The actual performance of systems and components may vary from a reasonably expected standard and will be affected by circumstances that occur after the date of the evaluation. This assessment, analyses and opinions expressed within this report are not representations regarding either the design integrity or the structural soundness of the project.

The report does not identify minor, inexpensive repairs or maintenance items, which should be part of the subject property owner's current operating budget so long as these items appear to be addressed on a regular basis. The report does identify infrequently occurring maintenance items of significant cost, such as exterior painting, roofing, deferred maintenance and repairs and replacements that normally involve major expense or outside contracting.

The assessment of the roof, façade and substructure contained herein cannot specifically state that these items are free of leaks and/or water intrusion and should not be interpreted as such. Comments made with respect to the condition of the systems are limited to visual observation and information provided by the designated site contacts and/or on-site representatives and their contractors/vendors. The evaluation of these systems did not include any sampling and/or testing. A more extensive evaluation may be required if a comprehensive report on the condition of these systems is required.



Performance of a comprehensive building, fire or zoning code review is outside of the scope of work for this report. Information provided within this report is based on readily-available information or interview of municipal officials.

This report presents an evaluation of the accessibility of the subject property as specified in the engagement agreement. This report does not present an audit of all components specified in federal, state or local accessibility regulations. Instead, this review observed general design components such as routes of travel, door hardware, plumbing amenities, elevator controls and signals, basic emergency alarm components and signage. This report is not a comprehensive Americans with Disabilities Act review.



# FIGURES

1. SITE LOCATION MAP

2. SITE PLAN

3. ROOF MAP







N

KEY:
Subject Property 

**FIGURE 1: SITE LOCATION MAP**
Project No. 23-402327.2







KEY:
Subject Property 



**FIGURE 2: SITE PLAN**
Project No. 23-402327.2



PARTNER

Site & Location
FUTURA AT NONA COVE
19465 BOGGY CREEK ROAD
ORLANDO, FLORIDA 32832

Figures:
Site & Location




SITE MAP




SITE LOCATION



PARTNER

ROOF PLAN

FUTURA AT NONA COVE
19465 BOGGY CREEK ROAD
ORLANDO, FLORIDA 32832

Figures:

Roof Plan

ROOF PLAN



## APPENDIX A: SITE PHOTOGRAPHS





1. Site identification signage



2. Main building entrance



3. Underground irrigation sprinkler head



4. On-site retention pond on the Western section of the property



5. Site landscaping



6. Retaining wall along Eastern edge of the pond

**Appendix A: Site Photographs**
Project No. 23-402327.5

**PARTNER**



7. Pool area



8. Pool foundation



9. Pool foundation overview. Pool is currently unfinished



10. Composite deck near pool area



11. Pedestrian walkway along pond



12. Courtyard C

**Appendix A: Site Photographs**
Project No. 23-402327.5





13.   Concrete pedestrian walkway forms



14.   Surface parking lot near leasing office



15.   Surface parking lot near leasing office. Lot is currently unpaved



16.   Parking garage overview



17.   Stored materials observed in parking garage



18.   Typical unfinished patio





19. East building elevation



20. North building elevation



21. West building elevation



22. South building elevation



23. Typical balcony



24. Column on balcony stack on courtyard B which had footer replaced

**Appendix A: Site Photographs**
Project No. 23-402327.5





25.   Courtyard C balcony stack



26.   Typical window



27.   Attached parking structure



28.   Parking garage overview



29.   Attached concrete parking garage



30.   Parking garage T-form decking





31.   Typical HVAC closet in apartment



32.   Typical in unit fan coil unit



33.   Typical thermostat



34.   Pad mounted electrical transformer



35.   Typical unit circuit breaker panel



36.   Typical outlet





37.  Typical in unit domestic water heater



38.  Garage elevator lobby



39.  Typical common corridor. Note no flooring has been installed



40.  Clubhouse overview. Note minimal finishes installed



41.  Fitness center overview. Note minimal finishes installed



42.  Public restroom on first floor near fitness center. Note minimal finishes and fixtures installed

**Appendix A: Site Photographs**
Project No. 23-402327.5





43. Typical apartment unit interior



44. Typical apartment living room



45. Typical apartment unit kitchen



46. Typical finished apartment kitchen



47. Typical kitchen island



48. Typical apartment refrigerator







49. Typical electric range and oven combination

50. In unit stackable washer / dryer





51. Typical apartment bedroom lacking flooring

52. Typical apartment bedroom minus flooring installation





53. Apartment bedroom with carpet installed

54. Typical apartment unit bedroom with vinyl flooring installed

**Appendix A: Site Photographs**
Project No. 23-402327.5





55.  Typical unfinished apartment bathroom



56.  Typical shower pan



57.  Typical apartment bathroom missing vanity



58.  Typical finished bathroom



59.  Excessive gap between floor and baseboard in unit 502



60.  Retaining wall near courtyard A observed to be deflected as a result of heavy machinery traffic

**Appendix A: Site Photographs**
Project No. 23-402327.5





61. Retaining wall near courtyard A observed to be deflected as a result of heavy machinery traffic



62. Retaining wall near courtyard A observed to be deflected as a result of heavy machinery traffic. Note cracks on right side



63. Excessive balcony door threshold height and balcony topping observed above finish floor in unit 206. This condition is a typical representation



64. Excessive balcony door threshold height and balcony topping observed above finish floor in unit 208. This condition is a typical representation



65. Excessive balcony door threshold height and balcony topping observed above finish floor in unit 304. This condition is a typical representation



66. Cracking in balcony column observed in B court yard balcony stack which had footer shored. Typical condition on all balconies in this stack

**Appendix A: Site Photographs**
Project No. 23-402327.5





67. Cracked balcony due to column deflection on balcony stack on courtyard A



68. Cracked balcony due to column deflection on balcony stack on courtyard A



69. Improperly supported header over fire door in common hallway



70. Saw cut framing members as a result of recessing refrigerator into wall. Observed in unit 116



71. Saw cut framing members as a result of recessing refrigerator into wall. Observed in unit 116



72. Saw cut framing members observed in unit 456 as an attempt to recess fridge into wall

**Appendix A: Site Photographs**
Project No. 23-402327.5





73.  Saw cut framing members observed in unit 456 as an attempt to recess fridge into wall. This is a typical condition



74.  Saw cut framing members observed in unit 330 as an attempt to recess fridge into wall. This is a typical condition



75.  Saw cut framing members observed in unit 330 as an attempt to recess fridge into wall. This is a typical condition



76.  Insufficient framing alterations observed in alcove created for fridge



77.  Insufficient header detail in unit 503 closet



78.  Incorrect header detail over door to parking garage elevator lobby. This condition is typical on all floors





79. Incorrect header detail over door to parking garage elevator lobby. This condition is typical on all floors



80. Excessive gap between floor and baseboard caused by poor leveling in unit 213. This is a typical representation of this condition



81. Excessive gap between flooring and baseboard in unit 503



82. Damaged flooring observed in unit 123



83. Typical damaged vinyl flooring due to insufficient floor protection during construction. General contractor attempted to wax floor to repair damage



84. Typical damaged vinyl flooring due to insufficient floor protection during construction

**Appendix A: Site Photographs**
Project No. 23-402327.5






85. Note no floor protection and excessive construction debris on floor causing damage to vinyl flooring in unit 120. This is a typical representation

86. Typical apartment bathroom. Note no floor protection and excessive construction debris on floor




87. Poor bathroom cabinet / drawer details observed in unit 306. Doors and drawers are poorly mounted and not level

88. Poor bathroom cabinet / drawer details observed in unit 312. Doors and drawers are poorly mounted and not level




89. Poor cabinet detail and excessive use of filler panels observed in unit 210. This is a typical representation of this condition

90. Poor cabinet detailing (misaligned door)

**Appendix A: Site Photographs**
Project No. 23-402327.5





91.   Damaged cabinets observed from construction



92.   Countertop cut into wall in unit 503 due to being incorrect size



93.   Countertop cut into wall in unit 503 due to being incorrect size





1. Front entrance of the building.



2. Building elevation overview



3. Building elevation overview.



4. Building elevation overview.



5. Building elevation overview.



6. Building elevation overview.





7.  Building elevation overview.

8.  Building elevation overview.



9.  Building elevation overview.



10.  Building elevation overview.



11.  Unfinished main entrance.



12.  Unfinished pool deck entrance.





13. Partial elevation, dry stack, stucco and cementitious panel.



14. Cementitious panel.



15. Partial elevation – cementitious panel and windows.



16. Partial elevation – cementitious panel and windows.



17. Partial elevation – dry stack, cementitious panel and windows.



18. Partial elevation – dry stack, cementitious panel and windows.





19. Partial elevation – dry stack, cementitious panel and windows.

20. Column out of plumb and square



21. Deformed threshold-Topping slab too high



22. Unit 406 threshold



23. Unit 406



24. Bowed window sill – sash does not close fully and lock-(typical).


**PARTNER**



25. Poolside courtyard – Unfinished



26. Poolside courtyard - Unfinished



27. Main entrance courtyard – Unfinished



28. Unfinished



29. Main entrance courtyard



30. Poolside courtyard - unfinished

**APPENDIX A: PHOTOGRAPHS**
Project No. 23-402327.3





31. Example of storefront windows, southeast elevation of the building.



32. Unfinished poolside entrance.



33. Racked windows



34. Insulated glass at entrance storefront



35. Roof Overview



36. Roof Overview





37. Roof Overview.

38. Roof Overview.





39. Roof Overview.

40. Roof Overview.





41. Roof Overview.

42. Roof Overview.





43. Roof Overview.



44. Roof Overview.



45. Roof Overview.



46. Roof Overview.



47. Roof Overview.



48. Incomplete roofing membrane and door threshold.





49. Typical soils stack.



50. Incomplete detail – saddle flashing required.



51. Incomplete detail – saddle flashing required.



52. Incomplete detail.



53. Adhesion loss sealant to tilt-wall panel.



54. Incomplete detail – closure required.





55. Incomplete roofing membrane and door threshold.

56. Incomplete door required and stucco finish.





57. Incomplete detail – saddle flashing required.

58. Incomplete detail – saddle flashing required.





59. Ponding water – 1" deep.

60. Ponding water.





61. Incomplete detail – saddle flashing required.

62. Incomplete wall and transition to parapet cap.





63. Incomplete wall and termination at rise wall.

64. Incomplete parapet cap.





65. Expansion joint detail.

66. Expansion joint detail.





67. Expansion joint detail.



68. Expansion joint detail.



69. Cracks observed in the stack.



70. Unit 304 balcony door threshold.



71. Cracked deck at stanchion.



72. Cracked deck at stanchion.





1.  Incoming domestic water and fire water services



2.  Triplex domestic water booster pump



3.  Triplex domestic water booster pump panel – note deenergized status



4.  Electric tank-type domestic water heater unit 529 – typical



5.  Electric tank-type domestic water heater unit 538 – typical



6.  Remedial shower repair unit 440



**APPENDIX A: SITE PHOTOGRAPHS**
Project No. 23-402327.2 – MEP





7.    Remedial shower repair unit 440 – note potential damage to mixing valve



8.    Bathroom lavatory and toilet unit 347 – typical



9.    Bathroom lavatory piping unit 347 – typical



10.    Toilet at unit 347 – typical



11.    1.28 gpf toilet tank unit 347 – typical



12.    Faulty roof drain installation – note height above ponding water



13. Faulty roof drain installation – note height above areas of ponding



14. Wall spigot at ground level



15. Direct expansion (DX) split system condenser units refrigerant piping at roof – note excessive pipe run



16. DX split system condenser units and refrigerant piping at roof – note excessive pipe runs



17. DX split system air handling unit (AHU) - unit 335 – typical



18. Dirt and construction dust, etc., in DX split system AHU – unit 335





19. Dirt and construction dust, etc., in DX split system AHU – unit 527



20. Dirt and construction dust, etc., in DX split system AHU – unit 529



21. Outside air electronic control damper unit 434 - typical



22. DX split system digital thermostat - unit 542 - typical



23. Common area DX split system AHU at ground floor – note incomplete installation – typical



24. Common area DX split system AHU at ground floor – note incomplete installation – typical

**APPENDIX A: SITE PHOTOGRAPHS**
Project No. 23-402327.2 – MEP





25.  Elevator lobby mini split system fan coil unit (FCU)
     – note incomplete installation – typical



26.  Elevator lobby mini split system condenser unit (CU)
     – note incomplete installation – typical



27.  Mini split system CU installation at exterior grade



28.  Mini split system FCU at parking garage electrical
     room



29.  Pad mounted, utility owned primary electrical
     transformers



30.  Garage panel GA – 1000 amps





31. Power riser and meter center A1 – 1400 amps



32. Power riser and meter center B1 – 1600 amps



33. Power riser and meter center C1 – 1600 amps



34. Power riser and meter center A4 – 1200 amps



35. Power riser and meter center B4 – 1200 amps



36. Power riser and meter center C4 – 1200 amps



37.  Residential apartment unit circuit breaker panel –
     unit 538 – typical



38.  Residential apartment unit circuit breaker panel –
     unit 538 – typical



39.  Common area corridor – note incomplete lighting
     fixture installation – typical



40.  Common area corridor – note incomplete lighting
     fixture installation – typical



41.  Common area corridor – note incomplete lighting
     fixture installation – typical



42.  Common area corridor – note incomplete lighting
     fixture installation – typical





43.  Incomplete elevator installation – garage area – typical



44.  Incomplete elevator installation – garage area – typical



45.  Incomplete elevator installation – garage area – typical



46.  Incomplete elevator installation – residential apartment unit core area – typical



47.  Incomplete elevator installation – residential apartment unit core area – typical



48.  Incomplete elevator installation – residential apartment unit core area – typical

**APPENDIX A: SITE PHOTOGRAPHS**
Project No. 23-402327.2 – MEP





1.    Sprinkler with protective cap.



2.    Uncharged sprinkler riser.



3.    Sprinklers in Fitness area.



Missing fire extinguisher.



4.    Incomplete fire alarm panel installation.



5.    Missing smoke detector at elevator.





6.    Smoke detector with protective cap.



# APPENDIX B: SUPPORTING DOCUMENTATION





# ACCESSIBILITY COMPLIANCE REVIEW

Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832

Assessment Date: May 18 -19, 2023
Report Date: June 8, 2023 (*Revised June 29, 2023*)
Partner Project Number: 23-402327.4

Prepared for:

**Futura**
Boca Raton, Florida 33496



Engineers who understand your business



June 29, 2023

Ryan Mesce
Futura
2901 Clint Moore Road, #408
Boca Raton, Florida 33496

Subject:        Accessibility Compliance Review
                Futura at Nona Cove Apartments
                19465 Boggy Creek Road
                Orlando, Florida 32832
                Partner Project No. 23-402327.4

Dear Ryan Mesce:

Partner Engineering and Science, Inc. (Partner) is pleased to provide the following Accessibility Compliance Report for the above-mentioned address (the "subject property"). For the purposes of this report, Partner was engaged to identify areas of the property that are not in compliance with the Americans with Disabilities Act Standards (ADA), Fair Housing Amendments Act (FHAA), and/or other applicable accessibility laws and codes.

This compliance review included observation of current site conditions in addition to a limited review of provided construction documents (post construction commencement) and a full review of prior applicable third-party reporting items, to better determine whether non-compliant observations are a result of design, installation, or both. The independent conclusions represent Partner's best professional judgment based upon easily visible conditions and readily-available information and data obtained during the course of this assignment. The site assessment was performed utilizing methods and procedures consistent with good commercial or customary practices designed to conform to acceptable industry standards. See section 2.4 of this report for a list of documents assessed.

We appreciate the opportunity to provide these assessment services. If you have any questions concerning this report, or if we can assist you in any other matter, please contact Drew McCreery at dmccreery@partneresi.com.

Sincerely,

Partner Engineering and Science, Inc.

**DRAFT**

Mari Miller, CASP

Senior Advisor, Accessibility

**DRAFT**

Drew McCreery

National Client Manager

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 1.0 | PURPOSE, LIMITATIONS AND SCOPE | 1 |
| 1.1 | ADA | 1 |
| 1.2 | FHAA | 2 |
| 1.3 | Rehabilitation Act of 1973 (HUD's Section 504) | 2 |
| 1.4 | State/Local | 3 |
| 1.5 | Purpose | 3 |
| 1.6 | Scope | 4 |
| 1.7 | Cost Analysis | 4 |
| 1.8 | Construction Tolerances | 4 |
| 1.9 | Statement of Limitations | 5 |
| 1.10 | User Reliance | 5 |
| 2.0 | GENERAL INFORMATION | 6 |
| 2.1 | Facility Overview | 6 |
| 2.2 | Site Visit | 7 |
| 2.3 | Interviews | 7 |
| 2.4 | Document Review | 7 |

**FIGURES AND APPENDICES**

The following report Figures and Appendices are attached at the end of this report.

Appendices     Appendix A: Figure 1

Appendix B: Non-Compliant Findings and Cost Table

Appendix C: Qualifications



# 1.0   PURPOSE, LIMITATIONS AND SCOPE

## 1.1   ADA

The Americans with Disabilities Act ("ADA", or "Act") is a civil rights legislation that was enacted in 1990 to provide persons with disabilities access and accommodations equal, or similar, to that available to the general public. Title III of the ADA applies to privately-operated commercial facilities and places of public accommodation requiring newly constructed buildings or altered buildings to comply with the standards set forth in the 2010 ADA Standards for Accessible Design (2010 Standards).

The United States Department of Justice ("DOJ") adopted the ADA Accessibility Guidelines ("ADAAG") in 1991 as the 1991 Standards. In 2010 the DOJ adopted the updated ADA design standards, which incorporate the ADAAG. The following table, taken from 28 CFR part 36, Subpart D, outlines compliance dates and the applicable ADA Standards for new construction and alterations.

| Compliance Date for New Construction and Alterations | Applicable ADA Standard |
|---|---|
| On or after January 26, 1993 and before September 15, 2010 | 1991 Standards |
| On or after September 15, 2010, and before March 15, 2012 | 1991 Standards or 2010 Standards |
| On or after March 15, 2012 | 2010 Standards |

The DOJ provides property owners a safe harbor from civil liability associated with non-compliant ADA elements when they were built or altered in compliance with the ADA design standards in place during the time of original construction or alteration. For example, elements of an existing facility that have not been altered on or before March 15, 2012, and that comply with the 1991 Standards are not required to be modified in order to comply with the 2010 Standards. For existing facilities that have elements that are not in compliance with the 1991 Standards on or after March 15, 2012, are required to comply with the 2010 Standards. The safe harbor does not apply to the supplemental elements in the 2010 Standards.

Existing buildings prior to the implementation of the ADA are required to have complied with the 1991 Standards where it is considered readily achievable to do so. Elements that are not in compliance with the 1991 Standards are required to remove barriers up to what is readily achievable in compliance with the 2010 Standards.

***Title III of the ADA***

*At multi-family properties with an onsite leasing office, compliance is typically reviewed for publicly accessible areas within the leasing office, parking serving the leasing office, and exterior routes leading to the leasing office. If there are areas within the common shared spaces that are rented or made available to the general public (not including residents and resident guests), these spaces would also be covered under the Title III of the ADA.*

*See Non-Complaint Findings and Opinion of Cost Table for description of issues and recommendation.*



## 1.2   FHAA

The Fair Housing Amendments Act of 1988 (FHAA) requirements cover multifamily dwelling units that were first occupied after March 13, 1991, or received the last building permit issued by a State, County or local government or renewal thereof, on or before June 15, 1990. The Act covers buildings with four or more dwelling units. All dwelling units are covered in building with one or more elevators. In buildings without elevators, only ground floor dwelling units are covered by the Act. The Department of Housing and Urban Development (HUD) has published Final Design Guidelines (see Federal Register, 24 CFR, Vol. 56, No. 44, March 6, 1991, page 9497). The Act requires design and construction to meet the seven (7) design requirements listed below.

1. An accessible building entrance on an accessible route that can be used by a person using a wheelchair must be provided.
2. Public and common use areas of the dwellings must be readily accessible to and usable by persons with disabilities.
3. Doors designed to allow passage into and within all premises, usable to a person in a wheelchair, must be provided.
4. An accessible route must be provided into and through the covered dwelling unit to allow passage by a person in a wheelchair.
5. All light switches, electrical outlets, thermostats and other environmental controls requiring access must be provided at accessible locations.
6. Bathroom walls must provide reinforcements to allow for later installation of grab bars and shower seats.
7. Kitchens and bathrooms must be designed to allow an individual in a wheelchair to maneuver about the space.

*The property was constructed in 2023, therefore is covered under the FHAA.  See Non-Complaint Findings and Opinion of Cost Table for description of issues and recommendation.*

*Several issues were identified and are included in the Cost Table included with this report. Partner used the Fair Housing Act Design Manual as a safe harbor as identified on documents made available.*

## 1.3   Rehabilitation Act of 1973 (HUD's Section 504)

The Rehabilitation Act of 1973 (Section 504) is applicable for recipients of Federal financial assistance, including housing. Projects constructed after July 11, 1988 are required to be designed and constructed to be readily accessible to and usable by persons with disabilities.  New construction accessibility provisions also apply to substantial alterations undertaken to a multifamily housing project with fifteen or more units. All other alterations are required to comply to the maximum extent feasible.

Section 504 prohibits discrimination on the basis of disability in any program, service or activity that received federal financial assistance.  In housing, a housing provider cannot refuse to rent or sell to a person with disability and impose different policies that are different than those required of or provided to persons who are not disabled.  Section 504 regulations impose specific physical accessibility requirements for new construction and alteration of housing facilities in HUD assisted programs.  The technical criteria in the Uniform Federal Accessibility Standards (UFAS), or a standard that is equivalent or greater, may be used to meet the minimum technical requirements of the regulations.



Under Section 504 if a "substantial alteration" is undertaken, the project is required to meet the new construction provisions of 24 CFR 8.22, which requires 5 percent of the dwelling unit or at least one unit, whichever is greater, shall be made accessible to persons with mobility disabilities and an additional 2 percent of dwelling units or at least one, whichever is greater, shall be made accessible to persons with hearing or visual disabilities. A "substantial alteration" is defined as a project with 15 or more units and the cost of alteration is 75 percent or more of the replacement cost of the facility. Projects that are less than 15 units and less than 75 percent of the replacement costs are identified as "other alterations" which indicate that alterations to a dwelling unit, to the maximum extent feasible, be made readily accessible to and usable by individuals with disabilities. If alterations when considered together amount to an alteration of a dwelling unit, the entire unit shall be made accessible. For example, if the kitchen, bathroom, and doors are replaced this would be considered an alteration of an entire unit.

The Uniform Federal Accessibility Standards has been the accessibility standard for design, construction, and alteration under HUD's Section 504. Although, in March 2011, DOJ advised Federal agencies that they may provide covered entities the option of using the 2010 Standards as an acceptable alternative to UFAS. Programs and activities that are subject to HUD's Section 504 regulation are also subject to Title II of the ADA, which applies to public entities. HUD has identified certain provisions in the 2010 Standards that provide less accessibility than is currently required by UFAS and/or HUD's Section 504 regulations. As a result, HUD is not deeming use of those specific provisions of the 2010 ADA Standards as a means of providing accessibility under Section 504 because HUD cannot decrease the level of accessibility. Therefore, the 2010 ADA Standards under Title II may be utilized as an alternative for comply with HUD's Section 504 regulation with identified exception outlined in the Deeming Notice or UFAS.

Partner's review includes the physical accessibility elements of the property and does not include review of policies and practices.

***The property is not a recipient of federal financial assistance and is therefore not covered under Section 504.***

## 1.4   State/Local

The property was required to have met the building code in effect at the time of construction. Improvements or alterations made to the property after original construction are required to have met the building code in effect at the time of said alterations. Partner assumes all state and local building requirements and regulations for the property have been met.

***State and local building codes was not included as part of this review.***

## 1.5   Purpose

The purpose of this report is to assist the Client, in evaluation of the property's compliance with relevant provisions of the applicable accessibility requirements and the impact that the property's compliance status may have on the Client's financial decisions. To that end, Partner has reviewed the physical features of the property for construction related barriers as they relate to the ADA, FHAA, and Section 504, where applicable. , and has provided recommendations for barrier removal of the observed conditions, and an opinion of probable cost to correct the conditions.



## 1.6 Scope

The subject property has been evaluated for general ADA Title III and FHAA compliance. Based on the date of construction, Partner utilized the Fair Housing Act Design Manual, as the safe harbor for review unless otherwise identified on documents made available.

Unless otherwise noted herein, Partner's review engagement of the ADA covers Title III only and does not cover Title I – Employment, Title II State and Local Governments (unless requested), Title IV - Telecommunications, and Title V – Miscellaneous Provisions. These areas cover separate areas and entities for disability.

Upon determination that a condition exists that appears to be in non-compliance, a general repair recommendation and an anticipated cost for the repair is included in the table at the end of this report. Photographs to illustrate perceived deficiencies are also included.

## 1.7 Cost Analysis

Opinion of costs are based on construction costs developed by construction resources such as Marshall & Swift, RS Means, Partner's experience with past costs for similar projects, city cost indexes, consulting with local specialty contractors, client provided information, and assumptions regarding future economic conditions. Actual cost estimates may differ from Partner's opinion of costs provided in this report. Actual cost estimates are determined by many factors including but not limited to: choice and availability of materials, choice and availability of a qualified contractor, regional climate zone, quality of existing materials, site compatibility, scheduling and sequencing, and access to the subject property and buildings. Resolving or accounting for these variables are outside Partner's scope of work. It is not the intent of this report to provide design solutions or serve as construction documents, rather it is to identify the non-compliant issue and provide a recommendation to remove the barrier. Opinion of costs for corrective action involve a single solution without extensive study, destructive testing, or design. It is understood that there may be several solutions to one barrier, along with unforeseen or concealed conditions that can affect the method of corrective action. Opinion of costs represent material and labor cost only. Other factors such design, permitting, overhead, contingencies, and tenant coordination and management have not been included. Partner recommends consulting with a local design professional and contractor to provide cost efficient solutions to non-compliant issues.

## 1.8 Construction Tolerances

According to the ADA Standards, all dimensions are subject to conventional industry tolerances except where the requirement is stated as a range with specific minimum and maximum end points. Varying construction materials and methods have different industry tolerances; however, tolerances under the ADA cannot be predefined, rather must always be on a case-by-case basis considering the design, materials and methods, and field conditions. Select industries do not have recognized construction tolerances. This is true for concrete and asphalt surfaces. In these situations, Partner recognizes that there are limitations to accuracies of assessors tools used for measurements. Therefore, the following will be included as part of this report:

- Up to 2.4%, where 2.08% is allowed (2.5% will be called out as non-compliant)
- Up to 5.3% where 5.0% is allowed (5.4% will be called out as non-compliant)
- Up to 8.7% where 8.33% is allowed (8.8% will be called out as non-compliant)
- Up to 10.4% where 10.0% is allowed (10.5% will be called out as non-compliant)



- Up to 12.9% where 12.5% is allowed (13.0% will be called out as non-compliant)

Partner utilizes a tolerance of 1/8 inch where minimum and maximum dimensions are not indicated, both due to construction tolerance and the accuracy of each measuring tool, as it may vary by manufacturer. Partner has established the tolerances for this report as a reasonable measure for our assessment of existing buildings and new construction, but it should be understood that these tolerances have not been accepted or established by the DOJ, and is generally evaluated on a case-by-case basis in the event of a complaint process.

## 1.9 Statement of Limitations

Opinions and recommendations presented in this report are based on Partner's interpretation of the ADA and FHAA Guidelines and Standards; final determinations on any issue can be made only by the United States Department of Justice or HUD. Our review of the subject property consisted of a visual assessment of the site, the structure(s) and the interior spaces where access was granted. Verification by count or measurement is performed for typical components and in case of observed anomaly, but exhaustive or complete verification of all accessible elements is not performed. Any technical analyses made are based on the appearance of the improvements and the evaluator's judgment of the physical condition of the subject property components at the time of this assessment. Furthermore, Partner is not responsible for changes or alterations completed at the site after the day of the site observation.

The property was required to have met the building code in effect at the time of construction. Improvements or alterations made to the property after original construction are required to have met the building code in effect at the time of said alterations. Partner assumes all state and local building requirements and regulations for the property have been met.

## 1.10 User Reliance

Partner was engaged by the Addressee, or their authorized representative (collectively, "the Client"), to perform this assessment. The engagement agreement specifically states the scope and purpose of the assessment, as well as the contractual obligations and limitations of both parties. This report and the information therein, are for the exclusive use of the Client. This report has no other purpose and may not be relied upon, or used, by any other person or entity without the written consent of Partner. Third parties that obtain this report, or the information therein, shall have no rights of recourse or recovery against Partner, its officers, employees, vendors, successors or assigns. Any such unauthorized user shall be responsible to protect, indemnify and hold Partner, the Client and their respective officers, employees, vendors, successors and assigns harmless from any and all claims, damages, losses, liabilities, expenses (including reasonable attorneys' fees) and costs attributable to such use. Unauthorized use of this report shall constitute acceptance of, and commitment to, these responsibilities, which shall be irrevocable and shall apply regardless of the cause of action or legal theory pled or asserted.

This report has been completed under specific Terms and Conditions relating to scope, relying parties, limitations of liability, indemnification, dispute resolution, and other factors relevant to any reliance on this report. Any parties relying on this report do so having accepted the Terms and Conditions, a copy of which can be found at http:/www.partneresi.com/terms-and-conditions.php.



## 2.0 GENERAL INFORMATION

### 2.1 Facility Overview

| | |
|---|---|
| Property Name | Futura at Nona Cove Apartments |
| Address | 19465 Boggy Creek Road |
| City, State, Zip | Orlando, Florida 32832 |
| Year Built | 2023 |
| Alteration Date, if applicable | Not Applicable |
| Property Use | Multi-Family |
| Number Buildings | One |
| Stories or Floors | Residential Building – Five<br>Parking Garage - Six |
| Number of Units | 260 |
| Number of Elevators and Floors Accessed | Three elevators accessing all floors |
| Parcel Size (Acres) | 5.583 Acres |
| Gross Building Area (SF) | 331,150 Square Feet |
| Net Rentable Area (SF) | 226,260 Square Feet |
| Total Number of Parking Spaces | Parking Garage – 433 (per plans)<br>Clubhouse/Leasing - 9 (per plans) |
| Number of ADA Parking Spaces | Parking Garage – 6 ADA spaces (per plans)<br>Clubhouse/Leasing Office – 1 ADA space (per plans) |
| Units Accessed<br>Unit Number and Floor Plan Type | A1 – Units 236 and 448<br>A2 – Units 110 and 210<br>A3 – Units 229 and 419<br>B1 – Units 231 and 234<br>B2 – Units 230 and 232<br>B3 – Units 421 and 454<br>C1 – Units 416 and 417<br>S1 – Units 238 and 422 |
| Limiting Conditions | The project is not complete. The common use areas/leasing office have drywall installed only. The elevators are locked and are not available for evaluation. The parking garage is not striped and parking for the leasing office has not been completed.<br><br>*Partner reviewed completed areas for compliance but did not conduct a complete review of areas with ongoing building, as construction monitoring is outside the scope of this report.* |



| Unit Type name | Type | Quantity | Average Area (SF) | Total Square Footage |
|---|---|---|---|---|
| S1 | 1 Bed / 1 Bath | 20 | 623 | 12460 |
| A1 | 1 Bed / 1 Bath | 25 | 799 | 19975 |
| A2 | 1 Bed / 1 Bath | 2 | 873 | 1746 |
| A3 | 1 Bed /1 Bath | 60 | 888 | 53280 |
| B1 | 2 Bed /2 Bath | 40 | 1125 | 45000 |
| B2 | 2 Bed /2 Bath | 54 | 1158 | 62532 |
| B3 | 2 Bed /2 Bath | 44 | 1168 | 51392 |
| C1 | 3 Bed /2 Bath | 15 | 1425 | 21375 |
| | Total | 260 | 1062 | 226,260 |

## 2.2   Site Visit

| Date of Visit | May 18th and 19th, 2023 |
|---|---|
| Name of Assessor | Mandy Manning |
| Name, Title, and Company of Escort | Not Applicable |
| Additional Comments | Not Applicable |

## 2.3   Interviews

Interviews were not conducted during this site visit.

## 2.4   Document Review

The following documents were provided for review:

- Architectural construction documents prepared by Charlan, Brock & Associates and dated January 6, 2020
- ADA/FHA Field Reviews, prepared by LCM Architects and dated November 30, 2021, April 4, 2022, July 1, 2022, and February 10, 2023.



# APPENDIX A: FIGURES





Futura at Nona Cove Apartments
19465 Boggy Creek Road
Orlando, Florida 32832



**SITE PLAN**
Project No. 23-402327.4

**PARTNER**

# APPENDIX B: FINDINGS



FINDINGS TABLE
Future at Nova Cove Apartments
Orlando, FL

Project Name     Future at Nova Cove Apartments     Project No.     23-402327.4

Project Address     19465 Boggy Creek Road, Orlando, FL 32852     Date     June 29, 2023

GENERAL PHOTOGRAPHS



PARTNER



**PARTNER**

FINDINGS TABLE

Futura at Nona Cove Apartments
Orlando, FL

| Project Name | Futura at Nona Cove Apartments | Project No. | 23-402327.4 |
| --- | --- | --- | --- |
| Project Address | 10485 Boggy Creek Road, Orlando, FL 32832 | Date | June 29, 2023 |

## 1.0 – EXTERIOR ACCESSIBLE ROUTE

| No. | Citation | Location | Finding | Recommendation | Photographs | | Status |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1 - 1 | 2020 FAC Section: 303.2, 303.3<br><br>2010 ADAS Section: 303.3, 303.2<br><br>1986 ANSI A117.1 Section: 4.5.2, 4.5.2 | Exterior Route Between Covered Multifamily Dwelling Units and Common Use Areas/Areas | The dock contains abrupt vertical edges or variations over 1/4 inch and nails that are not flush with the dock surface.<br><br>Changes in level between 1/4 inch and 1/2 inch must be beveled at 1:2 or less. Changes in level greater than 1/2 inch must be by way of a ramp. | The nails in the dock will need to be level with the decking surface and the dock surface should have no variation in level greater than 1/4 inch.<br><br>This item was not included in the LCM reports. |  |  | Open |
| 1 - 2 | 2020 FAC Section: 302.1<br><br>2010 ADAS Section: 302.1<br><br>1986 ANSI A117.1 Section: 4.5.1, 4.5.1 | Walking Trail | The walking trail surface contains loose gravel and surface materials that do not provide for a stable, firm, slip-resistant surface.<br><br>Floor and ground surfaces shall be stable, firm, and slip-resistant. | Walking trail will need to be maintained free of sand and gravel.<br><br>This item was not included in the LCM reports. |  |  | Open |

**PARTNER**

**FINDINGS TABLE**
Future at Nona Cove Apartments
Orlando, FL

| Project Name | Future at Nona Cove Apartments | Project No. | 23-402327.4 |
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | Date | June 29, 2023 |

**1.0 - EXTERIOR ACCESSIBLE ROUTE**

| No. | Citation | Location | Finding | Recommendation | Photographs | Status |
|---|---|---|---|---|---|---|
| 1 - 3 | 2020 FAC Section: 405.9, 405.9.1, 405.9.2<br><br>2010 ADAS Section: 405.9.2, 405.9.1, 405.9 | Walking Trail | The walking trail contains drop-offs greater than 6 inches and edge protection has not been provided. | Provide edge protection along the walking trail at areas with drop-offs greater than 6 inches. Quantity is estimated. Cost inclusive of a concrete curb.<br><br>This item was not included in the LCM report. |  | Open |
| 1 - 4 | 2020 FAC Section: 303.2, 303.3<br><br>2010 ADAS Section: 303.3, 303.2<br><br>1986 ANSI A117.1 Section: 4.5.2, 4.5.2 | Walking Trail | The walking trail contains abrupt vertical edges over 1/4 inch.<br><br>Changes in level between 1/4 inch and 1/2 inch must be beveled at 1:2 or less. Changes in level greater than 1/2 inch must be by way of a ramp. | Modify the walking trail to alleviate changes in level greater than 1/4 inch.<br><br>This item was not included in the LCM report. |  | Open |

**1.0 - EXTERIOR ACCESSIBLE ROUTE**

**PARTNER**

**FINDINGS TABLE**

Future at Nona Cove Apartments
Orlando, FL

| Project Name | Future at Nona Cove Apartments | Project No. | 23-402327.4 |
|---|---|---|---|
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | Date | June 29, 2023 |

## 2.0 - PARKING

| No. | Citation | Location | Finding | Recommendation | Photographs | | Status |
|---|---|---|---|---|---|---|---|
| 2 - 1 | 2020 FAC Section: 208.2 | Parking Garage | There does not appear to be enough accessible parking stalls planned for residential parking within the parking garage. | Coordinate and verify the intended approach with designer of record, as the plans appear to conflict. Overall garage layout indicates 2 spaces per floor graphically, assumed to total 6, but text and parking tables indicate 8 total. Three additional accessible spaces appear to be required within this parking facility (residential garage). Cost not included, as this area is still under construction. Advisory comment. |  |  | Open |
| | 2010 ADAS Section: 208.2 | | There are six accessible parking stalls indicated on the civil plans (Sheet C0). | | | | |
| | | | There should be a minimum of nine accessible parking stalls to meet minimum requirements for FHAA and FAC accessible parking counts. | | | | |

**FINDINGS TABLE**

Futura at Nona Cove Apartments
Orlando, FL

| Project Name | Futura at Nona Cove Apartments | | Project No. | 23-402327.4 |
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

**3.0 - EXTERIOR DOOR APPROACHES**

| No. | Caution | Location | Finding | Recommendation | Photographs | Status |
|---|---|---|---|---|---|---|
| | | | No significant issues were observed | | | |

3.0 - EXTERIOR DOOR APPROACHES



PARTNER

Project No. 23-402327.4
Page 5

**FINDINGS TABLE**

Futura at Nona Cove Apartments
Orlando, FL

| Project Name | Futura at Nona Cove Apartments | | Project No. | 23-402327.4 |
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

**4.0 - INTERIOR ACCESS AND ACCESS TO GOODS AND SERVICES**

| No. | Citation | Location | Finding | Recommendation | Photographs | | Status |
|---|---|---|---|---|---|---|---|
| 4 - 1 | 2020 FAC Section: 307.2 <br><br> 2010 ADAS Section: 307.2 <br><br> 1998 ANSI A117.1 Section: 4.4.1, 4.4.1 | Stair 2 (adjacent leasing office) | The stairwell by the first leasing office projects into the circulation path. <br><br> Wall-mounted objects that have leading edges between 27 inches and 80 inches from the floor must not project more than 4 inches into the circulation path. Protruding objects that extend to the floor or within 27 inches of the floor are cane detectable and are a transition not hazardous. Where it is necessary or desirable to have objects protrude from the wall, a manner of cane detection must be provided. | Provide a barrier under the stairwell near the leasing office for cane detection. <br><br> This item was not included in the LCM reports. |  |  | Open |
| 4 - 2 | 2020 FAC Section: 504.2 <br><br> 2010 ADAS Section: 504.2 <br><br> 1998 ANSI A117.1 Section: 4.9.2, 4.9.2 | Stair 4 (closest to temporary office) | The stairwell closest to the temporary office on the first floor was observed with stair risers that are not uniform in height. Measured 3 inches and 7 inches at the bottom floor and subsequent risers. Field team indicates the height discrepancy will be reconciled when concrete riser installation is complete. <br><br> On any given flight of stairs, all steps shall have uniform riser heights and uniform tread widths. | Ensure that the finished stairs provide uniform riser heights as required. Verify the finished vertical dimension from the concrete to the top of the first riser will match that of all subsequent risers. <br><br> This item was not included in the LCM reports. |  |  | Open |

**4.0 - INTERIOR ACCESS AND ACCESS TO GOODS AND SERVICES**

PARTNER

**FINDINGS TABLE**

Futura at Nona Cove Apartments
Orlando, FL

| Project Name | Futura at Nona Cove Apartments | | Project No. | 23-402327.4 |
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

**5.0 - COMMON USE TOILET ROOMS**

| No. | Location | Finding | Recommendation | Photographs | Status |
|---|---|---|---|---|---|
| No significant issues were observed | | | | | |



PARTNER

FINDINGS TABLE
Futura at Nona Cove Apartments
Orlando, FL

| Project Name | Futura at Nona Cove Apartments | | Project No. | 23-402327.4 |
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

**6.0 - ACCESS TO OTHER ITEMS**

| No. | Location | Finding | Recommendation | Photographs | Status |
|---|---|---|---|---|---|
| | | | | | |

No significant issues were observed

**6.0 - ACCESS TO OTHER ITEMS**



**FINDINGS TABLE**
Future at Nona Cove Apartments
Orlando, FL

| Project Name | | Future at Nona Cove Apartments | | Project No. | 23-402327.4 |
|---|---|---|---|---|---|
| Project Address | | 19465 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

**PARTNER**

**7.0 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)**

| No. | Citation | Location | Finding | Recommendation | Photographs | Status |
|---|---|---|---|---|---|---|
| 7 - 1 | 1998 FHADM Section: 4.3 | All Units (observed at 110,210, 229,230,2 31,232,23 4,236,238, 416,417,4 19,421,42 2,448,& 454) | The route connecting the balcony/patios to the rest of the unit do not appear to comply with FHA Design Requirement 4, accessible route into and through the covered unit. The slope at the dwelling unit balcony exceeds 2 percent. Measured slopes up to 6.1 percent (unit 230).\n\nAt least one accessible route shall connect all spaces and elements that are a part of the unit. Page 4.15 of the FHA Design Manual indicates that the accessible route into a balcony constructed of concrete, brick, or tile does not exclude this area from the accessible route requirement. The referenced standard, ANSI A117.1-1986, indicates that an accessible route with a running slope greater than 1:20 is a ramp. Nowhere shall the cross slope of an accessible route exceed 1:50 (2%). It is Partner's understanding that due to the size and configuration of the balconies and patios, the entire surface requires a 2 percent maximum slope in all directions. | Reconstruct balconies at the dwelling units to provide a maximum slope of 2 percent in any direction on the balcony at the balcony entrance. Cost included in the PCA report. See PCA cost table for more information.\n\nThis issue was not documented in LCM reports. It appears that reports 1, 2, and 3 included observations at ground floor units only. Report 4 includes unit observation at level 5. |  | Open |
| 7 - 2 | 2020 FAC Section: 404.2.9\n\n2010 ADAS Section: 404.2.9\n\n1986 ANSI A117.1 Section: 4.8.3 | All Units (observed at 110,210, 229,230,2 31,232,23 4,236,238, 416,417,4 19,421,42 2,448,& 454) | The opening force at the dwelling unit entry doors were observed to require force beyond the maximum allowed, measuring up to 10 pounds.\n\nThe maximum allowable opening force is 5 pounds. | Adjust the door sweeps and spring hinges to provide a maximum opening force of 5 pounds a the dwelling unit's entry door. |  | Open |

Project No. 23-402327.4
Page 9

FINDINGS TABLE

Futura at Nona Cove Apartments
Orlando, FL

**PARTNER**

| Project Name | Futura at Nona Cove Apartments | | Project No. | 23-402327.4 |
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

**7.0 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)**

| No. | Citation | Location | Finding | Recommendation | Photographs | | Status |
|---|---|---|---|---|---|---|---|
| 7 - 3 | 1998 FHADM Section 4.12 | All Units (observed at 110,210) 229,230,2 31,232,23 4,235,236, 416,417,4 19,421,42 2,448,& 454) | The secondary door threshold for all observed units measured 1/2 inch with the exception of Unit 210's which measured greater than 3/4 inch. The threshold is beveled at a slope greater than 1:2, as the observed interior condition contains no bevel at the noted 1/2" vertical change from the interior finish floor to the top of the threshold. Thresholds at these exterior doors, including sliding door tracks, shall be no higher than 3/4 inch. Changes in level at these locations must be beveled with a slope no greater than 1:2. | Modify the door threshold to provide a compliant 1:2 beveled interior condition with a maximum height of 1/2 inch and adjust pan flashing. Changes in level greater than 1/4 inch must be beveled with a slope no steeper than 1:2. This issue was noted in LCM report #4. |  |  | Open |

**PARTNER**

FINDINGS TABLE
Futura at Nona Cove Apartments
Orlando, FL

| Project Name | | Futura at Nona Cove Apartments | | Project No. | 23-402327.4 |
| Project Address | | 19485 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

**7.6 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)**

| No. | Citation | Location | Finding | Recommendation | Photographs | Status |
|---|---|---|---|---|---|---|
| 7.4 | 1998 FHADM Section 7.7 | A1 (1 BR/1 BA) – Observed at Units #236 and #445 | The clearance between the wall and island counter in Unit 648 kitchen is less than 40 inches minimum, measured at 39 inches, and the clearance between the stove and counter in Unit 236 is less than 40 inches, measured at 39 inches. Clearance between all opposing base cabinets, countertops, appliances, or walls within kitchen work areas shall be 40 inches minimum. | Adjust the island pony wall location and countertop to maintain a clearance of 40 inches throughout the kitchen. Cost included in the PCA report. See PCA cost table for more information. Issues with kitchen island placement noted in LCM report #2 and report #4. |  | Open |

**FINDINGS TABLE**
Future at Nona Cove Apartments
Orlando, FL

**PARTNER**

| Project Name | Future at Nona Cove Apartments | Project No. | 23-402327.4 |
|---|---|---|---|
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | Date | June 29, 2023 |

**7.6 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)**

| No. | Citation | Location | Finding | Recommendation | Photographs | Status |
|---|---|---|---|---|---|---|
| 7 - 5 | | A2 (1 BR/1 BA) - Observed in Units #110 and 210 | The centerline of the toilet in Units 110 and 210 is not the correct distance from the adjacent wall or fixture, measured at 25 inches from the tub to the center of the flange. The centerline of the water closet shall be 18 inches from one side of the required clearance. | Reset the toilet flange to provide a toilet centerline of 18 inches exact, per FHA Design Manual. This specific unit issue was not noted in LCM reports, but similar conditions were indicated. |  | Open. |
| 7 - 6 | 1988 FHADM Section 4.3 | A3 (1 BR/1 BA) - Observed in Units #225 and 419 | The route of travel between the hall bathroom door face and the opposing entry corridor wall measured only 35 inches wide with the door open 90 degrees. This creates a pinch point that measures deeper than 24 inches. At least one accessible route shall connect all spaces and elements that are a part of the unit. | Modify the door opening location so provide a compliant 36-inch path of travel in the bathroom from the hallway as required. This issue was not noted in the LCM reports. |  | Open. |

**PARTNER**

FINDINGS TABLE
Futura at Nona Cove Apartments
Orlando, FL

| Project Name | Futura at Nona Cove Apartments | Project No. | 23-402327.4 |
|---|---|---|---|
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | Date | June 29, 2023 |

**7.0 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)**

| No. | Citation | Location | Finding | Recommendation | Photographs | | Status |
|---|---|---|---|---|---|---|---|
| 7 - 7 | 1998 FHADM Section: 7.7 | A3 (1 BR/1 BA) - Observed in Units #229 and 419 | The clearance between the dishwasher and island counter in Unit 229 kitchen is less than 40 inches minimum, measured at 35-3/4 inches, and the clearance between the stove and counter, measured at 37-3/4 inches. Clearance between all opposing base cabinets, countertops, appliances, or walls within kitchen work areas shall be 40 inches minimum. | Adjust the island pony wall location and countertop to maintain a clearance of 40 inches throughout the kitchen. Cost included in the PCA report. See PCA cost table for more information. This deficiency was documented by LCM in Field Review #7 and #3. |  |  | Open |
| 7 - 8 | | A3 (1 BR/1 BA) - Observed in Units #229 and 419 | The restroom in Unit 229 has a toilet centerline that is not the correct distance from the adjacent wall or fixture, measured at 17 inches from the wall to the center. The centerline of the water closet shall be 18 inches from one side of the required clearance. | Use an offset flange to provide a toilet centerline of 18 inches as required under FHA Design Manual. This condition was not observed in Unit 419. Therefore quantity is estimated. This specific unit issue was not documented in LCM Reports, but similar conditions were included. |  |  | Open |

**PARTNER**

FINDINGS TABLE
Future at Nona Cove Apartments
Orlando, FL

| Project Name | Future at Nona Cove Apartments | Project No. | 23-402327.4 |
| --- | --- | --- | --- |
| Project Address | 10485 Boggy Creek Road, Orlando, FL 32832 | Date | June 29, 2023 |

**7.6 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)**

| No. | Citation | Location | Finding | Recommendation | Photographs | Status |
| --- | --- | --- | --- | --- | --- | --- |
| 7 - 9 | 1998 FHADM Section 7.7 | B2 (2BR/2BA) - Observed in Units #230 and 232 | The clearance between the refrigerator and island counter in Unit 230 kitchen is less than 40 inches minimum, measured at 37 inches. Clearance between all opposing base cabinets, countertops, appliances, or walls within kitchen work areas shall be 40 inches minimum. | The required clearance of 40 inches may be achieved by pushing the refrigerator to the wall. If 40-inch clearance is not obtained by pushing the appliance to the wall, relocation of the island point wall or reconfiguration of the kitchen is recommended. Cost included in the PCA report. See PCA cost table for more information. This specific unit issue was not documented in LCM Reports, but similar conditions were included. Kitchen clearance issues noted in LCM report #2. |  | Open |

**PARTNER**

FINDINGS TABLE
Futura at Nona Cove Apartments
Orlando, FL

| Project Name | Futura at Nona Cove Apartments | | Project No. | 23-402327.4 |
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

**7.6 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)**

| No. | Citation | Location | Finding | Recommendation | Photographs | Status |
|---|---|---|---|---|---|---|
| 7 - 10 | 2020 FAC Section: 302.3 / 2010 ADAS Section: 302.3 / 1988 ANSI A117.1 Section: 4.5.4, 4.5.4 | B3 (2BR/2BA) - Observed in Units #421 and 454 | There is an opening at the secondary door in Unit 421 that is greater than 1/2 inch. Openings in the floor or ground surfaces shall not allow the passage of a sphere more than 1/2 inch in diameter. Elongated openings shall be placed so that the long dimension is perpendicular to the dominant direction of travel. | Fill the opening at the secondary door to alleviate gaps greater than 1/2 inch. Coordinate with interior bevel/threshold replacement outlined at Barrier 7-1 (in-unit). This condition is considered an outlying barrier and is not assumed to be present in other units of this layout. Quantity indicative of unit 421 only. This issue was not documented in LCM Reports, as this unit was not included in observations. |  | Open |
| 7 - 11 | 1988 FHADM Section: 6.5 (Figure) | B3 (2BR/2BA) - Observed in Units #421 and 454 | The restroom with a shower in Unit 454 has a toilet centerline that is not the correct distance from the adjacent wall or fixture, measured at 20 inches from the wall to the centerline. The centerline of the water closet shall be 18 inches minimum and 18 inches maximum from one side of the required clearance. | Use an offset flange to provide a toilet centerline of 18 inches. Quantity estimated, as half of the units observed of this type contained a toilet centerline not at 18 inches. This specific unit issue was not documented in LCM Reports, but similar conditions were included. |  | Open |
| 7 - 12 | 1988 FHADM Section: 7.7 | B3 (2BR/2BA) - Observed in Units #421 and 454 | The clearance between the fridge and island counter in Unit 454 kitchen is less than 40 inches minimum, measured at 39-3/4 inches. Clearance between all opposing base cabinets, countertops, appliances, or walls within kitchen work areas shall be 40 inches minimum. | Adjust the island countertop to maintain a clearance of 40 inches throughout the kitchen. Cost included in the PCA report. See PCA cost table for more information. This deficiency was documented by LCM in Field Review #2. |  | Open |

**PARTNER**

**FINDINGS TABLE**

Future at Nona Cove Apartments
Orlando, FL

| Project Name | Future at Nona Cove Apartments | | Project No. | 23-402327.4 |
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

**7.6 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)**

| No. | Citation | Location | Finding | Recommendation | Photographs | Status |
|---|---|---|---|---|---|---|
| 7 - 13 | 1988 FHADM Section 4.3 | B3 (2BR/2BA) - Observed in Units #421 and 454 | In unit 454, the route of travel between the hall bathroom door face and the opposing entry corridor wall measured only 35 inches wide with the door open 90 degrees. This creates a pinch point that measures deeper than 24 inches. At least one accessible route shall connect all spaces and elements that are a part of the unit. | Modify the door opening location so provide a compliant 36-inch path of travel in the bathroom from the hallway as required. Quantity estimated, as half of the units observed of this type contained this narrowed route condition. This issue was not noted in the LCM reports. |  | Open |
| 7 - 14 | 1988 FHADM Section 4.3 | C1 (2BR/2BA) - Observed Units 416 and 417 | In unit 416, the route of travel between the hall bathroom door face and the opposing entry corridor wall measured only 35 inches wide with the door open 90 degrees. This creates a pinch point that measures deeper than 24 inches. At least one accessible route shall connect all spaces and elements that are a part of the unit. | Modify the door swing or provide alternate door stops to allow a 36-inch path of travel in the bathroom from the hallway entrance. Quantity estimated, as half of the units observed of this type contained this narrowed route condition. This issue was not noted in the LCM reports. |  | Open |

**PARTNER**

FINDINGS TABLE

Futura at Nona Cove Apartments
Orlando, FL

| Project Name | Futura at Nona Cove Apartments | | Project No. | 23-402327.4 |
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

## 7.0 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)

| No. | Citation | Location | Finding | Recommendation | Photographs | | Status |
|---|---|---|---|---|---|---|---|
| 7 - 15 | | S1 (1BR/1BA) - Observed Units 238 and 422 | The restroom in Units 238 and 422 have toilet centerlines that are not the correct distance from the adjacent wall or fixture, measured at 17 inches from the wall to the centerline. The centerline of the water closet shall be 18 inches from one side of the required clearance. | Use an offset flange to provide a toilet centerline of 18 inches exist. This issue was documented in LCM Report #1 in which the centerline measured 15-1/2 inches, and LCM Report #4 in which the centerline measured 17 inches. |  | | Open |

**FINDINGS TABLE**

Futura at Nona Cove Apartments
Orlando, FL

| Project Name | Futura at Nona Cove Apartments | | Project No. | 23-402327.4 |
|---|---|---|---|---|
| Project Address | 19485 Boggy Creek Road, Orlando, FL 32832 | | Date | June 29, 2023 |

**7.0 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)**

| No. | Citation | Location | Finding | Recommendation | Photographs | Status |
|---|---|---|---|---|---|---|
| 7 - 16 | 1998 FHADM Section 7.56 | S1 (1BR/1BA) - Observed Units 238 and 422 | The minimum clearance for the shower compartment is not provided as the shower controls were installed on the incorrect wall. If a shower compartment is the only bathing facility, the shower compartment shall have dimensions of 36 inches minimum in width and 36 inches minimum in depth. A clearance of 48 inches minimum in depth, measured perpendicular to the shower head wall, and 36 inches minimum in depth, measured from the face of the shower compartment, shall be provided. The clearing for a shower seat is not required in shower compartments larger than 36 inches in width and 36 inches in depth. | Relocate shower controls to the far wall as designed in the architectural plans. Ensure that as unobstructed, close parallel approach is achievable against the outside edge of the shower and that no framing walls finish proud of the jamb or reduce the 48 inches clear floor space required measured from the control wall.  This issue noted in LCM report #2 and LCM report #4. Partner observed one shower with finishes removed and one shower with all finishes installed. |  | Open |

7.0 - DWELLING UNITS (ANSI B / FHAA ADAPTABLE)

PARTNER

# APPENDIX C: QUALIFICATIONS





**Mandy Manning, ADAC**
Project Manager



## Education

Bachelor of Science in Political Science, Florida State University
Bachelor of Science in International Affairs, Florida State University
Certification in Urban and Regional Planning, Florida State University

## Registrations

ADA Coordinator Certification (ADAC)

## Highlights

10 years of compliance and accessibility experience as it relates to the Americans with Disabilities Act (ADA)
ADA Compliance Assessments
Provide Quality Control

## Experience Summary

As a Project Manager Mandy's responsibilities include planning, executing, and finalizing projects according to deadlines and within in budget. Projects are focused on compliance with the Americans with Disabilities Act (ADA).

Mandy brings more than 10 years of compliance and accessibility experience to the team and is a certified ADA Coordinator. In the past several years she has helped numerous entities with the development of their self-evaluations and ADA transition plans. Her experience includes conducting field evaluations documenting ADA compliance and deficiencies in facilities, parks, and trails. Completing ADA compliance reports of facilities, park, and trails. Conducting program, services, and activities (PSA) reviews for ADA compliance and documenting finings in compliance reports.

## Contact

mmanning@partneresi.com

 **PARTNER**

**Mari Miller, CASp**
**Senior Advisor, Accessibility**



### Education

BFA, Interior Design, Harrington College of Design, Chicago, Illinois

### Certifications

Certified Access Specialist (CASp), State of California

### Training

Certified Access Specialist Institute (CASI), In-Depth Scoping Requirements for Accessible Housing

Fair Housing Accessibility First, Design and Construction Requirements of the Fair Housing Act

Fair Housing Accessibility First, Strategies for Compliant Bathrooms

Fair Housing Accessibility First, Accessible Routes

Harvard University Graduate School of Design, ADA, and Other Access Standards to Public and Private Non-Residential Facilities and Programs

Harvard University Graduate School of Design, Fair Housing: Federal Accessibility Requirements for Multi-Family Housing

United States Access Board, 2010 Standards for Accessible Design

United States Access Board, Accessible Housing

United States Access Board, Alterations and Additions to Existing Facilities

United States Access Board, Department of Justice Title II and Title III Regulations: New Constructions, Alterations, and Barrier Removal

### Highlights

12 years of experience in the architectural, construction, and real estate industries

12 years of experience in Design and Construction Administration

9 years performing Accessibility Compliance Reviews, Property Condition Assessments, Limited Owner's Representation, and Property Acquisition Consulting Services

### Experience Summary

Ms. Miller serves as Senior Advisor of Accessibility Services for Partner Engineering and Science, Inc (Partner), where she is responsible for performing Accessibility Surveys for compliance with the Americans with Disabilities Act, Fair Housing Amendments Act, Section 504 of the Rehabilitation Act, and state and local building code requirements. Ms. Miller also performs Property Condition Assessments in accordance with American Society of Testing and Materials (ASTM) Standards.

Prior to joining Partner, Ms. Miller served as an Accessibility Specialist with a professional consulting firm in Denver, Colorado. She has acquired over 9 years of experience performing accessibility reviews based on standard requirements, including Property Condition Assessments (PCAs), pre-construction plan reviews, Construction Progress Monitoring, Americans with Disabilities Act (ADA) surveys, and Fair Housing Amendments Acts (FHAA) surveys. She has completed surveys for a variety of real estate investment stakeholders, including owners, investors, and developers. She has expertise with commercial building types ranging from multi-family residential, hospitality, mixed-use properties, and industrial facilities.

# Mari Miller, CASp

Ms. Miller leverages over 14 years of experience in the architectural, construction, and real estate industries, pairing her background in design and real estate with training in accessibility compliance/oversight and universal design. Ms. Miller began her career as an in-house Interior Designer for a major national developer, where she progressed into the role of Project Manager, overseeing the multi-faceted coordination of multifamily residential and commercial project portfolios ranging from $1 Million to $390 Million.

Ms. Miller is very active in the local disability community, serving as Chair of the Denver Commission for People with Disabilities and volunteering with the Denver Home Builders Foundation to support access and independence through home modifications.

## Project Experience

*Plans and Specification Review* - Ms. Miller has completed numerous reviews of construction documents across all disciplines for general accessibility compliance. Project types include including office, retail, industrial, multi-family residential, student housing, hospitality, and mixed-use developments. Information reviewed included construction documents, schedules, geotechnical reports, consultant and general construction contracts, and budgets.

*Construction Monitoring Services* - Ms. Miller has performed numerous site reviews of construction projects and monthly in-depth reviews of the contractor's pay application and documentation for mixed use, multi family, industrial, and commercial projects. Notable clients include LMC, A Lennar Company, CBRE, and ZOM Residential.

*ADA/FHA/Section 504/State Accessibility Reviews, various locations, US* - Ms. Miller conducted hundreds of Accessibility Reviews for properties across the country, including a portfolio of large shopping centers in Cincinnati, Ohio, Chicago, Illinois, and Denver, Colorado; FHA reviews of multi-family properties in Miami, Florida, Las Vegas, Nevada, and San Francisco, California; and hotels in nearly every state.

*Acquisition/Disposition/Lending/Refinance Property Condition Assessments* - Ms. Miller has managed assessments of hundreds of properties throughout the United States, including coordinating project teams, performing field work, preparing reports and opinion of capital cost budgets, performing quality control, directing technical consultants, and managing client relationships.

## Affiliations

Certified Access Specialist Institute (CASI), Professional Member
Accessibility Professionals Association (APA) - Rocky Mountain Chapter, Member

## Publications

*"In Multifamily, Shrinking Units Equals Growing Liability," Colorado Real Estate Journal, May 1, 2017.*
Ms. Miller contributed an article discussing the growing micro-unit trend in multi-family housing and how this may affect compliance with the various local, state, and federal accessibility requirements.

## Contact

mmiller@partneresi.com





**Drew H. McCreery**
**Managing Director – Multifamily, Principal**



## Education

Bachelor of Architecture, California State Polytechnic University of Pomona
Minor in Music Performance
Architectural Studies at the National Technical University of Athens, Greece

## Registrations

Certification – Mold Assessment and Remediation in Buildings (Certificate with The Environmental Institute)
Certification – HUD Map Training, St. Louis, Missouri
Certification – 2010 ADA Standards for Accessible Design
Certification – Acoustical Building Design
Certification – Wood Destroying Organisms
Certification – Commercial Roofing Systems
AHERA Building Inspector

## Training

Commercial Roofing Systems
Below Grade Building Environments
Extensive building system training from various entities
AHERA Building Inspector

## Highlights

25+ years' experience in Architectural Due Diligence, Design and Consulting
20+ years performing Property Condition Assessments under ASTM Guidelines along with other Specific
Client Scopes
20+ years performing Construction Progress Monitoring
15+ years performing Environmental Phase I's

## Experience Summary

Mr. McCreery is the Managing Director, Multifamily in a continually growing division within Partner Engineering and Science, Inc.  As Managing Director, he is responsible for understanding and communicating the nuances of agency reporting requirements as well as the unique needs of multifamily assessments to internal relationship managers and staff along with outward communication to various lenders, borrowers and housing agencies.  Mr. McCreery's multifamily role incorporates Agency, LIHTC, HUD, and multifamily Debt/Equity associated with all scopes (PCA, ESA, ALTA, Construction, Zoning, and IH) under one umbrella in order to provide a more holistic approach with refined tools and resources to help us cater to our clients and deliver the highest and most consistent quality. Through increased communication and thought leadership to the various entities and institutions including Fannie Mae, Freddie Mac, the Department of Housing and Urban Development, State Housing Authorities, and various multifamily national organizations, Mr. McCreery is instrumental in policy generation and maintaining Partner as an industry leader through collaboration and partnership.

Mr. McCreery is also the Technical Director for Agency services related to Fannie Mae and Freddie Mac. His responsibilities include overseeing all company standards associated with Agency Guidelines related to

## Drew McCreery

Property Condition Assessments (PCAs), Environmental Assessments (Phase I, Phase II, Transaction Screens, etc.), ALTA Site Surveys, Construction, and Seismic Assessments and providing support services and technical guidance to Partner's extensive list of Relationship Managers, Project Managers and Assessment Staff. Mr. McCreery's attention to detail, knowledge, and longevity in the industry is a perfect complement to Partner's consulting service practice as an industry leader.

Mr. McCreery has significant experience in due diligence assessments for a variety of property types and the needs and requirements of varied number of reporting standards, including ASTM standards, CMBS, Fannie Mae, Freddie Mac, HUD – Multifamily Accelerated Processing (MAP), LIHTC, along with client specific requirements in order to facilitate with the Real Estate Loan Transactions. Specifically, Mr. McCreery has performed, coordinated and reviewed thousands of PCAs, Environmental Phase 1 investigations, Small Loan PCAs, Construction Progress Monitoring, Zoning Analysis, Document and Cost reviews, Probable Maximum Loss assessments, and Mold assessments.

Mr. McCreery has also been involved in national training of staff employees and various clients related to the performance of PCAs, ESAs, and Construction loan monitoring throughout the country and has been personally responsible for the quality control of due diligence reports and client relationships for over 100 separate clients including lenders, equity investors, and legal counsel advisory teams.

### Project Experience

The list below includes a variety of projects where Mr. McCreery either performed the assessment, reviewed or was involved in.

**Office Buildings:**
*Citicorp Center, Los Angeles, CA* - 1,281,800 SF 49-Story Urban Office Tower
*AT&T Center, Los Angeles, CA* - 1,003,452 SF High Rise Office Complex.
*Arco Towers, Los Angeles, CA* – 1,000,000+ SF 2 separate 52-Story Office Towers
*One Wilshire, Los Angeles, CA* - 656,000 SF 30-Story Office/Telecom Building
*1000 2nd Avenue, Seattle, WA* - 588,000 SF 41-Story High Rise Up-Scale Office Tower
*One Bunker Hill, Los Angeles, CA* - 285,000 SF 14-Story High Rise Historic Office Bldg.

**Retail:**
*The Village at Orange, Orange, CA* - 489,000 SF Regional Retail Mall
*Phoenix Spectrum Mall, Phoenix, AZ* - 466,000 SF Regional Retail Mall
*IntraWest Retail Portfolio, Mammoth Lakes, CA* - Squaw Valley, Ca, & Whistler, BC., Ski Resort Retail Complexes

**Industrial:**
*Petsmart Distribution Center, McCarran, NV* - 871,866 SF Warehouse/Distribution Building
*Reno Industrial Center Portfolio, Reno, NV* - 9-Building, 750,000+ SF Industrial Buildings.

**Hotels:**
*Extended Stay Portfolio, Southern California & Chicago, IL,*
*Four Seasons Hotel, Westlake Village, CA*
*Four Seasons Hotel, Hualalai, Hawaii*
*Bacara Resort and Spa, Santa Barbara, CA*



**Drew McCreery**

*Kauai Coconut Beach Hotel, Kauai, HI*
*The Edgewater Hotel, Seattle, WA*
*Playa Del Sol Los Cabos, Cabo San Lucas, Mexico* - Time Share Ocean Front Resort

**Residential and Other Facilities:**
*The Paramount, San Francisco, CA* - 486-Unit 40-Story Mixed-Use – Multi-Family & Retail Tower
*The Asbury, Los Angeles, CA* - 97-Unit, 12-Story Historic Apartment Building
Cathedral Hill Plaza, San Francisco, CA - 169-Unit, 14-Story Apartment Building
*700 Broadway, Seattle, WA* - 59-Unit 4-Story Mixed-Use – Multi-Family & Retail Building
*Courtney Village Apartments, Phoenix, AZ* - 368-Unit, 34-Apartment Buildings
*Aspen Villas, Park City, UT* - 88-Unit Apartment Complex
*Multi-Family Properties* - California, Nevada, Phoenix, New Mexico, Texas, Idaho, Washington, Oregon, Colorado and Utah
*American Golf Portfolio* - California, Hawaii, Arizona; Golf Courses and Clubhouses

Plus Mixed Use, Mobil Home Parks, and other Miscellaneous Projects.

## Speaking

Moderator; Property Condition Assessment Panel, 2015 / 2016 / 2017 / 2018 / 2019 / 2020 / 2021 Construction Lender Risk Management Roundtable

## Publications

*LIHTC, Construction, and Green, Oh My!*, GlobeSt.com, January 10, 2022
*FHFA to Increase Multifamily Radon Sampling Requirements*, GlobeSt.com, August 23, 2021
*Making Sense to Accessibility Laws in Multifamily Transactions*, GlobeSt.com, January 28, 2020
*Fannie/Freddie Due Diligence: Four Things to Know*, GlobeSt.com, August 22, 2019
Fannie Mae Takes Important Step to Align Agency Seismic Requirements, GlobeSt.com, August 29, 2017
*Understanding Freddie Mac's Requirements for Forward Commitment or Mod Rehab Projects*, California Mortgage Finance News, Winter, 2017
*Multifamily Green Revolution*, CMBA, January 2017
*New Lending Program Advances Appeal of Green Building*, Real Estate Weekly, September 7, 2016
*Inside Freddie Mac's Seismic Shift*, GlobeSt.com, October 29, 2015
*Freddie Mac's PCA Changes in a Nutshell*, GlobeSt.com, May 5, 2015
*Fannie Lowers Rates for Green-Certified Multifamily Properties*, GlobeSt.com, March 6, 2015
*What Lenders Need to Know About Fannie 2.0*, GlobeSt.com, December 11, 2015
*Fannie Mae Lowers Rates for Green-Certified Multifamily*, Multi-Housing News, August 27, 2015
*Fannie Mae's Property Guidelines Adjustment*, Multi-Housing News, May 4, 2015
*Freddie Mac Rolls Out new Small Loan Program*, GlobeSt.com, October 27, 2014

## Contact

dmccreery@partneresi.com



# Property Record - 32-24-31-5148-01-000

Orange County Property Appraiser  •
http://www.ocpafl.org

## Property Summary as of 06/07/2023

**Property Name**
Futura At Nona Cove

**Names**
Ln Apartments LLC

**Municipality**
ORL - Orlando

**Property Use**
1003 - Comm Vac Mult-Fam

**Mailing Address**
2901 Clint Moore Rd Unit 408
Boca Raton, FL 33496-2041

**Physical Address**
19465 Boggy Creek Rd
Orlando, FL 32832



**QR Code For Mobile Phone**







## Value and Taxes

### Historical Value and Tax Benefits

| Tax Year Values | | Land | Building(s) | | Feature(s) | | Market Value | Assessed Value |
|---|---|---|---|---|---|---|---|---|
| 2022 | ✓ MKT | $4,164,260 | + | $0 | + | $0 = | $4,164,260 (.10%) | $4,164,260 (.10%) |
| 2021 | ✓ MKT | $4,160,100 | + | $0 | + | $0 = | $4,160,100 (0%) | $4,160,100 (0%) |
| 2020 | ✓ MKT | $4,160,100 | + | $0 | + | $0 = | $4,160,100 | $4,160,100 |

## 2022 Taxable Value and Certified Taxes

| Taxing Authority | Assd Value | Exemption | Tax Value | Millage Rate | Taxes | % |
|---|---|---|---|---|---|---|
| Public Schools: By State Law (Rle) | $4,164,260 | $0 | $4,164,260 | 3.2140 (-7.88%) | $13,383.93 | 18 % |
| Public Schools: By Local Board | $4,164,260 | $0 | $4,164,260 | 3.2480 (0.00%) | $13,525.52 | 18 % |
| Orange County (General) | $4,164,260 | $0 | $4,164,260 | 4.4347 (0.00%) | $18,467.24 | 24 % |
| City Of Orlando | $4,164,260 | $0 | $4,164,260 | 6.6500 (0.00%) | $27,692.33 | 37 % |
| Library - Operating Budget | $4,164,260 | $0 | $4,164,260 | 0.3748 (0.00%) | $1,560.76 | 2 % |
| South Florida Water Management District | $4,164,260 | $0 | $4,164,260 | 0.0948 (-10.65%) | $394.77 | 1 % |
| South Florida Wmd Okeechobee Basin | $4,164,260 | $0 | $4,164,260 | 0.1026 (-10.47%) | $427.25 | 1 % |
| South Florida Wmd Everglades Const | $4,164,260 | $0 | $4,164,260 | 0.0327 (-10.41%) | $136.17 | 0 % |
| | | | | **18.1516** | **$75,587.97** | |

## 2022 Non-Ad Valorem Assessments

| Levying Authority | Assessment Description | Units | Rate | Assessment |
|---|---|---|---|---|
| CITY OF ORLANDO | ORLANDO STORM - DRAINAGE - (407)246-2370 | 202.10 | $1.00 | $202.10 |
| | | | | **$202.10** |

## Tax Savings

| | |
|---|---|
| ▇▇▇ Estimated Gross Tax Total: | $79,569.39 |
| Your property taxes without exemptions would be | $79,367.29 |
| Your ad-valorem property tax with exemptions is | − $79,367.29 |
| Providing You A Savings Of | = $0.00 |

# Property Features

## Property Description

NONA COVE 101/128 LOT 1

## Total Land Area

243,064 sqft (+/-)        |        5.58 acres (+/-)        Deeded

## Land

| Land Use Code | Zoning | Land Units | Unit Price | Land Value | Class Unit Price | Class Value |
|---|---|---|---|---|---|---|
| 1003 - Comm Vac Mult-Fam | PD/AN | 260 UNIT(S) | $16,816.80 | $4,372,368 | $0.00 | $4,372,368 |
| 9950 - Pvt Strmwtr/Rtntn | PD/AN | 1 UNIT(S) | $100.00 | $100 | $0.00 | $100 |

## Buildings

## Extra Features

| Description | Date Built | Units | Unit Price | XFOB Value |
|---|---|---|---|---|
| There are no extra features associated with this parcel | | | | |

# Sales

## Sales History

| Sale Date | Sale Amount | Instrument # | Book/Page | Deed Code | Seller(s) | Buyer(s) | Vac/Imp |
|---|---|---|---|---|---|---|---|
| 06/11/2019 | $5,000,000 | 20190371817/ | | Special Warranty | Lake Nona Neighborhood Center LLC | Ln Apartments LLC | Vacant |

## Similar Sales

| Address | Sale Date | Sale Amount | $/SQFT | Deed Code | Beds/Baths | Instrument # | Book/Page |
|---|---|---|---|---|---|---|---|
| 919 Arlington St | 05/09/2023 | $4,800 | | Special Warranty Multiple | 0/0 | 20230273200/ | |
| 12183 Napiers Cir | 10/26/2022 | $325,000 | | Warranty Deed | 0/0 | 20220664024/ | |
| 3750 W D Judge Dr | 09/26/2022 | $2,299,900 | | Special Warranty | 0/0 | 20220599982/ | |
| 7020 Porter Rd | 09/20/2022 | $6,840,000 | | Special Warranty | 0/0 | 20220597509/ | |
| 45Th St | 09/13/2022 | $500,000 | | Special Warranty | 0/0 | 20220575754/ | |
| 4703 Hoffner Ave | 09/13/2022 | $1,500,000 | | Warranty Deed | 0/0 | 20220574011/ | |
| 5905 Caravan Ct | 09/12/2022 | $10,000,000 | | Special Warranty | 0/0 | 20220583301/ | |
| Juniper Pine Way | 09/09/2022 | $8,153,200 | | Special Warranty | 0/0 | 20220579656/ | |
| 5720 S Rio Grande Ave | 09/06/2022 | $60,000 | | Special Warranty | 0/0 | 20220557158/ | |
| 2100 Mercy Dr | 08/18/2022 | $2,069,400 | | Special Warranty Multiple | 0/0 | 20220513696/ | |

# Services for Location

## TPP Accounts At Location

| Account | Market Value | Taxable Value | Business Name(s) | Business Address |
|---|---|---|---|---|
| There are no TPP Accounts associated with this parcel. | | | | |

## Schools

Lake Nona (Middle School)

| | |
|---|---|
| **Principal** | Robert McCloe |
| **Office Phone** | 407.858.5522 |
| **Grades** | 2022: A \| 2019: A \| 2018: A |

Laureate Park (Elementary)

| | |
|---|---|
| **Principal** | Suzanne Workum |
| **Office Phone** | 407.730.8730 |
| **Grades** | 2022: A \| 2019: A \| 2018: A |

Lake Nona (High School)

| | |
|---|---|
| **Principal** | Nicolle Campbell |
| **Office Phone** | 407.956.8300 |
| **Grades** | 2022: A \| 2019: A \| 2018: B |

## Utilities/Services

| | |
|---|---|
| **Electric** | Orlando Utilities Commission |
| **Water** | Orlando Utilities Commission |
| **Recycling** | Orlando |
| **Trash (Monday, Thursday)** | Orlando |
| **Yard Waste (Tuesday)** | Orlando |

## Elected Officials

| | |
|---|---|
| State Representative | Fred Hawkins |
| State Senate | Linda Stewart |
| School Board Representative | Maria Salamanca |
| US Representative | Darren Soto |
| County Commissioner | Maribel Gomez Cordero |
| Orange County Property Appraiser | Amy Mercado |

# National Flood Hazard Layer FIRMette



Basemap Imagery Source: USGS National Map 2023

# APPENDIX C: QUALIFICATIONS





**Thomas (TJ) Magliano,**
**Project Assessor**



## Education

Bachelor of Arts, Architecture, University of Illinois at Chicago, May 2020

## Training

ASTM-2018 training course on property condition assessments

## Highlights

Over 1.5 years performing Equity and Lender level Property Condition Assessments in accordance with the ASTM-2018 standard
1.5 years-experience with various building types such as industrial, warehouses, low-rise and high-rise multi-family, schools and universities, retail, hospitality, low-rise and high-rise office buildings, etc.
Construction Loan Monitoring
Experience performing forensic investigation for building enclosure system performance
Five years of experience maintaining building mechanical systems

## Experience Summary

Mr. Magliano currently is a Project Assessor who is responsible for performing Property Condition Assessments at the Equity and Lender levels in accordance to the ASTM-2018 standard. Mr. Magliano is responsible for performing site visits to gather information on subject properties in order to develop an opinion on the general condition of the property. With the data gathered on site, he identifies deficiencies and deferred maintenance items, and recommends costs to remedy said deficiencies in a written report.

Mr. Magliano has over five years of experience maintaining building systems as a Maintenance Mechanic, where he performed repairs on HVAC equipment, electrical, and plumbing fixtures. He performed preventative maintenance on the fire and life safety equipment throughout the building, ensuring that the building would pass annual fire inspections and making the necessary repairs to achieve compliance. Mr. Magliano possesses the skills necessary to identify problem areas in building systems, including identifying failing roof systems, failing façade elements, plumbing fixtures, electronic devices, and HVAC equipment that may cause building damage or create a hazardous condition for building occupants when not addressed appropriately. He has experience with ADA in his time working for a retirement community, where he also gained experience working with health and life safety equipment. His experience with mechanical systems allows him to better identify problem areas that may occur throughout the various types of equipment viewed during a Property Condition Assessment (PCA). Mr. Magliano has extensive knowledge of building structural components as a result of his Architecture degree, which developed his skills in identifying certain areas that can become problematic over time. His knowledge of building structural systems and building envelope allows him to be able to provide accurate reports of building conditions to clients.

## Project Experience

*Parkhouse Apartments, Thornton, CO* – Mr. Magliano performed forensic investigation of building envelope components (stucco, stacked stone veneer, and cementitious lap and panel cladding) to identify improper installation of building cladding and roofing systems. Following the investigation, Mr. Magliano recommended a course of repair and developed different pricing scopes for the client in a written report.

# Thomas (TJ) Magliano

*The Northland Apartments, Chicago, IL,* - Mr. Magliano provided verification of repair for window installation on a midrise multifamily building in Chicago. This work consisted of review of manufacturer shop drawings and supervising a licensed window installer to verify proper installation of window components.

*Tulsa portfolio, Tulsa, OK,* - Mr. Magliano managed a portfolio of Equity level acquisitions of seven multifamily properties in Tulsa. Mr. Magliano also performed Property Condition assessments on each of the properties.

*The St. Louis Portfolio, St. Louis, MO,* - Mr. Magliano managed a portfolio of Equity level Property Condition Assessments on seventeen multifamily properties in located throughout St. Louis. Mr. Magliano performed several of the Property Condition Assessments himself.

*The Northside Portfolio, Chicago, IL,* - Mr. Magliano managed a portfolio of Lender level Property Condition Assessments on four multifamily properties in Chicago.

*5th and Broadway, Nashville, TN,* - Mr. Magliano performed a Property Condition Assessment on a mixed use property known as 5th and Broadway which is located adjacent to the historic Ryman Auditorium in downtown Nashville. This property was a large-scale property occupying a city block consisting of one high rise residential building, one high rise office building, and a three-story retail center.

*Enjet Aero, Bloomfield, CT,* - Mr. Magliano performed an Equity level Property Condition Assessment on a manufacturing plant responsible for manufacturing airplane jet engine components for Boeing aircraft.

## Contact

tmagliano@partneresi.com





**Tom Favino**
**Technical Director**



### Education

Associate of Science, Business Management & Economics, State University of New York (S.U.N.Y.) – Empire State College, Saratoga Springs, NY 1994

Associate of Applied Science, HVAC & Refrigeration Technology, New England Technical Institute, New Britain, CT – 1986

### Registrations

Real Estate Sales Associate License, State of Florida

### Training

OSHA 10-hour Construction Safety & Health Certification (29CFR 1926)
New Zealand Building Construction Site Safe Passport, New Zealand Site Safe
Advanced First Aid / CPR, American Red Cross
Construction Quality Management for Contractors, U.S. Army Corps of Engineers (USACE) and Naval Facilities Engineering Command (NAVFAC)

### Highlights

Construction and Building Industry Experience 30+ Years
HVAC, Plumbing, Electrical, Fire Protection Systems Construction and Design/Build Experience 30+ Years
6 years in property condition assessments (ASTM E2018)

### Experience Summary

Tom Favino is a Technical Director with Partner Engineering and Science, Inc. and has over thirty years of experience in the building, construction and engineering fields. He grew up in the mechanical construction industry, as part of a family of contractors and engineers. In addition to his experience with equity level property condition assessments, Tom has worked as an apprentice, a service technician, a senior estimator, a senior project manager, and a vice president for firms within the construction industry. He is a subject matter expert in the fields of HVAC, Plumbing, Fire Protection and Electrical (M.E.P.) systems and building construction. With in-depth technical and operational construction management expertise, Mr. Favino has managed small and large multi-million dollar commercial, industrial and institutional projects. He has led teams in excess of 300 through all phases of construction; bids, design, preconstruction, estimation/budgeting, contract negotiations, purchasing and closeout. His experience spans hospitals, hotels, resorts, airports, banking centers, high/low rise buildings and multifamily structures. He has worked on projects extensively within the United States, as well as several years abroad; in New Zealand.

Mr. Favino is responsible for overseeing Equity Level Building Due Diligence projects. This includes specifically tailored scopes of work, projects that require "deep dive" M.E.P. technical expertise broader than a traditional due diligence consultant can offer. Having personally performed senior level project management for overall projects, as well as specifically for the M.E.P. systems, Mr. Favino provides a unique and in-depth insight perspective for commercial real estate projects, from many points of view. Additionally, Mr. Favino provides specialized construction support and due diligence for projects with large, complex M.E.P. systems.

# Tom Favino

## Project Experience

### Construction

*Modernization & Expansion of Academic Facilities* – Phases II & IV - United States Military Academy, West Point, NY: 750,000 SF complete "gut" and renovation to 3-science and academic buildings.

*RF Micro Devices - Fab III, Greensboro, NC* - Fast track construction microelectronic fabrication facility, 250,000 SF; $200mm.

*UNC Children's and Women's Hospital, University of North Carolina, Chapel Hill, NC* - 500,000 SF, 2-tower, children & women's hospital; 500,000 SF, $100mm.

*Marriott Renaissance Park Hotel & Conference Center, Spartanburg, SC* - 380,000 SF, 4-star luxury hotel and resort; $75mm.

*BNZ 80 Queen St - Deloitte Centre, Auckland, NZ* - 25-story tower, inclusive of a 4-level below grade parking garage, 250,000 SF - $200mm.

*Britomart East 1 & 2 Auckland, NZ* – 13-story low-rise tower, base build including 3-major tenancy and retail buildouts; 430,000 SF, $250mm

*Lee County Justice Center - Courts Tower Addition, Fort Myers, FL* - 11-story, multiple courtrooms and support facility addition, inclusive of a 3-story parking garage; 200,000 SF, $75mm.

*Brickell Flatiron Building Miami, FL* - 1,640,000 SF, 70-story building w/560-Residential Units; $300mm.

### Equity Property Condition Assessment

*Pacific Place, San Francisco, CA* – 436,000 SFG, mixed-use, $475MM.

*Philadelphia Marriot Downtown, Philadelphia, PA* – 1,400-room hotel.

*The Betsy, Miami Beach, FL* - 130-room hotel.

*The Tides and Village, Miami Beach, FL* - 125,000 SF mixed-use retail and hotel, 3-building complex with structured parking.

*Pittsfield Building, Chicago, IL* - 40-story mixed-use, historic building.

*11524 Wilmar Boulevard, Charlotte, NC* - 700,00 SF manufacturing facility.

*Focal Point Business Park, Nashville, TN* - 250,000 SF, 4-building, 11-acre, commercial office park.

*33 West, Davie, FL* - 380-unit, 14-building, 400,000 SF apartment complex.

*Astor Crowne Plaza Hotel, New Orleans, LA* - 380,000 SF, 700-room hotel.

*Tenet Healthcare Portfolio, FL* - 2.5mm SF, 4-healthcare centers and related support buildings.



## Tom Favino

*Marina Del Mar, Sunny Isles Beach, FL* – 17-story, 300-residential unit apartment building.

*Durham Office Complex, Durham, NC* – 800,000 SF, 2-building office complex.

*Plantation Walk Office Complex* – 250,000 SF, 7-story office building with 6-story parking garage.

*Park Line Palm Beaches, West Palm Beach, FL* – 26-story, 380,000 SF, 290-unit apartment building with 800-space parking structure.

*Miami Residential Portfolio, Miami Beach, FL* – 23-historic buildings, 322-apartment unit, multi-property portfolio.

*FedEx Warehouses* – 1mm SF, 2-locations, nationwide warehouse distribution centers.

*Oxford Portfolio* – 14.5 mm SF, 150-locations, industrial warehouse property portfolio.

*Hyde Park Portfolio, Tampa, FL* – 18-historic buildings, 312-apartment unit, multi-property portfolio.

### Contact
tfavino@partneresi.com





**PARTNER**

### Gerald J Delaune, REWC, RRC, RRO, CIT
**Technical Director**



## Education

Engineering Technology – Delgado Junior College, New Orleans, LA

## Registrations

RRC – Registered Roof Consultant, IIBEC - January 2014
REWC – Registered Exterior Wall Consultant – IIBEC - April 2012
Level 1 Thermographer, November 2019
WUFI – ORNL5, WUFI-Pro 5 and Weather Analyzer 1.0, April 2011 ITC
Mobile Elevating Work Platform (MEWP), January 2020
Fall Protection Competent Person, January 2020
Electronic Leak Detection, January 2021

## Training

OSHA 10-hr Occupational Safety and Health Training Course
OSHA 30-hr Competent Person Training Course, March 2012
Basic Plus, August 2021
Scaffold User/Inspector Awareness Level, August 2021
Maritime Security Act, August 2021
Recra/Spill Prevention, August 2021

## Highlights

37 years of experience in all phases of Building Envelope design, renovation and repair
Subject Matter Expert
Expert Witness – Building Envelope
Roof Asset Management & Capital Planning
Building Envelope Commissioning and Testing – BECx
Construction Project Management & Testing
Roof/Facade Damage C&O Assessments
Owners Representative for Renovation Construction
Document and Cost Reviews & Construction Progress Monitoring

## Experience Summary

Mr. Delaune is a Technical Director for the Building Envelope Solutions team at Partner Engineering and Science, Inc. (Partner). Our team provides a full range of roof, exterior wall, waterproofing, and pavement consulting services across North America. Mr. Delaune has over 35 years of experience in all phases of building envelope design, renovation and repair as a consultant, designer and project manager for major roofing, waterproofing and exterior wall projects worldwide. Mr. Delaune has performed condition assessments, forensic testing, investigation and design on over 200 million square feet of building envelope systems. He has participated as a subject matter expert in numerous litigation cases for all building types. He brings a unique perspective to the design, material and installation of building envelope systems and parking garage repair.

# Gerald J. Delaune, REWC, RRC, RRO, CIT

Mr. Delaune's expertise includes the evaluation of existing roofing, waterproofing, and wall systems on commercial, industrial, and institutional buildings. These evaluations include locating sources of moisture infiltration, analysis of system conditions and system failures, as well as developing effective restoration solutions. His work includes the initial design of roofing and waterproofing systems, which incorporates drawings and specifications, peer review of roofing and waterproofing systems, and construction observations and field reporting.

Throughout Mr. Delaune's career, he has participated in a wide variety of projects for the investigation, evaluation, repair, and construction of structural, architectural, and material related building problems. He specializes in design peer review, building envelope commissioning, and failure investigation, evaluation, repair design, and construction monitoring of building envelope systems. Mr. Delaune is an active member of several professional societies, including IIBEC (RCI), where he serves on multiple exam development and technical committees.

Mr. Delaune also has a comprehensive background in construction project management and material in-situ testing.

In addition to his construction and building envelope experience, Mr. Delaune has significant experience in due diligence assessments for a variety of property types and understands the needs and requirements of the varied number of reporting standards and customized client formats. His in-depth knowledge of ASTM standards, as well as his ability to understand the needs of individual clients, enables Partner to develop and produce industry-leading reports.

## Project Experience

*Scott & White Hospital Center for Advanced Medicine (CAM), Temple, TX* - Performed forensic investigation of the exterior wall substrates due to moisture intrusion into the occupied space. Additionally, he performed forensic investigation of the roofing systems due to crushing of the insulation. The initial contract was for expert witness litigation. After the initial contract, he designed replacement exterior wall substrate and roofing system. The building footprint included 88,000 square feet in plan with 6 story and 8 story towers.

*AT&T Winspear Opera House, Dallas, TX* – Performed forensic investigation of the roofing systems due premature failure (blistering) of the roofing system. The initial contract was for expert witness litigation. The building footprint included approximately 36,000 square feet in plan.

*Ector County Coliseum – Odessa, TX* - Conducted a forensic investigation regarding the structural capacity of the deck. The coliseum is a barrel vault. Designed new roofing system and performed periodic inspection during the installation. The building footprint included approximately 77,800 square feet of roofing.

*Georgia World Congress Center, Atlanta, GA* - Conducted storm damage assessments after the 2008 tornado event that struck the property. Prepared design on new roofing, EIFS repairs and glass/aluminum framing repairs. The property included over 1.5 million square feet in plan.

*XOM BOPCC – ExxonMobil Baytown Olefins Plant (BOP) – Base Control Center Roof – 3525 Decker Drive, Baytown, TX 77520* -Performed roof investigation in October 2019 at the request of client due to water intrusion into the server rooms after an explosion that occurred in July 2019. Identified huge water blisters and delamination of the roofing systems during the investigation. Contracted to provide Construction Documents and Project Manual in December 2019. Selected to provide Construction Management in



## Gerald J. Delaune, REWC, RRC, RRO, CIT

August 2020 for the reroofing project saving the client 20% of the initial project budgets. Partner Engineering Services has provided Construction Management, Construction Administration, Contract Administration and full-time project oversight for the client. Project is currently scheduled to be complete by December 31, 2020. Total cost for the project is $1,512,377.77.

*XOM MBPP – ExxonMobil Mont Belvieu Plastics Plant – Roof Assessments* - Performed roof assessments on North and South Control Center, North Lab Building and Lab Building. Assessed quality of roof, noted deficiencies, noted roof access/fall protection and Expected Useful Life (EUL) remaining. Part of a multiple site (50 roof) assessment program for ExxonMobil across the US and Canada.

*Strathcona Refinery Utilities Building – Imperial Oil Strathcona Refinery – Edmonton, Alberta, Canada* -The client engaged us to consult on a capital roof replacement project in a critical utility plant facility that could not be shut down during construction. The previous consultant recommended the entire roof be removed and replaced, including its structural deck, because of corrosion visible from the underside of the roof assembly. The building envelope team did extensive structural testing and found the previous consultant misdiagnosed the corrosion. The deck was not corroding from the bottom, but from the top - a result of a faulty insulation product used during the building's original construction. Our efficient solution reduced exposure to costly downtime that would have resulted from replacing the full deck unnecessarily. We mitigated the risks that would have occurred from a misdiagnosed replacement, and the project timeline was cut by more than half while still meeting the needs of our client. Our careful attention to detail saved the client more than $3M.

*Nanticoke Main Control Room (MCR) – Nanticoke, Ontario, Canada* -The building envelope team was called in to determine the causation of new roof leaks into the server room of the control center. The leaks shut down critical bulk tanker car loading facility. The building envelope team identified multiple points of moisture entry into the occupied through improperly installed details. The building envelope team identified an unorganized, uneducated, and untrained roofing crew that reflected in their work. By performing vigilant full-time observation and systematic testing of core cuts and infrared thermography, we found the new roof system to have unadhered vapor barrier and insulation board, and measurable amounts of trapped water. Our commissioning approach resulted in the reorganization of the on-site roofing crew. The new roofing crew removed defective roofing material and placed the new roofing per the design documents and specifications. This created a successful project delivery and prevention of possible systemic construction defects potentially leading to another shut-down. Our experience in system installation and testing procedures proved a valuable to the client without potential systemic issues. Approximately 11,100 SF.

## Expert Witness Experience

Provide expert witness testimony for waterproofing, roofing, glass and curtainwall framing.

*Pearl River County School District v. RSUI* - No. 1:08-CV-364-HSO-JMR (Picayune, Mississippi) 2010

*Medistar Twelve OAKS PARTNERS, LTD. v. American Economy Insurance Company, Safeco Insurance Company of America, Liberty Mutual Insurance Compan* - No. 4:09- CV -03838 (Houston, Texas) June, 2011



## Gerald J. Delaune, REWC, RRC, RRO, CIT

*Scott & White Memorial Hospital F/K/A Scott and White Memorial Hospital and Scott, Sherwood and Brindley Foundation v. Manhattan Construction, Chamberlain Austin, LLC; Byrne Metals CORP.; Starcraft Interior Contractors LTD.; Win-Con Enterprises, INC.; Quality Brickworks II, LTD.; Balfour Beatty Construction, LLC.; and Page Southerland Page, LLP* - Cause No. 249368-C; 116th Judicial District Court of Bell County, Texas - February, 2014

*Paul Young Associates II, L.P. v. Building Materials Corporation of America, Inc. d/b/a/ GAF Materials Corporation* - Cause No. DC-13-13781; 95th Judicial District Court of Dallas County, Texas – May, 2014 United Commerce Centers, Inc. et al. v. The Travelers Lloyds Insurance Company, et al., Cause No. DC-14-04967; 95th Judicial District Court of Dallas County, Texas – January, 2015

*Terrasse Properties, LLC, V. Mirick Group, INC., Weather- Tight Waterproofing, Inc.; Johnny Ramon d/b/a Ramon Construction; JBJ Construction, Inc; Borg Construction, LLC; Plaster Inc., Mirick Group, INC. v. Childress Engineering Services, INC. and Nelson Architecture Group* - Cause No. DC-13-11081-C; 68th Judicial District Court of Dallas County, Texas – March, 2016

*Cannon Storage Systems, V. MEMC II LLC and Mike McDaniel* - Case No. AAA No. 01-17-0001-2289, Dallas County, Texas – December, 2017

*G&I VIII GLP JV LP, V. National Single Ply, Inc* - Case No. DC-17-04405, 101st Judicial District of Dallas County, Texas – July, 2018

*1400 FM 1417 LLC vs Certainteed Corporation* - Case No. JC1-21-0824, 15th District Court of Grayson County, TX May 2022

*Twin Shores Management, LLC, an Illinois limited liability company vs 83rd Street Development LLC, an Oklahoma limited liability company; and Travelers Casualty and Surety Company of America, a Connecticut corporation* - Case No. CJ-21-2184, District Court of Oklahoma County, State of Oklahoma September, 2022

## Affiliations

International Institute of Building Enclosure Consultants (IIBEC) – Consultant Member
International Institute of Building Enclosure Consultants (IIBEC), REWC Committee Member and Exam Task Force
Construction Specifications Institute (CSI) Professional Member
National Roofing Contractors Association (NRCA) Consultant Member
American Society for Testing and Materials (ASTM) Participating Member
 ASTM Committee D08 on Roofing and Waterproofing
 ASTM Committee C14 on Glass and Glass Products
 ASTM Committee E06 on Performance of Buildings

## Speaking

Electronic Field Vector Mapping, Dallas AIA, Dallas, TX (February 21, 2017)



## Gerald J. Delaune, REWC, RRC, RRO, CIT

Drones: The New Frontier in Building Performance – NFMT, High Performance Building + Workplace, Arlington, TX (May 17, 2017)

Safety Moment – Slips, Trips & Falls, CBRE ACS Group (July 2020)

Safety Moment – Ladders, CBRE ACS Group (July 2020)

Safety Moment – Heat Stress Presentation (July 2022)

Rooftop Safety – Overview of Rooftop Safety (October 2022)

### Publication

IIBEC Manual of Practice: Roofing, Waterproofing, and Exterior Wall Consulting and Quality Observation, 2020, Contributing Author

### Contact

GDelaune@partneresi.com







**Justin Lia, PE, LEED AP**
**Managing Director**

## Education

State University of New York at Buffalo, Buffalo, NY, Bachelor of Science, Civil Engineering
NYSERDA / BPI Multifamily Building Analyst Training Program
OSHA 10-hour Occupational Safety and Health Training Course in Construction Safety and Health
Introduction to Corporate Finance by University of Pennsylvania
Adventures in Commercial Real Estate – Accelerator Real Estate Financial Modeling

## Registrations

Professional Engineering License, State of New York
STAAD Certified Engineer
LEED Accredited Professional
Continuing Education Seminar Presenter – Using Permeable Pavement on Long Island
LEED Accredited Professional Building Construction & Design
Real Estate Salesperson License, New York State
Real Estate Broker Exam, New York State
Real Estate Salesperson License, State of Connecticut

## Experience Summary

Justin Lia, PE, LEED AP is a Managing Director with Partner Engineering and Science, Inc. With a degree in Civil Engineering, and experience as a consultant, contractor, construction inspector, design engineer, forensic engineer, expert witness, and in real estate brokerage Justin brings a unique perspective to real estate due diligence. Over more than 20 years, Justin has been integral in the development and maintenance of client relationships in the private equity, REIT, family office, and corporate sectors. In addition to his experience with equity level property condition assessments, Justin is well versed in civil, structural/geotechnical engineering, forensic assessments, capital planning, and facility condition assessments.

Some of Justin's most notable projects have included:

- Pacific Place, San Francisco, CA, 436,000 SFG, mixed-use, $475MM
- Terminal Stores, New York, NY, 1,200,000 SFG, mixed-use, $800MM
- Equity Office Properties Disposition, Silicon Valley, CA, 8,200,000 SFG, $3.5B
- Philadelphia Marriot Downtown, Philadelphia, PA, 1,400+ rooms hotel
- Bayonne Military Operations Terminal of Bayonne (MOBTY), NJ, industrial development, 156 acres, 1,600,000 SFG
- Pappas Commerce Center, Boston, MA, waterfront industrial park/redevelopment site, 38.5 acres, 750,000 SFG
- Amazon Warehouses, 50+ locations, nationwide (distribution centers, cross-dock facilities, last-mile
- Catholic Health Initiatives, sale-leaseback, 52 MOBs, $725MM
- Grainger CMMS / Capital Planning, Nationwide, 500+ locations, 3,500,000+ SFG
- Big Box Store CMMS / Capital Planning Pilot Program for 800 locations, nationwide
- Dallas County Capital Planning, Dallas County, TX, 7,000,000 SFG, 70+ locations including the courts, prisons, office and lab buildings

# Justin Lia, PE, LEED AP

- Brookhaven National Laboratory, Light Source II, Department of Energy, excavation safety and slope analysis, 400,000 SFG, Particle Accelerator, $900MM
- Evergreen Retaining Wall Design, Huntington Station, NY, 1,000' long, 50' high retaining wall design, local stability, pseudostatic global stability analysis, finite element mesh analysis for footing design
- Nordstrom, roof structure, structural analysis, retrofit design, and construction inspections to strengthen roof structure to support revised loading, Huntington, NY
- Marine Travel Lift, geotechnical evaluation, pile design, construction oversight, Long Island, NY
- Center for Advanced Medicine at iPark (North Shore LIJ, Northwell), site/civil design, 135,000 SFG, $50MM, Lake Success, NY
- Forensic Engineering Evaluation of 40+ commercial and residential buildings in the NY Metro area, following Hurricane Irene and Super Storm Sandy
- Big Box Retail site evaluations, 100+ conceptual plans, NY Metro Area
- Five Towns College, Dix Hills, NY, 34-acre campus, capital planning/budgeting and site planning and engineering services in support of campus renovation and expansion
- MSU Student Housing Portfolio, East Lansing, MI, 319,800 SFG, student housing

## Contact

jlia@partneresi.com





**Drew H. McCreery**
Managing Director – Multifamily, Principal



## Education

Bachelor of Architecture, California State Polytechnic University of Pomona
Minor in Music Performance
Architectural Studies at the National Technical University of Athens, Greece

## Registrations

Certification – Mold Assessment and Remediation in Buildings (Certificate with The Environmental Institute)
Certification – HUD Map Training, St. Louis, Missouri
Certification – 2010 ADA Standards for Accessible Design
Certification – Acoustical Building Design
Certification – Wood Destroying Organisms
Certification – Commercial Roofing Systems
AHERA Building Inspector

## Training

Commercial Roofing Systems
Below Grade Building Environments
Extensive building system training from various entities
AHERA Building Inspector

## Highlights

25+ years' experience in Architectural Due Diligence, Design and Consulting
20+ years performing Property Condition Assessments under ASTM Guidelines along with other Specific Client Scopes
20+ years performing Construction Progress Monitoring
15+ years performing Environmental Phase I's

## Experience Summary

Mr. McCreery is the Managing Director, Multifamily in a continually growing division within Partner Engineering and Science, Inc. As Managing Director, he is responsible for understanding and communicating the nuances of agency reporting requirements as well as the unique needs of multifamily assessments to internal relationship managers and staff along with outward communication to various lenders, borrowers and housing agencies. Mr. McCreery's multifamily role incorporates Agency, LIHTC, HUD, and multifamily Debt/Equity associated with all scopes (PCA, ESA, ALTA, Construction, Zoning, and IH) under one umbrella in order to provide a more holistic approach with refined tools and resources to help us cater to our clients and deliver the highest and most consistent quality. Through increased communication and thought leadership to the various entities and institutions including Fannie Mae, Freddie Mac, the Department of Housing and Urban Development, State Housing Authorities, and various multifamily national organizations, Mr. McCreery is instrumental in policy generation and maintaining Partner as an industry leader through collaboration and partnership.

Mr. McCreery is also the Technical Director for Agency services related to Fannie Mae and Freddie Mac. His responsibilities include overseeing all company standards associated with Agency Guidelines related to

## Drew McCreery

Property Condition Assessments (PCAs), Environmental Assessments (Phase I, Phase II, Transaction Screens, etc.), ALTA Site Surveys, Construction, and Seismic Assessments and providing support services and technical guidance to Partner's extensive list of Relationship Managers, Project Managers and Assessment Staff. Mr. McCreery's attention to detail, knowledge, and longevity in the industry is a perfect complement to Partner's consulting service practice as an industry leader.

Mr. McCreery has significant experience in due diligence assessments for a variety of property types and the needs and requirements of varied number of reporting standards, including ASTM standards, CMBS, Fannie Mae, Freddie Mac, HUD – Multifamily Accelerated Processing (MAP), LIHTC, along with client specific requirements in order to facilitate with the Real Estate Loan Transactions. Specifically, Mr. McCreery has performed, coordinated and reviewed thousands of PCAs, Environmental Phase 1 investigations, Small Loan PCAs, Construction Progress Monitoring, Zoning Analysis, Document and Cost reviews, Probable Maximum Loss assessments, and Mold assessments.

Mr. McCreery has also been involved in national training of staff employees and various clients related to the performance of PCAs, ESAs, and Construction loan monitoring throughout the country and has been personally responsible for the quality control of due diligence reports and client relationships for over 100 separate clients including lenders, equity investors, and legal counsel advisory teams.

### Project Experience

The list below includes a variety of projects where Mr. McCreery either performed the assessment, reviewed or was involved in.

#### Office Buildings:
*Citicorp Center, Los Angeles, CA* - 1,281,800 SF 49-Story Urban Office Tower
*AT&T Center, Los Angeles, CA* - 1,003,452 SF High Rise Office Complex.
*Arco Towers, Los Angeles, CA* – 1,000,000+ SF 2 separate 52-Story Office Towers
*One Wilshire, Los Angeles, CA* - 656,000 SF 30-Story Office/Telecom Building
*1000 2nd Avenue, Seattle, WA* - 588,000 SF 41-Story High Rise Up-Scale Office Tower
*One Bunker Hill, Los Angeles, CA* - 285,000 SF 14-Story High Rise Historic Office Bldg.

#### Retail:
*The Village at Orange, Orange, CA* - 489,000 SF Regional Retail Mall
*Phoenix Spectrum Mall, Phoenix, AZ* - 466,000 SF Regional Retail Mall
*IntraWest Retail Portfolio, Mammoth Lakes, CA* - Squaw Valley, Ca, & Whistler, BC., Ski Resort Retail Complexes

#### Industrial:
*Petsmart Distribution Center, McCarran, NV* - 871,866 SF Warehouse/Distribution Building
*Reno Industrial Center Portfolio, Reno, NV* - 9-Building, 750,000+ SF Industrial Buildings.

#### Hotels:
*Extended Stay Portfolio, Southern California & Chicago, IL,*
*Four Seasons Hotel, Westlake Village, CA*
*Four Seasons Hotel, Hualalai, Hawaii*
*Bacara Resort and Spa, Santa Barbara, CA*



**Drew McCreery**

*Kauai Coconut Beach Hotel, Kauai, HI*
*The Edgewater Hotel, Seattle, WA*
*Playa Del Sol Los Cabos, Cabo San Lucas, Mexico* – Time Share Ocean Front Resort

**Residential and Other Facilities:**
*The Paramount, San Francisco, CA* - 486-Unit 40-Story Mixed-Use – Multi-Family & Retail Tower
*The Asbury, Los Angeles, CA* - 97-Unit, 12-Story Historic Apartment Building
Cathedral Hill Plaza, San Francisco, CA - 169-Unit, 14-Story Apartment Building
*700 Broadway, Seattle, WA* - 59-Unit 4-Story Mixed-Use – Multi-Family & Retail Building
*Courtney Village Apartments, Phoenix, AZ* - 368-Unit, 34-Apartment Buildings
*Aspen Villas, Park City, UT* - 88-Unit Apartment Complex
*Multi-Family Properties* - California, Nevada, Phoenix, New Mexico, Texas, Idaho, Washington, Oregon, Colorado and Utah
*American Golf Portfolio* - California, Hawaii, Arizona; Golf Courses and Clubhouses

Plus Mixed Use, Mobil Home Parks, and other Miscellaneous Projects.

## Speaking

Moderator; Property Condition Assessment Panel, 2015 / 2016 / 2017 / 2018 / 2019 / 2020 / 2021
Construction Lender Risk Management Roundtable

## Publications

*LIHTC, Construction, and Green, Oh My!*, GlobeSt.com, January 10, 2022
*FHFA to Increase Multifamily Radon Sampling Requirements*, GlobeSt.com, August 23, 2021
*Making Sense to Accessibility Laws in Multifamily Transactions*, GlobeSt.com, January 28, 2020
*Fannie/Freddie Due Diligence: Four Things to Know*, GlobeSt.com, August 22, 2019
Fannie Mae Takes Important Step to Align Agency Seismic Requirements, GlobeSt.com, August 29, 2017
*Understanding Freddie Mac's Requirements for Forward Commitment or Mod Rehab Projects*, California Mortgage Finance News, Winter, 2017
*Multifamily Green Revolution*, CMBA, January 2017
*New Lending Program Advances Appeal of Green Building*, Real Estate Weekly, September 7, 2016
*Inside Freddie Mac's Seismic Shift*, GlobeSt.com, October 29, 2015
*Freddie Mac's PCA Changes in a Nutshell*, GlobeSt.com, May 5, 2015
*Fannie Lowers Rates for Green-Certified Multifamily Properties*, GlobeSt.com, March 6, 2015
*What Lenders Need to Know About Fannie 2.0*, GlobeSt.com, December 11, 2015
*Fannie Mae Lowers Rates for Green-Certified Multifamily*, Multi-Housing News, August 27, 2015
*Fannie Mae's Property Guidelines Adjustment*, Multi-Housing News, May 4, 2015
*Freddie Mac Rolls Out new Small Loan Program*, GlobeSt.com, October 27, 2014

## Contact

dmccreery@partneresi.com



# EXHIBIT B

DocuSign Envelope ID: ...



# ADDITIONAL PROVISIONS TO THE SUBCONTRACT AGREEMENT

**HUD PROVISIONS:**

1) All parties hereby agree that SUBCONTRACTOR assures that either he or an authorized representative of his company will attend all jobsite meetings as established by CONTRACTOR's supervisory staff unless their presence is not requested by CONTRACTOR. In the event a representative shall represent SUBCONTRACTOR at these meetings, said representative shall be able to make binding commitments on all matters to be discussed at such meetings, including cost, payments, change orders, time schedules and manpower requirements. Further, financial penalties per meeting will be imposed if SUBCONTRACTOR or SUBCONTRACTOR's representative is not present at these meetings. The following person(s) are designated as SUBCONTRACTOR's representatives having the authority as stated herein.

Subcontractor Designated Representative: ___Kevin Abraham___

(Optional Representative) ___Lisa Porter___

Subcontractor Certified Payroll Contact & Phone # ___4078778090___

2) Requirement of, per US Department of Housing and Urban Development, HUD 92442-A, SUBCONTRACTOR waives right to file a mechanic's or materialman's lien or maintain any claim against improvements for or on account of any work done, labor performed or materials furnished under this Subcontract agreement.

3) SUBCONTRACTOR agrees to send Certified HUD payroll sheets in weekly for this Subcontract Agreement. (Through Elations.com; #067-35564 Futura @ Nona Cove)

4) Before work commences, the SUBCONTRACTOR shall enroll in Futura at Nona Cove's Owner Controlled Insurance Policy with Willis Towers Watson with the contact listed below:

> **Janice McNary, CISR**
> OCIP Administrator, Construction Practice
> **Willis Towers Watson**
> 3407 W. Dr. Martin Luther King Blvd.
> Lakeside Suite #200
> Tampa, FL 33607
> Mobile: 813-450-9654
> Janice.mcnary@willistowerswatson.com
> www.willistowerswatson.com

5) It is fully understood that SUBCONTRACTOR will be responsible for keeping its part of the job clean and in an orderly fashion subject to the approval of CONTRACTOR and ARCHITECT. Further, SUBCONTRACTOR shall be totally responsible for the clean up on a daily basis of all debris generated by SUBCONTRACTOR'S daily operations. Should it become necessary for CONTRACTOR to incur any expenses performing cleanup work or removing debris from site for SUBCONTRACTOR, such expense will be deducted from SUBCONTRACTOR's contract amount.

6) All work shall be in accordance with Project Plans and Specifications.

7) Project includes **Davis Bacon Wages rates**, see attached at end of Contract.

## Standard Short Form Agreement Between Contractor and Subcontractor

This Agreement is made this day of , by and between

**GENERAL CONTRACTOR:**
Portrait Construction of Florida, Inc
2452 Lake Emma Rd. #1040
Lake Mary, Florida 32746
Phone: (407) 831-6275

**SUBCONTRACTOR:**
Armstrong Air & Heating
671 Business Park Blvd.
Winter Garden, Florida 34787
Phone: (407) 877-8090

PROJECT:    Futura at Nona Cove

OWNER:

LN Apartments, LLC

ARCHITECT:    Charlan Brock & Associates

EOR:    Z Development Services

## TERMS:

**SUBCONTRACTOR'S WORK**. SUBCONTRACTOR agrees to provide and complete all Work ("Work") required of it under the Contract Documents, including, but not limited to, all labor, services, materials, installation, clean-up, hoisting, supplies, insurance equipment, scaffolding, tools, and other facilities of every kind required for the prompt and efficient performance of all HVAC Package. The Work is per the Drawings and Specifications in strict accordance with the Contract Documents. SUBCONTRACTOR shall give timely notices to authorities pertaining to subcontract Work and shall be responsible for all permits, fees, licenses, assessments, inspections, testing and taxes necessary to complete subcontract Work.

**SUBCONTRACT AMOUNT**. CONTRACTOR agrees to pay SUBCONTRACTOR for satisfactory and timely performance and completion of subcontract Work: $1,366,165.00

Retainage shall be ten percent (10.0%).

## SCOPE:

Scope of Work: HVAC
1. Provide all labor, material, equipment, taxes to provide a complete heating, ventilation and air conditioning system for all buildings per the plans and specifications. Work shall include but not be limited to the following scope of work.
2. Scope of work includes the following: One 5 story buildings: 260 apartment units, Corridors, common areas, clubhouse.
3. Includes all ductwork, condensing units, AC, roof racks, air handlers, grilles, diffusers, fans, heaters, wall louvers, split systems, ductless split systems, dampers, registers, access panels, all misc materials, supplies and fasteners as required and indicated on the plans.
4. A 14 SEER Goodman or equal straight cool system with heat output requirements to meet code is included.
5. Amenities and common areas 15 SEER straight cool units.
6. All grilles shall be US Air white stamped steel, multi shutter.
7. Ductwork layout per plans is not included. Subcontractor shall submit a ductwork layout shop drawing to provide shorter duct runs for approval by the engineer of record.
8. All penetrations through fire rated ceilings must be provided with a ceiling rated diffuser.
9. All wall caps shall have backdraft dampers.
10. Provide and install duct insulation per shop drawings and as acceptable to AHJ and EOR. R-Values as indicated on

Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 2 of 46
Sub    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

approved shop drawings

11. Includes all low voltage wiring required for HVAC controls.
12. Includes all refrigerant piping and insulation per the plans. Penetration details per the plans apply to this scope of work.
13. Provide and install all required access panels in non-accessible ceilings as necessary.
14. All labeling is included per the plans and specifications. Properly label all remote equipment as to which unit is served with engraved plates.
15. Provide 1" pleated filters (60% efficient) during construction. Prior to turnover and test and balance, these filters are to be replaced with new 1" pleated filters (60% efficient).
16. Includes all firestopping per the plans and UL systems.
17. Includes a duct smoke detection system if required. Smoke detectors are to be provided and installed by the Electrician.
18. Includes expansion anchors at all Condensing Units. Electro plating for corrosion is not included.
19. Condensate piping final connections only (within 5 feet of equipment)
20. Includes all threaded rods supports for the ductwork per plans and specifications.
21. Provide and install a recessed dryer wall box. Connection of the dryer to the box is by others.
22. Dryer vent shall be 26 ga and will include the necessary firestopping. Dryer venting shall be per code. The dryer vent s on the outside of the building shall be plastic. They shall be made of paintable metal and shall be painted to match the adjacent surface (by others). Vents shall be Manufacture spec or equal.
23. Fire dampers are to be provided at all ductwork penetrations of fire rated ceilings/walls in accordance with the UL assembly. Access door included.
24. Digital programmable thermostats for the apartment units and clubhouse are included.
25. All bath ventilation fans to be S&P /Penn Barry or equal.
26. Provide and install all above slab vertical and horizontal condensate pipe with insulation. Seal open ends of the underground AC chases. Chases are provided by others. Any exterior exposed insulation shall sealed per manufactures requirements.
27. Coordinate all roof penetrations with Portrait and the Roofing Contractor. It is the responsibility of this subcontractor to verify that all penetrations are sealed. Water proofing by others.
28. Coordinate space requirements with other trades and structural systems. Subcontractor acknowledges coordination of the plans including layout of this work with the framing, truss, fire protection and electrical subcontractors to prevent potential conflicts. Inform the framing contractor and portrait in writing of any locations where framing members interfere with the installation of this work prior to installation of framing. There shall be no additional cost to contractor if conflicts are identified. Do not cut, remove or modify any trusses or structural member without written approval from the contractor and structural engineer.
29. Subcontractor shall confirm his equipment shall not conflict with the space provided for it and shall provide framing requirements to Portrait job superintendent prior to framing.
30. Provide Portrait and the Electrician information for all equipment electrical requirements.
31. Verify that all closets and chases are sufficient for equipment to be installed.
32. Test & Balance is included as follows: each unit type in the apartments and the clubhouse. (Non Certified)
33. Instruct the Owner on the correct use of the equipment and provide maintenance manuals.
34. Provide and pay for all permits and fees for this scope of work. Pay re-inspection fees for failed inspections for this scope of work.
35. Subcontractor shall attend the weekly jobsite coordination meetings two weeks prior to and during the entire installation of this scope of work.
36. Daily cleanup is required.
37. Prior to the start of work this subcontractor shall hold a pre-construction meeting with the Portrait superintendent to review all contract scope of work, submittals, safety procedures, sequencing and durations of the work, and coordination with other trades. Meeting is to be attended by Subcontractor's site supervisor who is to be responsible for maintaining all jobsite work and safety requirements.
38. Complete the enclosed Application for Payment and submit by the 20th of every month. You may project your work in place through the 25th.
39. The following submittals are required for this project 2 weeks from contract:
    1. Unit Ductwork Shop Drawings
    2. Ductwork & Accessories Product Data
    3. Grilles/Diffusers Product Data
    4. Dampers Shop Drawings
    5. Equipment Shop Drawings
    6. Access Door Shop Drawings

Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 3 of 46
Sub              Contractor



### Standard Short Form Agreement Between Contractor and Subcontractor

7. Thermostat Product Data
8. Fans Shop Drawings
9. Dryer Box Shop Drawings
10. Fire Rated Penetration Shop Drawings/Product Data (Must Be Approved By City of Orlando)
11. Labeling Product Data
12. Filter Product Data
13. Condensing Unit Anchorage Shop Drawings
14. Piping Product Data

40. Contract includes extra stock items to be used during punchout, warranty and for Owner's stock. These stock items will be furnished prior to starting finishes in the first building. Using the form included with the subcontract package, deliver the extra stock to the job and have the Portrait Superintendent validate materials . Include a copy of the signed receipt with your first monthly draw request. The monthly draw request will be released only when the extra stock material has been delivered and signed for by Portrait Superintendent. Any stock used during punchout will be replenished prior to turnover of last building. Attic stock to include the following:

      2 Each Type Used- Bath Exhaust Fans
      4 Each Type Used- A/C Filters
      2 Each Type Used- Thermostat
      4 Each Type & Size Used- Grills

1. Subcontract shall participate in 'Design-Assist' work. It is the subcontractor's responsibility to ensure plans are complete and accurate throughout the Design-Assist process. Unless specifically stated above there shall be no change orders for work required by any AHJ requirement, inconsistencies in plans or errors and omissions. This subcontractor can only claim a change order in the event of an owner/contractor directed change in scope.
2. Subcontractor includes simultaneous work progress on multi sequences at a time, staggered.

Additional inclusions:

1. Startups to occur within 72 hours of meters being set and hot check completion.
2. Cleanup charges at the end of the project will not be accepted.
3. Returned submittals due within 60 days of receipt.
4. Duct Detector T&B excluded.

**DURATION:**




## Standard Short Form Agreement Between Contractor and Subcontractor

**1)** **CONTRACT DOCUMENTS.** The "Contract Documents" include 1) this Subcontract Agreement and all documents attached hereto as Exhibits; 2) all documents which comprise the Contract between the Owner and CONTRACTOR; 3) all General Conditions, Supplementary Conditions and other conditions applicable to the Project; 4) the Plans and Drawings prepared for the Project; 5) the Project Manual or Specifications, including but not limited to Specification Divisions 1 through 16; 6) all bulletins and addenda issued in connection with the Project; 7) all standards, requirements or conditions incorporated into the Contract Documents by reference; and 8) any amendments, modifications, or changes to any or all of those documents identified in (1) – (7) which may occur during the Project. No other documents except those identified herein shall be considered Contract Documents. In the event of conflict, inconsistencies, variations between the provisions of the Subcontract Agreement and any other Contract Documents, including the Contract between the Owner and CONTRACTOR, the Subcontract Agreement shall govern. SUBCONTRACTOR and its sub-subcontractors and suppliers shall be bound to CONTRACTOR by all of the provisions of the Contract Documents and shall strictly comply therewith in all respects. SUBCONTRACTOR shall perform Subcontract Work under the general direction of CONTRACTOR and shall cooperate with CONTRACTOR so CONTRACTOR may fulfill obligations to Owner. A. This subcontractor agrees to specifically adhere to the requirements of Division 00 and 01 of the specifications. As the CONTRACTOR and SUBCONTRACTOR have been party to the design and engineering of the project, they have a thorough knowledge of the Contract Documents. Therefore, the SUBCONTRACTOR accepts full responsibility for the completeness and coordination of its scope of Work as to ensure quality installation and product. Any material, assembly, device, detail, component, and/or means/method which may not necessarily be shown on the Contract Documents but is required to make the project complete and suitable for its intended purpose shall be the SUBCONTRACTOR's sole responsibility without any adjustment to the subcontract amount.

**1a)** **Drawing Log**

| | | FUTURA AT NONA COVE 10.16.19 | | |
|---|---|---|---|---|
| Discipline | Drawing No. | Drawing Title | Revision | Drawing Date |
| Civil | C0 | CIVIL DATA AND NOTES SHEET | 3 | 6/15/2020 |
| Civil | C1.0 | OVERALL SITE PLAN | 2 | 6/15/2020 |
| Civil | C1.1 | DEMOLITION PLAN | 2 | 6/15/2020 |
| Civil | C2.0 | SITE DIMENSION PLAN | 3 | 6/15/2020 |
| Civil | C2.1 | EMERGENCY & SOLID WASTE AUTO TURN ANALYSIS | 2 | 6/15/2020 |
| Civil | C3.0 | SITE UTILITY PLAN | 8 | 6/26/2020 |
| Civil | C4.0 | GRADING AND DRAINAGE PLAN | 2 | 6/15/2020 |
| Civil | C4.1A | CIVIL DATA AND NOTES SHEET | 1 | 6/15/2020 |
| Civil | C4.1B | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.1C | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.2 | COURTYARD & POOL AREA GRADING PLANS | 1 | 6/15/2020 |
| Civil | C4.3A | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3B | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3C | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C5.0 | SWPP PLAN | 3 | 6/15/2020 |
| Civil | C6 | CONSTRUCTION DETAILS | 4 | 6/15/2020 |
| Civil | C7 | OUC STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | C8 | OUC DETAILS/CITY OF ORLANDO STANDARD NOTES | 4 | 6/15/2020 |
| Civil | C9 | OCU SEWER STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | CV | COVER SHEET | 7 | 6/26/2020 |
| Radon | R1.0 | UNITS S1-A2 | 0 | 11/15/2019 |
| Radon | R2.0 | UNITS A3 – B1 | 0 | 11/15/2019 |



DocuSign Envelope ID: 8558B...



## Standard Short Form Agreement Between Contractor and Subcontractor

| Radon | R3.0 | UNITS B2 - B3 | 0 | 11/15/2019 |
|---|---|---|---|---|
| Radon | R4.0 | UNITS C1-C2 | 0 | 11/15/2019 |
| Radon | R5.0 | CLUBHOUSE | 0 | 11/15/2019 |
| Architectural | A0.01 | PROJECT COVER SHEET | 5 | 7/31/2020 |
| Architectural | A0.02 | PROJECT INDEX OF DRAWINGS | 11 | 8/12/2020 |
| Architectural | A0.02a | DESIGN ASSUMPTIONS | 1 | 5/16/2019 |
| Architectural | A0.03 | PROJECT INDEX OF DRAWINGS | 6 | 7/31/2020 |
| Architectural | A0.04 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.05 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.06 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.07 | PROJECT DATA SHEET | 1 | 7/31/2020 |
| Architectural | A0.08 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.10 | ARCHITECTURAL SITE PLAN | 4 | 7/31/2020 |
| Architectural | A0.11 | OVERALL BUILDING FIRST FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.12 | OVERALL BUILDING SECOND FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.13 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETYPLAN | 4 | 7/31/2020 |
| Architectural | A0.21 | OVERALL CLUBHOUSE OCCUPANCY PLAN | 4 | 7/31/2020 |
| Architectural | A0.31 | FIRST FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.32 | SECOND FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.33 | UPPER FLOORS SEQUENCE PLANS | 3 | 7/31/2020 |
| Architectural | A0.41 | OVERALL BUILDING GROUND FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.42 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETYPLAN | 1 | 7/31/2020 |
| Architectural | A0.43 | OVERALL BUILDING SIXTH FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.44 | OVERALL BUILDING TYPICAL ROOF LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A1.00 | OVERALL BUILDING SLAB CONTROL PLAN | 3 | 7/31/2020 |
| Architectural | A1.01 | OVERALL BUILDING FIRST FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.02 | OVERALL BUILDING SECOND FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.03 | OVERALL BUILDING THIRD FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.04 | OVERALL BUILDING FOURTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.05 | OVERALL BUILDING FIFTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.06 | OVERALL BUILDING ROOF CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.11A | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11B | PARTIAL FIRST FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.11C | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11D | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11E | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11F | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12A | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12B | PARTIAL SECOND FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.12C | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |





**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Architectural | A1.12D | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12E | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12F | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13A | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13B | PARTIAL THIRD FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.13C | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13D | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13E | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13F | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14A | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14B | PARTIAL FOURTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.14C | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14D | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14E | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14F | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15A | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15B | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.15C | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15D | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15E | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15F | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16A | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16B | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16C | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16D | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16E | PARTIAL ROOF PLAN BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16F | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.21 | FIRST FLOOR GARAGE PLAN | 7 | 7/31/2020 |
| Architectural | A1.22 | SECOND FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.23 | THIRD FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.24 | FOURTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.25 | FIFTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.26 | SIXTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.27 | ROOF LEVEL GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.28 | ROOF LEVEL GARAGE SLAB PLAN | 3 | 7/31/2020 |
| Architectural | A2.01 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.02 | OVERALL BUILDING ELEVATIONS | 6 | 7/31/2020 |
| Architectural | A2.03 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.04 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.05 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.06 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |





## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | A2.07 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A2.08 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.09 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.11 | PARTIAL ENLARGED BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A3.11 | TYPICAL CLUB BUILDING SECTION | 1 | 7/31/2020 |
| Architectural | A3.21 | TYPICAL GARAGE BUILDING SECTION | 3 | 7/31/2020 |
| Architectural | A4.01 | UNIT S1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02 | UNIT A1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02A | UNIT A1 PLAN | 2 | 7/31/2020 |
| Architectural | A4.03 | UNIT A2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.04 | UNIT A3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.05 | UNIT B1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.06 | UNIT B2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.07 | UNIT B3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.08 | UNIT C1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.21 | CLUB PLAN FIRST FLOOR DIMENSIONS | 7 | 8/12/2020 |
| Architectural | A4.22 | CLUB PLAN SECOND FLOOR DIMENSIONS | 5 | 7/31/2020 |
| Architectural | A4.23 | CLUB PLAN FIRST FLOOR NOTES | 4 | 8/12/2020 |
| Architectural | A4.24 | CLUB PLAN SECOND FLOOR NOTES | 4 | 7/31/2020 |
| Architectural | A4.25 | ENLARGED MAIL ROOM | 3 | 7/31/2020 |
| Architectural | A4.31 | ENLARGED GARAGE PLANS | 4 | 7/31/2020 |
| Architectural | A4.32 | ENLARGED CLOSET PLANS | 2 | 7/31/2020 |
| Architectural | A4.33 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.34 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.35 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.36 | ENLARGED TRASH AND RECYCLING PLANS | 2 | 7/31/2020 |
| Architectural | A4.71 | ACCESSIBILITY REQUIREMENTS DWELLING UNITS | 2 | 7/31/2020 |
| Architectural | A4.72 | ACCESSIBILITY REQUIREMENT PUBLIC SPACES | 2 | 7/31/2020 |
| Architectural | A4.81 | ENLARGED UNIT ACCESSIBILITY PLANS | 3 | 7/31/2020 |
| Architectural | A4.91 | INTERIOR ELEVATIONS UNITS | 3 | 7/31/2020 |
| Architectural | A4.92 | INTERIOR ELEVATIONS UNITS | 1 | 7/31/2020 |
| Architectural | A5.01 | APARTMENT BUILDING WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.02 | GARAGE WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.11 | TYPICAL EXTERIOR WALL SECTIONS | 3 | 7/31/2020 |
| Architectural | A5.21 | TYPICAL TENANT WALL SECTIONS | 4 | 7/31/2020 |
| Architectural | A5.22 | TYPICAL TENANT WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.31 | TYPICAL BALCONY WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.41 | GARAGE WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.01 | STAIR PLANS | 2 | 7/31/2020 |
| Architectural | A6.02 | STAIR SECTIONS | 3 | 7/31/2020 |
| Architectural | A6.03 | STAIR SECTION AND PLAN | 1 | 7/31/2020 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | A6.04 | STAIR SECTION AND PLANS | 2 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A6.11 | TYPICAL STAIR DETAILS | 2 | 7/31/2020 |
| Architectural | A6.12 | PRECAST STAIR DETAILS | 1 | 7/31/2020 |
| Architectural | A6.21 | ELEVATOR PLAN AND SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.41 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.42 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A7.01 | DOOR SCHEDULE | 4 | 7/31/2020 |
| Architectural | A7.02 | WINDOW SCHEDULE | 4 | 8/12/2020 |
| Architectural | A7.03 | DOOR & WINDOW INSTALLATION DETAILS | 3 | 7/31/2020 |
| Architectural | A7.11 | TYPICAL DOOR DETAILS | 3 | 7/31/2020 |
| Architectural | A7.21 | TYPICAL WINDOW DETAILS | 3 | 7/31/2020 |
| Architectural | A7.22 | TYPICAL STOREFRONT DETAILS | 4 | 7/31/2020 |
| Architectural | A7.31 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.32 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.33 | TYPICAL ARCHITECTURAL DETAILS | 2 | 7/31/2020 |
| Architectural | A7.34 | TYPICAL ARCHITECTURAL DETAILS | 1 | 7/31/2020 |
| Architectural | A7.41 | TYPICAL WATERPROOFING & BALCONY FLASHING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.42 | TYPICAL WATERPROOFING DETAILS | 2 | 7/31/2020 |
| Architectural | A7.51 | TYPICAL ROOFING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.52 | TYPICAL ROOF DETAILS | 3 | 7/31/2020 |
| Architectural | A7.61 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.62 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.63 | TYPICAL FIRE CONTROL DETAILS | 4 | 7/31/2020 |
| Architectural | A7.71 | TYPICAL SOUND CONTROL DETAILS & NOTES | 3 | 7/31/2020 |
| Architectural | A7.81 | TYPICAL RADON CONTROL DETAILS & NOTES | 1 | 7/31/2020 |
| Architectural | A7.91 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.92 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.93 | TYPICAL GARAGE SIGN DETAILS | 1 | 7/31/2020 |
| Architectural | A7.94 | TYPICAL GARAGE PAINT AND SIGN DETAILS | 2 | 7/31/2020 |
| Architectural | A8.11 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.12 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.13 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.14 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.21 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.22 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.31 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.32 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.33 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.34 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.35 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.36 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |



Initial Sub    Initial Contractor

**Alterations to this Agreement are Prohibited**    Page 9 of 46



## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | BACK | PROJECT BACK SHEET | 1 | 7/31/2020 |
|---|---|---|---|---|
| Structural | S1.01 | STRUCTURAL GENERAL NOTES | 2 | 12/20/2019 |
| Structural | S1.02 | STRUCTURAL GENERAL NOTES | 1 | 10/16/2019 |
| Structural | S1.03 | GENERAL NOTES AND WIND DIAGRAMS | 2 | 2/24/2020 |
| Structural | S1.04 | SHEARWALL SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.05 | SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.06 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.07 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.11 | OVERALL BUILDING CONTROL PLAN - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11A | PARTIAL BUILDING PLAN - A - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11B | PARTIAL BUILDING PLAN - B - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11C | PARTIAL BUILDING PLAN - C - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11D | PARTIAL BUILDING PLAN - D - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11E | PARTIAL BUILDING PLAN - E - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11F | PARTIAL BUILDING PLAN - F - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.12 | OVERALL BUILDING CONTROL PLAN - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12A | PARTIAL BUILDING PLAN - A - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12B | PARTIAL BUILDING PLAN - B - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12C | PARTIAL BUILDING PLAN - C - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12D | PARTIAL BUILDING PLAN - D - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12E | PARTIAL BUILDING PLAN - E - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12F | PARTIAL BUILDING PLAN - F - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13 | OVERALL BUILDING CONTROL PLAN - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13A | PARTIAL BUILDING PLAN - A - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13B | PARTIAL BUILDING PLAN - B - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13C | PARTIAL BUILDING PLAN - C - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13D | PARTIAL BUILDING PLAN - D - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13E | PARTIAL BUILDING PLAN - E - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13F | PARTIAL BUILDING PLAN - F - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14 | OVERALL BUILDING CONTROL PLAN - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14A | PARTIAL BUILDING PLAN - A - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14B | PARTIAL BUILDING PLAN - B - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14C | PARTIAL BUILDING PLAN - C - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14D | PARTIAL BUILDING PLAN - D - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14E | PARTIAL BUILDING PLAN - E - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14F | PARTIAL BUILDING PLAN - F - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15 | OVERALL BUILDING CONTROL PLAN - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15A | PARTIAL BUILDING PLAN - A - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15B | PARTIAL BUILDING PLAN - B - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15C | PARTIAL BUILDING PLAN - C - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |





## Standard Short Form Agreement Between Contractor and Subcontractor

| Structural | S1.15D | PARTIAL BUILDING PLAN - D - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
|---|---|---|---|---|
| Structural | S1.15E | PARTIAL BUILDING PLAN - E - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15F | PARTIAL BUILDING PLAN - F - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.16 | OVERALL BUILDING CONTROL PLAN - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16A | PARTIAL BUILDING PLAN - A - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16B | PARTIAL BUILDING PLAN - B - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16C | PARTIAL BUILDING PLAN - C - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16D | PARTIAL BUILDING PLAN - D - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16E | PARTIAL BUILDING PLAN - E - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16F | PARTIAL BUILDING PLAN - F - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.21 | FOUNDATION AND SLAB ON GRADE PLAN GARAGE | 3 | 5/20/2020 |
| Structural | S3.11 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.12 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.13 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.14 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.21 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.22 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.23 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.24 | SECTIONS AND DETAILS | 0 | 5/16/2019 |
| Structural | S3.31 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.32 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.41 | SECTIONS AND DETAILS | 1 | 5/20/2020 |
| Structural | S3.42 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.43 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.44 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Electrical | E0.01 | ELECTRICAL SYMBOLS LEGEND AND GENERAL NOTES | 3 | 8/12/2020 |
| Electrical | E0.10 | ELECTRICAL SITE PLAN | 4 | 5/4/2020 |
| Electrical | E0.11 | ELECTRICAL SITE LIGHTING PLAN | 4 | 8/12/2020 |
| Electrical | E0.12 | ELECTRICAL SITE PHOTOMETRIC PLAN | 2 | 4/15/2020 |
| Electrical | E1.11A | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Electrical | E1.11B | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 8/12/2020 |
| Electrical | E1.11C | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 4 | 8/12/2020 |
| Electrical | E1.11D | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.11E | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.11F | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.12A | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.12B | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.12C | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.12D | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |



**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Electrical | E1.12E | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.12F | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.13A | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.13B | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.13C | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.13D | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.13E | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.13F | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.14A | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PARTA | 3 | 2/24/2020 |
| Electrical | E1.14B | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PARTB | 3 | 2/24/2020 |
| Electrical | E1.14C | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.14D | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.14E | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PARTE | 3 | 2/24/2020 |
| Electrical | E1.14F | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PARTF | 3 | 2/24/2020 |
| Electrical | E1.15A | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.15B | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.15C | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.15D | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.15E | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.15F | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.16A | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 2 | 8/12/2020 |
| Electrical | E1.16B | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 8/12/2020 |
| Electrical | E1.16C | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 8/12/2020 |
| Electrical | E1.16D | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 2 | 8/12/2020 |
| Electrical | E1.16E | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 2 | 8/12/2020 |
| Electrical | E1.16F | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 2 | 8/12/2020 |
| Electrical | E1.21 | GARAGE LEVEL 1 - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E1.22 | GARAGE LEVEL 2 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.23 | GARAGE LEVEL 3 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.24 | GARAGE LEVEL 4 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.25 | GARAGE LEVEL 5 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.26 | GARAGE LEVEL 6 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.27 | GARAGE LEVEL 7 - ROOF - ELECTRICAL | 2 | 2/24/2020 |
| Electrical | E4.01 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.02 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.03 | TYPICAL UNITS - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E4.04 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E4.05 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |



Initial
Sub

Initial
Contractor

**Alterations to this Agreement are Prohibited**


## Standard Short Form Agreement Between Contractor and Subcontractor

| Electrical | E4.06 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
|---|---|---|---|---|
| Electrical | E5.01 | ELECTRICAL ONE LINE DIAGRAM | 4 | 5/4/2020 |
| Electrical | E6.01 | EQUIPMENT, PANEL FEEDER & UNIT SCHEDULES | 7 | 9/23/2020 |
| Electrical | E7.01 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.02 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.03 | ELECTRICAL SCHEDULES | 1 | 2/24/2020 |
| Electrical | E8.01 | ELECTRICAL DETAILS | 2 | 2/24/2020 |
| Electrical | E8.02 | ELECTRICAL DETAILS | 2 | 12/20/2019 |
| Plumbing | P0.01 | PLUMBING SYMBOLS LEGEND AND GENERAL NOTES | 2 | 5/20/2020 |
| Plumbing | P1.01A | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.01B | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.01C | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.01D | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.01E | CONDENSATE PARTIAL BUILDING PLAN - FIRST PART E | 0 | 10/16/2019 |
| Plumbing | P1.01F | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 0 | 10/16/2019 |
| Plumbing | P1.10 | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 5/16/2019 |
| Plumbing | P1.10A | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Plumbing | P1.10B | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 4/15/2020 |
| Plumbing | P1.10C | UNDERGROUND PARTIAL BUILDING PLAN - FLOOR PART C | 3 | 8/12/2020 |
| Plumbing | P1.10D | UNDERGROUND PARTIAL BULDING FIRST FLOOR PART D | 2 | 12/20/2019 |
| Plumbing | P1.10E | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.10F | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 8/12/2020 |
| Plumbing | P1.11A | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
| Plumbing | P1.11B | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 12/20/2019 |
| Plumbing | P1.11C | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 8/12/2020 |
| Plumbing | P1.11D | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.11E | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.11F | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 8/12/2020 |
| Plumbing | P1.12A | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Plumbing | P1.12B | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.12C | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.12D | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.12E | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.12F | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.13A | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.13B | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.13C | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.13D | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 0 | 10/16/2019 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Plumbing | P1.13E | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 0 | 10/16/2019 |
|---|---|---|---|---|
| Plumbing | P1.13F | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.14A | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.14B | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.14C | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.14D | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.14E | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.14F | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.15A | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.15B | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.15C | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.15D | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.15E | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.15F | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.16A | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART A | 0 | 10/16/2019 |
| Plumbing | P1.16B | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART B | 0 | 10/16/2019 |
| Plumbing | P1.16C | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART C | 0 | 10/16/2019 |
| Plumbing | P1.16D | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART D | 0 | 10/16/2019 |
| Plumbing | P1.16E | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART E | 0 | 10/16/2019 |
| Plumbing | P1.16F | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART F | 1 | 8/12/2020 |
| Plumbing | P1.21 | GARAGE LEVEL 1 - PLUMBING | 4 | 5/29/2020 |
| Plumbing | P1.22 | GARAGE LEVEL 2 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.23 | GARAGE LEVEL 3 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.24 | GARAGE LEVEL 4 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.25 | GARAGE LEVEL 5 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.26 | GARAGE LEVEL 6 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.27 | GARAGE ROOF LEVEL - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P4.01 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.02 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.03 | ENLARGED PLUMBING PLANS | 1 | 12/20/2019 |
| Plumbing | P5.01 | PLUMBING RISER DIAGRAMS | 2 | 8/12/2020 |
| Plumbing | P5.02 | PLUMBING RISER DIAGRAMS | 1 | 8/12/2020 |
| Plumbing | P5.03 | GARAGE STORM SYSTEM RISER DIAGRAMS | 0 | 5/29/2020 |
| Plumbing | P6.01 | PLUMBING DETAILS | 1 | 10/16/2019 |
| Plumbing | P6.02 | PLUMBING DETAILS | 0 | 10/16/2019 |
| Mechanical | M0.01 | MECHANICAL SYMBOLS LEGEND AND GENERAL NOTES | 1 | 10/16/2019 |
| Mechanical | M1.11A | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
| Mechanical | M1.11B | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.11C | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 3 | 8/12/2020 |
| Mechanical | M1.11D | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.11E | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 12/20/2019 |



Initial
Sub

Initial
Contractor

**Alterations to this Agreement are Prohibited**

Page 14 of 46



**Standard Short Form Agreement Between Contractor and Subcontractor**

| Mechanical | M1.11F | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 12/20/2019 |
|---|---|---|---|---|
| Mechanical | M1.12A | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.12B | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.12C | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.12D | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.12E | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.12F | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.13A | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.13B | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.13C | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.13D | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.13E | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.13F | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.14A | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PARTA | 2 | 12/20/2019 |
| Mechanical | M1.14B | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PARTB | 2 | 12/20/2019 |
| Mechanical | M1.14C | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.14D | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.14E | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PARTE | 2 | 12/20/2019 |
| Mechanical | M1.14F | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PARTF | 2 | 12/20/2019 |
| Mechanical | M1.15A | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.15B | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.15C | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.15D | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.15E | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.15F | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.16A | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 3 | 8/12/2020 |
| Mechanical | M1.16B | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 12/20/2019 |
| Mechanical | M1.16C | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 12/20/2019 |
| Mechanical | M1.16D | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 3 | 8/12/2020 |
| Mechanical | M1.16E | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 3 | 8/12/2020 |
| Mechanical | M1.16F | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 3 | 8/12/2020 |
| Mechanical | M1.21 | GARAGE LEVEL 1 - MECHANCIAL | 1 | 2/24/2020 |
| Mechanical | M1.22 | GARAGE LEVEL 2 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.23 | GARAGE LEVEL 3 - MECHANCIAL | 0 | 10/16/2019 |





## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Mechanical | M1.24 | GARAGE LEVEL 4- MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.25 | GARAGE LEVEL 5 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.26 | GARAGE LEVEL 6 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.27 | GARAGE ROOF - MECHANICAL | 1 | 2/24/2020 |
| Mechanical | M4.01 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.02 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.03 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M6.01 | MECHANICAL SCHEDULES | 2 | 12/20/2019 |
| Mechanical | M7.01 | MECHANICAL DETAILS | 2 | 2/24/2020 |
| Mechanical | M7.02 | MECHANICAL DETAILS | 1 | 10/16/2019 |
| Mechanical | M7.03 | MECHANICAL DETAILS | 1 | 2/24/2020 |
| Fire Protection | F0.01 | FIRE PROTECTION SYMBOLS AND SPECIFICATIONS | 2 | 4/15/2020 |
| Fire Protection | F1.11A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 2/24/2020 |
| Fire Protection | F1.11B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 2/24/2020 |
| Fire Protection | F1.11C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 2/24/2020 |
| Fire Protection | F1.11D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 2/24/2020 |
| Fire Protection | F1.11E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 2/24/2020 |
| Fire Protection | F1.11F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 2/24/2020 |
| Fire Protection | F1.12A | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.12B | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.12C | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.12D | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.12E | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.12F | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.13A | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.13B | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.13C | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.13D | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.13E | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.13F | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 2/24/2020 |





## Standard Short Form Agreement Between Contractor and Subcontractor

| Fire Protection | F1.14A | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
|---|---|---|---|---|
| Fire Protection | F1.14B | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Fire Protection | F1.14C | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Fire Protection | F1.14D | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Fire Protection | F1.14E | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Fire Protection | F1.14F | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 0 | 10/16/2019 |
| Fire Protection | F1.15A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.15B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.15C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.15D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.15E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.15F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.21 | GARAGE LEVEL 1 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.22 | GARAGE LEVEL 2 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.23 | GARAGE LEVEL 3 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.24 | GARAGE LEVEL 4 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.25 | GARAGE LEVEL 5 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.26 | GARAGE LEVEL 6 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F6.01 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Fire Protection | F6.02 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Low Voltage | T-000 | LOW VOLTAGE NOTES AND LEGENDS | 1 | 4/1/2020 |
| Low Voltage | T-100 | FIRST FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-100A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-101 | SECOND FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-102 | THIRD FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-103 | FOURTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |




## Standard Short Form Agreement Between Contractor and Subcontractor

| Low Voltage | T-104 | FIFTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
|---|---|---|---|---|
| Low Voltage | T-105 | ROOF PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-106 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-107 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-108 | LOW VOLTAGE UNIT DISTRIBUTION PANEL | 1 | 4/1/2020 |
| Low Voltage | T-200 | FIRST FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-201 | SECOND FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-202 | THIRD FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-203 | FOURTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-204 | FIFTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-205 | SIXTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300 | FIRST FLOOR PLAN LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-302 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-303 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-400 | FIRST FLOOR PLAN LOW VOLTAGE A/V | 0 | 12/20/2019 |
| Low Voltage | T-400A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-500 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (MDF) | 1 | 4/1/2020 |
| Low Voltage | T-501 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 1A & IDF 1B) | 1 | 4/1/2020 |
| Low Voltage | T-502 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3A & IDF 5A) | 1 | 4/1/2020 |
| Low Voltage | T-503 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3B & IDF 5B) | 1 | 4/1/2020 |
| Low Voltage | T-504 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3C & IDF 5C) | 1 | 4/1/2020 |
| Low Voltage | T-600 | LOW VOLTAGE CONNECTIVITY DIAGRAM (UNIT) | 0 | 12/20/2019 |
| Low Voltage | T-601 | LOW VOLTAGE CONNECTIVITY DIAGRAM (ACCESS CONTROL) | 0 | 12/20/2019 |
| Low Voltage | T-602 | LOW VOLTAGE CONNECTIVITY DIAGRAM (SURVEILLANCE) | 0 | 12/20/2019 |
| Interior | ID-0.00 | COVER SHEET | 1 | 5/8/2020 |
| Interior | ID-0.01 | PLAN KEY | 3 | 5/8/2020 |
| Interior | ID-0.02 | GENERAL NOTES | 3 | 5/8/2020 |
| Interior | ID-0.03 | LEGENDS & ABBREVIATIONS | 2 | 5/8/2020 |
| Interior | ID-0.04 | OVERALL FLOOR PLAN FIRST FLOOR | 2 | 5/8/2020 |
| Interior | ID-0.05 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.06 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.07 | OVERALL FLOOR PLAN FIFTH FLOOR | 2 | 5/8/2020 |



Initial Sub    Initial Contractor    **Alterations to this Agreement are Prohibited**    Page 18 of 46

DocuSign Envelope ID: 8565D9331-A12F-11EF-01BE-AGCA40FEE6FA

## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-1.00 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
|----------|---------|--------------------------------------------|---|----------|
| Interior | ID-1.01 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.02 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.03 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.04 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.05 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.06 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.07 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.08 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.09 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.10 | INTERIOR PLAN FIRST & FIFTHFLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.11 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.12 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.13 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.14 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.15 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.16 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.17 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.18 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.19 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.20 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.21 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.22 | FLOOR COVERING PLAN FIRST & FIFTH FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.23 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.24 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.25 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.26 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.27 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.28 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.29 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.30 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.31 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.32 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.33 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.34 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.35 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.36 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.37 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.38 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.39 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.40 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |



Initial Sub    Initial Contractor    **Alterations to this Agreement are Prohibited**    Page 19 of 46

DocuSign Envelope ID: 8F69F023-A12E-4EBD-15E-A6C440FEE8%



## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-1.41 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.42 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.43 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.44 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.45 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.46 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.47 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.48 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.49 | REFLECTED CEILING PLAN FIRST FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.50.0 | FURNITURE PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.50.1 | FURNITURE PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.51 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.52 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.53 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.54 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.55 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.56 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.57 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.58 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.59 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.0 | FLOOR COVERING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.1 | FLOOR COVERING PLAN 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.61 | FLOOR COVERING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.62 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.63 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.64 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.65 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.66 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.67 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.68 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.69 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.0 | ELECTRICAL PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.1 | ELECTRICAL PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.71 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.72 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.73 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.74 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.75 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.76 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.77 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.78 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |



Initial Sub        Initial Contractor        **Alterations to this Agreement are Prohibited**        Page 20 of 46

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.79 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.80.0 | REFLECTED CEILING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.80.1 | REFLECTED CEILING PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.81 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.82 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.83 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.84 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.85 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.86 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.87 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.88 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.89 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.90 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.91 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.92 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.93 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-2.00 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.01 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.02 | INTERIOR ELEVATIONS SALES OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.03 | INTERIOR ELEVATIONS CORRIDOR 1 | 2 | 5/8/2020 |
| Interior | ID-2.04 | INTERIOR ELEVATIONS CONF. RM. / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.05 | INTERIOR ELEVATIONS CONF. RM / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.06 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.07 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.08 | INTERIOR ELEVATIONS MEDIA THEATRE | 2 | 5/8/2020 |
| Interior | ID-2.09 | INTERIOR ELEVATIONS FITNESS | 2 | 5/8/2020 |
| Interior | ID-2.10 | INTERIOR ELEVATIONS YOGA | 2 | 5/8/2020 |
| Interior | ID-2.11 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.12 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.13 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.14 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.15 | INTERIOR ELEVATIONS CORRIDOR 2 | 2 | 5/8/2020 |
| Interior | ID-2.16 | INTERIOR ELEVATIONS CORRIDOR 3 | 2 | 5/8/2020 |
| Interior | ID-2.17 | INTERIOR ELEVATIONS CORRIDOR 4 | 2 | 5/8/2020 |
| Interior | ID-2.18 | INTERIOR ELEVATIONS CORRIDOR 5 | 2 | 5/8/2020 |
| Interior | ID-2.19 | INTERIOR ELEVATIONS CORRIDOR 6 | 2 | 5/8/2020 |
| Interior | ID-2.20 | INTERIOR ELEVATIONS CORRIDOR 7 | 2 | 5/8/2020 |
| Interior | ID-2.21 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.22 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.23 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.24 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |



Initial
Sub

Initial
Contractor

**Alterations to this Agreement are Prohibited**       Page 21 of 46



## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-2.25 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
|----------|---------|-------------------------------|---|----------|
| Interior | ID-2.26 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.27 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.28 | INTERIOR ELEVATIONS CORRIDOR 11 | 2 | 5/8/2020 |
| Interior | ID-2.29 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.30 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.31 | INTERIOR ELEVATIONS CORRIDOR 13 | 2 | 5/8/2020 |
| Interior | ID-2.32 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
| Interior | ID-2.33 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
| Interior | ID-2.34 | INTERIOR ELEVATIONS CORRIDOR 15 | 2 | 5/8/2020 |
| Interior | ID-2.35 | INTERIOR ELEVATIONS CORRIDOR 16 | 2 | 5/8/2020 |
| Interior | ID-2.36 | INTERIOR ELEVATIONS CORRIDOR 17 | 2 | 5/8/2020 |
| Interior | ID-2.37 | INTERIOR ELEVATIONS VESTIBULE 1 AND 2 | 2 | 5/8/2020 |
| Interior | ID-2.38 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.39 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.40 | INTERIOR ELEVATIONS VESTIBULE 4 AND 5 | 2 | 5/8/2020 |
| Interior | ID-2.41 | INTERIOR ELEVATIONS VESTIBULE 5 AND 6 | 2 | 5/8/2020 |
| Interior | ID-2.42 | INTERIOR ELEVATIONS VESTIBULE 7 AND 8 | 2 | 5/8/2020 |
| Interior | ID-2.43 | INTERIOR ELEVATIONS VESTIBULE 8, 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.44 | INTERIOR ELEVATIONS VESTIBULE 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.50 | INTERIOR ELEVATIONS MEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.51 | INTERIOR ELEVATIONS WOMEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.60 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.61 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.62 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-3.00 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.01 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.02 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.03 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.04 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-4.00 | SCHEDULES | 3 | 5/8/2020 |
| Interior | ID-4.01 | DOOR SCHEDULE | 2 | 5/8/2020 |
| Interior | ID-4.02 | SCHEDULES TYPICAL UNITS | 3 | 5/8/2020 |
| Hardscape | H-1 | SITE PLAN PHASE 2 | 6 | 5/22/2020 |
| Hardscape | H-2.1 | HARDSCAPE LABEL PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.2 | HARDSCAPE DIMENSION PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.3 | HARDSCAPE FINISHES PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-3.1 | HARDSCAPE LABEL PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.2 | HARDSCAPE DIMENSION PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.3 | HARDSCAPE FINISHES PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-4.1 | HARDSCAPE LABEL PLAN COURTYARD C | 6 | 5/22/2020 |



Initial Sub   Initial Contractor   **Alterations to this Agreement are Prohibited**   Page 22 of 46


**Standard Short Form Agreement Between Contractor and Subcontractor**

| Hardscape | H-4.2 | HARDSCAPE DIMENSION PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-4.3 | HARDSCAPE FINISHES PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-5.1 | HARDSCAPE LABEL PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.2 | HARDSCAPE DIMENSION PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.3 | HARDSCAPE FINISHES PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-6 | HARDSCAPE LABEL PLAN | 3 | 5/16/2019 |
| Hardscape | H-6.1 | HARDSCAPE LABEL PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.2 | HARDSCAPE DIMENSION PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.3 | HARDSCAPE DIMESION PLAN | 6 | 5/22/2020 |
| Hardscape | H-7 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-8 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-9 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-10 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-11 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-12 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-13 | HARDSCAPE DETAILS | 8 | 8/31/2020 |
| Hardscape | H-14 | HARDSCAPE SPECIFICATIONS | 6 | 5/22/2020 |
| Landscape | L-1 | SITE PLAN PHASE 2 | 8 | 5/22/2020 |
| Landscape | L-2 | TREE DISPOSITION PLAN PHASE 2 | 8 | 5/14/2020 |
| Landscape | L-3 | TREE DISPOSITION PLAN PH 2 | 7 | 5/14/2020 |
| Landscape | L-4 | TREE DISPOSITION SCHEDULE PH 2 | 8 | 5/14/2020 |
| Landscape | L-5 | LANDSCAPE PLAN | 7 | 5/22/2020 |
| Landscape | L-6 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-7 | LANDSCAPE PLAN | 5 | 5/22/2020 |
| Landscape | L-8 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-9 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-10 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-11 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-12 | LANDSCAPE SPECIFICATIONS | 3 | 5/22/2020 |
| Landscape | L-13 | LANDSCAPE SPECIFICATIONS | 0 | 5/16/2019 |
| Landscape | LI-1 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-2 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-3 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LLP-1 | SITE PLAN PHASE 2 | 2 | 5/22/2020 |
| Landscape | LLP-2 | LANDSCAPE LIGHTING PLAN | 3 | 5/22/2020 |
| Landscape | LLP-3 | LANDSCAPE LIGHT PLAN | 3 | 5/22/2020 |
| Landscape | LLP-4 | LANDSCAPE LIGHTING PLAN SCHEDULE | 3 | 5/22/2020 |
| Landscape | LLP-5 | LANDSCAPE LIGHT PLAN SPECIFICATIONS | 2 | 5/22/2020 |
| Surveys | 1 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 2 | 7/11/2019 |
| Surveys | 2 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 4 | 6/15/2020 |



Initial
Sub

Initial
Contractor

**Alterations to this Agreement are Prohibited**    Page 23 of 46


## Standard Short Form Agreement Between Contractor and Subcontractor

**Architect:**
**Charlan Brock & Associates**


**Engineer:**
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

**Architect of Record:**
**Doug Anderson**
**1770 Fennell Street**
**Maitland, Florida 32751**

**Civil Engineer:**
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

**Structural Engineer:**
**John Bailes**
**1035 South Semoran Blvd**
**Winter Park, Florida 32792**

**Landscape Architect:**
**Aaron Mastin**
**101 SE 2nd Ave**
**Delray Beach, Florida 33444**

**Hardscape Architect:**
**Aaron Mastin**
**101 SE 2nd Ave**
**Delray Beach, Florida 33444**

**Interior Design:**
**Jorge Garcia**
**4700 Riverside Drive, Suite 100**
**Palm Beach Gardens, Florida 33410**


**EXHIBITS.** As applicable, the following Exhibits are incorporated by reference and made part of this Agreement:

| | |
|---|---|
| EXHIBIT A: | Schedule of Values |
| EXHIBIT B: | Insurance |
| EXHIBIT C: | HUD Supplemental Conditions |
| EXHIBIT D: | HUD Identity of Interest Disclosure Requirement |
| EXHIBIT E: | HUD Prevailing Wage Acknowledgement |

**1.1    SUBCONTRACTOR IS AN INDEPENDENT CONTRACTOR.** SUBCONTRACTOR is an independent contractor and shall, at its sole cost and expense, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the Work. SUBCONTRACTOR shall have sole responsibility for the means and methods of performing the Work required under this Subcontract. SUBCONTRACTOR is responsible for securing timely inspections and approvals of its Work from all such authorities as required by the Contract Documents. All inspections must be coordinated with CONTRACTOR. SUBCONTRACTOR must obtain and pay for all necessary permits and licenses, including business licenses; pay all fees, manufacturer's taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and unemployment or disability insurance which are



Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 24 of 46
Sub                      Contractor


## Standard Short Form Agreement Between Contractor and Subcontractor

measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. SUBCONTRACTOR must maintain proof that it has complied with all aspects of this Paragraph and shall make such proof available for review by CONTRACTOR at CONTRACTOR's request. SUBCONTRACTOR agrees that any penalty, charge, fine, or other assessment made on account of SUBCONTRACTOR or SUBCONTRACTOR's work will be promptly paid in full by SUBCONTRACTOR. All of the SUBCONTRACTOR's Work shall be performed in strict accordance with the Occupational Safety and Health Act of 1970 and any other legislation enacted by federal, state, or local governing authorities or agencies. Additionally, SUBCONTRACTOR shall furnish a copy to CONTRACTOR the applicable Safety Data Sheets (SDS) for all hazardous materials or chemicals used in connection with or consumed or incorporated into this Project as required by the Hazard Communication Standard of the Occupational Safety and Health Administration (OSHA). The SUBCONTRACTOR shall report to the CONTRACTOR within one (1) day after an injury to an employee or agent of the SUBCONTRACTOR which occurs on the site.

**1.2A SUBCONTRACTOR** shall not perform any labor services under this Subcontract with any persons or parties other than SUBCONTRACTOR's direct employees without first 1) providing CONTRACTOR with at least 24 hours prior written notice, and 2) providing CONTRACTOR with a copy of the agreement between SUBCONTRACTOR and any sub-subcontractor, employee leasing company, employee management company, labor supplier company, or individual ("third party labor provider") providing such labor at least 24 hours prior to beginning to perform the labor. SUBCONTRACTOR's failure to comply with these requirements shall be a material breach of the Subcontract allowing for termination of the Subcontract, and the CONTRACTOR will not be liable for payment of any labor costs of the third-party labor provider. Should the SUBCONTRACTOR be authorized to use a third-party labor provider on the project, the CONTRACTOR must receive written confirmation, via email, setting forth the specific names of each third-party labor provider employee onsite, the amount of the hours worked, and price per hour for each employee. This information must be received by 5:00 pm daily on same day that the third-party labor provider was onsite at the project. Failure to timely and completely provide this information will result in non-payment by the CONTRACTOR to the SUBCONTRACTOR for such third-party labor.

**1.3    QUALITY AND SCOPE OF WORK/FIELD VERIFICATIONS.** The Contract Documents are intended to and shall be considered to include all items which would normally be included in SUBCONTRACTOR's trade and are intended to include all Work that CONTRACTOR is called upon to perform under terms of its contract with Owner. The Plans and Specifications generally indicate the scope and quality of the work but are not represented as being free from errors or omissions and any work called for in the Specifications and not shown on the Plans, or vice versa, are to be furnished as if called for in both and, in addition SUBCONTRACTOR agrees that any and all work required and reasonably implied as necessary to complete the job, shall be furnished and installed by SUBCONTRACTOR without any additional cost. SUBCONTRACTOR shall notify CONTRACTOR in writing of any deviations from the Contract Documents. SUBCONTRACTOR's responsibility to conform to the Contract Documents is not relieved by Architect's or CONTRACTOR's review unless there is written acceptance of the specific deviations. SUBCONTRACTOR agrees not to modify, withdraw, or cancel any alternate bids, for ninety (90) days after receipt of bid. SUBCONTRACTOR shall provide its own layout and make its own measurements and shall guarantee the accuracy thereof and shall not rely on the measurements of any other party.

The SUBCONTRACTOR represents that it is licensed (if applicable) and fully qualified to perform the Work required by this Subcontract and acknowledges that it has, by careful examination satisfied itself as to: (a) the nature, location and character of the Job Site including, but not limited to, the surface and subsurface conditions of the land and all structures and obstructions thereon, both natural and manmade, surface water conditions of the Job Site and the surrounding area and, to the extent pertinent to the Work, all other conditions; (b) the nature, location and character of the general area in which the Job Site is located including, without limitation, its climatic conditions, the availability and cost of labor and the availability and cost of materials, tools and equipment; the quality and quantity of all material, supplies, tools, equipment, labor and services necessary to complete the Work in the manner required by the Contract Documents; and (c) all other matters or things which could in any manner affect the performance of the Work. The SUBCONTRACTOR recognizes and understands the physical and operational restrictions on carrying on of the Work in or about the Project and expressly agrees that such conditions have been accounted for in the Subcontract price. **By commencing its Work, SUBCONTRACTOR accepts the surface or substrate on which such work is placed and all adjacent work of earlier subcontractors and other areas that interface with or connect to the SUBCONTRACTOR's Work or otherwise affect SUBCONTRACTOR's Work. The SUBCONTRACTOR shall take such measurements as will insure the proper matching and placement of the Work under this Subcontract and is otherwise responsible for compliance with the intent of the Contract Documents. The SUBCONTRACTOR shall immediately notify CONTRACTOR and the Architect of any unacceptable conditions or deviations from contract requirements**



## Standard Short Form Agreement Between Contractor and Subcontractor

affecting its Work and shall notify CONTRACTOR and Architect of any discrepancies or conflicts in the Contract Documents before performing its Work and shall be responsible for all costs resulting from its failure to do so. **Any SUBCONTRACTOR that installs his work attached to an unacceptable substrate without written notification to CONTRACTOR shall bear the costs of removal and replacement of his work.** All Work shall be done in a good and workmanlike manner and all material shall be new and of specified grade, and all Work and material shall be furnished and installed in compliance with the requirements of the institutions making the construction and permanent mortgages on the property and all governmental or other authorities having jurisdiction thereof.

**Prior to starting any field work, the SUBCONTRACTOR shall participate in a "SUBCONTRACTOR's Preparatory Meeting" with the CONTRACTOR at the jobsite, to thoroughly review the following items and procedures and sign-off as to the SUBCONTRACTOR's participation and understanding: (1) Subcontract Agreement & Exhibit "A", (2) possession of correct Drawings & Specifications, (3) SDS Sheets & OSHA Review, (4) Completed stamped and approved shop drawings & submittals, (5) required material installation procedures, and (6) Payment Procedures. SUBCONTRACTOR is solely responsible for its work being in full compliance with this Subcontract Agreement requirement. All subcontractors must attend project meetings that they are requested to attend (a two-day notice will be provided). Sending a laborer to a meeting will not count as a substitute. It must be an approved supervisor or an individual authorized to make decisions on behalf of your company. Subcontractors will be fined $250 for each meeting missed.**

SUBCONTRACTOR is at all times to work ONLY from Drawings specifically issued by CONTRACTOR's Project Manager that identifies the documents as "For Construction". Under no circumstances is SUBCONTRACTOR to perform any work on the Project from any Drawings that do not include such identification. SUBCONTRACTOR is not to accept, process, bid, or perform any actual construction work based on any Drawings that have not been so identified by CONTRACTOR's Project Manager as described above. SUBCONTRACTOR shall be solely responsible for compliance with his requirement.

SUBCONTRACTOR jobsite supervisor shall submit Daily Reports (including manpower) to CONTRACTOR each day on separate forms provided by CONTRACTOR. Failure to provide these forms will be sufficient cause for CONTRACTOR to withhold payment until CONTRACTOR is provided with completed up-to-date reports.

**1.4     SUBMITTALS.** SUBCONTRACTOR shall promptly prepare or obtain and submit to CONTRACTOR in the quantity requested by CONTRACTOR, all shop and erection drawings, samples, product data, catalogue cuts, laboratory and inspection reports, and engineering calculations ("Submittals") required by the Contract Documents, or as may be necessary or appropriate to describe the details of the Work. All Submittals shall be submitted in a timely manner so as to permit the work to be performed in accordance with the Project Schedule. Neither review, nor approval, of Submittals by CONTRACTOR, Owner or Architect shall relieve SUBCONTRACTOR of its obligation to perform the Work in strict conformity with the Contract Documents or its responsibility for the proper matching of the Work to contiguous work. SUBCONTRACTOR shall identify each and every variance between any Submittals and the requirements of the Contract Documents at the time of transmission either prominently on the Submittal or specifically in a transmission letter accompanying the Submittal. No modification, revision or other notation on a Submittal that changes or modifies the Contract Documents shall be valid (even if the drawing or Submittal is approved) unless there is a Change Order issued approving same. No Work required or Work attaching to items requiring submittals or shop drawings shall be started by SUBCONTRACTOR until approved Submittals are returned to SUBCONTRACTOR. Materials ordered, fabricated, or installed prior to receipt of approved Submittals are at SUBCONTRACTOR's sole risk. All material submittals, shop drawings, affidavits, etc., that are required for your area of work need to be submitted to the CONTRACTOR within seven (7) days of signing your contract.

**3)     BONDS.** SUBCONTRACTOR shall not **X** furnish to CONTRACTOR, as Obligee, surety bonds to this Agreement, and through a surety mutually agreeable to CONTRACTOR and SUBCONTRACTOR, to secure faithful performance of Subcontract Work and to satisfy SUBCONTRACTOR payment obligations related to SUBCONTRACTOR's Work.

**4)     SAFETY AND CLEAN-UP.** To protect persons and property, SUBCONTRACTOR shall establish a safety program implementing safety measures, policies and standards conforming to (1) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (2) the requirements of this Agreement. SUBCONTRACTOR will abide by the Safety Program implemented by Portrait Construction of Florida attached as EXHIBIT "A".



Initial _____     Initial _____          **Alterations to this Agreement are Prohibited**          Page 26 of 46
Sub                 Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**5)**    **SUPERVISON.** SUBCONTRACTOR is required to designate a competent supervisor to oversee all SUBCONTRACTORs work for the duration of the project. SUBCONTRACTOR must submit name and qualification of SUBCONTRACTOR's English speaking supervisor to Portrait Construction of Florida's project superintendent for acceptance. CONTRACTOR's Superintendent will schedule the different trades, supervise all construction, and with the concurrence of CONTRACTOR's Project Manager, approve monthly draws. His opinion that the job's progress for SUBCONTRACTOR's phase of the work is on schedule is a condition precedent to CONTRACTOR's obligation to make progress payments to SUBCONTRACTOR. **SUBCONTRACTOR'S Supervisor is responsible for verifying all of his "Scope of Work" is properly performed, shall complete a thorough inspection of the work and determine any and all repairs, rework, punchlist & verify the remediation is complete. If at any point during construction, the CONTRACTOR'S Superintendent determines that the SUBCONTRACTOR'S Supervisor is not completing his work as outlined in the above, he may request in writing that the SUBCONTRACTOR enforce the requirements of the Supervisor or replace him.**

**6)**    **SCHEDULE.** Time is of the essence as to SUBCONTRACTOR's obligations under this Agreement. All SUBCONTRACTOR's Work shall commence and proceed as scheduled by the CONTRACTOR. All SUBCONTRACTOR's Work shall be of the highest quality, and in compliance with all governing laws, ordinances, codes, regulations and requirements. The CONTRACTOR shall prepare the schedule for performance of CONTRACTOR's Work (HEREINAFTER THE "Progress Schedule") and shall revise and update such schedule, as necessary, as CONTRACTOR's work progresses. Each revision of the Progress Schedule, upon issuance to this SUBCONTRACTOR, shall supersede previous schedules and shall become part of this Agreement. SUBCONTRACTOR shall provide CONTRACTOR with any scheduling information proposed by SUBCONTRACTOR for Subcontract Work and submit any additional information or updates as requested by CONTRACTOR. SUBCONTRACTOR shall be bound by the Progress Schedule. Material procurement, shop fabrication and delivery must be coordinated by SUBCONTRACTOR, to ensure that the work is started and completed as required by the Progress Schedule.

The Subcontract price includes all overtime as required including Saturdays, Sundays, and holidays in order to maintain the Progress Schedule. Failure by this SUBCONTRACTOR to meet all obligations necessary to maintain the Progress Schedule dates will result in SUBCONTRACTOR being assessed appropriate damages and losses incurred by the CONTRACTOR. The CONTRACTOR shall have the rights to (1) expand, update and revise the Progress Schedule as necessary to correspond to project conditions and changes in order to ensure the overall completion date, and (2) to determine and, if necessary, change the time, order and priority in which various portions of Subcontract Work shall be performed.

SUBCONTRACTOR accepts the risk of delays and acceleration caused by the rate of progress of the Work changing as directed by CONTRACTOR. The SUBCONTRACTOR acknowledges that the CONTRACTOR has made no warranties to the SUBCONTRACTOR, express or implied, that the SUBCONTRACTOR will be able to follow normal, orderly sequence in the performance of SUBCONTRACTOR's Work or that there will be no delays in, or interference with, the SUBCONTRACTOR's Work. The SUBCONTRACTOR shall be prepared to do its Work out of sequence in accordance with the requirements of the Project, when and if required by CONTRACTOR. The Contract Sum includes all overtime, increase in crew size, etc. as required, including Saturdays, Sundays, and Holidays, in order for the SUBCONTRACTOR to maintain its Work item time duration schedule.

**LIMITATION OF REMEDIES – NO DAMAGES FOR DELAY. The SUBCONTRACTOR's exclusive remedy for delays in the performance of the contract caused by events beyond its control, including delays claimed to be caused by the CONTRACTOR, Owner, Architect, or Engineer, or attributable to the CONTRACTOR, Owner, Architect, or Engineer and including claims based on breach of contract or negligence, shall be an extension of its contract time, and under no circumstances will SUBCONTRACTOR be entitled to any monetary claim or compensation.** Any claims for additional time by the SUBCONTRACTOR for delay must be submitted to the CONTRACTOR within the time and in the manner in which the CONTRACTOR must submit such claims to the Owner, and that failure to comply with the conditions for giving notice and submitting claims shall result in the waiver of such claims.

SUBCONTRACTOR is to perform work ONLY during specified authorized working hours as authorized in writing by the CONTRACTOR. Under no circumstances is SUBCONTRACTOR to perform ANY work or otherwise have any work crews present on the jobsite without the CONTRACTOR present. SUBCONTRACTOR is solely responsible for full compliance with this important Contract requirement.



Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 27 of 46
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

SUBCONTRACTOR agrees to complete work segments within the performance time durations as listed below and overall Progress Schedule. SUBCONTRACTOR specifically acknowledges and agrees to these duration times including completion of all punch list requirements for its work – as necessary to achieve final acceptance of its work by the CONTRACTOR and Owner and includes in the Subcontract Price all necessary costs required to achieve completion within the listed times. Duration times are all in calendar days and include sufficient time as required to receive inspection approvals from all authorities having jurisdiction.

**7)    CHANGE ORDERS.** When CONTRACTOR orders in writing, SUBCONTRACTOR, without nullifying this Agreement, shall make any and all changes in Subcontract Work. No adjustments shall be made for any changes performed by SUBCONTRACTOR that have not been ordered by CONTRACTOR. **The Subcontract Price may only be modified by written change order signed by both parties. Authorization for any changed or extra work or costs whatsoever may be only made in writing signed by CONTRACTOR's Project Manager or Executive Officer. Contractor's Superintendent is not authorized to make any changes or issue any extra cost approvals to SUBCONTRACTOR either verbal or in writing. Any changes or extra costs attempted to be recovered by SUBCONTRACTOR based on any approvals or directives by CONTRACTOR's Superintendent or anyone else that is not CONTRACTOR's Project Manager or Executive Officer will not be recognized. The only CONTRACTOR representative authorized to approve additional scope and costs is the Project Manager or Executive Officer.** A Change Order is a written instrument prepared by CONTRACTOR and signed by SUBCONTRACTOR stating their agreement upon the change in Subcontract Work. In the event of a change in the work, the SUBCONTRACTOR's claim for adjustments in the contract sum are limited exclusively to its actual costs for such changes plus no more than 10% for overhead and 5% profit.

**8)    CHANGE ORDER ADJUSTMENTS.** In consideration for any adjustments in the time and the Subcontract Sum, SUBCONTRACTOR hereby releases CONTRACTOR and Owner from all claims, demands or causes of action arising out of the transactions, events and occurrences giving rise to the Change Order, including without limitation all direct and indirect costs and all schedule impacts.

**9)    PAYMENT.**

**9.1    SCHEDULE OF VALUES.** The schedule of values (SOV) is a condition of payment, per SOV detailed in Exhibit "A". SUBCONTRACTOR to provider progress invoicing per Exhibit "A"; and as provided by CONTRACTOR they may use the project Billing Invoice Tool in Procore.

**9.2    PROGRESS AND FINAL PAYMENTS.** Progress payments due to SUBCONTRACTOR, less retainage as specified herein, shall be made to SUBCONTRACTOR for Subcontract Work satisfactorily performed no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for SUBCONTRACTOR's Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for SUBCONTRACTOR's Work. These payments are not due if there is reason for withholding as specified herein and/or SUBCONTRACTOR has not satisfied all conditions precedent to payment specified herein.

**9.2.1    PROGRESS PAYMENTS.** Progress Payments due under the Subcontract will not be released until all of the following conditions have been met:

    .1    Subcontract Agreement has been signed by SUBCONTRACTOR without modification and returned to CONTRACTOR;

    .2    Proper Insurance Certificates have been received;

    .3    CONTRACTOR's approval of SUBCONTRACTOR's Schedule of Values;

    .4    SUBCONTRACTOR has presented to CONTRACTOR, for its approval, an Application for Payment and other documents required by Paragraph 10;

    .5    Progress payments, less retainage, shall be made to SUBCONTRACTOR, for Subcontract Work satisfactorily performed, no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for Subcontract Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for Subcontract Work. These payments are subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or CONTRACTOR.



Initial  _____    Initial  _____    **Alterations to this Agreement are Prohibited**    Page 28 of 46

Sub                Contractor



## Standard Short Form Agreement Between Contractor and Subcontractor

.6       CONTRACTOR's receipt in current funds from the Owner for the progress payments due the SUBCONTRACTOR. It shall be an express condition precedent to any obligation or liability of the CONTRACTOR to the SUBCONTRACTOR for any payment to the SUBCONTRACTOR that the CONTRACTOR is in receipt of payment in current funds from the Owner for the SUBCONTRACTOR's work. If the Owner has not paid the CONTRACTOR for any reason whatsoever, including the Owner's financial inability to pay or other reason not related to this SUBCONTRACTOR, the SUBCONTRACTOR agrees that the CONTRACTOR shall not be liable for payment and not be indebted to the SUBCONTRACTOR. The SUBCONTRACTOR assumes the credit risk of the Owner and agrees that it is relying on the Owner's credit and not that of the CONTRACTOR. The SUBCONTRACTOR further agrees that, as a portion of the consideration for the award of this Subcontract, he agrees to assume, and hereby assumes, the same risk as does the CONTRACTOR for non-payment by the Owner and accordingly, in the event that the Owner fails to pay the CONTRACTOR progress payments, interim payment, claims for increased work, claims for changed work, final payments, or any other form of payment otherwise due to the CONTRACTOR, the SUBCONTRACTOR shall be absolutely barred, estopped, and precluded from instituting any suit, arbitration or other claim against the CONTRACTOR or the Surety until and unless the Owner first pays the CONTRACTOR. In other words, payment by the Owner to the CONTRACTOR of sums necessary to pay the SUBCONTRACTOR is a condition precedent to CONTRACTOR's obligation to pay SUBCONTRACTOR and to the bringing of any lawsuit, arbitration or other claims by the SUBCONTRACTOR against the CONTRACTOR. If CONTRACTOR has provided payment or performance bonds or a combination payment and performance bond, the obligation of CONTRACTOR and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of CONTRACTOR's prior receipt of payment from the Owner for the progress payments due the SUBCONTRACTOR. This provision is incorporated by reference into any such bond or bonds.

.7       Any supplemental work provided b others for this scope of work has been paid in full.

**9.2.2    FINAL PAYMENT.** All conditions precedent of this Subcontract which apply to progress payments shall also apply to final payment. As additional express conditions precedent to SUBCONTRACTOR's entitlement to final payment, the SUBCONTRACTOR shall have fully performed all its Work in accordance with the Contract Documents, the Architect shall have issued a certificate for payment covering the SUBCONTRACTOR's completed Work, any certificates of occupation or certificates of completion required to be issued by any authority having jurisdiction shall have been issued, the CONTRACTOR shall have received payment from the Owner, the CONTRACTOR shall have received consent of SUBCONTRACTOR's surety to final payment (if any), and the SUBCONTRACTOR shall provide to the CONTRACTOR its Affidavit and Final Release of Lien/Claim, all final lien waivers from its sub-subcontractors and vendors, warranties, special warranties, all required executed warranty and guaranty documents, guarantees, parts lists, all maintenance and operations manuals, all close-out documents described in the Project Manual (Specification Book), Bid Package Book, and Addenda, two complete sets of "As-Built" prints acceptable to the CONTRACTOR (one hard copy and one electronic copy), and other Project close-out documents required by the Contract Documents. Should CONTRACTOR's close-out of the entire Project and receipt of final payment from Owner be delayed as a result of SUBCONTRACTOR's delay or failure to submit all such Project close-out documents relating to SUBCONTRACTOR's Work, SUBCONTRACTOR will be responsible for any costs and expenses and damages sustained by CONTRACTOR as a result of such delay or failure. Further, SUBCONTRACTOR's compliance with all other provisions of the Contract Documents is a condition precedent to SUBCONTRACTOR's right to final payment.

**9.3    STORED MATERIALS.** Payments for stored materials will only be made subject to the pre-approval, restrictions and requirements of Owner and CONTRACTOR. Payments will be made, less retainage and only to extent of monies received by CONTRACTOR from Owner, for the stored items under the Owner – CONTRACTOR Agreement. Payments to SUBCONTRACTOR will be made no sooner than ten days after the date payment for the stored materials is received by CONTRACTOR from Owner. In no case, will stored materials be paid for items other than those necessary to be on site to guarantee the progress of the Project and as specifically pre-approved by CONTRACTOR. SUBCONTRACTOR includes protection of all stored materials and safeguards necessary to insure adequate protection to the satisfaction of the CONTRACTOR and OWNER. SUBCONTRACTOR must provide a proper and secure storage facility for all stored material at its own expense. SUBCONTRACTOR must also provide satisfactory insurance coverage as required in Exhibit 'E' attached hereto and made part of this Subcontract. CONTRACTOR will not reimburse SUBCONTRACTOR for materials either misplaced, damaged, or stolen.

**9.4    PAYMENTS WITHHELD.** CONTRACTOR shall have the right to withhold and to reduce any payments to SUBCONTRACTOR for (a) any indebtedness owed by SUBCONTRACTOR to CONTRACTOR, (b) defective work not remedied or defective materials not removed and replaced, (c) third-party claims filed or reasonable evidence indicating



Initial          Initial

Sub             Contractor                    **Alterations to this Agreement are Prohibited**          Page 29 of 46

## Standard Short Form Agreement Between Contractor and Subcontractor

probable filing of such claims, (d) claimed failure of the SUBCONTRACTOR to make payments to its subcontractors, suppliers, or laborers, (e) reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract Price, (f) damage to CONTRACTOR or another subcontractor, (g) reasonable indication that the Work will not be completed within the Contract Time/CONTRACTOR's Progress Schedule, (h) unsatisfactory or untimely prosecution of the Work by the SUBCONTRACTOR, or (i) any failure by the SUBCONTRACTOR to comply with the Contract Documents. Items (a) – (i) shall be grounds for default under this Agreement as well. Independent of any other right hereunder, CONTRACTOR may deduct from any payments due or to become due SUBCONTRACTOR amounts equal to any claims asserted against SUBCONTRACTOR in connection with SUBCONTRACTOR's Work on this Project or on any other Project including, but not limited to, lien claims, bond claims, unpaid bills, defective work, incomplete work, and damage to the work of CONTRACTOR. When the basis for disapproval or withholding has been remedied, the SUBCONTRACTOR shall be paid the amounts withheld.

**9.5 JOINT CHECK PAYMENTS.** CONTRACTOR reserves the right to pay any obligations of SUBCONTRACTOR arising on this Project by checks made payable jointly or directly to SUBCONTRACTOR and/or its suppliers or its SUBCONTRACTORs, with any amounts so paid reducing the balance due SUBCONTRACTOR. Joint or direct payments made by CONTRACTOR do not relieve SUBCONTRACTOR of any obligation under this Subcontract.

**9.6 WAIVER OF CLAIMS.** Final payment shall constitute a waiver of all claims by SUBCONTRACTOR relating to Subcontract Work, but shall in no way relieve SUBCONTRACTOR of any liability to CONTRACTOR, including liability for warranties, or for nonconforming or defective work discovered after final payment.

## 10) INDEMNITY.

**10.1** The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, Architect, Engineer, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work, or any breach of or failure to comply with any of the provisions of this SUBCONTRACT or the Contract Documents by SUBCONTRACTOR. This indemnification is limited to the extend the liability in question was caused by the negligence, recklessness, or intentional wrongful misconduct of Subcontractor and persons employed or utilized by Subcontractor in the performance of this Agreement.

**10.2** The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work (regardless of cause or of any concurrent or contributing fault or negligence of CONTRACTOR, Owner, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of this Subcontract or the Contract Documents by SUBCONTRACTOR. The SUBCONTRACTOR's indemnification obligation to CONTRACTOR, Owner, and all of their agents, officers, and employees (the "Indemnitees"), for occurrences caused by the sole, contributory, or concurrent negligence of the Indemnitees shall be limited, on a per occurrence basis, to the greater of $1,000,000.00 (as prescribed by Florida Statute § 725.06), the price of this Subcontract, or the limits of liability of the insurance policies provided pursuant to this Agreement, which SUBCONTRACTOR acknowledges and agrees bears a reasonable commercial relationship to this Subcontract. This indemnification is limited to the extend the liability in question was caused by the negligence, recklessness, or intentional wrongful misconduct of Subcontractor and persons employed or utilized by Subcontractor in the performance of this Agreement.

**10.3** SUBCONTRACTOR and its surety, if any, hereby agrees to defend, indemnify, and hold harmless CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives from any loss or damage and to reimburse CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives for any and all claims, costs, and expenses, including but not limited to attorneys' fees, legal fees, expert witness fees, and court costs that CONTRACTOR, CONTRACTOR's surety and/or Owner may incur because of:

**10.3.1** Claims and liens for labor performed or materials used or furnished through or under SUBCONTRACTOR for the Project;

Initial Sub: _kd_

Initial Contractor: _BLA_

**Alterations to this Agreement are Prohibited**          Page 30 of 46

## Standard Short Form Agreement Between Contractor and Subcontractor

**10.3.2** any personal injury, loss, damage or death to any person or persons and any property damage arising out of the performance or nonperformance of Work required in this Subcontract, including, without limitation, any personal injury or loss, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, SUBCONTRACTOR's indemnity hereunder shall not arise if such injury, loss, damage or death results from the gross negligence or willful, wanton or intentional misconduct of a party indemnified hereunder. This indemnification is limited to the extend the liability in question was caused by the negligence, recklessness, or intentional wrongful misconduct of Subcontractor and persons employed or utilized by Subcontractor in the performance of this Agreement.;

**10.3.3** SUBCONTRACTOR's failure or the failure of any of its employees to comply with any law, ordinance, rule, regulation or requirement, including, but not limited to, any Occupational Safety and Health Administration violations and any penalties, including enhancements, resulting in whole or in part by SUBCONTRACTOR's acts or omissions.

**10.4** CONTRACTOR, in its sole discretion, may defend any or all of the indemnified claims or tender to SUBCONTRACTOR the defense of any or all of the indemnified claims. Upon such tender by CONTRACTOR to SUBCONTRACTOR, SUBCONTRACTOR shall be obligated to assume the defense of CONTRACTOR in the indemnified claims, including the settlement negotiations, and shall pay and satisfy any and all settlements, judgments, sanctions, awards, or expenses, including attorneys' fees, resulting from or arising out of the indemnified claims without reimbursement from CONTRACTOR. This indemnification is limited to the extend the liability in question was caused by the negligence, recklessness, or intentional wrongful misconduct of Subcontractor and persons employed or utilized by Subcontractor in the performance of this Agreement.

**10.5** If CONTRACTOR tenders the defense of an indemnified claim to SUBCONTRACTOR and SUBCONTRACTOR fails or neglects to assume that defense, CONTRACTOR may compromise or settle or defend any such action, and SUBCONTRACTOR shall be bound and obligated to reimburse CONTRACTOR for the amount expended by it in settling, compromising, or defending any such claim, or in the amount expended by CONTRACTOR in paying any settlement or judgment rendered therein, together with all reasonable attorneys' fees and expenses of litigation incurred by CONTRACTOR by reason of its defense, settlement, or compromise of such indemnified claims.

**10.6** Neither final payment by CONTRACTOR nor acceptance of the Work performed by SUBCONTRACTOR shall constitute a waiver of the foregoing indemnities, and notwithstanding any other provision contained in this Subcontract, the provisions of this paragraph shall survive the termination of this Subcontract.

**10.7** In any claims by any employee of the SUBCONTRACTOR, the SUBCONTRACTOR's sub-contractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, against any persons or entities indemnified hereunder the indemnification obligation shall not be limited as to the amount or type of damages, compensation, or benefits payable by or for the SUBCONTRACTOR or the SUBCONTRACTOR's sub-contractors under Workers' Compensation acts, disability benefit acts or other employee benefit acts.

## 11) CORRECTION OF WORK, DEFAULT, AND TERMINATION.

**11.1** **CORRECTION OF WORK.** SUBCONTRACTOR shall promptly correct all of SUBCONTRACTOR's Work rejected by CONTRACTOR, Architect or Owner as defective or failing to conform to the Contract Documents, whether observed before or after Substantial Completion. SUBCONTRACTOR shall bear all costs of correcting rejected work, including compensation for Architect's or CONTRACTOR's additional services, if required.

**11.2** **FAILURE OF PERFORMANCE.** Should SUBCONTRACTOR fail to satisfy contractual deficiencies or to commence and continue satisfactory correction of any default with diligence or promptness within one (1) working day from receipt of CONTRACTOR's written notice, then CONTRACTOR, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and charge the cost thereof to SUBCONTRACTOR, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees. In the event of an emergency affecting safety of persons or property, CONTRACTOR may proceed as above without notice.

**11.3** **TERMINATION BY OWNER.** Should Owner terminate its prime agreement with the CONTRACTOR or any part which includes SUBCONTRACTOR's Work, CONTRACTOR shall notify SUBCONTRACTOR in writing within three (3) days of termination and, upon written notification, this Agreement shall be terminated and SUBCONTRACTOR shall immediately stop Subcontract Work, follow all of CONTRACTOR's instructions, and mitigate all costs. In the event of Owner termination, CONTRACTOR liability to SUBCONTRACTOR shall be limited to the extent of CONTRACTOR recovery on SUBCONTRACTOR's behalf under the prime agreement.

Initial _____   Initial _____        **Alterations to this Agreement are Prohibited**        Page 31 of 46

Sub              Contractor



## Standard Short Form Agreement Between Contractor and Subcontractor

**11.4** **TERMINATION BY CONTRACTOR.** If SUBCONTRACTOR fails to commence and satisfactorily continue correction of a default within one (1) working day after written notification from CONTRACTOR, then CONTRACTOR may issue a second written notification, to SUBCONTRACTOR and its surety, if any. Such notice shall state that if SUBCONTRACTOR fails to commence and continue correction of a default within five (5) days of the written notification, the Agreement will be automatically terminated. CONTRACTOR may furnish those materials, equipment and/or employ such workers or replacement subcontractor(s) as CONTRACTOR deems necessary to maintain the orderly progress of CONTRACTOR's work. All costs incurred by CONTRACTOR in performing Subcontract Work, including damages, extended general conditions, liquidated damages, reasonable overhead, profit, and attorneys' fees, costs and expenses, shall be deducted from any monies due or to become due SUBCONTRACTOR. SUBCONTRACTOR shall be liable for payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount. At SUBCONTRACTOR's request, CONTRACTOR shall provide a detailed accounting of the costs to finish Subcontract Work.

## 12) CLAIMS AND DISPUTES.

**12.1** **CLAIMS RELATING TO CONTRACTOR.** SUBCONTRACTOR shall give CONTRACTOR written notice of all claims within seven (7) days of the existence of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed absolutely waived by SUBCONTRACTOR. All unresolved claims, disputes and other matters in question between CONTRACTOR and SUBCONTRACTOR shall be resolved in the manner provided in this Agreement.

**12.2** **LIQUIDATED DAMAGES.** Inasmuch as SUBCONTRACTOR's failure to complete its Work within the timeframe specified herein will result in substantial injury to the Contractor and whereas damages arising from such failure cannot be calculated with any degree of certainty, it is hereby agreed that if such Subcontract Work is not substantially completed as herein defined within the time fixed herein or within such further time, if any, as shall be allowed for such performance or completion in accordance with the provisions of this Subcontract, the SUBCONTRACTOR shall pay to the Contractor, as liquidated damages for such delay and not as a penalty, One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) per day for each and every calendar day that the SUBCONTRACTOR fails to complete its Work, including all punchlist work ("CONTRACTOR's Liquidated Damages"). SUBCONTRACTOR's obligation for such liquidated damages is irrespective of, and is in no way dependent upon, whether Owner assesses liquidated damages against the Contractor or whether it is impossible to determine the degree of harm caused by SUBCONTRACTOR's delay. SUBCONTRACTOR acknowledges that its failure to timely complete its Subcontract Work will cause financial harm to Contractor irrespective of whether or not Owner assesses any liquidated damages against Contractor. This provision for liquidated damages shall in no manner affect the Contractor's right to terminate this Subcontract as provided for elsewhere in this Subcontract and other Contract Documents, and Contractor's exercise of the right to terminate shall not release the SUBCONTRACTOR from its obligation to pay said liquidated damages.

If the CONTRACTOR's agreement with the Owner provides for liquidated or other damages for delay, and such damages are assessed, CONTRACTOR may assess a share of the damages against SUBCONTRACTOR in proportion to SUBCONTRACTOR's share of responsibility for the delay. This apportionment shall be in addition to the CONTRACTOR's Liquidated Damages.

**12.3** **WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, SUBCONTRACTOR shall continue Subcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. If SUBCONTRACTOR continues to perform, CONTRACTOR shall continue to make payments of amounts undisputedly owed to SUBCONTRACTOR in accordance with this Agreement.

**12.4** **MULTIPARTY PROCEEDING.** The parties agree, to the extent permitted by the prime agreement, that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between CONTRACTOR and SUBCONTRACTOR involve in whole or in part disputes between CONTRACTOR and Owner, disputes between SUBCONTRACTOR and CONTRACTOR shall be decided by the same tribunal and in the same forum as disputes between CONTRACTOR and Owner, and SUBCONTRACTOR agrees to consolidation and joinder of the same. Notwithstanding anything herein to the contrary, Subcontractor shall be entitled to pursue lien claims as provided by law.

**12.5** **STAY OF PROCEEDINGS.** In the event that provisions for resolution of disputes between CONTRACTOR and Owner contained in the prime agreement do not permit consolidation or joinder with disputes of third parties, such as SUBCONTRACTOR, resolution of disputes between SUBCONTRACTOR and CONTRACTOR involving in whole or in

Initial _____ Initial _____   **Alterations to this Agreement are Prohibited**   Page 32 of 46
Sub           Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

part disputes between CONTRACTOR and Owner shall be stayed pending conclusion of any dispute resolution proceeding between CONTRACTOR and Owner.

**12.6    DIRECT DISCUSSION.** If a dispute arises out of or relates to this Agreement, the parties shall endeavor to settle the dispute through direct discussion.

**12.7    MEDIATION.** Disputes between SUBCONTRACTOR and CONTRACTOR not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The parties shall select the mediator within fifteen (15) days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution. Mediation will occur in Orange County, Florida.

**12.8    OTHER DISPUTE PROCESSES.** If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.

**ARBITRATION.** At the sole discretion of the CONTRACTOR or its Surety, all claims, counterclaims, disputes, and other matters in question between the CONTRACTOR or its Surety and the SUBCONTRACTOR or its Surety (if applicable) arising out of this Agreement or the breach thereof shall be decided by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining. CONTRACTOR expressly reserves its right on behalf of CONTRACTOR and its Surety to have any dispute resolved by binding arbitration, including but not limited to those initiated by SUBCONTRACTOR, in which event the parties agree that the litigation will be dismissed and the dispute will proceed in arbitration. If the CONTRACTOR or its Surety elects to submit the claims, counterclaims, disputes, and other matters in question to binding arbitration, it will give the other party notice of its intent, and the parties will proceed in accordance with the Construction Industry Rules of the American Arbitration Association. The award rendered by the arbitrator shall be final, and judgment shall be entered upon it in accordance with applicable Florida law.

**12.9    COST OF DISPUTE RESOLUTION.** The cost of any mediation proceeding shall be shared equally by the parties participating. Additionally, the parties agree to bear their own attorneys' fees and costs for any dispute arising out of this Agreement and/or the Project and knowingly, voluntarily, and intentionally and expressly waive and relinquish any and all statutory or other rights to recover attorney's fees' or costs from CONTRACTOR, its Surety, if any, and Owner for any dispute arising out of this Agreement and/or the Project.

**13)    NO PRESUMPTION AGAINST DRAFTER.** The Parties expressly agree that they freely and voluntarily enter into this Agreement and have had the opportunity to obtain assistance of legal counsel of their choice in reviewing its terms prior to execution. The Parties acknowledge and agree that no rule of construction applies to the disadvantage of a party because that party was responsible for the preparation of this Subcontract or part of it.

**14)    MISCELLANEOUS PROVISIONS.**

**14.1**    If required for this Subcontract, pursuant to Executive Order 11-02 signed by the Florida Governor on January 4, 2011 and other applicable law, SUBCONTRACTOR will utilize the E-verify system, established by the U.S. Department of Homeland Security to verify the employment eligibility of its employees and any of its subcontractors assigned to perform work on the Project. This, when required, is a continuing obligation that applies throughout the duration of the Project, and SUBCONTRACTOR acknowledges that any additional personnel, not previously verified, that may be assigned to the Project will be subject to the aforementioned E-verification. Results of the E-verification will be provided to CONTRACTOR and remain in the SUBCONTRACTOR's project records for review by CONTRACTOR and/or Owner as requested. Additionally, SUBCONTRACTOR shall certify to CONTRACTOR by affidavit that the SUBCONTRACTOR has verified through the E-verify system the employment status of each employee assigned to work on the Project. SUBCONTRACTOR shall be responsible for including this provision in all its' subcontracts issued as a result of this Subcontract.

**14.3**    The SUBCONTRACTOR has no power to assign its rights or duties under this Subcontract. The parties expressly acknowledge that in selecting the SUBCONTRACTOR, the CONTRACTOR considered various factors, including but not limited to the SUBCONTRACTOR's reputation, quality of work, and capacity to perform. SUBCONTRACTOR specifically agrees not to assign, sell, or transfer any accounts receivables under this Subcontract to any third-party factoring company or related business. NEITHER THE OWNER NOR THE CONTRACTOR SHALL BE LIABLE TO ANY THIRD PARTIES FOR PAYMENT OF ANY ASSIGNED ACCOUNTS RECEIVABLES.



Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 33 of 46
Sub                Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**14.4** By acceptance of this Subcontract, SUBCONTRACTOR guarantees its prices contained herein for the duration of the Project, through the date of Final payment by the Owner. The SUBCONTRACTOR expressly agrees that external conditions outside the control of SUBCONTRACTOR, including but not limited to materials shortages and price escalations, have been accounted for in the Contract price and shall not constitute the basis for a time extension or a claim for additional compensation of any type.

**14.5** This Contract is specifically intended to be for the benefit of the Owner. The Owner may maintain an action for breach of this Subcontract. However, SUBCONTRACTOR is not an intended third-party beneficiary of the Agreement between Owner and CONTRACTOR.

**14.6** No right or remedy in this Subcontract is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.

**14.7** The obligations of the CONTRACTOR and SUBCONTRACTOR under this Subcontract are expressly conditioned upon the CONTRACTOR's successfully entering into a contract with the Owner for the Project. If the Owner shall decline for any reason whatsoever to enter into a contract with the CONTRACTOR for the Project, then this Subcontract shall automatically become null and void and CONTRACTOR and SUBCONTRACTOR shall be discharged from their respective obligations hereunder. Further, in such event, CONTRACTOR shall have no liability of any kind to SUBCONTRACTOR including, without limitation, cancellation charges.

**14.8** If applicable, the Owner may choose to directly purchase materials as a tax exempted entity as defined by the IRS and the State of Florida, and if this option is available to the Owner and the Owner decides to use this option, the SUBCONTRACTOR will be notified and shall comply with the Owner Direct Purchase program by providing a credit for the material being purchased directly including the sales tax attributable thereto.

**14.9** The nondiscrimination clauses contained in Section 202 of Executive Order 11246, as amended; Section 402 of the Vietnam Era Veteran's Readjustment amended, relative to equal opportunity for all persons within regard to race, color, religion, sex national origin, handicapped, Vietnam Era or disabled veteran and the implementing rules and regulations prescribed by the Secretary of Labor are incorporated herein.

**15)** **SUBCONTRACTOR'S WAIVER OF JURY TRIAL.** The SUBCONTRACTOR and its Surety expressly and voluntarily waive all rights to a jury trial in any claim or dispute arising from the Subcontract, the Project, and/or any associated Bond(s).

CONTRACTOR: Portrait Construction of Florida

BY: *Bruce L. Abbey President*

PRINT NAME: Bruce L. Abbey President

PRINT TITLE: President

DATE: 7/27/2021

WITNESS:

SUBCONTRACTOR: Armstrong Air & Heating

BY: *kevin Abraham*

PRINT NAME: Kevin Abraham

PRINT TITLE: Vice President

DATE: 7/27/2021

WITNESS:



Initial _kA_  Initial _BLA_
Sub        Contractor

**Alterations to this Agreement are Prohibited**        Page 34 of 46



**Standard Short Form Agreement Between Contractor and Subcontractor**

# EXHIBIT A
# SCHEDULE OF VALUES

| # | Cost Code | Description | Type | Amount |
|---|-----------|-------------|------|--------|
| 1 | 23-00700-50 - HVAC - Units | | Subcontract | $1,366,165.00 |
| | | | **Grand Total:** | **$1,366,165.00** |

Initial ___ Sub     Initial ___ Contractor     **Alterations to this Agreement are Prohibited**     Page 35 of 46

# EXHIBIT B
# OCIP Manual and Requirements

Included by Separate Attachment,
Please Reference for Instructions



**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit C**

| **SUPPLEMENTARY CONDITIONS OF THE CONTRACT FOR CONSTRUCTION** | **U.S. Department of Housing and Urban Development**<br>Office of Housing | OMB Approval No. 2502-0598<br>(Exp. 06/30/2017) |
|---|---|---|

Public Reporting Burden for this collection of information is estimated to average 0.2 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Response to this request for information is required in order to receive the benefits to be derived. This agency may not collect this information, and you are not required to complete this form unless it displays a currently valid OMB control number. While no assurance of confidentiality is pledged to respondents, HUD generally discloses this data only in response to a Freedom of Information Act request.

### Article 1: Labor Standards

A. **Applicability.** The Project or program to which the construction work covered by this Contract pertains is being assisted or insured by the United States of America, and the following Federal Labor Standards Provisions are included in this Contract or related instrument pursuant to the provisions applicable to such Federal assistance or insurance. Any statute or regulation contained herein shall also include any subsequent amendment or successor statute or regulation.

B. **Minimum Wages.** Pursuant to Section 212 of the National Housing Act, as amended, 12 U.S.C. 1715c, the minimum wage provisions contained in this paragraph B do not apply to those projects with Security Instruments insured under Section 221(h)(1) designed for less than 9 families and they do not apply to those projects with Security Instruments insured under either Section 220 or 233 designed for less than 12 families.

1. (i) All laborers and mechanics employed or working upon the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the Project) shall be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR Part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics. Contributions made or costs reasonably anticipated for bona fide fringe benefits under Section 1 (b)(2) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)) on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of 29 CFR 5.5(a)(1)(iv); also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs, which cover the particular weekly period, are deemed to be constructively made or incurred during such weekly period. Such laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed, without regard to skill, except as provided in 29 CFR 5.5(a)(4). Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein: *Provided*, that the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classification and wage rates conformed under 29 CFR 5.5(a)(1)(ii)) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

(ii) (a) Any class of laborers or mechanics that is not listed in the wage determination and that is to be employed under this Contract shall be classified in conformance with the wage determination. HUD shall approve an additional classification and wage rate and fringe benefits only when the following criteria have been met:

---

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial [ ] Initial [ ]
Sub         Contractor

**Alterations to this Agreement are Prohibited**     Page 37 of 46

## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

(1) The work to be performed by the classification requested is not performed by a classification in the wage determination; and

(2) The classification is utilized in the area by the construction industry; and

(3) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(b) If the Contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and HUD or its designee agree on the classification and wage rate (including the amount designated for fringe benefits where appropriate), a report of the action taken shall be sent by HUD or its designee to the Administrator of the Wage and Hour Division, U.S. Department of Labor, Washington, D.C. 20210 ("**Administrator**"). The Administrator, or an authorized representative, shall approve, modify, or disapprove every additional classification action within thirty (30) days of receipt and so advise HUD or its designee or shall notify HUD or its designee within the thirty (30) day period that additional time is necessary. (Approved by the Office of Management and Budget under OMB control number 1215-0140.)

(c) In the event the Contractor, the laborers or mechanics to be employed in the classification or their representatives and HUD or its designee do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), HUD or its designee shall refer the questions, including the views of all interested parties and the recommendation of HUD or its designee, to the Administrator for determination. The Administrator, or an authorized representative, shall issue a determination within thirty (30) days of receipt and so advise HUD or its designee or shall notify HUD or its designee within the thirty (30) day period that additional time is necessary. (Approved by the Office of Management and Budget under OMB Control Number 1215-0140.)

(d) The wage rate (including fringe benefits where appropriate) determined pursuant to subparagraphs B.1.(ii)(b) or (c) of this Article, shall be paid to all workers performing work in the classification under this Contract from the first day on which work is performed in the classification.

(iii) Whenever the minimum wage rate prescribed in the Contract for a class of laborers or mechanics includes a fringe benefit that is not expressed as an hourly rate, the Contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(iv) If the Contractor does not make payments to a trustee or other third person, the Contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program, *Provided*, That the Secretary of Labor has found, upon the written request of the Contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Contractor to set aside in a separate account assets for the meeting of obligations under the plan or program. (Approved by the Office of Management and Budget under OMB Control Number 1215-0140.)

2. **Withholding**. HUD or its designee shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the Contractor under this Contract or any other Federal contract with the same prime contractor, or any other Federally-assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same prime contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees and helpers, employed by the Contractor or any subcontractor the full amount of wages required by the Contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee or helper, employed or working on the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the Project), all or part of the wages required by the Contract, HUD or its designee may, after written notice to the Contractor, sponsor, applicant, or Owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased. HUD or its designee may, after written notice to the Contractor, disburse such amounts withheld for and on account of the Contractor or subcontractor to the respective employees to whom they are due.

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial _____ Sub    Initial _____ Contractor

**Alterations to this Agreement are Prohibited**    Page 38 of 46


DocuSign Envelope ID: ...

## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

### 3. Payrolls, records, and certifications.

(i) Payrolls and basic records relating thereto shall be maintained by the Contractor during the course of the work and preserved for a period of three years thereafter for all laborers and mechanics working at the site of the work (or under the United States Housing Act of 1937, or under the Housing Act of 1949, in the construction or development of the Project). Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in Section 1 (b)(2)(B) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii))), daily and weekly number of hours worked, deductions made and actual wages paid. Whenever the Secretary of Labor has found under 29 CFR 5.5(a)(1)(iv) that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in Section 1 (b)(2)(B) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)), the Contractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs. (Approved by the Office of Management and Budget under OMB Control Numbers 1215-0140 and 1215-0017.)

(ii)(a) The Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to HUD or its designee if the agency is a party to the Contract, but if the agency is not such a party, the Contractor shall submit the payrolls to the applicant, sponsor, or Owner, as the case may be, for transmission to HUD or its designee. The payrolls submitted shall set out accurately and completely all of the information required to be maintained under 29 CFR 5.5(a)(3)(i), except that full social security numbers and home addresses shall not be included on weekly transmittals. Instead the payrolls shall only need to include an individually identifying number for each employee (e.g., the last four digits of the employee's social security number). The required weekly payroll information may be submitted in any form desired. Optional Form WH-347 is available for this purpose from the Wage and Hour Division Web site at http://www.dol.gov/whd/forms/wh347.pdf or its successor site. The prime contractor is responsible for the submission of copies of payrolls by all subcontractors. Contractors and subcontractors shall maintain the full social security number and current address of each covered worker, and shall provide them upon request to HUD or its designee if the agency is a party to the Contract, but if the agency is not such a party, the Contractor will submit the payrolls to the applicant sponsor, or Owner, as the case may be, for transmission to HUD or its designee, the Contractor, or the Wage and Hour Division of the Department of Labor for purposes of an investigation or audit of compliance with prevailing wage requirements. It is not a violation of this subparagraph for a prime contractor to require a subcontractor to provide addresses and social security numbers to the prime contractor for its own records, without weekly submission to HUD or its designee.(Approved by the Office of Management and Budget under OMB Control Number 1215-0149.)

(b) Each payroll submitted shall be accompanied by a "Statement of Compliance," signed by the Contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the Contract and shall certify the following:

(1) That the payroll for the payroll period contains the information required to be provided under 29 CFR 5.5(a)(3)(ii), the appropriate information is correct and complete.

(2) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the Contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in 29 CFR Part 3;

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)



Initial ___    Initial ___    **Alterations to this Agreement are Prohibited**    Page 39 of 46

Sub          Contractor

DocuSign Envelope ID: 

**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

(3) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the Contract.

(c) The weekly submission of a properly executed certification set forth on the everse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by subparagraph B.3.(ii)(b) of this Article.

(d) The falsification of any of the above certifications may subject the Contractor or subcontractor to civil or criminal prosecution under Section 1001 of Title 18 and Sections 3801 et seq of Title 31 of the United States Code.

(iii) The Contractor or subcontractor shall make the records required under subparagraph B.3.(i) of this Article available for inspection, copying, or transcription by authorized representatives of HUD or its designee or the Department of Labor, and shall permit such representatives to interview employees during working hours on the job. If the Contractor or subcontractor fails to submit the required records or to make them available, HUD or its designee may, after written notice to the Contractor, sponsor, applicant, or Owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

**4. Apprentices and Trainees.**

(i) **Apprentices.** Apprentices shall be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Office of Apprenticeship, or with a State Apprenticeship Agency recognized by such Office, or if a person is employed in his or her first ninety (90) days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Office of Apprenticeship, or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Contractor as to the entire work force under is not registered or otherwise employed as stated above, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where the Contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Contractor's or subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeymen hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. In the event the Office of Apprenticeship, or a State Apprenticeship Agency recognized by such Office, withdraws approval of an apprenticeship program, the Contractor shall no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(ii) **Trainees.** Except as provided in 29 CFR 5.16, trainees shall not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial ⌐ tzl    Initial ⌐ BLA    **Alterations to this Agreement are Prohibited**    Page 40 of 46

Sub          Contractor


**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit C**

percentage of the journeyman's hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed on the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate on the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the Contractor shall no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(iii) **Equal employment opportunity.** The utilization of apprentices, trainees and journeymen under 29 CFR Part 5 shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30.

5. **Compliance with Copeland Act Requirements.** The Contractor shall comply with the requirements of 29 CFR Part 3, which are incorporated by reference in this Contract.

6. **Subcontracts.** The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in subparagraphs 1 through 10 of this paragraph B and such other clauses as HUD or its designee may by appropriate instructions require, and a copy of the applicable prevailing wage determination, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all Contract clauses referenced in this subparagraph.

7. **Contract termination and debarment.** A breach of the Contract clauses in 29 CFR 5.5 may be grounds for termination of the Contract, and for debarment as a contractor or a subcontractor as provided in 29 CFR 5.12.

8. **Compliance with Davis-Bacon and Related Act Requirements.** All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5 are herein incorporated by reference in this Contract.

9. **Disputes concerning labor standards.** Disputes arising out of the labor standards provisions of this Contract shall not be subject to the general disputes clause of this Contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and HUD or its designee, the U.S. Department of Labor, or the employees or their representatives.

10. **Certification of Eligibility.**

(i) By entering into this Contract, the Contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of Section 3(a) of the Davis- Bacon Act (40 U.S.C. 3144(b)(2)) or 29 CFR 5.12(a)(1) or to be awarded HUD contracts or participate in HUD programs pursuant to 24 CFR Part 24.

(ii) No part of this Contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of Section 3(a) of the Davis-Bacon Act (40 U.S.C. 3144(b)(2)) or 29 CFR 5.12(a)(1) or to be awarded HUD contracts or participate in HUD programs pursuant to 24 CFR Part 24.

(iii) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001. Additionally, U.S. Criminal Code, Section 1010, Title 18, U.S.C., "Federal Housing Administration transactions",




## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

provides in part: "Whoever, for the purpose of . . . influencing in any way the action of such Department . . . makes, passes, utters or publishes any statement, knowing the same to be false . . . shall be fined under this title or imprisoned not more than two years, or both."

### C. Contract Work Hours and Safety Standards Act.

**1. Applicability and Definitions.** This paragraph C of Article 1 is applicable only if a direct form of federal assistance is involved, such as Section 8, Section 202/811 Capital Advance, grants etc., and is applicable only where the prime contract is in an amount greater than $100,000. As used in this paragraph C, the terms "laborers" and "mechanics" include watchmen and guards.

**2. Overtime requirements.** No contractor or subcontractor contracting for any part of the Contract work that may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of forty (40) hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of forty (40) hours in such workweek.

**3. Violation; liability for unpaid wages; liquidated damages.** In the event of any violation of the immediately preceding subparagraph C.2, the Contractor and any subcontractor responsible therefore shall be liable for the unpaid wages. In addition, the Contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory) for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of such subparagraph, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of forty (40) hours without payment of the overtime wages required by the clause set forth in such subparagraph.

**4. Withholding for unpaid wages and liquidated damages.** HUD or its designee shall, upon its own action or upon written request of an authorized representative of the Department of Labor, withhold or cause to be withheld from any moneys payable on account of work performed by the Contractor or subcontractor under any such contract, or under any other Federal contract with the same prime contractor, or under any other Federally-assisted contract subject to the Contract Work Hours and Safety Standards Act which is held by the same prime contractor such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in subparagraph 3 of this paragraph C.

**5. Subcontracts.** The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in subparagraphs 1 through 5 of this paragraph C and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the clauses set forth in such subparagraphs 1 through 5.

### D. Certification.

For projects with Security Instruments insured under the National Housing Act, as amended, that are subject to paragraph B of this Article 1, the Contractor is required to execute the Contractor's Prevailing Wage Certificate within HUD-92448 as a condition precedent to insurance by HUD of the Loan, or an advance thereof, made or to be made by the Lender in connection with the construction of the Project.

### Article 2: Equal Employment Opportunity

**A. Applicability.** This Article 2 applies to any contract for construction work, or modification thereof, as defined in the regulations of the Secretary of Labor at 41 CFR Chapter 60, which is paid for in whole or in part with funds obtained from the Federal Government or borrowed on the credit of the Federal Government pursuant to a grant, contract, loan insurance, or guarantee, or undertaken pursuant to any Federal program involving such grant, contract, loan, insurance, or guarantee.




DocuSign Envelope ID: 8683D243-A137-4FD6-150A-A5CA9DFE66CA

## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

B. The Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, disability, or national origin. The Contractor shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment without regard to their race, color, religion, sex, disability or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training including apprenticeship. The Contractor agrees to post in conspicuous places available to employees and applicants for employment notices to be provided setting forth the provisions of this nondiscrimination clause.

C. The Contractor shall, in all solicitations or advertisements for employees placed by or on behalf of the Contractor state that all qualified applicants shall receive consideration for employment without regard to race, color, religion, sex, disability, or national origin.

D. The Contractor shall send to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding a notice to be provided advising the said labor union or workers representatives of the Contractor's commitments hereunder, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

E. The Contractor shall comply with all provisions of Executive Order 11246 of September 24, 1965 and of the rules, regulations, and relevant orders of the Secretary of Labor.

F. The Contractor shall furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and shall permit access to its books, records, and accounts by the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

G. In the event of the Contractor's noncompliance with the nondiscrimination clauses of this Contract or with any of the said rules, regulations, or orders, this Contract may be canceled, terminated, or suspended in whole or in part and Contractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulations or order of the Secretary of Labor, or as otherwise provided by law.

H. The Contractor shall include the provisions of paragraphs A through H of this Article 2 in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, so that such provisions shall be binding upon each subcontractor or vendor. The Contractor shall take such action with respect to any subcontract or purchase order as HUD or the Secretary of Labor may direct as a means of enforcing such provisions, including sanctions for noncompliance. Provided, however, that in the event the Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by HUD or the Secretary of Labor, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

### Article 3: Equal Opportunity for Businesses and Lower Income Persons Located Within the Project Area

A. This Article 3 is applicable to projects covered by Section 3, as defined in 24 CFR Part 135.

B. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from HUD and is subject to the requirements of Section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that to the greatest extent feasible opportunities for training and employment be given to lower income residents of the unit of local government or the





## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

metropolitan area (or non-metropolitan county) as determined by HUD in which the Project is located and contracts for work in connection with the Project be awarded to business concerns which are located in, or owned in substantial part by persons residing in the same metropolitan area (or non-metropolitan county) as the Project.

### Article 4: Health and Safety

A. This Article 4 is applicable only where the prime contract is in an amount greater than $100,000.

B. No laborer or mechanic shall be required to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his or her health and safety as determined under construction safety and health standards promulgated by the Secretary of Labor by regulation.

C. The Contractor shall comply with all regulations issued by the Secretary of Labor pursuant to 29 CFR Part 1926, and failure to comply may result in imposition of sanctions pursuant to the Contract Work Hours and Safety Standards Act, 40 USC 3701 et seq.

D. The Contractor shall include the provisions of this Article 4 in every subcontract so that such provisions shall be binding on each subcontractor. The Contractor shall take such action with respect to any subcontract as HUD or the Secretary of Labor shall direct as a means of enforcing such provisions.

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial    Initial    **Alterations to this Agreement are Prohibited**    Page 44 of 46

Sub    Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit D**

**HUD IDENTITY OF INTEREST DISCLOSURE REQUIREMENT**

HUD requires full disclosure of any Identity of Interest (IOI) for this project. An IOI is defined as a financial or business interest or family relationship that exists between Borrower, or any of its officers, directors, stockholders, partners, managers, managing members, members, or principals ("Principals") and the Architect, General Contractor, subcontractors, suppliers, equipment lessors, or any of their Principals.

**If Subcontractor has an Identity of Interest (IOI) with any party listed below, then Subcontractor is required to disclose the IOI and notify Mark Portrait Construction immediately:**

Berkadia Commercial Mortgage, LLC
LN Apartments, LLC
FLN Apts, LLC
Mark Baron Construction, Inc. dba Mark Portrait Construction
Charlan Brock & Associates

SUBCONTRACTOR:                                    CONTRACTOR:

By: _____                      By: _____
(Signature)                                      (Signature)

_____                          _____
(Name and Title)                                 (Name and Title)

Signed on (date): _____                Signed on (date): _____

DocuSign Envelope ID:

**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit E**

**HUD PREVAILING WAGE ACKNOWLEDGEMENT**

---

**FUTURA AT NONA COVE - EXHBIT "E" –
PREVAILING WAGE ACKNOWLEDGEMENT**

---

Subcontractor understands that the Futura at Nona Cove project is subject to the Davis-Bacon Act requirements. Subcontractor agrees to furnish all prevailing wage forms fully executed, prior to beginning of work (one-time forms). Subcontractor agrees to comply with all applicable requirements of the Davis-Bacon Act and submit reporting forms on a weekly basis.

**This project will require the payment of Davis-Bacon (FEDERAL) wage rate for each trade.**

Subcontractor shall comply with the Copeland Act Requirement pursuant to 29 CFR Part 32, Contract Work Hours and Safety Standards Act (CWHSSA), Equal Employment Opportunity (EEO) as defined in Secretary of Labor at 41 CFR Chapter 60 and Health and Safety as issued by the Secretary of Labor pursuant to 29 CFR Part 196.

Subcontractor shall include the Labor Compliance Contract Addendum in every contract and purchase order, unless exempted. The Labor Compliance Contract Addendum is included in the Prevailing Wage Manual.

**Please note that it is Subcontractor's responsibility to ensure that all <u>Sub-Subcontractors</u> comply with these requirements as well.**

SUBCONTRACTOR:                          CONTRACTOR:

By: _____            By: _____
(Signature)                             (Signature)


_____                _____
(Name and Title)                        (Name and Title)

Signed on (date): _____         Signed on (date): _____

# EXHIBIT C

DocuSign Envelope ID:



# ADDITIONAL PROVISIONS TO THE SUBCONTRACT AGREEMENT

## HUD PROVISIONS:

1) All parties hereby agree that SUBCONTRACTOR assures that either he or an authorized representative of his company will attend all jobsite meetings as established by CONTRACTOR's supervisory staff unless their presence is not requested by CONTRACTOR. In the event a representative shall represent SUBCONTRACTOR at these meetings, said representative shall be able to make binding commitments on all matters to be discussed at such meetings, including cost, payments, change orders, time schedules and manpower requirements. Further, financial penalties per meeting will be imposed if SUBCONTRACTOR or SUBCONTRACTOR's representative is not present at these meetings. The following person(s) are designated as SUBCONTRACTOR's representatives having the authority as stated herein.

Subcontractor Designated Representative: Peter Reca

(Optional Representative) Ismael Barrios

Subcontractor Certified Payroll Contact & Phone # Peter Reca 239-471-9501

2) Requirement of, per US Department of Housing and Urban Development, HUD 92442-A, SUBCONTRACTOR waives right to file a mechanic's or materialman's lien or maintain any claim against improvements for or on account of any work done, labor performed or materials furnished under this Subcontract agreement.

3) SUBCONTRACTOR agrees to send Certified HUD payroll sheets in weekly for this Subcontract Agreement. (Through Elations.com; #067-35564 Futura @ Nona Cove)

4) Before work commences, the SUBCONTRACTOR shall enroll in Futura at Nona Cove's Owner Controlled Insurance Policy with Willis Towers Watson with the contact listed below:

> Janice McNary, CISR
> OCIP Administrator, Construction Practice
> Willis Towers Watson
> 3407 W. Dr. Martin Luther King Blvd.
> Lakeside Suite #200
> Tampa, FL 33607
> Mobile: 813-450-9654
> Janice.mcnary@willistowerswatson.com
> www.willistowerswatson.com

5) It is fully understood that SUBCONTRACTOR will be responsible for keeping its part of the job clean and in an orderly fashion subject to the approval of CONTRACTOR and ARCHITECT. Further, SUBCONTRACTOR shall be totally responsible for the clean up on a daily basis of all debris generated by SUBCONTRACTOR'S daily operations. Should it become necessary for CONTRACTOR to incur any expenses performing cleanup work or removing debris from site for SUBCONTRACTOR, such expense will be deducted from SUBCONTRACTOR's contract amount.

6) All work shall be in accordance with Project Plans and Specifications.

7) Project Includes **Davis Bacon Wages rates**, see attached at end of Contract.

## Standard Short Form Agreement Between Contractor and Subcontractor

This Agreement is made this 9th day of June, 2021 by and between

**GENERAL CONTRACTOR:**
Portrait Construction of Florida, Inc
2452 Lake Emma Rd. #1040
Lake Mary, Florida 32746
Phone: (407) 831-6275

**SUBCONTRACTOR:**
Barrios Roofing & Waterproofing LLC
5313 5th Street West
Lehigh Acres, Florida 33971
Phone: (239) 296-9363

PROJECT:      Futura at Nona Cove

OWNER:       LN Apartments, LLC

ARCHITECT:   Charlan Brock & Associates

ENGINEER:    Z Development Services

## TERMS:

**SUBCONTRACTOR'S WORK**. SUBCONTRACTOR agrees to provide and complete all Work ("Work") required of it under the Contract Documents, including, but not limited to, all labor, services, materials, installation, clean-up, hoisting, supplies, insurance equipment, scaffolding, tools, and other facilities of every kind required for the prompt and efficient performance of all Roffing. The Work is per the Drawings and Specifications in strict accordance with the Contract Documents. SUBCONTRACTOR shall give timely notices to authorities pertaining to subcontract Work and shall be responsible for all permits, fees, licenses, assessments, inspections, testing and taxes necessary to complete subcontract Work.

**SUBCONTRACT AMOUNT**. CONTRACTOR agrees to pay SUBCONTRACTOR for satisfactory and timely performance and completion of subcontract Work: $0.00

Retainage shall be ten percent (10.0%).

## SCOPE:

TPO Flat Roof & Copings:
1. Supply and Install Tapered Polyiso cricket panels at locations per plan for proper drainage to main drains. Roof deck to be structural sloped by others. ISO is only for crickets to divert water to main drains.
2. Supply and Install coverboard (Densdeck ½") over wood deck and ISO mechanically fastened with Rhino bond plates per FBC approval to meet uplift pressures per plans.
3. Supply and Install 60mil TPO (White) membrane adhered directly to Rhino plates and heat weld seams per manufacture details.
4. Seal all penetrations, corners, curbs, pipes, drains, and HVAC vents per manufacture details. HVAC vents provided by others.
5. Install Base flashing at perimeter of roof at parapet walls and terminate per manufacture details.
6. Supply and Install .040 counterflashing over base flashing and extend TPO up and over parapet walls adhered with bonding adhesive to walls per manufacture details.
7. Supply and Install .040 Coping and cleat at all parapet wall locations per plans. Color per



Initial _____  Initial _____     **Alterations to this Agreement are Prohibited**     Page 2 of 38
Sub                Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

approved submittals.
8. Supply and adhere Base ISO and coverboard over structural concrete at stairway locations per plans. Wood nailers to be installed and provided by others.
9. Supply and adhere 60mil TPO over coverboard and install .040 eave metal over TPO mechanically fastened. Sealed with 6" TPO cover tape per manufacture details.
10. Issue a 2-year Contractor Warranty.
11. Provide Manufacture 20-year NDL Warranty.

Exclusions: Permitting, wood nailers, waterproofing, dumpsters, awnings, canopies, and any items not specifically mentioned above. Hoisting to be provided by others.

**DURATION:**



Initial ___ PK ___    Initial ___ BLA ___
Sub                    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**1)   CONTRACT DOCUMENTS.** The "Contract Documents" include 1) this Subcontract Agreement and all documents attached hereto as Exhibits; 2) all documents which comprise the Contract between the Owner and CONTRACTOR; 3) all General Conditions, Supplementary Conditions and other conditions applicable to the Project; 4) the Plans and Drawings prepared for the Project; 5) the Project Manual or Specifications, including but not limited to Specification Divisions 1 through 16; 6) all bulletins and addenda issued in connection with the Project; 7) all standards, requirements or conditions incorporated into the Contract Documents by reference; and 8) any amendments, modifications, or changes to any or all of those documents identified in (1) – (7) which may occur during the Project. No other documents except those identified herein shall be considered Contract Documents. In the event of conflict, inconsistencies, variations between the provisions of the Subcontract Agreement and any other Contract Documents, including the Contract between the Owner and CONTRACTOR, the Subcontract Agreement shall govern. SUBCONTRACTOR and its sub-subcontractors and suppliers shall be bound to CONTRACTOR by all of the provisions of the Contract Documents and shall strictly comply therewith in all respects. SUBCONTRACTOR shall perform Subcontract Work under the general direction of CONTRACTOR and shall cooperate with CONTRACTOR so CONTRACTOR may fulfill obligations to Owner. A. This subcontractor agrees to specifically adhere to the requirements of Division 00 and 01 of the specifications. As the CONTRACTOR and SUBCONTRACTOR have been party to the design and engineering of the project, they have a thorough knowledge of the Contract Documents. Therefore, the SUBCONTRACTOR accepts full responsibility for the completeness and coordination of its scope of Work as to ensure quality installation and product. Any material, assembly, device, detail, component, and/or means/method which may not necessarily be shown on the Contract Documents but is required to make the project complete and suitable for its intended purpose shall be the SUBCONTRACTOR's sole responsibility without any adjustment to the subcontract amount.

**1a)   Drawing Log**

| Discipline | Drawing No. | Drawing Title | Revision | Drawing Date |
|---|---|---|---|---|
| | | FUTURA AT NONA COVE 10.16.19 | | |
| Civil | C0 | CIVIL DATA AND NOTES SHEET | 3 | 6/15/2020 |
| Civil | C1.0 | OVERALL SITE PLAN | 2 | 6/15/2020 |
| Civil | C1.1 | DEMOLITION PLAN | 2 | 6/15/2020 |
| Civil | C2.0 | SITE DIMENSION PLAN | 3 | 6/15/2020 |
| Civil | C2.1 | EMERGENCY & SOLID WASTE AUTO TURN ANALYSIS | 2 | 6/15/2020 |
| Civil | C3.0 | SITE UTILITY PLAN | 8 | 6/26/2020 |
| Civil | C4.0 | GRADING AND DRAINAGE PLAN | 2 | 6/15/2020 |
| Civil | C4.1A | CIVIL DATA AND NOTES SHEET | 1 | 6/15/2020 |
| Civil | C4.1B | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.1C | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.2 | COURTYARD & POOL AREA GRADING PLANS | 1 | 6/15/2020 |
| Civil | C4.3A | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3B | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3C | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C5.0 | SWPP PLAN | 3 | 6/15/2020 |
| Civil | C6 | CONSTRUCTION DETAILS | 4 | 6/15/2020 |
| Civil | C7 | OUC STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | C8 | OUC DETAILS/CITY OF ORLANDO STANDARD NOTES | 4 | 6/15/2020 |
| Civil | C9 | OCU SEWER STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | CV | COVER SHEET | 7 | 6/26/2020 |
| Radon | R1.0 | UNITS S1-A2 | 0 | 11/15/2019 |
| Radon | R2.0 | UNITS A3 – B1 | 0 | 11/15/2019 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Radon | R3.0 | UNITS B2 - B3 | 0 | 11/15/2019 |
| Radon | R4.0 | UNITS C1-C2 | 0 | 11/15/2019 |
| Radon | R5.0 | CLUBHOUSE | 0 | 11/15/2019 |
| Architectural | A0.01 | PROJECT COVER SHEET | 5 | 7/31/2020 |
| Architectural | A0.02 | PROJECT INDEX OF DRAWINGS | 11 | 8/12/2020 |
| Architectural | A0.02a | DESIGN ASSUMPTIONS | 1 | 5/16/2019 |
| Architectural | A0.03 | PROJECT INDEX OF DRAWINGS | 6 | 7/31/2020 |
| Architectural | A0.04 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.05 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.06 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.07 | PROJECT DATA SHEET | 1 | 7/31/2020 |
| Architectural | A0.08 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.10 | ARCHITECTURAL SITE PLAN | 4 | 7/31/2020 |
| Architectural | A0.11 | OVERALL BUILDING FIRST FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.12 | OVERALL BUILDING SECOND FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.13 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.21 | OVERALL CLUBHOUSE OCCUPANCY PLAN | 4 | 7/31/2020 |
| Architectural | A0.31 | FIRST FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.32 | SECOND FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.33 | UPPER FLOORS SEQUENCE PLANS | 3 | 7/31/2020 |
| Architectural | A0.41 | OVERALL BUILDING GROUND FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.42 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.43 | OVERALL BUILDING SIXTH FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.44 | OVERALL BUILDING TYPICAL ROOF LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A1.00 | OVERALL BUILDING SLAB CONTROL PLAN | 3 | 7/31/2020 |
| Architectural | A1.01 | OVERALL BUILDING FIRST FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.02 | OVERALL BUILDING SECOND FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.03 | OVERALL BUILDING THIRD FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.04 | OVERALL BUILDING FOURTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.05 | OVERALL BUILDING FIFTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.06 | OVERALL BUILDING ROOF CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.11A | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11B | PARTIAL FIRST FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.11C | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11D | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11E | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11F | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12A | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12B | PARTIAL SECOND FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.12C | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |



Initial **PK** Sub    Initial **BLA** Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Architectural | A1.12D | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A1.12E | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12F | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13A | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13B | PARTIAL THIRD FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.13C | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13D | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13E | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13F | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14A | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14B | PARTIAL FOURTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.14C | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14D | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14E | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14F | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15A | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15B | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.15C | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15D | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15E | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15F | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16A | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16B | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16C | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16D | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16E | PARTIAL ROOF PLAN BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16F | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.21 | FIRST FLOOR GARAGE PLAN | 7 | 7/31/2020 |
| Architectural | A1.22 | SECOND FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.23 | THIRD FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.24 | FOURTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.25 | FIFTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.26 | SIXTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.27 | ROOF LEVEL GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.28 | ROOF LEVEL GARAGE SLAB PLAN | 3 | 7/31/2020 |
| Architectural | A2.01 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.02 | OVERALL BUILDING ELEVATIONS | 6 | 7/31/2020 |
| Architectural | A2.03 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.04 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.05 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.06 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |



Initial _PK_
Sub

Initial _BLA_
Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | A2.07 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A2.08 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.09 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.11 | PARTIAL ENLARGED BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A3.11 | TYPICAL CLUB BUILDING SECTION | 1 | 7/31/2020 |
| Architectural | A3.21 | TYPICAL GARAGE BUILDING SECTION | 3 | 7/31/2020 |
| Architectural | A4.01 | UNIT S1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02 | UNIT A1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02A | UNIT A1 PLAN | 2 | 7/31/2020 |
| Architectural | A4.03 | UNIT A2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.04 | UNIT A3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.05 | UNIT B1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.06 | UNIT B2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.07 | UNIT B3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.08 | UNIT C1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.21 | CLUB PLAN FIRST FLOOR DIMENSIONS | 7 | 8/12/2020 |
| Architectural | A4.22 | CLUB PLAN SECOND FLOOR DIMENSIONS | 5 | 7/31/2020 |
| Architectural | A4.23 | CLUB PLAN FIRST FLOOR NOTES | 4 | 8/12/2020 |
| Architectural | A4.24 | CLUB PLAN SECOND FLOOR NOTES | 4 | 7/31/2020 |
| Architectural | A4.25 | ENLARGED MAIL ROOM | 3 | 7/31/2020 |
| Architectural | A4.31 | ENLARGED GARAGE PLANS | 4 | 7/31/2020 |
| Architectural | A4.32 | ENLARGED CLOSET PLANS | 2 | 7/31/2020 |
| Architectural | A4.33 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.34 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.35 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.36 | ENLARGED TRASH AND RECYCLING PLANS | 2 | 7/31/2020 |
| Architectural | A4.71 | ACCESSIBILITY REQUIREMENTS DWELLING UNITS | 2 | 7/31/2020 |
| Architectural | A4.72 | ACCESSIBILITY REQUIREMENT PUBLIC SPACES | 2 | 7/31/2020 |
| Architectural | A4.81 | ENLARGED UNIT ACCESSIBILITY PLANS | 3 | 7/31/2020 |
| Architectural | A4.91 | INTERIOR ELEVATIONS UNITS | 3 | 7/31/2020 |
| Architectural | A4.92 | INTERIOR ELEVATIONS UNITS | 1 | 7/31/2020 |
| Architectural | A5.01 | APARTMENT BUILDING WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.02 | GARAGE WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.11 | TYPICAL EXTERIOR WALL SECTIONS | 3 | 7/31/2020 |
| Architectural | A5.21 | TYPICAL TENANT WALL SECTIONS | 4 | 7/31/2020 |
| Architectural | A5.22 | TYPICAL TENANT WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.31 | TYPICAL BALCONY WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.41 | GARAGE WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.01 | STAIR PLANS | 2 | 7/31/2020 |
| Architectural | A6.02 | STAIR SECTIONS | 3 | 7/31/2020 |
| Architectural | A6.03 | STAIR SECTION AND PLAN | 1 | 7/31/2020 |



Initial _PK_    Initial _BLA_    **Alterations to this Agreement are Prohibited**    Page 7 of 38

Sub      Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | A6.04 | STAIR SECTION AND PLANS | 2 | 7/31/2020 |
| Architectural | A6.11 | TYPICAL STAIR DETAILS | 2 | 7/31/2020 |
| Architectural | A6.12 | PRECAST STAIR DETAILS | 1 | 7/31/2020 |
| Architectural | A6.21 | ELEVATOR PLAN AND SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.41 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.42 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A7.01 | DOOR SCHEDULE | 4 | 7/31/2020 |
| Architectural | A7.02 | WINDOW SCHEDULE | 4 | 8/12/2020 |
| Architectural | A7.03 | DOOR & WINDOW INSTALLATION DETAILS | 3 | 7/31/2020 |
| Architectural | A7.11 | TYPICAL DOOR DETAILS | 3 | 7/31/2020 |
| Architectural | A7.21 | TYPICAL WINDOW DETAILS | 3 | 7/31/2020 |
| Architectural | A7.22 | TYPICAL STOREFRONT DETAILS | 4 | 7/31/2020 |
| Architectural | A7.31 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.32 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.33 | TYPICAL ARCHITECTURAL DETAILS | 2 | 7/31/2020 |
| Architectural | A7.34 | TYPICAL ARCHITECTURAL DETAILS | 1 | 7/31/2020 |
| Architectural | A7.41 | TYPICAL WATERPROOFING & BALCONY FLASHING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.42 | TYPICAL WATERPROOFING DETAILS | 2 | 7/31/2020 |
| Architectural | A7.51 | TYPICAL ROOFING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.52 | TYPICAL ROOF DETAILS | 3 | 7/31/2020 |
| Architectural | A7.61 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.62 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.63 | TYPICAL FIRE CONTROL DETAILS | 4 | 7/31/2020 |
| Architectural | A7.71 | TYPICAL SOUND CONTROL DETAILS & NOTES | 3 | 7/31/2020 |
| Architectural | A7.81 | TYPICAL RADON CONTROL DETAILS & NOTES | 1 | 7/31/2020 |
| Architectural | A7.91 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.92 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.93 | TYPICAL GARAGE SIGN DETAILS | 1 | 7/31/2020 |
| Architectural | A7.94 | TYPICAL GARAGE PAINT AND SIGN DETAILS | 2 | 7/31/2020 |
| Architectural | A8.11 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.12 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.13 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.14 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.21 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.22 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.31 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.32 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.33 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.34 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.35 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.36 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |



Initial PK Sub    Initial BLA Contractor    **Alterations to this Agreement are Prohibited**    Page 8 of 38

## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | BACK | PROJECT BACK SHEET | 1 | 7/31/2020 |
|---|---|---|---|---|
| Structural | S1.01 | STRUCTURAL GENERAL NOTES | 2 | 12/20/2019 |
| Structural | S1.02 | STRUCTURAL GENERAL NOTES | 1 | 10/16/2019 |
| Structural | S1.03 | GENERAL NOTES AND WIND DIAGRAMS | 2 | 2/24/2020 |
| Structural | S1.04 | SHEARWALL SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.05 | SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.06 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.07 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.11 | OVERALL BUILDING CONTROL PLAN - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11A | PARTIAL BUILDING PLAN - A - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11B | PARTIAL BUILDING PLAN - B - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11C | PARTIAL BUILDING PLAN - C - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11D | PARTIAL BUILDING PLAN - D - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11E | PARTIAL BUILDING PLAN - E - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11F | PARTIAL BUILDING PLAN - F - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.12 | OVERALL BUILDING CONTROL PLAN - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12A | PARTIAL BUILDING PLAN - A - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12B | PARTIAL BUILDING PLAN - B - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12C | PARTIAL BUILDING PLAN - C - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12D | PARTIAL BUILDING PLAN - D - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12E | PARTIAL BUILDING PLAN - E - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12F | PARTIAL BUILDING PLAN - F - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13 | OVERALL BUILDING CONTROL PLAN - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13A | PARTIAL BUILDING PLAN - A - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13B | PARTIAL BUILDING PLAN - B - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13C | PARTIAL BUILDING PLAN - C - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13D | PARTIAL BUILDING PLAN - D - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13E | PARTIAL BUILDING PLAN - E - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13F | PARTIAL BUILDING PLAN - F - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14 | OVERALL BUILDING CONTROL PLAN - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14A | PARTIAL BUILDING PLAN - A - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14B | PARTIAL BUILDING PLAN - B - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14C | PARTIAL BUILDING PLAN - C - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14D | PARTIAL BUILDING PLAN - D - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14E | PARTIAL BUILDING PLAN - E - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14F | PARTIAL BUILDING PLAN - F - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15 | OVERALL BUILDING CONTROL PLAN - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15A | PARTIAL BUILDING PLAN - A - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15B | PARTIAL BUILDING PLAN - B - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15C | PARTIAL BUILDING PLAN - C - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Structural | S1.15D | PARTIAL BUILDING PLAN - D - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| --- | --- | --- | --- | --- |
| Structural | S1.15E | PARTIAL BUILDING PLAN - E - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15F | PARTIAL BUILDING PLAN - F - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.16 | OVERALL BUILDING CONTROL PLAN - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16A | PARTIAL BUILDING PLAN - A - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16B | PARTIAL BUILDING PLAN - B - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16C | PARTIAL BUILDING PLAN - C - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16D | PARTIAL BUILDING PLAN - D - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16E | PARTIAL BUILDING PLAN - E - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16F | PARTIAL BUILDING PLAN - F - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.21 | FOUNDATION AND SLAB ON GRADE PLAN GARAGE | 3 | 5/20/2020 |
| Structural | S3.11 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.12 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.13 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.14 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.21 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.22 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.23 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.24 | SECTIONS AND DETAILS | 0 | 5/16/2019 |
| Structural | S3.31 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.32 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.41 | SECTIONS AND DETAILS | 1 | 5/20/2020 |
| Structural | S3.42 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.43 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.44 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Electrical | E0.01 | ELECTRICAL SYMBOLS LEGEND AND GENERAL NOTES | 3 | 8/12/2020 |
| Electrical | E0.10 | ELECTRICAL SITE PLAN | 4 | 5/4/2020 |
| Electrical | E0.11 | ELECTRICAL SITE LIGHTING PLAN | 4 | 8/12/2020 |
| Electrical | E0.12 | ELECTRICAL SITE PHOTOMETRIC PLAN | 2 | 4/15/2020 |
| Electrical | E1.11A | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Electrical | E1.11B | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 8/12/2020 |
| Electrical | E1.11C | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 4 | 8/12/2020 |
| Electrical | E1.11D | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.11E | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.11F | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.12A | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.12B | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.12C | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.12D | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |



Initial _PK_    Initial _BLA_
Sub          Contractor

**Alterations to this Agreement are Prohibited**

## Standard Short Form Agreement Between Contractor and Subcontractor

| Electrical | E1.12E | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART E | 3 | 2/24/2020 |
|---|---|---|---|---|
| Electrical | E1.12F | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.13A | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.13B | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.13C | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.13D | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.13E | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.13F | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.14A | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.14B | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.14C | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.14D | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.14E | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.14F | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.15A | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.15B | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.15C | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.15D | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.15E | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.15F | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.16A | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 2 | 8/12/2020 |
| Electrical | E1.16B | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 8/12/2020 |
| Electrical | E1.16C | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 8/12/2020 |
| Electrical | E1.16D | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 2 | 8/12/2020 |
| Electrical | E1.16E | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 2 | 8/12/2020 |
| Electrical | E1.16F | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 2 | 8/12/2020 |
| Electrical | E1.21 | GARAGE LEVEL 1 - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E1.22 | GARAGE LEVEL 2 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.23 | GARAGE LEVEL 3 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.24 | GARAGE LEVEL 4 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.25 | GARAGE LEVEL 5 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.26 | GARAGE LEVEL 6 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.27 | GARAGE LEVEL 7 - ROOF - ELECTRICAL | 2 | 2/24/2020 |
| Electrical | E4.01 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.02 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.03 | TYPICAL UNITS - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E4.04 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E4.05 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Electrical | E4.06 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
|---|---|---|---|---|
| Electrical | E5.01 | ELECTRICAL ONE LINE DIAGRAM | 4 | 5/4/2020 |
| Electrical | E6.01 | EQUIPMENT, PANEL FEEDER & UNIT SCHEDULES | 7 | 9/23/2020 |
| Electrical | E7.01 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.02 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.03 | ELECTRICAL SCHEDULES | 1 | 2/24/2020 |
| Electrical | E8.01 | ELECTRICAL DETAILS | 2 | 2/24/2020 |
| Electrical | E8.02 | ELECTRICAL DETAILS | 2 | 12/20/2019 |
| Plumbing | P0.01 | PLUMBING SYMBOLS LEGEND AND GENERAL NOTES | 2 | 5/20/2020 |
| Plumbing | P1.01A | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.01B | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.01C | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.01D | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.01E | CONDENSATE PARTIAL BUILDING PLAN - FIRST PART E | 0 | 10/16/2019 |
| Plumbing | P1.01F | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 0 | 10/16/2019 |
| Plumbing | P1.10 | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 5/16/2019 |
| Plumbing | P1.10A | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Plumbing | P1.10B | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 4/15/2020 |
| Plumbing | P1.10C | UNDERGROUND PARTIAL BUILDING PLAN - FLOOR PART C | 3 | 8/12/2020 |
| Plumbing | P1.10D | UNDERGROUND PARTIAL BULDING FIRST FLOOR PART D | 2 | 12/20/2019 |
| Plumbing | P1.10E | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.10F | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 8/12/2020 |
| Plumbing | P1.11A | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
| Plumbing | P1.11B | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 12/20/2019 |
| Plumbing | P1.11C | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 8/12/2020 |
| Plumbing | P1.11D | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.11E | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.11F | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 8/12/2020 |
| Plumbing | P1.12A | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Plumbing | P1.12B | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.12C | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.12D | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.12E | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.12F | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.13A | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.13B | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.13C | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.13D | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 0 | 10/16/2019 |



**Standard Short Form Agreement Between Contractor and Subcontractor**

| Plumbing | P1.13E | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 0 | 10/16/2019 |
|---|---|---|---|---|
| Plumbing | P1.13F | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.14A | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.14B | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.14C | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.14D | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.14E | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.14F | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.15A | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.15B | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.15C | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.15D | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.15E | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.15F | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.16A | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART A | 0 | 10/16/2019 |
| Plumbing | P1.16B | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART B | 0 | 10/16/2019 |
| Plumbing | P1.16C | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART C | 0 | 10/16/2019 |
| Plumbing | P1.16D | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART D | 0 | 10/16/2019 |
| Plumbing | P1.16E | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART E | 0 | 10/16/2019 |
| Plumbing | P1.16F | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART F | 1 | 8/12/2020 |
| Plumbing | P1.21 | GARAGE LEVEL 1 - PLUMBING | 4 | 5/29/2020 |
| Plumbing | P1.22 | GARAGE LEVEL 2 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.23 | GARAGE LEVEL 3 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.24 | GARAGE LEVEL 4 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.25 | GARAGE LEVEL 5 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.26 | GARAGE LEVEL 6 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.27 | GARAGE ROOF LEVEL - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P4.01 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.02 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.03 | ENLARGED PLUMBING PLANS | 1 | 12/20/2019 |
| Plumbing | P5.01 | PLUMBING RISER DIAGRAMS | 2 | 8/12/2020 |
| Plumbing | P5.02 | PLUMBING RISER DIAGRAMS | 1 | 8/12/2020 |
| Plumbing | P5.03 | GARAGE STORM SYSTEM RISER DIAGRAMS | 0 | 5/29/2020 |
| Plumbing | P8.01 | PLUMBING DETAILS | 1 | 10/16/2019 |
| Plumbing | P8.02 | PLUMBING DETAILS | 0 | 10/16/2019 |
| Mechanical | M0.01 | MECHANICAL SYMBOLS LEGEND AND GENERAL NOTES | 1 | 10/16/2019 |
| Mechanical | M1.11A | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
| Mechanical | M1.11B | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.11C | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 3 | 8/12/2020 |
| Mechanical | M1.11D | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.11E | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 12/20/2019 |

## Standard Short Form Agreement Between Contractor and Subcontractor

| Mechanical | M1.11F | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 12/20/2019 |
|---|---|---|---|---|
| Mechanical | M1.12A | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.12B | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.12C | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.12D | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.12E | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.12F | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.13A | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.13B | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.13C | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.13D | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.13E | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.13F | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.14A | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.14B | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.14C | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.14D | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.14E | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.14F | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.15A | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.15B | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.15C | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.15D | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.15E | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.15F | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.16A | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 3 | 8/12/2020 |
| Mechanical | M1.16B | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 12/20/2019 |
| Mechanical | M1.16C | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 12/20/2019 |
| Mechanical | M1.16D | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 3 | 8/12/2020 |
| Mechanical | M1.16E | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 3 | 8/12/2020 |
| Mechanical | M1.16F | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 3 | 8/12/2020 |
| Mechanical | M1.21 | GARAGE LEVEL 1 - MECHANCIAL | 1 | 2/24/2020 |
| Mechanical | M1.22 | GARAGE LEVEL 2 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.23 | GARAGE LEVEL 3 - MECHANCIAL | 0 | 10/16/2019 |



Initial ___ PK ___    Initial ___ BLA ___    **Alterations to this Agreement are Prohibited**    Page 14 of 38
Sub                    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Mechanical | M1.24 | GARAGE LEVEL 4- MECHANCIAL | 0 | 10/16/2019 |
|---|---|---|---|---|
| Mechanical | M1.25 | GARAGE LEVEL 5 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.26 | GARAGE LEVEL 6 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.27 | GARAGE ROOF - MECHANICAL | 1 | 2/24/2020 |
| Mechanical | M4.01 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.02 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.03 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M6.01 | MECHANICAL SCHEDULES | 2 | 12/20/2019 |
| Mechanical | M7.01 | MECHANICAL DETAILS | 2 | 2/24/2020 |
| Mechanical | M7.02 | MECHANICAL DETAILS | 1 | 10/16/2019 |
| Mechanical | M7.03 | MECHANICAL DETAILS | 1 | 2/24/2020 |
| Fire Protection | F0.01 | FIRE PROTECTION SYMBOLS AND SPECIFICATIONS | 2 | 4/15/2020 |
| Fire Protection | F1.11A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 2/24/2020 |
| Fire Protection | F1.11B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 2/24/2020 |
| Fire Protection | F1.11C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 2/24/2020 |
| Fire Protection | F1.11D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 2/24/2020 |
| Fire Protection | F1.11E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 2/24/2020 |
| Fire Protection | F1.11F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 2/24/2020 |
| Fire Protection | F1.12A | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.12B | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.12C | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.12D | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.12E | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.12F | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.13A | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.13B | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.13C | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.13D | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.13E | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.13F | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 2/24/2020 |



**Standard Short Form Agreement Between Contractor and Subcontractor**

| Fire Protection | F1.14A | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | | 10/16/2019 |
|---|---|---|---|---|---|
| Fire Protection | F1.14B | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | | 10/16/2019 |
| Fire Protection | F1.14C | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | | 10/16/2019 |
| Fire Protection | F1.14D | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | | 10/16/2019 |
| Fire Protection | F1.14E | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | | 10/16/2019 |
| Fire Protection | F1.14F | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 0 | | 10/16/2019 |
| Fire Protection | F1.15A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 1 | | 2/24/2020 |
| Fire Protection | F1.15B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 1 | | 2/24/2020 |
| Fire Protection | F1.15C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 1 | | 2/24/2020 |
| Fire Protection | F1.15D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 1 | | 2/24/2020 |
| Fire Protection | F1.15E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 1 | | 2/24/2020 |
| Fire Protection | F1.15F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | | 2/24/2020 |
| Fire Protection | F1.21 | GARAGE LEVEL 1 - FIRE PROTECTION | 0 | | 10/16/2019 |
| Fire Protection | F1.22 | GARAGE LEVEL 2 - FIRE PROTECTION | 0 | | 10/16/2019 |
| Fire Protection | F1.23 | GARAGE LEVEL 3 - FIRE PROTECTION | 0 | | 10/16/2019 |
| Fire Protection | F1.24 | GARAGE LEVEL 4 - FIRE PROTECTION | 0 | | 10/16/2019 |
| Fire Protection | F1.25 | GARAGE LEVEL 5 - FIRE PROTECTION | 0 | | 10/16/2019 |
| Fire Protection | F1.26 | GARAGE LEVEL 6 - FIRE PROTECTION | 0 | | 10/16/2019 |
| Fire Protection | F6.01 | FIRE PROTECTION DETAILS | 1 | | 10/16/2019 |
| Fire Protection | F6.02 | FIRE PROTECTION DETAILS | 1 | | 10/16/2019 |
| Low Voltage | T-000 | LOW VOLTAGE NOTES AND LEGENDS | 1 | | 4/1/2020 |
| Low Voltage | T-100 | FIRST FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | | 12/20/2019 |
| Low Voltage | T-100A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | | 12/20/2019 |
| Low Voltage | T-100B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | | 12/20/2019 |
| Low Voltage | T-100C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | | 12/20/2019 |
| Low Voltage | T-100D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | | 12/20/2019 |
| Low Voltage | T-101 | SECOND FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | | 12/20/2019 |
| Low Voltage | T-102 | THIRD FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | | 12/20/2019 |
| Low Voltage | T-103 | FOURTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | | 12/20/2019 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Low Voltage | T-104 | FIFTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
|---|---|---|---|---|
| Low Voltage | T-105 | ROOF PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-106 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-107 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-108 | LOW VOLTAGE UNIT DISTRIBUTION PANEL | 1 | 4/1/2020 |
| Low Voltage | T-200 | FIRST FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-201 | SECOND FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-202 | THIRD FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-203 | FOURTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-204 | FIFTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-205 | SIXTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300 | FIRST FLOOR PLAN LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-302 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-303 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-400 | FIRST FLOOR PLAN LOW VOLTAGE A/V | 0 | 12/20/2019 |
| Low Voltage | T-400A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-500 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (MDF) | 1 | 4/1/2020 |
| Low Voltage | T-501 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 1A & IDF 1B) | 1 | 4/1/2020 |
| Low Voltage | T-502 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3A & IDF 5A) | 1 | 4/1/2020 |
| Low Voltage | T-503 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3B & IDF 5B) | 1 | 4/1/2020 |
| Low Voltage | T-504 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3C & IDF 5C) | 1 | 4/1/2020 |
| Low Voltage | T-600 | LOW VOLTAGE CONNECTIVITY DIAGRAM (UNIT) | 0 | 12/20/2019 |
| Low Voltage | T-601 | LOW VOLTAGE CONNECTIVITY DIAGRAM (ACCESS CONTROL) | 0 | 12/20/2019 |
| Low Voltage | T-602 | LOW VOLTAGE CONNECTIVITY DIAGRAM (SURVEILLANCE) | 0 | 12/20/2019 |
| Interior | ID-0.00 | COVER SHEET | 1 | 5/8/2020 |
| Interior | ID-0.01 | PLAN KEY | 3 | 5/8/2020 |
| Interior | ID-0.02 | GENERAL NOTES | 3 | 5/8/2020 |
| Interior | ID-0.03 | LEGENDS & ABBREVIATIONS | 2 | 5/8/2020 |
| Interior | ID-0.04 | OVERALL FLOOR PLAN FIRST FLOOR | 2 | 5/8/2020 |
| Interior | ID-0.05 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.06 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.07 | OVERALL FLOOR PLAN FIFTH FLOOR | 2 | 5/8/2020 |



Initial _PK_    Initial _BLA_

Sub      Contractor

**Alterations to this Agreement are Prohibited**         Page 17 of 38

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.00 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
|----------|---------|---------------------------------------------|---|----------|
| Interior | ID-1.01 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.02 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.03 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.04 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.05 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.06 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.07 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.08 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.09 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.10 | INTERIOR PLAN FIRST & FIFTHFLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.11 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.12 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.13 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.14 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.15 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.16 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.17 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.18 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.19 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.20 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.21 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.22 | FLOOR COVERING PLAN FIRST & FIFTH FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.23 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.24 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.25 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.26 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.27 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.28 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.29 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.30 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.31 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.32 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.33 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.34 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.35 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.36 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.37 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.38 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.39 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.40 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |



Initial Sub _PK_     Initial Contractor _BLA_     **Alterations to this Agreement are Prohibited**     Page 18 of 38

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.41 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.42 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.43 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.44 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.45 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.46 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.47 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.48 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.49 | REFLECTED CEILING PLAN FIRST FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.50.0 | FURNITURE PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.50.1 | FURNITURE PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.51 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.52 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.53 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.54 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.55 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.56 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.57 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.58 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.59 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.0 | FLOOR COVERING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.1 | FLOOR COVERING PLAN 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.61 | FLOOR COVERING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.62 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.63 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.64 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.65 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.66 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.67 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.68 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.69 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.0 | ELECTRICAL PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.1 | ELECTRICAL PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.71 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.72 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.73 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.74 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.75 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.76 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.77 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.78 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |

## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-1.79 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.80.0 | REFLECTED CEILING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.80.1 | REFLECTED CEILING PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.81 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.82 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.83 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.84 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.85 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.86 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.87 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.88 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.89 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.90 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.91 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.92 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.93 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-2.00 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.01 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.02 | INTERIOR ELEVATIONS SALES OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.03 | INTERIOR ELEVATIONS CORRIDOR 1 | 2 | 5/8/2020 |
| Interior | ID-2.04 | INTERIOR ELEVATIONS CONF. RM. / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.05 | INTERIOR ELEVATIONS CONF. RM / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.06 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.07 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.08 | INTERIOR ELEVATIONS MEDIA THEATRE | 2 | 5/8/2020 |
| Interior | ID-2.09 | INTERIOR ELEVATIONS FITNESS | 2 | 5/8/2020 |
| Interior | ID-2.10 | INTERIOR ELEVATIONS YOGA | 2 | 5/8/2020 |
| Interior | ID-2.11 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.12 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.13 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.14 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.15 | INTERIOR ELEVATIONS CORRIDOR 2 | 2 | 5/8/2020 |
| Interior | ID-2.16 | INTERIOR ELEVATIONS CORRIDOR 3 | 2 | 5/8/2020 |
| Interior | ID-2.17 | INTERIOR ELEVATIONS CORRIDOR 4 | 2 | 5/8/2020 |
| Interior | ID-2.18 | INTERIOR ELEVATIONS CORRIDOR 5 | 2 | 5/8/2020 |
| Interior | ID-2.19 | INTERIOR ELEVATIONS CORRIDOR 6 | 2 | 5/8/2020 |
| Interior | ID-2.20 | INTERIOR ELEVATIONS CORRIDOR 7 | 2 | 5/8/2020 |
| Interior | ID-2.21 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.22 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.23 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.24 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |



Initial Sub PK    Initial Contractor BLA    **Alterations to this Agreement are Prohibited**    Page 20 of 38

## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-2.25 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-2.26 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.27 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.28 | INTERIOR ELEVATIONS CORRIDOR 11 | 2 | 5/8/2020 |
| Interior | ID-2.29 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.30 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.31 | INTERIOR ELEVATIONS CORRIDOR 13 | 2 | 5/8/2020 |
| Interior | ID-2.32 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
| Interior | ID-2.33 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
| Interior | ID-2.34 | INTERIOR ELEVATIONS CORRIDOR 15 | 2 | 5/8/2020 |
| Interior | ID-2.35 | INTERIOR ELEVATIONS CORRIDOR 16 | 2 | 5/8/2020 |
| Interior | ID-2.36 | INTERIOR ELEVATIONS CORRIDOR 17 | 2 | 5/8/2020 |
| Interior | ID-2.37 | INTERIOR ELEVATIONS VESTIBULE 1 AND 2 | 2 | 5/8/2020 |
| Interior | ID-2.38 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.39 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.40 | INTERIOR ELEVATIONS VESTIBULE 4 AND 5 | 2 | 5/8/2020 |
| Interior | ID-2.41 | INTERIOR ELEVATIONS VESTIBULE 5 AND 6 | 2 | 5/8/2020 |
| Interior | ID-2.42 | INTERIOR ELEVATIONS VESTIBULE 7 AND 8 | 2 | 5/8/2020 |
| Interior | ID-2.43 | INTERIOR ELEVATIONS VESTIBULE 8, 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.44 | INTERIOR ELEVATIONS VESTIBULE 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.50 | INTERIOR ELEVATIONS MEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.51 | INTERIOR ELEVATIONS WOMEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.60 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.61 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.62 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-3.00 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.01 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.02 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.03 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.04 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-4.00 | SCHEDULES | 3 | 5/8/2020 |
| Interior | ID-4.01 | DOOR SCHEDULE | 2 | 5/8/2020 |
| Interior | ID-4.02 | SCHEDULES TYPICAL UNITS | 3 | 5/8/2020 |
| Hardscape | H-1 | SITE PLAN PHASE 2 | 6 | 5/22/2020 |
| Hardscape | H-2.1 | HARDSCAPE LABEL PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.2 | HARDSCAPE DIMENSION PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.3 | HARDSCAPE FINISHES PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-3.1 | HARDSCAPE LABEL PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.2 | HARDSCAPE DIMENSION PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.3 | HARDSCAPE FINISHES PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-4.1 | HARDSCAPE LABEL PLAN COURTYARD C | 6 | 5/22/2020 |



**Standard Short Form Agreement Between Contractor and Subcontractor**

| Hardscape | H-4.2 | HARDSCAPE DIMENSION PLAN COURTYARD C | 6 | 5/22/2020 |
|---|---|---|---|---|
| Hardscape | H-4.3 | HARDSCAPE FINISHES PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-5.1 | HARDSCAPE LABEL PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.2 | HARDSCAPE DIMENSION PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.3 | HARDSCAPE FINISHES PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-6 | HARDSCAPE LABEL PLAN | 3 | 5/16/2019 |
| Hardscape | H-6.1 | HARDSCAPE LABEL PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.2 | HARDSCAPE DIMENSION PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.3 | HARDSCAPE DIMESION PLAN | 6 | 5/22/2020 |
| Hardscape | H-7 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-8 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-9 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-10 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-11 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-12 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-13 | HARDSCAPE DETAILS | 8 | 8/31/2020 |
| Hardscape | H-14 | HARDSCAPE SPECIFICATIONS | 6 | 5/22/2020 |
| Landscape | L-1 | SITE PLAN PHASE 2 | 8 | 5/22/2020 |
| Landscape | L-2 | TREE DISPOSITION PLAN PHASE 2 | 8 | 5/14/2020 |
| Landscape | L-3 | TREE DISPOSITION PLAN PH 2 | 7 | 5/14/2020 |
| Landscape | L-4 | TREE DISPOSITION SCHEDULE PH 2 | 8 | 5/14/2020 |
| Landscape | L-5 | LANDSCAPE PLAN | 7 | 5/22/2020 |
| Landscape | L-6 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-7 | LANDSCAPE PLAN | 5 | 5/22/2020 |
| Landscape | L-8 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-9 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-10 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-11 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-12 | LANDSCAPE SPECIFICATIONS | 3 | 5/22/2020 |
| Landscape | L-13 | LANDSCAPE SPECIFICATIONS | 0 | 5/16/2019 |
| Landscape | LI-1 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-2 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-3 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LLP-1 | SITE PLAN PHASE 2 | 2 | 5/22/2020 |
| Landscape | LLP-2 | LANDSCAPE LIGHTING PLAN | 3 | 5/22/2020 |
| Landscape | LLP-3 | LANDSCAPE LIGHT PLAN | 3 | 5/22/2020 |
| Landscape | LLP-4 | LANDSCAPE LIGHTING PLAN SCHEDULE | 3 | 5/22/2020 |
| Landscape | LLP-5 | LANDSCAPE LIGHT PLAN SPECIFICATIONS | 2 | 5/22/2020 |
| Surveys | 1 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 2 | 7/11/2019 |
| Surveys | 2 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 4 | 6/15/2020 |



Initial _PK_ Sub    Initial _BLA_ Contractor    **Alterations to this Agreement are Prohibited**    Page 22 of 38

## Standard Short Form Agreement Between Contractor and Subcontractor

Architect:
**Charlan Brock & Associates**

Engineer:
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

Architect of Record:
**Doug Anderson**
**1770 Fennell Street**
**Maitland, Florida 32751**

Civil Engineer:
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

Structural Engineer:
**John Bailes**
**1035 South Semoran Blvd**
**Winter Park, Florida 32792**

Landscape Architect:
**Aaron Mastin**
**101 SE 2nd Ave**
**Delray Beach, Florida 33444**

Hardscape Architect:
**Aaron Mastin**
**101 SE 2nd Ave**
**Delray Beach, Florida 33444**

Interior Design:
**Jorge Garcia**
**4700 Riverside Drive, Suite 100**
**Palm Beach Gardens, Florida 33410**

**EXHIBITS.** As applicable, the following Exhibits are incorporated by reference and made part of this Agreement:

EXHIBIT A:    Schedule of Values
EXHIBIT B:    Insurance

**1.1    SUBCONTRACTOR IS AN INDEPENDENT CONTRACTOR.** SUBCONTRACTOR is an independent contractor and shall, at its sole cost and expense, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the Work. SUBCONTRACTOR shall have sole responsibility for the means and methods of performing the Work required under this Subcontract. SUBCONTRACTOR is responsible for securing timely inspections and approvals of its Work from all such authorities as required by the Contract Documents. All inspections must be coordinated with CONTRACTOR. SUBCONTRACTOR must obtain and pay for all necessary permits and licenses, including business licenses; pay all fees, manufacturer's taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and unemployment or disability insurance which are measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. SUBCONTRACTOR must maintain proof that it has complied with all aspects of this Paragraph and shall make such proof available for review by CONTRACTOR at CONTRACTOR's request.



Initial _____     Initial _____          **Alterations to this Agreement are Prohibited**          Page 23 of 38
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

SUBCONTRACTOR agrees that any penalty, charge, fine, or other assessment made on account of SUBCONTRACTOR or SUBCONTRACTOR's work will be promptly paid in full by SUBCONTRACTOR. All of the SUBCONTRACTOR's Work shall be performed in strict accordance with the Occupational Safety and Health Act of 1970 and any other legislation enacted by federal, state, or local governing authorities or agencies. Additionally, SUBCONTRACTOR shall furnish a copy to CONTRACTOR the applicable Safety Data Sheets (SDS) for all hazardous materials or chemicals used in connection with or consumed or incorporated into this Project as required by the Hazard Communication Standard of the Occupational Safety and Health Administration (OSHA). The SUBCONTRACTOR shall report to the CONTRACTOR within one (1) day after an injury to an employee or agent of the SUBCONTRACTOR which occurs on the site.

**1.2A** **SUBCONTRACTOR** shall not perform any labor services under this Subcontract with any persons or parties other than SUBCONTRACTOR's direct employees without first 1) providing CONTRACTOR with at least 24 hours prior written notice, and 2) providing CONTRACTOR with a copy of the agreement between SUBCONTRACTOR and any sub-subcontractor, employee leasing company, employee management company, labor supplier company, or individual ("third party labor provider") providing such labor at least 24 hours prior to beginning to perform the labor. SUBCONTRACTOR's failure to comply with these requirements shall be a material breach of the Subcontract allowing for termination of the Subcontract, and the CONTRACTOR will not be liable for payment of any labor costs of the third-party labor provider. Should the SUBCONTRACTOR be authorized to use a third-party labor provider on the project, the CONTRACTOR must receive written confirmation, via email, setting forth the specific names of each third-party labor provider employee onsite, the amount of the hours worked, and price per hour for each employee. This information must be received by 5:00 pm daily on same day that the third-party labor provider was onsite at the project. Failure to timely and completely provide this information will result in non-payment by the CONTRACTOR to the SUBCONTRACTOR for such third-party labor.

**1.3** **QUALITY AND SCOPE OF WORK/FIELD VERIFICATIONS.** The Contract Documents are intended to and shall be considered to include all items which would normally be included in SUBCONTRACTOR's trade and are intended to include all Work that CONTRACTOR is called upon to perform under terms of its contract with Owner. The Plans and Specifications generally indicate the scope and quality of the work but are not represented as being free from errors or omissions and any work called for in the Specifications and not shown on the Plans, or vice versa, are to be furnished as if called for in both and, in addition SUBCONTRACTOR agrees that any and all work required and reasonably implied as necessary to complete the job, shall be furnished and installed by SUBCONTRACTOR without any additional cost. SUBCONTRACTOR shall notify CONTRACTOR in writing of any deviations from the Contract Documents. SUBCONTRACTOR's responsibility to conform to the Contract Documents is not relieved by Architect's or CONTRACTOR's review unless there is written acceptance of the specific deviations. SUBCONTRACTOR agrees not to modify, withdraw, or cancel any alternate bids, for ninety (90) days after receipt of bid. SUBCONTRACTOR shall provide its own layout and make its own measurements and shall guarantee the accuracy thereof and shall not rely on the measurements of any other party.

The SUBCONTRACTOR represents that it is licensed (if applicable) and fully qualified to perform the Work required by this Subcontract and acknowledges that it has, by careful examination satisfied itself as to: (a) the nature, location and character of the Job Site including, but not limited to, the surface and subsurface conditions of the land and all structures and obstructions thereon, both natural and manmade, surface water conditions of the Job Site and the surrounding area and, to the extent pertinent to the Work, all other conditions; (b) the nature, location and character of the general area in which the Job Site is located including, without limitation, its climatic conditions, the availability and cost of labor and the availability and cost of materials, tools and equipment; the quality and quantity of all material, supplies, tools, equipment, labor and services necessary to complete the Work in the manner required by the Contract Documents; and (c) all other matters or things which could in any manner affect the performance of the Work. The SUBCONTRACTOR recognizes and understands the physical and operational restrictions on carrying on of the Work in or about the Project and expressly agrees that such conditions have been accounted for in the Subcontract price. **By commencing its Work, SUBCONTRACTOR accepts the surface or substrate on which such work is placed and all adjacent work of earlier subcontractors and other areas that interface with or connect to the SUBCONTRACTOR's Work or otherwise affect SUBCONTRACTOR's Work. The SUBCONTRACTOR shall take such measurements as will insure the proper matching and placement of the Work under this Subcontract and is otherwise responsible for compliance with the intent of the Contract Documents. The SUBCONTRACTOR shall immediately notify CONTRACTOR and the Architect of any unacceptable conditions or deviations from contract requirements affecting its Work and shall notify CONTRACTOR and Architect of any discrepancies or conflicts in the Contract Documents before performing its Work and shall be responsible for all costs resulting from its failure to do so. Any SUBCONTRACTOR that installs his work attached to an unacceptable substrate without written notification**



Initial ___PK___     Initial ___BLA___     **Alterations to this Agreement are Prohibited**     Page 24 of 38
Sub                  Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**to CONTRACTOR shall bear the costs of removal and replacement of his work.** All Work shall be done in a good and workmanlike manner and all material shall be new and of specified grade, and all Work and material shall be furnished and installed in compliance with the requirements of the institutions making the construction and permanent mortgages on the property and all governmental or other authorities having jurisdiction thereof.

**Prior to starting any field work, the SUBCONTRACTOR shall participate in a "SUBCONTRACTOR's Preparatory Meeting" with the CONTRACTOR at the jobsite, to thoroughly review the following items and procedures and sign-off as to the SUBCONTRACTOR's participation and understanding: (1) Subcontract Agreement & Exhibit "A", (2) possession of correct Drawings & Specifications, (3) SDS Sheets & OSHA Review, (4) Completed stamped and approved shop drawings & submittals, (5) required material installation procedures, and (6) Payment Procedures. SUBCONTRACTOR is solely responsible for its work being in full compliance with this Subcontract Agreement requirement. All subcontractors must attend project meetings that they are requested to attend (a two-day notice will be provided). Sending a laborer to a meeting will not count as a substitute. It must be an approved supervisor or an individual authorized to make decisions on behalf of your company. Subcontractors will be fined $250 for each meeting missed.**

SUBCONTRACTOR is at all times to work ONLY from Drawings specifically issued by CONTRACTOR's Project Manager that identifies the documents as "For Construction". Under no circumstances is SUBCONTRACTOR to perform any work on the Project from any Drawings that do not include such identification. SUBCONTRACTOR is not to accept, process, bid, or perform any actual construction work based on any Drawings that have not been so identified by CONTRACTOR's Project Manager as described above. SUBCONTRACTOR shall be solely responsible for compliance with his requirement.

SUBCONTRACTOR jobsite supervisor shall submit Daily Reports (including manpower) to CONTRACTOR each day on separate forms provided by CONTRACTOR. Failure to provide these forms will be sufficient cause for CONTRACTOR to withhold payment until CONTRACTOR is provided with completed up-to-date reports.

**1.4    SUBMITTALS.** SUBCONTRACTOR shall promptly prepare or obtain and submit to CONTRACTOR in the quantity requested by CONTRACTOR, all shop and erection drawings, samples, product data, catalogue cuts, laboratory and inspection reports, and engineering calculations ("Submittals") required by the Contract Documents, or as may be necessary or appropriate to describe the details of the Work. All Submittals shall be submitted in a timely manner so as to permit the work to be performed in accordance with the Project Schedule. Neither review, nor approval, of Submittals by CONTRACTOR, Owner or Architect shall relieve SUBCONTRACTOR of its obligation to perform the Work in strict conformity with the Contract Documents or its responsibility for the proper matching of the Work to contiguous work. SUBCONTRACTOR shall identify each and every variance between any Submittals and the requirements of the Contract Documents at the time of transmission either prominently on the Submittal or specifically in a transmission letter accompanying the Submittal. No modification, revision or other notation on a Submittal that changes or modifies the Contract Documents shall be valid (even if the drawing or Submittal is approved) unless there is a Change Order issued approving same. No Work required or Work attaching to items requiring submittals or shop drawings shall be started by SUBCONTRACTOR until approved Submittals are returned to SUBCONTRACTOR. Materials ordered, fabricated, or installed prior to receipt of approved Submittals are at SUBCONTRACTOR's sole risk. All material submittals, shop drawings, affidavits, etc., that are required for your area of work need to be submitted to the CONTRACTOR within seven (7) days of signing your contract.

**3)    BONDS.** SUBCONTRACTOR shall not **X** furnish to CONTRACTOR, as Obligee, surety bonds to this Agreement, and through a surety mutually agreeable to CONTRACTOR and SUBCONTRACTOR, to secure faithful performance of Subcontract Work and to satisfy SUBCONTRACTOR payment obligations related to SUBCONTRACTOR's Work.

**4)    SAFETY AND CLEAN-UP.** To protect persons and property, SUBCONTRACTOR shall establish a safety program implementing safety measures, policies and standards conforming to (1) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (2) the requirements of this Agreement. SUBCONTRACTOR will abide by the Safety Program implemented by Portrait Construction of Florida attached as EXHIBIT "A".

**5)    SUPERVISON.** SUBCONTRACTOR is required to designate a competent supervisor to oversee all SUBCONTRACTORs work for the duration of the project. SUBCONTRACTOR must submit name and qualification of



Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 25 of 38

Sub          Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

SUBCONTRACTOR's English speaking supervisor to Portrait Construction of Florida's project superintendent for acceptance. CONTRACTOR's Superintendent will schedule the different trades, supervise all construction, and with the concurrence of CONTRACTOR's Project Manager, approve monthly draws. His opinion that the job's progress for SUBCONTRACTOR's phase of the work is on schedule is a condition precedent to CONTRACTOR's obligation to make progress payments to SUBCONTRACTOR. **SUBCONTRACTOR'S Supervisor is responsible for verifying all of his "Scope of Work" is properly performed, shall complete a thorough inspection of the work and determine any and all repairs, rework, punchlist & verify the remediation is complete. If at any point during construction, the CONTRACTOR'S Superintendent determines that the SUBCONTRACTOR'S Supervisor is not completing his work as outlined in the above, he may request in writing that the SUBCONTRACTOR enforce the requirements of the Supervisor or replace him.**

6)       **SCHEDULE.** Time is of the essence as to SUBCONTRACTOR's obligations under this Agreement. All SUBCONTRACTOR's Work shall commence and proceed as scheduled by the CONTRACTOR. All SUBCONTRACTOR's Work shall be of the highest quality, and in compliance with all governing laws, ordinances, codes, regulations and requirements. The CONTRACTOR shall prepare the schedule for performance of CONTRACTOR's Work (HEREINAFTER THE "Progress Schedule") and shall revise and update such schedule, as necessary, as CONTRACTOR's work progresses. Each revision of the Progress Schedule, upon issuance to this SUBCONTRACTOR, shall supersede previous schedules and shall become part of this Agreement. SUBCONTRACTOR shall provide CONTRACTOR with any scheduling information proposed by SUBCONTRACTOR for Subcontract Work and submit any additional information or updates as requested by CONTRACTOR. SUBCONTRACTOR shall be bound by the Progress Schedule. Material procurement, shop fabrication and delivery must be coordinated by SUBCONTRACTOR, to ensure that the work is started and completed as required by the Progress Schedule.

The Subcontract price includes all overtime as required including Saturdays, Sundays, and holidays in order to maintain the Progress Schedule. Failure by this SUBCONTRACTOR to meet all obligations necessary to maintain the Progress Schedule dates will result in SUBCONTRACTOR being assessed appropriate damages and losses incurred by the CONTRACTOR. The CONTRACTOR shall have the rights to (1) expand, update and revise the Progress Schedule as necessary to correspond to project conditions and changes in order to ensure the overall completion date, and (2) to determine and, if necessary, change the time, order and priority in which various portions of Subcontract Work shall be performed.

SUBCONTRACTOR accepts the risk of delays and acceleration caused by the rate of progress of the Work changing as directed by CONTRACTOR. The SUBCONTRACTOR acknowledges that the CONTRACTOR has made no warranties to the SUBCONTRACTOR, express or implied, that the SUBCONTRACTOR will be able to follow normal, orderly sequence in the performance of SUBCONTRACTOR's Work or that there will be no delays in, or interference with, the SUBCONTRACTOR's Work. The SUBCONTRACTOR shall be prepared to do its Work out of sequence in accordance with the requirements of the Project, when and if required by CONTRACTOR. The Contract Sum includes all overtime, increase in crew size, etc. as required, including Saturdays, Sundays, and Holidays, in order for the SUBCONTRACTOR to maintain its Work item time duration schedule.

**LIMITATION OF REMEDIES – NO DAMAGES FOR DELAY. The SUBCONTRACTOR's exclusive remedy for delays in the performance of the contract caused by events beyond its control, including delays claimed to be caused by the CONTRACTOR, Owner, Architect, or Engineer, or attributable to the CONTRACTOR, Owner, Architect, or Engineer and including claims based on breach of contract or negligence, shall be an extension of its contract time, and under no circumstances will SUBCONTRACTOR be entitled to any monetary claim or compensation.** Any claims for additional time by the SUBCONTRACTOR for delay must be submitted to the CONTRACTOR within the time and in the manner in which the CONTRACTOR must submit such claims to the Owner, and that failure to comply with the conditions for giving notice and submitting claims shall result in the waiver of such claims.

SUBCONTRACTOR is to perform work ONLY during specified authorized working hours as authorized in writing by the CONTRACTOR. Under no circumstances is SUBCONTRACTOR to perform ANY work or otherwise have any work crews present on the jobsite without the CONTRACTOR present. SUBCONTRACTOR is solely responsible for full compliance with this important Contract requirement.

SUBCONTRACTOR agrees to complete work segments within the performance time durations as listed below and overall Progress Schedule. SUBCONTRACTOR specifically acknowledges and agrees to these duration times including

Initial ___PK___   Initial ___BLA___        **Alterations to this Agreement are Prohibited**        Page 26 of 38
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

completion of all punch list requirements for its work – as necessary to achieve final acceptance of its work by the CONTRACTOR and Owner and includes in the Subcontract Price all necessary costs required to achieve completion within the listed times. Duration times are all in calendar days and include sufficient time as required to receive inspection approvals from all authorities having jurisdiction.

**7)    CHANGE ORDERS.** When CONTRACTOR orders in writing, SUBCONTRACTOR, without nullifying this Agreement, shall make any and all changes in Subcontract Work. No adjustments shall be made for any changes performed by SUBCONTRACTOR that have not been ordered by CONTRACTOR. **The Subcontract Price may only be modified by written change order signed by both parties. Authorization for any changed or extra work or costs whatsoever may be only made in writing signed by CONTRACTOR's Project Manager or Executive Officer. Contractor's Superintendent is not authorized to make any changes or issue any extra cost approvals to SUBCONTRACTOR either verbal or in writing. Any changes or extra costs attempted to be recovered by SUBCONTRACTOR based on any approvals or directives by CONTRACTOR's Superintendent or anyone else that is not CONTRACTOR's Project Manager or Executive Officer will not be recognized. The only CONTRACTOR representative authorized to approve additional scope and costs is the Project Manager or Executive Officer.** A Change Order is a written instrument prepared by CONTRACTOR and signed by SUBCONTRACTOR stating their agreement upon the change in Subcontract Work. In the event of a change in the work, the SUBCONTRACTOR's claim for adjustments in the contract sum are limited exclusively to its actual costs for such changes plus no more than 10% for overhead and 5% profit.

**8)    CHANGE ORDER ADJUSTMENTS.** In consideration for any adjustments in the time and the Subcontract Sum, SUBCONTRACTOR hereby releases CONTRACTOR and Owner from all claims, demands or causes of action arising out of the transactions, events and occurrences giving rise to the Change Order, including without limitation all direct and indirect costs and all schedule impacts.

**9)    PAYMENT.**

**9.1    SCHEDULE OF VALUES.** The schedule of values (SOV) is a condition of payment, per SOV detailed in Exhibit "A". SUBCONTRACTOR to provider progress invoicing per Exhibit "A"; and as provided by CONTRACTOR they may use the project Billing Invoice Tool in Procore.

**9.2    PROGRESS AND FINAL PAYMENTS.** Progress payments due to SUBCONTRACTOR, less retainage as specified herein, shall be made to SUBCONTRACTOR for Subcontract Work satisfactorily performed no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for SUBCONTRACTOR's Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for SUBCONTRACTOR's Work. These payments are not due if there is reason for withholding as specified herein and/or SUBCONTRACTOR has not satisfied all conditions precedent to payment specified herein.

**9.2.1    PROGRESS PAYMENTS.** Progress Payments due under the Subcontract will not be released until all of the following conditions have been met:

.1    Subcontract Agreement has been signed by SUBCONTRACTOR without modification and returned to CONTRACTOR;

.2    Proper Insurance Certificates have been received;

.3    CONTRACTOR's approval of SUBCONTRACTOR's Schedule of Values;

.4    SUBCONTRACTOR has presented to CONTRACTOR, for its approval, an Application for Payment and other documents required by Paragraph 10;

.5    Progress payments, less retainage, shall be made to SUBCONTRACTOR, for Subcontract Work satisfactorily performed, no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for Subcontract Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for Subcontract Work. These payments are subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or CONTRACTOR.

.6    CONTRACTOR's receipt in current funds from the Owner for the progress payments due the SUBCONTRACTOR. It shall be an express condition precedent to any obligation or liability of the CONTRACTOR to the SUBCONTRACTOR for any payment to the SUBCONTRACTOR that the CONTRACTOR is in receipt of payment in current funds from the Owner for the SUBCONTRACTOR's work. If the Owner has not paid the CONTRACTOR for any

Initial _PK_     Initial _BLA_          **Alterations to this Agreement are Prohibited**          Page 27 of 38
Sub                Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

reason whatsoever, including the Owner's financial inability to pay or other reason not related to this SUBCONTRACTOR, the SUBCONTRACTOR agrees that the CONTRACTOR shall not be liable for payment and not be indebted to the SUBCONTRACTOR. The SUBCONTRACTOR assumes the credit risk of the Owner and agrees that it is relying on the Owner's credit and not that of the CONTRACTOR. The SUBCONTRACTOR further agrees that, as a portion of the consideration for the award of this Subcontract, he agrees to assume, and hereby assumes, the same risk as does the CONTRACTOR for non-payment by the Owner and accordingly, in the event that the Owner fails to pay the CONTRACTOR progress payments, interim payment, claims for increased work, claims for changed work, final payments, or any other form of payment otherwise due to the CONTRACTOR, the SUBCONTRACTOR shall be absolutely barred, estopped, and precluded from instituting any suit, arbitration or other claim against the CONTRACTOR or the Surety until and unless the Owner first pays the CONTRACTOR. In other words, payment by the Owner to the CONTRACTOR of sums necessary to pay the SUBCONTRACTOR is a condition precedent to CONTRACTOR's obligation to pay SUBCONTRACTOR and to the bringing of any lawsuit, arbitration or other claims by the SUBCONTRACTOR against the CONTRACTOR. If CONTRACTOR has provided payment or performance bonds or a combination payment and performance bond, the obligation of CONTRACTOR and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of CONTRACTOR's prior receipt of payment from the Owner for the progress payments due the SUBCONTRACTOR. This provision is incorporated by reference into any such bond or bonds.

.7    Any supplemental work provided b others for this scope of work has been paid in full.

**9.2.2    FINAL PAYMENT.** All conditions precedent of this Subcontract which apply to progress payments shall also apply to final payment. As additional express conditions precedent to SUBCONTRACTOR's entitlement to final payment, the SUBCONTRACTOR shall have fully performed all its Work in accordance with the Contract Documents, the Architect shall have issued a certificate for payment covering the SUBCONTRACTOR's completed Work, any certificates of occupation or certificates of completion required to be issued by any authority having jurisdiction shall have been issued, the CONTRACTOR shall have received payment from the Owner, the CONTRACTOR shall have received consent of SUBCONTRACTOR's surety to final payment (if any), and the SUBCONTRACTOR shall provide to the CONTRACTOR its Affidavit and Final Release of Lien/Claim, all final lien waivers from its sub-subcontractors and vendors, warranties, special warranties, all required executed warranty and guaranty documents, guarantees, parts lists, all maintenance and operations manuals, all close-out documents described in the Project Manual (Specification Book), Bid Package Book, and Addenda, two complete sets of "As-Built" prints acceptable to the CONTRACTOR (one hard copy and one electronic copy), and other Project close-out documents required by the Contract Documents. Should CONTRACTOR's close-out of the entire Project and receipt of final payment from Owner be delayed as a result of SUBCONTRACTOR's delay or failure to submit all such Project close-out documents relating to SUBCONTRACTOR's Work, SUBCONTRACTOR will be responsible for any costs and expenses and damages sustained by CONTRACTOR as a result of such delay or failure. Further, SUBCONTRACTOR's compliance with all other provisions of the Contract Documents is a condition precedent to SUBCONTRACTOR's right to final payment.

**9.3    STORED MATERIALS.** Payments for stored materials will only be made subject to the pre-approval, restrictions and requirements of Owner and CONTRACTOR. Payments will be made, less retainage and only to extent of monies received by CONTRACTOR from Owner, for the stored items under the Owner – CONTRACTOR Agreement. Payments to SUBCONTRACTOR will be made no sooner than ten days after the date payment for the stored materials is received by CONTRACTOR from Owner. In no case, will stored materials be paid for items other than those necessary to be on site to guarantee the progress of the Project and as specifically pre-approved by CONTRACTOR. SUBCONTRACTOR includes protection of all stored materials and safeguards necessary to insure adequate protection to the satisfaction of the CONTRACTOR and OWNER. SUBCONTRACTOR must provide a proper and secure storage facility for all stored material at its own expense. SUBCONTRACTOR must also provide satisfactory insurance coverage as required in Exhibit 'E' attached hereto and made part of this Subcontract. CONTRACTOR will not reimburse SUBCONTRACTOR for materials either misplaced, damaged, or stolen.

**9.4    PAYMENTS WITHHELD.** CONTRACTOR shall have the right to withhold and to reduce any payments to SUBCONTRACTOR for (a) any indebtedness owed by SUBCONTRACTOR to CONTRACTOR, (b) defective work not remedied or defective materials not removed and replaced, (c) third-party claims filed or reasonable evidence indicating probable filing of such claims, (d) claimed failure of the SUBCONTRACTOR to make payments to its subcontractors, suppliers, or laborers, (e) reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract Price, (f) damage to CONTRACTOR or another subcontractor, (g) reasonable indication that the Work will not be completed within the Contract Time/CONTRACTOR's Progress Schedule, (h) unsatisfactory or untimely prosecution of

Initial _____ PK    Initial _____ BLA    **Alterations to this Agreement are Prohibited**    Page 28 of 38

Sub    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

the Work by the SUBCONTRACTOR, or (i) any failure by the SUBCONTRACTOR to comply with the Contract Documents. Items (a) – (i) shall be grounds for default under this Agreement as well. Independent of any other right hereunder, CONTRACTOR may deduct from any payments due or to become due SUBCONTRACTOR amounts equal to any claims asserted against SUBCONTRACTOR in connection with SUBCONTRACTOR's Work on this Project or on any other Project including, but not limited to, lien claims, bond claims, unpaid bills, defective work, incomplete work, and damage to the work of CONTRACTOR. When the basis for disapproval or withholding has been remedied, the SUBCONTRACTOR shall be paid the amounts withheld.

**9.5     JOINT CHECK PAYMENTS.** CONTRACTOR reserves the right to pay any obligations of SUBCONTRACTOR arising on this Project by checks made payable jointly or directly to SUBCONTRACTOR and/or its suppliers or its SUBCONTRACTORs, with any amounts so paid reducing the balance due SUBCONTRACTOR. Joint or direct payments made by CONTRACTOR do not relieve SUBCONTRACTOR of any obligation under this Subcontract.

**9.6     WAIVER OF CLAIMS.** Final payment shall constitute a waiver of all claims by SUBCONTRACTOR relating to Subcontract Work, but shall in no way relieve SUBCONTRACTOR of any liability to CONTRACTOR, including liability for warranties, or for nonconforming or defective work discovered after final payment.

## 10)     INDEMNITY.

**10.1**     The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, Architect, Engineer, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work, or any breach of or failure to comply with any of the provisions of this SUBCONTRACT or the Contract Documents by SUBCONTRACTOR.

**10.2**     The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work (regardless of cause or of any concurrent or contributing fault or negligence of CONTRACTOR, Owner, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of this Subcontract or the Contract Documents by SUBCONTRACTOR. The SUBCONTRACTOR's indemnification obligation to CONTRACTOR, Owner, and all of their agents, officers, and employees (the "Indemnitees"), for occurrences caused by the sole, contributory, or concurrent negligence of the Indemnitees shall be limited, on a per occurrence basis, to the greater of $1,000,000.00 (as prescribed by Florida Statute § 725.06), the price of this Subcontract, or the limits of liability of the insurance policies provided pursuant to this Agreement, which SUBCONTRACTOR acknowledges and agrees bears a reasonable commercial relationship to this Subcontract.

**10.3**     SUBCONTRACTOR and its surety, if any, hereby agrees to defend, indemnify, and hold harmless CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives from any loss or damage and to reimburse CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives for any and all claims, costs, and expenses, including but not limited to attorneys' fees, legal fees, expert witness fees, and court costs that CONTRACTOR, CONTRACTOR's surety and/or Owner may incur because of:

**10.3.1**  Claims and liens for labor performed or materials used or furnished through or under SUBCONTRACTOR for the Project;

**10.3.2**  any personal injury, loss, damage or death to any person or persons and any property damage arising out of the performance or nonperformance of Work required in this Subcontract, including, without limitation, any personal injury or loss, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, SUBCONTRACTOR's indemnity hereunder shall not arise if such injury, loss, damage or death results from the gross negligence or willful, wanton or intentional misconduct of a party indemnified hereunder;



Initial _____   Initial _____          **Alterations to this Agreement are Prohibited**          Page 29 of 38
Sub                  Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**10.3.3** SUBCONTRACTOR's failure or the failure of any of its employees to comply with any law, ordinance, rule, regulation or requirement, including, but not limited to, any Occupational Safety and Health Administration violations and any penalties, including enhancements, resulting in whole or in part by SUBCONTRACTOR's acts or omissions.

**10.4** CONTRACTOR, in its sole discretion, may defend any or all of the indemnified claims or tender to SUBCONTRACTOR the defense of any or all of the indemnified claims. Upon such tender by CONTRACTOR to SUBCONTRACTOR, SUBCONTRACTOR shall be obligated to assume the defense of CONTRACTOR in the indemnified claims, including the settlement negotiations, and shall pay and satisfy any and all settlements, judgments, sanctions, awards, or expenses, including attorneys' fees, resulting from or arising out of the indemnified claims without reimbursement from CONTRACTOR.

**10.5** If CONTRACTOR tenders the defense of an indemnified claim to SUBCONTRACTOR and SUBCONTRACTOR fails or neglects to assume that defense, CONTRACTOR may compromise or settle or defend any such action, and SUBCONTRACTOR shall be bound and obligated to reimburse CONTRACTOR for the amount expended by it in settling, compromising, or defending any such claim, or in the amount expended by CONTRACTOR in paying any settlement or judgment rendered therein, together with all reasonable attorneys' fees and expenses of litigation incurred by CONTRACTOR by reason of its defense, settlement, or compromise of such indemnified claims.

**10.6** Neither final payment by CONTRACTOR nor acceptance of the Work performed by SUBCONTRACTOR shall constitute a waiver of the foregoing indemnities, and notwithstanding any other provision contained in this Subcontract, the provisions of this paragraph shall survive the termination of this Subcontract.

**10.7** In any claims by any employee of the SUBCONTRACTOR, the SUBCONTRACTOR's sub-contractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, against any persons or entities indemnified hereunder the indemnification obligation shall not be limited as to the amount or type of damages, compensation, or benefits payable by or for the SUBCONTRACTOR or the SUBCONTRACTOR's sub-contractors under Workers' Compensation acts, disability benefit acts or other employee benefit acts.

## 11) CORRECTION OF WORK, DEFAULT, AND TERMINATION.

**11.1** **CORRECTION OF WORK.** SUBCONTRACTOR shall promptly correct all of SUBCONTRACTOR's Work rejected by CONTRACTOR, Architect or Owner as defective or failing to conform to the Contract Documents, whether observed before or after Substantial Completion. SUBCONTRACTOR shall bear all costs of correcting rejected work, including compensation for Architect's or CONTRACTOR's additional services, if required.

**11.2** **FAILURE OF PERFORMANCE.** Should SUBCONTRACTOR fail to satisfy contractual deficiencies or to commence and continue satisfactory correction of any default with diligence or promptness within one (1) working day from receipt of CONTRACTOR's written notice, then CONTRACTOR, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and charge the cost thereof to SUBCONTRACTOR, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees. In the event of an emergency affecting safety of persons or property, CONTRACTOR may proceed as above without notice.

**11.3** **TERMINATION BY OWNER.** Should Owner terminate its prime agreement with the CONTRACTOR or any part which includes SUBCONTRACTOR's Work, CONTRACTOR shall notify SUBCONTRACTOR in writing within three (3) days of termination and, upon written notification, this Agreement shall be terminated and SUBCONTRACTOR shall immediately stop Subcontract Work, follow all of CONTRACTOR's instructions, and mitigate all costs. In the event of Owner termination, CONTRACTOR liability to SUBCONTRACTOR shall be limited to the extent of CONTRACTOR recovery on SUBCONTRACTOR's behalf under the prime agreement.

**11.4** **TERMINATION BY CONTRACTOR.** If SUBCONTRACTOR fails to commence and satisfactorily continue correction of a default within one (1) working day after written notification from CONTRACTOR, then CONTRACTOR may issue a second written notification, to SUBCONTRACTOR and its surety, if any. Such notice shall state that if SUBCONTRACTOR fails to commence and continue correction of a default within five (5) days of the written notification, the Agreement will be automatically terminated. CONTRACTOR may furnish those materials, equipment and/or employ such workers or replacement subcontractor(s) as CONTRACTOR deems necessary to maintain the orderly progress of



Initial _____  Initial _____    **Alterations to this Agreement are Prohibited**    Page 30 of 38

Sub                    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

CONTRACTOR's work. All costs incurred by CONTRACTOR in performing Subcontract Work, including damages, extended general conditions, liquidated damages, reasonable overhead, profit, and attorneys' fees, costs and expenses, shall be deducted from any monies due or to become due SUBCONTRACTOR. SUBCONTRACTOR shall be liable for payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount. At SUBCONTRACTOR's request, CONTRACTOR shall provide a detailed accounting of the costs to finish Subcontract Work.

## 12)    CLAIMS AND DISPUTES.

**12.1    CLAIMS RELATING TO CONTRACTOR.** SUBCONTRACTOR shall give CONTRACTOR written notice of all claims within seven (7) days of the existence of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed absolutely waived by SUBCONTRACTOR. All unresolved claims, disputes and other matters in question between CONTRACTOR and SUBCONTRACTOR shall be resolved in the manner provided in this Agreement.

**12.2    LIQUIDATED DAMAGES.** Inasmuch as SUBCONTRACTOR's failure to complete its Work within the timeframe specified herein will result in substantial injury to the Contractor and whereas damages arising from such failure cannot be calculated with any degree of certainty, it is hereby agreed that if such Subcontract Work is not substantially completed as herein defined within the time fixed herein or within such further time, if any, as shall be allowed for such performance or completion in accordance with the provisions of this Subcontract, the SUBCONTRACTOR shall pay to the Contractor, as liquidated damages for such delay and not as a penalty, One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) per day for each and every calendar day that the SUBCONTRACTOR fails to complete its Work, including all punchlist work ("CONTRACTOR's Liquidated Damages"). SUBCONTRACTOR's obligation for such liquidated damages is irrespective of, and is in no way dependent upon, whether Owner assesses liquidated damages against the Contractor or whether it is impossible to determine the degree of harm caused by SUBCONTRACTOR's delay. SUBCONTRACTOR acknowledges that its failure to timely complete its Subcontract Work will cause financial harm to Contractor irrespective of whether or not Owner assesses any liquidated damages against Contractor. This provision for liquidated damages shall in no manner affect the Contractor's right to terminate this Subcontract as provided for elsewhere in this Subcontract and other Contract Documents, and Contractor's exercise of the right to terminate shall not release the SUBCONTRACTOR from its obligation to pay said liquidated damages.

If the CONTRACTOR's agreement with the Owner provides for liquidated or other damages for delay, and such damages are assessed, CONTRACTOR may assess a share of the damages against SUBCONTRACTOR in proportion to SUBCONTRACTOR's share of responsibility for the delay. This apportionment shall be in addition to the CONTRACTOR's Liquidated Damages.

**12.3    WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, SUBCONTRACTOR shall continue Subcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. If SUBCONTRACTOR continues to perform, CONTRACTOR shall continue to make payments of amounts undisputedly owed to SUBCONTRACTOR in accordance with this Agreement.

**12.4    MULTIPARTY PROCEEDING.** The parties agree, to the extent permitted by the prime agreement, that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between CONTRACTOR and SUBCONTRACTOR involve in whole or in part disputes between CONTRACTOR and Owner, disputes between SUBCONTRACTOR and CONTRACTOR shall be decided by the same tribunal and in the same forum as disputes between CONTRACTOR and Owner, and SUBCONTRACTOR agrees to consolidation and joinder of the same.

**12.5    STAY OF PROCEEDINGS.** In the event that provisions for resolution of disputes between CONTRACTOR and Owner contained in the prime agreement do not permit consolidation or joinder with disputes of third parties, such as SUBCONTRACTOR, resolution of disputes between SUBCONTRACTOR and CONTRACTOR involving in whole or in part disputes between CONTRACTOR and Owner shall be stayed pending conclusion of any dispute resolution proceeding between CONTRACTOR and Owner.

**12.6    DIRECT DISCUSSION.** If a dispute arises out of or relates to this Agreement, the parties shall endeavor to settle the dispute through direct discussion.



Initial ___  Sub

Initial ___  Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

**12.7    MEDIATION.** Disputes between SUBCONTRACTOR and CONTRACTOR not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The parties shall select the mediator within fifteen (15) days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution.

**12.8    OTHER DISPUTE PROCESSES.** If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.

**ARBITRATION.** At the sole discretion of the CONTRACTOR or its Surety, all claims, counterclaims, disputes, and other matters in question between the CONTRACTOR or its Surety and the SUBCONTRACTOR or its Surety (if applicable) arising out of this Agreement or the breach thereof shall be decided by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining. CONTRACTOR expressly reserves its right on behalf of CONTRACTOR and its Surety to have any dispute resolved by binding arbitration, including but not limited to those initiated by SUBCONTRACTOR, in which event the parties agree that the litigation will be dismissed and the dispute will proceed in arbitration. If the CONTRACTOR or its Surety elects to submit the claims, counterclaims, disputes, and other matters in question to binding arbitration, it will give the other party notice of its intent, and the parties will proceed in accordance with the Construction Industry Rules of the American Arbitration Association. The award rendered by the arbitrator shall be final, and judgment shall be entered upon it in accordance with applicable Florida law.

**12.9    COST OF DISPUTE RESOLUTION.** The cost of any mediation proceeding shall be shared equally by the parties participating. Additionally, the parties agree to bear their own attorneys' fees and costs for any dispute arising out of this Agreement and/or the Project and knowingly, voluntarily, and intentionally and expressly waive and relinquish any and all statutory or other rights to recover attorney's fees' or costs from CONTRACTOR, its Surety, if any, and Owner for any dispute arising out of this Agreement and/or the Project.

**13)    NO PRESUMPTION AGAINST DRAFTER.** The Parties expressly agree that they freely and voluntarily enter into this Agreement and have had the opportunity to obtain assistance of legal counsel of their choice in reviewing its terms prior to execution. The Parties acknowledge and agree that no rule of construction applies to the disadvantage of a party because that party was responsible for the preparation of this Subcontract or part of it.

**14)    MISCELLANEOUS PROVISIONS.**

**14.1**    If required for this Subcontract, pursuant to Executive Order 11-02 signed by the Florida Governor on January 4, 2011 and other applicable law, SUBCONTRACTOR will utilize the E-verify system, established by the U.S. Department of Homeland Security to verify the employment eligibility of its employees and any of its subcontractors assigned to perform work on the Project. This, when required, is a continuing obligation that applies throughout the duration of the Project, and SUBCONTRACTOR acknowledges that any additional personnel, not previously verified, that may be assigned to the Project will be subject to the aforementioned E-verification. Results of the E-verification will be provided to CONTRACTOR and remain in the SUBCONTRACTOR's project records for review by CONTRACTOR and/or Owner as requested. Additionally, SUBCONTRACTOR shall certify to CONTRACTOR by affidavit that the SUBCONTRACTOR has verified through the E-verify system the employment status of each employee assigned to work on the Project. SUBCONTRACTOR shall be responsible for including this provision in all its' subcontracts issued as a result of this Subcontract.

**14.3**    The SUBCONTRACTOR has no power to assign its rights or duties under this Subcontract. The parties expressly acknowledge that in selecting the SUBCONTRACTOR, the CONTRACTOR considered various factors, including but not limited to the SUBCONTRACTOR's reputation, quality of work, and capacity to perform. SUBCONTRACTOR specifically agrees not to assign, sell, or transfer any accounts receivables under this Subcontract to any third-party factoring company or related business. NEITHER THE OWNER NOR THE CONTRACTOR SHALL BE LIABLE TO ANY THIRD PARTIES FOR PAYMENT OF ANY ASSIGNED ACCOUNTS RECEIVABLES.

**14.4**    By acceptance of this Subcontract, SUBCONTRACTOR guarantees its prices contained herein for the duration of the Project, through the date of Final payment by the Owner. The SUBCONTRACTOR expressly agrees that external conditions outside the control of SUBCONTRACTOR, including but not limited to materials shortages and price escalations, have been accounted for in the Contract price and shall not constitute the basis for a time extension or a claim for additional compensation of any type.



Initial [PK]    Initial [BLA]    **Alterations to this Agreement are Prohibited**    Page 32 of 38
Sub          Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

**14.5**    This Contract is specifically intended to be for the benefit of the Owner. The Owner may maintain an action for breach of this Subcontract. However, SUBCONTRACTOR is not an intended third-party beneficiary of the Agreement between Owner and CONTRACTOR.

**14.6**    No right or remedy in this Subcontract is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.

**14.7**    The obligations of the CONTRACTOR and SUBCONTRACTOR under this Subcontract are expressly conditioned upon the CONTRACTOR's successfully entering into a contract with the Owner for the Project. If the Owner shall decline for any reason whatsoever to enter into a contract with the CONTRACTOR for the Project, then this Subcontract shall automatically become null and void and CONTRACTOR and SUBCONTRACTOR shall be discharged from their respective obligations hereunder. Further, in such event, CONTRACTOR shall have no liability of any kind to SUBCONTRACTOR including, without limitation, cancellation charges.

**14.8**    If applicable, the Owner may choose to directly purchase materials as a tax exempted entity as defined by the IRS and the State of Florida, and if this option is available to the Owner and the Owner decides to use this option, the SUBCONTRACTOR will be notified and shall comply with the Owner Direct Purchase program by providing a credit for the material being purchased directly including the sales tax attributable thereto.

**14.9**    The nondiscrimination clauses contained in Section 202 of Executive Order 11246, as amended; Section 402 of the Vietnam Era Veteran's Readjustment amended, relative to equal opportunity for all persons within regard to race, color, religion, sex national origin, handicapped, Vietnam Era or disabled veteran and the implementing rules and regulations prescribed by the Secretary of Labor are incorporated herein.

**15)    SUBCONTRACTOR'S WAIVER OF JURY TRIAL.** The SUBCONTRACTOR and its Surety expressly and voluntarily waive all rights to a jury trial in any claim or dispute arising from the Subcontract, the Project, and/or any associated Bond(s).

CONTRACTOR: Portrait Construction of Florida

BY: _Bruce L. Abbey President_

PRINT NAME:  Bruce L. Abbey President

PRINT TITLE:  President

DATE:  6/9/2021

WITNESS:

SUBCONTRACTOR: Barrios Roofing & Waterproofing LLC

BY: _Peter Reca_

PRINT NAME:  Peter Reca

PRINT TITLE:  Managing Partner

DATE:  6/9/2021

WITNESS:

Initial PR   Initial BLA      **Alterations to this Agreement are Prohibited**      Page 33 of 38
Sub            Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

# EXHIBIT A
# SCHEDULE OF VALUES



Initial
Sub

Initial
Contractor

**Alterations to this Agreement are Prohibited**

Page 34 of 38

**Standard Short Form Agreement Between Contractor and Subcontractor**

# EXHIBIT B
# INSURANCE REQUIREMENTS

**INSURANCE.** Prior to commencement of its Work, the SUBCONTRACTOR shall furnish to CONTRACTOR policies of insurance and appropriate certificates evidencing that the below described insurance is in force and fully paid. All insurance policies and certificates provided for hereunder shall become a part of this Subcontract and the policies and insurance company issuing same must be acceptable to CONTRACTOR. The SUBCONTRACTOR shall purchase and maintain insurance of the following types of coverage and limits of liability:

A.  Commercial General Liability (CGL) with limits of insurance not less than $1,000,000 each occurrence and $2,000,000 annual aggregate.
   i.   If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.
   ii.  No Residential Exclusion under GL Policy. No Exterior Insulation Finishing System (EIFS) under GL Policy for Subcontractors doing Exterior Walls.
   iii. CGL coverage shall be written on ISO Occurrence Form CG 00 01 1093 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, explosion, collapse and underground (XCU), broad-form property damage and personal injury, products-completed operations, and personal and advertising injury.
   iv.  CONTRACTOR, Owner, and all other parties required by the CONTRACTOR and/or by the Owner Contract, shall be included as additional insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85 or an endorsement providing equivalent coverage to the additional insureds. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured SUBCONTRACTOR. It shall apply as Primary Insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured.
   v.   SUBCONTRACTOR shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 10 years after completion of the Work.
   vi.  Thirty (30) day notice of written cancellation
   vii. Waivers of Subrogation (applicable to property, auto, liability and workers compensation – in favor of Portrait Construction of Florida and the Owner) The CONTRACTOR and SUBCONTRACTOR waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, Architect, Architect's consultants, separate contractors, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

B.  Automobile Liability
   i.   Business Auto Liability with limits of at least $1,000,000 each accident.
   ii.  Business Auto coverage must include coverage for liability arising out of all owned, leased, hired and non-owned automobiles.
   iii. CONTRACTOR, Owner and all other parties required of the CONTRACTOR shall be included as additional insureds on the auto policy.

C.  Commercial Umbrella
   i.   Umbrella limits must be at least $3,000,000.
   ii.  Umbrella coverage must include as insureds all entities that are additional insureds on the GL and Automobile.
   iii. Umbrella coverage for such additional insureds shall apply as primary before any other insurance or self-insurance, including any deductible, maintained by, or provided to the additional insured other than the CGL, Auto Liability and Employers Liability coverages maintained by the Subcontractor.

D.  Workers Compensation and Employers Liability
   i.   Employers Liability Insurance limits of at least $1,000,000 each accident for bodily injury by accident and $1,000,000 each employee for injury by disease.
   ii.  If you lease employees, you must have a minimum premium worker's compensation policy.
   iii. If you lease employees, an alternate employer endorsement for worker's compensation is required.
   iv.  If you lease employees, a Leased Employee Affidavit must be filled out. (See Exhibit of Contract)

Portrait Construction of Florida insurance requirements must be met (this includes an installation floater). In the event that materials under your contract are stolen/damaged while on the jobsite, you will be responsible for the replacement of these materials at your expense. If Portrait Construction of Florida and/or the Owner utilizes the builders risk policy for stolen/damaged materials that are under your subcontract, you will be responsible for reimbursing the CONTRACTOR or owner for the policy deductible of $5,000.00.

Initial _PR_    Initial _BLA_    **Alterations to this Agreement are Prohibited**    Page 35 of 38
Sub           Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

Certificates of insurance acceptable to the CONTRACTOR shall be filed with the CONTRACTOR prior to commencement of the SUBCONTRACTOR's Work. Attached to each Certificate of Insurance shall be a copy of the Additional Insured Endorsement that is part of the SUBCONTRACTOR's Commercial General Liability, Auto and Umbrella Policies. CONTRACTOR's receipt of SUBCONTRACTOR's proof of insurance as required above at the beginning of the Project, and at any other time that the insurance required by the Contract Documents is required to be in place, is an express condition precedent to Subcontractor's right to commence work and SUBCONTRACTOR's right to payment at any time.

Coverages, written on an occurrence basis, shall be maintained without interruption from date of commencement of the SUBCONTRACTOR's Work until two years after the project completion date.

These certificates and the insurance policies shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the CONTRACTOR. If any of the foregoing insurance coverages are required to remain in force after final payment, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment. If SUBCONTRACTOR receives notice that any of its insurance carriers intend to cancel, non-renew, or materially change any of the policies required to be maintained by the Subcontract for any reason, it must immediately give written notice of the same to CONTRACTOR. Furthermore, if SUBCONTRACTOR cancels, non-renews, or materially changes any of the policies required to be maintained by the Subcontract for any reason, it must give written notice to CONTRACTOR thirty (30) days in advance of such changes becoming effective. SUBCONTRACTOR's failure at any time to have insurance coverage of the types and amounts listed herein is a material breach of contract and a default justifying termination of this Subcontract.

SUBCONTRACTOR waives all rights against CONTRACTOR, Owner and Architect and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by SUBCONTRACTOR's commercial general liability, commercial umbrella liability, business auto liability or worker's compensation and employer's liability insurance maintained per requirements stated above.

It is expressly agreed and understood by and between SUBCONTRACTOR and CONTRACTOR that all insurance, whether issued on a primary or excess basis, afforded the additional insureds shall be primary insurance to any other insurance available to CONTRACTOR and that any other insurance carried by CONTRACTOR shall be excess of all other insurance carried by the SUBCONTRACTOR and shall not contribute with the SUBCONTRACTOR's insurance. SUBCONTRACTOR further agrees to provide endorsements on its insurance policies that shall state the foregoing; however, SUBCONTRACTOR's failure to provide such endorsement shall not affect SUBCONTRACTOR's agreement hereunder.

It is understood and agreed that the insurance coverage and limits required herein shall not limit the extent of SUBCONTRACTOR's responsibilities and liabilities specified within the Contract Documents or by law. Equivalent insurance coverage must be obtained from each Sub-subcontractor and Supplier, if any, before permitting them on the site of the Project. Otherwise, such insurance for Sub-subcontractor and Supplier must be included within SUBCONTRACTOR's insurance policies.

The CONTRACTOR and SUBCONTRACTOR waive all rights against each other and against the Owner, the Architect/Engineer, separate contractors, and all other subcontractors for damages caused by fire or other perils to the extent covered by Builder's Risk or any other property insurance, except such rights as they may have to the proceeds of such insurance.

**Below is a checklist of all Insurance Requirements as stated in the Sub-Subcontract. A Sample COI follows.**
GENERAL LIABILTIY

- Liability Limits $1,000,000/$2,000,000
- Per Project Aggregate
- Include Primary Non-Contributory Coverage
- List as Additional Insured and Include in Waiver of Subrogation in favor of: (including Completed Operations) and must include copy of endorsement to the policy.
  - Portrait Construction of Florida
  - Owner
  - Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address – Must include a copy of endorsement to the policy
- Confirmation no Residential exclusion - MUST INCLUDE COPY OF FORMS PAGE FROM POLICY

AUTOMOBILE

- Liability Limits $1,000,000
- Portrait Construction of Florida & Owner listed as Additional Insured
- Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address



Initial _____  Initial _____    **Alterations to this Agreement are Prohibited**    Page 36 of 38
Sub             Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

### WORKERS COMPENSATION

- Limits - $1,000,000/$1,000,000/$1,000,000
- Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address

### UMBRELLA

- Limit of Liability - $3,000,000
- Verify box "OCCUR" and "UMB" boxes are checked
- Portrait Construction of Florida & Owner listed as Additional Insured
- Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address

### INSTALLATION FLOATER (If required by CONTRACTOR)

- Special Form-(All Risk)
- Limit listed in amount of initial subcontract

Initial _PR_ Initial _BLA_
Sub        Contractor

**Alterations to this Agreement are Prohibited**        Page 37 of 38

**Standard Short Form Agreement Between Contractor and Subcontractor**

**ACORD** | **CERTIFICATE OF LIABILITY INSURANCE**

| PRODUCER | THIS CERTIFICATION IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

SAMPLE

| INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: SAMPLE | |
| INSURER B: SAMPLE | |
| INSURER C: SAMPLE | |
| INSURER D: SAMPLE | |
| INSURER E: SAMPLE | |

INSURED
SAMPLE
123 Anywhere Street
Anywhere, Anystate 00000-0000

**COVERAGES**

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADDL INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | X | GENERAL LIABILITY | POLICY # | 00/00/0000 | 00/00/0000 | EACH OCCURRENCE | 1,000,000 |
| | | X COMMERCIAL GENERAL LIABILITY | | | | DAMAGE TO RENTED PREMISES | 80,000 |
| | | CLAIMS MADE X OCCUR | | | | MED EXP (Any one person) | 5,000 |
| | X | Included Residential | | | | PERSONAL & ADV INJURY | 1,000,000 |
| | | | | | | GENERAL AGGREGATE | 2,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY X PRO-JECT LOC | | | | PRODUCTS - COMP/OP AGG | 2,000,000 |
| B | X | AUTOMOBILE LIABILITY | POLICY # | 00/00/0000 | 00/00/0000 | COMBINED SINGLE LIMIT (Ea accident) | 1,000,000 |
| | | ANY AUTO | | | | | |
| | | ALL OWNED AUTOS | | | | BODILY INJURY (Per person) | |
| | | SCHEDULED AUTOS | | | | | |
| | X | HIRED AUTOS | | | | BODILY INJURY (Per accident) | |
| | X | NON-OWNED AUTOS | | | | PROPERTY DAMAGE (Per accident) | |
| | | GARAGE LIABILITY | | | | AUTO ONLY - EA ACCIDENT | |
| | | ANY AUTO | | | | OTHER THAN EA ACC / AUTO ONLY AGG | |
| C | X | EXCESS/UMBRELLA LIABILITY | POLICY # | 00/00/0000 | 00/00/0000 | EACH OCCURRENCE | 1,000,000 |
| | X | OCCUR CLAIMS MADE | | | | AGGREGATE | 1,000,000 |
| | X | DEDUCTIBLE RETENTION $ 0 | | | | | |
| D | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | POLICY # | 00/00/0000 | 00/00/0000 | X WC STATU-TORY LIMITS / OTH-ER | |
| | | | | | | E.L. EACH ACCIDENT | 1,000,000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | 1,000,000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | 1,000,000 |
| E | | OTHER Installation Floater | POLICY # | 00/00/0000 | 00/00/0000 | Limit must be in the amount of materials brought to the jobsite | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS

Re Project. Pursuit Construction of Florida, Inc. Owner, its directors, officers, agents, employees and consultants are named as Additional Insureds for Ongoing & Completed Operations Per CG 2010 1185 or equivalent with regard to Auto Liability, Waiver of Subrogation in favor of additional insureds with regard to General Liability, Auto Liability, Umbrella Liability & Workers Compensation. Products and Completed Operations Coverage shall remain in effect two years after the date of completion. All coverage must be endorsed to provide 30 days prior written notice of cancellation. material change or non-renewal and include Primary & Non-Contributory coverage. *Residential coverage included all policies.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Pursuit Construction of Florida, Inc. 2452 Lake Emma Road, Ste 1040 Lake Mary, FL 32746 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL ___ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08)

© ACORD CORPORATION 1988

Initial **PR**   Initial **BLA**   **Alterations to this Agreement are Prohibited**   Page 38 of 38
Sub        Contractor

# EXHIBIT D

DocuSign Envelope ID: 5C42C17E-DFC9-4FED-88DB-71E08A116423



# ADDITIONAL PROVISIONS TO THE SUBCONTRACT AGREEMENT

## HUD PROVISIONS:

1) All parties hereby agree that SUBCONTRACTOR assures that either he or an authorized representative of his company will attend all jobsite meetings as established by CONTRACTOR's supervisory staff unless their presence is not requested by CONTRACTOR. In the event a representative shall represent SUBCONTRACTOR at these meetings, said representative shall be able to make binding commitments on all matters to be discussed at such meetings, including cost, payments, change orders, time schedules and manpower requirements. Further, financial penalties per meeting will be imposed if SUBCONTRACTOR or SUBCONTRACTOR's representative is not present at these meetings. The following person(s) are designated as SUBCONTRACTOR's representatives having the authority as stated herein.

Subcontractor Designated Representative: _____ Brian Farr _____

(Optional Representative) _____ N/A _____

Subcontractor Certified Payroll Contact & Phone #  _____ Tiffany Moore 321-444-6446 _____

2) Requirement of, per US Department of Housing and Urban Development, HUD 92442-A, SUBCONTRACTOR waives right to file a mechanic's or materialman's lien or maintain any claim against improvements for or on account of any work done, labor performed or materials furnished under this Subcontract agreement.

3) SUBCONTRACTOR agrees to send Certified HUD payroll sheets in weekly for this Subcontract Agreement. (Through Elations.com: 8887-35564-Futura @ Nona Cove)

4) Before work commences, the SUBCONTRACTOR shall enroll in Futura at Nona Cove's Owner Controlled Insurance Policy with Willis Towers Watson with the contact listed below:

> Janice McNary, CISR
> OCIP Administrator, Construction Practice
> Willis Towers Watson
> 3407 W. Dr. Martin Luther King Blvd.
> Lakeside Suite #200
> Tampa, FL 33607
> Mobile: 813-450-9854
> Janice.mcnary@willistowerswatson.com
> www.willistowerswatson.com

5) It is fully understood that SUBCONTRACTOR will be responsible for keeping its part of the job clean and in an orderly fashion subject to the approval of CONTRACTOR and ARCHITECT. Further, SUBCONTRACTOR shall be totally responsible for the clean up on a daily basis of all debris generated by SUBCONTRACTOR's daily operations. Should it become necessary for CONTRACTOR to incur any expenses performing cleanup work or removing debris from site for SUBCONTRACTOR, such expense will be deducted from SUBCONTRACTOR's contract amount.

6) All work shall be in accordance with Project Plans and Specifications.

7) Project Includes Davis Bacon Wages rates, see attached at end of Contract.

# Standard Short Form Agreement Between Contractor and Subcontractor

This Agreement is made this 26th day of August, 2021 by and between

**GENERAL CONTRACTOR:**                              **SUBCONTRACTOR:**
Portrait Construction of Florida, Inc.                BFARR Exteriors
2452 Lake Emma Rd. #1040                              3500 Aloma Ave. Ste C6
Lake Mary, Florida 32746                              Winter Park, Florida 32792
Phone: (407) 831-6275                                 Phone: (321) 444-6446

PROJECT:      Futura at Nona Cove

OWNER:        LN Apartments, LLC

ARCHITECT:    Charlan Brock & Associates

ENGINEER:     Z Development Services

## TERMS:

**SUBCONTRACTOR'S WORK.** SUBCONTRACTOR agrees to provide and complete all Work ("Work") required of it under the Contract Documents, including, but not limited to, all labor, services, materials, installation, clean-up, hoisting, supplies, insurance equipment, scaffolding, tools, and other facilities of every kind required for the prompt and efficient performance of all Exterior Cladding. The Work is per the Drawings and Specifications in strict accordance with the Contract Documents. SUBCONTRACTOR shall give timely notices to authorities pertaining to subcontract Work and shall be responsible for all permits, fees, licenses, assessments, inspections, testing and taxes necessary to complete subcontract Work.

**SUBCONTRACT AMOUNT.** CONTRACTOR agrees to pay SUBCONTRACTOR for satisfactory and timely performance and completion of subcontract Work: $1,626,782.00

Retainage shall be ten percent (10.0%).

## SCOPE:

Scope of Work: Weather Barriers/Stucco/Siding/Soffits & Fascia

1. Prior to the start of work this subcontractor shall hold a pre-construction meeting with the Portrait Construction (PC) superintendent to review all contract scope of work, submittals, safety procedures, sequencing and durations of the work, and coordination with other trades. Meeting is to be attended by Subcontractor's site supervisor who is to be responsible for maintaining all jobsite work and safety requirements.
2. Provide all supervision, labor, equipment & scaffolding to furnish and install all building wrap, flashings (flexible/metal), stucco, veneer stone, James Hardie vented soffit, fascia, and siding/trim for all buildings as shown to complete a turnkey contract as per plans, specifications and per manufacturers recommendations and instructions. Includes one (1) five (5) story apartment buildings, integral clubhouse, trash compactor and garage.
3. Subcontract is responsible for daily cleanup of any material or debris caused by this scope of work. Work area is to be left organized of material and equipment daily.

Initial [BFJ]    Initial [BLA]          Alterations to this Agreement are Prohibited          Page 2 of 42
Sub              Contractor

DocuSign Envelope ID: 5C4DD17E-DFC9-4FED-8B0E-71E99A11B4ED

## Standard Short Form Agreement Between Contractor and Subcontractor

4. Install building wrap, window back dams, window tape, flexible flashing and head flashing per manufacturer's recommendation and PC's direction. Repair rips or tears before installation of exterior wall coverings to provide a watertight installation. All joints in building wrap to be taped. Window back damn/shim material is included. Includes additional piece of building wrap at all siding butt-joints.

5. Subcontractor includes early mobilizations to install James Hardie Fascia as required for the dry in process.

6. Mockups shall be required for clarification of details associated with the installation, flashing, etc. Mockups will be onsite for coordination purposes and final selections as directed by PC.

7. Flexible flashings / self-adhered membrane at all outside corners, penetrations and windows shall be installed per plans. PVC blocks and Quick Flashing are not included.

8. Building Felt shall be Grade D 60-minute paper.

9. Lath shall be hot dipped galvanized, self-furring 2.5 lb. for vertical locations and 3.4 lb. at horizontal locations.

10. Metal flashings included but not limited to windows / doors head flashing and all flashings shown in CBA's plans dated June 16th, 2020.

11. Accessories shall be PVC and include but not limited to corner beads, casing boards, control joints, expansion joints and weep screeds. Stucco control joints to be embedded in sealant and installed where needed whether indicated on the plans or not and as required by manufacturer recommendations.

12. Stucco shall be 7/8" thick at all framed areas & 5/8" thick at all CMU / concrete areas. Stucco finish as specified on plans, sand float & textured. Stucco to be fogged or wet cured per manufacturer recommendations and logged accordingly.

13. Stucco in hardscape areas is included per plans and specifications.

14. Subcontractor to install "L" flashing at parapet roof detail before installation of stucco in these areas. Metal flashing cap by others.

15. All James Hardie lap siding, trim and smooth panel siding is included as shown.

16. Includes all decorative brackets and banding.

17. Includes all sill flashing, peel-n-stick, head flashing, etc. at material transitions.

18. All soffit to receive 2x2 PT nailer.

19. Protect all adjacent surfaces including windows, glass, doors, roofs, or equipment. Notify PC of any damaged surface prior to starting any stucco work. Immediately clean any droppings from finished surfaces being extremely careful when removing any stucco from the windows and frames.

20. All punch work to be completed prior to removing any scaffolding. Allow MBC to inspect work prior to removing any scaffolding for final acceptance.

21. Subcontractor will notify the project superintendent to perform a building dry-in inspection prior to covering the building with siding trim boards and/or stucco lath-felt paper.

22. Includes stucco at elevator door openings in garage and garage CMU areas.

23. Includes separate crew/scaffolding for courtyard areas. If necessary other trades to use the scaffolding for a mutually agreed upon time frame.

24. If necessary, provide scaffold with screening or other means to protect damage to adjacent areas. Scaffold to be secured to building as required.

25. If subcontractor is delayed in performing his work, he is to notify PC immediately in order to minimize schedule impact.

26. Subcontract shall participate in 'Design-Assist' work. It is the subcontractor's responsibility to ensure plans are complete and accurate throughout the Design-Assist process. Unless specifically stated above there shall be no change orders for work required by any AHJ requirement, inconsistencies in plans or errors and omissions. This subcontractor can only claim a change order in the event of an owner/contractor directed change in scope.

27. Complete the enclosed Application for Payment and submit by the 15th of every month. You may project your work in place through the 25th.

28. Subcontractor includes simultaneous work progress on two building sections at a time, staggered.


**DURATION:**



Initial [DFJ]    Initial [BLA]

Sub        Contractor

Alterations to this Agreement are Prohibited

## Standard Short Form Agreement Between Contractor and Subcontractor

1) **CONTRACT DOCUMENTS** The "Contract Documents" include 1) this Subcontract Agreement and all documents attached hereto as Exhibits; 2) all documents which comprise the Contract between the Owner and CONTRACTOR; 3) all General Conditions, Supplementary Conditions and other conditions applicable to the Project; 4) the Plans and Drawings prepared for the Project; 5) the Project Manual or Specifications, including but not limited to Specification Divisions 1 through 16; 6) all bulletins and addenda issued in connection with the Project; 7) all standards, requirements or conditions incorporated into the Contract Documents by reference; and 8) any amendments, modifications, or changes to any or all of those documents identified in (1) – (7) which may occur during the Project. No other documents except those identified herein shall be considered Contract Documents. In the event of conflict, inconsistencies, variations between the provisions of the Subcontract Agreement and any other Contract Documents, including the Contract between the Owner and CONTRACTOR, the Subcontract Agreement shall govern. SUBCONTRACTOR and its sub-subcontractors and suppliers shall be bound to CONTRACTOR by all of the provisions of the Contract Documents and shall strictly comply therewith. In all respects. SUBCONTRACTOR shall perform Subcontract Work under the general direction of CONTRACTOR and shall cooperate with CONTRACTOR so CONTRACTOR may fulfill obligations to Owner. A. This subcontractor agrees to specifically adhere to the requirements of Division 00 and 01 of the specifications. As the CONTRACTOR and SUBCONTRACTOR have been party to the design and engineering of the project, they have a thorough knowledge of the Contract Documents. Therefore, the SUBCONTRACTOR accepts full responsibility for the completeness and coordination of its scope of Work as to ensure quality installation and product. Any material, assembly, device, detail, component, and/or means/method which may not necessarily be shown on the Contract Documents but is required to make the project complete and suitable for its intended purpose shall be the SUBCONTRACTOR's sole responsibility without any adjustment to the subcontract amount.

**1a) Drawing Log**

| Discipline | Drawing No. | Drawing Title | Revision | Drawing Date |
|---|---|---|---|---|
| FUTURA AT NONA COVE 10.15.18 | | | | |
| Civil | C0 | CIVIL DATA AND NOTES SHEET | 3 | 8/15/2020 |
| Civil | C1.0 | OVERALL SITE PLAN | 2 | 8/15/2020 |
| Civil | C1.1 | DEMOLITION PLAN | 2 | 8/15/2020 |
| Civil | C2.0 | SITE DIMENSION PLAN | 3 | 8/15/2020 |
| Civil | C2.1 | EMERGENCY & SOLID WASTE AUTO TURN ANALYSIS | 2 | 8/15/2020 |
| Civil | C3.0 | SITE UTILITY PLAN | 6 | 8/15/2020 |
| Civil | C4.0 | GRADING AND DRAINAGE PLAN | 2 | 8/15/2020 |
| Civil | C4.1A | CIVIL DATA AND NOTES SHEET | 1 | 8/15/2020 |
| Civil | C4.1B | GRADING DETAILS | 1 | 8/15/2020 |
| Civil | C4.1C | GRADING DETAILS | 1 | 8/15/2020 |
| Civil | C4.2 | COURTYARD & POOL AREA GRADING PLANS | 1 | 8/15/2020 |
| Civil | C4.3A | PRECAST SCREEN WALL DETAILS | 1 | 8/15/2020 |
| Civil | C4.3B | PRECAST SCREEN WALL DETAILS | 1 | 8/15/2020 |
| Civil | C4.3C | PRECAST SCREEN WALL DETAILS | 1 | 8/15/2020 |
| Civil | C5.0 | SWPP PLAN | 3 | 8/15/2020 |
| Civil | C6 | CONSTRUCTION DETAILS | 4 | 8/15/2020 |
| Civil | C7 | OUC STANDARD DETAILS | 2 | 8/15/2020 |
| Civil | C8 | OUC DETAILS/CITY OF ORLANDO STANDARD NOTES | 4 | 8/15/2020 |
| Civil | C9 | OUC SEWER STANDARD DETAILS | 2 | 8/15/2020 |
| Civil | CV | COVER SHEET | 2 | 5/26/2020 |
| Radon | R1.0 | UNITS S1-A2 | 0 | 11/15/2019 |
| Radon | R2.0 | UNITS A3 - B1 | 0 | 11/15/2019 |
| Radon | R3.0 | UNITS B2 - C1 | 0 | 11/15/2019 |
| Radon | R4.0 | UNITS C1-C2 | 0 | 11/15/2019 |
| Radon | R5.0 | CLUBHOUSE | 0 | 11/15/2019 |
| Architectural | A0.01 | PROJECT COVER SHEET | 5 | 7/31/2020 |
| Architectural | A0.02 | PROJECT INDEX OF DRAWINGS | 11 | 8/12/2020 |
| Architectural | A0.02a | DESIGN ASSUMPTIONS | 1 | 5/16/2019 |



Initial _____   Initial _____
Sub            Contractor

Alterations to this Agreement are Prohibited          Page 4 of 42

DocuSign Envelope ID: 3C4703 7F-0FD4-4FEC-B0CE-71EEBA1004E3

## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Architectural | A0.03 | PROJECT INDEX OF DRAWINGS | 6 | 7/31/2020 |
| Architectural | A0.04 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.05 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.06 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.07 | PROJECT DATA SHEET | 1 | 7/31/2020 |
| Architectural | A0.08 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.10 | ARCHITECTURAL SITE PLAN | 4 | 7/31/2020 |
| Architectural | A0.11 | OVERALL BUILDING FIRST FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.12 | OVERALL BUILDING SECOND FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.12 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.21 | OVERALL CLUBHOUSE OCCUPANCY PLAN | 4 | 7/31/2020 |
| Architectural | A0.31 | FIRST FLOOR SEQUENTE PLAN | 2 | 7/31/2020 |
| Architectural | A0.32 | SECOND FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.30 | UPPER FLOORS SEQUENCE PLANS | 5 | 7/31/2020 |
| Architectural | A0.41 | OVERALL BUILDING GROUND FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.42 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.43 | OVERALL BUILDING SIXTH FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.44 | OVERALL BUILDING TYPICAL ROOF LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A1.00 | OVERALL BUILDING SLAB CONTROL PLAN | 3 | 7/31/2020 |
| Architectural | A1.01 | OVERALL BUILDING FIRST FLOOR CONTROL PLAN | 5 | 7/31/2020 |
| Architectural | A1.02 | OVERALL BUILDING SECOND FLOOR CONTROL PLAN | 5 | 7/31/2020 |
| Architectural | A1.02 | OVERALL BUILDING THIRD FLOOR CONTROL PLAN | 5 | 7/31/2020 |
| Architectural | A1.04 | OVERALL BUILDING FOURTH FLOOR CONTROL PLAN | 5 | 7/31/2020 |
| Architectural | A1.05 | OVERALL BUILDING FIFTH FLOOR CONTROL PLAN | 5 | 7/31/2020 |
| Architectural | A1.06 | OVERALL BUILDING ROOF CONTROL PLAN | 5 | 7/31/2020 |
| Architectural | A1.11A | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11B | PARTIAL FIRST FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.11C | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11D | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11E | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11F | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12A | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12B | PARTIAL SECOND FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.12C | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12D | PARTIAL SECOND FLOOR BUILDING PLAN | 3 | 7/31/2020 |
| Architectural | A1.12E | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12F | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13A | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13B | PARTIAL THIRD FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.13C | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13D | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13E | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13F | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14A | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14B | PARTIAL FOURTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.14C | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14D | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14E | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14F | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15A | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |



DocuSign Envelope ID: 1DC2G17E-DFCV-4FED-9A9B-7TEB8A119452

## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Architectural | A1.15B | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.15C | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.15D | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.15E | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.15F | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.16A | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16B | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16C | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16D | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16E | PARTIAL ROOF PLAN BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.16F | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.21 | FIRST FLOOR GARAGE PLAN | 7 | 7/31/2020 |
| Architectural | A1.22 | SECOND FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.23 | THIRD FLOOR GARAGE PLAN | 7 | 7/31/2020 |
| Architectural | A1.24 | FOURTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.25 | FIFTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.26 | SIXTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.27 | ROOF LEVEL GARAGE PLAN | 5 | 7/31/2020 |
| Architectural | A1.28 | ROOF LEVEL GARAGE SLAB PLAN | 5 | 7/31/2020 |
| Architectural | A2.01 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.02 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.03 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.04 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.05 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.06 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.07 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.08 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.09 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.11 | PARTIAL ENLARGED BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A3.11 | TYPICAL CLUB BUILDING SECTION | 1 | 7/31/2020 |
| Architectural | A3.21 | TYPICAL GARAGE BUILDING SECTION | 2 | 7/31/2020 |
| Architectural | A4.01 | UNIT S1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02 | UNIT A1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02A | UNIT A1 PLAN | 2 | 7/31/2020 |
| Architectural | A4.03 | UNIT A2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.04 | UNIT A3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.05 | UNIT B1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.06 | UNIT B2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.07 | UNIT B3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.08 | UNIT C1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.21 | CLUB PLAN FIRST FLOOR DIMENSIONS | 7 | 8/12/2020 |
| Architectural | A4.22 | CLUB PLAN SECOND FLOOR DIMENSIONS | 5 | 7/31/2020 |
| Architectural | A4.23 | CLUB PLAN FIRST FLOOR NOTES | 5 | 8/12/2020 |
| Architectural | A4.24 | CLUB PLAN SECOND FLOOR NOTES | 5 | 7/31/2020 |
| Architectural | A4.25 | ENLARGED MAIL ROOM | 1 | 7/31/2020 |
| Architectural | A4.31 | ENLARGED GARAGE PLANS | 4 | 7/31/2020 |
| Architectural | A4.32 | ENLARGED CLOSET PLANS | 2 | 7/31/2020 |
| Architectural | A4.33 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.34 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.35 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.36 | ENLARGED TRASH AND RECYCLING PLANS | 2 | 7/31/2020 |
| Architectural | A4.71 | ACCESSIBILITY REQUIREMENTS DWELLING UNITS | 2 | 7/31/2020 |



Initial ___(BFJ)___ Sub     Initial ___(BLA)___ Contractor     Alterations to this Agreement are Prohibited     Page E of 42

## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | AM 73 | ACCESSIBILITY REQUIREMENT PUBLIC SPACES | 2 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | AM.81 | ENLARGED UNIT ACCESSIBILITY PLANS | 3 | 7/31/2020 |
| Architectural | A4 91 | INTERIOR ELEVATIONS UNITS | 3 | 7/31/2020 |
| Architectural | A4.95 | INTERIOR ELEVATIONS UNITS | 1 | 7/31/2020 |
| Architectural | A5 01 | APARTMENT BUILDING WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.02 | GARAGE WALL TYPES | 0 | 7/31/2020 |
| Architectural | A5 11 | TYPICAL EXTERIOR WALL SECTIONS | 5 | 7/31/2020 |
| Architectural | A5.21 | TYPICAL TENANT WALL SECTIONS | 4 | 7/31/2020 |
| Architectural | A5.22 | TYPICAL TENANT WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.31 | TYPICAL BALCONY WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.41 | GARAGE WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | AC 01 | STAIR PLANS | 2 | 7/31/2020 |
| Architectural | A6 02 | STAIR SECTIONS | 5 | 7/31/2020 |
| Architectural | A6.03 | STAIR SECTION AND PLAN | 1 | 7/31/2020 |
| Architectural | A6 04 | STAIR SECTION AND PLANS | 2 | 7/31/2020 |
| Architectural | A6.11 | TYPICAL STAIR DETAILS | 2 | 7/31/2020 |
| Architectural | A6 12 | PRECAST STAIR DETAILS | 1 | 7/31/2020 |
| Architectural | A6.21 | ELEVATION PLAN AND SECTIONS | 0 | 7/31/2020 |
| Architectural | A6 41 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.42 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A7 01 | DOOR SCHEDULE | 4 | 7/31/2020 |
| Architectural | A7 02 | WINDOW SCHEDULE | 6 | 8/13/2020 |
| Architectural | A7 03 | DOOR & WINDOW INSTALLATION DETAILS | 5 | 7/31/2020 |
| Architectural | A7 .01 | TYPICAL DOOR DETAILS | 5 | 7/31/2020 |
| Architectural | A7 21 | TYPICAL WINDOW DETAILS | 5 | 7/31/2020 |
| Architectural | A7 20 | TYPICAL ATTACHMENT DETAILS | 4 | 7/31/2020 |
| Architectural | A7 31 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7 32 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7 33 | TYPICAL ARCHITECTURAL DETAILS | 0 | 7/31/2020 |
| Architectural | A7 34 | TYPICAL ARCHITECTURAL DETAILS | 1 | 7/31/2020 |
| Architectural | A7 41 | TYPICAL WATERPROOFING & BALCONY FLASHING DETAILS | 3 | 7/31/2020 |
| Architectural | A7 42 | TYPICAL WATERPROOFING DETAILS | 2 | 7/31/2020 |
| Architectural | A7 51 | TYPICAL ROOFING DETAILS | 1 | 7/31/2020 |
| Architectural | A7 52 | TYPICAL ROOF DETAILS | 0 | 7/31/2020 |
| Architectural | A7 61 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7 62 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7 63 | TYPICAL FIRE CONTROL DETAILS | 4 | 7/31/2020 |
| Architectural | A7 71 | TYPICAL SOUND CONTROL DETAILS & NOTES | 3 | 7/31/2020 |
| Architectural | A7 81 | TYPICAL RADON CONTROL DETAILS & NOTES | 1 | 7/31/2020 |
| Architectural | A7 91 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7 92 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7 93 | TYPICAL GARAGE SIGN DETAILS | 1 | 7/31/2020 |
| Architectural | A7 94 | TYPICAL GARAGE PAINT AND SIGN DETAILS | 0 | 7/31/2020 |
| Architectural | A8 11 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 0 | 7/31/2020 |
| Architectural | A8 12 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8 13 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 0 | 7/31/2020 |
| Architectural | A8 14 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8 21 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 0 | 7/31/2020 |
| Architectural | A8 22 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 0 | 7/31/2020 |
| Architectural | A8 31 | FIRE RATED ASSEMBLIES PENETRATIONS | 0 | 7/31/2020 |
| Architectural | A8 32 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8 33 | FIRE RATED ASSEMBLIES PENETRATIONS | 0 | 7/31/2020 |



Initial [ BF ]     Initial [ BLA ]
Sub          Contractor

Alterations to this Agreement are Prohibited          Page 7 of 43

## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | A6.34 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A6.35 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A6.36 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | BACK | PROJECT BACK SHEET | 1 | 7/31/2020 |
| Structural | S1.01 | STRUCTURAL GENERAL NOTES | 0 | 12/20/2019 |
| Structural | S1.02 | STRUCTURAL GENERAL NOTES | 1 | 10/18/2019 |
| Structural | S1.03 | GENERAL NOTES AND WIND DIAGRAMS | 5 | 5/34/2020 |
| Structural | S1.04 | SHEARWALL SCHEDULE AND DETAILS | 1 | 10/18/2019 |
| Structural | S1.05 | SCHEDULE AND DETAILS | 1 | 10/18/2019 |
| Structural | S1.06 | TYPICAL DETAILS | 0 | 10/10/2018 |
| Structural | S1.07 | TYPICAL DETAILS | 0 | 10/16/2018 |
| Structural | S1.11 | OVERALL BUILDING CONTROL PLAN - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11A | PARTIAL BUILDING PLAN - A - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11B | PARTIAL BUILDING PLAN - B - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11C | PARTIAL BUILDING PLAN - C - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11D | PARTIAL BUILDING PLAN - D - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11E | PARTIAL BUILDING PLAN - E - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11F | PARTIAL BUILDING PLAN - F - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.12 | OVERALL BUILDING CONTROL PLAN - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12A | PARTIAL BUILDING PLAN - A - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12B | PARTIAL BUILDING PLAN - B - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12C | PARTIAL BUILDING PLAN - C - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12D | PARTIAL BUILDING PLAN - D - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12E | PARTIAL BUILDING PLAN - E - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12F | PARTIAL BUILDING PLAN - F - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13 | OVERALL BUILDING CONTROL PLAN - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13A | PARTIAL BUILDING PLAN - A - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13B | PARTIAL BUILDING PLAN - B - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13C | PARTIAL BUILDING PLAN - C - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13D | PARTIAL BUILDING PLAN - D - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13E | PARTIAL BUILDING PLAN - E - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13F | PARTIAL BUILDING PLAN - F - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14 | OVERALL BUILDING CONTROL PLAN - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14A | PARTIAL BUILDING PLAN - A - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14B | PARTIAL BUILDING PLAN - B - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14C | PARTIAL BUILDING PLAN - C - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14D | PARTIAL BUILDING PLAN - D - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14E | PARTIAL BUILDING PLAN - E - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14F | PARTIAL BUILDING PLAN - F - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15 | OVERALL BUILDING CONTROL PLAN - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15A | PARTIAL BUILDING PLAN - A - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15B | PARTIAL BUILDING PLAN - B - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15C | PARTIAL BUILDING PLAN - C - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15D | PARTIAL BUILDING PLAN - D - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15E | PARTIAL BUILDING PLAN - E - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15F | PARTIAL BUILDING PLAN - F - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.16 | OVERALL BUILDING CONTROL PLAN - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16A | PARTIAL BUILDING PLAN - A - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16B | PARTIAL BUILDING PLAN - B - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16C | PARTIAL BUILDING PLAN - C - ROOF FRAMING | 2 | 12/20/2019 |



initial DFJ    initial BLA    Sub    Contractor

DocuSign Envelope ID: 5C62C11E-DFC3-4FED-9B03-71E16A119AE0

## Standard Short Form Agreement Between Contractor and Subcontractor

| Structural | S1.16D | PARTIAL BUILDING PLAN - D - ROOF FRAMING | 2 | 12/20/2019 |
|---|---|---|---|---|
| Structural | S1.16E | PARTIAL BUILDING PLAN - E - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16F | PARTIAL BUILDING PLAN - F - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.21 | FOUNDATION AND SLAB ON GRADE PLAN GARAGE | 3 | 5/20/2020 |
| Structural | S3.11 | SECTION AND DETAILS | 1 | 10/18/2019 |
| Structural | S3.12 | SECTION AND DETAILS | 1 | 10/18/2019 |
| Structural | S3.13 | SECTION AND DETAILS | 1 | 10/18/2019 |
| Structural | S3.14 | SECTION AND DETAILS | 2 | 3/24/2020 |
| Structural | S3.31 | SECTION AND DETAILS | 2 | 3/24/2020 |
| Structural | S3.22 | SECTIONS AND DETAILS | 2 | 3/24/2020 |
| Structural | S3.33 | SECTIONS AND DETAILS | 2 | 3/24/2020 |
| Structural | S3.34 | SECTIONS AND DETAILS | 0 | 6/18/2019 |
| Structural | S4.31 | SECTION AND DETAILS | 1 | 10/18/2019 |
| Structural | S5.78 | SECTION AND DETAILS | 1 | 10/18/2019 |
| Structural | S5.41 | SECTIONS AND DETAILS | 1 | 3/35/2020 |
| Structural | S3.42 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S5.43 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S5.44 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Electrical | E0.01 | ELECTRICAL SYMBOLS LEGEND AND GENERAL NOTES | 3 | 9/15/2020 |
| Electrical | E0.10 | ELECTRICAL SITE PLAN | 4 | 5/4/2020 |
| Electrical | E0.11 | ELECTRICAL SITE LIGHTING PLAN | 4 | 5/12/2020 |
| Electrical | E0.12 | ELECTRICAL SITE PHOTOMETRIC PLAN | 5 | 5/15/2020 |
| Electrical | E1.11A | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 5/15/2020 |
| Electrical | E1.11B | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 5/15/2020 |
| Electrical | E1.11C | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 4 | 5/15/2020 |
| Electrical | E1.11D | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.11E | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 3 | 3/24/2020 |
| Electrical | E1.11F | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.12A | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 3 | 3/24/2020 |
| Electrical | E1.12B | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 3/24/2020 |
| Electrical | E1.12C | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 3 | 3/24/2020 |
| Electrical | E1.12D | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.12E | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 3 | 3/24/2020 |
| Electrical | E1.12F | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 3 | 3/24/2020 |
| Electrical | E1.13A | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 3 | 3/24/2020 |
| Electrical | E1.13B | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 3 | 3/24/2020 |
| Electrical | E1.13C | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 3 | 3/24/2020 |
| Electrical | E1.13D | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.13E | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 3 | 3/24/2020 |
| Electrical | E1.13F | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 3 | 3/24/2020 |
| Electrical | E1.14A | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 3 | 3/24/2020 |
| Electrical | E1.14B | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 3 | 3/24/2020 |
| Electrical | E1.14C | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 3 | 3/24/2020 |
| Electrical | E1.14D | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.14E | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 3 | 3/24/2020 |



Initial __BFJ__    Initial __BLA__
Sub              Contractor

Alterations to this Agreement are Prohibited

## Standard Short Form Agreement Between Contractor and Subcontractor

| Electrical | E1.14F | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 1 | 2/24/2020 |
|---|---|---|---|---|
| Electrical | E1.15A | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.15B | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.15C | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 1 | 2/24/2020 |
| Electrical | E1.15D | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.15E | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 2 | 2/24/2020 |
| Electrical | E1.15F | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.16A | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 2 | 8/12/2020 |
| Electrical | E1.16B | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 8/12/2020 |
| Electrical | E1.16C | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 8/12/2020 |
| Electrical | E1.16D | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 2 | 8/12/2020 |
| Electrical | E1.16E | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 2 | 8/12/2020 |
| Electrical | E1.16F | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 2 | 8/12/2020 |
| Electrical | E1.21 | GARAGE LEVEL 1 - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E1.22 | GARAGE LEVEL 2 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.23 | GARAGE LEVEL 3 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.24 | GARAGE LEVEL 4 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.25 | GARAGE LEVEL 5 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.26 | GARAGE LEVEL 6 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.27 | GARAGE LEVEL 7 - ROOF - ELECTRICAL | 2 | 2/24/2020 |
| Electrical | E4.01 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.02 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.03 | TYPICAL UNITS - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E4.04 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E4.05 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E4.06 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E5.01 | ELECTRICAL ONE LINE DIAGRAM | 4 | 2/24/2020 |
| Electrical | TE.01 | EQUIPMENT, PANEL FEEDER & UNIT SCHEDULES | 7 | 8/21/2020 |
| Electrical | E7.01 | ELECTRICAL SCHEDULES | 5 | 8/12/2020 |
| Electrical | E7.02 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.03 | ELECTRICAL SCHEDULES | 1 | 2/24/2020 |
| Electrical | E8.01 | ELECTRICAL DETAILS | 2 | 2/24/2020 |
| Electrical | E8.02 | ELECTRICAL DETAILS | 2 | 12/20/2019 |
| Plumbing | P0.01 | PLUMBING SYMBOLS LEGEND AND GENERAL NOTES | 2 | 9/02/2020 |
| Plumbing | P1.01A | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 0 | 10/18/2019 |
| Plumbing | P1.01B | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 0 | 10/18/2019 |
| Plumbing | P1.01C | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 0 | 10/18/2019 |
| Plumbing | P1.01D | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 0 | 10/18/2019 |
| Plumbing | P1.01E | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 10/18/2019 |
| Plumbing | P1.01F | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 0 | 10/18/2019 |
| Plumbing | P1.10 | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 5/18/2019 |
| Plumbing | P1.10A | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Plumbing | P1.10B | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 8/18/2020 |
| Plumbing | P1.10C | UNDERGROUND PARTIAL BUILDING PLAN - FLOOR PART C | 3 | 8/12/2020 |
| Plumbing | P1.10D | UNDERGROUND PARTIAL BUILDING FIRST FLOOR PART D | 2 | 10/00/2019 |
| Plumbing | P1.10E | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 10/18/2019 |
| Plumbing | P1.10F | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 8/12/2020 |



DocuSign Envelope ID: 5C42C11F-0F09-4FED-9BD5-71EB0A11046D

## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Plumbing | P1.11A | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 1 | 8/18/2020 |
| Plumbing | P1.11B | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 12/00/2019 |
| Plumbing | P1.11C | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 8/13/2020 |
| Plumbing | P1.11D | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.11E | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.11F | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 1 | 8/17/2020 |
| Plumbing | P1.12A | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/04/2020 |
| Plumbing | P1.12B | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 1 | 10/16/2019 |
| Plumbing | P1.12C | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 1 | 10/16/2019 |
| Plumbing | P1.12D | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.12E | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.12F | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 8/18/2020 |
| Plumbing | P1.13A | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 1 | 10/16/2019 |
| Plumbing | P1.13B | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 1 | 10/16/2019 |
| Plumbing | P1.13C | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 1 | 10/16/2019 |
| Plumbing | P1.13D | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.13E | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.13F | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.14A | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 1 | 10/16/2019 |
| Plumbing | P1.14B | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 1 | 10/16/2019 |
| Plumbing | P1.14C | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 1 | 10/16/2019 |
| Plumbing | P1.14D | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.14E | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.14F | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 1 | 8/03/2020 |
| Plumbing | P1.15A | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 1 | 10/18/2019 |
| Plumbing | P1.15B | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 1 | 10/18/2019 |
| Plumbing | P1.15C | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 1 | 10/16/2019 |
| Plumbing | P1.15D | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.15E | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.15F | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 8/13/2020 |
| Plumbing | P1.16A | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART A | 1 | 10/16/2019 |
| Plumbing | P1.16B | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART B | 1 | 10/16/2019 |
| Plumbing | P1.16C | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART C | 1 | 10/16/2019 |
| Plumbing | P1.16D | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART D | 1 | 10/16/2019 |
| Plumbing | P1.16E | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART E | 1 | 10/16/2019 |
| Plumbing | P1.16F | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART F | 1 | 8/13/2020 |
| Plumbing | P1.21 | GARAGE LEVEL 1 - PLUMBING | 4 | 1/08/2020 |
| Plumbing | P1.22 | GARAGE LEVEL 2 - PLUMBING | 1 | 8/09/2020 |
| Plumbing | P1.23 | GARAGE LEVEL 3 - PLUMBING | 1 | 5/08/2020 |
| Plumbing | P1.24 | GARAGE LEVEL 4 - PLUMBING | 1 | 8/09/2020 |
| Plumbing | P1.25 | GARAGE LEVEL 5 - PLUMBING | 1 | 5/08/2020 |
| Plumbing | P1.26 | GARAGE LEVEL 6 - PLUMBING | 1 | 5/08/2020 |
| Plumbing | P1.27 | GARAGE ROOF LEVEL - PLUMBING | 1 | 5/08/2020 |
| Plumbing | P4.01 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.02 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.03 | ENLARGED PLUMBING PLANS | 1 | 12/20/2019 |
| Plumbing | P5.01 | PLUMBING RISER DIAGRAMS | 2 | 8/12/2020 |
| Plumbing | P5.02 | PLUMBING RISER DIAGRAMS | 1 | 8/12/2020 |
| Plumbing | P5.03 | GARAGE STORM SYSTEM RISER DIAGRAMS | 0 | 5/29/2020 |
| Plumbing | P6.01 | PLUMBING DETAILS | 1 | 10/16/2019 |
| Plumbing | P6.02 | PLUMBING DETAILS | 0 | 10/16/2019 |
| Mechanical | M0.01 | MECHANICAL SYMBOLS LEGEND AND GENERAL NOTES | 1 | 10/16/2019 |



Initial ___BFJ___    Initial ___BJA___    **Alterations to this Agreement are Prohibited**    Page 11 of 42

Sub    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Mechanical | M1.11A | MECHANICAL PARTIAL BUILDING PLANS - FIRST FLOOR PART A | 3 | 9/12/2020 |
|---|---|---|---|---|
| Mechanical | M1.11B | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 3 | 9/12/2020 |
| Mechanical | M1.11C | MECHANICAL PARTIAL BLDI DING PLAN - FIRST FLOOR PART C | 3 | 9/12/2020 |
| Mechanical | M1.11D | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.11E | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.11F | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.12A | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 5 | 12/20/2019 |
| Mechanical | M1.12B | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 9/12/2020 |
| Mechanical | M1.12C | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 5 | 12/20/2019 |
| Mechanical | M1.12D | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.12E | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.12F | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.13A | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.13B | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.13C | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.13D | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.13E | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.13F | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.14A | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.14B | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.14C | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.14D | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.14E | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.14F | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.15A | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.15B | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.15C | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.15D | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.15E | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.15F | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.16A | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 3 | 9/12/2020 |
| Mechanical | M1.16B | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 12/20/2019 |
| Mechanical | M1.16C | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 12/20/2019 |
| Mechanical | M1.16D | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 3 | 9/12/2020 |
| Mechanical | M1.16E | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 3 | 9/12/2020 |
| Mechanical | M1.16F | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 3 | 9/12/2020 |
| Mechanical | M1.21 | GARAGE LEVEL 1 - MECHANICAL | 1 | 2/24/2020 |
| Mechanical | M1.22 | GARAGE LEVEL 2 - MECHANICAL | 0 | 10/16/2019 |
| Mechanical | M1.23 | GARAGE LEVEL 3 - MECHANICAL | 0 | 10/16/2019 |
| Mechanical | M1.24 | GARAGE LEVEL 4 - MECHANICAL | 0 | 10/16/2019 |
| Mechanical | M1.25 | GARAGE LEVEL 5 - MECHANICAL | 0 | 10/16/2019 |
| Mechanical | M1.26 | GARAGE LEVEL 6 - MECHANICAL | 0 | 10/16/2019 |
| Mechanical | M1.27 | GARAGE ROOF - MECHANICAL | 1 | 2/24/2020 |



Initial ___ (BF)   Initial ___ (BIA)   Alterations to this Agreement are Prohibited   Page 12 of 12

Sub   Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Mechanical | M4.01 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
|---|---|---|---|---|
| Mechanical | M4.02 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.03 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M6.01 | MECHANICAL SCHEDULES | 2 | 12/20/2019 |
| Mechanical | M7.01 | MECHANICAL DETAILS | 2 | 2/24/2020 |
| Mechanical | M7.02 | MECHANICAL DETAILS | 1 | 10/16/2019 |
| Mechanical | M7.03 | MECHANICAL DETAILS | 1 | 2/24/2020 |
| Fire Protection | F0.01 | FIRE PROTECTION SYMBOLS AND SPECIFICATIONS | 2 | 4/15/2020 |
| Fire Protection | F1.11A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 2/24/2020 |
| Fire Protection | F1.11B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 2/24/2020 |
| Fire Protection | F1.11C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 2/24/2020 |
| Fire Protection | F1.11D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 2/24/2020 |
| Fire Protection | F1.11E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 2/24/2020 |
| Fire Protection | F1.11F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 2/26/2020 |
| Fire Protection | F1.12A | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.12B | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.12C | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.12D | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.12E | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.12F | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.13A | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.13B | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.13C | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.13D | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.13E | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.13F | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.14A | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Fire Protection | F1.14B | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Fire Protection | F1.14C | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Fire Protection | F1.14D | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Fire Protection | F1.14E | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Fire Protection | F1.14F | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 0 | 10/16/2019 |



Initial ___ BFJ    Initial ___ BLA
Sub          Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Fire Protection | F1.15A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 1 | 3/24/2020 |
|---|---|---|---|---|
| Fire Protection | FY.15B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 1 | 3/24/2020 |
| Fire Protection | F1.15C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 1 | 3/24/2020 |
| Fire Protection | F1.15D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 1 | 3/24/2020 |
| Fire Protection | F1.15E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 1 | 3/24/2020 |
| Fire Protection | F1.15F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 3/24/2020 |
| Fire Protection | F1.21 | GARAGE LEVEL 1 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.22 | GARAGE LEVEL 2 - FIRE PROTECTION | 0 | 10/18/2019 |
| Fire Protection | F1.23 | GARAGE LEVEL 3 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.24 | GARAGE LEVEL 4 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.25 | GARAGE LEVEL 5 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.26 | GARAGE LEVEL 6 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F6.01 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Fire Protection | F6.02 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Low Voltage | T.000 | LOW VOLTAGE NOTES AND LEGENDS | 1 | 4/1/2020 |
| Low Voltage | T-100 | FIRST FLOOR PLAN LOW VOLTAGE PATHWAYS | 1 | 12/20/2019 |
| Low Voltage | T-100A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 13/20/2019 |
| Low Voltage | T-100C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-101 | SECOND FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-102 | THIRD FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-103 | FOURTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-104 | FIFTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-105 | ROOF PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-106 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-107 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-108 | LOW VOLTAGE UNIT DISTRIBUTION PANEL | 1 | 4/1/2020 |
| Low Voltage | T-200 | FIRST FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-201 | SECOND FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-202 | THIRD FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-203 | FOURTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-204 | FIFTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-205 | SIXTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300 | FIRST FLOOR PLAN LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 10/20/2019 |
| Low Voltage | T-300C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-302 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |



Initial __BF.__     Initial __BLA__
Sub          Contractor

Alterations to this Agreement are Prohibited          Page 14 of 42

## Standard Short Form Agreement Between Contractor and Subcontractor

| Low Voltage | T-301 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
|---|---|---|---|---|
| Low Voltage | T-400 | FIRST FLOOR PLAN LOW VOLTAGE A/V | 0 | 12/20/2019 |
| Low Voltage | T-400A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITIES | 0 | 12/20/2019 |
| Low Voltage | T-400B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITIES | 0 | 12/20/2019 |
| Low Voltage | T-400C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITIES | 0 | 12/20/2019 |
| Low Voltage | T-500 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (A/D) | 1 | 4/1/2020 |
| Low Voltage | T-501 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (1OF 1A # OF 19) | 1 | 4/1/2020 |
| Low Voltage | T-502 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (1OF 3A & 1OF 5A) | 1 | 4/1/2020 |
| Low Voltage | T-503 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (1OF 1B & 1OF 2B) | 1 | 4/1/2020 |
| Low Voltage | T-504 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (1OF 2C & 1OF 3C) | 1 | 4/1/2020 |
| Low Voltage | T-500 | LOW VOLTAGE CONNECTIVITY DIAGRAM (UNIT) | 0 | 12/20/2019 |
| Low Voltage | T-501 | LOW VOLTAGE CONNECTIVITY DIAGRAM (ACCESS CONTROL) | 0 | 12/20/2019 |
| Low Voltage | T-502 | LOW VOLTAGE CONNECTIVITY DIAGRAM (SURVEILLANCE) | 0 | 12/20/2019 |
| Interior | ID-0.00 | COVER SHEET | 1 | 1/60/2020 |
| Interior | ID-0.01 | PLAN KEY | 3 | 6/6/2020 |
| Interior | ID-0.02 | GENERAL NOTES | 3 | 6/6/2020 |
| Interior | ID-0.03 | LEGENDS & ABBREVIATIONS | 2 | 5/6/2020 |
| Interior | ID-0.04 | OVERALL FLOOR PLAN FIRST FLOOR | 2 | 5/6/2020 |
| Interior | ID-0.05 | FAUX FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/6/2020 |
| Interior | ID-0.06 | FAUX FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/6/2020 |
| Interior | ID-0.07 | OVERALL FLOOR PLAN FIFTH FLOOR | 2 | 5/6/2020 |
| Interior | ID-1.00 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 1 | 5/6/2020 |
| Interior | ID-1.01 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.02 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.03 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.04 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.05 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.06 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.07 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.08 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.09 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.10 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.11 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.12 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.13 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.14 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.15 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.16 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.17 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.18 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 1 | 5/6/2020 |
| Interior | ID-1.19 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/6/2020 |
| Interior | ID-1.20 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/6/2020 |
| Interior | ID-1.21 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/6/2020 |
| Interior | ID-1.22 | FLOOR COVERING PLAN FIRST & FIFTH FLOOR PARTIAL | 3 | 5/6/2020 |
| Interior | ID-1.23 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/6/2020 |
| Interior | ID-1.25 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/6/2020 |
| Interior | ID-1.25 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/6/2020 |
| Interior | ID-1.26 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 2 | 5/6/2020 |



Initial _BFJ_  Sub

Initial _SLA_  Contractor

Alterations to this Agreement are Prohibited

Page 15 of 42

DocuSign Envelope ID: 5C42C17E-0FC9-4FE5-9B93-71EB5A1154C5

## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-1.27 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.28 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.29 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.30 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.31 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.32 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.33 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.34 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.35 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.36 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.37 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.38 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.39 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.40 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.41 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.42 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.43 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.44 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.45 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.46 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.47 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.48 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.49 | REFLECTED CEILING PLAN FIRST FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.50.0 | FURNITURE PLAN 3RD FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.50.1 | FURNITURE PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.51 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.52 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.53 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.54 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.55 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.56 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.57 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.58 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.59 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.0 | FLOOR COVERING PLAN 3RD FL. PART | 2 | 5/8/2020 |
| Interior | ID-1.60.1 | FLOOR COVERING PLAN 3RD, 4TH, & 5TH FL. PART | 2 | 5/8/2020 |
| Interior | ID-1.61 | FLOOR COVERING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.62 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.63 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.64 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.65 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.66 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.67 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.68 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.69 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.0 | ELECTRICAL PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.1 | ELECTRICAL PLAN 3RD & 4TH FL. PART | 2 | 5/8/2020 |
| Interior | ID-1.71 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.72 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.73 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.74 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.75 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |



Initial    Initial    Alterations to this Agreement are Prohibited    Page 16 of 42
Bob        Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-1.76 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 9/6/2020 |
|---|---|---|---|---|
| Interior | ID-1.77 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 9/6/2020 |
| Interior | ID-1.78 | ELECTRICAL PLAN 3RD, 2RD & 9TH FL. PART. | 2 | 9/6/2020 |
| Interior | ID-1.79 | ELECTRICAL PLAN 3ND, 3RB & 4TH FL. PART. | 2 | 9/6/2020 |
| Interior | ID-1.50.0 | REFLECTED CEILING PLAN 2ND FL. PART. | 2 | 5/06/2020 |
| Interior | ID-1.50.1 | REFLECTED CEILING PLAN 3RD & 4TH FL. PART | 2 | 9/6/2020 |
| Interior | ID-1.51 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 5/6/2020 |
| Interior | ID-1.62 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 2/6/2020 |
| Interior | ID-1.53 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 2/6/2020 |
| Interior | ID-1.64 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 5/6/2020 |
| Interior | ID-1.65 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 5/6/2020 |
| Interior | ID-1.56 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 5/6/2020 |
| Interior | ID-1.67 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 5/6/2020 |
| Interior | ID-1.58 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 5/6/2020 |
| Interior | ID-1.69 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 5/6/2020 |
| Interior | ID-1.90 | INTERIOR PLAN TYPICAL UNITS | 2 | 5/6/2020 |
| Interior | ID-1.91 | INTERIOR PLAN TYPICAL UNITS | 2 | 5/6/2020 |
| Interior | ID-1.92 | FLOOR COVERING PLAN TYPICAL UNITS | 2 | 5/6/2020 |
| Interior | ID-1.93 | FLOOR COVERING PLAN TYPICAL UNITS | 2 | 5/6/2020 |
| Interior | ID-2.00 | INTERIOR ELEVATIONS LEASING OFF / CLUB RM | 2 | 5/6/2020 |
| Interior | ID-2.01 | INTERIOR ELEVATIONS LEASING OFF / CLUB RM | 2 | 5/6/2020 |
| Interior | ID-2.02 | INTERIOR ELEVATIONS SALES OFF / CLUB RM | 2 | 5/6/2020 |
| Interior | ID-2.03 | INTERIOR ELEVATIONS CORRIDOR 1 | 2 | 5/6/2020 |
| Interior | ID-2.04 | INTERIOR ELEVATIONS CONF. RM / CO-WORK | 2 | 5/6/2020 |
| Interior | ID-2.05 | INTERIOR ELEVATIONS CONF. RM / CO-WORK | 2 | 5/6/2020 |
| Interior | ID-2.06 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/6/2020 |
| Interior | ID-2.07 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/6/2020 |
| Interior | ID-2.08 | INTERIOR ELEVATIONS MEDIA THEATRE | 2 | 5/6/2020 |
| Interior | ID-2.09 | INTERIOR ELEVATIONS FITNESS | 2 | 5/6/2020 |
| Interior | ID-2.10 | INTERIOR ELEVATIONS YOGA | 2 | 5/6/2020 |
| Interior | ID-2.11 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/6/2020 |
| Interior | ID-2.12 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/6/2020 |
| Interior | ID-2.13 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/6/2020 |
| Interior | ID-2.14 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/6/2020 |
| Interior | ID-2.15 | INTERIOR ELEVATIONS CORRIDOR 2 | 2 | 5/6/2020 |
| Interior | ID-2.16 | INTERIOR ELEVATIONS CORRIDOR 3 | 2 | 5/6/2020 |
| Interior | ID-2.17 | INTERIOR ELEVATIONS CORRIDOR 4 | 2 | 5/6/2020 |
| Interior | ID-2.18 | INTERIOR ELEVATIONS CORRIDOR 5 | 2 | 5/6/2020 |
| Interior | ID-2.19 | INTERIOR ELEVATIONS CORRIDOR 6 | 2 | 5/6/2020 |
| Interior | ID-2.20 | INTERIOR ELEVATIONS CORRIDOR 7 | 2 | 5/6/2020 |
| Interior | ID-2.21 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/6/2020 |
| Interior | ID-2.22 | INTERIOR ELEVATIONS CORRIDOR 6 | 2 | 5/6/2020 |
| Interior | ID-2.33 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/6/2020 |
| Interior | ID-2.34 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/6/2020 |
| Interior | ID-2.35 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/6/2020 |
| Interior | ID-2.26 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/6/2020 |
| Interior | ID-2.27 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/6/2020 |
| Interior | ID-2.33 | INTERIOR ELEVATIONS CORRIDOR 11 | 2 | 5/6/2020 |
| Interior | ID-2.29 | INTERIOR ELEVATIONS CORRIDOR 11 | 2 | 5/6/2020 |
| Interior | ID-2.30 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/6/2020 |
| Interior | ID-2.31 | INTERIOR ELEVATIONS CORRIDOR 13 | 2 | 5/6/2020 |
| Interior | ID-2.32 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/6/2020 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Interior | D-2.33 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/6/2020 |
| Interior | D-2.34 | INTERIOR ELEVATIONS CORRIDOR 15 | 2 | 5/6/2020 |
| Interior | D-2.35 | INTERIOR ELEVATIONS CORRIDOR 16 | 2 | 5/6/2020 |
| Interior | D-2.36 | INTERIOR ELEVATIONS CORRIDOR 17 | 2 | 5/6/2020 |
| Interior | D-2.37 | INTERIOR ELEVATIONS VESTIBULE 1 AND 2 | 2 | 5/6/2020 |
| Interior | D-2.38 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/6/2020 |
| Interior | D-2.39 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/6/2020 |
| Interior | D-2.40 | INTERIOR ELEVATIONS VESTIBULE 4 AND 5 | 2 | 5/6/2020 |
| Interior | D-2.41 | INTERIOR ELEVATIONS VESTIBULE 5 AND 6 | 2 | 5/6/2020 |
| Interior | D-2.42 | INTERIOR ELEVATIONS VESTIBULE 7 AND 8 | 2 | 5/6/2020 |
| Interior | D-2.43 | INTERIOR ELEVATIONS VESTIBULE 8, 9 AND 10 | 2 | 5/6/2020 |
| Interior | D-2.44 | INTERIOR ELEVATIONS VESTIBULE 9 AND 10 | 2 | 5/6/2020 |
| Interior | D-2.50 | INTERIOR ELEVATIONS MEN'S RESTROOM | 2 | 5/6/2020 |
| Interior | D-2.51 | INTERIOR ELEVATIONS WOMEN'S RESTROOM | 2 | 5/6/2020 |
| Interior | D-2.60 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/6/2020 |
| Interior | D-2.61 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/6/2020 |
| Interior | D-2.62 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/6/2020 |
| Interior | D-3.00 | INTERIOR DETAILS & SECTIONS | 2 | 5/6/2020 |
| Interior | D-3.01 | INTERIOR DETAILS & SECTIONS | 2 | 5/6/2020 |
| Interior | D-3.02 | INTERIOR DETAILS & SECTIONS | 2 | 5/6/2020 |
| Interior | D-3.03 | INTERIOR DETAILS & SECTIONS | 2 | 5/6/2020 |
| Interior | D-3.04 | INTERIOR DETAILS & SECTIONS | 2 | 5/6/2020 |
| Interior | D-4.00 | SCHEDULES | 2 | 5/6/2020 |
| Interior | D-4.01 | DOOR SCHEDULE | 2 | 5/6/2020 |
| Interior | D-4.02 | SCHEDULES TYPICAL UNITS | 1 | 5/6/2020 |
| Hardscape | H-1 | SITE PLAN PHASE 2 | 5 | 5/22/2020 |
| Hardscape | H-2.1 | HARDSCAPE LABEL PLAN COURTYARD A | 8 | 5/22/2020 |
| Hardscape | H-2.2 | HARDSCAPE DIMENSION PLAN COURTYARD A | 5 | 5/22/2020 |
| Hardscape | H-2.3 | HARDSCAPE FINISHED PLAN COURTYARD A | 8 | 5/22/2020 |
| Hardscape | H-3.1 | HARDSCAPE LABEL PLAN COURTYARD B | 5 | 5/22/2020 |
| Hardscape | H-3.2 | HARDSCAPE DIMENSION PLAN COURTYARD B | 5 | 5/22/2020 |
| Hardscape | H-3.3 | HARDSCAPE FINISHES PLAN COURTYARD B | 5 | 5/22/2020 |
| Hardscape | H-4.1 | HARDSCAPE LABEL PLAN COURTYARD C | 5 | 5/22/2020 |
| Hardscape | H-4.2 | HARDSCAPE DIMENSION PLAN COURTYARD C | 5 | 5/22/2020 |
| Hardscape | H-4.3 | HARDSCAPE FINISHES PLAN COURTYARD C | 5 | 5/22/2020 |
| Hardscape | H-5.1 | HARDSCAPE LABEL PLAN COURTYARD D | 5 | 5/22/2020 |
| Hardscape | H-5.2 | HARDSCAPE DIMENSION PLAN COURTYARD D | 5 | 5/22/2020 |
| Hardscape | H-5.3 | HARDSCAPE FINISHES PLAN COURTYARD D | 5 | 5/22/2020 |
| Hardscape | H-6 | HARDSCAPE LABEL PLAN | 1 | 5/18/2019 |
| Hardscape | H-6.1 | HARDSCAPE LABEL PLAN LAKE/DOG PARK | 5 | 5/22/2020 |
| Hardscape | H-6.2 | HARDSCAPE DIMENSION PLAN LAKE/DOG PARK | 5 | 5/22/2020 |
| Hardscape | H-6.3 | HARDSCAPE DIMENSION PLAN | 5 | 5/22/2020 |
| Hardscape | H-7 | HARDSCAPE DETAILS | 5 | 5/22/2020 |
| Hardscape | H-8 | HARDSCAPE DETAILS | 5 | 5/22/2020 |
| Hardscape | H-9 | HARDSCAPE DETAILS | 5 | 5/22/2020 |
| Hardscape | H-10 | HARDSCAPE DETAILS | 5 | 5/22/2020 |
| Hardscape | H-11 | HARDSCAPE DETAILS | 7 | 5/12/2020 |
| Hardscape | H-12 | HARDSCAPE DETAILS | 7 | 5/12/2020 |
| Hardscape | H-13 | HARDSCAPE DETAILS | 5 | 5/31/2020 |
| Hardscape | H-14 | HARDSCAPE SPECIFICATIONS | 5 | 5/27/2020 |
| Landscape | L-1 | SITE PLAN PHASE 2 | 5 | 5/22/2020 |
| Landscape | L-2 | TREE DISPOSITION PLAN PHASE 2 | 5 | 5/12/2020 |



Initial: BFJ   Initial: BLA
Sub          Contractor

Alterations to this Agreement are Prohibited          Page 16 of 42

## Standard Short Form Agreement Between Contractor and Subcontractor

| Landscape | L-3 | TREE DISPOSITION PLAN PH 2 | 7 | 5/14/2020 |
|---|---|---|---|---|
| Landscape | L-4 | TREE DISPOSITION SCHEDULE PH 2 | 8 | 5/14/2020 |
| Landscape | L-5 | LANDSCAPE PLAN | 7 | 5/22/2020 |
| Landscape | L-6 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-7 | LANDSCAPE PLAN | 5 | 5/22/2020 |
| Landscape | L-8 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-9 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-10 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-11 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-12 | LANDSCAPE SPECIFICATIONS | 3 | 5/22/2020 |
| Landscape | L-13 | LANDSCAPE SPECIFICATIONS | 0 | 5/18/2019 |
| Landscape | LI-1 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-2 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-3 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LLP-1 | SITE PLAN PHASE 2 | 2 | 5/22/2020 |
| Landscape | LLP-2 | LANDSCAPE LIGHTING PLAN | 3 | 5/22/2020 |
| Landscape | LLP-3 | LANDSCAPE LIGHT PLAN | 3 | 5/22/2020 |
| Landscape | LLP-4 | LANDSCAPE LIGHTING PLAN SCHEDULE | 3 | 5/22/2020 |
| Landscape | LLP-5 | LANDSCAPE LIGHT PLAN SPECIFICATIONS | 2 | 5/22/2020 |
| Surveys | 1 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 2 | 7/11/2019 |
| Surveys | 2 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 1 | 8/18/2020 |

Architect:
Charlan Brock & Associates

Engineer:
Z Development Services
708 E. Colonial Drive Suite 100
Orlando, Florida 32803

Architect of Record:
Doug Anderson
1770 Fennell Street
Maitland, Florida 32751

Civil Engineer:
Z Development Services
708 E. Colonial Drive Suite 100
Orlando, Florida 32803

Structural Engineer:
John Bailes
1035 South Semoran Blvd
Winter Park, Florida 32792

Landscape Architect:
Aaron Mastin
101 SE 2nd Ave
Delray Beach, Florida 33444

Hardscape Architect:
Aaron Mastin



Initial ___ Sub    Initial ___ Contractor    Alterations to this Agreement are Prohibited    Page 18 of 42

DocuSign Envelope ID: 9C42C97E-DFC9-4FE0-9800-71BBA1154EF

## Standard Short Form Agreement Between Contractor and Subcontractor

101 SE 2nd Ave
Delray Beach, Florida 33444

Interior Design:
Jorge Garcia
4700 Riverside Drive, Suite 100
Palm Beach Gardens, Florida 33410

**EXHIBITS.** As applicable, the following Exhibits are incorporated by reference and made part of this Agreement.

EXHIBIT A:     Schedule of Values
EXHIBIT B:     Insurance
EXHIBIT C:     HUD Supplemental Conditions
EXHIBIT D:     HUD Identity of Interest Disclosure Requirement
EXHIBIT E:     HUD Prevailing Wage Acknowledgement

**1.1     SUBCONTRACTOR IS AN INDEPENDENT CONTRACTOR.** SUBCONTRACTOR is an independent contractor and shall, at its sole cost and expense, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the Work. SUBCONTRACTOR shall have sole responsibility for the means and methods of performing the Work required under this Subcontract. SUBCONTRACTOR is responsible for securing timely inspections and approvals of its Work from all such authorities as required by the Contract Documents. All inspections must be coordinated with CONTRACTOR. SUBCONTRACTOR must obtain and pay for all necessary permits and licenses, including business licenses; pay all fees, manufacturer's taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and unemployment or disability insurance which are measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. SUBCONTRACTOR must maintain proof that it has complied with all aspects of this Paragraph and shall make such proof available for review by CONTRACTOR at CONTRACTOR's request. SUBCONTRACTOR agrees that any penalty, charge, fine, or other assessment made on account of SUBCONTRACTOR or SUBCONTRACTOR's work will be promptly paid in full by SUBCONTRACTOR. All of the SUBCONTRACTOR's Work shall be performed in strict accordance with the Occupational Safety and Health Act of 1970 and any other legislation enacted by federal, state, or local governing authorities or agencies. Additionally, SUBCONTRACTOR shall furnish a copy to CONTRACTOR the applicable Safety Data Sheets (SDS) for all hazardous materials or chemicals used in connection with or consumed or incorporated into this Project as required by the Hazard Communication Standard of the Occupational Safety and Health Administration (OSHA). The SUBCONTRACTOR shall report to the CONTRACTOR within one (1) day after an injury to an employee or agent of the SUBCONTRACTOR which occurs on the site.

**1.2A     SUBCONTRACTOR** shall not perform any labor services under this Subcontract with any persons or parties other than SUBCONTRACTOR's direct employees without first 1) providing CONTRACTOR with at least 24 hours prior written notice, and 2) providing CONTRACTOR with a copy of the agreement between SUBCONTRACTOR and any sub-subcontractor, employee leasing company, employee management company, labor supplier company, or individual ("third party labor provider") providing such labor at least 24 hours prior to beginning to perform the labor. SUBCONTRACTOR's failure to comply with these requirements shall be a material breach of the Subcontract allowing for termination of the Subcontract, and the CONTRACTOR will not be liable for payment of any labor costs of the third-party labor provider. Should the SUBCONTRACTOR be authorized to use a third-party labor provider on the project, the CONTRACTOR must receive written confirmation, via email, setting forth the specific names of each third-party labor provider employee onsite, the amount of the hours worked, and price per hour for each employee. This information must be received by 5:00 pm daily on same day that the third-party labor provider was onsite at the project. Failure to timely and completely provide this information will result in non-payment by the CONTRACTOR to the SUBCONTRACTOR for such third-party labor.

**1.3     QUALITY AND SCOPE OF WORK/FIELD VERIFICATIONS.** The Contract Documents are intended to and shall be considered to include all items which would normally be included in SUBCONTRACTOR's trade and are intended to include all Work that CONTRACTOR is called upon to perform under terms of its contract with Owner. The Plans and Specifications generally indicate the scope and quality of the work but are not represented as being free from errors or omissions and any work called for in the Specifications and not shown on the Plans, or vice versa, are to be furnished as if called for in both and, in addition SUBCONTRACTOR agrees that any and all work required and reasonably implied as



Initial _____  Initial _____                    Alterations to this Agreement are Prohibited          Page 20 of 42
Sub            Contractor

DocuSign Envelope ID: 5C42C17E-DFC2-4AED-8806-71F56A11A4E3

## Standard Short Form Agreement Between Contractor and Subcontractor

necessary to complete the job, shall be furnished and installed by SUBCONTRACTOR without any additional cost. SUBCONTRACTOR shall notify CONTRACTOR in writing of any deviations from the Contract Documents. SUBCONTRACTOR's responsibility to conform to the Contract Documents is not relieved by Architect's or CONTRACTOR's review unless there is written acceptance of the specific deviations. SUBCONTRACTOR agrees not to modify, withdraw, or cancel any alternate bids, for ninety (90) days after receipt of bid. SUBCONTRACTOR shall provide its own layout and make its own measurements and shall guarantee the accuracy thereof and shall not rely on the measurements of any other party.

The SUBCONTRACTOR represents that it is licensed (if applicable) and fully qualified to perform the Work required by this Subcontract and acknowledges that it has, by careful examination satisfied itself as to: (a) the nature, location and character of the Job Site including, but not limited to, the surface and subsurface conditions of the land and all structures and obstructions thereon, both natural and manmade, surface water conditions of the Job Site and the surrounding area and, to the extent pertinent to the Work, all other conditions; (b) the nature, location and character of the general area in which the Job Site is located including, without limitation, its climatic conditions, the availability and cost of labor and the availability and cost of materials, tools and equipment, the quality and quantity of all material, supplies, tools, equipment, labor and services necessary to complete the Work in the manner required by the Contract Documents; and (c) all other matters or things which could in any manner affect the performance of the Work. The SUBCONTRACTOR recognizes and understands the physical and operational restrictions on carrying on of the Work in or about the Project and expressly agrees that such conditions have been accounted for in the Subcontract price. By commencing its Work, SUBCONTRACTOR accepts the surface or substrate on which such work is placed and all adjacent work of earlier subcontractors and other areas that interface with or connect to the SUBCONTRACTOR's Work or otherwise affect SUBCONTRACTOR's Work. The SUBCONTRACTOR shall take such measurements as will insure the proper matching and placement of the Work under this Subcontract and is otherwise responsible for compliance with the intent of the Contract Documents. The SUBCONTRACTOR shall immediately notify CONTRACTOR and the Architect of any unacceptable conditions or deviations from contract requirements affecting its Work and shall notify CONTRACTOR and Architect of any discrepancies or conflicts in the Contract Documents before performing its Work and shall be responsible for all costs resulting from its failure to do so. Any SUBCONTRACTOR that installs his work attached to an unacceptable substrate without written notification to CONTRACTOR shall bear the costs of removal and replacement of his work. All Work shall be done in a good and workmanlike manner and all material shall be new and of specified grade, and all Work and material shall be furnished and installed in compliance with the requirements of the institutions making the construction and permanent mortgages on the property and all governmental or other authorities having jurisdiction thereof.

Prior to starting any field work, the SUBCONTRACTOR shall participate in a "SUBCONTRACTOR's Preparatory Meeting" with the CONTRACTOR at the jobsite, to thoroughly review the following items and procedures and sign-off as to the SUBCONTRACTOR's participation and understanding: (1) Subcontract Agreement & Exhibit "A", (2) possession of correct Drawings & Specifications, (3) SDS Sheets & OSHA Review, (4) Completed stamped and approved shop drawings & submittals, (5) required material installation procedures; and (6) Payment Procedures. SUBCONTRACTOR is solely responsible for its work being in full compliance with this Subcontract Agreement requirement. All subcontractors must attend project meetings that they are requested to attend (a two-day notice will be provided). Sending a laborer to a meeting will not count as a substitute. It must be an approved supervisor or an individual authorized to make decisions on behalf of your company. Subcontractors will be fined $250 for each meeting missed.

SUBCONTRACTOR is at all times to work ONLY from Drawings specifically issued by CONTRACTOR's Project Manager that identifies the documents as "For Construction". Under no circumstances is SUBCONTRACTOR to perform any work on the Project from any Drawings that do not include such identification. SUBCONTRACTOR is not to accept, process, bid, or perform any actual construction work based on any Drawings that have not been an identified by CONTRACTOR's Project Manager as described above. SUBCONTRACTOR shall be solely responsible for compliance with his requirement.

SUBCONTRACTOR jobsite supervisor shall submit Daily Reports (including manpower) to CONTRACTOR each day on separate forms provided by CONTRACTOR. Failure to provide these forms will be sufficient cause for CONTRACTOR to withhold payment until CONTRACTOR is provided with completed up-to-date reports.



Initial ___ BFI    Initial ___ BLA        Alterations to this Agreement are Prohibited        Page 21 of 42
Sub                Contractor

DocuSign Envelope ID: 5CACC17E-DFC6-4FED-8B2B-715B5A148AF7

## Standard Short Form Agreement Between Contractor and Subcontractor

1.4    **SUBMITTALS.** SUBCONTRACTOR shall promptly prepare or obtain and submit to CONTRACTOR in the quantity requested by CONTRACTOR, all shop and erection drawings, samples, product data, catalogue cuts, laboratory and inspection reports, and engineering calculations ("Submittals") required by the Contract Documents, or as may be necessary or appropriate to describe the details of the Work. All Submittals shall be submitted in a timely manner so as to permit the work to be performed in accordance with the Project Schedule. Neither review, nor approval, of Submittals by CONTRACTOR, Owner or Architect shall relieve SUBCONTRACTOR of its obligation to perform the Work in strict conformity with the Contract Documents or its responsibility for the proper matching of the Work to contiguous work. SUBCONTRACTOR shall identify each and every variance between any Submittals and the requirements of the Contract Documents at the time of transmission either prominently on the Submittal or specifically in a transmission letter accompanying the Submittal. No modification, revision or other notation on a Submittal that changes or modifies the Contract Documents shall be valid (even if the drawing or Submittal is approved) unless there is a Change Order issued approving same. No Work required or Work attaching to items requiring submittals or shop drawings shall be started by SUBCONTRACTOR until approved Submittals are returned to SUBCONTRACTOR. Materials ordered, fabricated, or installed prior to receipt of approved Submittals are at SUBCONTRACTOR's sole risk. All material submittals, shop drawings, affidavits, etc., that are required for your area of work need to be submitted to the CONTRACTOR within seven (7) days of signing your contract.

3)    **BONDS.** SUBCONTRACTOR shall not X furnish to CONTRACTOR, as Obligee, surety bonds to this Agreement, and through a surety mutually agreeable to CONTRACTOR and SUBCONTRACTOR, to secure faithful performance of Subcontract Work and to satisfy SUBCONTRACTOR payment obligations related to SUBCONTRACTOR's Work.

4)    **SAFETY AND CLEAN-UP.** To protect persons and property, SUBCONTRACTOR shall establish a safety program implementing safety measures, policies and standards conforming to (1) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (2) the requirements of this Agreement. SUBCONTRACTOR will abide by the Safety Program implemented by Portrait Construction of Florida attached as EXHIBIT "A".

5)    **SUPERVISON.** SUBCONTRACTOR is required to designate a competent supervisor to oversee all SUBCONTRACTORS work for the duration of the project. SUBCONTRACTOR must submit name and qualification of SUBCONTRACTOR's English speaking supervisor to Portrait Construction of Florida's project superintendent for acceptance. CONTRACTOR's Superintendent will schedule the different trades, supervise all construction, and with the concurrence of CONTRACTOR's Project Manager, approve monthly draws. His opinion that the job's progress for SUBCONTRACTOR's phase of the work is on schedule is a condition precedent to CONTRACTOR's obligation to make progress payments to SUBCONTRACTOR. SUBCONTRACTOR's Supervisor is responsible for verifying all of his "Scope of Work" is properly performed, shall complete a thorough inspection of the work and determine any and all repairs, rework, punchlist & verify the remediation is complete. If at any point during construction, the CONTRACTOR'S Superintendent determines that the SUBCONTRACTOR'S Supervisor is not completing his work as outlined in the above, he may request in writing that the SUBCONTRACTOR enforce the requirements of the Supervisor or replace him.

6)    **SCHEDULE.** Time is of the essence as to SUBCONTRACTOR's obligations under this Agreement. All SUBCONTRACTOR's Work shall commence and proceed as scheduled by the CONTRACTOR. All SUBCONTRACTOR's Work shall be of the highest quality, and in compliance with all governing laws, ordinances, codes, regulations and requirements. The CONTRACTOR shall prepare the schedule for performance of CONTRACTOR's Work (HEREINAFTER THE "Progress Schedule") and shall revise and update such schedule, as necessary, as CONTRACTOR's work progresses. Each revision of the Progress Schedule, upon issuance to this SUBCONTRACTOR, shall supersede previous schedules and shall become part of this Agreement. SUBCONTRACTOR shall provide CONTRACTOR with any scheduling information proposed by SUBCONTRACTOR for Subcontract Work and submit any additional information or updates as requested by CONTRACTOR. SUBCONTRACTOR shall be bound by the Progress Schedule. Material procurement, shop fabrication and delivery must be coordinated by SUBCONTRACTOR, to assure that the work is started and completed as required by the Progress Schedule.

The Subcontract price includes all overtime as required including Saturdays, Sundays, and holidays in order to maintain the Progress Schedule. Failure by this SUBCONTRACTOR to meet all obligations necessary to maintain the Progress Schedule dates will result in SUBCONTRACTOR being assessed appropriate damages and losses incurred by the CONTRACTOR. The CONTRACTOR shall have the rights to (1) expand, update and revise the Progress Schedule as

Initial ___ DF J    Initial ___ BLA
Sub         Contractor

Alterations to this Agreement are Prohibited    Page 22 of 42

DocuSign Envelope ID: 5C42C17E-0FC0-4FED-A899-71EE6A71AA57

## Standard Short Form Agreement Between Contractor and Subcontractor

necessary to correspond to project conditions and changes in order to ensure the overall completion date, and (2) to determine and, if necessary, change the time, order and priority in which various portions of Subcontract Work shall be performed.

SUBCONTRACTOR accepts the risk of delays and acceleration caused by the rate of progress of the Work changing as directed by CONTRACTOR. The SUBCONTRACTOR acknowledges that the CONTRACTOR has made no warranties to the SUBCONTRACTOR, express or implied, that the SUBCONTRACTOR will be able to follow normal, orderly sequence in the performance of SUBCONTRACTOR's Work or that there will be no delays in, or interference with, the SUBCONTRACTOR's Work. The SUBCONTRACTOR shall be prepared to do its Work out of sequence in accordance with the requirements of the Project, when and if required by CONTRACTOR. The Contract Sum includes all overtime, increase in crew size, etc. as required, including Saturdays, Sundays, and Holidays, in order for the SUBCONTRACTOR to maintain its Work item time duration schedule.

LIMITATION OF REMEDIES – NO DAMAGES FOR DELAY. The SUBCONTRACTOR's exclusive remedy for delays in the performance of the contract caused by events beyond its control, including delays claimed to be caused by the CONTRACTOR, Owner, Architect, or Engineer, or attributable to the CONTRACTOR, Owner, Architect, or Engineer and including claims based on breach of contract or negligence, shall be an extension of its contract time, and under no circumstances will SUBCONTRACTOR be entitled to any monetary claim or compensation. Any claims for additional time by the SUBCONTRACTOR for delay must be submitted to the CONTRACTOR within the time and in the manner in which the CONTRACTOR must submit such claims to the Owner, and that failure to comply with the conditions for giving notice and submitting claims shall result in the waiver of such claims.

SUBCONTRACTOR is to perform work ONLY during specified authorized working hours as authorized in writing by the CONTRACTOR. Under no circumstances is SUBCONTRACTOR to perform ANY work or otherwise have any work crews present on the jobsite without the CONTRACTOR present. SUBCONTRACTOR is solely responsible for full compliance with this important Contract requirement.

SUBCONTRACTOR agrees to complete work segments within the performance time durations as listed below and overall Progress Schedule. SUBCONTRACTOR specifically acknowledges and agrees to these duration times including completion of all punch list requirements for its work – as necessary to achieve final acceptance of its work by the CONTRACTOR and Owner and includes in the Subcontract Price all necessary costs required to achieve completion within the listed times. Duration times are all in calendar days and include sufficient time as required to receive inspection approvals from all authorities having jurisdiction.

7)    CHANGE ORDERS. When CONTRACTOR orders in writing, SUBCONTRACTOR, without nullifying this Agreement, shall make any and all changes in Subcontract Work. No adjustments shall be made for any changes performed by SUBCONTRACTOR that have not been ordered by CONTRACTOR. The Subcontract Price may only be modified by written change order signed by both parties. Authorization for any changed or extra work or costs whatsoever may be only made in writing signed by CONTRACTOR's Project Manager or Executive Officer. Contractor's Superintendent is not authorized to make any changes or issue any extra cost approvals to SUBCONTRACTOR either verbal or in writing. Any changes or extra costs attempted to be recovered by SUBCONTRACTOR based on any approvals or directives by CONTRACTOR's Superintendent or anyone else that is not CONTRACTOR's Project Manager or Executive Officer will not be recognized. The only CONTRACTOR representative authorized to approve additional scope and costs is the Project Manager or Executive Officer. A Change Order is a written instrument prepared by CONTRACTOR and signed by SUBCONTRACTOR stating their agreement upon the change in Subcontract Work. In the event of a change in the work, the SUBCONTRACTOR's claim for adjustments in the contract sum are limited exclusively to its actual costs for such changes plus no more than 10% for overhead and 5% profit.

8)    CHANGE ORDER ADJUSTMENTS. In consideration for any adjustments in the time and the Subcontract Sum, SUBCONTRACTOR hereby releases CONTRACTOR and Owner from all claims, demands or causes of action arising out of the transactions, events and occurrences giving rise to the Change Order, including without limitation all direct and indirect costs and all schedule impacts.

9)    PAYMENT.



Initial    Initial
Sub    Contractor

DocuSign Envelope ID: 5C42C47E-DFC9-4FED-9808-FEB9A184CB4A

## Standard Short Form Agreement Between Contractor and Subcontractor

**9.1    SCHEDULE OF VALUES.** The schedule of values (SOV) is a condition of payment, per SOV detailed in Exhibit "A". SUBCONTRACTOR to provide progress invoicing per Exhibit "A" and as provided by CONTRACTOR they may use the project Billing Invoice Tool in Procore.

**9.2    PROGRESS AND FINAL PAYMENTS.** Progress payments due to SUBCONTRACTOR, less retainage as specified herein, shall be made to SUBCONTRACTOR for Subcontract Work satisfactorily performed no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for SUBCONTRACTOR's Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for SUBCONTRACTOR's Work. These payments are not due if there is reason for withholding as specified herein and/or SUBCONTRACTOR has not satisfied all conditions precedent to payment specified herein.

**9.2.1    PROGRESS PAYMENTS.** Progress Payments due under the Subcontract will not be released until all of the following conditions have been met:

.1      Subcontract Agreement has been signed by SUBCONTRACTOR without modification and returned to CONTRACTOR;

.2      Proper Insurance Certificates have been received;

.3      CONTRACTOR's approval of SUBCONTRACTOR's Schedule of Values;

.4      SUBCONTRACTOR has presented to CONTRACTOR, for its approval, an Application for Payment and other documents required by Paragraph 10;

.5      Progress payments, less retainage, shall be made to SUBCONTRACTOR, for Subcontract Work satisfactorily performed, no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for Subcontract Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for Subcontract Work. These payments are subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or CONTRACTOR.

.6      CONTRACTOR's receipt in current funds from the Owner for the progress payments due the SUBCONTRACTOR. It shall be an express condition precedent to any obligation or liability of the CONTRACTOR to the SUBCONTRACTOR for any payment to the SUBCONTRACTOR that the CONTRACTOR is in receipt of payment in current funds from the Owner for the SUBCONTRACTOR's work. If the Owner has not paid the CONTRACTOR for any reason whatsoever, including the Owner's financial inability to pay or other reason not related to the SUBCONTRACTOR, the SUBCONTRACTOR agrees that the CONTRACTOR shall not be liable for payment and not be indebted to the SUBCONTRACTOR. The SUBCONTRACTOR assumes the credit risk of the Owner and agrees that it is relying on the Owner's credit and not that of the CONTRACTOR. The SUBCONTRACTOR further agrees that, as a portion of the consideration for the award of the Subcontract, he agrees to assume, and hereby assumes, the same risk as does the CONTRACTOR for non-payment by the Owner and accordingly. In the event that the Owner fails to pay the CONTRACTOR progress payments, interim payment, claims for increased work, claims for changed work, final payments, or any other form of payment otherwise due to the CONTRACTOR, the SUBCONTRACTOR shall be absolutely barred, estopped, and precluded from instituting any suit, arbitration or other claim against the CONTRACTOR or the Surety until and unless the Owner first pays the CONTRACTOR. In other words, payment by the Owner to the CONTRACTOR of sums necessary to pay the SUBCONTRACTOR is a condition precedent to CONTRACTOR's obligation to pay SUBCONTRACTOR and to the bringing of any lawsuit, arbitration or other claims by the SUBCONTRACTOR against the CONTRACTOR. If CONTRACTOR has provided payment or performance bonds or a combination payment and performance bond, the obligation of CONTRACTOR and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of CONTRACTOR's prior receipt of payment from the Owner for the progress payments due the SUBCONTRACTOR. This provision is incorporated by reference into any such bond or bonds.

.7      Any supplemental work provided b others for this scope of work has been paid in full.

**9.2.2    FINAL PAYMENT.** All conditions precedent of this Subcontract which apply to progress payments shall also apply to final payment. As additional express conditions precedent to SUBCONTRACTOR's entitlement to final payment, the SUBCONTRACTOR shall have fully performed all its Work in accordance with the Contract Documents, the Architect shall have issued a certificate for payment covering the SUBCONTRACTOR's completed Work, any certificates of occupation or certificates of completion required to be issued by any authority having jurisdiction shall have been issued, the CONTRACTOR shall have received payment from the Owner, the CONTRACTOR shall have received consent of SUBCONTRACTOR's surety to final payment (if any), and the SUBCONTRACTOR shall provide to the CONTRACTOR its Affidavit and Final Release of Lien/Claim, all final lien waivers from its sub-subcontractors and vendors, warranties,



Initial _____ (GF)    Initial _____ (RIA)

Sub                   Contractor

Alterations in this Agreement are Prohibited              Page 24 of 42

## Standard Short Form Agreement Between Contractor and Subcontractor

special warranties, all required executed warranty and guaranty documents, guarantees, parts lists, all maintenance and operations manuals, all close-out documents described in the Project Manual (Specification Book), Bid Package Book, and Addenda, two complete sets of "As-Built" prints acceptable to the CONTRACTOR (one hard copy and one electronic copy), and other Project close-out documents required by the Contract Documents. Should CONTRACTOR's close-out of the entire Project and receipt of final payment from Owner be delayed as a result of SUBCONTRACTOR's delay or failure to submit all such Project close-out documents relating to SUBCONTRACTOR's Work, SUBCONTRACTOR will be responsible for any costs and expenses and damages sustained by CONTRACTOR as a result of such delay or failure. Further, SUBCONTRACTOR's compliance with all other provisions of the Contract Documents is a condition precedent to SUBCONTRACTOR's right to final payment.

**9.3    STORED MATERIALS.** Payments for stored materials will only be made subject to the pre-approval, restrictions and requirements of Owner and CONTRACTOR. Payments will be made, less retainage and only to extent of monies received by CONTRACTOR from Owner, for the stored items under the Owner – CONTRACTOR Agreement. Payments to SUBCONTRACTOR will be made no sooner than ten days after the date payment for the stored materials is received by CONTRACTOR from Owner. In no case, will stored materials be paid for items other than those necessary to be on site to guarantee the progress of the Project and as specifically pre-approved by CONTRACTOR. SUBCONTRACTOR includes protection of all stored materials and safeguards necessary to insure adequate protection to the satisfaction of the CONTRACTOR and OWNER. SUBCONTRACTOR must provide a proper and secure storage facility for all stored material at its own expense. SUBCONTRACTOR must also provide satisfactory insurance coverage as required in Exhibit "E" attached hereto and made part of this Subcontract. CONTRACTOR will not reimburse SUBCONTRACTOR for materials either misplaced, damaged, or stolen.

**9.4    PAYMENTS WITHHELD.** CONTRACTOR shall have the right to withhold and to reduce any payments to SUBCONTRACTOR for (a) any indebtedness owed by SUBCONTRACTOR to CONTRACTOR, (b) defective work not remedied or defective materials not removed and replaced, (c) third-party claims filed or reasonable evidence indicating probable filing of such claims, (d) claimed failure of the SUBCONTRACTOR to make payments to its subcontractors, suppliers, or laborers, (e) reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract Price, (f) damage to CONTRACTOR or another subcontractor, (g) reasonable indication that the Work will not be completed within the Contract Time/CONTRACTOR's Progress Schedule, (h) unsatisfactory or untimely prosecution of the Work by the SUBCONTRACTOR, or (i) any failure by the SUBCONTRACTOR to comply with the Contract Documents. Items (a) – (i) shall be grounds for default under this Agreement as well. Independent of any other right hereunder, CONTRACTOR may deduct from any payments due or to become due SUBCONTRACTOR amounts equal to any claims asserted against SUBCONTRACTOR in connection with SUBCONTRACTOR's Work on this Project or on any other Project including, but not limited to, lien claims, bond claims, unpaid bills, defective work, incomplete work, and damage to the work of CONTRACTOR. When the basis for disapproval or withholding has been remedied, the SUBCONTRACTOR shall be paid the amounts withheld.

**9.5    JOINT CHECK PAYMENTS.** CONTRACTOR reserves the right to pay any obligations of SUBCONTRACTOR arising on this Project by checks made payable jointly or directly to SUBCONTRACTOR and/or its suppliers or its SUBCONTRACTORS, with any amounts so paid reducing the balance due SUBCONTRACTOR. Joint or direct payments made by CONTRACTOR do not relieve SUBCONTRACTOR of any obligation under this Subcontract.

**9.6    WAIVER OF CLAIMS.** Final payment shall constitute a waiver of all claims by SUBCONTRACTOR relating to Subcontract Work, but shall in no way relieve SUBCONTRACTOR of any liability to CONTRACTOR, including liability for warranties, or for nonconforming or defective work discovered after final payment.

## 10)    INDEMNITY

**10.1**    The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, Architect, Engineer, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work, or any breach of or failure to comply with any of the provisions of this SUBCONTRACT or the Contract Documents by SUBCONTRACTOR.

Initial **BFJ**      Initial **BLA**        Alterations to this Agreement are Prohibited
Sub:          Contractor

DocuSign Envelope ID: 5C42C1TE-DFC34FFD-4829-71FR6A1184E3

## Standard Short Form Agreement Between Contractor and Subcontractor

10.2   The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work (regardless of cause or of any concurrent or contributing fault or negligence of CONTRACTOR, Owner, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of this Subcontract or the Contract Documents by SUBCONTRACTOR. The SUBCONTRACTOR's indemnification obligation to CONTRACTOR, Owner, and all of their agents, officers, and employees (the "Indemnitees") for occurrences caused by the sole, contributory, or concurrent negligence of the Indemnitees shall be limited, on a per occurrence basis, to the greater of $1,000,000.00 (as prescribed by Florida Statute § 725.06), the price of this Subcontract, or the limits of liability of the insurance policies provided pursuant to this Agreement, which SUBCONTRACTOR acknowledges and agrees bears a reasonable commercial relationship to this Subcontract.

10.3   SUBCONTRACTOR and its surety, if any, hereby agrees to defend, indemnify, and hold harmless CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives from any loss or damage and to reimburse CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives for any and all claims, costs, and expenses, including but not limited to attorneys' fees, legal fees, expert witness fees, and court costs that CONTRACTOR, CONTRACTOR's surety and/or Owner may incur because of:

10.3.1   Claims and liens for labor performed or materials used or furnished through or under SUBCONTRACTOR for the Project;

10.3.2   any personal injury, loss, damage or death to any person or persons and any property damage arising out of the performance or nonperformance of Work required in this Subcontract, including, without limitation, any personal injury or loss, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder, provided, however, SUBCONTRACTOR's indemnity hereunder shall not arise if such injury, loss, damage or death results from the gross negligence or willful, wanton or intentional misconduct of a party indemnified hereunder;

10.3.3   SUBCONTRACTOR's failure or the failure of any of its employees to comply with any law, ordinance, rule, regulation or requirement, including, but not limited to, any Occupational Safety and Health Administration violations and any penalties, including enhancements, resulting in whole or in part by SUBCONTRACTOR's acts or omissions.

10.4   CONTRACTOR, in its sole discretion, may defend any or all of the indemnified claims or tender to SUBCONTRACTOR the defense of any or all of the indemnified claims. Upon such tender by CONTRACTOR to SUBCONTRACTOR, SUBCONTRACTOR shall be obligated to assume the defense of CONTRACTOR in the indemnified claims, including the settlement negotiations, and shall pay and satisfy any and all settlements, judgments, sanctions, awards, or expenses, including attorneys' fees, resulting from or arising out of the indemnified claims without reimbursement from CONTRACTOR.

10.5   If CONTRACTOR tenders the defense of an indemnified claim to SUBCONTRACTOR and SUBCONTRACTOR fails or neglects to assume that defense, CONTRACTOR may compromise or settle or defend any such action, and SUBCONTRACTOR shall be bound and obligated to reimburse CONTRACTOR for the amount expended by it in settling, compromising, or defending any such claim, or in the amount expended by CONTRACTOR in paying any settlement or judgment rendered therein, together with all reasonable attorneys' fees and expenses of litigation incurred by CONTRACTOR by reason of its defense, settlement, or compromise of such indemnified claims.

10.6   Neither final payment by CONTRACTOR nor acceptance of the Work performed by SUBCONTRACTOR shall constitute a waiver of the foregoing indemnities, and notwithstanding any other provision contained in this Subcontract, the provisions of this paragraph shall survive the termination of this Subcontract.

10.7   In any claims by any employee of the SUBCONTRACTOR, the SUBCONTRACTOR's sub-contractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, against any persons or entities indemnified hereunder the indemnification obligation shall not be limited as to the amount or type of damages,

Standard Short Form Agreement Between Contractor and Subcontractor

compensation, or benefits payable by or for the SUBCONTRACTOR or the SUBCONTRACTOR's sub-contractors under Workers' Compensation acts, disability benefit acts or other employee benefit acts.

**11)    CORRECTION OF WORK, DEFAULT, AND TERMINATION.**

**11.1    CORRECTION OF WORK.** SUBCONTRACTOR shall promptly correct all of SUBCONTRACTOR's Work rejected by CONTRACTOR, Architect or Owner as defective or failing to conform to the Contract Documents, whether observed before or after Substantial Completion. SUBCONTRACTOR shall bear all costs of correcting rejected work, including compensation for Architect's or CONTRACTOR's additional services, if required.

**11.2    FAILURE OF PERFORMANCE.** Should SUBCONTRACTOR fail to satisfy contractual deficiencies, or to commence and continue satisfactory correction of any default with diligence or promptness within one (1) working day from receipt of CONTRACTOR's written notice, then CONTRACTOR, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and charge the cost thereof to SUBCONTRACTOR, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees. In the event of an emergency affecting safety of persons or property, CONTRACTOR may proceed as above without notice.

**11.3    TERMINATION BY OWNER.** Should Owner terminate its prime agreement with the CONTRACTOR or any part which includes SUBCONTRACTOR's Work, CONTRACTOR shall notify SUBCONTRACTOR in writing within three (3) days of termination and, upon written notification, this Agreement shall be terminated and SUBCONTRACTOR shall immediately stop Subcontract Work, follow all of CONTRACTOR's instructions, and mitigate all costs. In the event of Owner termination, CONTRACTOR liability to SUBCONTRACTOR shall be limited to the extent of CONTRACTOR recovery on SUBCONTRACTOR's behalf under the prime agreement.

**11.4    TERMINATION BY CONTRACTOR.** If SUBCONTRACTOR fails to commence and satisfactorily continue correction of a default within one (1) working day after written notification from CONTRACTOR, then CONTRACTOR may issue a second written notification, to SUBCONTRACTOR and its surety, if any. Such notice shall state that if SUBCONTRACTOR fails to commence and continue correction of a default within five (5) days of the written notification, the Agreement will be automatically terminated. CONTRACTOR may furnish those materials, equipment and/or employ such workers or replacement subcontractor(s) as CONTRACTOR deems necessary to maintain the orderly progress of CONTRACTOR's work. All costs incurred by CONTRACTOR in performing Subcontract Work, including damages, extended general conditions, liquidated damages, reasonable overhead, profit, and attorneys' fees, costs and expenses, shall be deducted from any monies due or to become due SUBCONTRACTOR. SUBCONTRACTOR shall be liable for payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount. At SUBCONTRACTOR's request, CONTRACTOR shall provide a detailed accounting of the costs to finish Subcontract Work.

**12)    CLAIMS AND DISPUTES.**

**12.1    CLAIMS RELATING TO CONTRACTOR.** SUBCONTRACTOR shall give CONTRACTOR written notice of all claims within seven (7) days of the existence of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed absolutely waived by SUBCONTRACTOR. All unresolved claims, disputes and other matters in question between CONTRACTOR and SUBCONTRACTOR shall be resolved in the manner provided in this Agreement.

**12.2    LIQUIDATED DAMAGES.** Inasmuch as SUBCONTRACTOR's failure to complete its Work within the timeframe specified herein will result in substantial injury to the Contractor and whereas damages arising from such failure cannot be calculated with any degree of certainty, it is hereby agreed that if such Subcontract Work is not substantially completed as herein defined within the time fixed herein or within such further time, if any, as shall be allowed for such performance or completion in accordance with the provisions of this Subcontract, the SUBCONTRACTOR shall pay to the Contractor, as liquidated damages for such delay and not as a penalty, One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) per day for each and every calendar day that the SUBCONTRACTOR fails to complete its Work, including all punchlist work ("CONTRACTOR's Liquidated Damages"). SUBCONTRACTOR's obligation for such liquidated damages is irrespective of, and is in no way dependent upon, whether Owner assesses liquidated damages against the Contractor or whether it is impossible to determine the degree of harm caused by SUBCONTRACTOR's delay. SUBCONTRACTOR acknowledges that its failure to timely complete its Subcontract Work will cause financial harm to Contractor irrespective of whether or not Owner assesses any liquidated damages against Contractor. This provision for liquidated damages shall

Initial [BFJ]    Initial [SIA]    Alterations to this Agreement are Prohibited    Page 27 of 42
Sub          Contractor

Case 6:24-cv-01416-JSS-DCI    Document 96-3    Filed 04/15/25    Page 387 of 655
DocuSign Envelope ID: 5C42C17E-DFC9-4FED-8905-7FE9AA194E52 PageID 2571

## Standard Short Form Agreement Between Contractor and Subcontractor

In no manner affect the Contractor's right to terminate this Subcontract as provided for elsewhere in this Subcontract and other Contract Documents, and Contractor's exercise of the right to terminate shall not release the SUBCONTRACTOR from its obligation to pay said liquidated damages.

If the CONTRACTOR's agreement with the Owner provides for liquidated or other damages for delay, and such damages are assessed, CONTRACTOR may assess a share of the damages against SUBCONTRACTOR in proportion to SUBCONTRACTOR's share of responsibility for the delay. This apportionment shall be in addition to the CONTRACTOR's Liquidated Damages.

**12.3    WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, SUBCONTRACTOR shall continue Subcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. If SUBCONTRACTOR continues to perform, CONTRACTOR shall continue to make payments of amounts undisputedly owed to SUBCONTRACTOR in accordance with this Agreement.

**12.4    MULTIPARTY PROCEEDING.** The parties agree, to the extent permitted by the prime agreement, that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between CONTRACTOR and SUBCONTRACTOR involve in whole or in part disputes between CONTRACTOR and Owner, disputes between SUBCONTRACTOR and CONTRACTOR shall be decided by the same tribunal and in the same forum as disputes between CONTRACTOR and Owner, and SUBCONTRACTOR agrees to consolidation and joinder of the same.

**12.5    STAY OF PROCEEDINGS.** In the event that provisions for resolution of disputes between CONTRACTOR and Owner contained in the prime agreement do not permit consolidation or joinder with disputes of third parties, such as SUBCONTRACTOR, resolution of disputes between SUBCONTRACTOR and CONTRACTOR involving in whole or in part disputes between CONTRACTOR and Owner shall be stayed pending conclusion of any dispute resolution proceeding between CONTRACTOR and Owner.

**12.6    DIRECT DISCUSSION.** If a dispute arises out of or relates to this Agreement, the parties shall endeavor to settle the dispute through direct discussion.

**12.7    MEDIATION.** Disputes between SUBCONTRACTOR and CONTRACTOR not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The parties shall select the mediator within fifteen (15) days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution.

**12.8    OTHER DISPUTE PROCESSES.** If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.

**ARBITRATION.** At the sole discretion of the CONTRACTOR or its Surety, all claims, counterclaims, disputes, and other matters in question between the CONTRACTOR or its Surety and the SUBCONTRACTOR or its Surety (if applicable) arising out of this Agreement or the breach thereof shall be decided by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining. CONTRACTOR expressly reserves its right on behalf of CONTRACTOR and its Surety to have any dispute resolved by binding arbitration, including but not limited to those initiated by SUBCONTRACTOR, in which event the parties agree that the litigation will be dismissed and the dispute will proceed in arbitration. If the CONTRACTOR or its Surety elects to submit the claims, counterclaims, disputes, and other matters in question to binding arbitration, it will give the other party notice of its intent, and the parties will proceed in accordance with the Construction Industry Rules of the American Arbitration Association. The award rendered by the arbitrator shall be final, and judgment shall be entered upon it in accordance with applicable Florida law.

**12.9    COST OF DISPUTE RESOLUTION.** The cost of any mediation proceeding shall be shared equally by the parties participating. Additionally, the parties agree to bear their own attorneys' fees and costs for any dispute arising out of this Agreement and/or the Project and knowingly, voluntarily, and intentionally and expressly waive and relinquish any and all statutory or other rights to recover attorney's fees or costs from CONTRACTOR, its Surety, if any, and Owner for any dispute arising out of this Agreement and/or the Project.



Initial _____    Initial _____    Alterations to this Agreement are Prohibited    Page 28 of 42

Sub    Contractor

DocuSign Envelope ID: 5042C178-DFC8-4FED-9B68-7FBB6411ME3

## Standard Short Form Agreement Between Contractor and Subcontractor

13)    NO PRESUMPTION AGAINST DRAFTER. The Parties expressly agree that they freely and voluntarily enter into this Agreement and have had the opportunity to obtain assistance of legal counsel of their choice in reviewing its terms prior to execution. The Parties acknowledge and agree that no rule of construction applies to the disadvantage of a party because that party was responsible for the preparation of this Subcontract or part of it.

14)    MISCELLANEOUS PROVISIONS.

14.1    If required for this Subcontract, pursuant to Executive Order 11-02 signed by the Florida Governor on January 4, 2011 and other applicable law, SUBCONTRACTOR will utilize the E-verify system, established by the U.S. Department of Homeland Security to verify the employment eligibility of its employees and any of its subcontractors assigned to perform work on the Project. This, when required, is a continuing obligation that applies throughout the duration of the Project, and SUBCONTRACTOR acknowledges that any additional personnel, not previously verified, that may be assigned to the Project will be subject to the aforementioned E-verification. Results of the E-verification will be provided to CONTRACTOR and remain in the SUBCONTRACTOR's project records for review by CONTRACTOR and/or Owner as requested. Additionally, SUBCONTRACTOR shall certify to CONTRACTOR by affidavit that the SUBCONTRACTOR has verified through the E-verify system the employment status of each employee assigned to work on the Project. SUBCONTRACTOR shall be responsible for including this provision in all its' subcontracts issued as a result of this Subcontract.

14.2    The SUBCONTRACTOR has no power to assign its rights or duties under this Subcontract. The parties expressly acknowledge that in selecting the SUBCONTRACTOR, the CONTRACTOR considered various factors, including but not limited to the SUBCONTRACTOR's reputation, quality of work, and capacity to perform. SUBCONTRACTOR specifically agrees not to assign, sell, or transfer any accounts receivables under this Subcontract to any third-party factoring company or related business. NEITHER THE OWNER NOR THE CONTRACTOR SHALL BE LIABLE TO ANY THIRD PARTIES FOR PAYMENT OF ANY ASSIGNED ACCOUNTS RECEIVABLES.

14.4    By acceptance of this Subcontract, SUBCONTRACTOR guarantees its prices contained herein for the duration of the Project, through the date of Final payment by the Owner. The SUBCONTRACTOR expressly agrees that external conditions outside the control of SUBCONTRACTOR, including but not limited to materials shortages and price escalations, have been accounted for in the Contract price and shall not constitute the basis for a time extension or a claim for additional compensation of any type.

14.5    This Contract is specifically intended to be for the benefit of the Owner. The Owner may maintain an action for breach of this Subcontract. However, SUBCONTRACTOR is not an intended third-party beneficiary of the Agreement between Owner and CONTRACTOR.

14.6    No right or remedy in this Subcontract is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.

14.7    The obligations of the CONTRACTOR and SUBCONTRACTOR under this Subcontract are expressly conditioned upon the CONTRACTOR's successfully entering into a contract with the Owner for the Project. If the Owner shall decline for any reason whatsoever to enter into a contract with the CONTRACTOR for the Project, then this Subcontract shall automatically become null and void and CONTRACTOR and SUBCONTRACTOR shall be discharged from their respective obligations hereunder. Further, in such event, CONTRACTOR shall have no liability of any kind to SUBCONTRACTOR including, without limitation, cancellation charges.

14.8    If applicable, the Owner may choose to directly purchase materials as a tax exempted entity as defined by the IRS and the State of Florida, and if this option is available to the Owner and the Owner decides to use this option, the SUBCONTRACTOR will be notified and shall comply with the Owner Direct Purchase program by providing a credit for the material being purchased directly including the sales tax attributable thereto.

14.9    The nondiscrimination clauses contained in Section 202 of Executive Order 11246, as amended, Section 402 of the Vietnam Era Veteran's Readjustment amended, relative to equal opportunity for all persons within regard to race, color, religion, sex national origin, handicapped, Vietnam Era or disabled veteran and the implementing rules and regulations prescribed by the Secretary of Labor are incorporated herein.



Initial _____ DFJ    Initial _____ BLA    Alterations to this Agreement are Prohibited    Page 29 of 42
Sub              Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

**15)    SUBCONTRACTOR'S WAIVER OF JURY TRIAL.** The SUBCONTRACTOR and its Surety expressly and voluntarily waive all rights to a jury trial in any claim or dispute arising from the Subcontract, the Project, and/or any associated Bond(s).

CONTRACTOR: Portrait Construction of Florida

BY: *Bruce L. Abbey President*

PRINT NAME:  Bruce L. Abbey President

PRINT TITLE:   President

DATE:  10/4/2021

WITNESS:

SUBCONTRACTOR: BFARR Exteriors

BY: *Brian Farr*

PRINT NAME:  Brian Farr

PRINT TITLE:   MGMR

DATE:  10/4/2021

WITNESS:

Initial BFJ  Sub

Initial BLA  Contractor

**Alterations to this Agreement are Prohibited**

Page 30 of 42

## Standard Short Form Agreement Between Contractor and Subcontractor

# EXHIBIT A
# SCHEDULE OF VALUES

| # | Cost Code | Description | Type | Amount |
|---|-----------|-------------|------|--------|
| 1 | 09-02423-50 - Cement Stucco - Units | Stucco | Subcontract | $1,626,782.00 |
| | | | Grand Total: | $1,626,782.00 |

**Standard Short Form Agreement Between Contractor and Subcontractor**

## EXHIBIT B
## OCIP Manual and Requirements

Included by Separate Attachment,
Please Reference for Instructions



DocuSign Envelope ID: 5D42C17F-DFD04FFD-AB0B-21FFBA41A4E2

Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

SUPPLEMENTARY CONDITIONS
OF THE CONTRACT FOR
CONSTRUCTION

U.S. Department of Housing
and Urban Development
Office of Housing

OMB Approval No. 2502-0598
(Exp. 06/30/2017)

Public Reporting Burden for this collection of information is estimated to average 0.2 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Response to this request for information is required in order to receive the benefits to be derived. This agency may not collect this information, and you are not required to complete this form unless it displays a currently valid OMB control number. While no assurance of confidentiality is pledged to respondents, HUD generally discloses this data only in response to a Freedom of Information Act request.

### Article 1: Labor Standards

A. **Applicability.** The Project or program to which the construction work covered by this Contract pertains is being assisted or insured by the United States of America, and the following Federal Labor Standards Provisions are included in this Contract or related instrument pursuant to the provisions applicable to such Federal assistance or insurance. Any statute or regulation contained herein shall also include any subsequent amendment or successor statute or regulation.

B. **Minimum Wages.** Pursuant to Section 212 of the National Housing Act, as amended, 12 U.S.C. 1715c, the minimum wage provisions contained in this paragraph B do not apply to those projects with Security Instruments insured under Section 221(h)(1) designed for less than 9 families and they do not apply to those projects with Security Instruments insured under either Section 220 or 233 designed for less than 12 families.

1. (i) All laborers and mechanics employed or working upon the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the Project) shall be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR Part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics. Contributions made or costs reasonably anticipated for bona fide fringe benefits under Section 1 (b)(2) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)) on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of 29 CFR 5.5(a)(1)(iv); also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs, which cover the particular weekly period, are deemed to be constructively made or incurred during such weekly period. Such laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed, without regard to skill, except as provided in 29 CFR 5.5(a)(4). Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein: Provided, that the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classification and wage rates conformed under 29 CFR 5.5(a)(1)(ii)) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

(ii) (a) Any class of laborers or mechanics that is not listed in the wage determination and that is to be employed under this Contract shall be classified in conformance with the wage determination. HUD shall approve an additional classification and wage rate and fringe benefits only when the following criteria have been met:

Previous editions are obsolete.
Replaces form HUD/62554

Construction Contract Supp

HUD-92554A (06/14)

Initial ___ BFJ ___
Sub

Initial ___ BLA ___
Contractor

**Alterations to this Agreement are Prohibited**

Page 33 of 42

DocuSign Envelope ID: 5C42G1YE-0PD9-4FED-9604-71E2BA1194E2

## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

(1) The work to be performed by the classification requested is not performed by a classification in the wage determination; and

(2) The classification is utilized in the area by the construction industry; and

(3) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination

(b) If the Contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and HUD or its designee agree on the classification and wage rate (including the amount designated for fringe benefits where appropriate), a report of the action taken shall be sent by HUD or its designee to the Administrator of the Wage and Hour Division, U.S. Department of Labor, Washington, D.C. 20210 ("Administrator"). The Administrator, or an authorized representative, shall approve, modify, or disapprove every additional classification action within thirty (30) days of receipt and so advise HUD or its designee or shall notify HUD or its designee within the thirty (30) day period that additional time is necessary. (Approved by the Office of Management and Budget under OMB control number 1215-0140.)

(c) In the event the Contractor, the laborers or mechanics to be employed in the classification or their representatives and HUD or its designee do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), HUD or its designee shall refer the questions, including the views of all interested parties and the recommendation of HUD or its designee, to the Administrator for determination. The Administrator, or an authorized representative, shall make a determination within thirty (30) days of receipt and so advise HUD or its designee or shall notify HUD or its designee within the thirty (30) day period that additional time is necessary. (Approved by the Office of Management and Budget under OMB Control Number 1215-0140.)

(d) The wage rate (including fringe benefits where appropriate) determined pursuant to subparagraphs B.1.(ii)(b) or (c) of this Article, shall be paid to all workers performing work in the classification under this Contract from the first day on which work is performed in the classification.

(iii) Whenever the minimum wage rate prescribed in the Contract for a class of laborers or mechanics includes a fringe benefit that is not expressed as an hourly rate, the Contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(iv) If the Contractor does not make payments to a trustee or other third person, the Contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program, Provided, That the Secretary of Labor has found, upon the written request of the Contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Contractor to set aside in a separate account assets for the meeting of obligations under the plan or program. (Approved by the Office of Management and Budget under OMB Control Number 1215-0140.)

2. **Withholding.** HUD or its designee shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the Contractor under this Contract or any other Federal contract with the same prime contractor, or any other Federally-assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same prime contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees and helpers, employed by the Contractor or any subcontractor the full amount of wages required by the Contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee or helper, employed or working on the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the Project), all or part of the wages required by the Contract, HUD or its designee may, after written notice to the Contractor, sponsor, applicant, or Owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased. HUD or its designee may, after written notice to the Contractor, disburse such amounts withheld for and on account of the Contractor or subcontractor to the respective employees to whom they are due.



Initial ___ Initial ___    Alterations to this Agreement are Prohibited    Page 34 of 42

Sub         Contractor

DocuSign Envelope ID: 3C42017F-DFC9-4FFD-9B05-71F89A118AF3

## Standard Short Form Agreement Between Contractor and Subcontractor

### Exhibit C

3. **Payrolls, records, and certifications.**

(i) Payrolls and basic records relating thereto shall be maintained by the Contractor during the course of the work and preserved for a period of three years thereafter for all laborers and mechanics working at the site of the work (or under the United States Housing Act of 1937, or under the Housing Act of 1949, in the construction or development of the Project). Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in Section 1 (b)(2)(B) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)), daily and weekly number of hours worked, deductions made and actual wages paid. Whenever the Secretary of Labor has found under 29 CFR 5.5(a)(1)(iv) that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in Section 1 (b)(2)(B) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(i)), the Contractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs. (Approved by the Office of Management and Budget under OMB Control Numbers 1215-0140 and 1215-0017.)

(ii)(a) The Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to HUD or its designee if the agency is a party to the Contract, but if the agency is not such a party, the Contractor shall submit the payrolls to the applicant, sponsor, or Owner, as the case may be, for transmission to HUD or its designee. The payrolls submitted shall set out accurately and completely all of the information required to be maintained under 29 CFR 5.5(a)(3)(i), except that full social security numbers and home addresses shall not be included on weekly transmittals. Instead the payrolls shall only need to include an individually identifying number for each employee (e.g., the last four digits of the employee's social security number) The required weekly payroll information may be submitted in any form desired. Optional Form WH-347 is available for this purpose from the Wage and Hour Division Web site at http://www.dol.gov/whd/forms/wh347.pdf or its successor site. The prime contractor is responsible for the submission of copies of payrolls by all subcontractors. Contractors and subcontractors shall maintain the full social security number and current address of each covered worker, and shall provide them upon request to HUD or its designee if the agency is a party to the Contract. but if the agency is not such a party, the Contractor will submit the payrolls to the applicant sponsor, or Owner, as the case may be, for transmission to HUD or its designee, the Contractor, or the Wage and Hour Division of the Department of Labor for purposes of an investigation or audit of compliance with prevailing wage requirements. It is not a violation of this subparagraph for a prime contractor to require a subcontractor to provide addresses and social security numbers to the prime contractor for its own records, without weekly submission to HUD or its designee.(Approved by the Office of Management and Budget under OMB Control Number 1215-0149.)

(b) Each payroll submitted shall be accompanied by a "Statement of Compliance," signed by the Contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the Contract and shall certify the following:

(1) That the payroll for the payroll period contains the information required to be provided under 29 CFR 5.5(a)(3)(ii), the appropriate information is correct and complete;

(2) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the Contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in 29 CFR Part 3;

Previous editions are obsolete.                                    Construction Contract Supp.                                    HUD-9755M (05/14)
Replaces form HUD-0255s



initial      initial                          **Alterations to this Agreement are Prohibited**          Page 35 of 42
Sub          Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

### Exhibit C

(3) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the Contract.

(c) The weekly submission of a properly executed certification set forth on the reverse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by subparagraph B.3.(ii)(b) of this Article.

(d) The falsification of any of the above certifications may subject the Contractor or subcontractor to civil or criminal prosecution under Section 1001 of Title 18 and Sections 3801 et seq of Title 31 of the United States Code.

(iii) The Contractor or subcontractor shall make the records required under subparagraph B.3.(i) of this Article available for inspection, copying, or transcription by authorized representatives of HUD or its designee or the Department of Labor, and shall permit such representatives to interview employees during working hours on the job. If the Contractor or subcontractor fails to submit the required records or to make them available, HUD or its designee may, after written notice to the Contractor, sponsor, applicant, or Owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

### 4. Apprentices and Trainees.

(i) Apprentices. Apprentices shall be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Office of Apprenticeship, or with a State Apprenticeship Agency recognized by such Office, or if a person is employed in his or her first ninety (90) days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Office of Apprenticeship, or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Contractor as to the entire work force under is not registered or otherwise employed as stated above, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where the Contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Contractor's or subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. In the event the Office of Apprenticeship, or a State Apprenticeship Agency recognized by such Office, withdraws approval of an apprenticeship program, the Contractor shall no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(ii) Trainees. Except as provided in 29 CFR 5.16, trainees shall not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a

Previous editions are obsolete;
Replaces form HUD-9255a

Construction Contract Supp.

HUD-9255M (08/14)



initial BFJ    initial BLA

Sub    Contractor

**Alterations to this Agreement are Prohibited**    Page 35 of 42

DocuSign Envelope ID: BC42O11E DFC5 AFED-4855-7IR59A11AAN

## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

percentage of the journeyman's hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed on the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate on the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the Contractor shall no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(iii) Equal employment opportunity. The utilization of apprentices, trainees and journeymen under 29 CFR Part 5 shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30.

5. Compliance with Copeland Act Requirements. The Contractor shall comply with the requirements of 29 CFR Part 3, which are incorporated by reference in this Contract.

6. Subcontracts. The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in subparagraphs 1 through 10 of this paragraph 8 and such other clauses as HUD or its designee may by appropriate instructions require, and a copy of the applicable prevailing wage determination, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all Contract clauses referenced in this subparagraph.

7. Contract termination and debarment. A breach of the Contract clauses in 29 CFR 5.5 may be grounds for termination of the Contract, and for debarment as a contractor or a subcontractor as provided in 29 CFR 5.12

8. Compliance with Davis-Bacon and Related Act Requirements. All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5 are herein incorporated by reference in this Contract

9. Disputes concerning labor standards. Disputes arising out of the labor standards provisions of this Contract shall not be subject to the general disputes clause of this Contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and HUD or its designee, the U.S. Department of Labor, or the employees or their representatives.

10. Certification of Eligibility.
(i) By entering into this Contract, the Contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of Section 3(a) of the Davis-Bacon Act (40 U.S.C. 3144(b)(2)) or 29 CFR 5.12(a)(1) or to be awarded HUD contracts or participate in HUD programs pursuant to 24 CFR Part 24

(ii) No part of this Contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of Section 3(a) of the Davis-Bacon Act (40 U.S.C. 3144(b)(2)) or 29 CFR 5.12(a)(1) or to be awarded HUD contracts or participate in HUD programs pursuant to 24 CFR Part 24.

(iii) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001. Additionally, U.S. Criminal Code, Section 1010, Title 18, U.S.C., "Federal Housing Administration transactions".

Previous editions are obsolete.                    Construction Contract Stop                    HUD-9250AM (16/14)
Replaces form HUD-63554



Initial _____    Initial _____
Sub              Contractor

**Alterations to this Agreement are Prohibited**                    Page 37 of 42

## Standard Short Form Agreement Between Contractor and Subcontractor

### Exhibit C

provides in part: "Whoever, for the purpose of . . . influencing in any way the action of such Department . . . makes, passes, utters or publishes any statement, knowing the same to be false . . . shall be fined under this title or imprisoned not more than two years, or both."

#### C. Contract Work Hours and Safety Standards Act.

1. **Applicability and Definitions.** This paragraph C of Article 1 is applicable only if a direct form of federal assistance is involved, such as Section 8, Section 202/811 Capital Advance, grants etc., and is applicable only where the prime contract is in an amount greater than $100,000. As used in this paragraph D, the terms "laborers" and "mechanics" include watchmen and guards.

2. **Overtime requirements.** No contractor or subcontractor contracting for any part of the Contract work that may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of forty (40) hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of forty (40) hours in such workweek.

3. **Violation, liability for unpaid wages; liquidated damages.** In the event of any violation of the immediately preceding subparagraph C.2, the Contractor and any subcontractor responsible therefore shall be liable for the unpaid wages. In addition, the Contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory) for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of such subparagraph, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of forty (40) hours without payment of the overtime wages required by the clause set forth in such subparagraph.

4. **Withholding for unpaid wages and liquidated damages.** HUD or its designee shall, upon its own action or upon written request of an authorized representative of the Department of Labor, withhold or cause to be withheld from any moneys payable on account of work performed by the Contractor or subcontractor under any such contract, or under any other Federal contract with the same prime contractor, or under any other Federally-assisted contract subject to the Contract Work Hours and Safety Standards Act which is held by the same prime contractor such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in subparagraph 3 of this paragraph C.

5. **Subcontracts.** The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in subparagraphs 1 through 5 of this paragraph C and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the clauses set forth in such subparagraphs 1 through 5.

#### D. Certification.

For projects with Security Instruments insured under the National Housing Act, as amended, that are subject to paragraph B of this Article 1, the Contractor is required to execute the Contractor's Prevailing Wage Certificate within HUD-92448 as a condition precedent to insurance by HUD of the Loan, or an advance thereof, made or to be made by the Lender in connection with the construction of the Project.

### Article 2: Equal Employment Opportunity

A. **Applicability.** This Article 2 applies to any contract for construction work, or modification thereof, as defined in the regulations of the Secretary of Labor at 41 CFR Chapter 60, which is paid for in whole or in part with funds obtained from the Federal Government or borrowed on the credit of the Federal Government pursuant to a grant, contract, loan insurance, or guarantee, or undertaken pursuant to any Federal program involving such grant, contract, loan, insurance, or guarantee.



## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

B. The Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, disability, or national origin. The Contractor shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment without regard to their race, color, religion, sex, disability or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training including apprenticeship. The Contractor agrees to post in conspicuous places available to employees and applicants for employment notices to be provided setting forth the provisions of this nondiscrimination clause.

C. The Contractor shall, in all solicitations or advertisements for employees placed by or on behalf of the Contractor state that all qualified applicants shall receive consideration for employment without regard to race, color, religion, sex, disability or national origin.

D. The Contractor shall send to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding a notice to be provided advising the said labor union or workers representatives of the Contractor's commitments hereunder, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

E. The Contractor shall comply with all provisions of Executive Order 11246 of September 24, 1965 and of the rules, regulations, and relevant orders of the Secretary of Labor.

F. The Contractor shall furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and shall permit access to its books, records, and accounts by the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

G. In the event of the Contractor's noncompliance with the nondiscrimination clauses of this Contract or with any of the said rules, regulations, or orders, this Contract may be canceled, terminated, or suspended in whole or in part and Contractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulations or order of the Secretary of Labor, or as otherwise provided by law.

H. The Contractor shall include the provisions of paragraphs A through H of this Article 2 in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, so that such provisions shall be binding upon each subcontractor or vendor. The Contractor shall take such action with respect to any subcontract or purchase order as HUD or the Secretary of Labor may direct as a means of enforcing such provisions, including sanctions for noncompliance. Provided, however, that in the event the Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by HUD or the Secretary of Labor, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

Article 3: Equal Opportunity for Businesses and Lower Income Persons Located Within the Project Area

A. This Article 3 is applicable to projects covered by Section 3, as defined in 24 CFR Part 135.

B. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from HUD and is subject to the requirements of Section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that to the greatest extent feasible opportunities for training and employment be given to lower income residents of the unit of local government or the

Previous editions are obsolete.                    Construction Contract Supp                    HUD-5235SH (00/14)
Replaces form HUD-00564



Initial _____ DFJ        Initial _____ ELA

Sub                        Contractor

Alterations to this Agreement are Prohibited        Page 39 of 42



## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

metropolitan area (or non-metropolitan county) as determined by HUD in which the Project is located and contracts for work in connection with the Project be awarded to business concerns which are located in, or owned in substantial part by persons residing in the same metropolitan area (or non-metropolitan county) as the Project.

### Article 4: Health and Safety

A. This Article 4 is applicable only where the prime contract is in an amount greater than $100,000.

B. No laborer or mechanic shall be required to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his or her health and safety as determined under construction safety and health standards promulgated by the Secretary of Labor by regulation.

C. The Contractor shall comply with all regulations issued by the Secretary of Labor pursuant to 29 CFR Part 1926, and failure to comply may result in imposition of sanctions pursuant to the Contract Work Hours and Safety Standards Act, 40 USC 3701 et seq.

D. The Contractor shall include the provisions of this Article 4 in every subcontract so that such provisions shall be binding on each subcontractor. The Contractor shall take such action with respect to any subcontract as HUD or the Secretary of Labor shall direct as a means of enforcing such provisions.

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (08/14)

Initial  BFJ    Initial  BLA

Sub          Contractor

**Alterations to this Agreement are Prohibited**    Page 40 of 42

**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit D**

**HUD IDENTITY OF INTEREST DISCLOSURE REQUIREMENT**

HUD requires full disclosure of any Identity of Interest (IOI) for this project. An IOI is defined as a financial or business interest or family relationship that exists between Borrower, or any of its officers, directors, stockholders, partners, managers, managing members, members, or principals ("Principals") and the Architect, General Contractor, subcontractors, suppliers, equipment lessors, or any of their Principals.

**If Subcontractor has an Identity of Interest (IOI) with any party listed below, then Subcontractor is required to disclose the IOI and notify Mark Portrait Construction immediately:**

Berkadia Commercial Mortgage, LLC
LN Apartments, LLC
FLN Apts, LLC
Mark Baron Construction, Inc. dba Mark Portrait Construction
Charlan Brock & Associates

SUBCONTRACTOR:

*Brian Farr*

By _____
(Signature)

Brian Farr   MGMR
(Name and Title)

Signed on (date): 10/4/2021

CONTRACTOR:

*Bruce L. Abbey President*

By _____
(Signature)

Bruce L. Abbey, President
(Name and Title)

Signed on (date): 10/4/2021

Initial BFJ   Initial BLA
Sub        Contractor

Alterations to this Agreement are Prohibited      Page 41 of 42

**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit E**

**HUD PREVAILING WAGE ACKNOWLEDGEMENT**

---

**FUTURA AT NONA COVE - EXHBIT "E" –
PREVAILING WAGE ACKNOWLEDGEMENT**

---

Subcontractor understands that the Futura at Nona Cove project is subject to the Davis-Bacon Act requirements. Subcontractor agrees to furnish all prevailing wage forms fully executed, prior to beginning of work (one-time forms). Subcontractor agrees to comply with all applicable requirements of the Davis-Bacon Act and submit reporting forms on a weekly basis.

**This project will require the payment of Davis-Bacon (FEDERAL) wage rate for each trade.**

Subcontractor shall comply with the Copeland Act Requirement pursuant to 29 CFR Part 32, Contract Work Hours and Safety Standards Act (CWHSSA), Equal Employment Opportunity (EEO) as defined in Secretary of Labor at 41 CFR Chapter 60 and Health and Safety as issued by the Secretary of Labor pursuant to 29 CFR Part 196.

Subcontractor shall include the Labor Compliance Contract Addendum in every contract and purchase order, unless exempted. The Labor Compliance Contract Addendum is included in the Prevailing Wage Manual.

**Please note that it is Subcontractor's responsibility to ensure that all Sub-Subcontractors comply with these requirements as well.**

SUBCONTRACTOR:

By _Brian Farr_
(Signature)

Brian Farr MGMT
(Name and Title)

Signed on (date): 10/4/2021

CONTRACTOR:

By _Bruce L Abbey President_
(Signature)

Bruce L. Abbey, President
(Name and Title)

Signed on (date): 10/4/2021

Initial BFJ    Initial BLA
Sub          Contractor

Alterations to this Agreement are Prohibited        Page 42 of 42



**BFARR**
**ENTERPRISES**
*Building Relationships*

3500 Aloma Ave, STE #C6
Winter Park, FL 32792
Phone: 321-444-6446

Aug 26-14
Date of
Contract

3/8/2021

Portrait Construction
Lake Mary, FL

Direct: 407-831-6275

Architect: Charlan-Broch-Associates
Architecturals dated: Revised 1-6-19

*Future Of Nona Cove*
*Lake Nona, Florida*

BFARR Exteriors proposes to complete the following Scopes:
Weather Barriers, Stucco, Siding, Foam bands, and Stone to include all related accessories.

**Building Breakdown:**
Bldg 1                    1 ea

**Scope of Work-Weather Barriers: Barricade Wraps & Tapes for system warranty**

1. Exterior frame walls to receive one layer of Barricade Plus building wrap.
2. All exterior openings to receive peel-n-stick membrane, flex wrap, and head flashing as indicated in architectural drawings.
3. All weep screeds to receive one (1) layer of 4" peel-n-stick if shown on plans.
4. All roof to wall areas to receive one (1) layer of 4" peel-n-stick if shown on Plans. As well as flashing & Peel and stick tapes @ dissimilar material abutments.
5. All Columns to be wrapped with one (1) layer of peel-n-stick 6" each way on OSC.
6. All columns to receive 1 layer of building wrap
7. Clean up of wrap & tape debris to dumpster supplied and maintained by general contractor.
8. Equipment supplied by Bfarr Exteriors to complete this scope of work.
9. 12" Peel and stick 6" each way at all ISO-OSC

*Base Bid =*

**Scope of Work-Stucco and Hard coat Foam Shapes**

1. All exterior frame walls to receive 7/8" conventional stucco system applied over 2.5# galvanized metal lath with texture shown in plans. Fine Sand finish is an upcharge.
2. Ext. masonry walls to receive 5/8" conv. stucco if Applicable.
3. PVC casing bead sizes (5/8" - 7/8") with or without Weep used as stucco stops.
4. All stucco bands made with Hardcoat Foam.
5. PVC foundation weep to be installed at bottom of all exterior frame walls per plans.
6. PVC casing bead to be located at the termination of stucco and dissimilar materials over all frame construction. And around all windows and doors in stucco or Stone
7. Decorative bands @ Windows in Stucco to be hardcoat foam, smooth per plans.
8. Corner beads to be located at all exterior corners shall be PVC.
9. All expansion joints located per industry standards (not to exceed 144 sf) shall be PVC.
10. Clean up of debris to dumpster supplied and maintained by general contractor
11. Scaffolding and equipment provided by Bfarr Exteriors to complete this scope of work.

*Base Bid =*

i

Scope of Work: Manufacturers to be Smooth Hardie Trim, Lap & Panel. See Alternates at Bottom

1. 8.25 " Hardie lap siding (7" exposer) installed per plans & Manufacturers spec's.
2. 4/4 Battens in Panel & 5/4 trim installed where indicated on plans.
3. Install Hardie bands per plans.
4. Hardie Panels with Battens per plans to be all Wood Grain
5. ISC & OSC with Hardie Trim per plans.

Base Bid =

### Scope of Work-Stone:

1. Veneer Stone to be installed per plans
2. 60 Minute paper and 2.5 Metal Lath installed as a base for Stone
3. PVC Trims installed as stops for stone

Base Bid =

### Exclusions:

1. Exterior sheathing, backing, blocking, and miscellaneous carpentry to be by others.
2. All caulking and sealants to be by others except at PVC trim joints.
3. All exterior flashing and counterflashing to be by others unless noted above.
4. All stework is excluded.
5. Any interior finish work.
6. All exterior ceilings to be by others.

### Cedar Mill Total Bid =

### Alternates:

1. Cost to use in lieu of 5/4 Cav. Match trim  Deduct
2. Cost increase for using all Smooth Hardie Siding   ADD
3. Cost increase to Wrap Panel Areas 2nd Time   ADD

Price Breakdown for each building or area by scope are available upon request.

Sincerely,

Kandy Bizzle
Estimator

2

# EXHIBIT E



## ADDITIONAL PROVISIONS TO THE SUBCONTRACT AGREEMENT

**HUD PROVISIONS:**

1) All parties hereby agree that SUBCONTRACTOR assures that either he or an authorized representative of his company will attend all jobsite meetings as established by CONTRACTOR's supervisory staff unless their presence is not requested by CONTRACTOR. In the event a representative shall represent SUBCONTRACTOR at these meetings, said representative shall be able to make binding commitments on all matters to be discussed at such meetings, including cost, payments, change orders, time schedules and manpower requirements. Further, financial penalties per meeting will be imposed if SUBCONTRACTOR or SUBCONTRACTOR's representative is not present at these meetings. The following person(s) are designated as SUBCONTRACTOR's representatives having the authority as stated herein.

Subcontractor Designated Representative:      Nathan Shirley

(Optional Representative)      na

Subcontractor Certified Payroll Contact & Phone #      Tiffany Tomich, (727) 530-5473 ttomich@cemplexgroup.com

2) Requirement of, per US Department of Housing and Urban Development, HUD 92442-A, SUBCONTRACTOR waives right to file a mechanic's or materialman's lien or maintain any claim against improvements for or on account of any work done, labor performed or materials furnished under this Subcontract agreement.

3) SUBCONTRACTOR agrees to send Certified HUD payroll sheets in weekly for this Subcontract Agreement. (Through Elations.com; #067-35564 Futura @ Nona Cove)

4) Before work commences, the SUBCONTRACTOR shall enroll in Futura at Nona Cove's Owner Controlled Insurance Policy with Willis Towers Watson with the contact listed below:

Janice McNary, CISR
OCIP Administrator, Construction Practice
Willis Towers Watson
3407 W. Dr. Martin Luther King Blvd.
Lakeside Suite #200
Tampa, FL 33607
Mobile: 813-450-9654
Janice.mcnary@willistowerswatson.com
www.willistowerswatson.com

5) It is fully understood that SUBCONTRACTOR will be responsible for keeping its part of the job clean and in an orderly fashion subject to the approval of CONTRACTOR and ARCHITECT. Further, SUBCONTRACTOR shall be totally responsible for the clean up on a daily basis of all debris generated by SUBCONTRACTOR'S daily operations. Should it become necessary for CONTRACTOR to incur any expenses performing cleanup work or removing debris from site for SUBCONTRACTOR, such expense will be deducted from SUBCONTRACTOR's contract amount.

6) All work shall be in accordance with Project Plans and Specifications.

7) Project includes **Davis Bacon Wages rates**, see attached at end of Contract.

## Standard Short Form Agreement Between Contractor and Subcontractor

This Agreement is made this 13th day of October, 2021 by and between

**GENERAL CONTRACTOR:**                    **SUBCONTRACTOR:**
Portrait Construction of Florida, Inc       Cemplex Group Florida, LLC
2452 Lake Emma Rd. #1040                    13136 95th Street N
Lake Mary, Florida 32746                    Largo, Florida 33773
Phone: (407) 831-6275                       Phone: (727) 530-5473

PROJECT:     Futura at Nona Cove

OWNER:       LN Apartments, LLC

ARCHITECT:   Charlan Brock & Associates

ENGINEER:    Z Development Services

### TERMS:

**SUBCONTRACTOR'S WORK**. SUBCONTRACTOR agrees to provide and complete all Work ("Work") required of it under the Contract Documents, including, but not limited to, all labor, services, materials, installation, clean-up, hoisting, supplies, insurance equipment, scaffolding, tools, and other facilities of every kind required for the prompt and efficient performance of all Elevated Concrete and Gypcrete. The Work is per the Drawings and Specifications in strict accordance with the Contract Documents. SUBCONTRACTOR shall give timely notices to authorities pertaining to subcontract Work and shall be responsible for all permits, fees, licenses, assessments, inspections, testing and taxes necessary to complete subcontract Work.

**SUBCONTRACT AMOUNT**. CONTRACTOR agrees to pay SUBCONTRACTOR for satisfactory and timely performance and completion of subcontract Work: $534,191.00

Retainage shall be ten percent (10.0%).

### SCOPE:

### DURATION:

Subcontractor shall furnish all labor, materials, supervision, service, equipment, tools, taxes, insurance, licenses, and permits necessary for the complete and proper installation of the Work described below in accordance with the Construction Documents, Governing Authorities, manufacturers' specifications and recommendations, and the approved shop drawings. Submittals and mix designs to be part of the contract documents. Work shall include, however not be limited to the "Clarifications" listed below and the following:
Gypcrete

1. All necessary gypcrete pumping.
2. Minimum 2000 psi interior gypsum floor fill.
3. ¾ " Gypcrete floor covering.



Initial   NS      Initial   BLA
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

4. 1/8 inch minimum sound underlayment in hard surface flooring locations. No sound mat included under tubs, bedrooms, and bedroom closets.
5. Pour stops material, removal, and placement to be by others. All trimming of isolation strips to be by others.
6. Twelve (12) Mobilizations and One (1) Pre-pour.
7. OCIP

Elevated Concrete

1. Normal weight concrete fill as all elevated balconies at 2" max and elevated stair landings at 3" max.
2. Exterior waterproofing and flashings for all balcony concrete fill areas including prefabricated termination and combination pockets.
3. Base and Cemplex style pan flashing at elevated balcony openings.
4. Aluminum "T" bar edge form at balcony concrete fill locations with one and one half inch (1.5") aluminum T-bars. Drip spacing as required for exterior finishes.
5. Cemplex Pockets on all outside corners.
6. All necessary concrete pumping.
7. Minimum 3000 psi light weight concrete at balconies and stair landings.
8. All flashing and waterproofing per Cemplex waterproofing details.
9. Flood testing prior to concrete placement.
10. All balconies subfloor to be pre-sloped prior to pour and not to exceed ADA requirements.
11. Tooled joints in normal weight concrete to be included.
12. (8) Mobilizations.
13. OCIP

1. **The Clarifications** are an integral part of this Agreement and are for clarifications, additions and/or deletions to the plans and specifications.
2. **Subcontract Agreement:** It is understood that this Agreement is a lump sum contract. All work and associated costs to complete the work as required by the Construction Documents and specifications and herein described is this Subcontractors responsibility. Submittals and design mixes to be part of the contract documents.
3. **On Site Storage of Materials:** Storage of materials on site shall be coordinated with Contractor. All space shall be assigned on an as needed basis as determined by Contractor. Subcontractor shall assume the risk for all material and equipment stored on-site. No payment shall be made for materials stored on site.
4. **Product Substitution:** Subcontractor may, with prior approval from Contractor, provide products of equal or better quality, as determined by Contractor, than that specified in the drawings and/or specifications. Subcontractor shall make request for such product substitution in writing and shall include any changes in the scopes of work of other trades work that are affected by such substitution so that any and all costs incurred may be fully analyzed by Contractor. Any cost incurred by Contractor as a result of substitution to other trades work not brought to the attention of Contractor by Subcontractor as noted above will result in back charges for such cost plus Administrative charges as outlined in the Subcontract Agreement. Subcontractor shall provide, with request for product substitution, cut sheets of both the specified product and the substituted item. Contractor shall review product substitution for cost effectiveness, product quality and equality to specification. Any product substitution resulting in increased cost to other trades work that is not fully offset in cost by the substituted product will not be approved. All product substitution shall have warranties as provided by the specified product. Subcontractor shall warranty the difference between substituted products with lesser warranty periods or coverage and the specified products.
5. **Construction Documents:** As a part of this Agreement, Contractor shall provide Subcontractor with access (see login information below) to the Construction Documents listed in "Exhibit D" such that Subcontractor may either print or save those documents for their use. The Construction Documents are updated regularly, and while Contractor will make reasonable attempts to notify Subcontractor of revisions, it shall be the sole responsibility of this Subcontractor to monitor these documents throughout the duration of the project.

**Standard Short Form Agreement Between Contractor and Subcontractor**

Gypcrete

1. **Submittals/Shop Drawings:** Submittals/Shop Drawings shall be delivered to Contractor within ten (10) days of the execution of this Agreement.
2. **Included Building/Structures:** The following buildings/structures are specifically included within this Agreement:

   1. Apartment building.

3. **Mobilizations:** Twelve (12) total mobilizations are included in this Agreement. The unit cost of additional mobilizations is $3,000.00 per mobilization. Consecutive days on site are included for pours but are not considered separate mobilizations.
4. **Clean Up:** Subcontractor to clean all concrete splatter, primers, adhesives and debris from the site at the end of each mobilization. Subcontractor to place all sand and washout debris in Contractor's dumpster prior to demobilizing from the site.
5. **Gypcrete Installation:**
6. Install gypcrete (Treadstone FR25) Gypcrete 2000 psi minimum before drywall has been installed and taped.
7. Gypcrete thickness to be three quarters of an inch (¾") minimum and poured on top of 1/8 "sound mat in areas to receive hard surface flooring.
8. Gypcrete cubes for structural testing to be taken by Cemplex's independent third-party agency.
9. **Gypcrete Pre Pours:**
10. Included is a total of one (1) free standing pre-pour per phase to include and all others to be scheduled with other building pours.
11. Pour stops for the tub and shower locations will be provided and installed by others.
12. **Finishing Gypcrete:**
13. Extra care to be exercised in pouring and finishing gypcrete so as to assure a smooth and even finish suitable to receive vinyl plank and/or ceramic tile flooring.
14. If such a finish is not achieved during the installation of the gypcrete, then it will be the sole responsibility and expense of Subcontractor to sand or repair such area to achieve a suitable surface for the installation of the final flooring material. Tolerance rating is not included and pouring to a flat smooth surface. Finished flooring contractor acknowledges that some light sanding or skim patch may be required.
15. Subcontractor not responsible for irregularities resulting from variances in the wood substrate.
16. **Sound Control Measures:**

    1. Sound underlayment (1/8" thick sound mat) to be installed under gypsum in all hard surface floor areas.
    2. This includes all areas inside the apartment unit with the exception of bedrooms, bedroom closets and areas under tubs/showers.
    3. Isolation strips to be provided where gypcrete transitions from carpet to hard surfaces. Alternative manufacturer transition details may be utilized with prior written approval from Contractor. Trimming of isolation strip to be by others.
    4. Sound mat will not be installed in units that are located on the ground floor.

17. **Perimeter Isolation Strips:** Perimeter isolation strips will be provided in the hard surface areas only. If isolation strips are required for 100% of the interior elevated private units, it will be an add of $7,436.00.
18. **Exclusions:**

    1. Pour Stops
    2. Painting of T-bars.
    3. Stair treads.

Elevated Concrete



Initial _NS_    Initial _BLA_         **Alterations to this Agreement are Prohibited**         Page 4 of 38
Sub          Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

1. **Submittals/Shop Drawings:** Submittals/Shop Drawings shall be delivered to Contractor within ten (10) days of the execution of this Agreement.
2. **Included Building/Structures**: The following buildings/structures are specifically included within this Agreement:

    1. Apartment building.

3. **Elevated Concrete Installation:** Elevated concrete to be minimum 3500 psi mix at balconies and stair landings with fiber reinforcement. Balcony concrete to be poured as two inch (2") thick maximum with slope to one and one half inch (1.5") T-Bar. Stair landings to be poured at three inch (3") average thickness. A broom finish will be utilized at all elevated concrete locations. Concrete underlayment to be sixty (60) mil membrane and securely turned up the wall a minimum of six inches (6"). Waterproofing to include the base flashing of all door openings located at the upper floor balconies as required to maintain the water proofing system. Cemplex pockets shall be used at all outside locations. Subcontractor to provide a maximum half inch (1/2") in vertical rise at the balcony door thresholds.
4. **Flashing:** Subcontractor to furnish and install all flashing, including but not limited to the following items:

    1. Subcontractor to submit shop drawings for approval of all flashing and water proofing details. Any deviations from the Construction Documents to be approved in writing by Architect and Contractor prior to installation.
    2. All flashing per details and/or Subcontractor's approved shop drawings. Base flashing of doors and counter flashing at second, third, fourth and fifth floor exterior swing doors per details and/or Subcontractor's approved shop drawings.
    3. All flashing to flashing lap joints to be set in a bed of sealant to form a water tight seal.
    4. Where aluminum flashing, one and one half inch (1.5") T-bar, or door sills lap galvanized flashing, a layer of the waterproofing membrane will be applied between the dissimilar materials to prevent electrolysis.
    5. One and one half inch (1.5") T-Bar with drip edge spacing to allow for future installation of exterior finishes per details.
    6. Combination and termination pockets as shown.

5. **Mobilizations:** Eight (8) for elevated concrete in this Agreement. The unit cost of additional mobilizations is $3000.00 per mobilization. Consecutive days on site are included for pours but are not considered separate mobilizations.
6. **Clean Up:** Subcontractor to clean all concrete splatter, primers, adhesives, and debris from the site at the end of each mobilization. Subcontractor to place all sand and washout debris in Contractor's dumpster prior to demobilizing from the site. Special care to be taken on the pouring of the stair treads and landings. Composite cleanup is not included in this subcontractor's scope.
7. **Elevated Concrete Installation:**
8. Concrete to be placed prior to the installation of drywall.
9. Concrete to be 3500 psi minimum, normal weight concrete ~139 pcf, air entrained.
10. 2" max depth normal weight concrete at the elevated private balconies with Cemplex waterproofing and 3" max depth at the stair landings with no waterproofing.
11. A light broom finish shall be utilized at balconies and stair landings. Broom finish to be installed parallel with the slope of the concrete.
12. Concrete underlayment should consist of 60 mil membrane which should also be securely turned up the wall a minimum of six inches (6").
13. Waterproofing to include wall base, counter, corner flashing and waterproofing of door openings located in upper floor locations as required to maintain a complete and functional water proofing system.
14. Flood Testing of all balconies is included.
15. Coordinate installation with moisture intrusion contractor to have all inspected prior to pouring.
16. **Sloping of Concrete:** Subcontractor to provide sloping of elevated weight concrete as shown, including but not limited to, areas behind columns, patio corners and areas with floor drains.
17. **Broomed Concrete:**

    1. Elevated balconies and stair landings to have a broom finish (stair treads are precast and excluded).

**Standard Short Form Agreement Between Contractor and Subcontractor**

2. Where concrete is sloped, the direction of the broom finish should be parallel with the slope of the concrete. This applies where the concrete itself is sloped and where trusses are sloped, resulting in the concrete ultimately having slope.

18. **Exclusions:**

    1. Welded metal pockets.
    2. Stair treads.
    3. Sealing or staining of any concrete.
    4. Composite cleanup.
    5. Isolation strip trimming.



## Standard Short Form Agreement Between Contractor and Subcontractor

**1)** **CONTRACT DOCUMENTS.** The "Contract Documents" include 1) this Subcontract Agreement and all documents attached hereto as Exhibits; 2) all documents which comprise the Contract between the Owner and CONTRACTOR; 3) all General Conditions, Supplementary Conditions and other conditions applicable to the Project; 4) the Plans and Drawings prepared for the Project; 5) the Project Manual or Specifications, including but not limited to Specification Divisions 1 through 16; 6) all bulletins and addenda issued in connection with the Project; 7) all standards, requirements or conditions incorporated into the Contract Documents by reference; and 8) any amendments, modifications, or changes to any or all of those documents identified in (1) – (7) which may occur during the Project. No other documents except those identified herein shall be considered Contract Documents. In the event of conflict, inconsistencies, variations between the provisions of the Subcontract Agreement and any other Contract Documents, including the Contract between the Owner and CONTRACTOR, the Subcontract Agreement shall govern. SUBCONTRACTOR and its sub-subcontractors and suppliers shall be bound to CONTRACTOR by all of the provisions of the Contract Documents and shall strictly comply therewith in all respects. SUBCONTRACTOR shall perform Subcontract Work under the general direction of CONTRACTOR and shall cooperate with CONTRACTOR so CONTRACTOR may fulfill obligations to Owner. A. This subcontractor agrees to specifically adhere to the requirements of Division 00 and 01 of the specifications. As the CONTRACTOR and SUBCONTRACTOR have been party to the design and engineering of the project, they have a thorough knowledge of the Contract Documents. Therefore, the SUBCONTRACTOR accepts full responsibility for the completeness and coordination of its scope of Work as to ensure quality installation and product. Any material, assembly, device, detail, component, and/or means/method which may not necessarily be shown on the Contract Documents but is required to make the project complete and suitable for its intended purpose shall be the SUBCONTRACTOR's sole responsibility without any adjustment to the subcontract amount.

**1a)** **Drawing Log**

| | | FUTURA AT NONA COVE 10.16.19 | | |
|---|---|---|---|---|
| Discipline | Drawing No. | Drawing Title | Revision | Drawing Date |
| Civil | C0 | CIVIL DATA AND NOTES SHEET | 3 | 6/15/2020 |
| Civil | C1.0 | OVERALL SITE PLAN | 2 | 6/15/2020 |
| Civil | C1.1 | DEMOLITION PLAN | 2 | 6/15/2020 |
| Civil | C2.0 | SITE DIMENSION PLAN | 3 | 6/15/2020 |
| Civil | C2.1 | EMERGENCY & SOLID WASTE AUTO TURN ANALYSIS | 2 | 6/15/2020 |
| Civil | C3.0 | SITE UTILITY PLAN | 8 | 6/26/2020 |
| Civil | C4.0 | GRADING AND DRAINAGE PLAN | 2 | 6/15/2020 |
| Civil | C4.1A | CIVIL DATA AND NOTES SHEET | 1 | 6/15/2020 |
| Civil | C4.1B | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.1C | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.2 | COURTYARD & POOL AREA GRADING PLANS | 1 | 6/15/2020 |
| Civil | C4.3A | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3B | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3C | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C5.0 | SWPP PLAN | 3 | 6/15/2020 |
| Civil | C6 | CONSTRUCTION DETAILS | 4 | 6/15/2020 |
| Civil | C7 | OUC STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | C8 | OUC DETAILS/CITY OF ORLANDO STANDARD NOTES | 4 | 6/15/2020 |
| Civil | C9 | OCU SEWER STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | CV | COVER SHEET | 7 | 6/26/2020 |
| Radon | R1.0 | UNITS S1-A2 | 0 | 11/15/2019 |
| Radon | R2.0 | UNITS A3 - B1 | 0 | 11/15/2019 |
| Radon | R3.0 | UNITS B2 - B3 | 0 | 11/15/2019 |
| Radon | R4.0 | UNITS C1-C2 | 0 | 11/15/2019 |
| Radon | R5.0 | CLUBHOUSE | 0 | 11/15/2019 |
| Architectural | A0.01 | PROJECT COVER SHEET | 5 | 7/31/2020 |
| Architectural | A0.02 | PROJECT INDEX OF DRAWINGS | 11 | 8/12/2020 |
| Architectural | A0.02a | DESIGN ASSUMPTIONS | 1 | 5/16/2019 |



Initial ___ NS ___    Initial ___ BLA ___

Sub          Contractor

**Alterations to this Agreement are Prohibited**      Page 7 of 38

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Architectural | A0.03 | PROJECT INDEX OF DRAWINGS | 6 | 7/31/2020 |
| Architectural | A0.04 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.05 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.06 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.07 | PROJECT DATA SHEET | 1 | 7/31/2020 |
| Architectural | A0.08 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.10 | ARCHITECTURAL SITE PLAN | 4 | 7/31/2020 |
| Architectural | A0.11 | OVERALL BUILDING FIRST FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.12 | OVERALL BUILDING SECOND FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.13 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.21 | OVERALL CLUBHOUSE OCCUPANCY PLAN | 4 | 7/31/2020 |
| Architectural | A0.31 | FIRST FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.32 | SECOND FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.33 | UPPER FLOORS SEQUENCE PLANS | 3 | 7/31/2020 |
| Architectural | A0.41 | OVERALL BUILDING GROUND FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.42 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.43 | OVERALL BUILDING SIXTH FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.44 | OVERALL BUILDING TYPICAL ROOF LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A1.00 | OVERALL BUILDING SLAB CONTROL PLAN | 3 | 7/31/2020 |
| Architectural | A1.01 | OVERALL BUILDING FIRST FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.02 | OVERALL BUILDING SECOND FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.03 | OVERALL BUILDING THIRD FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.04 | OVERALL BUILDING FOURTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.05 | OVERALL BUILDING FIFTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.06 | OVERALL BUILDING ROOF CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.11A | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11B | PARTIAL FIRST FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.11C | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11D | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11E | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11F | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12A | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12B | PARTIAL SECOND FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.12C | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12D | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12E | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12F | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13A | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13B | PARTIAL THIRD FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.13C | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13D | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13E | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13F | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14A | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14B | PARTIAL FOURTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.14C | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14D | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14E | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14F | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15A | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |



Initial _NS_ Sub    Initial _BLA_ Contractor    **Alterations to this Agreement are Prohibited**

## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | A1.15B | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A1.15C | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15D | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15E | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15F | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16A | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16B | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16C | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16D | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16E | PARTIAL ROOF PLAN BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16F | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.21 | FIRST FLOOR GARAGE PLAN | 7 | 7/31/2020 |
| Architectural | A1.22 | SECOND FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.23 | THIRD FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.24 | FOURTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.25 | FIFTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.26 | SIXTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.27 | ROOF LEVEL GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.28 | ROOF LEVEL GARAGE SLAB PLAN | 3 | 7/31/2020 |
| Architectural | A2.01 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.02 | OVERALL BUILDING ELEVATIONS | 6 | 7/31/2020 |
| Architectural | A2.03 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.04 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.05 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.06 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.07 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.08 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.09 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.11 | PARTIAL ENLARGED BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A3.11 | TYPICAL CLUB BUILDING SECTION | 1 | 7/31/2020 |
| Architectural | A3.21 | TYPICAL GARAGE BUILDING SECTION | 3 | 7/31/2020 |
| Architectural | A4.01 | UNIT S1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02 | UNIT A1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02A | UNIT A1 PLAN | 2 | 7/31/2020 |
| Architectural | A4.03 | UNIT A2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.04 | UNIT A3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.05 | UNIT B1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.06 | UNIT B2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.07 | UNIT B3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.08 | UNIT C1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.21 | CLUB PLAN FIRST FLOOR DIMENSIONS | 7 | 8/12/2020 |
| Architectural | A4.22 | CLUB PLAN SECOND FLOOR DIMENSIONS | 5 | 7/31/2020 |
| Architectural | A4.23 | CLUB PLAN FIRST FLOOR NOTES | 4 | 8/12/2020 |
| Architectural | A4.24 | CLUB PLAN SECOND FLOOR NOTES | 4 | 7/31/2020 |
| Architectural | A4.25 | ENLARGED MAIL ROOM | 3 | 7/31/2020 |
| Architectural | A4.31 | ENLARGED GARAGE PLANS | 4 | 7/31/2020 |
| Architectural | A4.32 | ENLARGED CLOSET PLANS | 2 | 7/31/2020 |
| Architectural | A4.33 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.34 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.35 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.36 | ENLARGED TRASH AND RECYCLING PLANS | 2 | 7/31/2020 |
| Architectural | A4.71 | ACCESSIBILITY REQUIREMENTS DWELLING UNITS | 2 | 7/31/2020 |



**Standard Short Form Agreement Between Contractor and Subcontractor**

| Architectural | A4.72 | ACCESSIBILITY REQUIREMENT PUBLIC SPACES | 2 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A4.81 | ENLARGED UNIT ACCESSIBILITY PLANS | 3 | 7/31/2020 |
| Architectural | A4.91 | INTERIOR ELEVATIONS UNITS | 3 | 7/31/2020 |
| Architectural | A4.92 | INTERIOR ELEVATIONS UNITS | 1 | 7/31/2020 |
| Architectural | A5.01 | APARTMENT BUILDING WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.02 | GARAGE WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.11 | TYPICAL EXTERIOR WALL SECTIONS | 3 | 7/31/2020 |
| Architectural | A5.21 | TYPICAL TENANT WALL SECTIONS | 4 | 7/31/2020 |
| Architectural | A5.22 | TYPICAL TENANT WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.31 | TYPICAL BALCONY WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.41 | GARAGE WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.01 | STAIR PLANS | 2 | 7/31/2020 |
| Architectural | A6.02 | STAIR SECTIONS | 3 | 7/31/2020 |
| Architectural | A6.03 | STAIR SECTION AND PLAN | 1 | 7/31/2020 |
| Architectural | A6.04 | STAIR SECTION AND PLANS | 2 | 7/31/2020 |
| Architectural | A6.11 | TYPICAL STAIR DETAILS | 2 | 7/31/2020 |
| Architectural | A6.12 | PRECAST STAIR DETAILS | 1 | 7/31/2020 |
| Architectural | A6.21 | ELEVATOR PLAN AND SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.41 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.42 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A7.01 | DOOR SCHEDULE | 4 | 7/31/2020 |
| Architectural | A7.02 | WINDOW SCHEDULE | 4 | 8/12/2020 |
| Architectural | A7.03 | DOOR & WINDOW INSTALLATION DETAILS | 3 | 7/31/2020 |
| Architectural | A7.11 | TYPICAL DOOR DETAILS | 3 | 7/31/2020 |
| Architectural | A7.21 | TYPICAL WINDOW DETAILS | 3 | 7/31/2020 |
| Architectural | A7.22 | TYPICAL STOREFRONT DETAILS | 4 | 7/31/2020 |
| Architectural | A7.31 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.32 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.33 | TYPICAL ARCHITECTURAL DETAILS | 2 | 7/31/2020 |
| Architectural | A7.34 | TYPICAL ARCHITECTURAL DETAILS | 1 | 7/31/2020 |
| Architectural | A7.41 | TYPICAL WATERPROOFING & BALCONY FLASHING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.42 | TYPICAL WATERPROOFING DETAILS | 2 | 7/31/2020 |
| Architectural | A7.51 | TYPICAL ROOFING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.52 | TYPICAL ROOF DETAILS | 3 | 7/31/2020 |
| Architectural | A7.61 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.62 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.63 | TYPICAL FIRE CONTROL DETAILS | 4 | 7/31/2020 |
| Architectural | A7.71 | TYPICAL SOUND CONTROL DETAILS & NOTES | 3 | 7/31/2020 |
| Architectural | A7.81 | TYPICAL RADON CONTROL DETAILS & NOTES | 1 | 7/31/2020 |
| Architectural | A7.91 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.92 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.93 | TYPICAL GARAGE SIGN DETAILS | 1 | 7/31/2020 |
| Architectural | A7.94 | TYPICAL GARAGE PAINT AND SIGN DETAILS | 2 | 7/31/2020 |
| Architectural | A8.11 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.12 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.13 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.14 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.21 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.22 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.31 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.32 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.33 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |



Initial ⟨NS⟩    Initial ⟨BLA⟩        **Alterations to this Agreement are Prohibited**        Page 10 of 38

Sub             Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Architectural | A8.34 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A8.35 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.36 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | BACK | PROJECT BACK SHEET | 1 | 7/31/2020 |
| Structural | S1.01 | STRUCTURAL GENERAL NOTES | 2 | 12/20/2019 |
| Structural | S1.02 | STRUCTURAL GENERAL NOTES | 1 | 10/16/2019 |
| Structural | S1.03 | GENERAL NOTES AND WIND DIAGRAMS | 2 | 2/24/2020 |
| Structural | S1.04 | SHEARWALL SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.05 | SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.06 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.07 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.11 | OVERALL BUILDING CONTROL PLAN - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11A | PARTIAL BUILDING PLAN - A - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11B | PARTIAL BUILDING PLAN - B - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11C | PARTIAL BUILDING PLAN - C - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11D | PARTIAL BUILDING PLAN - D - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11E | PARTIAL BUILDING PLAN - E - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11F | PARTIAL BUILDING PLAN - F - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.12 | OVERALL BUILDING CONTROL PLAN - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12A | PARTIAL BUILDING PLAN - A - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12B | PARTIAL BUILDING PLAN - B - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12C | PARTIAL BUILDING PLAN - C - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12D | PARTIAL BUILDING PLAN - D - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12E | PARTIAL BUILDING PLAN - E - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12F | PARTIAL BUILDING PLAN - F - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13 | OVERALL BUILDING CONTROL PLAN - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13A | PARTIAL BUILDING PLAN - A - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13B | PARTIAL BUILDING PLAN - B - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13C | PARTIAL BUILDING PLAN - C - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13D | PARTIAL BUILDING PLAN - D - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13E | PARTIAL BUILDING PLAN - E - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13F | PARTIAL BUILDING PLAN - F - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14 | OVERALL BUILDING CONTROL PLAN - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14A | PARTIAL BUILDING PLAN - A - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14B | PARTIAL BUILDING PLAN - B - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14C | PARTIAL BUILDING PLAN - C - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14D | PARTIAL BUILDING PLAN - D - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14E | PARTIAL BUILDING PLAN - E - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14F | PARTIAL BUILDING PLAN - F - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15 | OVERALL BUILDING CONTROL PLAN - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15A | PARTIAL BUILDING PLAN - A - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15B | PARTIAL BUILDING PLAN - B - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15C | PARTIAL BUILDING PLAN - C - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15D | PARTIAL BUILDING PLAN - D - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15E | PARTIAL BUILDING PLAN - E - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15F | PARTIAL BUILDING PLAN - F - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.16 | OVERALL BUILDING CONTROL PLAN -  ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16A | PARTIAL BUILDING PLAN - A - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16B | PARTIAL BUILDING PLAN - B - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16C | PARTIAL BUILDING PLAN - C - ROOF FRAMING | 2 | 12/20/2019 |



Initial _NS_  Initial _BLA_
Sub          Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Structural | S1.16D | PARTIAL BUILDING PLAN - D - ROOF FRAMING | 2 | 12/20/2019 |
|---|---|---|---|---|
| Structural | S1.16E | PARTIAL BUILDING PLAN - E - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16F | PARTIAL BUILDING PLAN - F - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.21 | FOUNDATION AND SLAB ON GRADE PLAN GARAGE | 3 | 5/20/2020 |
| Structural | S3.11 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.12 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.13 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.14 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.21 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.22 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.23 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.24 | SECTIONS AND DETAILS | 0 | 5/16/2019 |
| Structural | S3.31 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.32 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.41 | SECTIONS AND DETAILS | 1 | 5/20/2020 |
| Structural | S3.42 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.43 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.44 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Electrical | E0.01 | ELECTRICAL SYMBOLS LEGEND AND GENERAL NOTES | 3 | 8/12/2020 |
| Electrical | E0.10 | ELECTRICAL SITE PLAN | 4 | 5/4/2020 |
| Electrical | E0.11 | ELECTRICAL SITE LIGHTING PLAN | 4 | 8/12/2020 |
| Electrical | E0.12 | ELECTRICAL SITE PHOTOMETRIC PLAN | 2 | 4/15/2020 |
| Electrical | E1.11A | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Electrical | E1.11B | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 8/12/2020 |
| Electrical | E1.11C | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 4 | 8/12/2020 |
| Electrical | E1.11D | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.11E | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.11F | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.12A | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.12B | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.12C | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.12D | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.12E | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.12F | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.13A | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.13B | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.13C | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.13D | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.13E | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.13F | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.14A | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.14B | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.14C | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.14D | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.14E | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 3 | 2/24/2020 |



Initial — Sub   NS     Initial — Contractor   BLA

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | | |
|---|---|---|---|---|---|
| Electrical | E1.14F | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 3 | | 2/24/2020 |
| Electrical | E1.15A | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 3 | | 2/24/2020 |
| Electrical | E1.15B | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 3 | | 2/24/2020 |
| Electrical | E1.15C | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 3 | | 2/24/2020 |
| Electrical | E1.15D | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | | 12/20/2019 |
| Electrical | E1.15E | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 3 | | 2/24/2020 |
| Electrical | E1.15F | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 3 | | 2/24/2020 |
| Electrical | E1.16A | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 2 | | 8/12/2020 |
| Electrical | E1.16B | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | | 8/12/2020 |
| Electrical | E1.16C | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | | 8/12/2020 |
| Electrical | E1.16D | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 2 | | 8/12/2020 |
| Electrical | E1.16E | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 2 | | 8/12/2020 |
| Electrical | E1.16F | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 2 | | 8/12/2020 |
| Electrical | E1.21 | GARAGE LEVEL 1 - ELECTRICAL | 4 | | 8/12/2020 |
| Electrical | E1.22 | GARAGE LEVEL 2 - ELECTRICAL | 3 | | 2/24/2020 |
| Electrical | E1.23 | GARAGE LEVEL 3 - ELECTRICAL | 3 | | 2/24/2020 |
| Electrical | E1.24 | GARAGE LEVEL 4 - ELECTRICAL | 3 | | 2/24/2020 |
| Electrical | E1.25 | GARAGE LEVEL 5 - ELECTRICAL | 3 | | 2/24/2020 |
| Electrical | E1.26 | GARAGE LEVEL 6 - ELECTRICAL | 3 | | 2/24/2020 |
| Electrical | E1.27 | GARAGE LEVEL 7 - ROOF - ELECTRICAL | 2 | | 2/24/2020 |
| Electrical | E4.01 | TYPICAL UNITS - ELECTRICAL | 4 | | 8/12/2020 |
| Electrical | E4.02 | TYPICAL UNITS - ELECTRICAL | 4 | | 8/12/2020 |
| Electrical | E4.03 | TYPICAL UNITS - ELECTRICAL | 3 | | 2/24/2020 |
| Electrical | E4.04 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | | 12/20/2019 |
| Electrical | E4.05 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | | 12/20/2019 |
| Electrical | E4.06 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | | 12/20/2019 |
| Electrical | E5.01 | ELECTRICAL ONE LINE DIAGRAM | 4 | | 5/4/2020 |
| Electrical | E6.01 | EQUIPMENT, PANEL FEEDER & UNIT SCHEDULES | 7 | | 9/23/2020 |
| Electrical | E7.01 | ELECTRICAL SCHEDULES | 3 | | 8/12/2020 |
| Electrical | E7.02 | ELECTRICAL SCHEDULES | 3 | | 8/12/2020 |
| Electrical | E7.03 | ELECTRICAL SCHEDULES | 1 | | 2/24/2020 |
| Electrical | E8.01 | ELECTRICAL DETAILS | 2 | | 2/24/2020 |
| Electrical | E8.02 | ELECTRICAL DETAILS | 2 | | 12/20/2019 |
| Plumbing | P0.01 | PLUMBING SYMBOLS LEGEND AND GENERAL NOTES | 2 | | 5/20/2020 |
| Plumbing | P1.01A | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 0 | | 10/16/2019 |
| Plumbing | P1.01B | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 0 | | 10/16/2019 |
| Plumbing | P1.01C | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 0 | | 10/16/2019 |
| Plumbing | P1.01D | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 0 | | 10/16/2019 |
| Plumbing | P1.01E | CONDENSATE PARTIAL BUILDING PLAN - FIRST PART E | 0 | | 10/16/2019 |
| Plumbing | P1.01F | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 0 | | 10/16/2019 |
| Plumbing | P1.10 | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | | 5/16/2019 |
| Plumbing | P1.10A | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | | 8/12/2020 |
| Plumbing | P1.10B | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | | 4/15/2020 |
| Plumbing | P1.10C | UNDERGROUND PARTIAL BUILDING PLAN - FLOOR PART C | 3 | | 8/12/2020 |
| Plumbing | P1.10D | UNDERGROUND PARTIAL BULDING FIRST FLOOR PART D | 2 | | 12/20/2019 |
| Plumbing | P1.10E | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | | 10/16/2019 |
| Plumbing | P1.10F | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | | 8/12/2020 |



Initial NS Sub    Initial BLA Contractor    **Alterations to this Agreement are Prohibited**    Page 13 of 38

## Standard Short Form Agreement Between Contractor and Subcontractor

| Plumbing | P1.11A | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
|---|---|---|---|---|
| Plumbing | P1.11B | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 12/20/2019 |
| Plumbing | P1.11C | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 8/12/2020 |
| Plumbing | P1.11D | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.11E | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.11F | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 8/12/2020 |
| Plumbing | P1.12A | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Plumbing | P1.12B | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.12C | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.12D | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.12E | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.12F | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.13A | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.13B | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.13C | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.13D | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.13E | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.13F | PLUMBING PARTIAL BUILDING PLAN -  THIRD FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.14A | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.14B | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.14C | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.14D | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.14E | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.14F | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.15A | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.15B | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.15C | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.15D | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.15E | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.15F | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.16A | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART A | 0 | 10/16/2019 |
| Plumbing | P1.16B | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART B | 0 | 10/16/2019 |
| Plumbing | P1.16C | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART C | 0 | 10/16/2019 |
| Plumbing | P1.16D | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART D | 0 | 10/16/2019 |
| Plumbing | P1.16E | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART E | 0 | 10/16/2019 |
| Plumbing | P1.16F | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART F | 1 | 8/12/2020 |
| Plumbing | P1.21 | GARAGE LEVEL 1 - PLUMBING | 4 | 5/29/2020 |
| Plumbing | P1.22 | GARAGE LEVEL 2 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.23 | GARAGE LEVEL 3 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.24 | GARAGE LEVEL 4 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.25 | GARAGE LEVEL 5 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.26 | GARAGE LEVEL 6 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.27 | GARAGE ROOF LEVEL - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P4.01 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.02 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.03 | ENLARGED PLUMBING PLANS | 1 | 12/20/2019 |
| Plumbing | P5.01 | PLUMBING RISER DIAGRAMS | 2 | 8/12/2020 |
| Plumbing | P5.02 | PLUMBING RISER DIAGRAMS | 1 | 8/12/2020 |
| Plumbing | P5.03 | GARAGE STORM SYSTEM RISER DIAGRAMS | 0 | 5/29/2020 |
| Plumbing | P8.01 | PLUMBING DETAILS | 1 | 10/16/2019 |
| Plumbing | P8.02 | PLUMBING DETAILS | 0 | 10/16/2019 |
| Mechanical | M0.01 | MECHANICAL SYMBOLS LEGEND AND GENERAL NOTES | 1 | 10/16/2019 |



Initial ᴺˢ Initial ᴮᴸᴬ
Sub       Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Mechanical | M1.11A | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
|---|---|---|---|---|
| Mechanical | M1.11B | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.11C | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 3 | 8/12/2020 |
| Mechanical | M1.11D | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.11E | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.11F | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.12A | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.12B | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.12C | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.12D | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.12E | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.12F | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.13A | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.13B | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.13C | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.13D | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.13E | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.13F | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.14A | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.14B | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.14C | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.14D | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.14E | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.14F | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.15A | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.15B | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.15C | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.15D | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.15E | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.15F | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.16A | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 3 | 8/12/2020 |
| Mechanical | M1.16B | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 12/20/2019 |
| Mechanical | M1.16C | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 12/20/2019 |
| Mechanical | M1.16D | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 3 | 8/12/2020 |
| Mechanical | M1.16E | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 3 | 8/12/2020 |
| Mechanical | M1.16F | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 3 | 8/12/2020 |
| Mechanical | M1.21 | GARAGE LEVEL 1 - MECHANCIAL | 1 | 2/24/2020 |
| Mechanical | M1.22 | GARAGE LEVEL 2 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.23 | GARAGE LEVEL 3 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.24 | GARAGE LEVEL 4- MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.25 | GARAGE LEVEL 5 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.26 | GARAGE LEVEL 6 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.27 | GARAGE ROOF - MECHANICAL | 1 | 2/24/2020 |



Initial _NS_    Initial _BLA_          **Alterations to this Agreement are Prohibited**          Page 15 of 38
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Mechanical | M4.01 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
|---|---|---|---|---|
| Mechanical | M4.02 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.03 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M6.01 | MECHANICAL SCHEDULES | 2 | 12/20/2019 |
| Mechanical | M7.01 | MECHANICAL DETAILS | 2 | 2/24/2020 |
| Mechanical | M7.02 | MECHANICAL DETAILS | 1 | 10/16/2019 |
| Mechanical | M7.03 | MECHANICAL DETAILS | 1 | 2/24/2020 |
| Fire Protection | F0.01 | FIRE PROTECTION SYMBOLS AND SPECIFICATIONS | 2 | 4/15/2020 |
| Fire Protection | F1.11A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 2/24/2020 |
| Fire Protection | F1.11B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 2/24/2020 |
| Fire Protection | F1.11C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 2/24/2020 |
| Fire Protection | F1.11D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 2/24/2020 |
| Fire Protection | F1.11E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 2/24/2020 |
| Fire Protection | F1.11F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 2/24/2020 |
| Fire Protection | F1.12A | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.12B | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.12C | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.12D | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.12E | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.12F | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.13A | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.13B | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.13C | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.13D | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.13E | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.13F | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.14A | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Fire Protection | F1.14B | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Fire Protection | F1.14C | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Fire Protection | F1.14D | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Fire Protection | F1.14E | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Fire Protection | F1.14F | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 0 | 10/16/2019 |



Initial NS
Sub

Initial BLA
Contractor

**Alterations to this Agreement are Prohibited**

Page 16 of 38

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Fire Protection | F1.15A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.15B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.15C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.15D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.15E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.15F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.21 | GARAGE LEVEL 1 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.22 | GARAGE LEVEL 2 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.23 | GARAGE LEVEL 3 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.24 | GARAGE LEVEL 4 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.25 | GARAGE LEVEL 5 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.26 | GARAGE LEVEL 6 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F6.01 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Fire Protection | F6.02 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Low Voltage | T-000 | LOW VOLTAGE NOTES AND LEGENDS | 1 | 4/1/2020 |
| Low Voltage | T-100 | FIRST FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-100A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITIES | 0 | 12/20/2019 |
| Low Voltage | T-100B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-101 | SECOND FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-102 | THIRD FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-103 | FOURTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-104 | FIFTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-105 | ROOF PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-106 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-107 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-108 | LOW VOLTAGE UNIT DISTRIBUTION PANEL | 1 | 4/1/2020 |
| Low Voltage | T-200 | FIRST FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-201 | SECOND FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-202 | THIRD FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-203 | FOURTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-204 | FIFTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-205 | SIXTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300 | FIRST FLOOR PLAN LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-302 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |



Initial ΛS Sub    Initial BLA Contractor    **Alterations to this Agreement are Prohibited**    Page 17 of 38

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Low Voltage | T-303 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
|---|---|---|---|---|
| Low Voltage | T-400 | FIRST FLOOR PLAN LOW VOLTAGE A/V | 0 | 12/20/2019 |
| Low Voltage | T-400A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-500 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (MDF) | 1 | 4/1/2020 |
| Low Voltage | T-501 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 1A & IDF 1B) | 1 | 4/1/2020 |
| Low Voltage | T-502 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3A & IDF 5A) | 1 | 4/1/2020 |
| Low Voltage | T-503 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3B & IDF 5B) | 1 | 4/1/2020 |
| Low Voltage | T-504 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3C & IDF 5C) | 1 | 4/1/2020 |
| Low Voltage | T-600 | LOW VOLTAGE CONNECTIVITY DIAGRAM (UNIT) | 0 | 12/20/2019 |
| Low Voltage | T-601 | LOW VOLTAGE CONNECTIVITY DIAGRAM (ACCESS CONTROL) | 0 | 12/20/2019 |
| Low Voltage | T-602 | LOW VOLTAGE CONNECTIVITY DIAGRAM (SURVEILLANCE) | 0 | 12/20/2019 |
| Interior | ID-0.00 | COVER SHEET | 1 | 5/8/2020 |
| Interior | ID-0.01 | PLAN KEY | 3 | 5/8/2020 |
| Interior | ID-0.02 | GENERAL NOTES | 3 | 5/8/2020 |
| Interior | ID-0.03 | LEGENDS & ABBREVIATIONS | 2 | 5/8/2020 |
| Interior | ID-0.04 | OVERALL FLOOR PLAN FIRST FLOOR | 2 | 5/8/2020 |
| Interior | ID-0.05 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.06 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.07 | OVERALL FLOOR PLAN FIFTH FLOOR | 2 | 5/8/2020 |
| Interior | ID-1.00 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.01 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.02 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.03 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.04 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.05 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.06 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.07 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.08 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.09 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.10 | INTERIOR PLAN FIRST & FIFTHFLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.11 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.12 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.13 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.14 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.15 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.16 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.17 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.18 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.19 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.20 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.21 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.22 | FLOOR COVERING PLAN FIRST & FIFTH FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.23 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.24 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.25 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.26 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |



Initial    Initial          **Alterations to this Agreement are Prohibited**          Page 18 of 38
Sub        Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.27 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.28 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.29 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.30 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.31 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.32 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.33 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.34 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.35 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.36 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.37 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.38 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.39 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.40 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.41 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.42 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.43 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.44 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.45 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.46 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.47 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.48 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.49 | REFLECTED CEILING PLAN FIRST FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.50.0 | FURNITURE PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.50.1 | FURNITURE PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.51 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.52 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.53 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.54 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.55 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.56 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.57 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.58 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.59 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.0 | FLOOR COVERING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.1 | FLOOR COVERING PLAN 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.61 | FLOOR COVERING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.62 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.63 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.64 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.65 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.66 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.67 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.68 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.69 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.0 | ELECTRICAL PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.1 | ELECTRICAL PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.71 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.72 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.73 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.74 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.75 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |



Initial NS
Sub

Initial BLA
Contractor

**Alterations to this Agreement are Prohibited**

Page 19 of 38

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.76 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.77 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.78 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.79 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.80.0 | REFLECTED CEILING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.80.1 | REFLECTED CEILING PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.81 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.82 | REFLECTED CEILING PLAN 2ND & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.83 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.84 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.85 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.86 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.87 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.88 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.89 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.90 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.91 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.92 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.93 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-2.00 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.01 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.02 | INTERIOR ELEVATIONS SALES OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.03 | INTERIOR ELEVATIONS CORRIDOR 1 | 2 | 5/8/2020 |
| Interior | ID-2.04 | INTERIOR ELEVATIONS CONF. RM. / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.05 | INTERIOR ELEVATIONS CONF. RM / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.06 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.07 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.08 | INTERIOR ELEVATIONS MEDIA THEATRE | 2 | 5/8/2020 |
| Interior | ID-2.09 | INTERIOR ELEVATIONS FITNESS | 2 | 5/8/2020 |
| Interior | ID-2.10 | INTERIOR ELEVATIONS YOGA | 2 | 5/8/2020 |
| Interior | ID-2.11 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.12 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.13 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.14 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.15 | INTERIOR ELEVATIONS CORRIDOR 2 | 2 | 5/8/2020 |
| Interior | ID-2.16 | INTERIOR ELEVATIONS CORRIDOR 3 | 2 | 5/8/2020 |
| Interior | ID-2.17 | INTERIOR ELEVATIONS CORRIDOR 4 | 2 | 5/8/2020 |
| Interior | ID-2.18 | INTERIOR ELEVATIONS CORRIDOR 5 | 2 | 5/8/2020 |
| Interior | ID-2.19 | INTERIOR ELEVATIONS CORRIDOR 6 | 2 | 5/8/2020 |
| Interior | ID-2.20 | INTERIOR ELEVATIONS CORRIDOR 7 | 2 | 5/8/2020 |
| Interior | ID-2.21 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.22 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.23 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.24 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.25 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.26 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.27 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.28 | INTERIOR ELEVATIONS CORRIDOR 11 | 2 | 5/8/2020 |
| Interior | ID-2.29 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.30 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.31 | INTERIOR ELEVATIONS CORRIDOR 13 | 2 | 5/8/2020 |
| Interior | ID-2.32 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |



Initial Sub: ᴺᔆ    Initial Contractor: BLA    **Alterations to this Agreement are Prohibited**    Page 20 of 38

## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-2.33 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-2.34 | INTERIOR ELEVATIONS CORRIDOR 15 | 2 | 5/8/2020 |
| Interior | ID-2.35 | INTERIOR ELEVATIONS CORRIDOR 16 | 2 | 5/8/2020 |
| Interior | ID-2.36 | INTERIOR ELEVATIONS CORRIDOR 17 | 2 | 5/8/2020 |
| Interior | ID-2.37 | INTERIOR ELEVATIONS VESTIBULE 1 AND 2 | 2 | 5/8/2020 |
| Interior | ID-2.38 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.39 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.40 | INTERIOR ELEVATIONS VESTIBULE 4 AND 5 | 2 | 5/8/2020 |
| Interior | ID-2.41 | INTERIOR ELEVATIONS VESTIBULE 5 AND 6 | 2 | 5/8/2020 |
| Interior | ID-2.42 | INTERIOR ELEVATIONS VESTIBULE 7 AND 8 | 2 | 5/8/2020 |
| Interior | ID-2.43 | INTERIOR ELEVATIONS VESTIBULE 8, 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.44 | INTERIOR ELEVATIONS VESTIBULE 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.50 | INTERIOR ELEVATIONS MEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.51 | INTERIOR ELEVATIONS WOMEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.60 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.61 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.62 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-3.00 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.01 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.02 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.03 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.04 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-4.00 | SCHEDULES | 3 | 5/8/2020 |
| Interior | ID-4.01 | DOOR SCHEDULE | 2 | 5/8/2020 |
| Interior | ID-4.02 | SCHEDULES TYPICAL UNITS | 3 | 5/8/2020 |
| Hardscape | H-1 | SITE PLAN PHASE 2 | 6 | 5/22/2020 |
| Hardscape | H-2.1 | HARDSCAPE LABEL PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.2 | HARDSCAPE DIMENSION PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.3 | HARDSCAPE FINISHES PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-3.1 | HARDSCAPE LABEL PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.2 | HARDSCAPE DIMENSION PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.3 | HARDSCAPE FINISHES PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-4.1 | HARDSCAPE LABEL PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-4.2 | HARDSCAPE DIMENSION PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-4.3 | HARDSCAPE FINISHES PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-5.1 | HARDSCAPE LABEL PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.2 | HARDSCAPE DIMENSION PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.3 | HARDSCAPE FINISHES PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-6 | HARDSCAPE LABEL PLAN | 3 | 5/16/2019 |
| Hardscape | H-6.1 | HARDSCAPE LABEL PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.2 | HARDSCAPE DIMENSION PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.3 | HARDSCAPE DIMESION PLAN | 6 | 5/22/2020 |
| Hardscape | H-7 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-8 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-9 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-10 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-11 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-12 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-13 | HARDSCAPE DETAILS | 8 | 8/31/2020 |
| Hardscape | H-14 | HARDSCAPE SPECIFICATIONS | 6 | 5/22/2020 |
| Landscape | L-1 | SITE PLAN PHASE 2 | 8 | 5/22/2020 |
| Landscape | L-2 | TREE DISPOSITION PLAN PHASE 2 | 8 | 5/14/2020 |



**Standard Short Form Agreement Between Contractor and Subcontractor**

| Landscape | L-3 | TREE DISPOSITION PLAN PH 2 | 7 | 5/14/2020 |
|---|---|---|---|---|
| Landscape | L-4 | TREE DISPOSITION SCHEDULE PH 2 | 8 | 5/14/2020 |
| Landscape | L-5 | LANDSCAPE PLAN | 7 | 5/22/2020 |
| Landscape | L-6 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-7 | LANDSCAPE PLAN | 5 | 5/22/2020 |
| Landscape | L-8 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-9 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-10 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-11 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-12 | LANDSCAPE SPECIFICATIONS | 3 | 5/22/2020 |
| Landscape | L-13 | LANDSCAPE SPECIFICATIONS | 0 | 5/16/2019 |
| Landscape | LI-1 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-2 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-3 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LLP-1 | SITE PLAN PHASE 2 | 2 | 5/22/2020 |
| Landscape | LLP-2 | LANDSCAPE LIGHTING PLAN | 3 | 5/22/2020 |
| Landscape | LLP-3 | LANDSCAPE LIGHT PLAN | 3 | 5/22/2020 |
| Landscape | LLP-4 | LANDSCAPE LIGHTING PLAN SCHEDULE | 3 | 5/22/2020 |
| Landscape | LLP-5 | LANDSCAPE LIGHT PLAN SPECIFICATIONS | 2 | 5/22/2020 |
| Surveys | 1 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 2 | 7/11/2019 |
| Surveys | 2 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 4 | 6/15/2020 |

**Architect:**
**Charlan Brock & Associates**

**Engineer:**
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

**Architect of Record:**
**Doug Anderson**
**1770 Fennell Street**
**Maitland, Florida 32751**

**Civil Engineer:**
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

**Structural Engineer:**
**John Bailes**
**1035 South Semoran Blvd**
**Winter Park, Florida 32792**

**Landscape Architect:**
**Aaron Mastin**
**101 SE 2nd Ave**
**Delray Beach, Florida 33444**

**Hardscape Architect:**
**Aaron Mastin**



Initial _____ Initial _____
Sub            Contractor

**Alterations to this Agreement are Prohibited**          Page 22 of 38

## Standard Short Form Agreement Between Contractor and Subcontractor

101 SE 2nd Ave
Delray Beach, Florida 33444

Interior Design:
Jorge Garcia
4700 Riverside Drive, Suite 100
Palm Beach Gardens, Florida 33410

**EXHIBITS.** As applicable, the following Exhibits are incorporated by reference and made part of this Agreement:

EXHIBIT A:    Schedule of Values
EXHIBIT B:    Insurance

**1.1    SUBCONTRACTOR IS AN INDEPENDENT CONTRACTOR.** SUBCONTRACTOR is an independent contractor and shall, at its sole cost and expense, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the Work. SUBCONTRACTOR shall have sole responsibility for the means and methods of performing the Work required under this Subcontract. SUBCONTRACTOR is responsible for securing timely inspections and approvals of its Work from all such authorities as required by the Contract Documents. All inspections must be coordinated with CONTRACTOR. SUBCONTRACTOR must obtain and pay for all necessary permits and licenses, including business licenses; pay all fees, manufacturer's taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and unemployment or disability insurance which are measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. SUBCONTRACTOR must maintain proof that it has complied with all aspects of this Paragraph and shall make such proof available for review by CONTRACTOR at CONTRACTOR's request. SUBCONTRACTOR agrees that any penalty, charge, fine, or other assessment made on account of SUBCONTRACTOR or SUBCONTRACTOR's work will be promptly paid in full by SUBCONTRACTOR. All of the SUBCONTRACTOR's Work shall be performed in strict accordance with the Occupational Safety and Health Act of 1970 and any other legislation enacted by federal, state, or local governing authorities or agencies. Additionally, SUBCONTRACTOR shall furnish a copy to CONTRACTOR the applicable Safety Data Sheets (SDS) for all hazardous materials or chemicals used in connection with or consumed or incorporated into this Project as required by the Hazard Communication Standard of the Occupational Safety and Health Administration (OSHA). The SUBCONTRACTOR shall report to the CONTRACTOR within one (1) day after an injury to an employee or agent of the SUBCONTRACTOR which occurs on the site.

**1.2A    SUBCONTRACTOR** shall not perform any labor services under this Subcontract with any persons or parties other than SUBCONTRACTOR's direct employees without first 1) providing CONTRACTOR with at least 24 hours prior written notice, and 2) providing CONTRACTOR with a copy of the agreement between SUBCONTRACTOR and any sub-subcontractor, employee leasing company, employee management company, labor supplier company, or individual ("third party labor provider") providing such labor at least 24 hours prior to beginning to perform the labor. SUBCONTRACTOR's failure to comply with these requirements shall be a material breach of the Subcontract allowing for termination of the Subcontract, and the CONTRACTOR will not be liable for payment of any labor costs of the third-party labor provider. Should the SUBCONTRACTOR be authorized to use a third-party labor provider on the project, the CONTRACTOR must receive written confirmation, via email, setting forth the specific names of each third-party labor provider employee onsite, the amount of the hours worked, and price per hour for each employee. This information must be received by 5:00 pm daily on same day that the third-party labor provider was onsite at the project. Failure to timely and completely provide this information will result in non-payment by the CONTRACTOR to the SUBCONTRACTOR for such third-party labor.

**1.3    QUALITY AND SCOPE OF WORK/FIELD VERIFICATIONS.** The Contract Documents are intended to and shall be considered to include all items which would normally be included under terms of its contract with Owner. The Plans and Specifications generally indicate the scope and quality of the work but are not represented as being free from errors or omissions and any work called for in the Specifications and not shown on the Plans, or vice versa, are to be furnished as if called for in both and, in addition SUBCONTRACTOR agrees that any and all work required and reasonably implied as necessary to complete the job, shall be furnished and installed by SUBCONTRACTOR without any additional cost. SUBCONTRACTOR shall notify CONTRACTOR in writing of any deviations from the Contract Documents. SUBCONTRACTOR's responsibility to conform to the Contract Documents is not relieved by Architect's or



Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 23 of 38
Sub                Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

CONTRACTOR's review unless there is written acceptance of the specific deviations. SUBCONTRACTOR agrees not to modify, withdraw, or cancel any alternate bids, for ninety (90) days after receipt of bid. SUBCONTRACTOR shall provide its own layout and make its own measurements and shall guarantee the accuracy thereof and shall not rely on the measurements of any other party.

The SUBCONTRACTOR represents that it is licensed (if applicable) and fully qualified to perform the Work required by this Subcontract and acknowledges that it has, by careful examination satisfied itself as to: (a) the nature, location and character of the Job Site including, but not limited to, the surface and subsurface conditions of the land and all structures and obstructions thereon, both natural and manmade, surface water conditions of the Job Site and the surrounding area and, to the extent pertinent to the Work, all other conditions; (b) the nature, location and character of the general area in which the Job Site is located including, without limitation, its climatic conditions, the availability and cost of labor and the availability and cost of materials, tools and equipment; the quality and quantity of all material, supplies, tools, equipment, labor and services necessary to complete the Work in the manner required by the Contract Documents; and (c) all other matters or things which could in any manner affect the performance of the Work. The SUBCONTRACTOR recognizes and understands the physical and operational restrictions on carrying on of the Work in or about the Project and expressly agrees that such conditions have been accounted for in the Subcontract price. **By commencing its Work, SUBCONTRACTOR accepts the surface or substrate on which such work is placed and all adjacent work of earlier subcontractors and other areas that interface with or connect to the SUBCONTRACTOR's Work or otherwise affect SUBCONTRACTOR's Work. The SUBCONTRACTOR shall take such measurements as will insure the proper matching and placement of the Work under this Subcontract and is otherwise responsible for compliance with the intent of the Contract Documents. The SUBCONTRACTOR shall immediately notify CONTRACTOR and the Architect of any unacceptable conditions or deviations from contract requirements affecting its Work and shall notify CONTRACTOR and Architect of any discrepancies or conflicts in the Contract Documents before performing its Work and shall be responsible for all costs resulting from its failure to do so. Any SUBCONTRACTOR that installs his work attached to an unacceptable substrate without written notification to CONTRACTOR shall bear the costs of removal and replacement of his work.** All Work shall be done in a good and workmanlike manner and all material shall be new and of specified grade, and all Work and material shall be furnished and installed in compliance with the requirements of the institutions making the construction and permanent mortgages on the property and all governmental or other authorities having jurisdiction thereof.

**Prior to starting any field work, the SUBCONTRACTOR shall participate in a "SUBCONTRACTOR's Preparatory Meeting" with the CONTRACTOR at the jobsite, to thoroughly review the following items and procedures and sign-off as to the SUBCONTRACTOR's participation and understanding: (1) Subcontract Agreement & Exhibit "A", (2) possession of correct Drawings & Specifications, (3) SDS Sheets & OSHA Review, (4) Completed stamped and approved shop drawings & submittals, (5) required material installation procedures, and (6) Payment Procedures. SUBCONTRACTOR is solely responsible for its work being in full compliance with this Subcontract Agreement requirement. All subcontractors must attend project meetings that they are requested to attend (a two-day notice will be provided). Sending a laborer to a meeting will not count as a substitute. It must be an approved supervisor or an individual authorized to make decisions on behalf of your company. Subcontractors will be fined $250 for each meeting missed.**

SUBCONTRACTOR is at all times to work ONLY from Drawings specifically issued by CONTRACTOR's Project Manager that identifies the documents as "For Construction". Under no circumstances is SUBCONTRACTOR to perform any work on the Project from any Drawings that do not include such identification. SUBCONTRACTOR is not to accept, process, bid, or perform any actual construction work based on any Drawings that have not been so identified by CONTRACTOR's Project Manager as described above. SUBCONTRACTOR shall be solely responsible for compliance with his requirement.

SUBCONTRACTOR jobsite supervisor shall submit Daily Reports (including manpower) to CONTRACTOR each day on separate forms provided by CONTRACTOR. Failure to provide these forms will be sufficient cause for CONTRACTOR to withhold payment until CONTRACTOR is provided with completed up-to-date reports.

**1.4    SUBMITTALS.** SUBCONTRACTOR shall promptly prepare or obtain and submit to CONTRACTOR in the quantity requested by CONTRACTOR, all shop and erection drawings, samples, product data, catalogue cuts, laboratory and inspection reports, and engineering calculations ("Submittals") required by the Contract Documents, or as may be necessary or appropriate to describe the details of the Work. All Submittals shall be submitted in a timely manner so as to

Initial __NS__    Initial __BLA__    **Alterations to this Agreement are Prohibited**    Page 24 of 38
Sub            Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

permit the work to be performed in accordance with the Project Schedule. Neither review, nor approval, of Submittals by CONTRACTOR, Owner or Architect shall relieve SUBCONTRACTOR of its obligation to perform the Work in strict conformity with the Contract Documents or its responsibility for the proper matching of the Work to contiguous work. SUBCONTRACTOR shall identify each and every variance between any Submittals and the requirements of the Contract Documents at the time of transmission either prominently on the Submittal or specifically in a transmission letter accompanying the Submittal. No modification, revision or other notation on a Submittal that changes or modifies the Contract Documents shall be valid (even if the drawing or Submittal is approved) unless there is a Change Order issued approving same. No Work required or Work attaching to items requiring submittals or shop drawings shall be started by SUBCONTRACTOR until approved Submittals are returned to SUBCONTRACTOR. Materials ordered, fabricated, or installed prior to receipt of approved Submittals are at SUBCONTRACTOR's sole risk. All material submittals, shop drawings, affidavits, etc., that are required for your area of work need to be submitted to the CONTRACTOR within seven (7) days of signing your contract.

**3)** **BONDS.** SUBCONTRACTOR shall not **X** furnish to CONTRACTOR, as Obligee, surety bonds to this Agreement, and through a surety mutually agreeable to CONTRACTOR and SUBCONTRACTOR, to secure faithful performance of Subcontract Work and to satisfy SUBCONTRACTOR payment obligations related to SUBCONTRACTOR's Work.

**4)** **SAFETY AND CLEAN-UP.** To protect persons and property, SUBCONTRACTOR shall establish a safety program implementing safety measures, policies and standards conforming to (1) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (2) the requirements of this Agreement. SUBCONTRACTOR will abide by the Safety Program implemented by Portrait Construction of Florida attached as EXHIBIT "A'.

**5)** **SUPERVISON.** SUBCONTRACTOR is required to designate a competent supervisor to oversee all SUBCONTRACTORs work for the duration of the project. SUBCONTRACTOR must submit name and qualification of SUBCONTRACTOR's English speaking supervisor to Portrait Construction of Florida's project superintendent for acceptance. CONTRACTOR's Superintendent will schedule the different trades, supervise all construction, and with the concurrence of CONTRACTOR's Project Manager, approve monthly draws. His opinion that the job's progress for SUBCONTRACTOR's phase of the work is on schedule is a condition precedent to CONTRACTOR's obligation to make progress payments to SUBCONTRACTOR. **SUBCONTRACTOR'S Supervisor is responsible for verifying all of his "Scope of Work" is properly performed, shall complete a thorough inspection of the work and determine any and all repairs, rework, punchlist & verify the remediation is complete. If at any point during construction, the CONTRACTOR'S Superintendent determines that the SUBCONTRACTOR'S Supervisor is not completing his work as outlined in the above, he may request in writing that the SUBCONTRACTOR enforce the requirements of the Supervisor or replace him.**

**6)** **SCHEDULE.** Time is of the essence as to SUBCONTRACTOR's obligations under this Agreement. All SUBCONTRACTOR's Work shall commence and proceed as scheduled by the CONTRACTOR. All SUBCONTRACTOR's Work shall be of the highest quality, and in compliance with all governing laws, ordinances, codes, regulations and requirements. The CONTRACTOR shall prepare the schedule for performance of CONTRACTOR's Work (HEREINAFTER THE "Progress Schedule") and shall revise and update such schedule, as necessary, as CONTRACTOR's work progresses. Each revision of the Progress Schedule, upon issuance to this SUBCONTRACTOR, shall supersede previous schedules and shall become part of this Agreement. SUBCONTRACTOR shall provide CONTRACTOR with any scheduling information proposed by SUBCONTRACTOR for Subcontract Work and submit any additional information or updates as requested by CONTRACTOR. SUBCONTRACTOR shall be bound by the Progress Schedule. Material procurement, shop fabrication and delivery must be coordinated by SUBCONTRACTOR, to ensure that the work is started and completed as required by the Progress Schedule.

The Subcontract price includes all overtime as required including Saturdays, Sundays, and holidays in order to maintain the Progress Schedule. Failure by this SUBCONTRACTOR to meet all obligations necessary to maintain the Progress Schedule dates will result in SUBCONTRACTOR being assessed appropriate damages and losses incurred by the CONTRACTOR. The CONTRACTOR shall have the rights to (1) expand, update and revise the Progress Schedule as necessary to correspond to project conditions and changes in order to ensure the overall completion date, and (2) to determine and, if necessary, change the time, order and priority in which various portions of Subcontract Work shall be performed.

Initial __NS__  Initial __BLA__   **Alterations to this Agreement are Prohibited**   Page 25 of 38
Sub      Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

SUBCONTRACTOR accepts the risk of delays and acceleration caused by the rate of progress of the Work changing as directed by CONTRACTOR. The SUBCONTRACTOR acknowledges that the CONTRACTOR has made no warranties to the SUBCONTRACTOR, express or implied, that the SUBCONTRACTOR will be able to follow normal, orderly sequence in the performance of SUBCONTRACTOR's Work or that there will be no delays in, or interference with, the SUBCONTRACTOR's Work. The SUBCONTRACTOR shall be prepared to do its Work out of sequence in accordance with the requirements of the Project, when and if required by CONTRACTOR. The Contract Sum includes all overtime, increase in crew size, etc. as required, including Saturdays, Sundays, and Holidays, in order for the SUBCONTRACTOR to maintain its Work item time duration schedule.

**LIMITATION OF REMEDIES – NO DAMAGES FOR DELAY. The SUBCONTRACTOR's exclusive remedy for delays in the performance of the contract caused by events beyond its control, including delays claimed to be caused by the CONTRACTOR, Owner, Architect, or Engineer, or attributable to the CONTRACTOR, Owner, Architect, or Engineer and including claims based on breach of contract or negligence, shall be an extension of its contract time, and under no circumstances will SUBCONTRACTOR be entitled to any monetary claim or compensation.** Any claims for additional time by the SUBCONTRACTOR for delay must be submitted to the CONTRACTOR within the time and in the manner in which the CONTRACTOR must submit such claims to the Owner, and that failure to comply with the conditions for giving notice and submitting claims shall result in the waiver of such claims.

SUBCONTRACTOR is to perform work ONLY during specified authorized working hours as authorized in writing by the CONTRACTOR. Under no circumstances is SUBCONTRACTOR to perform ANY work or otherwise have any work crews present on the jobsite without the CONTRACTOR present. SUBCONTRACTOR is solely responsible for full compliance with this important Contract requirement.

SUBCONTRACTOR agrees to complete work segments within the performance time durations as listed below and overall Progress Schedule. SUBCONTRACTOR specifically acknowledges and agrees to these duration times including completion of all punch list requirements for its work – as necessary to achieve final acceptance of its work by the CONTRACTOR and Owner and includes in the Subcontract Price all necessary costs required to achieve completion within the listed times. Duration times are all in calendar days and include sufficient time as required to receive inspection approvals from all authorities having jurisdiction.

7)      **CHANGE ORDERS.** When CONTRACTOR orders in writing, SUBCONTRACTOR, without nullifying this Agreement, shall make any and all changes in Subcontract Work. No adjustments shall be made for any changes performed by SUBCONTRACTOR that have not been ordered by CONTRACTOR. **The Subcontract Price may only be modified by written change order signed by both parties. Authorization for any changed or extra work or costs whatsoever may be only made in writing signed by CONTRACTOR's Project Manager or Executive Officer. Contractor's Superintendent is not authorized to make any changes or issue any extra cost approvals to SUBCONTRACTOR either verbal or in writing. Any changes or extra costs attempted to be recovered by SUBCONTRACTOR based on any approvals or directives by CONTRACTOR's Superintendent or anyone else that is not CONTRACTOR's Project Manager or Executive Officer will not be recognized. The only CONTRACTOR representative authorized to approve additional scope and costs is the Project Manager or Executive Officer.** A Change Order is a written instrument prepared by CONTRACTOR and signed by SUBCONTRACTOR stating their agreement upon the change in Subcontract Work. In the event of a change in the work, the SUBCONTRACTOR's claim for adjustments in the contract sum are limited exclusively to its actual costs for such changes plus no more than 10% for overhead and 5% profit.

8)      **CHANGE ORDER ADJUSTMENTS.** In consideration for any adjustments in the time and the Subcontract Sum, SUBCONTRACTOR hereby releases CONTRACTOR and Owner from all claims, demands or causes of action arising out of the transactions, events and occurrences giving rise to the Change Order, including without limitation all direct and indirect costs and all schedule impacts.

9)      **PAYMENT.**

**9.1      SCHEDULE OF VALUES.** The schedule of values (SOV) is a condition of payment, per SOV detailed in Exhibit "A". SUBCONTRACTOR to provider progress invoicing per Exhibit "A"; and as provided by CONTRACTOR they may use the project Billing Invoice Tool in Procore.



Initial _____     Initial _____     **Alterations to this Agreement are Prohibited**     Page 26 of 38
Sub                     Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**9.2    PROGRESS AND FINAL PAYMENTS.** Progress payments due to SUBCONTRACTOR, less retainage as specified herein, shall be made to SUBCONTRACTOR for Subcontract Work satisfactorily performed no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for SUBCONTRACTOR's Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for SUBCONTRACTOR's Work. These payments are not due if there is reason for withholding as specified herein and/or SUBCONTRACTOR has not satisfied all conditions precedent to payment specified herein.

**9.2.1    PROGRESS PAYMENTS.** Progress Payments due under the Subcontract will not be released until all of the following conditions have been met:

        .1    Subcontract Agreement has been signed by SUBCONTRACTOR without modification and returned to CONTRACTOR;

        .2    Proper Insurance Certificates have been received;

        .3    CONTRACTOR's approval of SUBCONTRACTOR's Schedule of Values;

        .4    SUBCONTRACTOR has presented to CONTRACTOR, for its approval, an Application for Payment and other documents required by Paragraph 10;

        .5    Progress payments, less retainage, shall be made to SUBCONTRACTOR, for Subcontract Work satisfactorily performed, no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for Subcontract Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for Subcontract Work. These payments are subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or CONTRACTOR.

        .6    CONTRACTOR's receipt in current funds from the Owner for the progress payments due the SUBCONTRACTOR. It shall be an express condition precedent to any obligation or liability of the CONTRACTOR to the SUBCONTRACTOR for any payment to the SUBCONTRACTOR that the CONTRACTOR is in receipt of payment in current funds from the Owner for the SUBCONTRACTOR's work. If the Owner has not paid the CONTRACTOR for any reason whatsoever, including the Owner's financial inability to pay or other reason not related to this SUBCONTRACTOR, the SUBCONTRACTOR agrees that the CONTRACTOR shall not be liable for payment and not be indebted to the SUBCONTRACTOR. The SUBCONTRACTOR assumes the credit risk of the Owner and agrees that it is relying on the Owner's credit and not that of the CONTRACTOR. The SUBCONTRACTOR further agrees that, as a portion of the consideration for the award of this Subcontract, he agrees to assume, and hereby assumes, the same risk as does the CONTRACTOR for non-payment by the Owner and accordingly, in the event that the Owner fails to pay the CONTRACTOR progress payments, interim payment, claims for increased work, claims for changed work, final payments, or any other form of payment otherwise due to the CONTRACTOR, the SUBCONTRACTOR shall be absolutely barred, estopped, and precluded from instituting any suit, arbitration or other claim against the CONTRACTOR or the Surety until and unless the Owner first pays the CONTRACTOR. In other words, payment by the Owner to the CONTRACTOR of sums necessary to pay the SUBCONTRACTOR is a condition precedent to CONTRACTOR's obligation to pay SUBCONTRACTOR and to the bringing of any lawsuit, arbitration or other claims by the SUBCONTRACTOR against the CONTRACTOR. If CONTRACTOR has provided payment or performance bonds or a combination payment and performance bond, the obligation of CONTRACTOR and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of CONTRACTOR's prior receipt of payment from the Owner for the progress payments due the SUBCONTRACTOR. This provision is incorporated by reference into any such bond or bonds.

        .7    Any supplemental work provided b others for this scope of work has been paid in full.

**9.2.2    FINAL PAYMENT.** All conditions precedent of this Subcontract which apply to progress payments shall also apply to final payment. As additional express conditions precedent to SUBCONTRACTOR's entitlement to final payment, the SUBCONTRACTOR shall have fully performed all its Work in accordance with the Contract Documents, the Architect shall have issued a certificate for payment covering the SUBCONTRACTOR's completed Work, any certificates of occupation or certificates of completion required to be issued by any authority having jurisdiction shall have been issued, the CONTRACTOR shall have received payment from the Owner, the CONTRACTOR shall have received consent of SUBCONTRACTOR's surety to final payment (if any), and the SUBCONTRACTOR shall provide to the CONTRACTOR its Affidavit and Final Release of Lien/Claim, all final lien waivers from its sub-subcontractors and vendors, warranties, special warranties, all required executed warranty and guaranty documents, guarantees, parts lists, all maintenance and operations manuals, all close-out documents described in the Project Manual (Specification Book), Bid Package Book, and Addenda, two complete sets of "As-Built" prints acceptable to the CONTRACTOR (one hard copy and one electronic copy), and other Project close-out documents required by the Contract Documents. Should CONTRACTOR's close-out of



Initial   NS      Initial   BLA

Sub          Contractor

**Alterations to this Agreement are Prohibited**        Page 27 of 38

## Standard Short Form Agreement Between Contractor and Subcontractor

the entire Project and receipt of final payment from Owner be delayed as a result of SUBCONTRACTOR's delay or failure to submit all such Project close-out documents relating to SUBCONTRACTOR's Work, SUBCONTRACTOR will be responsible for any costs and expenses and damages sustained by CONTRACTOR as a result of such delay or failure. Further, SUBCONTRACTOR's compliance with all other provisions of the Contract Documents is a condition precedent to SUBCONTRACTOR's right to final payment.

**9.3     STORED MATERIALS.** Payments for stored materials will only be made subject to the pre-approval, restrictions and requirements of Owner and CONTRACTOR. Payments will be made, less retainage and only to extent of monies received by CONTRACTOR from Owner, for the stored items under the Owner – CONTRACTOR Agreement. Payments to SUBCONTRACTOR will be made no sooner than ten days after the date payment for the stored materials is received by CONTRACTOR from Owner. In no case, will stored materials be paid for items other than those necessary to be on site to guarantee the progress of the Project and as specifically pre-approved by CONTRACTOR. SUBCONTRACTOR includes protection of all stored materials and safeguards necessary to insure adequate protection to the satisfaction of the CONTRACTOR and OWNER. SUBCONTRACTOR must provide a proper and secure storage facility for all stored material at its own expense. SUBCONTRACTOR must also provide satisfactory insurance coverage as required in Exhibit 'E' attached hereto and made part of this Subcontract. CONTRACTOR will not reimburse SUBCONTRACTOR for materials either misplaced, damaged, or stolen.

**9.4     PAYMENTS WITHHELD.** CONTRACTOR shall have the right to withhold and to reduce any payments to SUBCONTRACTOR for (a) any indebtedness owed by SUBCONTRACTOR to CONTRACTOR, (b) defective work not remedied or defective materials not removed and replaced, (c) third-party claims filed or reasonable evidence indicating probable filing of such claims, (d) claimed failure of the SUBCONTRACTOR to make payments to its subcontractors, suppliers, or laborers, (e) reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract Price, (f) damage to CONTRACTOR or another subcontractor, (g) reasonable indication that the Work will not be completed within the Contract Time/CONTRACTOR's Progress Schedule, (h) unsatisfactory or untimely prosecution of the Work by the SUBCONTRACTOR, or (i) any failure by the SUBCONTRACTOR to comply with the Contract Documents. Items (a) – (i) shall be grounds for default under this Agreement as well. Independent of any other right hereunder, CONTRACTOR may deduct from any payments due or to become due SUBCONTRACTOR amounts equal to any claims asserted against SUBCONTRACTOR in connection with SUBCONTRACTOR's Work on this Project or on any other Project including, but not limited to, lien claims, bond claims, unpaid bills, defective work, incomplete work, and damage to the work of CONTRACTOR. When the basis for disapproval or withholding has been remedied, the SUBCONTRACTOR shall be paid the amounts withheld.

**9.5     JOINT CHECK PAYMENTS.** CONTRACTOR reserves the right to pay any obligations of SUBCONTRACTOR arising on this Project by checks made payable jointly or directly to SUBCONTRACTOR and/or its suppliers or its SUBCONTRACTORs, with any amounts so paid reducing the balance due SUBCONTRACTOR. Joint or direct payments made by CONTRACTOR do not relieve SUBCONTRACTOR of any obligation under this Subcontract.

**9.6     WAIVER OF CLAIMS.** Final payment shall constitute a waiver of all claims by SUBCONTRACTOR relating to Subcontract Work, but shall in no way relieve SUBCONTRACTOR of any liability to CONTRACTOR, including liability for warranties, or for nonconforming or defective work discovered after final payment.

## 10)    INDEMNITY.

**10.1**     The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, Architect, Engineer, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work, or any breach of or failure to comply with any of the provisions of this SUBCONTRACT or the Contract Documents by SUBCONTRACTOR.

**10.2**     The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to



Initial _____ NS      Initial _____ BLA      **Alterations to this Agreement are Prohibited**      Page 28 of 38

Sub                    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work (regardless of cause or of any concurrent or contributing fault or negligence of CONTRACTOR, Owner, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of this Subcontract or the Contract Documents by SUBCONTRACTOR. The SUBCONTRACTOR's indemnification obligation to CONTRACTOR, Owner, and all of their agents, officers, and employees (the "Indemnitees"), for occurrences caused by the sole, contributory, or concurrent negligence of the Indemnitees shall be limited, on a per occurrence basis, to the greater of $1,000,000.00 (as prescribed by Florida Statute § 725.06), the price of this Subcontract, or the limits of liability of the insurance policies provided pursuant to this Agreement, which SUBCONTRACTOR acknowledges and agrees bears a reasonable commercial relationship to this Subcontract.

**10.3**   SUBCONTRACTOR and its surety, if any, hereby agrees to defend, indemnify, and hold harmless CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives from any loss or damage and to reimburse CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives for any and all claims, costs, and expenses, including but not limited to attorneys' fees, legal fees, expert witness fees, and court costs that CONTRACTOR, CONTRACTOR's surety and/or Owner may incur because of:

**10.3.1**  Claims and liens for labor performed or materials used or furnished through or under SUBCONTRACTOR for the Project;

**10.3.2**  any personal injury, loss, damage or death to any person or persons and any property damage arising out of the performance or nonperformance of Work required in this Subcontract, including, without limitation, any personal injury or loss, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, SUBCONTRACTOR's indemnity hereunder shall not arise if such injury, loss, damage or death results from the gross negligence or willful, wanton or intentional misconduct of a party indemnified hereunder;

**10.3.3**  SUBCONTRACTOR's failure or the failure of any of its employees to comply with any law, ordinance, rule, regulation or requirement, including, but not limited to, any Occupational Safety and Health Administration violations and any penalties, including enhancements, resulting in whole or in part by SUBCONTRACTOR's acts or omissions.

**10.4**   CONTRACTOR, in its sole discretion, may defend any or all of the indemnified claims or tender to SUBCONTRACTOR the defense of any or all of the indemnified claims. Upon such tender by CONTRACTOR to SUBCONTRACTOR, SUBCONTRACTOR shall be obligated to assume the defense of CONTRACTOR in the indemnified claims, including the settlement negotiations, and shall pay and satisfy any and all settlements, judgments, sanctions, awards, or expenses, including attorneys' fees, resulting from or arising out of the indemnified claims without reimbursement from CONTRACTOR.

**10.5**   If CONTRACTOR tenders the defense of an indemnified claim to SUBCONTRACTOR and SUBCONTRACTOR fails or neglects to assume that defense, CONTRACTOR may compromise or settle or defend any such action, and SUBCONTRACTOR shall be bound and obligated to reimburse CONTRACTOR for the amount expended by it in settling, compromising, or defending any such claim, or in the amount expended by CONTRACTOR in paying any settlement or judgment rendered therein, together with all reasonable attorneys' fees and expenses of litigation incurred by CONTRACTOR by reason of its defense, settlement, or compromise of such indemnified claims.

**10.6**   Neither final payment by CONTRACTOR nor acceptance of the Work performed by SUBCONTRACTOR shall constitute a waiver of the foregoing indemnities, and notwithstanding any other provision contained in this Subcontract, the provisions of this paragraph shall survive the termination of this Subcontract.

**10.7**   In any claims by any employee of the SUBCONTRACTOR, the SUBCONTRACTOR's sub-contractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, against any persons or entities indemnified hereunder the indemnification obligation shall not be limited as to the amount or type of damages, compensation, or benefits payable by or for the SUBCONTRACTOR or the SUBCONTRACTOR's sub-contractors under Workers' Compensation acts, disability benefit acts or other employee benefit acts.

**11)**   **CORRECTION OF WORK, DEFAULT, AND TERMINATION.**



Initial  NS        Initial  BLA         **Alterations to this Agreement are Prohibited**        Page 29 of 38
Sub            Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**11.1    CORRECTION OF WORK.** SUBCONTRACTOR shall promptly correct all of SUBCONTRACTOR's Work rejected by CONTRACTOR, Architect or Owner as defective or failing to conform to the Contract Documents, whether observed before or after Substantial Completion. SUBCONTRACTOR shall bear all costs of correcting rejected work, including compensation for Architect's or CONTRACTOR's additional services, if required.

**11.2    FAILURE OF PERFORMANCE.** Should SUBCONTRACTOR fail to satisfy contractual deficiencies or to commence and continue satisfactory correction of any default with diligence or promptness within one (1) working day from receipt of CONTRACTOR's written notice, then CONTRACTOR, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and charge the cost thereof to SUBCONTRACTOR, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees. In the event of an emergency affecting safety of persons or property, CONTRACTOR may proceed as above without notice.

**11.3    TERMINATION BY OWNER.** Should Owner terminate its prime agreement with the CONTRACTOR or any part which includes SUBCONTRACTOR's Work, CONTRACTOR shall notify SUBCONTRACTOR in writing within three (3) days of termination and, upon written notification, this Agreement shall be terminated and SUBCONTRACTOR shall immediately stop Subcontract Work, follow all of CONTRACTOR's instructions, and mitigate all costs. In the event of Owner termination, CONTRACTOR liability to SUBCONTRACTOR shall be limited to the extent of CONTRACTOR recovery on SUBCONTRACTOR's behalf under the prime agreement.

**11.4    TERMINATION BY CONTRACTOR.** If SUBCONTRACTOR fails to commence and satisfactorily continue correction of a default within one (1) working day after written notification from CONTRACTOR, then CONTRACTOR may issue a second written notification, to SUBCONTRACTOR and its surety, if any. Such notice shall state that if SUBCONTRACTOR fails to commence and continue correction of a default within five (5) days of the written notification, the Agreement will be automatically terminated. CONTRACTOR may furnish those materials, equipment and/or employ such workers or replacement subcontractor(s) as CONTRACTOR deems necessary to maintain the orderly progress of CONTRACTOR's work. All costs incurred by CONTRACTOR in performing Subcontract Work, including damages, extended general conditions, liquidated damages, reasonable overhead, profit, and attorneys' fees, costs and expenses, shall be deducted from any monies due or to become due SUBCONTRACTOR. SUBCONTRACTOR shall be liable for payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount. At SUBCONTRACTOR's request, CONTRACTOR shall provide a detailed accounting of the costs to finish Subcontract Work.

## 12)    CLAIMS AND DISPUTES.

**12.1    CLAIMS RELATING TO CONTRACTOR.** SUBCONTRACTOR shall give CONTRACTOR written notice of all claims within seven (7) days of the existence of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed absolutely waived by SUBCONTRACTOR. All unresolved claims, disputes and other matters in question between CONTRACTOR and SUBCONTRACTOR shall be resolved in the manner provided in this Agreement.

**12.2    LIQUIDATED DAMAGES.** Inasmuch as SUBCONTRACTOR's failure to complete its Work within the timeframe specified herein will result in substantial injury to the Contractor and whereas damages arising from such failure cannot be calculated with any degree of certainty, it is hereby agreed that if such Subcontract Work is not substantially completed as herein defined within the time fixed herein or within such further time, if any, as shall be allowed for such performance or completion in accordance with the provisions of this Subcontract, the SUBCONTRACTOR shall pay to the Contractor, as liquidated damages for such delay and not as a penalty, One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) per day for each and every calendar day that the SUBCONTRACTOR fails to complete its Work, including all punchlist work ("CONTRACTOR's Liquidated Damages"). SUBCONTRACTOR's obligation for such liquidated damages is irrespective of, and is in no way dependent upon, whether Owner assesses liquidated damages against the Contractor or whether it is impossible to determine the degree of harm caused by SUBCONTRACTOR's delay. SUBCONTRACTOR acknowledges that its failure to timely complete its Subcontract Work will cause financial harm to Contractor irrespective of whether or not Owner assesses any liquidated damages against Contractor. This provision for liquidated damages shall in no manner affect the Contractor's right to terminate this Subcontract as provided for elsewhere in this Subcontract and other Contract Documents, and Contractor's exercise of the right to terminate shall not release the SUBCONTRACTOR from its obligation to pay said liquidated damages.

Initial [NS]    Initial [BLA]    **Alterations to this Agreement are Prohibited**    Page 30 of 38

Sub    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

If the CONTRACTOR's agreement with the Owner provides for liquidated or other damages for delay, and such damages are assessed, CONTRACTOR may assess a share of the damages against SUBCONTRACTOR in proportion to SUBCONTRACTOR's share of responsibility for the delay. This apportionment shall be in addition to the CONTRACTOR's Liquidated Damages.

**12.3   WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, SUBCONTRACTOR shall continue Subcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. If SUBCONTRACTOR continues to perform, CONTRACTOR shall continue to make payments of amounts undisputedly owed to SUBCONTRACTOR in accordance with this Agreement.

**12.4   MULTIPARTY PROCEEDING.** The parties agree, to the extent permitted by the prime agreement, that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between CONTRACTOR and SUBCONTRACTOR involve in whole or in part disputes between CONTRACTOR and Owner, disputes between SUBCONTRACTOR and CONTRACTOR shall be decided by the same tribunal and in the same forum as disputes between CONTRACTOR and Owner, and SUBCONTRACTOR agrees to consolidation and joinder of the same.

**12.5   STAY OF PROCEEDINGS.** In the event that provisions for resolution of disputes between CONTRACTOR and Owner contained in the prime agreement do not permit consolidation or joinder with disputes of third parties, such as SUBCONTRACTOR, resolution of disputes between SUBCONTRACTOR and CONTRACTOR involving in whole or in part disputes between CONTRACTOR and Owner shall be stayed pending conclusion of any dispute resolution proceeding between CONTRACTOR and Owner.

**12.6   DIRECT DISCUSSION.** If a dispute arises out of or relates to this Agreement, the parties shall endeavor to settle the dispute through direct discussion.

**12.7   MEDIATION.** Disputes between SUBCONTRACTOR and CONTRACTOR not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The parties shall select the mediator within fifteen (15) days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution.

**12.8   OTHER DISPUTE PROCESSES.** If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.

**ARBITRATION.** At the sole discretion of the CONTRACTOR or its Surety, all claims, counterclaims, disputes, and other matters in question between the CONTRACTOR or its Surety and the SUBCONTRACTOR or its Surety (if applicable) arising out of this Agreement or the breach thereof shall be decided by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining. CONTRACTOR expressly reserves its right on behalf of CONTRACTOR and its Surety to have any dispute resolved by binding arbitration, including but not limited to those initiated by SUBCONTRACTOR, in which event the parties agree that the litigation will be dismissed and the dispute will proceed in arbitration. If the CONTRACTOR or its Surety elects to submit the claims, counterclaims, disputes, and other matters in question to binding arbitration, it will give the other party notice of its intent, and the parties will proceed in accordance with the Construction Industry Rules of the American Arbitration Association. The award rendered by the arbitrator shall be final, and judgment shall be entered upon it in accordance with applicable Florida law.

**12.9   COST OF DISPUTE RESOLUTION.** The cost of any mediation proceeding shall be shared equally by the parties participating. Additionally, the parties agree to bear their own attorneys' fees and costs for any dispute arising out of this Agreement and/or the Project and knowingly, voluntarily, and intentionally and expressly waive and relinquish any and all statutory or other rights to recover attorney's fees' or costs from CONTRACTOR, its Surety, if any, and Owner for any dispute arising out of this Agreement and/or the Project.

**13)   NO PRESUMPTION AGAINST DRAFTER.** The Parties expressly agree that they freely and voluntarily enter into this Agreement and have had the opportunity to obtain assistance of legal counsel of their choice in reviewing its terms prior to execution. The Parties acknowledge and agree that no rule of construction applies to the disadvantage of a party because that party was responsible for the preparation of this Subcontract or part of it.



Initial ___  NS
Sub

Initial ___  BLA
Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

## 14)    MISCELLANEOUS PROVISIONS.

**14.1**    If required for this Subcontract, pursuant to Executive Order 11-02 signed by the Florida Governor on January 4, 2011 and other applicable law, SUBCONTRACTOR will utilize the E-verify system, established by the U.S. Department of Homeland Security to verify the employment eligibility of its employees and any of its subcontractors assigned to perform work on the Project. This, when required, is a continuing obligation that applies throughout the duration of the Project, and SUBCONTRACTOR acknowledges that any additional personnel, not previously verified, that may be assigned to the Project will be subject to the aforementioned E-verification. Results of the E-verification will be provided to CONTRACTOR and remain in the SUBCONTRACTOR's project records for review by CONTRACTOR and/or Owner as requested. Additionally, SUBCONTRACTOR shall certify to CONTRACTOR by affidavit that the SUBCONTRACTOR has verified through the E-verify system the employment status of each employee assigned to work on the Project. SUBCONTRACTOR shall be responsible for including this provision in all its' subcontracts issued as a result of this Subcontract.

**14.3**    The SUBCONTRACTOR has no power to assign its rights or duties under this Subcontract. The parties expressly acknowledge that in selecting the SUBCONTRACTOR, the CONTRACTOR considered various factors, including but not limited to the SUBCONTRACTOR's reputation, quality of work, and capacity to perform. SUBCONTRACTOR specifically agrees not to assign, sell, or transfer any accounts receivables under this Subcontract to any third-party factoring company or related business. NEITHER THE OWNER NOR THE CONTRACTOR SHALL BE LIABLE TO ANY THIRD PARTIES FOR PAYMENT OF ANY ASSIGNED ACCOUNTS RECEIVABLES.

**14.4**    By acceptance of this Subcontract, SUBCONTRACTOR guarantees its prices contained herein for the duration of the Project, through the date of Final payment by the Owner. The SUBCONTRACTOR expressly agrees that external conditions outside the control of SUBCONTRACTOR, including but not limited to materials shortages and price escalations, have been accounted for in the Contract price and shall not constitute the basis for a time extension or a claim for additional compensation of any type.

**14.5**    This Contract is specifically intended to be for the benefit of the Owner. The Owner may maintain an action for breach of this Subcontract. However, SUBCONTRACTOR is not an intended third-party beneficiary of the Agreement between Owner and CONTRACTOR.

**14.6**    No right or remedy in this Subcontract is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.

**14.7**    The obligations of the CONTRACTOR and SUBCONTRACTOR under this Subcontract are expressly conditioned upon the CONTRACTOR's successfully entering into a contract with the Owner for the Project. If the Owner shall decline for any reason whatsoever to enter into a contract with the CONTRACTOR for the Project, then this Subcontract shall automatically become null and void and CONTRACTOR and SUBCONTRACTOR shall be discharged from their respective obligations hereunder. Further, in such event, CONTRACTOR shall have no liability of any kind to SUBCONTRACTOR including, without limitation, cancellation charges.

**14.8**    If applicable, the Owner may choose to directly purchase materials as a tax exempted entity as defined by the IRS and the State of Florida, and if this option is available to the Owner and the Owner decides to use this option, the SUBCONTRACTOR will be notified and shall comply with the Owner Direct Purchase program by providing a credit for the material being purchased directly including the sales tax attributable thereto.

**14.9**    The nondiscrimination clauses contained in Section 202 of Executive Order 11246, as amended; Section 402 of the Vietnam Era Veteran's Readjustment amended, relative to equal opportunity for all persons within regard to race, color, religion, sex national origin, handicapped, Vietnam Era or disabled veteran and the implementing rules and regulations prescribed by the Secretary of Labor are incorporated herein.

**15)    SUBCONTRACTOR'S WAIVER OF JURY TRIAL.** The SUBCONTRACTOR and its Surety expressly and voluntarily waive all rights to a jury trial in any claim or dispute arising from the Subcontract, the Project, and/or any associated Bond(s).



Initial _____    Initial _____          **Alterations to this Agreement are Prohibited**          Page 32 of 38
Sub                          Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

CONTRACTOR: Portrait Construction of Florida

BY: *Bruce L. Abbey President*

PRINT NAME: Bruce L. Abbey President

PRINT TITLE: President

DATE: 11/8/2021

WITNESS:

SUBCONTRACTOR: Cemplex Group Florida, LLC

BY: *Nathan Shirley*

PRINT NAME: Nathan Shirley

PRINT TITLE: CFO

DATE: 11/8/2021

WITNESS:

Initial NS
Sub

Initial BLA
Contractor

**Alterations to this Agreement are Prohibited**        Page 33 of 38

**Standard Short Form Agreement Between Contractor and Subcontractor**

# EXHIBIT A
# SCHEDULE OF VALUES

| # | Cost Code | Description | Type | Amount |
|---|-----------|-------------|------|--------|
| 1 | 03-05413-50 - Gypcrete | Elevated Concrete & Gypcrete | Subcontract | $534,191.00 |
| | | | | |
| | | | Grand Total: | $534,191.00 |

**Standard Short Form Agreement Between Contractor and Subcontractor**

# EXHIBIT B
# INSURANCE REQUIREMENTS

**INSURANCE.** Prior to commencement of its Work, the SUBCONTRACTOR shall furnish to CONTRACTOR policies of insurance and appropriate certificates evidencing that the below described insurance is in force and fully paid. All insurance policies and certificates provided for hereunder shall become a part of this Subcontract and the policies and insurance company issuing same must be acceptable to CONTRACTOR. The SUBCONTRACTOR shall purchase and maintain insurance of the following types of coverage and limits of liability:

A. Commercial General Liability (CGL) with limits of insurance not less than $1,000,000 each occurrence and $2,000,000 annual aggregate.
   i. If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.
   ii. No Residential Exclusion under GL Policy. No Exterior Insulation Finishing System (EIFS) under GL Policy for Subcontractors doing Exterior Walls.
   iii. CGL coverage shall be written on ISO Occurrence Form CG 00 01 1093 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, explosion, collapse and underground (XCU), broad-form property damage and personal injury, products-completed operations, and personal and advertising injury.
   iv. CONTRACTOR, Owner, and all other parties required by the CONTRACTOR and/or by the Owner Contract, shall be included as additional insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85 or an endorsement providing equivalent coverage to the additional insureds. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured SUBCONTRACTOR. It shall apply as Primary Insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured.
   v. SUBCONTRACTOR shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 10 years after completion of the Work.
   vi. Thirty (30) day notice of written cancellation
   vii. Waivers of Subrogation (applicable to property, auto, liability and workers compensation – in favor of Portrait Construction of Florida and the Owner) The CONTRACTOR and SUBCONTRACTOR waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, Architect, Architect's consultants, separate contractors, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

B. Automobile Liability
   i. Business Auto Liability with limits of at least $1,000,000 each accident.
   ii. Business Auto coverage must include coverage for liability arising out of all owned, leased, hired and non-owned automobiles.
   iii. CONTRACTOR, Owner and all other parties required of the CONTRACTOR shall be included as additional insureds on the auto policy.

C. Commercial Umbrella
   i. Umbrella limits must be at least $3,000,000.
   ii. Umbrella coverage must include as insureds all entities that are additional insureds on the GL and Automobile.
   iii. Umbrella coverage for such additional insureds shall apply as primary before any other insurance or self-insurance, including any deductible, maintained by, or provided to the additional insured other than the CGL, Auto Liability and Employers Liability coverages maintained by the Subcontractor.

D. Workers Compensation and Employers Liability
   i. Employers Liability Insurance limits of at least $1,000,000 each accident for bodily injury by accident and $1,000,000 each employee for injury by disease.
   ii. If you lease employees, you must have a minimum premium worker's compensation policy.
   iii. If you lease employees, an alternate employer endorsement for worker's compensation is required.
   iv. If you lease employees, a Leased Employee Affidavit must be filled out. (See Exhibit of Contract)

Portrait Construction of Florida insurance requirements must be met (this includes an installation floater). In the event that materials under your contract are stolen/damaged while on the jobsite, you will be responsible for the replacement of these materials at your expense. If Portrait Construction of Florida and/or the Owner utilizes the builders risk policy for stolen/damaged materials that are under your subcontract, you will be responsible for reimbursing the CONTRACTOR or owner for the policy deductible of $5,000.00.

Initial [NS]    Initial [BLA]    **Alterations to this Agreement are Prohibited**    Page 35 of 38
Sub      Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

Certificates of insurance acceptable to the CONTRACTOR shall be filed with the CONTRACTOR prior to commencement of the SUBCONTRACTOR's Work. Attached to each Certificate of Insurance shall be a copy of the Additional Insured Endorsement that is part of the SUBCONTRACTOR's Commercial General Liability, Auto and Umbrella Policies. CONTRACTOR's receipt of SUBCONTRACTOR's proof of insurance as required above at the beginning of the Project, and at any other time that the insurance required by the Contract Documents is required to be in place, is an express condition precedent to Subcontractor's right to commence work and SUBCONTRACTOR's right to payment at any time.

Coverages, written on an occurrence basis, shall be maintained without interruption from date of commencement of the SUBCONTRACTOR's Work until two years after the project completion date.

These certificates and the insurance policies shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the CONTRACTOR. If any of the foregoing insurance coverages are required to remain in force after final payment, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment. If SUBCONTRACTOR receives notice that any of its insurance carriers intend to cancel, non-renew, or materially change any of the policies required to be maintained by the Subcontract for any reason, it must immediately give written notice of the same to CONTRACTOR. Furthermore, if SUBCONTRACTOR cancels, non-renews, or materially changes any of the policies required to be maintained by the Subcontract for any reason, it must give written notice to CONTRACTOR thirty (30) days in advance of such changes becoming effective. SUBCONTRACTOR's failure at any time to have insurance coverage of the types and amounts listed herein is a material breach of contract and a default justifying termination of this Subcontract.

SUBCONTRACTOR waives all rights against CONTRACTOR, Owner and Architect and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by SUBCONTRACTOR's commercial general liability, commercial umbrella liability, business auto liability or worker's compensation and employer's liability insurance maintained per requirements stated above.

It is expressly agreed and understood by and between SUBCONTRACTOR and CONTRACTOR that all insurance, whether issued on a primary or excess basis, afforded the additional insureds shall be primary insurance to any other insurance available to CONTRACTOR and that any other insurance carried by CONTRACTOR shall be excess of all other insurance carried by the SUBCONTRACTOR and shall not contribute with the SUBCONTRACTOR's insurance. SUBCONTRACTOR further agrees to provide endorsements on its insurance policies that shall state the foregoing; however, SUBCONTRACTOR's failure to provide such endorsement shall not affect SUBCONTRACTOR's agreement hereunder.

It is understood and agreed that the insurance coverage and limits required herein shall not limit the extent of SUBCONTRACTOR's responsibilities and liabilities specified within the Contract Documents or by law. Equivalent insurance coverage must be obtained from each Sub-subcontractor and Supplier, if any, before permitting them on the site of the Project. Otherwise, such insurance for Sub-subcontractor and Supplier must be included within SUBCONTRACTOR's insurance policies.

The CONTRACTOR and SUBCONTRACTOR waive all rights against each other and against the Owner, the Architect/Engineer, separate contractors, and all other subcontractors for damages caused by fire or other perils to the extent covered by Builder's Risk or any other property insurance, except such rights as they may have to the proceeds of such insurance.

---

**Below is a checklist of all Insurance Requirements as stated in the Sub-Subcontract. A Sample COI follows.**
GENERAL LIABILTIY

- Liability Limits $1,000,000/$2,000,000
- Per Project Aggregate
- Include Primary Non-Contributory Coverage
- List as Additional Insured and Include in Waiver of Subrogation in favor of: (including Completed Operations) and must include copy of endorsement to the policy.
  - Portrait Construction of Florida
  - Owner
  - Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address – Must include a copy of endorsement to the policy
- Confirmation no Residential exclusion - MUST INCLUDE COPY OF FORMS PAGE FROM POLICY

AUTOMOBILE

- Liability Limits $1,000,000
- Portrait Construction of Florida & Owner listed as Additional Insured
- Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address

---

Initial
Sub

Initial
Contractor

**Alterations to this Agreement are Prohibited**

Page 36 of 38

## Standard Short Form Agreement Between Contractor and Subcontractor

### WORKERS COMPENSATION
- Limits - $1,000,000/$1,000,000/$1,000,000
- Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address

### UMBRELLA
- Limit of Liability - $3,000,000
- Verify box "OCCUR" and "UMB" boxes are checked
- Portrait Construction of Florida & Owner listed as Additional Insured
- Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address

### INSTALLATION FLOATER (If required by CONTRACTOR)
- Special Form-(All Risk)
- Limit listed in amount of initial subcontract

Initial _____ NS _____   Initial _____ BLA _____
Sub                        Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

## ACORD — CERTIFICATE OF LIABILITY INSURANCE



ACORD 25 (2001/08)

© ACORD CORPORATION 1988

DocuSign Envelope ID: [illegible]





Subcontractor and **Portrait Construction of Florida, Inc** ("Contractor") agree these Standard Terms shall be incorporated into their Subcontract for the work to be performed on **Futura at Nona Cove, Orlando, Florida** ("Project"). If there is any conflict, inconsistency, or variance among the Contract Documents, these Standard Terms shall govern, then the Subcontract.

1.      Operations. Contractor may not take possession of Subcontractor's equipment or appliances. Contractor must provide reasonable notice of Subcontractor's work schedule and any changes. Contractor cannot accelerate Subcontractor's work without additional compensation, unless for Subcontractor's fault. A condition precedent to Subcontractor's obligations is the approval without revision of Formulated Materials' submittals, which shall govern the products, methods, and systems installed. The prices in Subcontract are only firm for fifteen months after Subcontractor's execution of the Subcontract.

2.      Legal. Nothing within the Subcontract shall be construed to affect Subcontractor's rights to file liens and/or bond claims on the Project. Contractor cannot require Subcontractor to post a bond except for liens claimed through Subcontractor. Nothing will be construed as a personal guarantee or warranty from any member, officer, or employee of Subcontractor.

3.      Insurance and Indemnity. Subcontractor cannot, and therefore will not, indemnify anyone for any damage or claim arising from any act or negligence by others outside of the direction and/or control of Subcontractor. All indemnification obligations are limited by the coverage limits of Subcontractor's provided certificate of insurance. All indemnification and warranty obligations shall be void if any unit in the Project is sold individually, separate and distinct from the Project as a whole. A mold exclusion applies to all liability matters related to the Work, including without limitation all insurance and indemnification requirements.

4.Contractor or others must provide the following: 50'x100' footprint operating area, access to a broom cleaned, dried, cured, and securely-fastened flat plane subfloor of minimum 23/32 OSB; access to 40 gallons/min. source, all holes/gaps greater than ⅛" in subfloor and abutting walls repaired; all subfloor and plumbing penetrations sealed and capped; proper blocking and stops at all exterior doors, tubs, toilets, and stair landings; outer perimeter safety railings secured; all aluminum surfaces taped/protected; proper slope of all subfloor surfaces; and, after installation, proper heat or cooling, light foot traffic only for 48 hours, and, if desired, aluminum T-bar paint by others. The specified product includes a pour at uniform thickness and finished to a smooth surface. Floor leveling is not included because flatness of the substrate is not known, and therefore the scope for the flooring contractor includes some sanding and skim patching for the specified flooring products. Subcontractor assumes no responsibility for the protection of its work while off the job site and shall not be liable to anyone for damage caused by other scopes' improper work. No charge shall be made for any shared cleaning duties performed for other scopes' work. All Subcontractor's warranties within the Subcontract shall last one year from substantial completion

  

v.12.18

# EXHIBIT F



# ADDITIONAL PROVISIONS TO THE SUBCONTRACT AGREEMENT

**HUD PROVISIONS:**

1) All parties hereby agree that SUBCONTRACTOR assures that either he or an authorized representative of his company will attend all jobsite meetings as established by CONTRACTOR's supervisory staff unless their presence is not requested by CONTRACTOR. In the event a representative shall represent SUBCONTRACTOR at these meetings, said representative shall be able to make binding commitments on all matters to be discussed at such meetings, including cost, payments, change orders, time schedules and manpower requirements. Further, financial penalties per meeting will be imposed if SUBCONTRACTOR or SUBCONTRACTOR's representative is not present at these meetings. The following person(s) are designated as SUBCONTRACTOR's representatives having the authority as stated herein.

Subcontractor Designated Representative:    Mark Ganskop 386-867-0269

[Optional Representative]    Antonio Arreola

Subcontractor Certified Payroll Contact & Phone #    Lauren Ganskop 386-365-8016

2) Requirement of, per US Department of Housing and Urban Development, HUD 92442-A, SUBCONTRACTOR waives right to file a mechanic's or materialman's lien or maintain any claim against improvements for or on account of any work done, labor performed or materials furnished under this Subcontract agreement.

3) SUBCONTRACTOR agrees to send Certified HUD payroll sheets in weekly for this Subcontract Agreement. (Through Elations.com; #067-35564 Futura @ Nona Cove)

4) Before work commences, the SUBCONTRACTOR shall enroll in Futura at Nona Cove's Owner Controlled Insurance Policy with Willis Towers Watson with the contact listed below:

> **Janice McNary, CISR**
> OCIP Administrator, Construction Practice
> **Willis Towers Watson**
> 3407 W. Dr. Martin Luther King Blvd.
> Lakeside Suite #200
> Tampa, FL 33607
> Mobile: 813-450-9654
> Janice.mcnary@willistowerswatson.com
> www.willistowerswatson.com

5) It is fully understood that SUBCONTRACTOR will be responsible for keeping its part of the job clean and in an orderly fashion subject to the approval of CONTRACTOR and ARCHITECT. Further, SUBCONTRACTOR shall be totally responsible for the clean up on a daily basis of all debris generated by SUBCONTRACTOR'S daily operations. Should it become necessary for CONTRACTOR to incur any expenses performing cleanup work or removing debris from site for SUBCONTRACTOR, such expense will be deducted from SUBCONTRACTOR's contract amount.

6) All work shall be in accordance with Project Plans and Specifications.

7) Project Includes **Davis Bacon Wages rates**, see attached at end of Contract.



## Standard Short Form Agreement Between Contractor and Subcontractor

This Agreement is made this 12th day of February, 2021 by and between

**GENERAL CONTRACTOR:**
Portrait Construction of Florida, Inc
2452 Lake Emma Rd. #1040
Lake Mary, Florida 32746
Phone: (407) 831-6275

**SUBCONTRACTOR:**
Express Plumbing, Inc.
657 NW Savannah Circle
Lake City, 32055
Phone: (386) 867-0269

PROJECT:      Futura at Nona Cove

OWNER:        LN Apartments, LLC

ARCHITECT:    Charlan Brock & Associates

ENGINEER:     Z Development Services

### TERMS:

**SUBCONTRACTOR'S WORK**. SUBCONTRACTOR agrees to provide and complete all Work ("Work") required of it under the Contract Documents, including, but not limited to; all labor, services, materials, installation, clean-up, hoisting, supplies, insurance equipment, scaffolding, tools, and other facilities of every kind required for the prompt and efficient performance of all Plumbing Package. The Work is per the Drawings and Specifications in strict accordance with the Contract Documents. SUBCONTRACTOR shall give timely notices to authorities pertaining to subcontract Work and shall be responsible for all permits, fees, licenses, assessments, inspections, testing and taxes necessary to complete subcontract Work.

**SUBCONTRACT AMOUNT**. CONTRACTOR agrees to pay SUBCONTRACTOR for satisfactory and timely performance and completion of subcontract Work: $2,117,510.00

Retainage shall be ten percent (10.0%).

### SCOPE:

### PLUMBING

1) All parties hereby agree this contract includes the following:

1. All water piping to be CPVC extending no further then 5' from BLDG.
2. Unit to be PEX.
3. All sewer and venting to be PVC extending no further then 5' from BLDG.
4. All hangers, accessories ball valves to be industry standard.
5. All meters, testing and set up be owner.
6. All fixture to be: WC- Gerber Maxwell dual flush; LAV- Under-mount white china with single handle Chrome Perrless faucet.
7. SH- White Sterling base with single control chrome trim by Peerless.
8. Tub- Aquatic 6032SMINML
9. KS- High arch pull down sprayer faucet by Pfister Arkitek.
10. WH by AoSmith ENL-40,50



Initial _____ Initial **BLA**
Sub              Contractor

**Alterations to this Agreement are Prohibited**

Page 2 of 47



# Standard Short Form Agreement Between Contractor and Subcontractor

11. Fire caulking.
12. Hose bib Smith box
13. Elevator pump liberty 11el
14. In Contractor accepting this price Subcontractor includes limited redesign that may require plumbing engineers/consultants' approval such as eliminating clean-outs at base of stacks
15. Structured Parking Garage Includes: parking deck drains & trench drain.
16. Plumbing permit.
17. One condensation/pan drain combo riser only.
18. Pool shower.
19. Domestic booster pack.
20. Radon Gas Mitigation Venting.
21. Construction Office Trailer Holding Tank Hook-Up.

2) All parties hereby agree that Subcontractor shall use "Good Construction Practice" in the execution of Subcontractor's Work, and that any miscellaneous and or incidental items required to effectively complete this scope of work whether referenced or not, in this scope of work or on the Contract Documents, are included.

3) All parties hereby agree that following and implementing all applicable plumbing codes shall be a part of this Subcontract Agreement.

4) All parties hereby agree that the sewer tie-ins at approximately five feet (5') outside each building are included in this Subcontract Agreement.

5) All parties hereby agree that the tie-in of the potable water system at approximately five feet (5') outside each building is included in this Subcontract Agreement.

6) All parties hereby agree that Subcontractor shall carefully layout and install all in-wall piping utilizing UL approved fire caulking or firestopping at all locations required by all governing authorities.

7) All parties hereby agree that Subcontractor shall locate all penetrations and box-outs required for Subcontractor's Work on precast parking garage shop drawings   Subcontractor shall coordinate with the Precast Design Engineer and provide necessary pipe/duct routing in accordance with the precast design and Contract Documents. Subcontractor shall coordinate and receive approval from the Precast Design Engineer to core-drill any openings.  The core-drilling and cutting required for Subcontractor's Work in included.  Subcontractor is not responsible for relocating rebars.

8) All parties hereby agree that Subcontractor shall take 2" radon stub up to thru building and exhaust out of 3" exhaust stack through roof.

9) All parties hereby agree that any required fire caulking or firestopping of any nature is included in this Subcontract Agreement.

10)   All parties hereby agree that any expansion joint fittings required are included in this scope of work.

11)   All parties hereby agree that Subcontractor shall provide mechanical tamping at all trench excavations during backfill from the bottom to the top until proper compaction has been reached.  This tamping operation shall be accomplished under the direction and approval of Contractor and materials testing consultant.



Initial _____ Sub    Initial  BLA  Contractor

**Alterations to this Agreement are Prohibited**

Page 3 of 47

## Standard Short Form Agreement Between Contractor and Subcontractor

14) All parties hereby agree that any required plumbing for the installation of the swimming pool for the project is included in this Subcontract Agreement.

15) All parties hereby agree that Subcontractor will coordinate its work with the drywall Contractor so as to minimize cutting of drywall.

16) All parties hereby agree that Subcontractor shall furnish and install water service to the Construction Office Trailer, including hook-up of waste tank.

17) All parties hereby agree that Subcontractor shall install Contractor provided wall flashings at all piping penetrations to the building envelope. Subcontractor shall follow all aspects of the Contractor's building envelope waterproofing system protocols.

18) All parties hereby agree that Subcontractor shall drain all bathtubs immediately after plumbing inspection has been made.

19) All parties hereby agree that Subcontractor is to furnish and install bathtub protectors under this Subcontract Agreement.

20) All parties hereby agree that Subcontractor shall notify Contractor of any areas where framing is not adequate to allow installation of plumbing as designed and still provide a flat plane for the installation of drywall.

21) All parties hereby agree that Subcontractor is to install tub protectors one time and this installation is to be inspected by Contractor. In the event tub protectors are not inspected and signed off by Contractor's Jobsite Superintendent, then Subcontractor shall be responsible for any repairs that have to be made to the tubs themselves.

22) All parties hereby agree that when refrigerators occur back to back, space saver boxes shall be installed on opposite sides of studs.

23) All parties hereby agree that Subcontractor shall isolate its work from other items where "galvanic action" might occur.

24) All parties hereby agree that Subcontractor shall set water stops for toilets high enough to allow for a 6" baseboard to pass under the escutcheon ring.

25) All parties hereby agree that Subcontractor shall furnish and install chrome escutcheon rings at all exposed pipe penetrations.

26) All parties hereby agree that any caulking of plumbing fixtures shall be of a type and color acceptable to Contractor.

27) All parties hereby agree that, if applicable to this project, space saver washer and icemaker boxes shall be supplied and installed by this Subcontractor. These boxes shall have "knock outs" for protection from drywall compound and paint.

28) All parties hereby agree that Subcontractor is to broom clean each unit after completion of Subcontractor's rough-in operation.

29) All parties hereby agree that Subcontractor shall furnish and install condensate drains for the project.

30) All parties hereby agree that Subcontractor shall fire caulk all holes in accordance with all governing authority requirements.

31) All parties herby agree that Subcontractor has included all service sinks, booster pumps (including controls, sensors, starter, alarms, etc.), elevator sump pumps, hose bibs, water coolers, re-circulating pumps, etc.

32) All parties herby agree that Subcontractor has included the trash chute wash-down water line connection.

33) All parties hereby agree that Subcontractor has included all gas piping required for courtyard amenities. Includes all piping from meter to each appliance.



Initial _____ Initial _____ BLA
Sub        Contractor

**Alterations to this Agreement are Prohibited**          Page 4 of 47

## Standard Short Form Agreement Between Contractor and Subcontractor

34) All parties herby agree that Subcontractor has included water line to pet fountain, dog spa, and outdoor pool shower.

35) All parties hereby agree that Subcontractor shall furnish and install all required handicap-plumbing fixtures in accordance with the Americans with Disabilities Act and Project Plans and Specifications.

36) All parties hereby agree that water heater jackets for all water heaters are included in this Subcontract Agreement.

37) All parties hereby agree that water heater pans are included in this Subcontract Agreement.

38) All parties hereby agree that Subcontractor shall furnish labor and material to hook-up temporary water to Contractor's trailer and Owner's temporary leasing trailer, if applicable.

39) All parties hereby agree that Subcontractor is to furnish labor and material for any required pipe insulation including traps, supplies, etc. of any nature.

40) All parties hereby agree that all lavatories, toilets, sinks and urinals with all associated backing, supports and hardware are included in this Subcontract Agreement.

41) All parties hereby agree that floor drains shall be installed in all areas as shown on Plans and in areas as required by all governing authorities.

42) All parties hereby agree that any required backflow preventers are included in this Subcontract Agreement.

43) All parties hereby agree that all roof jacks and weather proofing of this Subcontractor's scope of work is included in this Subcontract Agreement.

44) All parties hereby agree that all fixtures, trim and caulking of fixtures is included in this Subcontract Agreement.

45) All parties hereby agree that any required testing, or chlorinating inspection flushing, and sterilization of piping is included in this Subcontract Agreement.

46) All parties hereby agree that six (6) copies of product data in the form of manufacturer's catalog sheets, showing illustrated cuts of the items to be furnished, scaled details, sizes, dimensions, performance characteristics, capacities, wiring diagrams and controls, of all pertinent information are included in this Subcontract Agreement. This may also be submitted electronically.

47) All parties hereby agree that any required icemaker supplies and connection, if applicable to this project, is included in this Subcontract Agreement.

48) All parties hereby agree that Subcontractor shall furnish access doors/panels for concealed devices/valves/etc. for installation by others, including fire rated panels as required. Subcontractor shall layout access panel locations prior to concealment of work by other trades. Subcontractor shall submit access doors/panels layout drawings for approval by the Architect of Record.

49) All parties hereby agree that Subcontractor shall provide metal nail guards/adjust locations and floor/ceiling plate according to applicable code to prevent damage to plumbing pipes in place from finish trades.

50) All parties hereby agree that Subcontractor shall provide own task lighting for Subcontractor's Work. The project will have OSHA required temporary lighting.



Initial Sub   Initial Contractor   BLA



# Standard Short Form Agreement Between Contractor and Subcontractor

53) All parties hereby agree that Subcontractor includes installation of all in slab work to support the Cast-in-Place concrete. Subcontractor acknowledges that the concrete pour schedule is weather dependent and any make-up concrete pour due to weather delays will be scheduled on the next available day including weekends if necessary.

54) All parties hereby agree that Subcontractor shall keep water in pipes, under pressure, throughout the entire construction process.

55) All parties hereby agree that Subcontractor shall test ground works for leaks and needed repairs after slab makeup, prior to slab pour.

56) All parties hereby agree that it shall be the responsibility of Subcontractor to properly cap ground works prior to slab pour to prevent concrete from getting into pipes.

57) All parties hereby agree that Subcontractor shall freeze proof exposed buildings prior to temporary heat.

58) All parties hereby agree that Subcontractor shall test and ensure that water heater elements are working 72 hours prior to the Management Walk for Acceptance.

59) All parties hereby agree that Subcontractor shall be responsible for the furnishing and installation of any required fire collars for the project.

60) All parties hereby agree that all tubs shall be secured to the studs as per the manufacturer's recommendations. In the event separation from tile surround or tub surround should occur due to non-compliance with the manufacturer's recommendations; it shall be the responsibility of this Subcontractor to neatly caulk the tile or tub surround at no additional cost to Contractor.

61) All parties hereby agree that Subcontractor shall provide professionally typed identification labels, signage, stenciling for condensers, roof top equipment, piping, wiring, and other Subcontractor's Work as per Contract Documents.

62) All parties hereby agree that Subcontractor shall schedule all multiple phased inspections related to Subcontractor's Work. Including, under-ground inspection, rough-in inspections, wall close-in inspections, occupancy inspections, fire alarm inspections, and other inspections as required by AHJ. If required, premium or overtime hour inspections are included to stay with the project schedule. Subcontractor shall participate in other trades inspections involve this Subcontractor's interface.

Add Options:
1. Add for Radon Gas Mitigation System consisting of (56) 3" PVC Radon vents
Beginning at a flange underground and rising up through roof only . Add ................. $ 17,510.00
(No underground piping or matting, gravel, fabric, trenching, sleeves, or fans)

**DURATION:**



Initial Sub      Initial Contractor      **BLA**

**Alterations to this Agreement are Prohibited**          Page 6 of 47



# Standard Short Form Agreement Between Contractor and Subcontractor

1) **CONTRACT DOCUMENTS.** The "Contract Documents" include 1) this Subcontract Agreement and all documents attached hereto as Exhibits; 2) all documents which comprise the Contract between the Owner and CONTRACTOR; 3) all General Conditions, Supplementary Conditions and other conditions applicable to the Project; 4) the Plans and Drawings prepared for the Project; 5) the Project Manual or Specifications, including but not limited to Specification Divisions 1 through 16; 6) all bulletins and addenda issued in connection with the Project; 7) all standards, requirements or conditions incorporated into the Contract Documents by reference; and 8) any amendments, modifications, or changes to any or all of those documents identified in (1) – (7) which may occur during the Project. No other documents except those identified herein shall be considered Contract Documents. In the event of conflict, inconsistencies, variations between the provisions of the Subcontract Agreement and any other Contract Documents, including the Contract between the Owner and CONTRACTOR, the Subcontract Agreement shall govern. SUBCONTRACTOR and its sub-subcontractors and suppliers shall be bound to CONTRACTOR by all of the provisions of the Contract Documents and shall strictly comply therewith in all respects. SUBCONTRACTOR shall perform Subcontract Work under the general direction of CONTRACTOR and shall cooperate with CONTRACTOR so CONTRACTOR may fulfill obligations to Owner. A. This subcontractor agrees to specifically adhere to the requirements of Division 00 and 01 of the specifications. As the CONTRACTOR and SUBCONTRACTOR have been party to the design and engineering of the project, they have a thorough knowledge of the Contract Documents. Therefore, the SUBCONTRACTOR accepts full responsibility for the completeness and coordination of its scope of Work as to ensure quality installation and product. Any material, assembly, device, detail, component, and/or means/method which may not necessarily be shown on the Contract Documents but is required to make the project complete and suitable for its intended purpose shall be the SUBCONTRACTOR's sole responsibility without any adjustment to the subcontract amount.

## 1a)     Drawing Log

| FUTURA AT NONA COVE 10.16.19 | | | | |
|---|---|---|---|---|
| Discipline | Drawing No. | Drawing Title | Revision | Drawing Date |
| Civil | C0 | CIVIL DATA AND NOTES SHEET | 3 | 6/15/2020 |
| Civil | C1.0 | OVERALL SITE PLAN | 2 | 6/15/2020 |
| Civil | C1.1 | DEMOLITION PLAN | 2 | 6/15/2020 |
| Civil | C2.0 | SITE DIMENSION PLAN | 3 | 6/15/2020 |
| Civil | C2.1 | EMERGENCY & SOLID WASTE AUTO TURN ANALYSIS | 2 | 6/15/2020 |
| Civil | C3.0 | SITE UTILITY PLAN | 8 | 6/26/2020 |
| Civil | C4.0 | GRADING AND DRAINAGE PLAN | 2 | 6/15/2020 |
| Civil | C4.1A | CIVIL DATA AND NOTES SHEET | 1 | 6/15/2020 |
| Civil | C4.1B | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.1C | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.2 | COURTYARD & POOL AREA GRADING PLANS | 1 | 6/15/2020 |
| Civil | C4.3A | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3B | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3C | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C5.0 | SWPP PLAN | 3 | 6/15/2020 |
| Civil | C6 | CONSTRUCTION DETAILS | 4 | 6/15/2020 |
| Civil | C7 | OUC STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | C8 | OUC DETAILS/CITY OF ORLANDO STANDARD NOTES | 4 | 6/15/2020 |
| Civil | C9 | OCU SEWER STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | CV | COVER SHEET | 7 | 6/26/2020 |
| Radon | R1.0 | UNITS S1-A2 | 0 | 11/15/2019 |
| Radon | R2.0 | UNITS A3 - B1 | 0 | 11/15/2019 |
| Radon | R3.0 | UNITS B2 - B3 | 0 | 11/15/2019 |





# Standard Short Form Agreement Between Contractor and Subcontractor

| Radon | R4.0 | UNITS C1-C2 | 0 | 11/15/2019 |
|---|---|---|---|---|
| Radon | R5.0 | CLUBHOUSE | 0 | 11/15/2019 |
| Architectural | A0.01 | PROJECT COVER SHEET | 5 | 7/31/2020 |
| Architectural | A0.02 | PROJECT INDEX OF DRAWINGS | 11 | 8/12/2020 |
| Architectural | A0.02a | DESIGN ASSUMPTIONS | 1 | 5/16/2019 |
| Architectural | A0.03 | PROJECT INDEX OF DRAWINGS | 6 | 7/31/2020 |
| Architectural | A0.04 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.05 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.06 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.07 | PROJECT DATA SHEET | 1 | 7/31/2020 |
| Architectural | A0.08 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.10 | ARCHITECTURAL SITE PLAN | 4 | 7/31/2020 |
| Architectural | A0.11 | OVERALL BUILDING FIRST FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.12 | OVERALL BUILDING SECOND FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.13 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.21 | OVERALL CLUBHOUSE OCCUPANCY PLAN | 4 | 7/31/2020 |
| Architectural | A0.31 | FIRST FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.32 | SECOND FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.33 | UPPER FLOORS SEQUENCE PLANS | 3 | 7/31/2020 |
| Architectural | A0.41 | OVERALL BUILDING GROUND FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.42 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.43 | OVERALL BUILDING SIXTH FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.44 | OVERALL BUILDING TYPICAL ROOF LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A1.00 | OVERALL BUILDING SLAB CONTROL PLAN | 3 | 7/31/2020 |
| Architectural | A1.01 | OVERALL BUILDING FIRST FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.02 | OVERALL BUILDING SECOND FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.03 | OVERALL BUILDING THIRD FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.04 | OVERALL BUILDING FOURTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.05 | OVERALL BUILDING FIFTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.06 | OVERALL BUILDING ROOF CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.11A | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11B | PARTIAL FIRST FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.11C | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11D | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11E | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11F | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12A | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12B | PARTIAL SECOND FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.12C | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12D | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12E | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12F | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |



# Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | A1.13A | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A1.13B | PARTIAL THIRD FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.13C | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13D | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13E | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13F | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14A | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14B | PARTIAL FOURTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.14C | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14D | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14E | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14F | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15A | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15B | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.15C | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15D | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15E | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15F | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16A | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16B | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16C | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16D | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16E | PARTIAL ROOF PLAN BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16F | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.21 | FIRST FLOOR GARAGE PLAN | 7 | 7/31/2020 |
| Architectural | A1.22 | SECOND FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.23 | THIRD FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.24 | FOURTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.25 | FIFTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.26 | SIXTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.27 | ROOF LEVEL GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.28 | ROOF LEVEL GARAGE SLAB PLAN | 3 | 7/31/2020 |
| Architectural | A2.01 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.02 | OVERALL BUILDING ELEVATIONS | 6 | 7/31/2020 |
| Architectural | A2.03 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.04 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.05 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.06 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.07 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.08 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.09 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.11 | PARTIAL ENLARGED BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A3.11 | TYPICAL CLUB BUILDING SECTION | 1 | 7/31/2020 |





# Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | A3.21 | TYPICAL GARAGE BUILDING SECTION | 3 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A4.01 | UNIT S1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02 | UNIT A1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02A | UNIT A1 PLAN | 2 | 7/31/2020 |
| Architectural | A4.03 | UNIT A2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.04 | UNIT A3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.05 | UNIT B1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.06 | UNIT B2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.07 | UNIT B3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.08 | UNIT C1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.21 | CLUB PLAN FIRST FLOOR DIMENSIONS | 7 | 8/12/2020 |
| Architectural | A4.22 | CLUB PLAN SECOND FLOOR DIMENSIONS | 5 | 7/31/2020 |
| Architectural | A4.23 | CLUB PLAN FIRST FLOOR NOTES | 4 | 8/12/2020 |
| Architectural | A4.24 | CLUB PLAN SECOND FLOOR NOTES | 4 | 7/31/2020 |
| Architectural | A4.25 | ENLARGED MAIL ROOM | 3 | 7/31/2020 |
| Architectural | A4.31 | ENLARGED GARAGE PLANS | 4 | 7/31/2020 |
| Architectural | A4.32 | ENLARGED CLOSET PLANS | 2 | 7/31/2020 |
| Architectural | A4.33 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.34 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.35 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.36 | ENLARGED TRASH AND RECYCLING PLANS | 2 | 7/31/2020 |
| Architectural | A4.71 | ACCESSIBILITY REQUIREMENTS DWELLING UNITS | 2 | 7/31/2020 |
| Architectural | A4.72 | ACCESSIBILITY REQUIREMENT PUBLIC SPACES | 2 | 7/31/2020 |
| Architectural | A4.81 | ENLARGED UNIT ACCESSIBILITY PLANS | 3 | 7/31/2020 |
| Architectural | A4.91 | INTERIOR ELEVATIONS UNITS | 3 | 7/31/2020 |
| Architectural | A4.92 | INTERIOR ELEVATIONS UNITS | 1 | 7/31/2020 |
| Architectural | A5.01 | APARTMENT BUILDING WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.02 | GARAGE WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.11 | TYPICAL EXTERIOR WALL SECTIONS | 3 | 7/31/2020 |
| Architectural | A5.21 | TYPICAL TENANT WALL SECTIONS | 4 | 7/31/2020 |
| Architectural | A5.22 | TYPICAL TENANT WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.31 | TYPICAL BALCONY WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.41 | GARAGE WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.01 | STAIR PLANS | 2 | 7/31/2020 |
| Architectural | A6.02 | STAIR SECTIONS | 3 | 7/31/2020 |
| Architectural | A6.03 | STAIR SECTION AND PLAN | 1 | 7/31/2020 |
| Architectural | A6.04 | STAIR SECTION AND PLANS | 2 | 7/31/2020 |
| Architectural | A6.11 | TYPICAL STAIR DETAILS | 2 | 7/31/2020 |
| Architectural | A6.12 | PRECAST STAIR DETAILS | 1 | 7/31/2020 |
| Architectural | A6.21 | ELEVATOR PLAN AND SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.41 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.42 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A7.01 | DOOR SCHEDULE | 4 | 7/31/2020 |





## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | A7.02 | WINDOW SCHEDULE | 4 | 8/12/2020 |
|---|---|---|---|---|
| Architectural | A7.03 | DOOR & WINDOW INSTALLATION DETAILS | 3 | 7/31/2020 |
| Architectural | A7.11 | TYPICAL DOOR DETAILS | 3 | 7/31/2020 |
| Architectural | A7.21 | TYPICAL WINDOW DETAILS | 3 | 7/31/2020 |
| Architectural | A7.22 | TYPICAL STOREFRONT DETAILS | 4 | 7/31/2020 |
| Architectural | A7.31 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.32 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.33 | TYPICAL ARCHITECTURAL DETAILS | 2 | 7/31/2020 |
| Architectural | A7.34 | TYPICAL ARCHITECTURAL DETAILS | 1 | 7/31/2020 |
| Architectural | A7.41 | TYPICAL WATERPROOFING & BALCONY FLASHING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.42 | TYPICAL WATERPROOFING DETAILS | 2 | 7/31/2020 |
| Architectural | A7.51 | TYPICAL ROOFING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.52 | TYPICAL ROOF DETAILS | 3 | 7/31/2020 |
| Architectural | A7.61 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.62 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.63 | TYPICAL FIRE CONTROL DETAILS | 4 | 7/31/2020 |
| Architectural | A7.71 | TYPICAL SOUND CONTROL DETAILS & NOTES | 3 | 7/31/2020 |
| Architectural | A7.81 | TYPICAL RADON CONTROL DETAILS & NOTES | 1 | 7/31/2020 |
| Architectural | A7.91 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.92 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.93 | TYPICAL GARAGE SIGN DETAILS | 1 | 7/31/2020 |
| Architectural | A7.94 | TYPICAL GARAGE PAINT AND SIGN DETAILS | 2 | 7/31/2020 |
| Architectural | A8.11 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.12 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.13 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.14 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.21 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.22 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.31 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.32 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.33 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.34 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.35 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.36 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | BACK | PROJECT BACK SHEET | 1 | 7/31/2020 |
| Structural | S1.01 | STRUCTURAL GENERAL NOTES | 2 | 12/20/2019 |
| Structural | S1.02 | STRUCTURAL GENERAL NOTES | 1 | 10/16/2019 |
| Structural | S1.03 | GENERAL NOTES AND WIND DIAGRAMS | 2 | 2/24/2020 |
| Structural | S1.04 | SHEARWALL SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.05 | SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.06 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.07 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.11 | OVERALL BUILDING CONTROL PLAN - FOUNDATION | 2 | 12/20/2019 |

## Standard Short Form Agreement Between Contractor and Subcontractor

| Structural | S1.11A | PARTIAL BUILDING PLAN - A - FOUNDATION | 2 | 12/20/2019 |
|---|---|---|---|---|
| Structural | S1.11B | PARTIAL BUILDING PLAN - B - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11C | PARTIAL BUILDING PLAN - C - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11D | PARTIAL BUILDING PLAN - D - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11E | PARTIAL BUILDING PLAN - E - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11F | PARTIAL BUILDING PLAN - F - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.12 | OVERALL BUILDING CONTROL PLAN - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12A | PARTIAL BUILDING PLAN - A - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12B | PARTIAL BUILDING PLAN - B - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12C | PARTIAL BUILDING PLAN - C - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12D | PARTIAL BUILDING PLAN - D - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12E | PARTIAL BUILDING PLAN - E - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12F | PARTIAL BUILDING PLAN - F - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13 | OVERALL BUILDING CONTROL PLAN - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13A | PARTIAL BUILDING PLAN - A - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13B | PARTIAL BUILDING PLAN - B - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13C | PARTIAL BUILDING PLAN - C - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13D | PARTIAL BUILDING PLAN - D - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13E | PARTIAL BUILDING PLAN - E - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13F | PARTIAL BUILDING PLAN - F - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14 | OVERALL BUILDING CONTROL PLAN - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14A | PARTIAL BUILDING PLAN - A - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14B | PARTIAL BUILDING PLAN - B - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14C | PARTIAL BUILDING PLAN - C - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14D | PARTIAL BUILDING PLAN - D - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14E | PARTIAL BUILDING PLAN - E - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14F | PARTIAL BUILDING PLAN - F - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15 | OVERALL BUILDING CONTROL PLAN - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15A | PARTIAL BUILDING PLAN - A - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15B | PARTIAL BUILDING PLAN - B - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15C | PARTIAL BUILDING PLAN - C - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15D | PARTIAL BUILDING PLAN - D - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15E | PARTIAL BUILDING PLAN - E - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15F | PARTIAL BUILDING PLAN - F - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.16 | OVERALL BUILDING CONTROL PLAN - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16A | PARTIAL BUILDING PLAN - A - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16B | PARTIAL BUILDING PLAN - B - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16C | PARTIAL BUILDING PLAN - C - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16D | PARTIAL BUILDING PLAN - D - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16E | PARTIAL BUILDING PLAN - E - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16F | PARTIAL BUILDING PLAN - F - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.21 | FOUNDATION AND SLAB ON GRADE PLAN GARAGE | 3 | 5/20/2020 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Structural | S3.11 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.12 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.13 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.14 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.21 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.22 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.23 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.24 | SECTIONS AND DETAILS | 0 | 5/16/2019 |
| Structural | S3.31 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.32 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.41 | SECTIONS AND DETAILS | 1 | 5/20/2020 |
| Structural | S3.42 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.43 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.44 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Electrical | E0.01 | ELECTRICAL SYMBOLS LEGEND AND GENERAL NOTES | 3 | 8/12/2020 |
| Electrical | E0.10 | ELECTRICAL SITE PLAN | 4 | 5/4/2020 |
| Electrical | E0.11 | ELECTRICAL SITE LIGHTING PLAN | 4 | 8/12/2020 |
| Electrical | E0.12 | ELECTRICAL SITE PHOTOMETRIC PLAN | 2 | 4/15/2020 |
| Electrical | E1.11A | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Electrical | E1.11B | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 8/12/2020 |
| Electrical | E1.11C | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 4 | 8/12/2020 |
| Electrical | E1.11D | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.11E | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.11F | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.12A | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.12B | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.12C | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.12D | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.12E | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.12F | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.13A | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.13B | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.13C | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.13D | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.13E | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.13F | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.14A | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.14B | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.14C | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 3 | 2/24/2020 |



# Standard Short Form Agreement Between Contractor and Subcontractor

| Electrical | E1.14D | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
|---|---|---|---|---|
| Electrical | E1.14E | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.14F | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.15A | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.15B | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.15C | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.15D | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.15E | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.15F | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.16A | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 2 | 8/12/2020 |
| Electrical | E1.16B | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 8/12/2020 |
| Electrical | E1.16C | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 8/12/2020 |
| Electrical | E1.16D | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 2 | 8/12/2020 |
| Electrical | E1.16E | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 2 | 8/12/2020 |
| Electrical | E1.16F | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 2 | 8/12/2020 |
| Electrical | E1.21 | GARAGE LEVEL 1 - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E1.22 | GARAGE LEVEL 2 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.23 | GARAGE LEVEL 3 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.24 | GARAGE LEVEL 4 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.25 | GARAGE LEVEL 5 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.26 | GARAGE LEVEL 6 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.27 | GARAGE LEVEL 7 - ROOF - ELECTRICAL | 2 | 2/24/2020 |
| Electrical | E4.01 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.02 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.03 | TYPICAL UNITS - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E4.04 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E4.05 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E4.06 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E5.01 | ELECTRICAL ONE LINE DIAGRAM | 4 | 5/4/2020 |
| Electrical | E6.01 | EQUIPMENT, PANEL FEEDER & UNIT SCHEDULES | 7 | 9/23/2020 |
| Electrical | E7.01 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.02 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.03 | ELECTRICAL SCHEDULES | 1 | 2/24/2020 |
| Electrical | E8.01 | ELECTRICAL DETAILS | 2 | 2/24/2020 |
| Electrical | E8.02 | ELECTRICAL DETAILS | 2 | 12/20/2019 |
| Plumbing | P0.01 | PLUMBING SYMBOLS LEGEND AND GENERAL NOTES | 2 | 5/20/2020 |
| Plumbing | P1.01A | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.01B | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.01C | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.01D | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.01E | CONDENSATE PARTIAL BUILDING PLAN - FIRST PART E | 0 | 10/16/2019 |



Initial Sub _____    Initial Contractor  BLA    **Alterations to this Agreement are Prohibited**    Page 14 of 47



# Standard Short Form Agreement Between Contractor and Subcontractor

| Plumbing | P1.01F | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 0 | 10/16/2019 |
|---|---|---|---|---|
| Plumbing | P1.10 | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 5/16/2019 |
| Plumbing | P1.10A | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Plumbing | P1.10B | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 4/15/2020 |
| Plumbing | P1.10C | UNDERGROUND PARTIAL BUILDING PLAN - FLOOR PART C | 3 | 8/12/2020 |
| Plumbing | P1.10D | UNDERGROUND PARTIAL BULDING FIRST FLOOR PART D | 2 | 12/20/2019 |
| Plumbing | P1.10E | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.10F | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 8/12/2020 |
| Plumbing | P1.11A | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
| Plumbing | P1.11B | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 12/20/2019 |
| Plumbing | P1.11C | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 8/12/2020 |
| Plumbing | P1.11D | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.11E | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.11F | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 8/12/2020 |
| Plumbing | P1.12A | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Plumbing | P1.12B | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.12C | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.12D | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.12E | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.12F | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.13A | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.13B | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.13C | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.13D | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.13E | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.13F | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.14A | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.14B | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.14C | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.14D | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.14E | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.14F | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.15A | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.15B | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.15C | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.15D | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.15E | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.15F | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.16A | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART A | 0 | 10/16/2019 |
| Plumbing | P1.16B | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART B | 0 | 10/16/2019 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Plumbing | P1.16C | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART C | 0 | 10/16/2019 |
|---|---|---|---|---|
| Plumbing | P1.16D | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART D | 0 | 10/16/2019 |
| Plumbing | P1.16E | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART E | 0 | 10/16/2019 |
| Plumbing | P1.16F | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART F | 1 | 8/12/2020 |
| Plumbing | P1.21 | GARAGE LEVEL 1 - PLUMBING | 4 | 5/29/2020 |
| Plumbing | P1.22 | GARAGE LEVEL 2 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.23 | GARAGE LEVEL 3 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.24 | GARAGE LEVEL 4 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.25 | GARAGE LEVEL 5 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.26 | GARAGE LEVEL 6 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.27 | GARAGE ROOF LEVEL - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P4.01 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.02 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.03 | ENLARGED PLUMBING PLANS | 1 | 12/20/2019 |
| Plumbing | P5.01 | PLUMBING RISER DIAGRAMS | 2 | 8/12/2020 |
| Plumbing | P5.02 | PLUMBING RISER DIAGRAMS | 1 | 8/12/2020 |
| Plumbing | P5.03 | GARAGE STORM SYSTEM RISER DIAGRAMS | 0 | 5/29/2020 |
| Plumbing | P8.01 | PLUMBING DETAILS | 1 | 10/16/2019 |
| Plumbing | P8.02 | PLUMBING DETAILS | 0 | 10/16/2019 |
| Mechanical | M0.01 | MECHANICAL SYMBOLS LEGEND AND GENERAL NOTES | 1 | 10/16/2019 |
| Mechanical | M1.11A | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
| Mechanical | M1.11B | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.11C | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 3 | 8/12/2020 |
| Mechanical | M1.11D | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.11E | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.11F | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.12A | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.12B | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.12C | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.12D | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.12E | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.12F | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.13A | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.13B | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.13C | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.13D | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.13E | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.13F | MECHANICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.14A | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 2 | 12/20/2019 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Mechanical | M1.14B | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 2 | 12/20/2019 |
|---|---|---|---|---|
| Mechanical | M1.14C | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.14D | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.14E | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.14F | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.15A | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.15B | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.15C | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.15D | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.15E | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.15F | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.16A | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 3 | 8/12/2020 |
| Mechanical | M1.16B | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 12/20/2019 |
| Mechanical | M1.16C | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 12/20/2019 |
| Mechanical | M1.16D | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 3 | 8/12/2020 |
| Mechanical | M1.16E | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 3 | 8/12/2020 |
| Mechanical | M1.16F | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 3 | 8/12/2020 |
| Mechanical | M1.21 | GARAGE LEVEL 1 - MECHANICAL | 1 | 2/24/2020 |
| Mechanical | M1.22 | GARAGE LEVEL 2 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.23 | GARAGE LEVEL 3 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.24 | GARAGE LEVEL 4- MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.25 | GARAGE LEVEL 5 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.26 | GARAGE LEVEL 6 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.27 | GARAGE ROOF - MECHANICAL | 1 | 2/24/2020 |
| Mechanical | M4.01 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.02 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.03 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M6.01 | MECHANICAL SCHEDULES | 2 | 12/20/2019 |
| Mechanical | M7.01 | MECHANICAL DETAILS | 2 | 2/24/2020 |
| Mechanical | M7.02 | MECHANICAL DETAILS | 1 | 10/16/2019 |
| Mechanical | M7.03 | MECHANICAL DETAILS | 1 | 2/24/2020 |
| Fire Protection | F0.01 | FIRE PROTECTION SYMBOLS AND SPECIFICATIONS | 2 | 4/15/2020 |
| Fire Protection | F1.11A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 2/24/2020 |
| Fire Protection | F1.11B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 2/24/2020 |
| Fire Protection | F1.11C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 2/24/2020 |
| Fire Protection | F1.11D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 2/24/2020 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Fire Protection | F1.11E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 2/24/2020 |
|---|---|---|---|---|
| Fire Protection | F1.11F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 2/24/2020 |
| Fire Protection | F1.12A | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.12B | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.12C | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.12D | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.12E | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.12F | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.13A | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.13B | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.13C | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.13D | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.13E | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.13F | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.14A | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Fire Protection | F1.14B | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Fire Protection | F1.14C | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Fire Protection | F1.14D | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Fire Protection | F1.14E | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Fire Protection | F1.14F | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 0 | 10/16/2019 |
| Fire Protection | F1.15A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.15B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.15C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.15D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.15E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.15F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.21 | GARAGE LEVEL 1 - FIRE PROTECTION | 0 | 10/16/2019 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Fire Protection | F1.22 | GARAGE LEVEL 2 - FIRE PROTECTION | 0 | 10/16/2019 |
|---|---|---|---|---|
| Fire Protection | F1.23 | GARAGE LEVEL 3 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.24 | GARAGE LEVEL 4 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.25 | GARAGE LEVEL 5 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.26 | GARAGE LEVEL 6 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F6.01 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Fire Protection | F6.02 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Low Voltage | T-000 | LOW VOLTAGE NOTES AND LEGENDS | 1 | 4/1/2020 |
| Low Voltage | T-100 | FIRST FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-100A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-101 | SECOND FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-102 | THIRD FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-103 | FOURTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-104 | FIFTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-105 | ROOF PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-106 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-107 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-108 | LOW VOLTAGE UNIT DISTRIBUTION PANEL | 1 | 4/1/2020 |
| Low Voltage | T-200 | FIRST FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-201 | SECOND FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-202 | THIRD FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-203 | FOURTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-204 | FIFTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-205 | SIXTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300 | FIRST FLOOR PLAN LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-302 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-303 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-400 | FIRST FLOOR PLAN LOW VOLTAGE A/V | 0 | 12/20/2019 |
| Low Voltage | T-400A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |





# Standard Short Form Agreement Between Contractor and Subcontractor

| Low Voltage | T-400C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
|---|---|---|---|---|
| Low Voltage | T-500 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (MDF) | 1 | 4/1/2020 |
| Low Voltage | T-501 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 1A & IDF 1B) | 1 | 4/1/2020 |
| Low Voltage | T-502 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3A & IDF 5A) | 1 | 4/1/2020 |
| Low Voltage | T-503 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3B & IDF 5B) | 1 | 4/1/2020 |
| Low Voltage | T-504 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3C & IDF 5C) | 1 | 4/1/2020 |
| Low Voltage | T-600 | LOW VOLTAGE CONNECTIVITY DIAGRAM (UNIT) | 0 | 12/20/2019 |
| Low Voltage | T-601 | LOW VOLTAGE CONNECTIVITY DIAGRAM (ACCESS CONTROL) | 0 | 12/20/2019 |
| Low Voltage | T-602 | LOW VOLTAGE CONNECTIVITY DIAGRAM (SURVEILLANCE) | 0 | 12/20/2019 |
| Interior | ID-0.00 | COVER SHEET | 1 | 5/8/2020 |
| Interior | ID-0.01 | PLAN KEY | 3 | 5/8/2020 |
| Interior | ID-0.02 | GENERAL NOTES | 3 | 5/8/2020 |
| Interior | ID-0.03 | LEGENDS & ABBREVIATIONS | 2 | 5/8/2020 |
| Interior | ID-0.04 | OVERALL FLOOR PLAN FIRST FLOOR | 2 | 5/8/2020 |
| Interior | ID-0.05 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.06 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.07 | OVERALL FLOOR PLAN FIFTH FLOOR | 2 | 5/8/2020 |
| Interior | ID-1.00 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.01 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.02 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.03 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.04 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.05 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.06 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.07 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.08 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.09 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.10 | INTERIOR PLAN FIRST & FIFTHFLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.11 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.12 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.13 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.14 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.15 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.16 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.17 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.18 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.19 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.20 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.21 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.22 | FLOOR COVERING PLAN FIRST & FIFTH FLOOR PARTIAL | 3 | 5/8/2020 |





# Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-1.23 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.24 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.25 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.26 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.27 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/6/2020 |
| Interior | ID-1.28 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.29 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.30 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.31 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.32 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.33 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.34 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.35 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.36 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.37 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.38 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.39 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.40 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.41 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.42 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.43 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.44 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.45 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.46 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.47 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.48 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.49 | REFLECTED CEILING PLAN FIRST FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.50.0 | FURNITURE PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.50.1 | FURNITURE PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.51 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.52 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.53 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.54 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.55 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.56 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.57 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.58 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.59 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.0 | FLOOR COVERING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.1 | FLOOR COVERING PLAN 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.61 | FLOOR COVERING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.62 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.63 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |

Initial Sub    Initial Contractor **BIA**    **Alterations to this Agreement are Prohibited**    Page 21 of 47



# Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-1.64 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.65 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART | 2 | 5/8/2020 |
| Interior | ID-1.66 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.67 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.68 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.69 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.0 | ELECTRICAL PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.1 | ELECTRICAL PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.71 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART | 2 | 5/8/2020 |
| Interior | ID-1.72 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.73 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.74 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.75 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.76 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.77 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.78 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.79 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.80.0 | REFLECTED CEILING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.80.1 | REFLECTED CEILING PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.81 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 5/8/2020 |
| Interior | ID-1.82 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.83 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.84 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART | 2 | 5/8/2020 |
| Interior | ID-1.85 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.86 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.87 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.88 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.89 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.90 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.91 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.92 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.93 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-2.00 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.01 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.02 | INTERIOR ELEVATIONS SALES OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.03 | INTERIOR ELEVATIONS CORRIDOR 1 | 2 | 5/8/2020 |
| Interior | ID-2.04 | INTERIOR ELEVATIONS CONF. RM. / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.05 | INTERIOR ELEVATIONS CONF. RM / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.06 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.07 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.08 | INTERIOR ELEVATIONS MEDIA THEATRE | 2 | 5/8/2020 |
| Interior | ID-2.09 | INTERIOR ELEVATIONS FITNESS | 2 | 5/8/2020 |
| Interior | ID-2.10 | INTERIOR ELEVATIONS YOGA | 2 | 5/8/2020 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-2.11 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-2.12 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.13 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.14 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.15 | INTERIOR ELEVATIONS CORRIDOR 2 | 2 | 5/8/2020 |
| Interior | ID-2.16 | INTERIOR ELEVATIONS CORRIDOR 3 | 2 | 5/8/2020 |
| Interior | ID-2.17 | INTERIOR ELEVATIONS CORRIDOR 4 | 2 | 5/8/2020 |
| Interior | ID-2.18 | INTERIOR ELEVATIONS CORRIDOR 5 | 2 | 5/8/2020 |
| Interior | ID-2.19 | INTERIOR ELEVATIONS CORRIDOR 6 | 2 | 5/8/2020 |
| Interior | ID-2.20 | INTERIOR ELEVATIONS CORRIDOR 7 | 2 | 5/8/2020 |
| Interior | ID-2.21 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.22 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.23 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.24 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.25 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.26 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.27 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.28 | INTERIOR ELEVATIONS CORRIDOR 11 | 2 | 5/8/2020 |
| Interior | ID-2.29 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.30 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.31 | INTERIOR ELEVATIONS CORRIDOR 13 | 2 | 5/8/2020 |
| Interior | ID-2.32 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
| Interior | ID-2.33 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
| Interior | ID-2.34 | INTERIOR ELEVATIONS CORRIDOR 15 | 2 | 5/8/2020 |
| Interior | ID-2.35 | INTERIOR ELEVATIONS CORRIDOR 16 | 2 | 5/8/2020 |
| Interior | ID-2.36 | INTERIOR ELEVATIONS CORRIDOR 17 | 2 | 5/8/2020 |
| Interior | ID-2.37 | INTERIOR ELEVATIONS VESTIBULE 1 AND 2 | 2 | 5/8/2020 |
| Interior | ID-2.38 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.39 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.40 | INTERIOR ELEVATIONS VESTIBULE 4 AND 5 | 2 | 5/8/2020 |
| Interior | ID-2.41 | INTERIOR ELEVATIONS VESTIBULE 5 AND 6 | 2 | 5/8/2020 |
| Interior | ID-2.42 | INTERIOR ELEVATIONS VESTIBULE 7 AND 8 | 2 | 5/8/2020 |
| Interior | ID-2.43 | INTERIOR ELEVATIONS VESTIBULE 8, 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.44 | INTERIOR ELEVATIONS VESTIBULE 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.50 | INTERIOR ELEVATIONS MEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.51 | INTERIOR ELEVATIONS WOMEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.60 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.61 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.62 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-3.00 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.01 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.02 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.03 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-3.04 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-4.00 | SCHEDULES | 3 | 5/8/2020 |
| Interior | ID-4.01 | DOOR SCHEDULE | 2 | 5/8/2020 |
| Interior | ID-4.02 | SCHEDULES TYPICAL UNITS | 3 | 5/8/2020 |
| Hardscape | H-1 | SITE PLAN PHASE 2 | 6 | 5/22/2020 |
| Hardscape | H-2.1 | HARDSCAPE LABEL PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.2 | HARDSCAPE DIMENSION PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.3 | HARDSCAPE FINISHES PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-3.1 | HARDSCAPE LABEL PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.2 | HARDSCAPE DIMENSION PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.3 | HARDSCAPE FINISHES PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-4.1 | HARDSCAPE LABEL PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-4.2 | HARDSCAPE DIMENSION PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-4.3 | HARDSCAPE FINISHES PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-5.1 | HARDSCAPE LABEL PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.2 | HARDSCAPE DIMENSION PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.3 | HARDSCAPE FINISHES PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-6 | HARDSCAPE LABEL PLAN | 3 | 5/16/2019 |
| Hardscape | H-6.1 | HARDSCAPE LABEL PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.2 | HARDSCAPE DIMENSION PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.3 | HARDSCAPE DIMESION PLAN | 6 | 5/22/2020 |
| Hardscape | H-7 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-8 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-9 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-10 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-11 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-12 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-13 | HARDSCAPE DETAILS | 8 | 8/31/2020 |
| Hardscape | H-14 | HARDSCAPE SPECIFICATIONS | 6 | 5/22/2020 |
| Landscape | L-1 | SITE PLAN PHASE 2 | 8 | 5/22/2020 |
| Landscape | L-2 | TREE DISPOSITION PLAN PHASE 2 | 8 | 5/14/2020 |
| Landscape | L-3 | TREE DISPOSITION PLAN PH 2 | 7 | 5/14/2020 |
| Landscape | L-4 | TREE DISPOSITION SCHEDULE PH 2 | 8 | 5/14/2020 |
| Landscape | L-5 | LANDSCAPE PLAN | 7 | 5/22/2020 |
| Landscape | L-6 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-7 | LANDSCAPE PLAN | 5 | 5/22/2020 |
| Landscape | L-8 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-9 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-10 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-11 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-12 | LANDSCAPE SPECIFICATIONS | 3 | 5/22/2020 |
| Landscape | L-13 | LANDSCAPE SPECIFICATIONS | 0 | 5/16/2019 |
| Landscape | LI-1 | IRRIGATION PLAN | 0 | 2/25/2020 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Landscape | LI-2 | IRRIGATION PLAN | 0 | 2/25/2020 |
|---|---|---|---|---|
| Landscape | LI-3 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LLP-1 | SITE PLAN PHASE 2 | 2 | 5/22/2020 |
| Landscape | LLP-2 | LANDSCAPE LIGHTING PLAN | 3 | 5/22/2020 |
| Landscape | LLP-3 | LANDSCAPE LIGHT PLAN | 3 | 5/22/2020 |
| Landscape | LLP-4 | LANDSCAPE LIGHTING PLAN SCHEDULE | 3 | 5/22/2020 |
| Landscape | LLP-5 | LANDSCAPE LIGHT PLAN SPECIFICATIONS | 2 | 5/22/2020 |
| Surveys | 1 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 2 | 7/11/2019 |
| Surveys | 2 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 4 | 6/15/2020 |

**Architect:**
**Charlan Brock & Associates**

**Engineer:**
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

**Architect of Record:**
**Doug Anderson**
**1770 Fennell Street**
**Maitland, Florida 32751**

**Civil Engineer:**
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

**Structural Engineer:**
**John Bailes**
**1035 South Semoran Blvd**
**Winter Park, Florida 32792**

**Landscape Architect:**
**Aaron Mastin**
**101 SE 2nd Ave**
**Delray Beach, Florida 33444**

**Hardscape Architect:**
**Aaron Mastin**
**101 SE 2nd Ave**
**Delray Beach, Florida 33444**

**Interior Design:**
**Jorge Garcia**
**4700 Riverside Drive, Suite 100**
**Palm Beach Gardens, Florida 33410**

**EXHIBITS.** As applicable, the following Exhibits are incorporated by reference and made part of this Agreement:

EXHIBIT A:     Schedule of Values



Initial     Initial     **Alterations to this Agreement are Prohibited**     Page 25 of 47
Sub     Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

EXHIBIT B:      Insurance
EXHIBIT C:      HUD Supplemental Conditions
EXHIBIT D:      HUD Identity of Interest Disclosure Requirement
EXHIBIT E:      HUD Prevailing Wage Acknowledgement

**1.1     SUBCONTRACTOR IS AN INDEPENDENT CONTRACTOR.** SUBCONTRACTOR is an independent contractor and shall, at its sole cost and expense, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the Work. SUBCONTRACTOR shall have sole responsibility for the means and methods of performing the Work required under this Subcontract. SUBCONTRACTOR is responsible for securing timely inspections and approvals of its Work from all such authorities as required by the Contract Documents. All inspections must be coordinated with CONTRACTOR. SUBCONTRACTOR must obtain and pay for all necessary permits and licenses, including business licenses; pay all fees, manufacturer's taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and unemployment or disability insurance which are measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. SUBCONTRACTOR must maintain proof that it has complied with all aspects of this Paragraph and shall make such proof available for review by CONTRACTOR at CONTRACTOR's request. SUBCONTRACTOR agrees that any penalty, charge, fine, or other assessment made on account of SUBCONTRACTOR or SUBCONTRACTOR's work will be promptly paid in full by SUBCONTRACTOR. All of the SUBCONTRACTOR's Work shall be performed in strict accordance with the Occupational Safety and Health Act of 1970 and any other legislation enacted by federal, state, or local governing authorities or agencies. Additionally, SUBCONTRACTOR shall furnish a copy to CONTRACTOR the applicable Safety Data Sheets (SDS) for all hazardous materials or chemicals used in connection with or consumed or incorporated into this Project as required by the Hazard Communication Standard of the Occupational Safety and Health Administration (OSHA). The SUBCONTRACTOR shall report to the CONTRACTOR within one (1) day after an injury to an employee or agent of the SUBCONTRACTOR which occurs on the site.

**1.2A     SUBCONTRACTOR** shall not perform any labor services under this Subcontract with any persons or parties other than SUBCONTRACTOR's direct employees without first 1) providing CONTRACTOR with at least 24 hours prior written notice; and 2) providing CONTRACTOR with a copy of the agreement between SUBCONTRACTOR and any sub-subcontractor, employee leasing company, employee management company, labor supplier company, or individual ("third party labor provider") providing such labor at least 24 hours prior to beginning to perform the labor. SUBCONTRACTOR's failure to comply with these requirements shall be a material breach of the Subcontract allowing for termination of the Subcontract, and the CONTRACTOR will not be liable for payment of any labor costs of the third-party labor provider. Should the SUBCONTRACTOR be authorized to use a third-party labor provider on the project, the CONTRACTOR must receive written confirmation, via email, setting forth the specific names of each third-party labor provider employee onsite, the amount of the hours worked, and price per hour for each employee. This information must be received by 5:00 pm daily on same day that the third-party labor provider was onsite at the project. Failure to timely and completely provide this information will result in non-payment by the CONTRACTOR to the SUBCONTRACTOR for such third-party labor.

**1.3     QUALITY AND SCOPE OF WORK/FIELD VERIFICATIONS.** The Contract Documents are intended to and shall be considered to include all items which would normally be included in SUBCONTRACTOR's trade and are intended to include all Work that CONTRACTOR is called upon to perform under terms of its contract with Owner. The Plans and Specifications generally indicate the scope and quality of the work but are not represented as being free from errors or omissions and any work called for in the Specifications and not shown on the Plans, or vice versa, are to be furnished as if called for in both and, in addition SUBCONTRACTOR agrees that any and all work required and reasonably implied as necessary to complete the job, shall be furnished and installed by SUBCONTRACTOR without any additional cost. SUBCONTRACTOR shall notify CONTRACTOR in writing of any deviations from the Contract Documents. SUBCONTRACTOR's responsibility to conform to the Contract Documents is not relieved by Architect's or CONTRACTOR's review unless there is written acceptance of the specific deviations. SUBCONTRACTOR agrees not to modify, withdraw, or cancel any alternate bids, for ninety (90) days after receipt of bid. SUBCONTRACTOR shall provide its own layout and make its own measurements and shall guarantee the accuracy thereof and shall not rely on the measurements of any other party.

The SUBCONTRACTOR represents that it is licensed (if applicable) and fully qualified to perform the Work required by this Subcontract and acknowledges that it has, by careful examination satisfied itself as to: (a) the nature, location and character of the Job Site including, but not limited to, the surface and subsurface conditions of the land and all structures and obstructions thereon, both natural and manmade, surface water conditions of the Job Site and the surrounding area and, to the extent pertinent to the Work, all other conditions; (b) the nature, location and character of the general area in which the Job Site is located including, without limitation, its climatic conditions, the availability and cost of labor and the

Initial [signature] Sub    Initial BLA Contractor    **Alterations to this Agreement are Prohibited**    Page 26 of 47



## Standard Short Form Agreement Between Contractor and Subcontractor

availability and cost of materials, tools and equipment; the quality and quantity of all material, supplies, tools, equipment, labor and services necessary to complete the Work in the manner required by the Contract Documents; and (c) all other matters or things which could in any manner affect the performance of the Work. The SUBCONTRACTOR recognizes and understands the physical and operational restrictions on carrying on of the Work in or about the Project and expressly agrees that such conditions have been accounted for in the Subcontract price. **By commencing its Work, SUBCONTRACTOR accepts the surface or substrate on which such work is placed and all adjacent work of earlier subcontractors and other areas that interface with or connect to the SUBCONTRACTOR's Work or otherwise affect SUBCONTRACTOR's Work. The SUBCONTRACTOR shall take such measurements as will insure the proper matching and placement of the Work under this Subcontract and is otherwise responsible for compliance with the intent of the Contract Documents. The SUBCONTRACTOR shall immediately notify CONTRACTOR and the Architect of any unacceptable conditions or deviations from contract requirements affecting its Work and shall notify CONTRACTOR and Architect of any discrepancies or conflicts in the Contract Documents before performing its Work and shall be responsible for all costs resulting from its failure to do so. Any SUBCONTRACTOR that installs his work attached to an unacceptable substrate without written notification to CONTRACTOR shall bear the costs of removal and replacement of his work.** All Work shall be done in a good and workmanlike manner and all material shall be new and of specified grade, and all Work and material shall be furnished and installed in compliance with the requirements of the institutions making the construction and permanent mortgages on the property and all governmental or other authorities having jurisdiction thereof.

**Prior to starting any field work, the SUBCONTRACTOR shall participate in a "SUBCONTRACTOR's Preparatory Meeting" with the CONTRACTOR at the jobsite, to thoroughly review the following items and procedures and sign-off as to the SUBCONTRACTOR's participation and understanding: (1) Subcontract Agreement & Exhibit "A", (2) possession of correct Drawings & Specifications, (3) SDS Sheets & OSHA Review, (4) Completed stamped and approved shop drawings & submittals, (5) required material installation procedures, and (6) Payment Procedures. SUBCONTRACTOR is solely responsible for its work being in full compliance with this Subcontract Agreement requirement. All subcontractors must attend project meetings that they are requested to attend (a two-day notice will be provided). Sending a laborer to a meeting will not count as a substitute. It must be an approved supervisor or an individual authorized to make decisions on behalf of your company. Subcontractors will be fined $250 for each meeting missed.**

SUBCONTRACTOR is at all times to work ONLY from Drawings specifically issued by CONTRACTOR's Project Manager that identifies the documents as "For Construction". Under no circumstances is SUBCONTRACTOR to perform any work on the Project from any Drawings that do not include such identification. SUBCONTRACTOR is not to accept, process, bid, or perform any actual construction work based on any Drawings that have not been so identified by CONTRACTOR's Project Manager as described above. SUBCONTRACTOR shall be solely responsible for compliance with his requirement.

SUBCONTRACTOR jobsite supervisor shall submit Daily Reports (including manpower) to CONTRACTOR each day on separate forms provided by CONTRACTOR. Failure to provide these forms will be sufficient cause for CONTRACTOR to withhold payment until CONTRACTOR is provided with completed up-to-date reports.

**1.4    SUBMITTALS.** SUBCONTRACTOR shall promptly prepare or obtain and submit to CONTRACTOR in the quantity requested by CONTRACTOR, all shop and erection drawings, samples, product data, catalogue cuts, laboratory and inspection reports, and engineering calculations ("Submittals") required by the Contract Documents, or as may be necessary or appropriate to describe the details of the Work. All Submittals shall be submitted in a timely manner so as to permit the work to be performed in accordance with the Project Schedule. Neither review, nor approval, of Submittals by CONTRACTOR, Owner or Architect shall relieve SUBCONTRACTOR of its obligation to perform the Work in strict conformity with the Contract Documents or its responsibility for the proper matching of the Work to contiguous work. SUBCONTRACTOR shall identify each and every variance between any Submittals and the requirements of the Contract Documents at the time of transmission either prominently on the Submittal or specifically in a transmission letter accompanying the Submittal. No modification, revision or other notation on a Submittal that changes or modifies the Contract Documents shall be valid (even if the drawing or Submittal is approved) unless there is a Change Order issued approving same. No Work required or Work attaching to items requiring submittals or shop drawings shall be started by SUBCONTRACTOR until approved Submittals are returned to SUBCONTRACTOR. Materials ordered, fabricated, or installed prior to receipt of approved Submittals are at SUBCONTRACTOR's sole risk. All material submittals, shop drawings, affidavits, etc., that are required for your area of work need to be submitted to the CONTRACTOR within seven (7) days of signing your contract.



## Standard Short Form Agreement Between Contractor and Subcontractor

**3)**     **BONDS.** SUBCONTRACTOR shall not **X** furnish to CONTRACTOR, as Obligee, surety bonds to this Agreement, and through a surety mutually agreeable to CONTRACTOR and SUBCONTRACTOR, to secure faithful performance of Subcontract Work and to satisfy SUBCONTRACTOR payment obligations related to SUBCONTRACTOR's Work.

**4)**     **SAFETY AND CLEAN-UP.** To protect persons and property, SUBCONTRACTOR shall establish a safety program implementing safety measures, policies and standards conforming to (1) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (2) the requirements of this Agreement. SUBCONTRACTOR will abide by the Safety Program implemented by Portrait Construction of Florida attached as EXHIBIT "A".

**5)**     **SUPERVISON.** SUBCONTRACTOR is required to designate a competent supervisor to oversee all SUBCONTRACTORs work for the duration of the project. SUBCONTRACTOR must submit name and qualification of SUBCONTRACTOR's English speaking supervisor to Portrait Construction of Florida's project superintendent for acceptance. CONTRACTOR's Superintendent will schedule the different trades, supervise all construction, and with the concurrence of CONTRACTOR's Project Manager, approve monthly draws. His opinion that the job's progress for SUBCONTRACTOR's phase of the work is on schedule is a condition precedent to CONTRACTOR's obligation to make progress payments to SUBCONTRACTOR. **SUBCONTRACTOR'S Supervisor is responsible for verifying all of his "Scope of Work" is properly performed, shall complete a thorough inspection of the work and determine any and all repairs, rework, punchlist & verify the remediation is complete. If at any point during construction, the CONTRACTOR'S Superintendent determines that the SUBCONTRACTOR'S Supervisor is not completing his work as outlined in the above, he may request in writing that the SUBCONTRACTOR enforce the requirements of the Supervisor or replace him.**

**6)**     **SCHEDULE.** Time is of the essence as to SUBCONTRACTOR's obligations under this Agreement. All SUBCONTRACTOR's Work shall commence and proceed as scheduled by the CONTRACTOR. All SUBCONTRACTOR's Work shall be of the highest quality, and in compliance with all governing laws, ordinances, codes, regulations and requirements. The CONTRACTOR shall prepare the schedule for performance of CONTRACTOR's Work (HEREINAFTER THE "Progress Schedule") and shall revise and update such schedule, as necessary, as CONTRACTOR's work progresses. Each revision of the Progress Schedule, upon issuance to this SUBCONTRACTOR, shall supersede previous schedules and shall become part of this Agreement. SUBCONTRACTOR shall provide CONTRACTOR with any scheduling information proposed by SUBCONTRACTOR for Subcontract Work and submit any additional information or updates as requested by CONTRACTOR. SUBCONTRACTOR shall be bound by the Progress Schedule. Material procurement, shop fabrication and delivery must be coordinated by SUBCONTRACTOR, to ensure that the work is started and completed as required by the Progress Schedule.

The Subcontract price includes all overtime as required including Saturdays, Sundays, and holidays in order to maintain the Progress Schedule. Failure by this SUBCONTRACTOR to meet all obligations necessary to maintain the Progress Schedule dates will result in SUBCONTRACTOR being assessed appropriate damages and losses incurred by the CONTRACTOR. The CONTRACTOR shall have the rights to (1) expand, update and revise the Progress Schedule as necessary to correspond to project conditions and changes in order to ensure the overall completion date, and (2) to determine and, if necessary, change the time, order and priority in which various portions of Subcontract Work shall be performed.

SUBCONTRACTOR accepts the risk of delays and acceleration caused by the rate of progress of the Work changing as directed by CONTRACTOR. The SUBCONTRACTOR acknowledges that the CONTRACTOR has made no warranties to the SUBCONTRACTOR, express or implied, that the SUBCONTRACTOR will be able to follow normal, orderly sequence in the performance of SUBCONTRACTOR's Work or that there will be no delays in, or interference with, the SUBCONTRACTOR's Work. The SUBCONTRACTOR shall be prepared to do its Work out of sequence in accordance with the requirements of the Project, when and if required by CONTRACTOR. The Contract Sum includes all overtime, increase in crew size, etc. as required, including Saturdays, Sundays, and Holidays, in order for the SUBCONTRACTOR to maintain its Work item time duration schedule.

**LIMITATION OF REMEDIES – NO DAMAGES FOR DELAY. The SUBCONTRACTOR's exclusive remedy for delays in the performance of the contract caused by events beyond its control, including delays claimed to be caused by the CONTRACTOR, Owner, Architect, or Engineer, or attributable to the CONTRACTOR, Owner, Architect, or Engineer and including claims based on breach of contract or negligence, shall be an extension of its contract time, and under no circumstances will SUBCONTRACTOR be entitled to any monetary claim or compensation. Any claims for additional time by the SUBCONTRACTOR for delay must be submitted to the CONTRACTOR within the**



## Standard Short Form Agreement Between Contractor and Subcontractor

time and in the manner in which the CONTRACTOR must submit such claims to the Owner, and that failure to comply with the conditions for giving notice and submitting claims shall result in the waiver of such claims.

SUBCONTRACTOR is to perform work ONLY during specified authorized working hours as authorized in writing by the CONTRACTOR. Under no circumstances is SUBCONTRACTOR to perform ANY work or otherwise have any work crews present on the jobsite without the CONTRACTOR present. SUBCONTRACTOR is solely responsible for full compliance with this important Contract requirement.

SUBCONTRACTOR agrees to complete work segments within the performance time durations as listed below and overall Progress Schedule. SUBCONTRACTOR specifically acknowledges and agrees to these duration times including completion of all punch list requirements for its work – as necessary to achieve final acceptance of its work by the CONTRACTOR and Owner and includes in the Subcontract Price all necessary costs required to achieve completion within the listed times. Duration times are all in calendar days and include sufficient time as required to receive inspection approvals from all authorities having jurisdiction.

7)   **CHANGE ORDERS.** When CONTRACTOR orders in writing, SUBCONTRACTOR, without nullifying this Agreement, shall make any and all changes in Subcontract Work. No adjustments shall be made for any changes performed by SUBCONTRACTOR that have not been ordered by CONTRACTOR. **The Subcontract Price may only be modified by written change order signed by both parties. Authorization for any changed or extra work or costs whatsoever may be only made in writing signed by CONTRACTOR's Project Manager or Executive Officer. Contractor's Superintendent is not authorized to make any changes or issue any extra cost approvals to SUBCONTRACTOR either verbal or in writing. Any changes or extra costs attempted to be recovered by SUBCONTRACTOR based on any approvals or directives by CONTRACTOR's Superintendent or anyone else that is not CONTRACTOR's Project Manager or Executive Officer will not be recognized. The only CONTRACTOR representative authorized to approve additional scope and costs is the Project Manager or Executive Officer.** A Change Order is a written instrument prepared by CONTRACTOR and signed by SUBCONTRACTOR stating their agreement upon the change in Subcontract Work. In the event of a change in the work, the SUBCONTRACTOR's claim for adjustments in the contract sum are limited exclusively to its actual costs for such changes plus no more than 10% for overhead and 5% profit.

8)   **CHANGE ORDER ADJUSTMENTS.** In consideration for any adjustments in the time and the Subcontract Sum, SUBCONTRACTOR hereby releases CONTRACTOR and Owner from all claims, demands or causes of action arising out of the transactions, events and occurrences giving rise to the Change Order, including without limitation all direct and indirect costs and all schedule impacts.

9)   **PAYMENT.**

9.1   **SCHEDULE OF VALUES.** The schedule of values (SOV) is a condition of payment, per SOV detailed in Exhibit "A". SUBCONTRACTOR to provider progress invoicing per Exhibit "A"; and as provided by CONTRACTOR they may use the project Billing Invoice Tool in Procore.

9.2   **PROGRESS AND FINAL PAYMENTS.** Progress payments due to SUBCONTRACTOR, less retainage as specified herein, shall be made to SUBCONTRACTOR for Subcontract Work satisfactorily performed no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for SUBCONTRACTOR's Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for SUBCONTRACTOR's Work. These payments are not due if there is reason for withholding as specified herein and/or SUBCONTRACTOR has not satisfied all conditions precedent to payment specified herein.

9.2.1   **PROGRESS PAYMENTS.** Progress Payments due under the Subcontract will not be released until all of the following conditions have been met:

　　　　　.1   Subcontract Agreement has been signed by SUBCONTRACTOR without modification and returned to CONTRACTOR;

　　　　　.2   Proper Insurance Certificates have been received;

　　　　　.3   CONTRACTOR's approval of SUBCONTRACTOR's Schedule of Values;

　　　　　.4   SUBCONTRACTOR has presented to CONTRACTOR, for its approval, an Application for Payment and other documents required by Paragraph 10;

　　　　　.5   Progress payments, less retainage, shall be made to SUBCONTRACTOR, for Subcontract Work satisfactorily performed, no later than ten (10) days after receipt by CONTRACTOR of payment from

Initial ____ Sub   Initial **BLA** Contractor   Alterations to this Agreement are Prohibited   Page 29 of 47



### Standard Short Form Agreement Between Contractor and Subcontractor

Owner for Subcontract Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for Subcontract Work. These payments are subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or CONTRACTOR.

     .6     CONTRACTOR's receipt in current funds from the Owner for the progress payments due the SUBCONTRACTOR. It shall be an express condition precedent to any obligation or liability of the CONTRACTOR to the SUBCONTRACTOR for any payment to the SUBCONTRACTOR that the CONTRACTOR is in receipt of payment in current funds from the Owner for the SUBCONTRACTOR's work. If the Owner has not paid the CONTRACTOR for any reason whatsoever, including the Owner's financial inability to pay or other reason not related to this SUBCONTRACTOR, the SUBCONTRACTOR agrees that the CONTRACTOR shall not be liable for payment and not be indebted to the SUBCONTRACTOR. The SUBCONTRACTOR assumes the credit risk of the Owner and agrees that it is relying on the Owner's credit and not that of the CONTRACTOR. The SUBCONTRACTOR further agrees that, as a portion of the consideration for the award of this Subcontract, he agrees to assume, and hereby assumes, the same risk as does the CONTRACTOR for non-payment by the Owner and accordingly, in the event that the Owner fails to pay the CONTRACTOR progress payments, interim payment, claims for increased work, claims for changed work, final payments, or any other form of payment otherwise due to the CONTRACTOR, the SUBCONTRACTOR shall be absolutely barred, estopped, and precluded from instituting any suit, arbitration or other claim against the CONTRACTOR or the Surety until and unless the Owner first pays the CONTRACTOR. In other words, payment by the Owner to the CONTRACTOR of sums necessary to pay the SUBCONTRACTOR is a condition precedent to CONTRACTOR's obligation to pay SUBCONTRACTOR and to the bringing of any lawsuit, arbitration or other claims by the SUBCONTRACTOR against the CONTRACTOR. If CONTRACTOR has provided payment or performance bonds or a combination payment and performance bond, the obligation of CONTRACTOR and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of CONTRACTOR's prior receipt of payment from the Owner for the progress payments due the SUBCONTRACTOR. This provision is incorporated by reference into any such bond or bonds.

     .7     Any supplemental work provided b others for this scope of work has been paid in full.

**9.2.2   FINAL PAYMENT.** All conditions precedent of this Subcontract which apply to progress payments shall also apply to final payment. As additional express conditions precedent to SUBCONTRACTOR's entitlement to final payment, the SUBCONTRACTOR shall have fully performed all its Work in accordance with the Contract Documents, the Architect shall have issued a certificate for payment covering the SUBCONTRACTOR's completed Work, any certificates of occupation or certificates of completion required to be issued by any authority having jurisdiction shall have been issued, the CONTRACTOR shall have received payment from the Owner, the CONTRACTOR shall have received consent of SUBCONTRACTOR's surety to final payment (if any), and the SUBCONTRACTOR shall provide to the CONTRACTOR its Affidavit and Final Release of Lien/Claim, all final lien waivers from its sub-subcontractors and vendors, warranties, special warranties, all required executed warranty and guaranty documents, guarantees, parts lists, all maintenance and operations manuals, all close-out documents described in the Project Manual (Specification Book), Bid Package Book, and Addenda, two complete sets of "As-Built" prints acceptable to the CONTRACTOR (one hard copy and one electronic copy), and other Project close-out documents required by the Contract Documents. Should CONTRACTOR's close-out of the entire Project and receipt of final payment from Owner be delayed as a result of SUBCONTRACTOR's delay or failure to submit all such Project close-out documents relating to SUBCONTRACTOR's Work, SUBCONTRACTOR will be responsible for any costs and expenses and damages sustained by CONTRACTOR as a result of such delay or failure. Further, SUBCONTRACTOR's compliance with all other provisions of the Contract Documents is a condition precedent to SUBCONTRACTOR's right to final payment.

**9.3    STORED MATERIALS.** Payments for stored materials will only be made subject to the pre-approval, restrictions and requirements of Owner and CONTRACTOR. Payments will be made, less retainage and only to extent of monies received by CONTRACTOR from Owner, for the stored items under the Owner – CONTRACTOR Agreement. Payments to SUBCONTRACTOR will be made no sooner than ten days after the date payment for the stored materials is received by CONTRACTOR from Owner. In no case, will stored materials be paid for items other than those necessary to be on site to guarantee the progress of the Project and as specifically pre-approved by CONTRACTOR. SUBCONTRACTOR includes protection of all stored materials and safeguards necessary to insure adequate protection to the satisfaction of the CONTRACTOR and OWNER. SUBCONTRACTOR must provide a proper and secure storage facility for all stored material at its own expense. SUBCONTRACTOR must also provide satisfactory insurance coverage as required in Exhibit 'E' attached hereto and made part of this Subcontract. CONTRACTOR will not reimburse SUBCONTRACTOR for materials either misplaced, damaged, or stolen.

Initial Sub _____ Initial Contractor ___ **BLA** ___

**Alterations to this Agreement are Prohibited**     Page 30 of 47

## Standard Short Form Agreement Between Contractor and Subcontractor

**9.4    PAYMENTS WITHHELD.** CONTRACTOR shall have the right to withhold and to reduce any payments to SUBCONTRACTOR for (a) any indebtedness owed by SUBCONTRACTOR to CONTRACTOR, (b) defective work not remedied or defective materials not removed and replaced, (c) third-party claims filed or reasonable evidence indicating probable filing of such claims, (d) claimed failure of the SUBCONTRACTOR to make payments to its subcontractors, suppliers, or laborers, (e) reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract Price, (f) damage to CONTRACTOR or another subcontractor, (g) reasonable indication that the Work will not be completed within the Contract Time/CONTRACTOR's Progress Schedule, (h) unsatisfactory or untimely prosecution of the Work by the SUBCONTRACTOR, or (i) any failure by the SUBCONTRACTOR to comply with the Contract Documents. Items (a) – (i) shall be grounds for default under this Agreement as well. Independent of any other right hereunder, CONTRACTOR may deduct from any payments due or to become due SUBCONTRACTOR amounts equal to any claims asserted against SUBCONTRACTOR in connection with SUBCONTRACTOR's Work on this Project or on any other Project including, but not limited to, lien claims, bond claims, unpaid bills, defective work, incomplete work, and damage to the work of CONTRACTOR. When the basis for disapproval or withholding has been remedied, the SUBCONTRACTOR shall be paid the amounts withheld.

**9.5    JOINT CHECK PAYMENTS.** CONTRACTOR reserves the right to pay any obligations of SUBCONTRACTOR arising on this Project by checks made payable jointly or directly to SUBCONTRACTOR and/or its suppliers or its SUBCONTRACTORs, with any amounts so paid reducing the balance due SUBCONTRACTOR. Joint or direct payments made by CONTRACTOR do not relieve SUBCONTRACTOR of any obligation under this Subcontract.

**9.6    WAIVER OF CLAIMS.** Final payment shall constitute a waiver of all claims by SUBCONTRACTOR relating to Subcontract Work, but shall in no way relieve SUBCONTRACTOR of any liability to CONTRACTOR, including liability for warranties, or for nonconforming or defective work discovered after final payment.

## 10)    INDEMNITY.

**10.1**    The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, Architect, Engineer, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work, or any breach of or failure to comply with any of the provisions of this SUBCONTRACT or the Contract Documents by SUBCONTRACTOR.

**10.2**    The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work (regardless of cause or of any concurrent or contributing fault or negligence of CONTRACTOR, Owner, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of this Subcontract or the Contract Documents by SUBCONTRACTOR. The SUBCONTRACTOR's indemnification obligation to CONTRACTOR, Owner, and all of their agents, officers, and employees (the "Indemnitees") for occurrences caused by the sole, contributory, or concurrent negligence of the Indemnitees shall be limited, on a per occurrence basis, to the greater of $1,000,000.00 (as prescribed by Florida Statute § 725.06), the price of this Subcontract, or the limits of liability of the insurance policies provided pursuant to this Agreement, which SUBCONTRACTOR acknowledges and agrees bears a reasonable commercial relationship to this Subcontract.

**10.3**    SUBCONTRACTOR and its surety, if any, hereby agrees to defend, indemnify, and hold harmless CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives from any loss or damage and to reimburse CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives for any and all claims, costs, and expenses, including but not limited to attorneys' fees, legal fees, expert witness fees, and court costs that CONTRACTOR, CONTRACTOR's surety and/or Owner may incur because of:

**10.3.1**    Claims and liens for labor performed or materials used or furnished through or under SUBCONTRACTOR for the Project;



Initial _____ Initial **BLA**
Sub            Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**10.3.2** any personal injury, loss, damage or death to any person or persons and any property damage arising out of the performance or nonperformance of Work required in this Subcontract, including, without limitation, any personal injury or loss, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, SUBCONTRACTOR's indemnity hereunder shall not arise if such injury, loss, damage or death results from the gross negligence or willful, wanton or intentional misconduct of a party indemnified hereunder;

**10.3.3** SUBCONTRACTOR's failure or the failure of any of its employees to comply with any law, ordinance, rule, regulation or requirement, including, but not limited to, any Occupational Safety and Health Administration violations and any penalties, including enhancements, resulting in whole or in part by SUBCONTRACTOR's acts or omissions.

**10.4** CONTRACTOR, in its sole discretion, may defend any or all of the indemnified claims or tender to SUBCONTRACTOR the defense of any or all of the indemnified claims. Upon such tender by CONTRACTOR to SUBCONTRACTOR, SUBCONTRACTOR shall be obligated to assume the defense of CONTRACTOR in the indemnified claims, including the settlement negotiations, and shall pay and satisfy any and all settlements, judgments, sanctions, awards, or expenses, including attorneys' fees, resulting from or arising out of the indemnified claims without reimbursement from CONTRACTOR.

**10.5** If CONTRACTOR tenders the defense of an indemnified claim to SUBCONTRACTOR and SUBCONTRACTOR fails or neglects to assume that defense, CONTRACTOR may compromise or settle or defend any such action, and SUBCONTRACTOR shall be bound and obligated to reimburse CONTRACTOR for the amount expended by it in settling, compromising, or defending any such claim, or in the amount expended by CONTRACTOR in paying any settlement or judgment rendered therein, together with all reasonable attorneys' fees and expenses of litigation incurred by CONTRACTOR by reason of its defense, settlement, or compromise of such indemnified claims.

**10.6** Neither final payment by CONTRACTOR nor acceptance of the Work performed by SUBCONTRACTOR shall constitute a waiver of the foregoing indemnities, and notwithstanding any other provision contained in this Subcontract, the provisions of this paragraph shall survive the termination of this Subcontract.

**10.7** In any claims by any employee of the SUBCONTRACTOR, the SUBCONTRACTOR's sub-contractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, against any persons or entities indemnified hereunder the indemnification obligation shall not be limited as to the amount or type of damages, compensation, or benefits payable by or for the SUBCONTRACTOR or the SUBCONTRACTOR's sub-contractors under Workers' Compensation acts, disability benefit acts or other employee benefit acts.

## 11) CORRECTION OF WORK, DEFAULT, AND TERMINATION.

**11.1** **CORRECTION OF WORK.** SUBCONTRACTOR shall promptly correct all of SUBCONTRACTOR's Work rejected by CONTRACTOR, Architect or Owner as defective or failing to conform to the Contract Documents, whether observed before or after Substantial Completion. SUBCONTRACTOR shall bear all costs of correcting rejected work, including compensation for Architect's or CONTRACTOR's additional services, if required.

**11.2** **FAILURE OF PERFORMANCE.** Should SUBCONTRACTOR fail to satisfy contractual deficiencies or to commence and continue satisfactory correction of any default with diligence or promptness within one (1) working day from receipt of CONTRACTOR's written notice, then CONTRACTOR, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and charge the cost thereof to SUBCONTRACTOR, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees. In the event of an emergency affecting safety of persons or property, CONTRACTOR may proceed as above without notice.

**11.3** **TERMINATION BY OWNER.** Should Owner terminate its prime agreement with the CONTRACTOR or any part which includes SUBCONTRACTOR's Work, CONTRACTOR shall notify SUBCONTRACTOR in writing within three (3) days of termination and, upon written notification, this Agreement shall be terminated and SUBCONTRACTOR shall immediately stop Subcontract Work, follow all of CONTRACTOR's instructions, and mitigate all costs. In the event of Owner termination, CONTRACTOR liability to SUBCONTRACTOR shall be limited to the extent of CONTRACTOR recovery on SUBCONTRACTOR's behalf under the prime agreement.

**11.4** **TERMINATION BY CONTRACTOR.** If SUBCONTRACTOR fails to commence and satisfactorily continue correction of a default within one (1) working day after written notification from CONTRACTOR, then CONTRACTOR may issue a second written notification, to SUBCONTRACTOR and its surety, if any. Such notice shall state that if

Initial _MW_ Initial **BIA**
Sub          Contractor

Alterations to this Agreement are Prohibited                    Page 32 of 47



## Standard Short Form Agreement Between Contractor and Subcontractor

SUBCONTRACTOR fails to commence and continue correction of a default within five (5) days of the written notification, the Agreement will be automatically terminated. CONTRACTOR may furnish those materials, equipment and/or employ such workers or replacement subcontractor(s) as CONTRACTOR deems necessary to maintain the orderly progress of CONTRACTOR's work. All costs incurred by CONTRACTOR in performing Subcontract Work, including damages, extended general conditions, liquidated damages, reasonable overhead, profit, and attorneys' fees, costs and expenses, shall be deducted from any monies due or to become due SUBCONTRACTOR. SUBCONTRACTOR shall be liable for payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount. At SUBCONTRACTOR's request, CONTRACTOR shall provide a detailed accounting of the costs to finish Subcontract Work.

### 12)    CLAIMS AND DISPUTES.

**12.1    CLAIMS RELATING TO CONTRACTOR.** SUBCONTRACTOR shall give CONTRACTOR written notice of all claims within seven (7) days of the existence of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed absolutely waived by SUBCONTRACTOR. All unresolved claims, disputes and other matters in question between CONTRACTOR and SUBCONTRACTOR shall be resolved in the manner provided in this Agreement.

**12.2    LIQUIDATED DAMAGES.** Inasmuch as SUBCONTRACTOR's failure to complete its Work within the timeframe specified herein will result in substantial injury to the Contractor and whereas damages arising from such failure cannot be calculated with any degree of certainty, it is hereby agreed that if such Subcontract Work is not substantially completed as herein defined within the time fixed herein or within such further time, if any, as shall be allowed for such performance or completion in accordance with the provisions of this Subcontract, the SUBCONTRACTOR shall pay to the Contractor, as liquidated damages for such delay and not as a penalty, One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) per day for each and every calendar day that the SUBCONTRACTOR fails to complete its Work, including all punchlist work ("CONTRACTOR's Liquidated Damages"). SUBCONTRACTOR's obligation for such liquidated damages is irrespective of, and is in no way dependent upon, whether Owner assesses liquidated damages against the Contractor or whether it is impossible to determine the degree of harm caused by SUBCONTRACTOR's delay. SUBCONTRACTOR acknowledges that its failure to timely complete its Subcontract Work will cause financial harm to Contractor irrespective of whether or not Owner assesses any liquidated damages against Contractor. This provision for liquidated damages shall in no manner affect the Contractor's right to terminate this Subcontract as provided for elsewhere in this Subcontract and other Contract Documents, and Contractor's exercise of the right to terminate shall not release the SUBCONTRACTOR from its obligation to pay said liquidated damages.

If the CONTRACTOR's agreement with the Owner provides for liquidated or other damages for delay, and such damages are assessed, CONTRACTOR may assess a share of the damages against SUBCONTRACTOR in proportion to SUBCONTRACTOR's share of responsibility for the delay. This apportionment shall be in addition to the CONTRACTOR's Liquidated Damages.

**12.3    WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, SUBCONTRACTOR shall continue Subcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. If SUBCONTRACTOR continues to perform, CONTRACTOR shall continue to make payments of amounts undisputedly owed to SUBCONTRACTOR in accordance with this Agreement.

**12.4    MULTIPARTY PROCEEDING.** The parties agree, to the extent permitted by the prime agreement, that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between CONTRACTOR and SUBCONTRACTOR involve in whole or in part disputes between CONTRACTOR and Owner, disputes between SUBCONTRACTOR and CONTRACTOR shall be decided by the same tribunal and in the same forum as disputes between CONTRACTOR and Owner, and SUBCONTRACTOR agrees to consolidation and joinder of the same.

**12.5    STAY OF PROCEEDINGS.** In the event that provisions for resolution of disputes between CONTRACTOR and Owner contained in the prime agreement do not permit consolidation or joinder with disputes of third parties, such as SUBCONTRACTOR, resolution of disputes between SUBCONTRACTOR and CONTRACTOR involving in whole or in part disputes between CONTRACTOR and Owner shall be stayed pending conclusion of any dispute resolution proceeding between CONTRACTOR and Owner.

**12.6    DIRECT DISCUSSION.** If a dispute arises out of or relates to this Agreement, the parties shall endeavor to settle the dispute through direct discussion.





## Standard Short Form Agreement Between Contractor and Subcontractor

**12.7    MEDIATION.** Disputes between SUBCONTRACTOR and CONTRACTOR not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The parties shall select the mediator within fifteen (15) days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution.

**12.8    OTHER DISPUTE PROCESSES.** If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.

**ARBITRATION.** At the sole discretion of the CONTRACTOR or its Surety, all claims, counterclaims, disputes, and other matters in question between the CONTRACTOR or its Surety and the SUBCONTRACTOR or its Surety (if applicable) arising out of this Agreement or the breach thereof shall be decided by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining. CONTRACTOR expressly reserves its right on behalf of CONTRACTOR and its Surety to have any dispute resolved by binding arbitration, including but not limited to those initiated by SUBCONTRACTOR, in which event the parties agree that the litigation will be dismissed and the dispute will proceed in arbitration. If the CONTRACTOR or its Surety elects to submit the claims, counterclaims, disputes, and other matters in question to binding arbitration, it will give the other party notice of its intent, and the parties will proceed in accordance with the Construction Industry Rules of the American Arbitration Association. The award rendered by the arbitrator shall be final, and judgment shall be entered upon it in accordance with applicable Florida law.

**12.9    COST OF DISPUTE RESOLUTION.** The cost of any mediation proceeding shall be shared equally by the parties participating. Additionally, the parties agree to bear their own attorneys' fees and costs for any dispute arising out of this Agreement and/or the Project and knowingly, voluntarily, and intentionally and expressly waive and relinquish any and all statutory or other rights to recover attorney's fees' or costs from CONTRACTOR, its Surety, if any, and Owner for any dispute arising out of this Agreement and/or the Project.

**13)    NO PRESUMPTION AGAINST DRAFTER.** The Parties expressly agree that they freely and voluntarily enter into this Agreement and have had the opportunity to obtain assistance of legal counsel of their choice in reviewing its terms prior to execution. The Parties acknowledge and agree that no rule of construction applies to the disadvantage of a party because that party was responsible for the preparation of this Subcontract or part of it.

## 14)    MISCELLANEOUS PROVISIONS.

**14.1**    If required for this Subcontract, pursuant to Executive Order 11-02 signed by the Florida Governor on January 4, 2011 and other applicable law, SUBCONTRACTOR will utilize the E-verify system, established by the U.S. Department of Homeland Security to verify the employment eligibility of its employees and any of its subcontractors assigned to perform work on the Project. This, when required, is a continuing obligation that applies throughout the duration of the Project, and SUBCONTRACTOR acknowledges that any additional personnel, not previously verified, that may be assigned to the Project will be subject to the aforementioned E-verification. Results of the E-verification will be provided to CONTRACTOR and remain in the SUBCONTRACTOR's project records for review by CONTRACTOR and/or Owner as requested. Additionally, SUBCONTRACTOR shall certify to CONTRACTOR by affidavit that the SUBCONTRACTOR has verified through the E-verify system the employment status of each employee assigned to work on the Project. SUBCONTRACTOR shall be responsible for including this provision in all its' subcontracts issued as a result of this Subcontract.

**14.3**    The SUBCONTRACTOR has no power to assign its rights or duties under this Subcontract. The parties expressly acknowledge that in selecting the SUBCONTRACTOR, the CONTRACTOR considered various factors, including but not limited to the SUBCONTRACTOR's reputation, quality of work, and capacity to perform. SUBCONTRACTOR specifically agrees not to assign, sell, or transfer any accounts receivables under this Subcontract to any third-party factoring company or related business. NEITHER THE OWNER NOR THE CONTRACTOR SHALL BE LIABLE TO ANY THIRD PARTIES FOR PAYMENT OF ANY ASSIGNED ACCOUNTS RECEIVABLES.

**14.4**    By acceptance of this Subcontract, SUBCONTRACTOR guarantees its prices contained herein for the duration of the Project, through the date of Final payment by the Owner. The SUBCONTRACTOR expressly agrees that external conditions outside the control of SUBCONTRACTOR, including but not limited to materials shortages and price escalations, have been accounted for in the Contract price and shall not constitute the basis for a time extension or a claim for additional compensation of any type.

Initial  Initial  **BLA**
Sub    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**14.5** This Contract is specifically intended to be for the benefit of the Owner. The Owner may maintain an action for breach of this Subcontract. However, SUBCONTRACTOR is not an intended third-party beneficiary of the Agreement between Owner and CONTRACTOR.

**14.6** No right or remedy in this Subcontract is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.

**14.7** The obligations of the CONTRACTOR and SUBCONTRACTOR under this Subcontract are expressly conditioned upon the CONTRACTOR's successfully entering into a contract with the Owner for the Project. If the Owner shall decline for any reason whatsoever to enter into a contract with the CONTRACTOR for the Project, then this Subcontract shall automatically become null and void and CONTRACTOR and SUBCONTRACTOR shall be discharged from their respective obligations hereunder. Further, in such event, CONTRACTOR shall have no liability of any kind to SUBCONTRACTOR including, without limitation, cancellation charges.

**14.8** If applicable, the Owner may choose to directly purchase materials as a tax exempted entity as defined by the IRS and the State of Florida, and if this option is available to the Owner and the Owner decides to use this option, the SUBCONTRACTOR will be notified and shall comply with the Owner Direct Purchase program by providing a credit for the material being purchased directly including the sales tax attributable thereto.

**14.9** The nondiscrimination clauses contained in Section 202 of Executive Order 11246, as amended; Section 402 of the Vietnam Era Veteran's Readjustment amended, relative to equal opportunity for all persons within regard to race, color, religion, sex national origin, handicapped, Vietnam Era or disabled veteran and the implementing rules and regulations prescribed by the Secretary of Labor are incorporated herein.

**15)** **SUBCONTRACTOR'S WAIVER OF JURY TRIAL.** The SUBCONTRACTOR and its Surety expressly and voluntarily waive all rights to a jury trial in any claim or dispute arising from the Subcontract, the Project, and/or any associated Bond(s).

CONTRACTOR: Portrait Construction of Florida

BY: *Bruce L Abbey*

PRINT NAME: Bruce Abbey

PRINT TITLE: Principal

DATE: 3/9/2021

WITNESS:

SUBCONTRACTOR: Express Plumbing, Inc.

BY:

PRINT NAME: Mark Ganslop

PRINT TITLE: Owner

DATE: 02/13/21

WITNESS:

Standard Short Form Agreement Between Contractor and Subcontractor

# EXHIBIT A
## SCHEDULE OF VALUES

| # | Cost Code | Description | Type | Amount |
|---|-----------|-------------|------|--------|
| 1 | 22-00700-50 - Plumbing - Units | | Subcontract | $1,965,000.00 |
| 2 | 22-21427-40 - Parking Drains | | Subcontract | $135,000.00 |
| 3 | 22-02115-50 - Radon Venting | | Subcontract | $17,510.00 |
| | | | Grand Total: | $2,117,510.00 |



Standard Short Form Agreement Between Contractor and Subcontractor

# EXHIBIT B
## OCIP Manual and Requirements

Included by Separate Attachment,
Please Reference for Instructions





## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

| SUPPLEMENTARY CONDITIONS OF THE CONTRACT FOR CONSTRUCTION | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval No. 2502-0598 (Exp. 06/30/2017) |

Public Reporting Burden for this collection of information is estimated to average 0.2 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Response to this request for information is required in order to receive the benefits to be derived. This agency may not collect this information, and you are not required to complete this form unless it displays a currently valid OMB control number. While no assurance of confidentiality is pledged to respondents, HUD generally discloses this data only in response to a Freedom of Information Act request.

### Article 1: Labor Standards

A. **Applicability.** The Project or program to which the construction work covered by this Contract pertains is being assisted or insured by the United States of America, and the following Federal Labor Standards Provisions are included in this Contract or related instrument pursuant to the provisions applicable to such Federal assistance or insurance. Any statute or regulation contained herein shall also include any subsequent amendment or successor statute or regulation.

B. **Minimum Wages.** Pursuant to Section 212 of the National Housing Act, as amended, 12 U.S.C. 1715c, the minimum wage provisions contained in this paragraph B do not apply to those projects with Security Instruments insured under Section 221(h)(1) designed for less than 9 families and they do not apply to those projects with Security Instruments insured under either Section 220 or 233 designed for less than 12 families.

1. (i) All laborers and mechanics employed or working upon the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the Project) shall be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR Part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics. Contributions made or costs reasonably anticipated for bona fide fringe benefits under Section 1 (b)(2) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)) on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of 29 CFR 5.5(a)(1)(iv); also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs, which cover the particular weekly period, are deemed to be constructively made or incurred during such weekly period. Such laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed, without regard to skill, except as provided in 29 CFR 5.5(a)(4). Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein. *Provided,* that the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classification and wage rates conformed under 29 CFR 5.5(a)(1)(ii)) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

(ii) (a) Any class of laborers or mechanics that is not listed in the wage determination and that is to be employed under this Contract shall be classified in conformance with the wage determination. HUD shall approve an additional classification and wage rate and fringe benefits only when the following criteria have been met:

Previous editions are obsolete;
Replaces form HUD-92554

Initial _____ Initial  BLA
Sub _____ Contractor

Construction Contract Supp

**Alterations to this Agreement are Prohibited**

HUD-92554M (06/14)

Page 38 of 47



### Standard Short Form Agreement Between Contractor and Subcontractor

### Exhibit C

(1) The work to be performed by the classification requested is not performed by a classification in the wage determination; and

(2) The classification is utilized in the area by the construction industry; and

(3) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(b) If the Contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and HUD or its designee agree on the classification and wage rate (including the amount designated for fringe benefits where appropriate), a report of the action taken shall be sent by HUD or its designee to the Administrator of the Wage and Hour Division, U.S. Department of Labor, Washington, D.C. 20210 (**"Administrator"**). The Administrator, or an authorized representative, shall approve, modify, or disapprove every additional classification action within thirty (30) days of receipt and so advise HUD or its designee or shall notify HUD or its designee within the thirty (30) day period that additional time is necessary. (Approved by the Office of Management and Budget under OMB control number 1215-0140.)

(c) In the event the Contractor, the laborers or mechanics to be employed in the classification or their representatives and HUD or its designee do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), HUD or its designee shall refer the questions, including the views of all interested parties and the recommendation of HUD or its designee, to the Administrator for determination. The Administrator, or an authorized representative, shall issue a determination within thirty (30) days of receipt and so advise HUD or its designee or shall notify HUD or its designee within the thirty (30) day period that additional time is necessary. (Approved by the Office of Management and Budget under OMB Control Number 1215-0140.)

(d) The wage rate (including fringe benefits where appropriate) determined pursuant to subparagraphs B.1.(ii)(b) or (c) of this Article, shall be paid to all workers performing work in the classification under this Contract from the first day on which work is performed in the classification.

(iii) Whenever the minimum wage rate prescribed in the Contract for a class of laborers or mechanics includes a fringe benefit that is not expressed as an hourly rate, the Contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(iv) If the Contractor does not make payments to a trustee or other third person, the Contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program, *Provided*, That the Secretary of Labor has found, upon the written request of the Contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Contractor to set aside in a separate account assets for the meeting of obligations under the plan or program. (Approved by the Office of Management and Budget under OMB Control Number 1215-0140.)

2. **Withholding**. HUD or its designee shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the Contractor under this Contract or any other Federal contract with the same prime contractor, or any other Federally-assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same prime contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees and helpers, employed by the Contractor or any subcontractor the full amount of wages required by the Contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee or helper, employed or working on the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the Project), all or part of the wages required by the Contract, HUD or its designee may, after written notice to the Contractor, sponsor, applicant, or Owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased. HUD or its designee may, after written notice to the Contractor, disburse such amounts withheld for and on account of the Contractor or subcontractor to the respective employees to whom they are due.

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial ___ Initial BIA
Sub   Contractor

**Alterations to this Agreement are Prohibited**

Page 39 of 47

## Standard Short Form Agreement Between Contractor and Subcontractor

### Exhibit C

#### 3. Payrolls, records, and certifications.

(i) Payrolls and basic records relating thereto shall be maintained by the Contractor during the course of the work and preserved for a period of three years thereafter for all laborers and mechanics working at the site of the work (or under the United States Housing Act of 1937, or under the Housing Act of 1949, in the construction or development of the Project). Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in Section 1 (b)(2)(B) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii))), daily and weekly number of hours worked, deductions made and actual wages paid. Whenever the Secretary of Labor has found under 29 CFR 5.5(a)(1)(iv) that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in Section 1 (b)(2)(B) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)), the Contractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs. (Approved by the Office of Management and Budget under OMB Control Numbers 1215-0140 and 1215-0017.)

(ii)(a) The Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to HUD or its designee if the agency is a party to the Contract, but if the agency is not such a party, the Contractor shall submit the payrolls to the applicant, sponsor, or Owner, as the case may be, for transmission to HUD or its designee. The payrolls submitted shall set out accurately and completely all of the information required to be maintained under 29 CFR 5.5(a)(3)(i), except that full social security numbers and home addresses shall not be included on weekly transmittals. Instead the payrolls shall only need to include an individually identifying number for each employee (e.g., the last four digits of the employee's social security number). The required weekly payroll information may be submitted in any form desired. Optional Form WH-347 is available for this purpose from the Wage and Hour Division Web site at http://www.dol.gov/whd/forms/wh347.pdf or its successor site. The prime contractor is responsible for the submission of copies of payrolls by all subcontractors. Contractors and subcontractors shall maintain the full social security number and current address of each covered worker, and shall provide them upon request to HUD or its designee if the agency is a party to the Contract, but if the agency is not such a party, the Contractor will submit the payrolls to the applicant sponsor, or Owner, as the case may be, for transmission to HUD or its designee, the Contractor, or the Wage and Hour Division of the Department of Labor for purposes of an investigation or audit of compliance with prevailing wage requirements. It is not a violation of this subparagraph for a prime contractor to require a subcontractor to provide addresses and social security numbers to the prime contractor for its own records, without weekly submission to HUD or its designee.(Approved by the Office of Management and Budget under OMB Control Number 1215-0149.)

(b) Each payroll submitted shall be accompanied by a "Statement of Compliance," signed by the Contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the Contract and shall certify the following:

(1) That the payroll for the payroll period contains the information required to be provided under 29 CFR 5.5(a)(3)(ii), the appropriate information is correct and complete.

(2) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the Contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in 29 CFR Part 3;

(3) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the Contract.

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp.

HUD-92554M (06/14)

Initial          Initial          ELA          **Alterations to this Agreement are Prohibited**          Page 40 of 47
Sub          Contractor



## Standard Short Form Agreement Between Contractor and Subcontractor

### Exhibit C

(c) The weekly submission of a properly executed certification set forth on the everse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by subparagraph B.3.(ii)(b) of this Article.

(d) The falsification of any of the above certifications may subject the Contractor or subcontractor to civil or criminal prosecution under Section 1001 of Title 18 and Sections 3801 et seq of Title 31 of the United States Code.

(iii) The Contractor or subcontractor shall make the records required under subparagraph B.3.(i) of this Article available for inspection, copying, or transcription by authorized representatives of HUD or its designee or the Department of Labor, and shall permit such representatives to interview employees during working hours on the job. If the Contractor or subcontractor fails to submit the required records or to make them available, HUD or its designee may, after written notice to the Contractor, sponsor, applicant, or Owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

### 4. Apprentices and Trainees.

(i) **Apprentices.** Apprentices shall be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Office of Apprenticeship, or with a State Apprenticeship Agency recognized by such Office, or if a person is employed in his or her first ninety (90) days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Office of Apprenticeship, or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Contractor as to the entire work force under is not registered or otherwise employed as stated above, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where the Contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Contractor's or subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeymen hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. In the event the Office of Apprenticeship, or a State Apprenticeship Agency recognized by such Office, withdraws approval of an apprenticeship program, the Contractor shall no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(ii) **Trainees.** Except as provided in 29 CFR 5.16, trainees shall not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a percentage of the journeyman's hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed on the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate on the wage determination which provides for less than full fringe benefits

Previous editions are obsolete;
Replaces form HUD-92554

Initial _____   Initial _BLA_
Sub    Contractor

Construction Contract Supp

**Alterations to this Agreement are Prohibited**

HUD-92554M (06/14)

Page 41 of 47



## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the Contractor shall no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(iii) **Equal employment opportunity.** The utilization of apprentices, trainees and journeymen under 29 CFR Part 5 shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30.

5. **Compliance with Copeland Act Requirements.** The Contractor shall comply with the requirements of 29 CFR Part 3, which are incorporated by reference in this Contract.

6. **Subcontracts.** The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in subparagraphs 1 through 10 of this paragraph B and such other clauses as HUD or its designee may by appropriate instructions require, and a copy of the applicable prevailing wage determination, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all Contract clauses referenced in this subparagraph.

7. **Contract termination and debarment.** A breach of the Contract clauses in 29 CFR 5.5 may be grounds for termination of the Contract, and for debarment as a contractor or a subcontractor as provided in 29 CFR 5.12.

8. **Compliance with Davis-Bacon and Related Act Requirements.** All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5 are herein incorporated by reference in this Contract.

9. **Disputes concerning labor standards.** Disputes arising out of the labor standards provisions of this Contract shall not be subject to the general disputes clause of this Contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and HUD or its designee, the U.S. Department of Labor, or the employees or their representatives.

10. **Certification of Eligibility.**

(i) By entering into this Contract, the Contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of Section 3(a) of the Davis- Bacon Act (40 U.S.C. 3144(b)(2)) or 29 CFR 5.12(a)(1) or to be awarded HUD contracts or participate in HUD programs pursuant to 24 CFR Part 24.

(ii) No part of this Contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of Section 3(a) of the Davis-Bacon Act (40 U.S.C. 3144(b)(2)) or 29 CFR 5.12(a)(1) or to be awarded HUD contracts or participate in HUD programs pursuant to 24 CFR Part 24.

(iii) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001. Additionally, U.S. Criminal Code, Section 1010, Title 18, U.S.C., "Federal Housing Administration transactions", provides in part "Whoever, for the purpose of . . . influencing in any way the action of such Department . . . makes, passes, utters or publishes any statement, knowing the same to be false . . . shall be fined under this title or imprisoned not more than two years, or both."

C. **Contract Work Hours and Safety Standards Act.**

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial ___   Initial  **ELA** ᴰˢ     **Alterations to this Agreement are Prohibited**     Page 42 of 47
Sub     Contractor



## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

1. **Applicability and Definitions.** This paragraph C of Article 1 is applicable only if a direct form of federal assistance is involved, such as Section 8, Section 202/811 Capital Advance, grants etc., and is applicable only where the prime contract is in an amount greater than $100,000. As used in this paragraph C, the terms "laborers" and "mechanics" include watchmen and guards.

2. **Overtime requirements.** No contractor or subcontractor contracting for any part of the Contract work that may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of forty (40) hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of forty (40) hours in such workweek.

3. **Violation; liability for unpaid wages; liquidated damages.** In the event of any violation of the immediately preceding subparagraph C 2, the Contractor and any subcontractor responsible therefore shall be liable for the unpaid wages. In addition, the Contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory) for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of such subparagraph, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of forty (40) hours without payment of the overtime wages required by the clause set forth in such subparagraph.

4. **Withholding for unpaid wages and liquidated damages.** HUD or its designee shall, upon its own action or upon written request of an authorized representative of the Department of Labor, withhold or cause to be withheld from any moneys payable on account of work performed by the Contractor or subcontractor under any such contract, or under any other Federal contract with the same prime contractor, or under any other Federally-assisted contract subject to the Contract Work Hours and Safety Standards Act which is held by the same prime contractor such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in subparagraph 3 of this paragraph C.

5. **Subcontracts.** The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in subparagraphs 1 through 5 of this paragraph C and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the clauses set forth in such subparagraphs 1 through 5.

D. **Certification.**
For projects with Security Instruments insured under the National Housing Act, as amended, that are subject to paragraph B of this Article 1, the Contractor is required to execute the Contractor's Prevailing Wage Certificate within HUD-92448 as a condition precedent to insurance by HUD of the Loan, or an advance thereof, made or to be made by the Lender in connection with the construction of the Project.

### Article 2: Equal Employment Opportunity

A. **Applicability.** This Article 2 applies to any contract for construction work, or modification thereof, as defined in the regulations of the Secretary of Labor at 41 CFR Chapter 60, which is paid for in whole or in part with funds obtained from the Federal Government or borrowed on the credit of the Federal Government pursuant to a grant, contract, loan insurance, or guarantee, or undertaken pursuant to any Federal program involving such grant, contract, loan, insurance, or guarantee.

B. The Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, disability, or national origin. The Contractor shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment without regard to their race, color, religion, sex, disability or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training including apprenticeship. The Contractor agrees to post in



## Standard Short Form Agreement Between Contractor and Subcontractor

### Exhibit C

conspicuous places available to employees and applicants for employment notices to be provided setting forth the provisions of this nondiscrimination clause.

C. The Contractor shall, in all solicitations or advertisements for employees placed by or on behalf of the Contractor state that all qualified applicants shall receive consideration for employment without regard to race, color, religion, sex, disability, or national origin.

D. The Contractor shall send to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding a notice to be provided advising the said labor union or workers representatives of the Contractor's commitments hereunder, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

E. The Contractor shall comply with all provisions of Executive Order 11246 of September 24, 1965 and of the rules, regulations, and relevant orders of the Secretary of Labor.

F. The Contractor shall furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and shall permit access to its books, records, and accounts by the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

G. In the event of the Contractor's noncompliance with the nondiscrimination clauses of this Contract or with any of the said rules, regulations, or orders, this Contract may be canceled, terminated, or suspended in whole or in part and Contractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulations or order of the Secretary of Labor, or as otherwise provided by law.

H. The Contractor shall include the provisions of paragraphs A through H of this Article 2 in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, so that such provisions shall be binding upon each subcontractor or vendor. The Contractor shall take such action with respect to any subcontract or purchase order as HUD or the Secretary of Labor may direct as a means of enforcing such provisions, including sanctions for noncompliance. Provided, however, that in the event the Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by HUD or the Secretary of Labor, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

### Article 3: Equal Opportunity for Businesses and Lower Income Persons Located Within the Project Area

A. This Article 3 is applicable to projects covered by Section 3, as defined in 24 CFR Part 135.

B. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from HUD and is subject to the requirements of Section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that to the greatest extent feasible opportunities for training and employment be given to lower income residents of the unit of local government or the metropolitan area (or non-metropolitan county) as determined by HUD in which the Project is located and contracts for work in connection with the Project be awarded to business concerns which are located in, or owned in substantial part by persons residing in the same metropolitan area (or non-metropolitan county) as the Project.

### Article 4: Health and Safety

A. This Article 4 is applicable only where the prime contract is in an amount greater than $100,000.

### Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

B. No laborer or mechanic shall be required to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his or her health and safety as determined under construction safety and health standards promulgated by the Secretary of Labor by regulation.

C. The Contractor shall comply with all regulations issued by the Secretary of Labor pursuant to 29 CFR Part 1926, and failure to comply may result in imposition of sanctions pursuant to the Contract Work Hours and Safety Standards Act, 40 USC 3701 et seq.

D. The Contractor shall include the provisions of this Article 4 in every subcontract so that such provisions shall be binding on each subcontractor. The Contractor shall take such action with respect to any subcontract as HUD or the Secretary of Labor shall direct as a means of enforcing such provisions.

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial _____  Initial _BLA_    **Alterations to this Agreement are Prohibited**    Page 45 of 47
Sub        Contractor



**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit D**

## HUD IDENTITY OF INTEREST DISCLOSURE REQUIREMENT

HUD requires full disclosure of any Identity of Interest (IOI) for this project. An IOI is defined as a financial or business interest or family relationship that exists between Borrower, or any of its officers, directors, stockholders, partners, managers, managing members, members, or principals ("Principals") and the Architect, General Contractor, subcontractors, suppliers, equipment lessors, or any of their Principals.

**If Subcontractor has an Identity of Interest (IOI) with any party listed below, then Subcontractor is required to disclose the IOI and notify Mark Portrait Construction immediately:**

Berkadia Commercial Mortgage, LLC
LN Apartments, LLC
FLN Apts, LLC
Mark Baron Construction, Inc. dba Mark Portrait Construction
Charlan Brock & Associates

| SUBCONTRACTOR: | CONTRACTOR: |
|---|---|
| By: _____ (Signature) | DocuSigned by: Bruce L Abbey By: _____ (Signature) 9DDBE1A77AA493... |
| Mark Ganslap (Name and Title) | Bruce L Abbey    Principal (Name and Title) |
| Signed on (date): 02/13/2021 | Signed on (date): 3/9/2021 |

**Standard Short Form Agreement Between Contractor and Subcontractor**

Exhibit E

## HUD PREVAILING WAGE ACKNOWLEDGEMENT

### FUTURA AT NONA COVE - EXHBIT "E" – PREVAILING WAGE ACKNOWLEDGEMENT

Subcontractor understands that the Futura at Nona Cove project is subject to the Davis-Bacon Act requirements. Subcontractor agrees to furnish all prevailing wage forms fully executed, prior to beginning of work (one-time forms). Subcontractor agrees to comply with all applicable requirements of the Davis-Bacon Act and submit reporting forms on a weekly basis.

**This project will require the payment of Davis-Bacon (FEDERAL) wage rate for each trade.**

Subcontractor shall comply with the Copeland Act Requirement pursuant to 29 CFR Part 32, Contract Work Hours and Safety Standards Act (CWHSSA), Equal Employment Opportunity (EEO) as defined in Secretary of Labor at 41 CFR Chapter 60 and Health and Safety as issued by the Secretary of Labor pursuant to 29 CFR Part 196.

Subcontractor shall include the Labor Compliance Contract Addendum in every contract and purchase order, unless exempted. The Labor Compliance Contract Addendum is included in the Prevailing Wage Manual.

**Please note that it is Subcontractor's responsibility to ensure that all Sub-Subcontractors comply with these requirements as well.**

SUBCONTRACTOR:

By: _____
(Signature)

Mark  Gonskep  owner
(Name and Title)

Signed on (date): 02 | 13 | 2021

CONTRACTOR:

DocuSigned by:
By | Bruce L Abbey
(Signature) 96E1A77AA493...

Bruce L Abbey    Principal
(Name and Title)

Signed on (date): 3/9/2021

Initial ____ Initial BLA
Sub          Contractor

Alterations to this Agreement are Prohibited

Page 47 of 47

# EXHIBIT G



# ADDITIONAL PROVISIONS TO THE SUBCONTRACT AGREEMENT

## HUD PROVISIONS:

1) All parties hereby agree that SUBCONTRACTOR assures that either he or an authorized representative of his company will attend all jobsite meetings as established by CONTRACTOR's supervisory staff unless their presence is not requested by CONTRACTOR. In the event a representative shall represent SUBCONTRACTOR at these meetings, said representative shall be able to make binding commitments on all matters to be discussed at such meetings, including cost, payments, change orders, time schedules and manpower requirements. Further, financial penalties per meeting will be imposed if SUBCONTRACTOR or SUBCONTRACTOR's representative is not present at these meetings. The following person(s) are designated as SUBCONTRACTOR's representatives having the authority as stated herein.

Subcontractor Designated Representative: Mike Sheeks

(Optional Representative) Michael Sheeks

Subcontractor Certified Payroll Contact & Phone # Mike Sheeks – 727-638-4037

2) Requirement of, per US Department of Housing and Urban Development, HUD 92442-A, SUBCONTRACTOR waives right to file a mechanic's or materialman's lien or maintain any claim against improvements for or on account of any work done, labor performed or materials furnished under this Subcontract agreement.

3) SUBCONTRACTOR agrees to send Certified HUD payroll sheets in weekly for this Subcontract Agreement. (Through Elations.com; #067-35564 Futura @ Nona Cove)

4) Before work commences, the SUBCONTRACTOR shall enroll in Futura at Nona Cove's Owner Controlled Insurance Policy with Willis Towers Watson with the contact listed below:

Janice McNary, CISR
OCIP Administrator, Construction Practice
 Willis Towers Watson
3407 W. Dr. Martin Luther King Blvd.
Lakeside Suite #200
Tampa, FL 33607
Mobile: 813-450-9654
Janice.mcnary@willistowerswatson.com
www.willistowerswatson.com

5) It is fully understood that SUBCONTRACTOR will be responsible for keeping its part of the job clean and in an orderly fashion subject to the approval of CONTRACTOR and ARCHITECT. Further, SUBCONTRACTOR shall be totally responsible for the clean up on a daily basis of all debris generated by SUBCONTRACTOR'S daily operations. Should it become necessary for CONTRACTOR to incur any expenses performing cleanup work or removing debris from site for SUBCONTRACTOR, such expense will be deducted from SUBCONTRACTOR's contract amount.

6) All work shall be in accordance with Project Plans and Specifications.

7) Project Includes **Davis Bacon Wages rates**, see attached at end of Contract.

DocuSign Envelope ID: ...

## Standard Short Form Agreement Between Contractor and Subcontractor

This Agreement is made this 5th day of May, 2021 by and between

**GENERAL CONTRACTOR:**
Portrait Construction of Florida, Inc
2452 Lake Emma Rd. #1040
Lake Mary, Florida 32746
Phone: (407) 831-6275

**SUBCONTRACTOR:**
Florida Construction & Framing
29712 US 19N-Unit 210
Clearwater, Florida 33761
Phone: (727) 638-4037

PROJECT: Futura at Nona Cove

OWNER: LN Apartments, LLC

ARCHITECT: Charlan Brock & Associates

ENGINEER: Z Development Services

## TERMS:

**SUBCONTRACTOR'S WORK**. SUBCONTRACTOR agrees to provide and complete all Work ("Work") required of it under the Contract Documents, including, but not limited to, all labor, services, materials, installation, clean-up, hoisting, supplies, insurance equipment, scaffolding, tools, and other facilities of every kind required for the prompt and efficient performance of all Framing-Rough Carpentry. The Work is per the Drawings and Specifications in strict accordance with the Contract Documents. SUBCONTRACTOR shall give timely notices to authorities pertaining to subcontract Work and shall be responsible for all permits, fees, licenses, assessments, inspections, testing and taxes necessary to complete subcontract Work.

**SUBCONTRACT AMOUNT**. CONTRACTOR agrees to pay SUBCONTRACTOR for satisfactory and timely performance and completion of subcontract Work: $2,288,843.00

Retainage shall be ten percent (10.0%).

## SCOPE:

Scope of Work: Rough Carpentry

1. Provide all labor, material, nails, shots, equipment, and supervision for all "ROUGH CARPENTRY" associated work for per the architectural and structural drawings as prepared by Charlan Brock & Associates.
2. Project includes the following: One (1) wrap style 260 unit apartment building, One (1) integrated clubhouse and One (1) parking garage.
3. Subcontractor is solely responsible for the coordination of all heights, areas and rough openings, including kitchen island wall heights. Subcontractor to confirm kitchen island wall heights with the gypcrete, cabinet and countertop subcontractors prior to installation. No additional compensation will be paid for remedial work required due to failure of Subcontractor to coordinate heights, areas and rough openings with the appropriate subcontractors.
4. Subcontractor shall provide all cranes, forklifts, high reach and scaffolding necessary for completion of this subcontract along with qualified operators to operate equipment. Subcontractor will also be responsible for unloading framing material and trussed and distribute to stockpile or individual buildings, as necessary.

Initial _MS_ Initial _BLA_
Sub Contractor

**Alterations to this Agreement are Prohibited** Page 2 of 46

## Standard Short Form Agreement Between Contractor and Subcontractor

Subcontractor's job foreman will meet daily with Contractor and outline material needs. Forklift will be required two (2) weeks prior to framing starts to unload material.

5. Subcontractor to supply all equipment, manpower, resources, etc. necessary to meet or exceed Contractor's expedited construction schedule.

6. Subcontractor to install all studs, plates, sheathing, bracing, blocking (no soffit blocking), headers, wood columns, wood beams, wood posts, fasteners of every kind and nature, anchors, straps, threaded rods, clips, sill sealer, rough openings, column build outs, soffits, dropped ceilings, furred walls, wall chases, etc. All bottom plate to be pressure treated; LSL plates to be installed as shown. All exterior sheathing to be per plans.

7. Subcontractor to install all floor trusses (floor truss material provided by others). Subcontractor to install tongue and groove (T&G) floor decking including glue down of subflooring, OSB draft stops, ledgers, pressure treated ledgers, through bolts, infill framing, and truss repairs as required.

8. Subcontractor to install shear wall systems as shown in the Construction Documents including proper nailing, sheathing, strapping, hold downs, etc. (Install only, material by others).

9. Subcontractor to install Aercon Block wall and clips. Aercon Block and clips to be supplied by others.

10. Subcontractor to install sub fascia only.

11. Subcontractor responsible for the coordination of all truss repair details. Subcontractor to request, receive, comply and file all necessary truss repairs as necessary. Details to be retained and turned over at the completion of the project or as required by Governing Authorities.

12. Subcontractor responsible for creating an acceptable substrate for the installation of light weight concrete and gyprete. Balcony areas to be sloped away from the building as shown. No back pitching will be accepted, and Subcontractor will bear the cost of any repairs required, not caused by weather, to meet the installation guidelines for the light weight concrete. Subcontractor to install tub strips and gyprete stops at tub/showers and entry doors.

13. Subcontractor to provide sufficient manpower to meet the project schedule distributed at the weekly subcontractor meetings.

14. Provide a full-time safety monitor in all framing areas.

15. Subcontractor shall unload, store and handle trusses as per manufacturer's recommendations until erection is complete.

16. All rough hardware and connectors will be installed by this subcontractor per plans and approved rough hardware submittals and specifications. Includes all hold-down labor (only) as required.

17. Subcontractor shall make himself familiar with post tension tendon locations prior to the installation of any "hold-down" hardware or anchor bolts. Tendons that become damaged as a result of hardware installation shall be the responsibility of this Subcontractor.

18. Contractor will install for the subcontractor: floor and roof trusses, LVL 'flush beams.'

19. Includes installation of all termite shields at perimeter walls in bed of sealant, sill seal and ply clips as per plans and specifications.

20. All layout required for this work is included. Subcontractor to layout all embeds required for this scope of work, if required. Subcontractor is required to have a representative at each concrete pour to ensure proper placement of embeds, if required.

21. Subcontractor will assist in lay out of slab bolts to avoid placement in door openings or where bolt will need to be cut and replaced due to being placed in a jack and cripple framing locations.

22. Includes any backing required for the water heater/HVAC platforms.

23. Subcontractor is to participate in the Owner's mock up wall. Mockups shall be required and will be incorporated into the work for the out of sequence installation of each type of apartment unit and the common areas if requested by Contractor. Mock-ups may consist of accelerated rough-ins, trim outs, etc. for coordination purposes and final selections. Mock-ups shall be located on-site or as directed by the Contractor. Subcontractor to install material and labor for the construction of an onsite mock up wall as required for the coordination of the work.

24. Fire blocking and draft stopping shall be installed in all areas as required by code. Provide and install fire caulking as required for penetrations of fire rated walls or assemblies. (Rod Penetration Only)

25. All necessary blocking shall be provided by Subcontractor for proper installation of but not limited to the following: drywall, items in the Clubhouse ID plans, cabinets, interior and exterior trim, soffits, stairs & stringers, rails, handrails, between floor trusses, roof truss/shear wall locations, plumbing fixtures, electrical fixtures, bath accessories, grab bars, handicap adaptability for ADA, satellite dishes, canopies, etc. It is this Subcontractors responsibility to coordinate with all other trades requiring necessary blocking to assure proper placement of blocking prior to the commencement of framing. Failure to do this does not alleviate this subcontractor from his responsibility



Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 3 of 46
Sub                Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

to perform retro installation of missed blocking at a later date and absorbing all cost associated with this rework including restoration to the state of completion prior to the rework.

26. Subcontractor to install all roof stand condenser blocking, including hardware, as required. Subcontractor to coordinate final condenser stand locations with the mechanical subcontractor prior to installation-as long as it is supplied by Contractor.
27. Subcontractor to install fire rated material, as required. On site fire treatment of non-fire rated material will not be accepted; all fire treated material must be factory finished.
28. A meeting with the framing foreman, Contractor's Superintendent and all MEP trades is mandatory to review placement of material location to prevent conflicts of all trades. Particular care shall be taken to install floor trusses and roof trusses so plumbing pipes and HVAC ductwork can be installed in locations as shown on the drawings.
29. All lateral, horizontal, diagonal and vertical truss bracing is included. All temporary bracing shall be removed as soon as possible without risking movement of framing members. Bracing from first floor moves up to second, or into attic for the above mentioned bracing.
30. All punch work, blocking, drops and other miscellaneous framing will be completed immediately upon the request of Contractor's superintendent. Sufficient qualified manpower will be required to do this work. It is understood that a reasonable amount of re-work will be required after the mechanical, electrical and plumbing contractors have completed their rough-in installations and there will be no additional charges for this work. It is also understood that a reasonable amount of truss repairs is to be expected prior to the installation of drywall and there will be no additional charges for this work.
31. Subcontractor will be responsible for moving forward all framing material, trusses, etc. and cleaning on a daily basis.
32. Install OSHA approved access to all levels. Maintain access until the framing work is complete including punch out.
33. Erect OSHA approved guardrails and handrails at balconies, walkways, roof, floor and window openings. Maintain rails until framing is complete including punch out. Install "Saf-T-Straps" as supplied by and directed by Contractor at the balconies and roof.
34. This subcontractor is responsible for installation of all "wood" draft stopping and will coordinate installation of all other fire and draft stopping by others in floors and roof trusses as shown on the plans.
35. Install 1x4 form for all tub Gypcrete pre-pours.
36. Subcontractor shall frame all fire rated chases required including framing for all five sided boxes.
37. If subcontractor is delayed in performing his work, he is to notify Contractor immediately in order to minimize schedule impact.
38. Subcontract shall participate in 'Design-Assist' work. It is the subcontractor's responsibility to ensure plans are complete and accurate throughout the Design-Assist process. Unless specifically stated above there shall be no change orders for work required by any AHJ requirement, inconsistencies in plans or errors and omissions. This subcontractor can only claim a change order in the event of an owner/contractor directed change in scope.
39. Scope of work includes cost of bond.
40. Prior to the start of work this subcontractor shall hold a pre-construction meeting with the Contractor's superintendent to review all contract scope of work, submittals, safety procedures, sequencing and durations of the work, and coordination with other trades. Meeting is to be attended by Subcontractor's site supervisor who is to be responsible for maintaining all jobsite work and safety requirements.
41. Complete the enclosed Application for Payment and submit by the 15th of every month. You may project your work in place through the 25th. Contractor agrees to bi-monthly payments.
42. Subcontractor includes simultaneous work progress on two buildings sections at a time, staggered.

**DURATION:**



Initial _____ Initial _____
Sub          Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**1)    CONTRACT DOCUMENTS.** The "Contract Documents" include 1) this Subcontract Agreement and all documents attached hereto as Exhibits; 2) all documents which comprise the Contract between the Owner and CONTRACTOR; 3) all General Conditions, Supplementary Conditions and other conditions applicable to the Project; 4) the Plans and Drawings prepared for the Project; 5) the Project Manual or Specifications, including but not limited to Specification Divisions 1 through 16; 6) all bulletins and addenda issued in connection with the Project; 7) all standards, requirements or conditions incorporated into the Contract Documents by reference; and 8) any amendments, modifications, or changes to any or all of those documents identified in (1) – (7) which may occur during the Project. No other documents except those identified herein shall be considered Contract Documents. In the event of conflict, inconsistencies, variations between the provisions of the Subcontract Agreement and any other Contract Documents, including the Contract between the Owner and CONTRACTOR, the Subcontract Agreement shall govern. SUBCONTRACTOR and its sub-subcontractors and suppliers shall be bound to CONTRACTOR by all of the provisions of the Contract Documents and shall strictly comply therewith in all respects. SUBCONTRACTOR shall perform Subcontract Work under the general direction of CONTRACTOR and shall cooperate with CONTRACTOR so CONTRACTOR may fulfill obligations to Owner. A. This subcontractor agrees to specifically adhere to the requirements of Division 00 and 01 of the specifications. As the CONTRACTOR and SUBCONTRACTOR have been party to the design and engineering of the project, they have a thorough knowledge of the Contract Documents. Therefore, the SUBCONTRACTOR accepts full responsibility for the completeness and coordination of its scope of Work as to ensure quality installation and product. Any material, assembly, device, detail, component, and/or means/method which may not necessarily be shown on the Contract Documents but is required to make the project complete and suitable for its intended purpose shall be the SUBCONTRACTOR's sole responsibility without any adjustment to the subcontract amount.

**1a)    Drawing Log**

| | | FUTURA AT NONA COVE 10.16.19 | | |
|---|---|---|---|---|
| Discipline | Drawing No. | Drawing Title | Revision | Drawing Date |
| Civil | C0 | CIVIL DATA AND NOTES SHEET | 3 | 6/15/2020 |
| Civil | C1.0 | OVERALL SITE PLAN | 2 | 6/15/2020 |
| Civil | C1.1 | DEMOLITION PLAN | 2 | 6/15/2020 |
| Civil | C2.0 | SITE DIMENSION PLAN | 3 | 6/15/2020 |
| Civil | C2.1 | EMERGENCY & SOLID WASTE AUTO TURN ANALYSIS | 2 | 6/15/2020 |
| Civil | C3.0 | SITE UTILITY PLAN | 8 | 6/26/2020 |
| Civil | C4.0 | GRADING AND DRAINAGE PLAN | 2 | 6/15/2020 |
| Civil | C4.1A | CIVIL DATA AND NOTES SHEET | 1 | 6/15/2020 |
| Civil | C4.1B | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.1C | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.2 | COURTYARD & POOL AREA GRADING PLANS | 1 | 6/15/2020 |
| Civil | C4.3A | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3B | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3C | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C5.0 | SWPP PLAN | 3 | 6/15/2020 |
| Civil | C6 | CONSTRUCTION DETAILS | 4 | 6/15/2020 |
| Civil | C7 | OUC STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | C8 | OUC DETAILS/CITY OF ORLANDO STANDARD NOTES | 4 | 6/15/2020 |
| Civil | C9 | OCU SEWER STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | CV | COVER SHEET | 7 | 6/26/2020 |
| Radon | R1.0 | UNITS S1-A2 | 0 | 11/15/2019 |
| Radon | R2.0 | UNITS A3 – B1 | 0 | 11/15/2019 |



Initial Sub    —DS   HS

Initial Contractor    —DS   BLA

**Alterations to this Agreement are Prohibited**

## Standard Short Form Agreement Between Contractor and Subcontractor

| Radon | R3.0 | UNITS B2 - B3 | 0 | 11/15/2019 |
|---|---|---|---|---|
| Radon | R4.0 | UNITS C1-C2 | 0 | 11/15/2019 |
| Radon | R5.0 | CLUBHOUSE | 0 | 11/15/2019 |
| Architectural | A0.01 | PROJECT COVER SHEET | 5 | 7/31/2020 |
| Architectural | A0.02 | PROJECT INDEX OF DRAWINGS | 11 | 8/12/2020 |
| Architectural | A0.02a | DESIGN ASSUMPTIONS | 1 | 5/16/2019 |
| Architectural | A0.03 | PROJECT INDEX OF DRAWINGS | 6 | 7/31/2020 |
| Architectural | A0.04 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.05 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.06 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.07 | PROJECT DATA SHEET | 1 | 7/31/2020 |
| Architectural | A0.08 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.10 | ARCHITECTURAL SITE PLAN | 4 | 7/31/2020 |
| Architectural | A0.11 | OVERALL BUILDING FIRST FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.12 | OVERALL BUILDING SECOND FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.13 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.21 | OVERALL CLUBHOUSE OCCUPANCY PLAN | 4 | 7/31/2020 |
| Architectural | A0.31 | FIRST FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.32 | SECOND FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.33 | UPPER FLOORS SEQUENCE PLANS | 3 | 7/31/2020 |
| Architectural | A0.41 | OVERALL BUILDING GROUND FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.42 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.43 | OVERALL BUILDING SIXTH FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.44 | OVERALL BUILDING TYPICAL ROOF LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A1.00 | OVERALL BUILDING SLAB CONTROL PLAN | 3 | 7/31/2020 |
| Architectural | A1.01 | OVERALL BUILDING FIRST FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.02 | OVERALL BUILDING SECOND FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.03 | OVERALL BUILDING THIRD FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.04 | OVERALL BUILDING FOURTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.05 | OVERALL BUILDING FIFTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.06 | OVERALL BUILDING ROOF CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.11A | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11B | PARTIAL FIRST FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.11C | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11D | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11E | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11F | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12A | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12B | PARTIAL SECOND FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.12C | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |



Initial Sub _HS_    Initial Contractor _BLA_

**Alterations to this Agreement are Prohibited**

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Architectural | A1.12D | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A1.12E | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12F | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13A | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13B | PARTIAL THIRD FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.13C | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13D | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13E | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13F | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14A | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14B | PARTIAL FOURTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.14C | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14D | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14E | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14F | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15A | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15B | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.15C | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15D | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15E | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15F | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16A | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16B | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16C | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16D | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16E | PARTIAL ROOF PLAN BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16F | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.21 | FIRST FLOOR GARAGE PLAN | 7 | 7/31/2020 |
| Architectural | A1.22 | SECOND FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.23 | THIRD FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.24 | FOURTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.25 | FIFTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.26 | SIXTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.27 | ROOF LEVEL GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.28 | ROOF LEVEL GARAGE SLAB PLAN | 3 | 7/31/2020 |
| Architectural | A2.01 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.02 | OVERALL BUILDING ELEVATIONS | 6 | 7/31/2020 |
| Architectural | A2.03 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.04 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.05 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.06 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Architectural | A2.07 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A2.08 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.09 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.11 | PARTIAL ENLARGED BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A3.11 | TYPICAL CLUB BUILDING SECTION | 1 | 7/31/2020 |
| Architectural | A3.21 | TYPICAL GARAGE BUILDING SECTION | 3 | 7/31/2020 |
| Architectural | A4.01 | UNIT S1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02 | UNIT A1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02A | UNIT A1 PLAN | 2 | 7/31/2020 |
| Architectural | A4.03 | UNIT A2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.04 | UNIT A3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.05 | UNIT B1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.06 | UNIT B2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.07 | UNIT B3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.08 | UNIT C1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.21 | CLUB PLAN FIRST FLOOR DIMENSIONS | 7 | 8/12/2020 |
| Architectural | A4.22 | CLUB PLAN SECOND FLOOR DIMENSIONS | 5 | 7/31/2020 |
| Architectural | A4.23 | CLUB PLAN FIRST FLOOR NOTES | 4 | 8/12/2020 |
| Architectural | A4.24 | CLUB PLAN SECOND FLOOR NOTES | 4 | 7/31/2020 |
| Architectural | A4.25 | ENLARGED MAIL ROOM | 3 | 7/31/2020 |
| Architectural | A4.31 | ENLARGED GARAGE PLANS | 4 | 7/31/2020 |
| Architectural | A4.32 | ENLARGED CLOSET PLANS | 2 | 7/31/2020 |
| Architectural | A4.33 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.34 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.35 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.36 | ENLARGED TRASH AND RECYCLING PLANS | 2 | 7/31/2020 |
| Architectural | A4.71 | ACCESSIBILITY REQUIREMENTS DWELLING UNITS | 2 | 7/31/2020 |
| Architectural | A4.72 | ACCESSIBILITY REQUIREMENT PUBLIC SPACES | 2 | 7/31/2020 |
| Architectural | A4.81 | ENLARGED UNIT ACCESSIBILITY PLANS | 3 | 7/31/2020 |
| Architectural | A4.91 | INTERIOR ELEVATIONS UNITS | 3 | 7/31/2020 |
| Architectural | A4.92 | INTERIOR ELEVATIONS UNITS | 1 | 7/31/2020 |
| Architectural | A5.01 | APARTMENT BUILDING WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.02 | GARAGE WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.11 | TYPICAL EXTERIOR WALL SECTIONS | 3 | 7/31/2020 |
| Architectural | A5.21 | TYPICAL TENANT WALL SECTIONS | 4 | 7/31/2020 |
| Architectural | A5.22 | TYPICAL TENANT WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.31 | TYPICAL BALCONY WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.41 | GARAGE WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.01 | STAIR PLANS | 2 | 7/31/2020 |
| Architectural | A6.02 | STAIR SECTIONS | 3 | 7/31/2020 |
| Architectural | A6.03 | STAIR SECTION AND PLAN | 1 | 7/31/2020 |

Initial _HS_ Sub    Initial _BLA_ Contractor    **Alterations to this Agreement are Prohibited**    Page 8 of 46

## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Architectural | A6.04 | STAIR SECTION AND PLANS | 2 | 7/31/2020 |
| Architectural | A6.11 | TYPICAL STAIR DETAILS | 2 | 7/31/2020 |
| Architectural | A6.12 | PRECAST STAIR DETAILS | 1 | 7/31/2020 |
| Architectural | A6.21 | ELEVATOR PLAN AND SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.41 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.42 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A7.01 | DOOR SCHEDULE | 4 | 7/31/2020 |
| Architectural | A7.02 | WINDOW SCHEDULE | 4 | 8/12/2020 |
| Architectural | A7.03 | DOOR & WINDOW INSTALLATION DETAILS | 3 | 7/31/2020 |
| Architectural | A7.11 | TYPICAL DOOR DETAILS | 3 | 7/31/2020 |
| Architectural | A7.21 | TYPICAL WINDOW DETAILS | 3 | 7/31/2020 |
| Architectural | A7.22 | TYPICAL STOREFRONT DETAILS | 4 | 7/31/2020 |
| Architectural | A7.31 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.32 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.33 | TYPICAL ARCHITECTURAL DETAILS | 2 | 7/31/2020 |
| Architectural | A7.34 | TYPICAL ARCHITECTURAL DETAILS | 1 | 7/31/2020 |
| Architectural | A7.41 | TYPICAL WATERPROOFING & BALCONY FLASHING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.42 | TYPICAL WATERPROOFING DETAILS | 2 | 7/31/2020 |
| Architectural | A7.51 | TYPICAL ROOFING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.52 | TYPICAL ROOF DETAILS | 3 | 7/31/2020 |
| Architectural | A7.61 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.62 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.63 | TYPICAL FIRE CONTROL DETAILS | 4 | 7/31/2020 |
| Architectural | A7.71 | TYPICAL SOUND CONTROL DETAILS & NOTES | 3 | 7/31/2020 |
| Architectural | A7.81 | TYPICAL RADON CONTROL DETAILS & NOTES | 1 | 7/31/2020 |
| Architectural | A7.91 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.92 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.93 | TYPICAL GARAGE SIGN DETAILS | 1 | 7/31/2020 |
| Architectural | A7.94 | TYPICAL GARAGE PAINT AND SIGN DETAILS | 2 | 7/31/2020 |
| Architectural | A8.11 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.12 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.13 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.14 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.21 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.22 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.31 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.32 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.33 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.34 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.35 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.36 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |

Initial Sub: _HS_  Initial Contractor: _BLA_

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Architectural | BACK | PROJECT BACK SHEET | 1 | 7/31/2020 |
|---|---|---|---|---|
| Structural | S1.01 | STRUCTURAL GENERAL NOTES | 2 | 12/20/2019 |
| Structural | S1.02 | STRUCTURAL GENERAL NOTES | 1 | 10/16/2019 |
| Structural | S1.03 | GENERAL NOTES AND WIND DIAGRAMS | 2 | 2/24/2020 |
| Structural | S1.04 | SHEARWALL SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.05 | SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.06 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.07 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.11 | OVERALL BUILDING CONTROL PLAN - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11A | PARTIAL BUILDING PLAN - A - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11B | PARTIAL BUILDING PLAN - B - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11C | PARTIAL BUILDING PLAN - C - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11D | PARTIAL BUILDING PLAN - D - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11E | PARTIAL BUILDING PLAN - E - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11F | PARTIAL BUILDING PLAN - F - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.12 | OVERALL BUILDING CONTROL PLAN - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12A | PARTIAL BUILDING PLAN - A - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12B | PARTIAL BUILDING PLAN - B - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12C | PARTIAL BUILDING PLAN - C - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12D | PARTIAL BUILDING PLAN - D - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12E | PARTIAL BUILDING PLAN - E - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12F | PARTIAL BUILDING PLAN - F - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13 | OVERALL BUILDING CONTROL PLAN - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13A | PARTIAL BUILDING PLAN - A - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13B | PARTIAL BUILDING PLAN - B - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13C | PARTIAL BUILDING PLAN - C - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13D | PARTIAL BUILDING PLAN - D - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13E | PARTIAL BUILDING PLAN - E - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13F | PARTIAL BUILDING PLAN - F - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14 | OVERALL BUILDING CONTROL PLAN - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14A | PARTIAL BUILDING PLAN - A - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14B | PARTIAL BUILDING PLAN - B - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14C | PARTIAL BUILDING PLAN - C - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14D | PARTIAL BUILDING PLAN - D - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14E | PARTIAL BUILDING PLAN - E - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14F | PARTIAL BUILDING PLAN - F - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15 | OVERALL BUILDING CONTROL PLAN - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15A | PARTIAL BUILDING PLAN - A - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15B | PARTIAL BUILDING PLAN - B - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15C | PARTIAL BUILDING PLAN - C - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |



Initial _____ Initial _____
Sub            Contractor

**Alterations to this Agreement are Prohibited**          Page 10 of 46

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Structural | S1.15D | PARTIAL BUILDING PLAN - D - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
|---|---|---|---|---|
| Structural | S1.15E | PARTIAL BUILDING PLAN - E - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15F | PARTIAL BUILDING PLAN - F - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.16 | OVERALL BUILDING CONTROL PLAN - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16A | PARTIAL BUILDING PLAN - A - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16B | PARTIAL BUILDING PLAN - B - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16C | PARTIAL BUILDING PLAN - C - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16D | PARTIAL BUILDING PLAN - D - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16E | PARTIAL BUILDING PLAN - E - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16F | PARTIAL BUILDING PLAN - F - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.21 | FOUNDATION AND SLAB ON GRADE PLAN GARAGE | 3 | 5/20/2020 |
| Structural | S3.11 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.12 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.13 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.14 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.21 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.22 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.23 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.24 | SECTIONS AND DETAILS | 0 | 5/16/2019 |
| Structural | S3.31 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.32 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.41 | SECTIONS AND DETAILS | 1 | 5/20/2020 |
| Structural | S3.42 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.43 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.44 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Electrical | E0.01 | ELECTRICAL SYMBOLS LEGEND AND GENERAL NOTES | 3 | 8/12/2020 |
| Electrical | E0.10 | ELECTRICAL SITE PLAN | 4 | 5/4/2020 |
| Electrical | E0.11 | ELECTRICAL SITE LIGHTING PLAN | 4 | 8/12/2020 |
| Electrical | E0.12 | ELECTRICAL SITE PHOTOMETRIC PLAN | 2 | 4/15/2020 |
| Electrical | E1.11A | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Electrical | E1.11B | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 8/12/2020 |
| Electrical | E1.11C | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 4 | 8/12/2020 |
| Electrical | E1.11D | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.11E | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.11F | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.12A | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.12B | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.12C | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.12D | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |



Initial Sub _HS_    Initial Contractor _BLA_

**Alterations to this Agreement are Prohibited**

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Electrical | E1.12E | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART E | 3 | 2/24/2020 |
|---|---|---|---|---|
| Electrical | E1.12F | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.13A | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.13B | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.13C | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.13D | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.13E | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.13F | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.14A | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.14B | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.14C | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.14D | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.14E | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.14F | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.15A | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.15B | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.15C | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.15D | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.15E | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.15F | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.16A | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 2 | 8/12/2020 |
| Electrical | E1.16B | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 8/12/2020 |
| Electrical | E1.16C | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 8/12/2020 |
| Electrical | E1.16D | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 2 | 8/12/2020 |
| Electrical | E1.16E | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 2 | 8/12/2020 |
| Electrical | E1.16F | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 2 | 8/12/2020 |
| Electrical | E1.21 | GARAGE LEVEL 1 - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E1.22 | GARAGE LEVEL 2 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.23 | GARAGE LEVEL 3 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.24 | GARAGE LEVEL 4 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.25 | GARAGE LEVEL 5 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.26 | GARAGE LEVEL 6 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.27 | GARAGE LEVEL 7 - ROOF - ELECTRICAL | 2 | 2/24/2020 |
| Electrical | E4.01 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.02 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.03 | TYPICAL UNITS - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E4.04 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E4.05 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |



Initial Sub    **HS**    Initial Contractor    **BLA**

**Alterations to this Agreement are Prohibited**

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Electrical | E4.06 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
|---|---|---|---|---|
| Electrical | E5.01 | ELECTRICAL ONE LINE DIAGRAM | 4 | 5/4/2020 |
| Electrical | E6.01 | EQUIPMENT, PANEL FEEDER & UNIT SCHEDULES | 7 | 9/23/2020 |
| Electrical | E7.01 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.02 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.03 | ELECTRICAL SCHEDULES | 1 | 2/24/2020 |
| Electrical | E8.01 | ELECTRICAL DETAILS | 2 | 2/24/2020 |
| Electrical | E8.02 | ELECTRICAL DETAILS | 2 | 12/20/2019 |
| Plumbing | P0.01 | PLUMBING SYMBOLS LEGEND AND GENERAL NOTES | 2 | 5/20/2020 |
| Plumbing | P1.01A | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.01B | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.01C | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.01D | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.01E | CONDENSATE PARTIAL BUILDING PLAN - FIRST PART E | 0 | 10/16/2019 |
| Plumbing | P1.01F | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 0 | 10/16/2019 |
| Plumbing | P1.10 | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 5/16/2019 |
| Plumbing | P1.10A | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Plumbing | P1.10B | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 4/15/2020 |
| Plumbing | P1.10C | UNDERGROUND PARTIAL BUILDING PLAN - FLOOR PART C | 3 | 8/12/2020 |
| Plumbing | P1.10D | UNDERGROUND PARTIAL BULDING FIRST FLOOR PART D | 2 | 12/20/2019 |
| Plumbing | P1.10E | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.10F | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 8/12/2020 |
| Plumbing | P1.11A | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
| Plumbing | P1.11B | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 12/20/2019 |
| Plumbing | P1.11C | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 8/12/2020 |
| Plumbing | P1.11D | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.11E | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.11F | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 8/12/2020 |
| Plumbing | P1.12A | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Plumbing | P1.12B | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.12C | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.12D | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.12E | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.12F | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.13A | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.13B | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.13C | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.13D | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 0 | 10/16/2019 |

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Plumbing | P1.13E | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.13F | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.14A | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.14B | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.14C | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.14D | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.14E | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.14F | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.15A | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.15B | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.15C | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.15D | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.15E | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.15F | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.16A | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART A | 0 | 10/16/2019 |
| Plumbing | P1.16B | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART B | 0 | 10/16/2019 |
| Plumbing | P1.16C | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART C | 0 | 10/16/2019 |
| Plumbing | P1.16D | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART D | 0 | 10/16/2019 |
| Plumbing | P1.16E | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART E | 0 | 10/16/2019 |
| Plumbing | P1.16F | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART F | 1 | 8/12/2020 |
| Plumbing | P1.21 | GARAGE LEVEL 1 - PLUMBING | 4 | 5/29/2020 |
| Plumbing | P1.22 | GARAGE LEVEL 2 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.23 | GARAGE LEVEL 3 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.24 | GARAGE LEVEL 4 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.25 | GARAGE LEVEL 5 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.26 | GARAGE LEVEL 6 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.27 | GARAGE ROOF LEVEL - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P4.01 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.02 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.03 | ENLARGED PLUMBING PLANS | 1 | 12/20/2019 |
| Plumbing | P5.01 | PLUMBING RISER DIAGRAMS | 2 | 8/12/2020 |
| Plumbing | P5.02 | PLUMBING RISER DIAGRAMS | 1 | 8/12/2020 |
| Plumbing | P5.03 | GARAGE STORM SYSTEM RISER DIAGRAMS | 0 | 5/29/2020 |
| Plumbing | P8.01 | PLUMBING DETAILS | 1 | 10/16/2019 |
| Plumbing | P8.02 | PLUMBING DETAILS | 0 | 10/16/2019 |
| Mechanical | M0.01 | MECHANICAL SYMBOLS LEGEND AND GENERAL NOTES | 1 | 10/16/2019 |
| Mechanical | M1.11A | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
| Mechanical | M1.11B | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.11C | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 3 | 8/12/2020 |
| Mechanical | M1.11D | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.11E | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 12/20/2019 |

Initial _HS_ Sub    Initial _BLA_ Contractor    **Alterations to this Agreement are Prohibited**    Page 14 of 46

## Standard Short Form Agreement Between Contractor and Subcontractor

| Mechanical | M1.11F | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 12/20/2019 |
|---|---|---|---|---|
| Mechanical | M1.12A | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.12B | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.12C | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.12D | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.12E | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.12F | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.13A | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.13B | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.13C | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.13D | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.13E | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.13F | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.14A | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.14B | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.14C | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.14D | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.14E | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.14F | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.15A | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.15B | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.15C | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.15D | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.15E | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.15F | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.16A | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 3 | 8/12/2020 |
| Mechanical | M1.16B | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 12/20/2019 |
| Mechanical | M1.16C | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 12/20/2019 |
| Mechanical | M1.16D | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 3 | 8/12/2020 |
| Mechanical | M1.16E | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 3 | 8/12/2020 |
| Mechanical | M1.16F | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 3 | 8/12/2020 |
| Mechanical | M1.21 | GARAGE LEVEL 1 - MECHANCIAL | 1 | 2/24/2020 |
| Mechanical | M1.22 | GARAGE LEVEL 2 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.23 | GARAGE LEVEL 3 - MECHANCIAL | 0 | 10/16/2019 |



Initial Sub    Initial Contractor    **Alterations to this Agreement are Prohibited**    Page 15 of 46

## Standard Short Form Agreement Between Contractor and Subcontractor

| Mechanical | M1.24 | GARAGE LEVEL 4- MECHANCIAL | 0 | 10/16/2019 |
|---|---|---|---|---|
| Mechanical | M1.25 | GARAGE LEVEL 5 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.26 | GARAGE LEVEL 6 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.27 | GARAGE ROOF - MECHANICAL | 1 | 2/24/2020 |
| Mechanical | M4.01 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.02 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.03 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M6.01 | MECHANICAL SCHEDULES | 2 | 12/20/2019 |
| Mechanical | M7.01 | MECHANICAL DETAILS | 2 | 2/24/2020 |
| Mechanical | M7.02 | MECHANICAL DETAILS | 1 | 10/16/2019 |
| Mechanical | M7.03 | MECHANICAL DETAILS | 1 | 2/24/2020 |
| Fire Protection | F0.01 | FIRE PROTECTION SYMBOLS AND SPECIFICATIONS | 2 | 4/15/2020 |
| Fire Protection | F1.11A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 2/24/2020 |
| Fire Protection | F1.11B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 2/24/2020 |
| Fire Protection | F1.11C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 2/24/2020 |
| Fire Protection | F1.11D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 2/24/2020 |
| Fire Protection | F1.11E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 2/24/2020 |
| Fire Protection | F1.11F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 2/24/2020 |
| Fire Protection | F1.12A | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.12B | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.12C | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.12D | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.12E | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.12F | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.13A | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.13B | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.13C | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.13D | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.13E | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.13F | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 2/24/2020 |



Initial Sub    Initial Contractor    **Alterations to this Agreement are Prohibited**    Page 16 of 46

## Standard Short Form Agreement Between Contractor and Subcontractor

| Fire Protection | F1.14A | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
|---|---|---|---|---|
| Fire Protection | F1.14B | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Fire Protection | F1.14C | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Fire Protection | F1.14D | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Fire Protection | F1.14E | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Fire Protection | F1.14F | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 0 | 10/16/2019 |
| Fire Protection | F1.15A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.15B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.15C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.15D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.15E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.15F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.21 | GARAGE LEVEL 1 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.22 | GARAGE LEVEL 2 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.23 | GARAGE LEVEL 3 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.24 | GARAGE LEVEL 4 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.25 | GARAGE LEVEL 5 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.26 | GARAGE LEVEL 6 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F6.01 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Fire Protection | F6.02 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Low Voltage | T-000 | LOW VOLTAGE NOTES AND LEGENDS | 1 | 4/1/2020 |
| Low Voltage | T-100 | FIRST FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-100A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-101 | SECOND FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-102 | THIRD FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-103 | FOURTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |



Initial Sub   Initial Contractor

**Alterations to this Agreement are Prohibited**

## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Low Voltage | T-104 | FIFTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-105 | ROOF PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-106 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-107 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-108 | LOW VOLTAGE UNIT DISTRIBUTION PANEL | 1 | 4/1/2020 |
| Low Voltage | T-200 | FIRST FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-201 | SECOND FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-202 | THIRD FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-203 | FOURTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-204 | FIFTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-205 | SIXTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300 | FIRST FLOOR PLAN LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-302 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-303 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-400 | FIRST FLOOR PLAN LOW VOLTAGE A/V | 0 | 12/20/2019 |
| Low Voltage | T-400A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-500 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (MDF) | 1 | 4/1/2020 |
| Low Voltage | T-501 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 1A & IDF 1B) | 1 | 4/1/2020 |
| Low Voltage | T-502 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3A & IDF 5A) | 1 | 4/1/2020 |
| Low Voltage | T-503 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3B & IDF 5B) | 1 | 4/1/2020 |
| Low Voltage | T-504 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3C & IDF 5C) | 1 | 4/1/2020 |
| Low Voltage | T-600 | LOW VOLTAGE CONNECTIVITY DIAGRAM (UNIT) | 0 | 12/20/2019 |
| Low Voltage | T-601 | LOW VOLTAGE CONNECTIVITY DIAGRAM (ACCESS CONTROL) | 0 | 12/20/2019 |
| Low Voltage | T-602 | LOW VOLTAGE CONNECTIVITY DIAGRAM (SURVEILLANCE) | 0 | 12/20/2019 |
| Interior | ID-0.00 | COVER SHEET | 1 | 5/8/2020 |
| Interior | ID-0.01 | PLAN KEY | 3 | 5/8/2020 |
| Interior | ID-0.02 | GENERAL NOTES | 3 | 5/8/2020 |
| Interior | ID-0.03 | LEGENDS & ABBREVIATIONS | 2 | 5/8/2020 |
| Interior | ID-0.04 | OVERALL FLOOR PLAN FIRST FLOOR | 2 | 5/8/2020 |
| Interior | ID-0.05 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.06 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.07 | OVERALL FLOOR PLAN FIFTH FLOOR | 2 | 5/8/2020 |



Initial Sub    Initial Contractor

**Alterations to this Agreement are Prohibited**

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.00 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.01 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.02 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.03 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.04 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.05 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.06 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.07 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.08 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.09 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.10 | INTERIOR PLAN FIRST & FIFTHFLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.11 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.12 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.13 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.14 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.15 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.16 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.17 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.18 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.19 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.20 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.21 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.22 | FLOOR COVERING PLAN FIRST & FIFTH FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.23 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.24 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.25 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.26 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.27 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.28 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.29 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.30 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.31 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.32 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.33 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.34 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.35 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.36 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.37 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.38 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.39 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.40 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |

Initial Sub: _HS_   Initial Contractor: _BLA_     **Alterations to this Agreement are Prohibited**     Page 19 of 46

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Interior | ID-1.41 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.42 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.43 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.44 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.45 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.46 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.47 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.48 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.49 | REFLECTED CEILING PLAN FIRST FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.50.0 | FURNITURE PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.50.1 | FURNITURE PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.51 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.52 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.53 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.54 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.55 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.56 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.57 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.58 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.59 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.0 | FLOOR COVERING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.1 | FLOOR COVERING PLAN 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.61 | FLOOR COVERING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.62 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.63 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.64 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.65 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.66 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.67 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.68 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.69 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.0 | ELECTRICAL PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.1 | ELECTRICAL PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.71 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.72 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.73 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.74 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.75 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.76 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.77 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.78 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |

Initial Sub _HS_   Initial Contractor _BLA_   **Alterations to this Agreement are Prohibited**

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.79 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
|----------|---------|------------------------------------------|---|----------|
| Interior | ID-1.80.0 | REFLECTED CEILING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.80.1 | REFLECTED CEILING PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.81 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.82 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.83 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.84 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.85 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.86 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.87 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.88 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.89 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.90 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.91 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.92 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.93 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-2.00 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.01 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.02 | INTERIOR ELEVATIONS SALES OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.03 | INTERIOR ELEVATIONS CORRIDOR 1 | 2 | 5/8/2020 |
| Interior | ID-2.04 | INTERIOR ELEVATIONS CONF. RM. / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.05 | INTERIOR ELEVATIONS CONF. RM / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.06 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.07 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.08 | INTERIOR ELEVATIONS MEDIA THEATRE | 2 | 5/8/2020 |
| Interior | ID-2.09 | INTERIOR ELEVATIONS FITNESS | 2 | 5/8/2020 |
| Interior | ID-2.10 | INTERIOR ELEVATIONS YOGA | 2 | 5/8/2020 |
| Interior | ID-2.11 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.12 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.13 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.14 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.15 | INTERIOR ELEVATIONS CORRIDOR 2 | 2 | 5/8/2020 |
| Interior | ID-2.16 | INTERIOR ELEVATIONS CORRIDOR 3 | 2 | 5/8/2020 |
| Interior | ID-2.17 | INTERIOR ELEVATIONS CORRIDOR 4 | 2 | 5/8/2020 |
| Interior | ID-2.18 | INTERIOR ELEVATIONS CORRIDOR 5 | 2 | 5/8/2020 |
| Interior | ID-2.19 | INTERIOR ELEVATIONS CORRIDOR 6 | 2 | 5/8/2020 |
| Interior | ID-2.20 | INTERIOR ELEVATIONS CORRIDOR 7 | 2 | 5/8/2020 |
| Interior | ID-2.21 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.22 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.23 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.24 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |

Initial Sub _MS_   Initial Contractor _BLA_   **Alterations to this Agreement are Prohibited**

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Interior | ID-2.25 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.26 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.27 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.28 | INTERIOR ELEVATIONS CORRIDOR 11 | 2 | 5/8/2020 |
| Interior | ID-2.29 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.30 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.31 | INTERIOR ELEVATIONS CORRIDOR 13 | 2 | 5/8/2020 |
| Interior | ID-2.32 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
| Interior | ID-2.33 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
| Interior | ID-2.34 | INTERIOR ELEVATIONS CORRIDOR 15 | 2 | 5/8/2020 |
| Interior | ID-2.35 | INTERIOR ELEVATIONS CORRIDOR 16 | 2 | 5/8/2020 |
| Interior | ID-2.36 | INTERIOR ELEVATIONS CORRIDOR 17 | 2 | 5/8/2020 |
| Interior | ID-2.37 | INTERIOR ELEVATIONS VESTIBULE 1 AND 2 | 2 | 5/8/2020 |
| Interior | ID-2.38 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.39 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.40 | INTERIOR ELEVATIONS VESTIBULE 4 AND 5 | 2 | 5/8/2020 |
| Interior | ID-2.41 | INTERIOR ELEVATIONS VESTIBULE 5 AND 6 | 2 | 5/8/2020 |
| Interior | ID-2.42 | INTERIOR ELEVATIONS VESTIBULE 7 AND 8 | 2 | 5/8/2020 |
| Interior | ID-2.43 | INTERIOR ELEVATIONS VESTIBULE 8, 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.44 | INTERIOR ELEVATIONS VESTIBULE 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.50 | INTERIOR ELEVATIONS MEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.51 | INTERIOR ELEVATIONS WOMEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.60 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.61 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.62 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-3.00 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.01 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.02 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.03 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.04 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-4.00 | SCHEDULES | 3 | 5/8/2020 |
| Interior | ID-4.01 | DOOR SCHEDULE | 2 | 5/8/2020 |
| Interior | ID-4.02 | SCHEDULES TYPICAL UNITS | 3 | 5/8/2020 |
| Hardscape | H-1 | SITE PLAN PHASE 2 | 6 | 5/22/2020 |
| Hardscape | H-2.1 | HARDSCAPE LABEL PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.2 | HARDSCAPE DIMENSION PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.3 | HARDSCAPE FINISHES PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-3.1 | HARDSCAPE LABEL PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.2 | HARDSCAPE DIMENSION PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.3 | HARDSCAPE FINISHES PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-4.1 | HARDSCAPE LABEL PLAN COURTYARD C | 6 | 5/22/2020 |

Initial _HS_ Sub     Initial _BLA_ Contractor     **Alterations to this Agreement are Prohibited**     Page 22 of 46

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Hardscape | H-4.2 | HARDSCAPE DIMENSION PLAN COURTYARD C | 6 | 5/22/2020 |
|---|---|---|---|---|
| Hardscape | H-4.3 | HARDSCAPE FINISHES PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-5.1 | HARDSCAPE LABEL PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.2 | HARDSCAPE DIMENSION PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.3 | HARDSCAPE FINISHES PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-6 | HARDSCAPE LABEL PLAN | 3 | 5/16/2019 |
| Hardscape | H-6.1 | HARDSCAPE LABEL PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.2 | HARDSCAPE DIMENSION PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.3 | HARDSCAPE DIMESION PLAN | 6 | 5/22/2020 |
| Hardscape | H-7 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-8 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-9 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-10 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-11 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-12 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-13 | HARDSCAPE DETAILS | 8 | 8/31/2020 |
| Hardscape | H-14 | HARDSCAPE SPECIFICATIONS | 6 | 5/22/2020 |
| Landscape | L-1 | SITE PLAN PHASE 2 | 8 | 5/22/2020 |
| Landscape | L-2 | TREE DISPOSITION PLAN PHASE 2 | 8 | 5/14/2020 |
| Landscape | L-3 | TREE DISPOSITION PLAN PH 2 | 7 | 5/14/2020 |
| Landscape | L-4 | TREE DISPOSITION SCHEDULE PH 2 | 8 | 5/14/2020 |
| Landscape | L-5 | LANDSCAPE PLAN | 7 | 5/22/2020 |
| Landscape | L-6 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-7 | LANDSCAPE PLAN | 5 | 5/22/2020 |
| Landscape | L-8 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-9 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-10 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-11 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-12 | LANDSCAPE SPECIFICATIONS | 3 | 5/22/2020 |
| Landscape | L-13 | LANDSCAPE SPECIFICATIONS | 0 | 5/16/2019 |
| Landscape | LI-1 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-2 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-3 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LLP-1 | SITE PLAN PHASE 2 | 2 | 5/22/2020 |
| Landscape | LLP-2 | LANDSCAPE LIGHTING PLAN | 3 | 5/22/2020 |
| Landscape | LLP-3 | LANDSCAPE LIGHT PLAN | 3 | 5/22/2020 |
| Landscape | LLP-4 | LANDSCAPE LIGHTING PLAN SCHEDULE | 3 | 5/22/2020 |
| Landscape | LLP-5 | LANDSCAPE LIGHT PLAN SPECIFICATIONS | 2 | 5/22/2020 |
| Surveys | 1 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 2 | 7/11/2019 |
| Surveys | 2 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 4 | 6/15/2020 |

## Standard Short Form Agreement Between Contractor and Subcontractor

Architect:
Charlan Brock & Associates


Engineer:
Z Development Services
708 E. Colonial Drive Suite 100
Orlando, Florida 32803

Architect of Record:
Doug Anderson
1770 Fennell Street
Maitland, Florida 32751

Civil Engineer:
Z Development Services
708 E. Colonial Drive Suite 100
Orlando, Florida 32803

Structural Engineer:
John Bailes
1035 South Semoran Blvd
Winter Park, Florida 32792

Landscape Architect:
Aaron Mastin
101 SE 2nd Ave
Delray Beach, Florida 33444

Hardscape Architect:
Aaron Mastin
101 SE 2nd Ave
Delray Beach, Florida 33444

Interior Design:
Jorge Garcia
4700 Riverside Drive, Suite 100
Palm Beach Gardens, Florida 33410


**EXHIBITS.** As applicable, the following Exhibits are incorporated by reference and made part of this Agreement:

EXHIBIT A:     Schedule of Values
EXHIBIT B:     Insurance
EXHIBIT C:     HUD Supplemental Conditions
EXHIBIT D:     HUD Identity of Interest Disclosure Requirement
EXHIBIT E:     HUD Prevailing Wage Acknowledgement

**1.1     SUBCONTRACTOR IS AN INDEPENDENT CONTRACTOR.** SUBCONTRACTOR is an independent contractor and shall, at its sole cost and expense, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the Work. SUBCONTRACTOR shall have sole responsibility for the means and methods of performing the Work required under this Subcontract. SUBCONTRACTOR is responsible for securing timely inspections and approvals of its Work from all such authorities as required by the Contract Documents. All inspections must be coordinated with CONTRACTOR. SUBCONTRACTOR must obtain and pay for all necessary permits and licenses, including business licenses; pay all fees, manufacturer's taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and unemployment or disability insurance which are



Initial _____ Initial _____     **Alterations to this Agreement are Prohibited**     Page 24 of 46
Sub          Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. SUBCONTRACTOR must maintain proof that it has complied with all aspects of this Paragraph and shall make such proof available for review by CONTRACTOR at CONTRACTOR's request. SUBCONTRACTOR agrees that any penalty, charge, fine, or other assessment made on account of SUBCONTRACTOR or SUBCONTRACTOR's work be promptly paid in full by SUBCONTRACTOR. All of the SUBCONTRACTOR's Work shall be performed in strict accordance with the Occupational Safety and Health Act of 1970 and any other legislation enacted by federal, state, or local governing authorities or agencies. Additionally, SUBCONTRACTOR shall furnish a copy to CONTRACTOR the applicable Safety Data Sheets (SDS) for all hazardous materials or chemicals used in connection with or consumed or incorporated into this Project as required by the Hazard Communication Standard of the Occupational Safety and Health Administration (OSHA). The SUBCONTRACTOR shall report to the CONTRACTOR within one (1) day after an injury to an employee or agent of the SUBCONTRACTOR which occurs on the site.

**1.2A    SUBCONTRACTOR** shall not perform any labor services under this Subcontract with any persons or parties other than SUBCONTRACTOR's direct employees without first 1) providing CONTRACTOR with at least 24 hours prior written notice, and 2) providing CONTRACTOR with a copy of the agreement between SUBCONTRACTOR and any sub-subcontractor, employee leasing company, employee management company, labor supplier company, or individual ("third party labor provider") providing such labor at least 24 hours prior to beginning to perform the labor. SUBCONTRACTOR's failure to comply with these requirements shall be a material breach of the Subcontract allowing for termination of the Subcontract, and the CONTRACTOR will not be liable for payment of any labor costs of the third-party labor provider. Should the SUBCONTRACTOR be authorized to use a third-party labor provider on the project, the CONTRACTOR must receive written confirmation, via email, setting forth the specific names of each third-party labor provider employee onsite, the amount of the hours worked, and price per hour for each employee. This information must be received by 5:00 pm daily on same day that the third-party labor provider was onsite at the project. Failure to timely and completely provide this information will result in non-payment by the CONTRACTOR to the SUBCONTRACTOR for such third-party labor.

**1.3    QUALITY AND SCOPE OF WORK/FIELD VERIFICATIONS.** The Contract Documents are intended to and shall be considered to include all items which would normally be included in SUBCONTRACTOR's trade and are intended to include all Work that CONTRACTOR is called upon to perform under terms of its contract with Owner. The Plans and Specifications generally indicate the scope and quality of the work but are not represented as being free from errors or omissions and any work called for in the Specifications and not shown on the Plans, or vice versa, are to be furnished as if called for in both and, in addition SUBCONTRACTOR agrees that any and all work required and reasonably implied as necessary to complete the job, shall be furnished and installed by SUBCONTRACTOR without any additional cost. SUBCONTRACTOR shall notify CONTRACTOR in writing of any deviations from the Contract Documents. SUBCONTRACTOR's responsibility to conform to the Contract Documents is not relieved by Architect's or CONTRACTOR's review unless there is written acceptance of the specific deviations. SUBCONTRACTOR agrees not to modify, withdraw, or cancel any alternate bids, for ninety (90) days after receipt of bid. SUBCONTRACTOR shall provide its own layout and make its own measurements and shall guarantee the accuracy thereof and shall not rely on the measurements of any other party.

The SUBCONTRACTOR represents that it is licensed (if applicable) and fully qualified to perform the Work required by this Subcontract and acknowledges that it has, by careful examination satisfied itself as to: (a) the nature, location and character of the Job Site including, but not limited to, the surface and subsurface conditions of the land and all structures and obstructions thereon, both natural and manmade, surface water conditions of the Job Site and the surrounding area and, to the extent pertinent to the Work, all other conditions; (b) the nature, location and character of the general area in which the Job Site is located including, without limitation, its climatic conditions, the availability and cost of labor and the availability and cost of materials, tools and equipment; the quality and quantity of all material, supplies, tools, equipment, labor and services necessary to complete the Work in the manner required by the Contract Documents; and (c) all other matters or things which could in any manner affect the performance of the Work. The SUBCONTRACTOR recognizes and understands the physical and operational restrictions on carrying on of the Work in or about the Project and expressly agrees that such conditions have been accounted for in the Subcontract price. **By commencing its Work, SUBCONTRACTOR accepts the surface or substrate on which such work is placed and all adjacent work of earlier subcontractors and other areas that interface with or connect to the SUBCONTRACTOR's Work or otherwise affect SUBCONTRACTOR's Work. The SUBCONTRACTOR shall take such measurements as will insure the proper matching and placement of the Work under this Subcontract and is otherwise responsible for compliance with the intent of the Contract Documents. The SUBCONTRACTOR shall immediately notify CONTRACTOR and the Architect of any unacceptable conditions or deviations from contract requirements**

## Standard Short Form Agreement Between Contractor and Subcontractor

affecting its Work and shall notify CONTRACTOR and Architect of any discrepancies or conflicts in the Contract Documents before performing its Work and shall be responsible for all costs resulting from its failure to do so. Any SUBCONTRACTOR that installs his work attached to an unacceptable substrate without written notification to CONTRACTOR shall bear the costs of removal and replacement of his work. All Work shall be done in a good and workmanlike manner and all material shall be new and of specified grade, and all Work and material shall be furnished and installed in compliance with the requirements of the institutions making the construction and permanent mortgages on the property and all governmental or other authorities having jurisdiction thereof.

Prior to starting any field work, the SUBCONTRACTOR shall participate in a "SUBCONTRACTOR's Preparatory Meeting" with the CONTRACTOR at the jobsite, to thoroughly review the following items and procedures and sign-off as to the SUBCONTRACTOR's participation and understanding: (1) Subcontract Agreement & Exhibit "A", (2) possession of correct Drawings & Specifications, (3) SDS Sheets & OSHA Review, (4) Completed stamped and approved shop drawings & submittals, (5) required material installation procedures, and (6) Payment Procedures. SUBCONTRACTOR is solely responsible for its work being in full compliance with this Subcontract Agreement requirement. All subcontractors must attend project meetings that they are requested to attend (a two-day notice will be provided). Sending a laborer to a meeting will not count as a substitute. It must be an approved supervisor or an individual authorized to make decisions on behalf of your company. Subcontractors will be fined $250 for each meeting missed.

SUBCONTRACTOR is at all times to work ONLY from Drawings specifically issued by CONTRACTOR's Project Manager that identifies the documents as "For Construction". Under no circumstances is SUBCONTRACTOR to perform any work on the Project from any Drawings that do not include such identification. SUBCONTRACTOR is not to accept, process, bid, or perform any actual construction work based on any Drawings that have not been so identified by CONTRACTOR's Project Manager as described above. SUBCONTRACTOR shall be solely responsible for compliance with his requirement.

SUBCONTRACTOR jobsite supervisor shall submit Daily Reports (including manpower) to CONTRACTOR each day on separate forms provided by CONTRACTOR. Failure to provide these forms will be sufficient cause for CONTRACTOR to withhold payment until CONTRACTOR is provided with completed up-to-date reports.

**1.4    SUBMITTALS.** SUBCONTRACTOR shall promptly prepare or obtain and submit to CONTRACTOR in the quantity requested by CONTRACTOR, all shop and erection drawings, samples, product data, catalogue cuts, laboratory and inspection reports, and engineering calculations ("Submittals") required by the Contract Documents, or as may be necessary or appropriate to describe the details of the Work. All Submittals shall be submitted in a timely manner so as to permit the work to be performed in accordance with the Project Schedule. Neither review, nor approval, of Submittals by CONTRACTOR, Owner or Architect shall relieve SUBCONTRACTOR of its obligation to perform the Work in strict conformity with the Contract Documents or its responsibility for the proper matching of the Work to contiguous work. SUBCONTRACTOR shall identify each and every variance between any Submittals and the requirements of the Contract Documents at the time of transmission either prominently on the Submittal or specifically in a transmission letter accompanying the Submittal. No modification, revision or other notation on a Submittal that changes or modifies the Contract Documents shall be valid (even if the drawing or Submittal is approved) unless there is a Change Order issued approving same. No Work required or Work attaching to items requiring submittals or shop drawings shall be started by SUBCONTRACTOR until approved Submittals are returned to SUBCONTRACTOR. Materials ordered, fabricated, or installed prior to receipt of approved Submittals are at SUBCONTRACTOR's sole risk. All material submittals, shop drawings, affidavits, etc., that are required for your area of work need to be submitted to the CONTRACTOR within seven (7) days of signing your contract.

**3)    BONDS.** ~~SUBCONTRACTOR shall X furnish to CONTRACTOR, as Obligee, surety bonds to this Agreement, and through a surety mutually agreeable to CONTRACTOR and SUBCONTRACTOR, to secure faithful performance of Subcontract Work and to satisfy SUBCONTRACTOR payment obligations related to SUBCONTRACTOR's Work.~~

**4)    SAFETY AND CLEAN-UP.** To protect persons and property, SUBCONTRACTOR shall establish a safety program implementing safety measures, policies and standards conforming to (1) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (2) the requirements of this Agreement. SUBCONTRACTOR will abide by the Safety Program implemented by Portrait Construction of Florida attached as EXHIBIT "A".



Initial _____    Initial _____        **Alterations to this Agreement are Prohibited**        Page 26 of 46
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**5)    SUPERVISON.** SUBCONTRACTOR is required to designate a competent supervisor to oversee all SUBCONTRACTORs work for the duration of the project. SUBCONTRACTOR must submit name and qualification of SUBCONTRACTOR's English speaking supervisor to Portrait Construction of Florida's project superintendent for acceptance. CONTRACTOR's Superintendent will schedule the different trades, supervise all construction, and with the concurrence of CONTRACTOR's Project Manager, approve monthly draws. His opinion that the job's progress for SUBCONTRACTOR's phase of the work is on schedule is a condition precedent to CONTRACTOR's obligation to make progress payments to SUBCONTRACTOR. **SUBCONTRACTOR'S Supervisor is responsible for verifying all of his "Scope of Work" is properly performed, shall complete a thorough inspection of the work and determine any and all repairs, rework, punchlist & verify the remediation is complete. If at any point during construction, the CONTRACTOR'S Superintendent determines that the SUBCONTRACTOR'S Supervisor is not completing his work as outlined in the above, he may request in writing that the SUBCONTRACTOR enforce the requirements of the Supervisor or replace him.**

**6)    SCHEDULE.** Time is of the essence as to SUBCONTRACTOR's obligations under this Agreement. All SUBCONTRACTOR's Work shall commence and proceed as scheduled by the CONTRACTOR. All SUBCONTRACTOR's Work shall be of the highest quality, and in compliance with all governing laws, ordinances, codes, regulations and requirements. The CONTRACTOR shall prepare the schedule for performance of CONTRACTOR's Work (HEREINAFTER THE "Progress Schedule") and shall revise and update such schedule, as necessary, as CONTRACTOR's work progresses. Each revision of the Progress Schedule, upon issuance to this SUBCONTRACTOR, shall supersede previous schedules and shall become part of this Agreement. SUBCONTRACTOR shall provide CONTRACTOR with any scheduling information proposed by SUBCONTRACTOR for Subcontract Work and submit any additional information or updates as requested by CONTRACTOR. SUBCONTRACTOR shall be bound by the Progress Schedule. Material procurement, shop fabrication and delivery must be coordinated by SUBCONTRACTOR, to ensure that the work is started and completed as required by the Progress Schedule.

The Subcontract price includes all overtime as required including Saturdays, Sundays, and holidays in order to maintain the Progress Schedule. Failure by this SUBCONTRACTOR to meet all obligations necessary to maintain the Progress Schedule dates will result in SUBCONTRACTOR being assessed appropriate damages and losses incurred by the CONTRACTOR. The CONTRACTOR shall have the rights to (1) expand, update and revise the Progress Schedule as necessary to correspond to project conditions and changes in order to ensure the overall completion date, and (2) to determine and, if necessary, change the time, order and priority in which various portions of Subcontract Work shall be performed.

SUBCONTRACTOR accepts the risk of delays and acceleration caused by the rate of progress of the Work changing as directed by CONTRACTOR. The SUBCONTRACTOR acknowledges that the CONTRACTOR has made no warranties to the SUBCONTRACTOR, express or implied, that the SUBCONTRACTOR will be able to follow normal, orderly sequence in the performance of SUBCONTRACTOR's Work or that there will be no delays in, or interference with, the SUBCONTRACTOR's Work. The SUBCONTRACTOR shall be prepared to do its Work out of sequence in accordance with the requirements of the Project, when and if required by CONTRACTOR. The Contract Sum includes all overtime, increase in crew size, etc. as required, including Saturdays, Sundays, and Holidays, in order for the SUBCONTRACTOR to maintain its Work item time duration schedule.

**LIMITATION OF REMEDIES – NO DAMAGES FOR DELAY. The SUBCONTRACTOR's exclusive remedy for delays in the performance of the contract caused by events beyond its control, including delays claimed to be caused by the CONTRACTOR, Owner, Architect, or Engineer, or attributable to the CONTRACTOR, Owner, Architect, or Engineer and including claims based on breach of contract or negligence, shall be an extension of its contract time, and under no circumstances will SUBCONTRACTOR be entitled to any monetary claim or compensation.** Any claims for additional time by the SUBCONTRACTOR for delay must be submitted to the CONTRACTOR within the time and in the manner in which the CONTRACTOR must submit such claims to the Owner, and that failure to comply with the conditions for giving notice and submitting claims shall result in the waiver of such claims.

SUBCONTRACTOR is to perform work ONLY during specified authorized working hours as authorized in writing by the CONTRACTOR. Under no circumstances is SUBCONTRACTOR to perform ANY work or otherwise have any work crews present on the jobsite without the CONTRACTOR present. SUBCONTRACTOR is solely responsible for full compliance with this important Contract requirement.

## Standard Short Form Agreement Between Contractor and Subcontractor

SUBCONTRACTOR agrees to complete work segments within the performance time durations as listed below and overall Progress Schedule. SUBCONTRACTOR specifically acknowledges and agrees to these duration times including completion of all punch list requirements for its work – as necessary to achieve final acceptance of its work by the CONTRACTOR and Owner and includes in the Subcontract Price all necessary costs required to achieve completion within the listed times. Duration times are all in calendar days and include sufficient time as required to receive inspection approvals from all authorities having jurisdiction.

**7)     CHANGE ORDERS.** When CONTRACTOR orders in writing, SUBCONTRACTOR, without nullifying this Agreement, shall make any and all changes in Subcontract Work. No adjustments shall be made for any changes performed by SUBCONTRACTOR that have not been ordered by CONTRACTOR. **The Subcontract Price may only be modified by written change order signed by both parties. Authorization for any changed or extra work or costs whatsoever may be only made in writing signed by CONTRACTOR's Project Manager or Executive Officer. Contractor's Superintendent is not authorized to make any changes or issue any extra cost approvals to SUBCONTRACTOR either verbal or in writing. Any changes or extra costs attempted to be recovered by SUBCONTRACTOR based on any approvals or directives by CONTRACTOR's Superintendent or anyone else that is not CONTRACTOR's Project Manager or Executive Officer will not be recognized. The only CONTRACTOR representative authorized to approve additional scope and costs is the Project Manager or Executive Officer.** A Change Order is a written instrument prepared by CONTRACTOR and signed by SUBCONTRACTOR stating their agreement upon the change in Subcontract Work. In the event of a change in the work, the SUBCONTRACTOR's claim for adjustments in the contract sum are limited exclusively to its actual costs for such changes plus no more than 10% for overhead and 5% profit.

**8)     CHANGE ORDER ADJUSTMENTS.** In consideration for any adjustments in the time and the Subcontract Sum, SUBCONTRACTOR hereby releases CONTRACTOR and Owner from all claims, demands or causes of action arising out of the transactions, events and occurrences giving rise to the Change Order, including without limitation all direct and indirect costs and all schedule impacts.

**9)     PAYMENT.**     Bi-Monthly Payments have been approved for this Subcontract.

**9.1     SCHEDULE OF VALUES.** The schedule of values (SOV) is a condition of payment, per SOV detailed in Exhibit "A". SUBCONTRACTOR to provider progress invoicing per Exhibit "A"; and as provided by CONTRACTOR they may use the project Billing Invoice Tool in Procore.

**9.2     PROGRESS AND FINAL PAYMENTS.** Progress payments due to SUBCONTRACTOR, less retainage as specified herein, shall be made to SUBCONTRACTOR for Subcontract Work satisfactorily performed no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for SUBCONTRACTOR's Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for SUBCONTRACTOR's Work. These payments are not due if there is reason for withholding as specified herein and/or SUBCONTRACTOR has not satisfied all conditions precedent to payment specified herein.

**9.2.1     PROGRESS PAYMENTS.** Progress Payments due under the Subcontract will not be released until all of the following conditions have been met:

.1     Subcontract Agreement has been signed by SUBCONTRACTOR without modification and returned to CONTRACTOR;

.2     Proper Insurance Certificates have been received;

.3     CONTRACTOR's approval of SUBCONTRACTOR's Schedule of Values;

.4     SUBCONTRACTOR has presented to CONTRACTOR, for its approval, an Application for Payment and other documents required by Paragraph 10;

.5     Progress payments, less retainage, shall be made to SUBCONTRACTOR, for Subcontract Work satisfactorily performed, no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for Subcontract Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for Subcontract Work. These payments are subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or CONTRACTOR.



Initial ___ HS ___     Initial ___ BLA ___          **Alterations to this Agreement are Prohibited**          Page 28 of 46
Sub                Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

.6       CONTRACTOR's receipt in current funds from the Owner for the progress payments due the SUBCONTRACTOR. It shall be an express condition precedent to any obligation or liability of the CONTRACTOR to the SUBCONTRACTOR for any payment to the SUBCONTRACTOR that the CONTRACTOR is in receipt of payment in current funds from the Owner for the SUBCONTRACTOR's work. If the Owner has not paid the CONTRACTOR for any reason whatsoever, including the Owner's financial inability to pay or other reason not related to this SUBCONTRACTOR, the SUBCONTRACTOR agrees that the CONTRACTOR shall not be liable for payment and not be indebted to the SUBCONTRACTOR. The SUBCONTRACTOR assumes the credit risk of the Owner and agrees that it is relying on the Owner's credit and not that of the CONTRACTOR. The SUBCONTRACTOR further agrees that, as a portion of the consideration for the award of this Subcontract, he agrees to assume, and hereby assumes, the same risk as does the CONTRACTOR for non-payment by the Owner and accordingly, in the event that the Owner fails to pay the CONTRACTOR progress payments, interim payment, claims for increased work, claims for changed work, final payments, or any other form of payment otherwise due to the CONTRACTOR, the SUBCONTRACTOR shall be absolutely barred, estopped, and precluded from instituting any suit, arbitration or other claim against the CONTRACTOR or the Surety until and unless the Owner first pays the CONTRACTOR. In other words, payment by the Owner to the CONTRACTOR of sums necessary to pay the SUBCONTRACTOR is a condition precedent to CONTRACTOR's obligation to pay SUBCONTRACTOR and to the bringing of any lawsuit, arbitration or other claims by the SUBCONTRACTOR against the CONTRACTOR. If CONTRACTOR has provided payment or performance bonds or a combination payment and performance bond, the obligation of CONTRACTOR and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of CONTRACTOR's prior receipt of payment from the Owner for the progress payments due the SUBCONTRACTOR. This provision is incorporated by reference into any such bond or bonds.

.7       Any supplemental work provided b others for this scope of work has been paid in full.

**9.2.2    FINAL PAYMENT.** All conditions precedent of this Subcontract which apply to progress payments shall also apply to final payment. As additional express conditions precedent to SUBCONTRACTOR's entitlement to final payment, the SUBCONTRACTOR shall have fully performed all its Work in accordance with the Contract Documents, the Architect shall have issued a certificate for payment covering the SUBCONTRACTOR's completed Work, any certificates of occupation or certificates of completion required to be issued by any authority having jurisdiction shall have been issued, the CONTRACTOR shall have received payment from the Owner, the CONTRACTOR shall have received consent of SUBCONTRACTOR's surety to final payment (if any), and the SUBCONTRACTOR shall provide to the CONTRACTOR its Affidavit and Final Release of Lien/Claim, all final lien waivers from its sub-subcontractors and vendors, warranties, special warranties, all required executed warranty and guaranty documents, guarantees, parts lists, all maintenance and operations manuals, all close-out documents described in the Project Manual (Specification Book), Bid Package Book, and Addenda, two complete sets of "As-Built" prints acceptable to the CONTRACTOR (one hard copy and one electronic copy), and other Project close-out documents required by the Contract Documents. Should CONTRACTOR's close-out of the entire Project and receipt of final payment from Owner be delayed as a result of SUBCONTRACTOR's delay or failure to submit all such Project close-out documents relating to SUBCONTRACTOR's Work, SUBCONTRACTOR will be responsible for any costs and expenses and damages sustained by CONTRACTOR as a result of such delay or failure. Further, SUBCONTRACTOR's compliance with all other provisions of the Contract Documents is a condition precedent to SUBCONTRACTOR's right to final payment.

**9.3       STORED MATERIALS.** Payments for stored materials will only be made subject to the pre-approval, restrictions and requirements of Owner and CONTRACTOR. Payments will be made, less retainage and only to extent of monies received by CONTRACTOR from Owner, for the stored items under the Owner – CONTRACTOR Agreement. Payments to SUBCONTRACTOR will be made no sooner than ten days after the date payment for the stored materials is received by CONTRACTOR from Owner. In no case, will stored materials be paid for items other than those necessary to be on site to guarantee the progress of the Project and as specifically pre-approved by CONTRACTOR. SUBCONTRACTOR includes protection of all stored materials and safeguards necessary to insure adequate protection to the satisfaction of the CONTRACTOR and OWNER. SUBCONTRACTOR must provide a proper and secure storage facility for all stored material at its own expense. SUBCONTRACTOR must also provide satisfactory insurance coverage as required in Exhibit 'E' attached hereto and made part of this Subcontract. CONTRACTOR will not reimburse SUBCONTRACTOR for materials either misplaced, damaged, or stolen.

**9.4       PAYMENTS WITHHELD.** CONTRACTOR shall have the right to withhold and to reduce any payments to SUBCONTRACTOR for (a) any indebtedness owed by SUBCONTRACTOR to CONTRACTOR, (b) defective work not remedied or defective materials not removed and replaced, (c) third-party claims filed or reasonable evidence indicating

## Standard Short Form Agreement Between Contractor and Subcontractor

probable filing of such claims, (d) claimed failure of the SUBCONTRACTOR to make payments to its subcontractors, suppliers, or laborers, (e) reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract Price, (f) damage to CONTRACTOR or another subcontractor, (g) reasonable indication that the Work will not be completed within the Contract Time/CONTRACTOR's Progress Schedule, (h) unsatisfactory or untimely prosecution of the Work by the SUBCONTRACTOR, or (i) any failure by the SUBCONTRACTOR to comply with the Contract Documents. Items (a) – (i) shall be grounds for default under this Agreement as well. Independent of any other right hereunder, CONTRACTOR may deduct from any payments due or to become due SUBCONTRACTOR amounts equal to any claims asserted against SUBCONTRACTOR in connection with SUBCONTRACTOR's Work on this Project or on any other Project including, but not limited to, lien claims, bond claims, unpaid bills, defective work, incomplete work, and damage to the work of CONTRACTOR. When the basis for disapproval or withholding has been remedied, the SUBCONTRACTOR shall be paid the amounts withheld.

**9.5    JOINT CHECK PAYMENTS.** CONTRACTOR reserves the right to pay any obligations of SUBCONTRACTOR arising on this Project by checks made payable jointly or directly to SUBCONTRACTOR and/or its suppliers or its SUBCONTRACTORs, with any amounts so paid reducing the balance due SUBCONTRACTOR. Joint or direct payments made by CONTRACTOR do not relieve SUBCONTRACTOR of any obligation under this Subcontract.

**9.6    WAIVER OF CLAIMS.** Final payment shall constitute a waiver of all claims by SUBCONTRACTOR relating to Subcontract Work, but shall in no way relieve SUBCONTRACTOR of any liability to CONTRACTOR, including liability for warranties, or for nonconforming or defective work discovered after final payment.

## 10)    INDEMNITY.

**10.1**    The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, Architect, Engineer, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work, or any breach of or failure to comply with any of the provisions of this SUBCONTRACT or the Contract Documents by SUBCONTRACTOR.

**10.2**    The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work (regardless of cause or of any concurrent or contributing fault or negligence of CONTRACTOR, Owner, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of this Subcontract or the Contract Documents by SUBCONTRACTOR. The SUBCONTRACTOR's indemnification obligation to CONTRACTOR, Owner, and all of their agents, officers, and employees (the "Indemnitees"), for occurrences caused by the sole, contributory, or concurrent negligence of the Indemnitees shall be limited, on a per occurrence basis, to the greater of $1,000,000.00 (as prescribed by Florida Statute § 725.06), the price of this Subcontract, or the limits of liability of the insurance policies provided pursuant to this Agreement, which SUBCONTRACTOR acknowledges and agrees bears a reasonable commercial relationship to this Subcontract.

**10.3**    SUBCONTRACTOR and its surety, if any, hereby agrees to defend, indemnify, and hold harmless CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives from any loss or damage and to reimburse CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives for any and all claims, costs, and expenses, including but not limited to attorneys' fees, legal fees, expert witness fees, and court costs that CONTRACTOR, CONTRACTOR's surety and/or Owner may incur because of:

**10.3.1**    Claims and liens for labor performed or materials used or furnished through or under SUBCONTRACTOR for the Project;



Initial ___ Sub    Initial ___ Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**10.3.2** any personal injury, loss, damage or death to any person or persons and any property damage arising out of the performance or nonperformance of Work required in this Subcontract, including, without limitation, any personal injury or loss, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, SUBCONTRACTOR's indemnity hereunder shall not arise if such injury, loss, damage or death results from the gross negligence or willful, wanton or intentional misconduct of a party indemnified hereunder;

**10.3.3** SUBCONTRACTOR's failure or the failure of any of its employees to comply with any law, ordinance, rule, regulation or requirement, including, but not limited to, any Occupational Safety and Health Administration violations and any penalties, including enhancements, resulting in whole or in part by SUBCONTRACTOR's acts or omissions.

**10.4** CONTRACTOR, in its sole discretion, may defend any or all of the indemnified claims or tender to SUBCONTRACTOR the defense of any or all of the indemnified claims. Upon such tender by CONTRACTOR to SUBCONTRACTOR, SUBCONTRACTOR shall be obligated to assume the defense of CONTRACTOR in the indemnified claims, including the settlement negotiations, and shall pay and satisfy any and all settlements, judgments, sanctions, awards, or expenses, including attorneys' fees, resulting from or arising out of the indemnified claims without reimbursement from CONTRACTOR.

**10.5** If CONTRACTOR tenders the defense of an indemnified claim to SUBCONTRACTOR and SUBCONTRACTOR fails or neglects to assume that defense, CONTRACTOR may compromise or settle or defend any such action, and SUBCONTRACTOR shall be bound and obligated to reimburse CONTRACTOR for the amount expended by it in settling, compromising, or defending any such claim, or in the amount expended by CONTRACTOR in paying any settlement or judgment rendered therein, together with all reasonable attorneys' fees and expenses of litigation incurred by CONTRACTOR by reason of its defense, settlement, or compromise of such indemnified claims.

**10.6** Neither final payment by CONTRACTOR nor acceptance of the Work performed by SUBCONTRACTOR shall constitute a waiver of the foregoing indemnities, and notwithstanding any other provision contained in this Subcontract, the provisions of this paragraph shall survive the termination of this Subcontract.

**10.7** In any claims by any employee of the SUBCONTRACTOR, the SUBCONTRACTOR's sub-contractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, against any persons or entities indemnified hereunder the indemnification obligation shall not be limited as to the amount or type of damages, compensation, or benefits payable by or for the SUBCONTRACTOR or the SUBCONTRACTOR's sub-contractors under Workers' Compensation acts, disability benefit acts or other employee benefit acts.

### 11) CORRECTION OF WORK, DEFAULT, AND TERMINATION.

**11.1** **CORRECTION OF WORK.** SUBCONTRACTOR shall promptly correct all of SUBCONTRACTOR's Work rejected by CONTRACTOR, Architect or Owner as defective or failing to conform to the Contract Documents, whether observed before or after Substantial Completion. SUBCONTRACTOR shall bear all costs of correcting rejected work, including compensation for Architect's or CONTRACTOR's additional services, if required.

**11.2** **FAILURE OF PERFORMANCE.** Should SUBCONTRACTOR fail to satisfy contractual deficiencies or to commence and continue satisfactory correction of any default with diligence or promptness within three (3) working days from receipt of CONTRACTOR's written notice, then CONTRACTOR, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and charge the cost thereof to SUBCONTRACTOR, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees. In the event of an emergency affecting safety of persons or property, CONTRACTOR may proceed as above without notice.

**11.3** **TERMINATION BY OWNER.** Should Owner terminate its prime agreement with the CONTRACTOR or any part which includes SUBCONTRACTOR's Work, CONTRACTOR shall notify SUBCONTRACTOR in writing within three (3) days of termination and, upon written notification, this Agreement shall be terminated and SUBCONTRACTOR shall immediately stop Subcontract Work, follow all of CONTRACTOR's instructions, and mitigate all costs. In the event of Owner termination, CONTRACTOR liability to SUBCONTRACTOR shall be limited to the extent of CONTRACTOR recovery on SUBCONTRACTOR's behalf under the prime agreement.



Initial ____ MS ____    Initial ____ BLA ____    **Alterations to this Agreement are Prohibited**    Page 31 of 46
Sub                     Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**11.4   TERMINATION BY CONTRACTOR.** If SUBCONTRACTOR fails to commence and satisfactorily continue correction of a default within one (1) working day after written notification from CONTRACTOR, then CONTRACTOR may issue a second written notification, to SUBCONTRACTOR and its surety, if any. Such notice shall state that if SUBCONTRACTOR fails to commence and continue correction of a default within five (5) days of the written notification, the Agreement will be automatically terminated. CONTRACTOR may furnish those materials, equipment and/or employ such workers or replacement subcontractor(s) as CONTRACTOR deems necessary to maintain the orderly progress of CONTRACTOR's work. All costs incurred by CONTRACTOR in performing Subcontract Work, including damages, extended general conditions, liquidated damages, reasonable overhead, profit, and attorneys' fees, costs and expenses, shall be deducted from any monies due or to become due SUBCONTRACTOR. SUBCONTRACTOR shall be liable for payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount. At SUBCONTRACTOR's request, CONTRACTOR shall provide a detailed accounting of the costs to finish Subcontract Work.

## 12)   CLAIMS AND DISPUTES.

**12.1   CLAIMS RELATING TO CONTRACTOR.** SUBCONTRACTOR shall give CONTRACTOR written notice of all claims within seven (7) days of the existence of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed absolutely waived by SUBCONTRACTOR. All unresolved claims, disputes and other matters in question between CONTRACTOR and SUBCONTRACTOR shall be resolved in the manner provided in this Agreement.

**12.2   LIQUIDATED DAMAGES.** ~~Inasmuch as SUBCONTRACTOR's failure to complete its Work within the timeframe specified herein will result in substantial injury to the Contractor and whereas damages arising from such failure cannot be calculated with any degree of certainty, it is hereby agreed that if such Subcontract Work is not substantially completed as herein defined within the time fixed herein or within such further time, if any, as shall be allowed for such performance or completion in accordance with the provisions of this Subcontract, the SUBCONTRACTOR shall pay to the Contractor, as liquidated damages for such delay and not as a penalty, One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) per day for each and every calendar day that the SUBCONTRACTOR fails to complete its Work, including all punchlist work ("CONTRACTOR's Liquidated Damages"). SUBCONTRACTOR's obligation for such liquidated damages is irrespective of, and is in no way dependent upon, whether Owner assesses liquidated damages against the Contractor or whether it is impossible to determine the degree of harm caused by SUBCONTRACTOR's delay. SUBCONTRACTOR acknowledges that its failure to timely complete its Subcontract Work will cause financial harm to Contractor irrespective of whether or not Owner assesses any liquidated damages against Contractor. This provision for liquidated damages shall in no manner affect the Contractor's right to terminate this Subcontract as provided for elsewhere in this Subcontract and other Contract Documents, and Contractor's exercise of the right to terminate shall not release the SUBCONTRACTOR from its obligation to pay said liquidated damages.~~

~~If the CONTRACTOR's agreement with the Owner provides for liquidated or other damages for delay, and such damages are assessed, CONTRACTOR may assess a share of the damages against SUBCONTRACTOR in proportion to SUBCONTRACTOR's share of responsibility for the delay. This apportionment shall be in addition to the CONTRACTOR's Liquidated Damages.~~

**12.3   WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, SUBCONTRACTOR shall continue Subcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. If SUBCONTRACTOR continues to perform, CONTRACTOR shall continue to make payments of amounts undisputedly owed to SUBCONTRACTOR in accordance with this Agreement.

**12.4   MULTIPARTY PROCEEDING.** The parties agree, to the extent permitted by the prime agreement, that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between CONTRACTOR and SUBCONTRACTOR involve in whole or in part disputes between CONTRACTOR and Owner, disputes between SUBCONTRACTOR and CONTRACTOR shall be decided by the same tribunal and in the same forum as disputes between CONTRACTOR and Owner, and SUBCONTRACTOR agrees to consolidation and joinder of the same.

**12.5   STAY OF PROCEEDINGS.** In the event that provisions for resolution of disputes between CONTRACTOR and Owner contained in the prime agreement do not permit consolidation or joinder with disputes of third parties, such as SUBCONTRACTOR, resolution of disputes between SUBCONTRACTOR and CONTRACTOR involving in whole or in

**Standard Short Form Agreement Between Contractor and Subcontractor**

part disputes between CONTRACTOR and Owner shall be stayed pending conclusion of any dispute resolution proceeding between CONTRACTOR and Owner.

**12.6    DIRECT DISCUSSION.** If a dispute arises out of or relates to this Agreement, the parties shall endeavor to settle the dispute through direct discussion.

**12.7    MEDIATION.** Disputes between SUBCONTRACTOR and CONTRACTOR not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The parties shall select the mediator within fifteen (15) days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution.

**12.8    OTHER DISPUTE PROCESSES.** If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.

**ARBITRATION.** At the sole discretion of the CONTRACTOR or its Surety, all claims, counterclaims, disputes, and other matters in question between the CONTRACTOR or its Surety and the SUBCONTRACTOR or its Surety (if applicable) arising out of this Agreement or the breach thereof shall be decided by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining. CONTRACTOR expressly reserves its right on behalf of CONTRACTOR and its Surety to have any dispute resolved by binding arbitration, including but not limited to those initiated by SUBCONTRACTOR, in which event the parties agree that the litigation will be dismissed and the dispute will proceed in arbitration. If the CONTRACTOR or its Surety elects to submit the claims, counterclaims, disputes, and other matters in question to binding arbitration, it will give the other party notice of its intent, and the parties will proceed in accordance with the Construction Industry Rules of the American Arbitration Association. The award rendered by the arbitrator shall be final, and judgment shall be entered upon it in accordance with applicable Florida law.

**12.9    COST OF DISPUTE RESOLUTION.** The cost of any mediation proceeding shall be shared equally by the parties participating. Additionally, the parties agree to bear their own attorneys' fees and costs for any dispute arising out of this Agreement and/or the Project and knowingly, voluntarily, and intentionally and expressly waive and relinquish any and all statutory or other rights to recover attorney's fees' or costs from CONTRACTOR, its Surety, if any, and Owner for any dispute arising out of this Agreement and/or the Project.

**13)    NO PRESUMPTION AGAINST DRAFTER.** The Parties expressly agree that they freely and voluntarily enter into this Agreement and have had the opportunity to obtain assistance of legal counsel of their choice in reviewing its terms prior to execution. The Parties acknowledge and agree that no rule of construction applies to the disadvantage of a party because that party was responsible for the preparation of this Subcontract or part of it.

**14)    MISCELLANEOUS PROVISIONS.**

**14.1**    If required for this Subcontract, pursuant to Executive Order 11-02 signed by the Florida Governor on January 4, 2011 and other applicable law, SUBCONTRACTOR will utilize the E-verify system, established by the U.S. Department of Homeland Security to verify the employment eligibility of its employees. This, when required, is a continuing obligation that applies throughout the duration of the Project, and SUBCONTRACTOR acknowledges that any additional personnel, not previously verified, that may be assigned to the Project will be subject to the aforementioned E-verification. Results of the E-verification will be provided to CONTRACTOR and remain in the SUBCONTRACTOR's project records for review by CONTRACTOR and/or Owner as requested. Additionally, SUBCONTRACTOR shall certify to CONTRACTOR by affidavit that the SUBCONTRACTOR has verified through the E-verify system the employment status of each employee assigned to work on the Project. SUBCONTRACTOR shall be responsible for including this provision in all its' subcontracts issued as a result of this Subcontract.

**14.3**    The SUBCONTRACTOR has no power to assign its rights or duties under this Subcontract. The parties expressly acknowledge that in selecting the SUBCONTRACTOR, the CONTRACTOR considered various factors, including but not limited to the SUBCONTRACTOR's reputation, quality of work, and capacity to perform. SUBCONTRACTOR specifically agrees not to assign, sell, or transfer any accounts receivables under this Subcontract to any third-party factoring company or related business. NEITHER THE OWNER NOR THE CONTRACTOR SHALL BE LIABLE TO ANY THIRD PARTIES FOR PAYMENT OF ANY ASSIGNED ACCOUNTS RECEIVABLES.

Initial: HS    Initial: BLA    **Alterations to this Agreement are Prohibited**    Page 33 of 46

Sub    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**14.4** By acceptance of this Subcontract, SUBCONTRACTOR guarantees its prices contained herein for the duration of the Project, through the date of Final payment by the Owner. The SUBCONTRACTOR expressly agrees that external conditions outside the control of SUBCONTRACTOR, including but not limited to materials shortages and price escalations, have been accounted for in the Contract price and shall not constitute the basis for a time extension or a claim for additional compensation of any type.

**14.5** This Contract is specifically intended to be for the benefit of the Owner. The Owner may maintain an action for breach of this Subcontract. However, SUBCONTRACTOR is not an intended third-party beneficiary of the Agreement between Owner and CONTRACTOR.

**14.6** No right or remedy in this Subcontract is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.

**14.7** The obligations of the CONTRACTOR and SUBCONTRACTOR under this Subcontract are expressly conditioned upon the CONTRACTOR's successfully entering into a contract with the Owner for the Project. If the Owner shall decline for any reason whatsoever to enter into a contract with the CONTRACTOR for the Project, then this Subcontract shall automatically become null and void and CONTRACTOR and SUBCONTRACTOR shall be discharged from their respective obligations hereunder. Further, in such event, CONTRACTOR shall have no liability of any kind to SUBCONTRACTOR including, without limitation, cancellation charges.

**14.8** If applicable, the Owner may choose to directly purchase materials as a tax exempted entity as defined by the IRS and the State of Florida, and if this option is available to the Owner and the Owner decides to use this option, the SUBCONTRACTOR will be notified and shall comply with the Owner Direct Purchase program by providing a credit for the material being purchased directly including the sales tax attributable thereto.

**14.9** The nondiscrimination clauses contained in Section 202 of Executive Order 11246, as amended; Section 402 of the Vietnam Era Veteran's Readjustment amended, relative to equal opportunity for all persons within regard to race, color, religion, sex national origin, handicapped, Vietnam Era or disabled veteran and the implementing rules and regulations prescribed by the Secretary of Labor are incorporated herein.

**15)** **SUBCONTRACTOR'S WAIVER OF JURY TRIAL.** The SUBCONTRACTOR and its Surety expressly and voluntarily waive all rights to a jury trial in any claim or dispute arising from the Subcontract, the Project, and/or any associated Bond(s).

CONTRACTOR: Portrait Construction of Florida

BY: *Bruce L. Abbey President*

PRINT NAME: Bruce L. Abbey President

PRINT TITLE: President

DATE: 6/13/2021

WITNESS:

SUBCONTRACTOR: Florida Construction & Framing

BY: *Mike Sheeks*

PRINT NAME: Mike Sheeks

PRINT TITLE: Mike Sheeks – Pres

DATE: 6/13/2021

WITNESS:

Initial: MS    Initial: BLA
Sub         Contractor

**Alterations to this Agreement are Prohibited**

**Standard Short Form Agreement Between Contractor and Subcontractor**

# EXHIBIT A
## SCHEDULE OF VALUES

| # | Cost Code | Description | Type | Amount |
|---|-----------|-------------|------|--------|
| 1 | 06-01005-50 - Rough Carpentry - Labor | Rough Carpentry | Subcontract | $2,288,843.00 |
| | | | **Grand Total:** | $2,288,843.00 |

# EXHIBIT B
## OCIP Manual and Requirements

Included by Separate Attachment,
Please Reference for Instructions



**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

| SUPPLEMENTARY CONDITIONS OF THE CONTRACT FOR CONSTRUCTION | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval No. 2502-0598 (Exp. 06/30/2017) |
|---|---|---|

Public Reporting Burden for this collection of information is estimated to average 0.2 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Response to this request for information is required in order to receive the benefits to be derived. This agency may not collect this information, and you are not required to complete this form unless it displays a currently valid OMB control number. While no assurance of confidentiality is pledged to respondents, HUD generally discloses this data only in response to a Freedom of Information Act request.

### Article 1: Labor Standards

A. **Applicability.** The Project or program to which the construction work covered by this Contract pertains is being assisted or insured by the United States of America, and the following Federal Labor Standards Provisions are included in this Contract or related instrument pursuant to the provisions applicable to such Federal assistance or insurance. Any statute or regulation contained herein shall also include any subsequent amendment or successor statute or regulation.

B. **Minimum Wages.** Pursuant to Section 212 of the National Housing Act, as amended, 12 U.S.C. 1715c, the minimum wage provisions contained in this paragraph B do not apply to those projects with Security Instruments insured under Section 221(h)(1) designed for less than 9 families and they do not apply to those projects with Security Instruments insured under either Section 220 or 233 designed for less than 12 families.

1. (i) All laborers and mechanics employed or working upon the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the Project) shall be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR Part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics. Contributions made or costs reasonably anticipated for bona fide fringe benefits under Section 1 (b)(2) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)) on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of 29 CFR 5.5(a)(1)(iv); also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs, which cover the particular weekly period, are deemed to be constructively made or incurred during such weekly period. Such laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed, without regard to skill, except as provided in 29 CFR 5.5(a)(4). Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein: *Provided,* that the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classification and wage rates conformed under 29 CFR 5.5(a)(1)(ii)) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

(ii) (a) Any class of laborers or mechanics that is not listed in the wage determination and that is to be employed under this Contract shall be classified in conformance with the wage determination. HUD shall approve an additional classification and wage rate and fringe benefits only when the following criteria have been met:

**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

(1) The work to be performed by the classification requested is not performed by a classification in the wage determination; and

(2) The classification is utilized in the area by the construction industry; and

(3) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(b) If the Contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and HUD or its designee agree on the classification and wage rate (including the amount designated for fringe benefits where appropriate), a report of the action taken shall be sent by HUD or its designee to the Administrator of the Wage and Hour Division, U.S. Department of Labor, Washington, D.C. 20210 (**"Administrator"**). The Administrator, or an authorized representative, shall approve, modify, or disapprove every additional classification action within thirty (30) days of receipt and so advise HUD or its designee or shall notify HUD or its designee within the thirty (30) day period that additional time is necessary. (Approved by the Office of Management and Budget under OMB control number 1215-0140.)

(c) In the event the Contractor, the laborers or mechanics to be employed in the classification or their representatives and HUD or its designee do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), HUD or its designee shall refer the questions, including the views of all interested parties and the recommendation of HUD or its designee, to the Administrator for determination. The Administrator, or an authorized representative, shall issue a determination within thirty (30) days of receipt and so advise HUD or its designee or shall notify HUD or its designee within the thirty (30) day period that additional time is necessary. (Approved by the Office of Management and Budget under OMB Control Number 1215-0140.)

(d) The wage rate (including fringe benefits where appropriate) determined pursuant to subparagraphs B.1.(ii)(b) or (c) of this Article, shall be paid to all workers performing work in the classification under this Contract from the first day on which work is performed in the classification.

(iii) Whenever the minimum wage rate prescribed in the Contract for a class of laborers or mechanics includes a fringe benefit that is not expressed as an hourly rate, the Contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(iv) If the Contractor does not make payments to a trustee or other third person, the Contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program, *Provided*, That the Secretary of Labor has found, upon the written request of the Contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Contractor to set aside in a separate account assets for the meeting of obligations under the plan or program. (Approved by the Office of Management and Budget under OMB Control Number 1215-0140.)

2. **Withholding**. HUD or its designee shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the Contractor under this Contract or any other Federal contract with the same prime contractor, or any other Federally-assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same prime contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees and helpers, employed by the Contractor or any subcontractor the full amount of wages required by the Contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee or helper, employed or working on the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the Project), all or part of the wages required by the Contract, HUD or its designee may, after written notice to the Contractor, sponsor, applicant, or Owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased. HUD or its designee may, after written notice to the Contractor, disburse such amounts withheld for and on account of the Contractor or subcontractor to the respective employees to whom they are due.

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial _HS_   Initial _BLA_
Sub          Contractor

**Alterations to this Agreement are Prohibited**    Page 38 of 46

DocuSign Envelope ID: A40842795-4910-4AA7-1F58-07C78C8345D

**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

### 3. Payrolls, records, and certifications.

(i) Payrolls and basic records relating thereto shall be maintained by the Contractor during the course of the work and preserved for a period of three years thereafter for all laborers and mechanics working at the site of the work (or under the United States Housing Act of 1937, or under the Housing Act of 1949, in the construction or development of the Project). Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in Section 1 (b)(2)(B) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)), daily and weekly number of hours worked, deductions made and actual wages paid. Whenever the Secretary of Labor has found under 29 CFR 5.5(a)(1)(iv) that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in Section 1 (b)(2)(B) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)), the Contractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs. (Approved by the Office of Management and Budget under OMB Control Numbers 1215-0140 and 1215-0017.)

(ii)(a) The Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to HUD or its designee if the agency is a party to the Contract, but if the agency is not such a party, the Contractor shall submit the payrolls to the applicant, sponsor, or Owner, as the case may be, for transmission to HUD or its designee. The payrolls submitted shall set out accurately and completely all of the information required to be maintained under 29 CFR 5.5(a)(3)(i), except that full social security numbers and home addresses shall not be included on weekly transmittals. Instead the payrolls shall only need to include an individually identifying number for each employee (e.g., the last four digits of the employee's social security number). The required weekly payroll information may be submitted in any form desired. Optional Form WH-347 is available for this purpose from the Wage and Hour Division Web site at http://www.dol.gov/whd/forms/wh347.pdf or its successor site. The prime contractor is responsible for the submission of copies of payrolls by all subcontractors. Contractors and subcontractors shall maintain the full social security number and current address of each covered worker, and shall provide them upon request to HUD or its designee if the agency is a party to the Contract, but if the agency is not such a party, the Contractor will submit the payrolls to the applicant sponsor, or Owner, as the case may be, for transmission to HUD or its designee, the Contractor, or the Wage and Hour Division of the Department of Labor for purposes of an investigation or audit of compliance with prevailing wage requirements. It is not a violation of this subparagraph for a prime contractor to require a subcontractor to provide addresses and social security numbers to the prime contractor for its own records, without weekly submission to HUD or its designee.(Approved by the Office of Management and Budget under OMB Control Number 1215-0149.)

(b) Each payroll submitted shall be accompanied by a "Statement of Compliance," signed by the Contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the Contract and shall certify the following:

(1) That the payroll for the payroll period contains the information required to be provided under 29 CFR 5.5(a)(3)(ii), the appropriate information is correct and complete.

(2) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the Contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in 29 CFR Part 3;

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial ___ HS ___   Initial ___ BLA ___
Sub            Contractor

**Alterations to this Agreement are Prohibited**   Page 39 of 46

**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit C**

(3) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the Contract.

(c) The weekly submission of a properly executed certification set forth on the everse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by subparagraph B.3.(ii)(b) of this Article.

(d) The falsification of any of the above certifications may subject the Contractor or subcontractor to civil or criminal prosecution under Section 1001 of Title 18 and Sections 3801 et seq of Title 31 of the United States Code.

(iii) The Contractor or subcontractor shall make the records required under subparagraph B.3.(i) of this Article available for inspection, copying, or transcription by authorized representatives of HUD or its designee or the Department of Labor, and shall permit such representatives to interview employees during working hours on the job. If the Contractor or subcontractor fails to submit the required records or to make them available, HUD or its designee may, after written notice to the Contractor, sponsor, applicant, or Owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

**4. Apprentices and Trainees.**

(i) **Apprentices.** Apprentices shall be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Office of Apprenticeship, or with a State Apprenticeship Agency recognized by such Office, or if a person is employed in his or her first ninety (90) days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Office of Apprenticeship, or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Contractor as to the entire work force under is not registered or otherwise employed as stated above, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where the Contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Contractor's or subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeymen hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. In the event the Office of Apprenticeship, or a State Apprenticeship Agency recognized by such Office, withdraws approval of an apprenticeship program, the Contractor shall no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(ii) **Trainees.** Except as provided in 29 CFR 5.16, trainees shall not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial  HS    Initial  BLA

Sub        Contractor        **Alterations to this Agreement are Prohibited**        Page 40 of 46

**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit C**

percentage of the journeyman's hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed on the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate on the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the Contractor shall no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(iii) **Equal employment opportunity.** The utilization of apprentices, trainees and journeymen under 29 CFR Part 5 shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30.

5. **Compliance with Copeland Act Requirements.** The Contractor shall comply with the requirements of 29 CFR Part 3, which are incorporated by reference in this Contract.

6. **Subcontracts.** The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in subparagraphs 1 through 10 of this paragraph B and such other clauses as HUD or its designee may by appropriate instructions require, and a copy of the applicable prevailing wage determination, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all Contract clauses referenced in this subparagraph.

7. **Contract termination and debarment.** A breach of the Contract clauses in 29 CFR 5.5 may be grounds for termination of the Contract, and for debarment as a contractor or a subcontractor as provided in 29 CFR 5.12.

8. **Compliance with Davis-Bacon and Related Act Requirements.** All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5 are herein incorporated by reference in this Contract.

9. **Disputes concerning labor standards.** Disputes arising out of the labor standards provisions of this Contract shall not be subject to the general disputes clause of this Contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and HUD or its designee, the U.S. Department of Labor, or the employees or their representatives.

10. **Certification of Eligibility.**
(i) By entering into this Contract, the Contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of Section 3(a) of the Davis- Bacon Act (40 U.S.C. 3144(b)(2)) or 29 CFR 5.12(a)(1) or to be awarded HUD contracts or participate in HUD programs pursuant to 24 CFR Part 24.

(ii) No part of this Contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of Section 3(a) of the Davis-Bacon Act (40 U.S.C. 3144(b)(2)) or 29 CFR 5.12(a)(1) or to be awarded HUD contracts or participate in HUD programs pursuant to 24 CFR Part 24.

(iii) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001. Additionally, U.S. Criminal Code, Section 1010, Title 18, U.S.C., "Federal Housing Administration transactions",



## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

provides in part: "Whoever, for the purpose of . . . influencing in any way the action of such Department . . . makes, passes, utters or publishes any statement, knowing the same to be false . . . shall be fined under this title or imprisoned not more than two years, or both."

### C. Contract Work Hours and Safety Standards Act.

1. **Applicability and Definitions.** This paragraph C of Article 1 is applicable only if a direct form of federal assistance is involved, such as Section 8, Section 202/811 Capital Advance, grants etc., and is applicable only where the prime contract is in an amount greater than $100,000. As used in this paragraph C, the terms "laborers" and "mechanics" include watchmen and guards.

2. **Overtime requirements.** No contractor or subcontractor contracting for any part of the Contract work that may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of forty (40) hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of forty (40) hours in such workweek.

3. **Violation; liability for unpaid wages; liquidated damages.** In the event of any violation of the immediately preceding subparagraph C.2, the Contractor and any subcontractor responsible therefore shall be liable for the unpaid wages. In addition, the Contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory) for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of such subparagraph, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of forty (40) hours without payment of the overtime wages required by the clause set forth in such subparagraph.

4. **Withholding for unpaid wages and liquidated damages.** HUD or its designee shall, upon its own action or upon written request of an authorized representative of the Department of Labor, withhold or cause to be withheld from any moneys payable on account of work performed by the Contractor or subcontractor under any such contract, or under any other Federal contract with the same prime contractor, or under any other Federally-assisted contract subject to the Contract Work Hours and Safety Standards Act which is held by the same prime contractor such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in subparagraph 3 of this paragraph C.

5. **Subcontracts.** The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in subparagraphs 1 through 5 of this paragraph C and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the clauses set forth in such subparagraphs 1 through 5.

### D. Certification.

For projects with Security Instruments insured under the National Housing Act, as amended, that are subject to paragraph B of this Article 1, the Contractor is required to execute the Contractor's Prevailing Wage Certificate within HUD-92448 as a condition precedent to insurance by HUD of the Loan, or an advance thereof, made or to be made by the Lender in connection with the construction of the Project.

### Article 2: Equal Employment Opportunity

A. **Applicability.** This Article 2 applies to any contract for construction work, or modification thereof, as defined in the regulations of the Secretary of Labor at 41 CFR Chapter 60, which is paid for in whole or in part with funds obtained from the Federal Government or borrowed on the credit of the Federal Government pursuant to a grant, contract, loan insurance, or guarantee, or undertaken pursuant to any Federal program involving such grant, contract, loan, insurance, or guarantee.

DocuSign Envelope ID:

**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

B. The Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, disability, or national origin. The Contractor shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment without regard to their race, color, religion, sex, disability or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training including apprenticeship. The Contractor agrees to post in conspicuous places available to employees and applicants for employment notices to be provided setting forth the provisions of this nondiscrimination clause.

C. The Contractor shall, in all solicitations or advertisements for employees placed by or on behalf of the Contractor state that all qualified applicants shall receive consideration for employment without regard to race, color, religion, sex, disability, or national origin.

D. The Contractor shall send to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding a notice to be provided advising the said labor union or workers representatives of the Contractor's commitments hereunder, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

E. The Contractor shall comply with all provisions of Executive Order 11246 of September 24, 1965 and of the rules, regulations, and relevant orders of the Secretary of Labor.

F. The Contractor shall furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and shall permit access to its books, records, and accounts by the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

G. In the event of the Contractor's noncompliance with the nondiscrimination clauses of this Contract or with any of the said rules, regulations, or orders, this Contract may be canceled, terminated, or suspended in whole or in part and Contractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulations or order of the Secretary of Labor, or as otherwise provided by law.

H. The Contractor shall include the provisions of paragraphs A through H of this Article 2 in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, so that such provisions shall be binding upon each subcontractor or vendor. The Contractor shall take such action with respect to any subcontract or purchase order as HUD or the Secretary of Labor may direct as a means of enforcing such provisions, including sanctions for noncompliance. Provided, however, that in the event the Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by HUD or the Secretary of Labor, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

### Article 3: Equal Opportunity for Businesses and Lower Income Persons Located Within the Project Area

A. This Article 3 is applicable to projects covered by Section 3, as defined in 24 CFR Part 135.

B. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from HUD and is subject to the requirements of Section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that to the greatest extent feasible opportunities for training and employment be given to lower income residents of the unit of local government or the

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)



Initial HS
Sub

Initial BLA
Contractor

**Alterations to this Agreement are Prohibited**    Page 43 of 46

## Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit C

metropolitan area (or non-metropolitan county) as determined by HUD in which the Project is located and contracts for work in connection with the Project be awarded to business concerns which are located in, or owned in substantial part by persons residing in the same metropolitan area (or non-metropolitan county) as the Project.

### Article 4: Health and Safety

A. This Article 4 is applicable only where the prime contract is in an amount greater than $100,000.

B. No laborer or mechanic shall be required to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his or her health and safety as determined under construction safety and health standards promulgated by the Secretary of Labor by regulation.

C. The Contractor shall comply with all regulations issued by the Secretary of Labor pursuant to 29 CFR Part 1926, and failure to comply may result in imposition of sanctions pursuant to the Contract Work Hours and Safety Standards Act, 40 USC 3701 et seq.

D. The Contractor shall include the provisions of this Article 4 in every subcontract so that such provisions shall be binding on each subcontractor. The Contractor shall take such action with respect to any subcontract as HUD or the Secretary of Labor shall direct as a means of enforcing such provisions.

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial _____ HS _____    Initial _____ BLA _____

Sub                    Contractor

**Alterations to this Agreement are Prohibited**    Page 44 of 46

DocuSign Envelope ID:

**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit D

### HUD IDENTITY OF INTEREST DISCLOSURE REQUIREMENT

HUD requires full disclosure of any Identity of Interest (IOI) for this project. An IOI is defined as a financial or business interest or family relationship that exists between Borrower, or any of its officers, directors, stockholders, partners, managers, managing members, members, or principals ("Principals") and the Architect, General Contractor, subcontractors, suppliers, equipment lessors, or any of their Principals.

**If Subcontractor has an Identity of Interest (IOI) with any party listed below, then Subcontractor is required to disclose the IOI and notify Mark Portrait Construction immediately:**

Berkadia Commercial Mortgage, LLC
LN Apartments, LLC
FLN Apts, LLC
Mark Baron Construction, Inc. dba Mark Portrait Construction
Charlan Brock & Associates

SUBCONTRACTOR:

By: *Mike Sheeks*
(Signature)

Mike Sheeks -Pres
(Name and Title)

Signed on (date): 6/13/2021

CONTRACTOR:

By: *Bruce L. Abbey President*
(Signature)

Bruce L. Abbey President
(Name and Title)

Signed on (date): 6/13/2021

Initial [MS] Sub    Initial [BLA] Contractor

**Alterations to this Agreement are Prohibited**    Page 45 of 46

Standard Short Form Agreement Between Contractor and Subcontractor

## Exhibit E

### HUD PREVAILING WAGE ACKNOWLEDGEMENT

**FUTURA AT NONA COVE - EXHBIT "E" –
PREVAILING WAGE ACKNOWLEDGEMENT**

Subcontractor understands that the Futura at Nona Cove project is subject to the Davis-Bacon Act requirements. Subcontractor agrees to furnish all prevailing wage forms fully executed, prior to beginning of work (one-time forms). Subcontractor agrees to comply with all applicable requirements of the Davis-Bacon Act and submit reporting forms on a weekly basis.

**This project will require the payment of Davis-Bacon (FEDERAL) wage rate for each trade.**

Subcontractor shall comply with the Copeland Act Requirement pursuant to 29 CFR Part 32, Contract Work Hours and Safety Standards Act (CWHSSA), Equal Employment Opportunity (EEO) as defined in Secretary of Labor at 41 CFR Chapter 60 and Health and Safety as issued by the Secretary of Labor pursuant to 29 CFR Part 196.

Subcontractor shall include the Labor Compliance Contract Addendum in every contract and purchase order, unless exempted. The Labor Compliance Contract Addendum is included in the Prevailing Wage Manual.

**Please note that it is Subcontractor's responsibility to ensure that all Sub-Subcontractors comply with these requirements as well.**

SUBCONTRACTOR:

By _Mike Sheeks_
(Signature)

Mike Sheeks  Mike Sheeks –Pres
(Name and Title)

Signed on (date): 6/13/2021

CONTRACTOR:

By _Bruce L. Abbey President_
(Signature)

Bruce L. Abbey President
(Name and Title)

Signed on (date): 6/13/2021

Initial MS        Initial BLA
Sub              Contractor

**Alterations to this Agreement are Prohibited**        Page 46 of 46

DocuSign Envelope ID: 

# LN Apartments, LLC

# Futura at Nona Cove Apartments

*General Liability/Excess Only OCIP*

*Project Insurance Manual*

05/14/2021, V2



# Table of contents

Introduction .......................................................................................................................... 3

Excluded Contracts ............................................................................................................. 4

OCIP Contacts ..................................................................................................................... 5

OCIP Carriers ....................................................................................................................... 5

Definitions ............................................................................................................................ 6

OCIP Insurance — Insurance You Will be Provided ...................................................... 8

OCIP GL Obligation ............................................................................................................ 8

Coverages Not Part of the OCIP ...................................................................................... 9

Contractor/Subcontractor Insurance Requirements – Insurance You Will Provide .......... 11

Contractor/Subcontractor Responsibilities .................................................................. 14

Enrollment ......................................................................................................................... 15

Subcontractor Award (hiring lower-tiered subcontractor) .......................................... 16

Deduct Process ................................................................................................................. 17

Certificate of Insurance ................................................................................................... 17

Final Adjustment /Close-Out ........................................................................................... 18

Termination ....................................................................................................................... 18

OCIP Forms ....................................................................................................................... 19

Claim Reporting ................................................................................................................ 26

OCIP Accident/Incident Report ...................................................................................... 27

## Introduction

### Welcome to the LN Apartments, LLC — Futura at Nona Cove Apartments Owner controlled insurance program (OCIP)

LN Apartments, LLC has a long-standing commitment to a safe working environment for everyone involved in its projects. Your participation in the OCIP is a part of this commitment. The OCIP is a series of insurance policies procured by LN Apartments, LLC and designed to provide insurance coverage protecting LN Apartments, LLC and enrolled contractors/subcontractors of all tiers for work performed on or at the project site. Coverage provided by the OCIP includes general liability and umbrella/excess liability.

We look forward to working with you to make this project a success.

Contractor/Subcontractors (unless excluded) are required to submit their bid price **excluding the insurance costs** (including any profit, overhead, and contingencies) for general liability and umbrella/excess, which are being provided by the OCIP. **Contractor/subcontractors shall provide an OCIP insurance add alternate line item identifying the excluded insurance cost for work performed at the project site.** In calculating the insurance cost, use the limits of insurance specified in the contract documents. The identified cost of insurance is subject to review and approval by LN Apartments, LLC and the OCIP administrator.

**Enrollment in the OCIP is mandatory, but not automatic.** Contractors and subcontractors of all tiers, unless identified as an excluded contractor below, must finalize enrollment in the OCIP prior to mobilizing at the project site. Once your enrollment is completed, you will be issued a certificate of insurance, which will evidence your successful enrollment in the OCIP.

Lockton recommends you share a copy of this manual with the following:

*   Administrative personnel who manage your insurance
*   Your insurance agent or broker
*   Estimators, prior to bidding work on the project
*   Your safety and loss control personnel
*   Your claims people responsible for turning in claims for employees injured on this project site
*   Include this manual as an exhibit in your lower tiered subcontractors

This project insurance manual (PIM) is subject to future updates.

The furnishing of insurance through the OCIP shall in no way relieve or limit the contractor/subcontractor of any responsibility or obligation imposed by the contract, except they will be relieved of the responsibility to provide those insurance coverages provided to enrolled parties under the OCIP.

**Review the OCIP coverage with your insurance broker or agent to make sure your other insurance coverages will protect your firm but not duplicate coverage provided under the OCIP.** It is recommended you request your insurance broker or agent to have your policy endorsed to provide excess coverage over the OCIP.

EXCLUDED CONTRACTS

**Excluded contractors/subcontractors are required to provide a contractor/subcontractor application and a certificate of insurance for tracking purposes, prior to mobilizing onsite.**

Participation in the OCIP is required for all contractors and subcontractors of all tiers with the following exceptions:

- Demolition by means of blasting techniques or wrecking ball
- Crane erection and/or dismantling companies
- Guard services, janitorial services, and food services companies
- Vendors and suppliers (suppliers holding contracts for supply and install must enroll)
- Contractors/subcontractors whose sole scope of work includes Exterior Insulation and Finish Systems (EIFS)
- Material dealers
- Off-site fabricators, manufacturing representatives, equipment rental companies (does not apply to those providing operators)
- Haulers delivering to or from the project site
- Drivers (including unloading)
- Asbestos or lead abatement
- Environmental remediation
- Architects, surveyors, consultants, and engineers
- Contractors/subcontractors of any tier that do not perform actual labor on or at the project site

# OCIP Contacts

## OCIP Administrator/Broker

**Lockton Companies**

| | |
|---|---|
| OCIP Account Executive | Debra Stevens / Phone: (954) 444-4935 / Email: dstevens@lockton.com |
| OCIP Coordinator | Carmencita Perez / Phone: (813) 559-6017 / Email: caperez@lockton.com |
| OCIP Claims Consultant | Dorty Stunson / Phone: (954) 883-2010 / Email: dstunson@lockton.com |

## Owner/Sponsor

**LN Apartments, LLC**

| | |
|---|---|
| President | Reinerio Faife / Phone: (561) 718-4648 / Email: rfaife@futura.us |
| Director of Development | Ryan Mesce / Phone: (561) 727-9748 / Email: rmesce@futuracompany.com |

## General Contractor

**Portrait Construction of Florida, Inc. f/k/a Mark Portrait Construction**

| | |
|---|---|
| VP of Operations | Chuck Siudak / Phone: (407) 970-2188 / Email: csiudak@portraitfl.com |
| Project Manager | Kevin Ray / Phone: (407) 760-0704 / Email: kray@portraitfl.com |
| Administrator | Shelley Ewing / Phone: (407) 619-0165 / Email: sewing@portraitfl.com |

# OCIP Carriers

| OCIP Coverage | Carrier |
|---|---|
| General liability | Crum & Forster Specialty Insurance Co. |
| Excess liability 1st Layer | Crum & Forster Specialty Insurance Co. |
| Excess liability 2nd Layer | Allied World Assurance Co. |

# Definitions

| | |
|---|---|
| Bid methodology | Add Alternate: Contractor/Subcontractors (unless excluded) are required to submit their bid price **excluding the insurance costs** (including any profit, overhead, and contingencies) for general liability and umbrella/excess, which are being provided by the OCIP. Contractor/subcontractors shall provide an OCIP insurance **add alternate line item identifying the excluded cost of insurance** for work performed at the project site. In calculating the insurance cost, use the limits of insurance specified in the contract documents. The identified cost of insurance is subject to review and approval by LN Apartments, LLC and the OCIP administrator. |
| OCIP administrator/broker | Lockton Companies<br>1200 SW 145ᵗʰ Avenue, Suite 140A<br>Pembroke Pines, FL 33027 |
| OCIP Carrier(s) | The insurance company(ies) that insures enrolled contractors/subcontractors subject to the terms, conditions, limitations, exclusions, and definitions of the OCIP policies. |
| OCIP | An insurance and safety program purchased by LN Apartments, LLC and administered by Lockton. The insurance is specific to construction activities at the defined project site. The program includes the contractor and all tiers of subcontractors who successfully complete their enrollment. |
| OCIP Account Executive | Lockton Associate who ensures all service needs are met. Works closely with LN Apartments, LLC. |
| OCIP Coordinator | Lockton Associate responsible for contractor/subcontractor enrollment. |
| OCIP Claims Consultant | Lockton Associate who works with LN Apartments, LLC's legal and risk management staff and the carrier to ensure proper handling of claims. |
| Contract | A written agreement between LN Apartments, LLC, contractor or subcontractor, or between subcontractor(s). This also includes any written agreement, invoice, or purchase order which includes direct labor on the project site. |
| Contractor | An individual or a company licensed to perform construction activities. |
| Enrolled contractor/<br>subcontractor | A contractor/subcontractor who has been approved by LN Apartments, LLC and accepted by the OCIP administrator/broker for participation in the OCIP. Approval requires the contractors and subcontractors of all tiers to have previously:<br>• Complied with all insurance requirements.<br>• Completed the enrollment process.<br>• Received notification of enrollment from the OCIP administrator. |
| Excluded contractors/<br>subcontractors | Contractors and subcontractors of all tiers per excluded contracts listed in the introduction. These trades are not covered by the OCIP. |

| | |
|---|---|
| Excluded personnel activities | • No insurance coverage is provided by OCIP unless agreed to by LN Apartments, LLC prior to the start of work under any subcontract.<br>• Architect, engineer, or surveyor and their consultants except where required by contract.<br>• Employees of an approved contractor and subcontractors of all tiers that occasionally visit the project site for deliveries, pick up supplies/personnel, supervisory/progress inspections or any other reason.<br>• Employee of an approved contractor and subcontractors of all tiers that does not generate payroll at the project site.<br>• Truckers, material men, vendors, and suppliers.<br>• Products and materials fabricated or manufactured away from the project site. |
| Insured | LN Apartments, LLC and Enrolled contractors/subcontractors of all tiers. |
| Contractors equipment | Equipment such as earthmovers, tractors, diggers, farm machinery, forklifts, cranes, etc., even when self-propelled, are not considered automobiles for insurance purposes. |
| Project site | Futura at Nona Cove Apartments project located at 19463-194675 Boggy Creek Rd., Orlando, FL 32832. Work or operations performed by contractor and subcontractors of all tiers at the designated project site as defined in the OCIP insurance policy. Insurance does not apply to the operations of any contractor and subcontractors of all tiers at their offices, factory, warehouse or yards. The OCIP insurance coverage applies only to work performed at the project site. |
| Safety coordinator | LN Apartments, LLC  or Contractor's employee (s)  dedicated to project safety oversight. |
| Sponsor/Owner | LN Apartments, LLC |
| Subcontract | An agreement whereby a contractor and subcontractors of all tiers sublets some or all work under a contract between the contractor and the subcontractor or between a subcontractor and a lower tier subcontractor. |
| Subcontractor | Persons or companies providing construction services for the project site under contract with a contractor, or another subcontractor. |
| Substantial completion | • The date of final written acceptance of the designated project by the owner; or<br>• When all work called for in your contract has been completed and the parties to the contract agree that the project completion date has been attained; or<br>• When that part of the work done at a designated project structure, site, or location has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same designated project; or<br>• When all work to be done at the designated project structure, site, or location is substantially completed and is in use or ready for its intended use, if your contract calls for work at more than one structure site or location. |
| Third party | Any party other than employees of LN Apartments, LLC and the enrolled contractors and subcontractors of all tiers. |
| Work | Any direct or indirect physical task performed in the construction of the project site. Work performed away from the project site is not included within the scope of this OCIP. |
| Wrap portal | Lockton's proprietary, web-based system that provides administration for controlled insurance programs, also known as wrap-ups. |

# OCIP Insurance — Insurance You Will Be Provided

LN Apartments, LLC will maintain the following types of insurance under the OCIP. Coverage applies only to work performed at the defined project site. Coverage information below is intended to provide a brief description of coverages and does not alter any of the provisions in the actual insurance policies. The terms and conditions of the OCIP insurance policies will govern how coverage is applied.

## On-site commercial general liability

Limits:
| | |
|---|---|
| $2,000,000 | Each Occurrence |
| $2,000,000 | General Aggregate |
| $2,000,000 | Products/Competed Operations Aggregate |
| $1,000,000 | Personal Injury and Advertising Liability |
| Excluded | Fire Damage Liability – Each Loss |
| Excluded | Medical Payments |

CGL COVERAGE SHALL INCLUDE:

- Policy Form ISO CGL form CG 00 01 04 13 or its equivalent
- A single CGL policy will be issued and will include all enrolled contractors as named insureds
- Limits are not shared with other projects. The general aggregate limit will reinstate once and the products/completed operations aggregate limit is a per project limit (including the extended reporting period) that will not reinstate and is a term limit only
- Policy provides completed operations extension including repair coverage for the time period imposed under the statute of repose or statute of limitations, whichever is applicable, for any claim or "suit" for such "bodily injury" or "property damage" as provided by the controlling law of the jurisdiction where the project(s) is located

## OCIP Deductible Obligation

- The OCIP coverage is subject to a deductible of $25,000 per occurrence, which cost shall be borne initially by LN Apartments, LLC ("Owner"). At Owner's discretion, Portrait Construction of Florida, Inc. f/k/a Mark Portrait Construction ("general contractor") shall be required to reimburse Owner a sum of up to $25,000 for each occurrence, including court costs, claims adjustment expenses, attorney's fees and costs of defense for bodily injury or property damage, to the extent such losses payable under the OCIP Commercial General Liability policy are attributable to the general contractor's work, acts or omissions, or the work, acts or omissions of any of any of the general contractor's contractors/subcontractors, or any other entity or party for whom the general contractor may be contractually or legally responsible ("General Liability Obligation"). The General Liability Obligation shall remain uninsured by the general contractor and will not be covered by the OCIP coverages.

## On-site umbrella/excess liability

Limits:  $15,000,000 ..................... Each occurrence and aggregate

- Excess of primary OCIP Commercial General Liability policy subject to policy terms and conditions
- General aggregate limit is not shared with other projects
- Products & completed operations aggregate limit (term) is not shared with other projects
- Policy provides completed operations extension including repair coverage for the time period imposed under the statute of repose or statute of limitations, whichever is applicable, for any claim or "suit" for such "bodily injury" or "property damage" as provided by the controlling law of the jurisdiction where the project(s) is located
- Products/completed operations aggregate is a single limit for the construction term and entire extension period
- Limits shared by all insureds

## Coverages not part of the OCIP

Any loss not covered by the OCIP policies outlined above is the responsibility of the contractor/subcontractor. Coverages that are not part of the OCIP include, but are not limited to, the below:

- Workers' compensation/employers' liability
- Builders' Risk
- Contractor's equipment, tools, or personal property
- Automobile liability
- Automobile physical damage
- General liability for off site
- Umbrella/excess for off site
- Products liability
- Professional liability
- Environmental liability
- Employment practices liability
- Jones act coverage (crew members) — if applicable
- Protection and indemnity (operations of vessels) — if applicable
- Marine liability – if applicable
- Aviation/watercraft liability — if applicable
- Surety bonds/subcontractor default insurance

The OCIP is intended to afford broad coverage and relatively high limits of liability, but it may not provide all of the insurance needed by a contractor/subcontractor. Any insurance for higher limits or other coverage that the contractor/subcontractor may be required by law to carry or may need for their protection shall be at the contractor's/subcontractor's expense.

# Contractor/Subcontractor Insurance Requirements –

## Insurance You Will Provide

Contractors and subcontractors of all tiers, whether enrolled, excluded or non-enrolled, are required to maintain insurance coverage (at their own expense) that protects against losses occurring away from the project site or that are otherwise not covered under the OCIP. Below is a summary of the insurance requirements but contractors/subcontractors should refer the construction agreement for complete insurance requirements.

Insurance carriers providing coverage must be acceptable to LN Apartments, LLC and authorized to do business in the state of Florida. with an A.M. Best rating of no less than A-VII. Temporary labor services are to be treated as subcontractors.

## Insurance requirements

## Workers' compensation/employer's liability — on- and off-site coverage

Limits:     Part 1:   Workers' compensation — statutory

Part 2:     Employer's liability —

$1,000,000...........................Bodily injury by accident, each accident

$1,000,000...........................Bodily injury by disease, each employee

$1,000,000...........................Bodily injury by disease, policy limit

COVERAGE TO INCLUDE:

- o   Waiver of subrogation (where allowed by law) per sample certificate of insurance
- o   Other states coverage

LN Apartments, LLC requires all parties to carry this insurance on all employees including sole proprietors, partners, and executive officers, regardless of eligibility for waiver or exemption of coverage under state statute.

## Commercial General Liability

Enrolled contractors/subcontractors: off-site coverage

Excluded contractors/subcontractors: on-site and off-site coverage

Limits:
| | |
|---|---|
| $1,000,000 | Each Occurrence |
| $2,000,000 | General Aggregate |
| $2,000,000 | Products/Competed Operations Aggregate |
| $1,000,000 | Personal Injury and Advertising Liability |
| $ 50,000 | Fire Damage Liability – Each Loss |
| $ 10,000 | Medical Expenses |

### COVERAGE TO INCLUDE:

- Current ISO CGL form or its equivalent
- Occurrence basis
- Premises operations
- Products/completed operations — for the statute of repose
- General aggregate limit applies per project
- Additional insured (where allowed by law) per sample certificate of insurance
- Waiver of subrogation (where allowed by law) per sample certificate of insurance
- Primary and noncontributory wording

## Commercial Automobile Liability — on- and off-site coverage

Limits:
| | |
|---|---|
| $1,000,000 | Per accident — combined single limit |
| $3,000,000 | If hauling hazardous materials |

### COVERAGE TO INCLUDE:

- Owned, non-owned, leased and hired autos
- Additional insured per sample certificate of insurance
- Waiver of subrogation (where allowed by law) per sample certificate of insurance
- Primary and noncontributory wording

## Umbrella/excess liability

**General Contractor:**

Limits:   $5,000,000.................. Bodily injury and property damage occurrence limit

**Excluded Contractors/subcontractors:**

Limits:   $2,000,000.................. Bodily injury and property damage occurrence limit

COVERAGE TO INCLUDE:

- Excess of general liability, automobile liability and employer's liability
- Additional insured per sample certificate of insurance
- Waiver of subrogation (where allowed by law) per sample certificate of insurance

LN Apartments, LLC has the right to require that the contractor/subcontractor obtain additional insurance if in LN Apartments, LLC's reasonable discretion such insurance is necessary to insure against risks at the project site. **The General Contractor will determine on an individual contract basis what, if any, of the below coverages shall be carried. See contract for requirements.**

- Commercial watercraft and/or aircraft liability
- Professional liability
- Pollution liability
- Property insurance

# Contractor/Subcontractor Responsibilities

Contractors and subcontractors of all tiers are required to cooperate with LN Apartments, LLC and Lockton in all aspects of OCIP operation and administration. The responsibilities of each contractor/subcontractor include but are not limited to:

- **Submit all bids and change orders exclusive of insurance costs** for general liability and umbrella/excess (including any profit, overhead, and contingencies). **Complete the add alternate / excluded insurance cost worksheet** to identify the excluded cost of insurance. The excluded cost of insurance is subject to review and approval by LN Apartments, LLC and the OCIP administrator.
- Include the OCIP insurance requirements and PIM in all contracts and subcontracts.
- Provide each subcontractor with a copy of the project insurance manual (PIM).
- Notify Lockton Companies immediately of each contract award by submitting the "subcontractor award" form for each subcontract awarded.
- Furnish required enrollment information to complete enrollment prior to mobilization on the project site.
- Enforce enrollment of all subcontractors (unless specifically excluded) prior to subcontractor's mobilization on the project site.
- Employees complete site orientation prior to reporting to project site.
- Do not allow non-oriented employees to begin work on site.
- Monitor site for non-enrolled contractors/subcontractors and non-oriented employees.
- Provide required information (contract information, safety plan, etc.).
- Attend all meetings as required or necessary.
- Cooperate with the insurance carrier, Lockton, and LN Apartments, LLC to prepare for and assist with site visits.
- Ensure that your employees and your subcontractors' employees comply with the site safety procedures.
- Assist in reporting of incidents and any investigation. This includes cooperating with LN Apartments, LLC, Lockton, the insurance carriers, and each of their representatives.
- Thoroughly investigate all accidents, maintain written documentation, and complete reports and incident forms within 24 hours.
- Promptly pay any deductible obligations (where applicable).
- Review loss control reports, pursue corrective action, and respond to written recommendations as required.
- Enrolled contractors and subcontractors of all tiers provide their own insurance for the applicable warranty period after work is completed.
- In consideration of LN Apartments, LLC's provision of OCIP coverage, each contractor/subcontractor agrees to assign all return premiums, refunds, discounts, retentions, dividends and credits associated with the OCIP coverages to LN Apartments, LLC.

# Enrollment

Enrollment in the OCIP is not automatic. LN Apartments, LLC and the Insurance Carriers reserve the right to determine who participates in the OCIP. All contractors and subcontractors of all tiers, other than excluded contractors listed in the introduction, must submit fully completed enrollment forms and all required documentation. **You must complete enrollment within five days of entering into a contract.** You will not be allowed to mobilize on the project site until enrollment is completed.

**Excluded contractors are required to provide a contractor/subcontractor application and certificate of insurance for tracking purposes, prior to mobilizing onsite.**

Forms may be completed online through Wrap Portal or emailed to the OCIP Coordinator.

*Enrollment is not complete until you receive notification of successful enrollment from Lockton. You will not be allowed to mobilize at the project site until enrollment is complete.*

Required Enrollment Forms/Documentation:

* Subcontractor award
* Contractor/subcontractor application
* Add alternate / excluded insurance cost worksheet
* Agreement
* Compliant certificate of insurance

Failure to complete the enrollment may result in the following actions:

* No admittance to the project site until enrollment is completed.
* Progress payments withheld for you and your lower-tiered subcontractors.
* No insurance coverage by the OCIP policies.
* Future work opportunities at this project site could be jeopardized.

*Temporary labor services are to be treated as subcontractors.*

## Subcontractor Award (hiring lower-tiered subcontractor)

Notify Lockton of all subcontracts you let by completing the subcontractor award form. Subcontractors must be enrolled prior to mobilization. No enrolled subcontractor or vendor shall release any of its subcontractors or vendors of any obligations outlined in this manual or the OCIP contract language.

- Include OCIP information in subcontract award packages:
  - OCIP contract language
  - OCIP safety requirements
  - Project insurance manual (PIM)

- Immediately submit "subcontractor award" form for each subcontract awarded.

- Advise all subcontractors of site orientation procedures before beginning work at the site (hard hat stickers, etc.)

- Verify subcontractors have completed enrollment and received Lockton approval prior to mobilization.

- Require subcontractors to notify Lockton immediately of each subcontract award.

- **Do not allow any non-enrolled contractor/subcontractor to begin work on site. Approval must be received from Lockton before they mobilize at the project site.**

- Assist Lockton when enrolled subcontractors fail to submit necessary information or otherwise do not cooperate with administrative procedures.

- All subcontractors will be required to meet the OCIP insurance requirements. LN Apartments, LLC has the authority to deny access to the project site for noncompliance of insurance or safety requirements.

- **It is mandatory that you verify whether your subcontractor can meet these requirements prior to awarding the contract.**

## Deduct Process

**Submit Bids for original scope of work and subsequent change orders excluding the cost of insurance for coverages provided by the OCIP.**

**Provide an add alternate line item identifying the excluded cost of insurance.**

Contractor/Subcontractors (unless excluded) are required to submit their bid price excluding the insurance costs (including any profit, overhead, and contingencies) for general liability and umbrella/excess, which are being provided by the OCIP. Contractor/subcontractors shall provide an OCIP insurance add alternate line item identifying the excluded cost of insurance by completing the Add Alternate / Excluded Insurance Cost Worksheet. In calculating the insurance cost, include onsite exposures only and use the limits of insurance specified in the contract documents. The identified cost of insurance is subject to review and approval by LN Apartments, LLC and the OCIP Coordinator.

## Certificate of Insurance

Prior to beginning work at this project site, enrolled and excluded contractors and subcontractors of all tiers shall furnish certificates of insurance evidencing coverage shown in the Contractor Required Insurance section of this PIM. An ACORD Certificate of Insurance is the required form. Each certificate must include the required wording in the Description of Operations section of the sample certificate of insurance in the Forms section of this PIM.

The contractor and subcontractor are responsible for seeing that updated certificates are filed with Lockton as coverage expires or is changed before your date of expiration. The required wording, per the sample certificate of insurance in the Forms section, must be included on all renewal certificates.

Our acceptance of your certificate of insurance does not relieve your obligation to comply with insurance requirements.

### Additional insured/waiver of subrogation

- All policies of insurance that are related in any way to the work at this project site shall provide additional insured status, primary and non-contributory (except workers' compensation) and waiver of subrogation (where allowed by law) naming LN Apartments, LLC, Portrait Construction of Florida, Inc. , Mark Baron Construction, Inc., Mark Portrait Construction and any others as required by contract and their respective officers, directors, agents and employees as respects the referenced project.
- General liability additional insured status is required for products/completed operations for the statute of repose.
- Each contractor and subcontractor shall require each of its subcontractors of all tiers to provide additional insured status and waiver of subrogation, as stated above.

## Final Adjustment / Close-Out

Immediately notify Lockton when your contract is complete by completing the Notice of Completion form included in the forms section of this PIM. All lower-tiered subcontractors must submit their notice of completion forms. Their closeouts must be completed prior to your final close out.

A certificate of insurance evidencing required coverage at contract completion or substantial completion must be submitted.

All OCIP policies will automatically terminate on substantial completion except for the completed operations coverage of the general liability and umbrella/excess policies.

## Termination

While it is the intent of LN Apartments, LLC to keep this OCIP in force throughout the term of the project, LN Apartments, LLC reserves the right to terminate the OCIP at any time. LN Apartments, LLC shall provide 30 days advance written notice to all contractors and subcontractors of all tiers insured under a policy of insurance provided by this OCIP.

In the event the OCIP is terminated, all enrolled contractors and subcontractors of all tiers must provide coverage as outlined in the contractor/subcontractor insurance requirements section of this manual. Written evidence of insurance shall be provided by LN Apartments, LLC prior to the termination of coverage under the OCIP.

# OCIP Forms

The below listed forms are provided in this PIM. Contractors/subcontractors can either complete and submit the forms via email to the OCIP Coordinator or provide the required enrollment and completion information online via Lockton's Wrap Portal.

- Contractor/subcontractor application

- Add alternate / excluded insurance cost worksheet

- Agreement

- Certificate of Insurance

- Subcontractor award

- Notice of completion

# Contractor/Subcontractor Application

**LN Apartments, LLC**
**Futura at Nona Cove Apartments**

Contractor name: _____

Do you have any subsidiaries? ☐ Yes ☐ No    Are you a subsidiary? ☐ Yes    ☐ No

| Contact: | | | |
|---|---|---|---|
| | Name | Phone | Fax |
| Company address: | E-mail address | | |
| | Street address | | |
| | City | State | Zip |

Company you were hired by: _____

Do you have a written contract? ☐    Yes    ☐ No

Contract number: _____

Contract value: $_____    Self-performed contract amount: $_____

Estimated start date: _____    Estimated completion date: _____

Scope of work: _____

Contractors equipment on-site:    ☐ Yes    ☐ No
Off-site fabrication:    ☐ Yes    ☐ No

Federal employer's identification number _____

We **will not** hire any sub-tier contractors (including subsidiaries/sister companies, etc.). Check if applicable ☐.

We **will** hire a sub-tier contractor (including subsidiaries/sister companies, etc.). Complete below.

**Sub-tier contractor company:** _____

**Submit "subcontractor award" form for each subcontractor.**

This form must be emailed to:

LOCKTON COMPANIES
Attn:      Carmencita Perez
Email:     caperez@lockton.com
Phone:     813-559-6017

Signature: _____    Date: _____

# Add Alternate / Excluded Insurance Cost Worksheet

## LN Apartments, LLC
## Futura at Nona Cove Apartments

Page 1 of 2

Contractor name: _____

You were hired by: _____

Contract number: _____    Contract value: $ _____

**I. Primary general liability GL policy deductible/retention:**    $ _____

| Labor classification | GL class code | Policy exposure basis (Estimated payroll or contract value) | GL rate per $1,000 | GL premium |
|---|---|---|---|---|
| | | $ | $ | $ |
| | | | | |
| | | | | |

Total general liability premium (A):  $ _____

**II. Excess/umbrella liability**

| | Excess/umbrella premium |
|---|---|
| If policy is flat rated, use 25% of general liability premium for excess/umbrella liability | |

Total excess/umbrella premium (B):  $ _____

**III. Profit overhead and contingency:**    % of premium    (C):  $ _____

**IV. Total estimated insurance premium / add alternate line item**    (A+B+C):  $ _____

**Authorized by** _____    _____
                                    Signature                                    Date



# Agreement

**Agreement:**

I hereby warrant that this worksheet accurately reflects the projected Work to be completed at the Project Site. I also hereby warrant the accuracy of information provided and agree that LN Apartments, LLC, Lockton, and/or the OCIP Carrier may review and/or audit my records and each Subcontractor's records to confirm the accuracy of information. This includes, without limitation, any changes to the Work as referenced in this Contract. I further warrant and agree that LN Apartments, LLC is entitled to and reserves the right to collect additional insurance deducts as may be developed as a result of said audits, including any lower-tiered Subcontractors insurance deducts.

LN Apartments, LLC, at its sole expense, will furnish the OCIP coverage listed for the benefit of all enrolled contractors and their subcontractor(s). In consideration of LN Apartments, LLC providing OCIP coverage, the contractors will:

- Bid contracts excluding the cost of insurances provided by the OCIP. With your signature, you are confirming that the applicable insurance costs identified on the add alternate / excluded insurance cost worksheet have been excluded from your bid price and will be excluded on any subsequent change orders.

- Assign to LN Apartments, LLC all return premiums, dividends, refunds, discounts, and/or other credits due under the OCIP policies.

The "Add Alternate / Excluded Insurance Cost Worksheet" represents the estimated insurance cost that was excluded from the Contract price since LN Apartments, LLC anticipates furnishing the Construction Insurance. In the event LN Apartments, LLC does not provide OCIP insurance, this amount will be added back into the Contract amount.

Signed by: _____     Date prepared: _____

*If you have been awarded more than one contract, a separate application and agreement are required for each contract.*

**This form must be emailed to:**

LOCKTON COMPANIES
Attn:      Carmencita Perez
Email:     caperez@lockton.com
Phone:     813-559-6017

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | Broker's Name (Name, Address) | | | CONTACT NAME: | | | |
|---|---|---|---|---|---|---|---|
| | | | | PHONE (A/C, No. Ext): | | FAX (A/C, No): | |
| | | | | E-MAIL ADDRESS: | | | |
| | | | | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| | | | | INSURER A: Insurance Company | | | |
| INSURED | Contractor (Name, Address) | | | INSURER B: | | | |
| | | | | INSURER C: | | | |
| | | | | INSURER D: | | | |
| | | | | INSURER E: | | | |
| | | | | INSURER F: | | | |

**COVERAGES**   **CERTIFICATE NUMBER:**   **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM, OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED, OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS, AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | | | | | | | EACH OCCURRENCE | $1,000,000 |
| | X | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $50,000 |
| | CLAIMS-MADE X OCCUR | | X | X | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | POLICY X PRO- JECT LOC | | | | | | | | |
| A | AUTOMOBILE LIABILITY | | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X ANY AUTO | | | | | | | | |
| | ALL OWNED AUTOS   SCHEDULED AUTOS | | X | X | | | | IF HAULING HAZARDOUS MATERIAL | $3,000,000 |
| | X HIRED AUTOS X NON-OWNED AUTOS | | | | | | | | |
| A | X UMBRELLA LIAB X OCCUR | | | | | | | General Contractor | $5,000,000 |
| | EXCESS LIAB   CLAIMS-MADE | | X | X | | | | EXCLUDED Contractor/Subcontractors | $2,000,000 |
| | DED   RETENTION $ | | | | | | | | |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY   Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE   N OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | X | | | | X WC STATU- TORY LIMITS   OTH- ER | |
| | | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| A | Professional Liability (if required) Pollution Liability (if required) | | X | X X | | | | See contract requirement | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

RE: LN Apartments, LLC – Futura at Nona Cove Apartments.
LN Apartments, LLC, Portrait Construction of Florida, Inc., Mark Baron Construction, Inc., Mark Portrait Construction, and all parties required to be indemnified by contract and all other parties as reasonably requested by LN Apartments, LLC are added as Additional Insureds for all required insurances except Workers Compensation. All insurances afforded to the additional insureds shall be primary and non-contributory to any other insurance maintained by LN Apartments, LLC or the additional insureds.
A Waiver of Subrogation is included for all required insurance policies in favor of the additional insureds. Umbrella/Excess coverage is follow form to underlying policies. General Liability requirements apply only for off-site operations for enrolled contractors and for All Operations for excluded contractors. 30 day notice of cancellation is required for all policies.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| LN Apartments, LLC c/o Lockton Companies Attn: Carmencita Perez 1200 SW 145th Avenue, Suite 140A, Pembroke Pines, FL 33027 Email: caperez@lockton.com | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.   AUTHORIZED REPRESENTATIVE |

ACORD 25 (2010/05)   The ACORD name and logo are registered marks of ACORD   © 1988-2010 ACORD CORPORATION. All rights reserved

## Subcontractor Award

### LN Apartments, LLC
### Futura at Nona Cove Apartments

**\*\*NOTE:** This form must be filled out completely and sent to Lockton no later than one business day after your company hires a subcontractor to work at the OCIP project.

Your company name: _____

Information about the company you hired:

Subcontractor name: _____

Enrollment contact: _____  _____  _____
                    *Name*                *Phone*      *Fax*

                    _____
                    *E-mail address*

Company address:    _____
                    *Address, City, State, Zip*

FEIN #:             _____

Estimated start date: _____   Contract value: $ _____

Est. completion date: _____

Scope of Work:      _____

Signature:          _____   Date: _____

---

**This form must be emailed to:**

LOCKTON COMPANIES
Attn:   Carmencita Perez
Email:  caperez@lockton.com
Phone:  813-559-6017

---

# Notice of Completion

LN Apartments, LLC
Futura at Nona Cove Apartments

## I. Completed work

Your company name: _____

Contract number: _____

Your company was hired by: _____

## II. Subcontractors

List all your subcontractors:

| | |
|---|---|
| | |
| | |
| | |

## III. Contract information

Final contract value:   $_____   This is our only contract at this project site:   Yes ☐   No ☐

Total on-site payroll:   $_____

Completion date:   _____

Signature: _____   Date: _____
*Controller or company officer*

---

**This form must be emailed to:**

LOCKTON COMPANIES
Attn:     Carmencita Perez
Email:    caperez@lockton.com
Phone:    813-559-6017

## Claim Reporting

All General Liability claims, including incidents, accidents and unusual circumstances which may reasonably be expected to develop into claims against OCIP policies, must be reported by contractors/subcontractors of all tiers as soon as possible to the on-site project manager. All accidents and incidents must be reported no later than the close of business on the date of the occurrence. Reports may be made by telephone or email to the contacts listed below.

Following any accident or incident, basic scene investigation should be undertaken by any involve contractor/subcontractor's safety representative to establish the facts of the accident and to assist in the OCIP carrier's claims adjudication process. Steps include:

- Determine what happened and write it down.
- Take photographs and/or measurements, as applicable.
- Identify all involved parties, including witnesses, and obtain contact information.
- Record date(s), time(s) and weather conditions.
- Preserve and protect physical evidence.
- Maintain complete confidentiality.
- Cooperate fully with the OCIP carrier's adjuster.

The project manager or his/her designee will:

- Work with the involved contractor/subcontractor(s) to take necessary action to stop any unsafe act or condition in order to prevent further injury or damage.
- Coordinate the investigation surrounding the incident/accident and assure completion of required investigative reports.
- Report the incident/accident to Lockton Companies and the insurance carrier(s) and include the investigation report and claim form.

## Report and send General Liability claims to:

| Company | Contact | Contact Information |
|---|---|---|
| Portrait Construction of Florida, Inc. f/k/a Mark Portrait Construction | Shelley Ewing<br>Chuck Siudak | sewing@portraitfl.com<br>csiudak@portraitfl.com |
| LN Apartments, LLC | Ryan Mesce | rmesce@futuracompany.com |
| Lockton Companies | Dorty Stunson | dstunson@lockton.com |

DocuSign Envelope ID: 45B49795-491C-4AD1-A165-E5B31A5834FB

# OCIP *Accident/Incident Report*

| Project Name: | LN Apartments, LLC – Futura at Nona Cove | | |
|---|---|---|---|
| Company Name: | | | |
| Name of Person Reporting: | | Phone: | |
| Email: | | | |

**ACCIDENT/INCIDENT INFORMATION**

| Date of Accident/Incident: | | Date Notified: | |
|---|---|---|---|
| Address or Location Where Accident/Incident Occurred (Be Specific): | | | |
| Were the Policy Contacted? | | Report Number: | |
| Brief Description of Accident/incident (Use a separate sheet and diagram if necessary): | | | |

**CLAIMANT INFORMATION**

| Claimant Name: | | Phone: | |
|---|---|---|---|
| Email Address: | | | |
| Address: | | | |
| Injured Party is Male or Female? | | | |

**INJURY INFORMATION**

| Were Any Injuries Incurred? | |
|---|---|
| Brief Description of Injury (if an injury occurred): | |
| What Initial Treatment Did the Claimant Receive? (First Aid, Emergency, Etc.) | |

DocuSign Envelope ID: 45B46725-491A-40A7-8161-A2913AC834E9

**WITNESS INFORMATION**

| Witness Name: | | Phone: | |
|---|---|---|---|
| Email Address: | | | |
| Address: | | | |
| Witness Name: | | Phone: | |
| Email Address: | | | |
| Address: | | | |

**ADDITIONAL COMMENTS**

| |
|---|
| |
| |
| |
| |

**DIAGRAM (SHOW NORTH / SOUTH):**

| |
|---|
| |

DocuSign Envelope ID: 45B45735-491A-40A7-A155-52B53C834E5A

DocuSign Envelope ID: 45B45735-491A-4AA7-8153-9302AC834E5



# EXHIBIT H



## ADDITIONAL PROVISIONS TO THE SUBCONTRACT AGREEMENT

### HUD PROVISIONS:

1) All parties hereby agree that SUBCONTRACTOR assures that either he or an authorized representative of his company will attend all jobsite meetings as established by CONTRACTOR's supervisory staff unless their presence is not requested by CONTRACTOR. In the event a representative shall represent SUBCONTRACTOR at these meetings, said representative shall be able to make binding commitments on all matters to be discussed at such meetings, including cost, payments, change orders, time schedules and manpower requirements. Further, financial penalties per meeting will be imposed if SUBCONTRACTOR or SUBCONTRACTOR's representative is not present at these meetings. The following person(s) are designated as SUBCONTRACTOR's representatives having the authority as stated herein.

Subcontractor Designated Representative: _____

{Optional Representative} _____

Subcontractor Certified Payroll Contact & Phone # _____

2) Requirement of, per US Department of Housing and Urban Development, HUD 92442-A, SUBCONTRACTOR waives right to file a mechanic's or materialman's lien or maintain any claim against improvements for or on account of any work done, labor performed or materials furnished under this Subcontract agreement.

3) SUBCONTRACTOR agrees to send Certified HUD payroll sheets in weekly for this Subcontract Agreement. (Through Elations.com; #067-35564 Futura @ Nona Cove)

4) Before work commences, the SUBCONTRACTOR shall enroll in Futura at Nona Cove's Owner Controlled Insurance Policy with Willis Towers Watson with the contact listed below:

> Janice McNary, CISR
> OCIP Administrator, Construction Practice
> Willis Towers Watson
> 3407 W. Dr. Martin Luther King Blvd.
> Lakeside Suite #200
> Tampa, FL 33607
> Mobile: 813-450-9654
> Janice.mcnary@willistowerswatson.com
> www.willistowerswatson.com

5) It is fully understood that SUBCONTRACTOR will be responsible for keeping its part of the job clean and in an orderly fashion subject to the approval of CONTRACTOR and ARCHITECT. Further, SUBCONTRACTOR shall be totally responsible for the clean up on a daily basis of all debris generated by SUBCONTRACTOR'S daily operations. Should it become necessary for CONTRACTOR to incur any expenses performing cleanup work or removing debris from site for SUBCONTRACTOR, such expense will be deducted from SUBCONTRACTOR's contract amount.

6) All work shall be in accordance with Project Plans and Specifications.

7) Project Includes **Davis Bacon Wages rates**, see attached at end of Contract.

DocuSign Envelope ID: 9063119A-D956-4A18-ABFE-E4966ADD464

**Standard Short Form Agreement Between Contractor and Subcontractor**

This Agreement is made this 14th day of May, 2021 by and between

**GENERAL CONTRACTOR:**
Portrait Construction of Florida, Inc
2452 Lake Emma Rd. #1040
Lake Mary, Florida 32746
Phone: (407) 831-6275

**SUBCONTRACTOR:**
Sousa Cabinets Inc.
20363 Northcliff Street
Orlando, Florida 32833
Phone: (321) 804-5342

PROJECT:      Futura at Nona Cove

OWNER:       LN Apartments, LLC

ARCHITECT:   Charlan Brock & Associates

ENGINEER:    Z Development Services

**TERMS:**

**SUBCONTRACTOR'S WORK**. SUBCONTRACTOR agrees to provide and complete all Work ("Work") required of it under the Contract Documents, including, but not limited to, all labor, services, materials, installation, clean-up, hoisting, supplies, insurance equipment, scaffolding, tools, and other facilities of every kind required for the prompt and efficient performance of all Cabinet Installation. The Work is per the Drawings and Specifications in strict accordance with the Contract Documents. SUBCONTRACTOR shall give timely notices to authorities pertaining to subcontract Work and shall be responsible for all permits, fees, licenses, assessments, inspections, testing and taxes necessary to complete subcontract Work.

**SUBCONTRACT AMOUNT**. CONTRACTOR agrees to pay SUBCONTRACTOR for satisfactory and timely performance and completion of subcontract Work: $260,000.00

Retainage shall be ten percent (10.0%).

**SCOPE:**

Scope of Work:

1. Subcontractor includes all Cabinets Labor complete and in accordance with the approved selections by the Owner, shop drawings, and the contract Documents. Includes the Cabinet installation for the entire building. The Project includes 260 Apartment units, 1 Apartment Buildings, 1 Clubhouse, and 1 Compactor enclosure. Clubhouse cabinets/labor are provided by others except for the Breakroom which is provided by this subcontractor.
2. Subcontractor includes furnishing and installing all labor, supervision, hoisting, insurance, taxes, layout, safety, licenses, permits, transportation, tools, equipment, clean-up as necessary for a complete installation including, but not limited to the following:

    1. Mobilization and Layout- This subcontractor shall mobilize upon notice from the Contractor and proceed with the stocking and installation for all facets of this scope of work. This subcontractor may provide a container for

Initial _MS_    Initial _BLA_    **Alterations to this Agreement are Prohibited**    Page 2 of 45
Sub            Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

storage of materials on site as directed by PC superintendent. PC will allow use of lift for stocking by this subcontractor by request.

2. Specialty Requirements –Subcontractor includes for each building section, prior to the installation of drywall, to verify that the measurements for all areas to receive cabinets are correct and square to receive cabinets. Any areas that fail to meet the requirements for proper installation shall be brought to the attention of the Contractor, detailed by unit in order that the Contractor can have the corrections made prior to the installation of Drywall. All cabinets shall be installed true and plumb including hardware and trim fully completed prior to start of punch work. This subcontractor shall have personnel available to timely complete any and all punch requirements by PC Foreman.

3. Schedule: Subcontractor agrees to be bound by the Milestone schedule attached to this Subcontract. Time is of the essence of this Agreement. Subcontractor specifically agrees to the following duration times to be completed to allow the Contractor to start certain portions of the project that are critical to the overall schedule.

3. Building cabinet stocking and installation: Each Building Section is a duration of 6 days. Subcontractor includes simultaneous work progress on a minimum of (2) building sections at the same time.

DURATION:



Initial    MS    Initial    BLA

Sub    Contractor    **Alterations to this Agreement are Prohibited**    Page 3 of 45

## Standard Short Form Agreement Between Contractor and Subcontractor

**1)     CONTRACT DOCUMENTS.** The "Contract Documents" include 1) this Subcontract Agreement and all documents attached hereto as Exhibits; 2) all documents which comprise the Contract between the Owner and CONTRACTOR; 3) all General Conditions, Supplementary Conditions and other conditions applicable to the Project; 4) the Plans and Drawings prepared for the Project; 5) the Project Manual or Specifications, including but not limited to Specification Divisions 1 through 16; 6) all bulletins and addenda issued in connection with the Project; 7) all standards, requirements or conditions incorporated into the Contract Documents by reference; and 8) any amendments, modifications, or changes to any or all of those documents identified in (1) – (7) which may occur during the Project. No other documents except those identified herein shall be considered Contract Documents. In the event of conflict, inconsistencies, variations between the provisions of the Subcontract Agreement and any other Contract Documents, including the Contract between the Owner and CONTRACTOR, the Subcontract Agreement shall govern. SUBCONTRACTOR and its sub-subcontractors and suppliers shall be bound to CONTRACTOR by all of the provisions of the Contract Documents and shall strictly comply therewith in all respects. SUBCONTRACTOR shall perform Subcontract Work under the general direction of CONTRACTOR and shall cooperate with CONTRACTOR so CONTRACTOR may fulfill obligations to Owner. A. This subcontractor agrees to specifically adhere to the requirements of Division 00 and 01 of the specifications. As the CONTRACTOR and SUBCONTRACTOR have been party to the design and engineering of the project, they have a thorough knowledge of the Contract Documents. Therefore, the SUBCONTRACTOR accepts full responsibility for the completeness and coordination of its scope of Work as to ensure quality installation and product. Any material, assembly, device, detail, component, and/or means/method which may not necessarily be shown on the Contract Documents but is required to make the project complete and suitable for its intended purpose shall be the SUBCONTRACTOR's sole responsibility without any adjustment to the subcontract amount.

**1a)     Drawing Log**

| Discipline | Drawing No. | Drawing Title | Revision | Drawing Date |
|---|---|---|---|---|
| | | FUTURA AT NONA COVE 10.16.19 | | |
| Civil | C0 | CIVIL DATA AND NOTES SHEET | 3 | 6/15/2020 |
| Civil | C1.0 | OVERALL SITE PLAN | 2 | 6/15/2020 |
| Civil | C1.1 | DEMOLITION PLAN | 2 | 6/15/2020 |
| Civil | C2.0 | SITE DIMENSION PLAN | 3 | 6/15/2020 |
| Civil | C2.1 | EMERGENCY & SOLID WASTE AUTO TURN ANALYSIS | 2 | 6/15/2020 |
| Civil | C3.0 | SITE UTILITY PLAN | 8 | 6/26/2020 |
| Civil | C4.0 | GRADING AND DRAINAGE PLAN | 2 | 6/15/2020 |
| Civil | C4.1A | CIVIL DATA AND NOTES SHEET | 1 | 6/15/2020 |
| Civil | C4.1B | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.1C | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.2 | COURTYARD & POOL AREA GRADING PLANS | 1 | 6/15/2020 |
| Civil | C4.3A | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3B | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3C | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C5.0 | SWPP PLAN | 3 | 6/15/2020 |
| Civil | C6 | CONSTRUCTION DETAILS | 4 | 6/15/2020 |
| Civil | C7 | OUC STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | C8 | OUC DETAILS/CITY OF ORLANDO STANDARD NOTES | 4 | 6/15/2020 |
| Civil | C9 | OCU SEWER STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | CV | COVER SHEET | 7 | 6/26/2020 |
| Radon | R1.0 | UNITS S1-A2 | 0 | 11/15/2019 |
| Radon | R2.0 | UNITS A3 – B1 | 0 | 11/15/2019 |



Initial _____ Sub    Initial _____ Contractor    **Alterations to this Agreement are Prohibited**    Page 4 of 45

Standard Short Form Agreement Between Contractor and Subcontractor

| Radon | R3.0 | UNITS B2 - B3 | 0 | 11/15/2019 |
|---|---|---|---|---|
| Radon | R4.0 | UNITS C1-C2 | 0 | 11/15/2019 |
| Radon | R5.0 | CLUBHOUSE | 0 | 11/15/2019 |
| Architectural | A0.01 | PROJECT COVER SHEET | 5 | 7/31/2020 |
| Architectural | A0.02 | PROJECT INDEX OF DRAWINGS | 11 | 8/12/2020 |
| Architectural | A0.02a | DESIGN ASSUMPTIONS | 1 | 5/16/2019 |
| Architectural | A0.03 | PROJECT INDEX OF DRAWINGS | 6 | 7/31/2020 |
| Architectural | A0.04 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.05 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.06 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.07 | PROJECT DATA SHEET | 1 | 7/31/2020 |
| Architectural | A0.08 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.10 | ARCHITECTURAL SITE PLAN | 4 | 7/31/2020 |
| Architectural | A0.11 | OVERALL BUILDING FIRST FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.12 | OVERALL BUILDING SECOND FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.13 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.21 | OVERALL CLUBHOUSE OCCUPANCY PLAN | 4 | 7/31/2020 |
| Architectural | A0.31 | FIRST FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.32 | SECOND FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.33 | UPPER FLOORS SEQUENCE PLANS | 3 | 7/31/2020 |
| Architectural | A0.41 | OVERALL BUILDING GROUND FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.42 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.43 | OVERALL BUILDING SIXTH FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.44 | OVERALL BUILDING TYPICAL ROOF LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A1.00 | OVERALL BUILDING SLAB CONTROL PLAN | 3 | 7/31/2020 |
| Architectural | A1.01 | OVERALL BUILDING FIRST FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.02 | OVERALL BUILDING SECOND FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.03 | OVERALL BUILDING THIRD FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.04 | OVERALL BUILDING FOURTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.05 | OVERALL BUILDING FIFTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.06 | OVERALL BUILDING ROOF CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.11A | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11B | PARTIAL FIRST FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.11C | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11D | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11E | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11F | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12A | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12B | PARTIAL SECOND FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.12C | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |



**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Architectural | A1.12D | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12E | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12F | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13A | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13B | PARTIAL THIRD FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.13C | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13D | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13E | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13F | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14A | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14B | PARTIAL FOURTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.14C | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14D | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14E | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14F | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15A | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15B | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.15C | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15D | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15E | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15F | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16A | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16B | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16C | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16D | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16E | PARTIAL ROOF PLAN BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16F | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.21 | FIRST FLOOR GARAGE PLAN | 7 | 7/31/2020 |
| Architectural | A1.22 | SECOND FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.23 | THIRD FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.24 | FOURTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.25 | FIFTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.26 | SIXTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.27 | ROOF LEVEL GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.28 | ROOF LEVEL GARAGE SLAB PLAN | 3 | 7/31/2020 |
| Architectural | A2.01 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.02 | OVERALL BUILDING ELEVATIONS | 6 | 7/31/2020 |
| Architectural | A2.03 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.04 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.05 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.06 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |

Initial MS Sub   Initial BLA Contractor   **Alterations to this Agreement are Prohibited**   Page 6 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Architectural | A2.07 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A2.08 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.09 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.11 | PARTIAL ENLARGED BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A3.11 | TYPICAL CLUB BUILDING SECTION | 1 | 7/31/2020 |
| Architectural | A3.21 | TYPICAL GARAGE BUILDING SECTION | 3 | 7/31/2020 |
| Architectural | A4.01 | UNIT S1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02 | UNIT A1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02A | UNIT A1 PLAN | 2 | 7/31/2020 |
| Architectural | A4.03 | UNIT A2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.04 | UNIT A3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.05 | UNIT B1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.06 | UNIT B2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.07 | UNIT B3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.08 | UNIT C1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.21 | CLUB PLAN FIRST FLOOR DIMENSIONS | 7 | 8/12/2020 |
| Architectural | A4.22 | CLUB PLAN SECOND FLOOR DIMENSIONS | 5 | 7/31/2020 |
| Architectural | A4.23 | CLUB PLAN FIRST FLOOR NOTES | 4 | 8/12/2020 |
| Architectural | A4.24 | CLUB PLAN SECOND FLOOR NOTES | 4 | 7/31/2020 |
| Architectural | A4.25 | ENLARGED MAIL ROOM | 3 | 7/31/2020 |
| Architectural | A4.31 | ENLARGED GARAGE PLANS | 4 | 7/31/2020 |
| Architectural | A4.32 | ENLARGED CLOSET PLANS | 2 | 7/31/2020 |
| Architectural | A4.33 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.34 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.35 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.36 | ENLARGED TRASH AND RECYCLING PLANS | 2 | 7/31/2020 |
| Architectural | A4.71 | ACCESSIBILITY REQUIREMENTS DWELLING UNITS | 2 | 7/31/2020 |
| Architectural | A4.72 | ACCESSIBILITY REQUIREMENT PUBLIC SPACES | 2 | 7/31/2020 |
| Architectural | A4.81 | ENLARGED UNIT ACCESSIBILITY PLANS | 3 | 7/31/2020 |
| Architectural | A4.91 | INTERIOR ELEVATIONS UNITS | 3 | 7/31/2020 |
| Architectural | A4.92 | INTERIOR ELEVATIONS UNITS | 1 | 7/31/2020 |
| Architectural | A5.01 | APARTMENT BUILDING WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.02 | GARAGE WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.11 | TYPICAL EXTERIOR WALL SECTIONS | 3 | 7/31/2020 |
| Architectural | A5.21 | TYPICAL TENANT WALL SECTIONS | 4 | 7/31/2020 |
| Architectural | A5.22 | TYPICAL TENANT WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.31 | TYPICAL BALCONY WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.41 | GARAGE WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.01 | STAIR PLANS | 2 | 7/31/2020 |
| Architectural | A6.02 | STAIR SECTIONS | 3 | 7/31/2020 |
| Architectural | A6.03 | STAIR SECTION AND PLAN | 1 | 7/31/2020 |



Initial MS — Sub    Initial BLA — Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Architectural | A6.04 | STAIR SECTION AND PLANS | 2 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A6.11 | TYPICAL STAIR DETAILS | 2 | 7/31/2020 |
| Architectural | A6.12 | PRECAST STAIR DETAILS | 1 | 7/31/2020 |
| Architectural | A6.21 | ELEVATOR PLAN AND SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.41 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.42 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A7.01 | DOOR SCHEDULE | 4 | 7/31/2020 |
| Architectural | A7.02 | WINDOW SCHEDULE | 4 | 8/12/2020 |
| Architectural | A7.03 | DOOR & WINDOW INSTALLATION DETAILS | 3 | 7/31/2020 |
| Architectural | A7.11 | TYPICAL DOOR DETAILS | 3 | 7/31/2020 |
| Architectural | A7.21 | TYPICAL WINDOW DETAILS | 3 | 7/31/2020 |
| Architectural | A7.22 | TYPICAL STOREFRONT DETAILS | 4 | 7/31/2020 |
| Architectural | A7.31 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.32 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.33 | TYPICAL ARCHITECTURAL DETAILS | 2 | 7/31/2020 |
| Architectural | A7.34 | TYPICAL ARCHITECTURAL DETAILS | 1 | 7/31/2020 |
| Architectural | A7.41 | TYPICAL WATERPROOFING & BALCONY FLASHING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.42 | TYPICAL WATERPROOFING DETAILS | 2 | 7/31/2020 |
| Architectural | A7.51 | TYPICAL ROOFING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.52 | TYPICAL ROOF DETAILS | 3 | 7/31/2020 |
| Architectural | A7.61 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.62 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.63 | TYPICAL FIRE CONTROL DETAILS | 4 | 7/31/2020 |
| Architectural | A7.71 | TYPICAL SOUND CONTROL DETAILS & NOTES | 3 | 7/31/2020 |
| Architectural | A7.81 | TYPICAL RADON CONTROL DETAILS & NOTES | 1 | 7/31/2020 |
| Architectural | A7.91 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.92 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.93 | TYPICAL GARAGE SIGN DETAILS | 1 | 7/31/2020 |
| Architectural | A7.94 | TYPICAL GARAGE PAINT AND SIGN DETAILS | 2 | 7/31/2020 |
| Architectural | A8.11 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.12 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.13 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.14 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.21 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.22 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.31 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.32 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.33 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.34 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.35 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.36 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Architectural | BACK | PROJECT BACK SHEET | 1 | 7/31/2020 |
|---|---|---|---|---|
| Structural | S1.01 | STRUCTURAL GENERAL NOTES | 2 | 12/20/2019 |
| Structural | S1.02 | STRUCTURAL GENERAL NOTES | 1 | 10/16/2019 |
| Structural | S1.03 | GENERAL NOTES AND WIND DIAGRAMS | 2 | 2/24/2020 |
| Structural | S1.04 | SHEARWALL SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.05 | SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.06 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.07 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.11 | OVERALL BUILDING CONTROL PLAN - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11A | PARTIAL BUILDING PLAN - A - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11B | PARTIAL BUILDING PLAN - B - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11C | PARTIAL BUILDING PLAN - C - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11D | PARTIAL BUILDING PLAN - D - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11E | PARTIAL BUILDING PLAN - E - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11F | PARTIAL BUILDING PLAN - F - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.12 | OVERALL BUILDING CONTROL PLAN - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12A | PARTIAL BUILDING PLAN - A - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12B | PARTIAL BUILDING PLAN - B - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12C | PARTIAL BUILDING PLAN - C - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12D | PARTIAL BUILDING PLAN - D - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12E | PARTIAL BUILDING PLAN - E - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12F | PARTIAL BUILDING PLAN - F - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13 | OVERALL BUILDING CONTROL PLAN - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13A | PARTIAL BUILDING PLAN - A - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13B | PARTIAL BUILDING PLAN - B - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13C | PARTIAL BUILDING PLAN - C - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13D | PARTIAL BUILDING PLAN - D - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13E | PARTIAL BUILDING PLAN - E - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13F | PARTIAL BUILDING PLAN - F - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14 | OVERALL BUILDING CONTROL PLAN - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14A | PARTIAL BUILDING PLAN - A - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14B | PARTIAL BUILDING PLAN - B - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14C | PARTIAL BUILDING PLAN - C - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14D | PARTIAL BUILDING PLAN - D - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14E | PARTIAL BUILDING PLAN - E - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14F | PARTIAL BUILDING PLAN - F - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15 | OVERALL BUILDING CONTROL PLAN - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15A | PARTIAL BUILDING PLAN - A - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15B | PARTIAL BUILDING PLAN - B - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15C | PARTIAL BUILDING PLAN - C - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |



Initial Sub _____    Initial Contractor _____

**Alterations to this Agreement are Prohibited**

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Structural | S1.15D | PARTIAL BUILDING PLAN - D - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15E | PARTIAL BUILDING PLAN - E - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15F | PARTIAL BUILDING PLAN - F - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.16 | OVERALL BUILDING CONTROL PLAN - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16A | PARTIAL BUILDING PLAN - A - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16B | PARTIAL BUILDING PLAN - B - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16C | PARTIAL BUILDING PLAN - C - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16D | PARTIAL BUILDING PLAN - D - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16E | PARTIAL BUILDING PLAN - E - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16F | PARTIAL BUILDING PLAN - F - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.21 | FOUNDATION AND SLAB ON GRADE PLAN GARAGE | 3 | 5/20/2020 |
| Structural | S3.11 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.12 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.13 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.14 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.21 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.22 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.23 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.24 | SECTIONS AND DETAILS | 0 | 5/16/2019 |
| Structural | S3.31 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.32 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.41 | SECTIONS AND DETAILS | 1 | 5/20/2020 |
| Structural | S3.42 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.43 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.44 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Electrical | E0.01 | ELECTRICAL SYMBOLS LEGEND AND GENERAL NOTES | 3 | 8/12/2020 |
| Electrical | E0.10 | ELECTRICAL SITE PLAN | 4 | 5/4/2020 |
| Electrical | E0.11 | ELECTRICAL SITE LIGHTING PLAN | 4 | 8/12/2020 |
| Electrical | E0.12 | ELECTRICAL SITE PHOTOMETRIC PLAN | 2 | 4/15/2020 |
| Electrical | E1.11A | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Electrical | E1.11B | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 8/12/2020 |
| Electrical | E1.11C | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 4 | 8/12/2020 |
| Electrical | E1.11D | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.11E | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.11F | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.12A | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.12B | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.12C | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.12D | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Electrical | E1.12E | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.12F | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.13A | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.13B | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.13C | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.13D | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.13E | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.13F | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.14A | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.14B | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.14C | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.14D | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.14E | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.14F | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.15A | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.15B | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.15C | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.15D | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.15E | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.15F | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.16A | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 2 | 8/12/2020 |
| Electrical | E1.16B | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 8/12/2020 |
| Electrical | E1.16C | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 8/12/2020 |
| Electrical | E1.16D | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 2 | 8/12/2020 |
| Electrical | E1.16E | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 2 | 8/12/2020 |
| Electrical | E1.16F | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 2 | 8/12/2020 |
| Electrical | E1.21 | GARAGE LEVEL 1 - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E1.22 | GARAGE LEVEL 2 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.23 | GARAGE LEVEL 3 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.24 | GARAGE LEVEL 4 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.25 | GARAGE LEVEL 5 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.26 | GARAGE LEVEL 6 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.27 | GARAGE LEVEL 7 - ROOF - ELECTRICAL | 2 | 2/24/2020 |
| Electrical | E4.01 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.02 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.03 | TYPICAL UNITS - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E4.04 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E4.05 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |



Initial _____ MS _____    Initial _____ BLA _____    **Alterations to this Agreement are Prohibited**    Page 11 of 45
Sub                       Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Electrical | E4.06 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
|---|---|---|---|---|
| Electrical | E5.01 | ELECTRICAL ONE LINE DIAGRAM | 4 | 5/4/2020 |
| Electrical | E6.01 | EQUIPMENT, PANEL FEEDER & UNIT SCHEDULES | 7 | 9/23/2020 |
| Electrical | E7.01 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.02 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.03 | ELECTRICAL SCHEDULES | 1 | 2/24/2020 |
| Electrical | E8.01 | ELECTRICAL DETAILS | 2 | 2/24/2020 |
| Electrical | E8.02 | ELECTRICAL DETAILS | 2 | 12/20/2019 |
| Plumbing | P0.01 | PLUMBING SYMBOLS LEGEND AND GENERAL NOTES | 2 | 5/20/2020 |
| Plumbing | P1.01A | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.01B | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.01C | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.01D | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.01E | CONDENSATE PARTIAL BUILDING PLAN - FIRST PART E | 0 | 10/16/2019 |
| Plumbing | P1.01F | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 0 | 10/16/2019 |
| Plumbing | P1.10 | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 5/16/2019 |
| Plumbing | P1.10A | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Plumbing | P1.10B | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 4/15/2020 |
| Plumbing | P1.10C | UNDERGROUND PARTIAL BUILDING PLAN - FLOOR PART C | 3 | 8/12/2020 |
| Plumbing | P1.10D | UNDERGROUND PARTIAL BULDING FIRST FLOOR PART D | 2 | 12/20/2019 |
| Plumbing | P1.10E | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.10F | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 8/12/2020 |
| Plumbing | P1.11A | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
| Plumbing | P1.11B | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 12/20/2019 |
| Plumbing | P1.11C | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 8/12/2020 |
| Plumbing | P1.11D | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.11E | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.11F | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 8/12/2020 |
| Plumbing | P1.12A | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Plumbing | P1.12B | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.12C | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.12D | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.12E | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.12F | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.13A | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.13B | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.13C | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.13D | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 0 | 10/16/2019 |

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Plumbing | P1.13E | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 0 | 10/16/2019 |
|---|---|---|---|---|
| Plumbing | P1.13F | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.14A | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.14B | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.14C | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.14D | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.14E | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.14F | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.15A | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.15B | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.15C | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.15D | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.15E | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.15F | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.16A | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART A | 0 | 10/16/2019 |
| Plumbing | P1.16B | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART B | 0 | 10/16/2019 |
| Plumbing | P1.16C | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART C | 0 | 10/16/2019 |
| Plumbing | P1.16D | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART D | 0 | 10/16/2019 |
| Plumbing | P1.16E | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART E | 0 | 10/16/2019 |
| Plumbing | P1.16F | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART F | 1 | 8/12/2020 |
| Plumbing | P1.21 | GARAGE LEVEL 1 - PLUMBING | 4 | 5/29/2020 |
| Plumbing | P1.22 | GARAGE LEVEL 2 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.23 | GARAGE LEVEL 3 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.24 | GARAGE LEVEL 4 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.25 | GARAGE LEVEL 5 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.26 | GARAGE LEVEL 6 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.27 | GARAGE ROOF LEVEL - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P4.01 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.02 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.03 | ENLARGED PLUMBING PLANS | 1 | 12/20/2019 |
| Plumbing | P5.01 | PLUMBING RISER DIAGRAMS | 2 | 8/12/2020 |
| Plumbing | P5.02 | PLUMBING RISER DIAGRAMS | 1 | 8/12/2020 |
| Plumbing | P5.03 | GARAGE STORM SYSTEM RISER DIAGRAMS | 0 | 5/29/2020 |
| Plumbing | P8.01 | PLUMBING DETAILS | 1 | 10/16/2019 |
| Plumbing | P8.02 | PLUMBING DETAILS | 0 | 10/16/2019 |
| Mechanical | M0.01 | MECHANICAL SYMBOLS LEGEND AND GENERAL NOTES | 1 | 10/16/2019 |
| Mechanical | M1.11A | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
| Mechanical | M1.11B | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.11C | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 3 | 8/12/2020 |
| Mechanical | M1.11D | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.11E | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 12/20/2019 |

Initial _MS_ Sub   Initial _BLA_ Contractor    **Alterations to this Agreement are Prohibited**    Page 13 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Mechanical | M1.11F | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 12/20/2019 |
|---|---|---|---|---|
| Mechanical | M1.12A | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.12B | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.12C | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.12D | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.12E | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.12F | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.13A | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.13B | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.13C | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.13D | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.13E | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.13F | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.14A | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.14B | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.14C | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.14D | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.14E | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.14F | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.15A | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.15B | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.15C | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.15D | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.15E | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.15F | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.16A | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 3 | 8/12/2020 |
| Mechanical | M1.16B | MECHANICAL, PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 12/20/2019 |
| Mechanical | M1.16C | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 12/20/2019 |
| Mechanical | M1.16D | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 3 | 8/12/2020 |
| Mechanical | M1.16E | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 3 | 8/12/2020 |
| Mechanical | M1.16F | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 3 | 8/12/2020 |
| Mechanical | M1.21 | GARAGE LEVEL 1 - MECHANCIAL | 1 | 2/24/2020 |
| Mechanical | M1.22 | GARAGE LEVEL 2 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.23 | GARAGE LEVEL 3 - MECHANCIAL | 0 | 10/16/2019 |



Initial ___ MS ___    Initial ___ BLA ___
Sub              Contractor

**Alterations to this Agreement are Prohibited**         Page 14 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Mechanical | M1.24 | GARAGE LEVEL 4- MECHANCIAL | 0 | 10/16/2019 |
|---|---|---|---|---|
| Mechanical | M1.25 | GARAGE LEVEL 5 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.26 | GARAGE LEVEL 6 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.27 | GARAGE ROOF - MECHANICAL | 1 | 2/24/2020 |
| Mechanical | M4.01 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.02 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.03 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M6.01 | MECHANICAL SCHEDULES | 2 | 12/20/2019 |
| Mechanical | M7.01 | MECHANICAL DETAILS | 2 | 2/24/2020 |
| Mechanical | M7.02 | MECHANICAL DETAILS | 1 | 10/16/2019 |
| Mechanical | M7.03 | MECHANICAL DETAILS | 1 | 2/24/2020 |
| Fire Protection | F0.01 | FIRE PROTECTION SYMBOLS AND SPECIFICATIONS | 2 | 4/15/2020 |
| Fire Protection | F1.11A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 2/24/2020 |
| Fire Protection | F1.11B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 2/24/2020 |
| Fire Protection | F1.11C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 2/24/2020 |
| Fire Protection | F1.11D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 2/24/2020 |
| Fire Protection | F1.11E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 2/24/2020 |
| Fire Protection | F1.11F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 2/24/2020 |
| Fire Protection | F1.12A | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.12B | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.12C | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.12D | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.12E | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.12F | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.13A | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.13B | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.13C | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.13D | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.13E | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.13F | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 2/24/2020 |



Initial Sub: MS    Initial Contractor: BLA    **Alterations to this Agreement are Prohibited**    Page 15 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Fire Protection | F1.14A | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Fire Protection | F1.14B | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Fire Protection | F1.14C | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Fire Protection | F1.14D | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Fire Protection | F1.14E | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Fire Protection | F1.14F | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 0 | 10/16/2019 |
| Fire Protection | F1.15A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.15B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.15C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.15D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.15E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.15F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.21 | GARAGE LEVEL 1 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.22 | GARAGE LEVEL 2 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.23 | GARAGE LEVEL 3 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.24 | GARAGE LEVEL 4 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.25 | GARAGE LEVEL 5 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.26 | GARAGE LEVEL 6 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F6.01 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Fire Protection | F6.02 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Low Voltage | T-000 | LOW VOLTAGE NOTES AND LEGENDS | 1 | 4/1/2020 |
| Low Voltage | T-100 | FIRST FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-100A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-101 | SECOND FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-102 | THIRD FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-103 | FOURTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| | | | | |
|---|---|---|---|---|
| Low Voltage | T-104 | FIFTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-105 | ROOF PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-106 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-107 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-108 | LOW VOLTAGE UNIT DISTRIBUTION PANEL | 1 | 4/1/2020 |
| Low Voltage | T-200 | FIRST FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-201 | SECOND FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-202 | THIRD FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-203 | FOURTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-204 | FIFTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-205 | SIXTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300 | FIRST FLOOR PLAN LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-302 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-303 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-400 | FIRST FLOOR PLAN LOW VOLTAGE A/V | 0 | 12/20/2019 |
| Low Voltage | T-400A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-500 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (MDF) | 1 | 4/1/2020 |
| Low Voltage | T-501 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 1A & IDF 1B) | 1 | 4/1/2020 |
| Low Voltage | T-502 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3A & IDF 5A) | 1 | 4/1/2020 |
| Low Voltage | T-503 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3B & IDF 5B) | 1 | 4/1/2020 |
| Low Voltage | T-504 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3C & IDF 5C) | 1 | 4/1/2020 |
| Low Voltage | T-600 | LOW VOLTAGE CONNECTIVITY DIAGRAM (UNIT) | 0 | 12/20/2019 |
| Low Voltage | T-601 | LOW VOLTAGE CONNECTIVITY DIAGRAM (ACCESS CONTROL) | 0 | 12/20/2019 |
| Low Voltage | T-602 | LOW VOLTAGE CONNECTIVITY DIAGRAM (SURVEILLANCE) | 0 | 12/20/2019 |
| Interior | ID-0.00 | COVER SHEET | 1 | 5/8/2020 |
| Interior | ID-0.01 | PLAN KEY | 3 | 5/8/2020 |
| Interior | ID-0.02 | GENERAL NOTES | 3 | 5/8/2020 |
| Interior | ID-0.03 | LEGENDS & ABBREVIATIONS | 2 | 5/8/2020 |
| Interior | ID-0.04 | OVERALL FLOOR PLAN FIRST FLOOR | 2 | 5/8/2020 |
| Interior | ID-0.05 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.06 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.07 | OVERALL FLOOR PLAN FIFTH FLOOR | 2 | 5/8/2020 |



Initial [MS]    Initial [BLA]    **Alterations to this Agreement are Prohibited**    Page 17 of 45
Sub              Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.00 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
|----------|---------|--------------------------------------------|---|----------|
| Interior | ID-1.01 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.02 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.03 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.04 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.05 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.06 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.07 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.08 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.09 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.10 | INTERIOR PLAN FIRST & FIFTHFLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.11 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.12 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.13 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.14 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.15 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.16 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.17 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.18 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.19 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.20 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.21 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.22 | FLOOR COVERING PLAN FIRST & FIFTH FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.23 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.24 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.25 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.26 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.27 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.28 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.29 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.30 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.31 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.32 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.33 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.34 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.35 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.36 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.37 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.38 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.39 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.40 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |

Initial _MS_ Sub    Initial _BLA_ Contractor    **Alterations to this Agreement are Prohibited**    Page 18 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.41 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
|----------|---------|-----------------------------------------------------|---|----------|
| Interior | ID-1.42 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.43 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.44 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.45 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.46 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.47 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.48 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.49 | REFLECTED CEILING PLAN FIRST FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.50.0 | FURNITURE PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.50.1 | FURNITURE PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.51 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.52 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.53 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.54 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.55 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.56 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.57 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.58 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.59 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.0 | FLOOR COVERING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.1 | FLOOR COVERING PLAN 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.61 | FLOOR COVERING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.62 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.63 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.64 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.65 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.66 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.67 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.68 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.69 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.0 | ELECTRICAL PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.1 | ELECTRICAL PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.71 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.72 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.73 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.74 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.75 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.76 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.77 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.78 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |

Initial _MS_ Sub    Initial _BLA_ Contractor    **Alterations to this Agreement are Prohibited**

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.79 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.80.0 | REFLECTED CEILING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.80.1 | REFLECTED CEILING PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.81 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.82 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.83 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.84 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.85 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.86 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.87 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.88 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.89 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.90 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.91 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.92 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.93 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-2.00 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.01 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.02 | INTERIOR ELEVATIONS SALES OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.03 | INTERIOR ELEVATIONS CORRIDOR 1 | 2 | 5/8/2020 |
| Interior | ID-2.04 | INTERIOR ELEVATIONS CONF. RM. / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.05 | INTERIOR ELEVATIONS CONF. RM / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.06 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.07 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.08 | INTERIOR ELEVATIONS MEDIA THEATRE | 2 | 5/8/2020 |
| Interior | ID-2.09 | INTERIOR ELEVATIONS FITNESS | 2 | 5/8/2020 |
| Interior | ID-2.10 | INTERIOR ELEVATIONS YOGA | 2 | 5/8/2020 |
| Interior | ID-2.11 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.12 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.13 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.14 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.15 | INTERIOR ELEVATIONS CORRIDOR 2 | 2 | 5/8/2020 |
| Interior | ID-2.16 | INTERIOR ELEVATIONS CORRIDOR 3 | 2 | 5/8/2020 |
| Interior | ID-2.17 | INTERIOR ELEVATIONS CORRIDOR 4 | 2 | 5/8/2020 |
| Interior | ID-2.18 | INTERIOR ELEVATIONS CORRIDOR 5 | 2 | 5/8/2020 |
| Interior | ID-2.19 | INTERIOR ELEVATIONS CORRIDOR 6 | 2 | 5/8/2020 |
| Interior | ID-2.20 | INTERIOR ELEVATIONS CORRIDOR 7 | 2 | 5/8/2020 |
| Interior | ID-2.21 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.22 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.23 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.24 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-2.25 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-2.26 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.27 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.28 | INTERIOR ELEVATIONS CORRIDOR 11 | 2 | 5/8/2020 |
| Interior | ID-2.29 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.30 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.31 | INTERIOR ELEVATIONS CORRIDOR 13 | 2 | 5/8/2020 |
| Interior | ID-2.32 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
| Interior | ID-2.33 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
| Interior | ID-2.34 | INTERIOR ELEVATIONS CORRIDOR 15 | 2 | 5/8/2020 |
| Interior | ID-2.35 | INTERIOR ELEVATIONS CORRIDOR 16 | 2 | 5/8/2020 |
| Interior | ID-2.36 | INTERIOR ELEVATIONS CORRIDOR 17 | 2 | 5/8/2020 |
| Interior | ID-2.37 | INTERIOR ELEVATIONS VESTIBULE 1 AND 2 | 2 | 5/8/2020 |
| Interior | ID-2.38 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.39 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.40 | INTERIOR ELEVATIONS VESTIBULE 4 AND 5 | 2 | 5/8/2020 |
| Interior | ID-2.41 | INTERIOR ELEVATIONS VESTIBULE 5 AND 6 | 2 | 5/8/2020 |
| Interior | ID-2.42 | INTERIOR ELEVATIONS VESTIBULE 7 AND 8 | 2 | 5/8/2020 |
| Interior | ID-2.43 | INTERIOR ELEVATIONS VESTIBULE 8, 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.44 | INTERIOR ELEVATIONS VESTIBULE 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.50 | INTERIOR ELEVATIONS MEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.51 | INTERIOR ELEVATIONS WOMEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.60 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.61 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.62 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-3.00 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.01 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.02 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.03 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.04 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-4.00 | SCHEDULES | 3 | 5/8/2020 |
| Interior | ID-4.01 | DOOR SCHEDULE | 2 | 5/8/2020 |
| Interior | ID-4.02 | SCHEDULES TYPICAL UNITS | 3 | 5/8/2020 |
| Hardscape | H-1 | SITE PLAN PHASE 2 | 6 | 5/22/2020 |
| Hardscape | H-2.1 | HARDSCAPE LABEL PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.2 | HARDSCAPE DIMENSION PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.3 | HARDSCAPE FINISHES PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-3.1 | HARDSCAPE LABEL PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.2 | HARDSCAPE DIMENSION PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.3 | HARDSCAPE FINISHES PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-4.1 | HARDSCAPE LABEL PLAN COURTYARD C | 6 | 5/22/2020 |

Initial _MS_ Sub    Initial _BLA_ Contractor    **Alterations to this Agreement are Prohibited**    Page 21 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Hardscape | H-4.2 | HARDSCAPE DIMENSION PLAN COURTYARD C | 6 | 5/22/2020 |
|---|---|---|---|---|
| Hardscape | H-4.3 | HARDSCAPE FINISHES PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-5.1 | HARDSCAPE LABEL PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.2 | HARDSCAPE DIMENSION PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.3 | HARDSCAPE FINISHES PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-6 | HARDSCAPE LABEL PLAN | 3 | 5/16/2019 |
| Hardscape | H-6.1 | HARDSCAPE LABEL PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.2 | HARDSCAPE DIMENSION PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.3 | HARDSCAPE DIMESION PLAN | 6 | 5/22/2020 |
| Hardscape | H-7 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-8 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-9 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-10 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-11 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-12 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-13 | HARDSCAPE DETAILS | 8 | 8/31/2020 |
| Hardscape | H-14 | HARDSCAPE SPECIFICATIONS | 6 | 5/22/2020 |
| Landscape | L-1 | SITE PLAN PHASE 2 | 8 | 5/22/2020 |
| Landscape | L-2 | TREE DISPOSITION PLAN PHASE 2 | 8 | 5/14/2020 |
| Landscape | L-3 | TREE DISPOSITION PLAN PH 2 | 7 | 5/14/2020 |
| Landscape | L-4 | TREE DISPOSITION SCHEDULE PH 2 | 8 | 5/14/2020 |
| Landscape | L-5 | LANDSCAPE PLAN | 7 | 5/22/2020 |
| Landscape | L-6 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-7 | LANDSCAPE PLAN | 5 | 5/22/2020 |
| Landscape | L-8 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-9 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-10 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-11 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-12 | LANDSCAPE SPECIFICATIONS | 3 | 5/22/2020 |
| Landscape | L-13 | LANDSCAPE SPECIFICATIONS | 0 | 5/16/2019 |
| Landscape | LI-1 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-2 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-3 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LLP-1 | SITE PLAN PHASE 2 | 2 | 5/22/2020 |
| Landscape | LLP-2 | LANDSCAPE LIGHTING PLAN | 3 | 5/22/2020 |
| Landscape | LLP-3 | LANDSCAPE LIGHT PLAN | 3 | 5/22/2020 |
| Landscape | LLP-4 | LANDSCAPE LIGHTING PLAN SCHEDULE | 3 | 5/22/2020 |
| Landscape | LLP-5 | LANDSCAPE LIGHT PLAN SPECIFICATIONS | 2 | 5/22/2020 |
| Surveys | 1 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 2 | 7/11/2019 |
| Surveys | 2 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 4 | 6/15/2020 |



Initial Sub    Initial Contractor        **Alterations to this Agreement are Prohibited**        Page 22 of 45

## Standard Short Form Agreement Between Contractor and Subcontractor

**Architect:**
**Charlan Brock & Associates**

**Engineer:**
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

**Architect of Record:**
**Doug Anderson**
**1770 Fennell Street**
**Maitland, Florida 32751**

**Civil Engineer:**
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

**Structural Engineer:**
**John Bailes**
**1035 South Semoran Blvd**
**Winter Park, Florida 32792**

**Landscape Architect:**
**Aaron Mastin**
**101 SE 2nd Ave**
**Delray Beach, Florida 33444**

**Hardscape Architect:**
**Aaron Mastin**
**101 SE 2nd Ave**
**Delray Beach, Florida 33444**

**Interior Design:**
**Jorge Garcia**
**4700 Riverside Drive, Suite 100**
**Palm Beach Gardens, Florida 33410**

**EXHIBITS.** As applicable, the following Exhibits are incorporated by reference and made part of this Agreement:

EXHIBIT A:    Schedule of Values
EXHIBIT B:    Insurance
EXHIBIT C:    HUD Supplemental Conditions
EXHIBIT D:    HUD Identity of Interest Disclosure Requirement
EXHIBIT E:    HUD Prevailing Wage Acknowledgement

**1.1    SUBCONTRACTOR IS AN INDEPENDENT CONTRACTOR.** SUBCONTRACTOR is an independent contractor and shall, at its sole cost and expense, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the Work. SUBCONTRACTOR shall have sole responsibility for the means and methods of performing the Work required under this Subcontract. SUBCONTRACTOR is responsible for securing timely inspections and approvals of its Work from all such authorities as required by the Contract Documents. All inspections must be coordinated with CONTRACTOR. SUBCONTRACTOR must obtain and pay for all necessary permits and licenses, including business licenses; pay all fees, manufacturer's taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and unemployment or disability insurance which are



Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 23 of 45
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. SUBCONTRACTOR must maintain proof that it has complied with all aspects of this Paragraph and shall make such proof available for review by CONTRACTOR at CONTRACTOR's request. SUBCONTRACTOR agrees that any penalty, charge, fine, or other assessment made on account of SUBCONTRACTOR or SUBCONTRACTOR's work be promptly paid in full by SUBCONTRACTOR. All of the SUBCONTRACTOR's Work shall be performed in strict accordance with the Occupational Safety and Health Act of 1970 and any other legislation enacted by federal, state, or local governing authorities or agencies. Additionally, SUBCONTRACTOR shall furnish a copy to CONTRACTOR the applicable Safety Data Sheets (SDS) for all hazardous materials or chemicals used in connection with or consumed or incorporated into this Project as required by the Hazard Communication Standard of the Occupational Safety and Health Administration (OSHA). The SUBCONTRACTOR shall report to the CONTRACTOR within one (1) day after an injury to an employee or agent of the SUBCONTRACTOR which occurs on the site.

**1.2A** **SUBCONTRACTOR** shall not perform any labor services under this Subcontract with any persons or parties other than SUBCONTRACTOR's direct employees without first 1) providing CONTRACTOR with at least 24 hours prior written notice, and 2) providing CONTRACTOR with a copy of the agreement between SUBCONTRACTOR and any sub-subcontractor, employee leasing company, employee management company, labor supplier company, or individual ("third party labor provider") providing such labor at least 24 hours prior to beginning to perform the labor. SUBCONTRACTOR's failure to comply with these requirements shall be a material breach of the Subcontract allowing for termination of the Subcontract, and the CONTRACTOR will not be liable for payment of any labor costs of the third-party labor provider. Should the SUBCONTRACTOR be authorized to use a third-party labor provider on the project, the CONTRACTOR must receive written confirmation, via email, setting forth the specific names of each third-party labor provider employee onsite, the amount of the hours worked, and price per hour for each employee. This information must be received by 5:00 pm daily on same day that the third-party labor provider was onsite at the project. Failure to timely and completely provide this information will result in non-payment by the CONTRACTOR to the SUBCONTRACTOR for such third-party labor.

**1.3** **QUALITY AND SCOPE OF WORK/FIELD VERIFICATIONS.** The Contract Documents are intended to and shall be considered to include all items which would normally be included in SUBCONTRACTOR's trade and are intended to include all Work that CONTRACTOR is called upon to perform under terms of its contract with Owner. The Plans and Specifications generally indicate the scope and quality of the work but are not represented as being free from errors or omissions and any work called for in the Specifications and not shown on the Plans, or vice versa, are to be furnished as if called for in both and, in addition SUBCONTRACTOR agrees that any and all work required and reasonably implied as necessary to complete the job, shall be furnished and installed by SUBCONTRACTOR without any additional cost. SUBCONTRACTOR shall notify CONTRACTOR in writing of any deviations from the Contract Documents. SUBCONTRACTOR's responsibility to conform to the Contract Documents is not relieved by Architect's or CONTRACTOR's review unless there is written acceptance of the specific deviations. SUBCONTRACTOR agrees not to modify, withdraw, or cancel any alternate bids, for ninety (90) days after receipt of bid. SUBCONTRACTOR shall provide its own layout and make its own measurements and shall guarantee the accuracy thereof and shall not rely on the measurements of any other party.

The SUBCONTRACTOR represents that it is licensed (if applicable) and fully qualified to perform the Work required by this Subcontract and acknowledges that it has, by careful examination satisfied itself as to: (a) the nature, location and character of the Job Site including, but not limited to, the surface and subsurface conditions of the land and all structures and obstructions thereon, both natural and manmade, surface water conditions of the Job Site and the surrounding area and, to the extent pertinent to the Work, all other conditions; (b) the nature, location and character of the general area in which the Job Site is located including, without limitation, its climatic conditions, the availability and cost of labor and the availability and cost of materials, tools and equipment; the quality and quantity of all material, supplies, tools, equipment, labor and services necessary to complete the Work in the manner required by the Contract Documents; and (c) all other matters or things which could in any manner affect the performance of the Work. The SUBCONTRACTOR recognizes and understands the physical and operational restrictions on carrying on of the Work in or about the Project and expressly agrees that such conditions have been accounted for in the Subcontract price. **By commencing its Work, SUBCONTRACTOR accepts the surface or substrate on which such work is placed and all adjacent work of earlier subcontractors and other areas that interface with or connect to the SUBCONTRACTOR's Work or otherwise affect SUBCONTRACTOR's Work. The SUBCONTRACTOR shall take such measurements as will insure the proper matching and placement of the Work under this Subcontract and is otherwise responsible for compliance with the intent of the Contract Documents. The SUBCONTRACTOR shall immediately notify CONTRACTOR and the Architect of any unacceptable conditions or deviations from contract requirements**

Initial _MS_ Initial _BLA_          **Alterations to this Agreement are Prohibited**          Page 24 of 45
Sub          Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

affecting its Work and shall notify CONTRACTOR and Architect of any discrepancies or conflicts in the Contract Documents before performing its Work and shall be responsible for all costs resulting from its failure to do so. Any SUBCONTRACTOR that installs his work attached to an unacceptable substrate without written notification to CONTRACTOR shall bear the costs of removal and replacement of his work. All Work shall be done in a good and workmanlike manner and all material shall be new and of specified grade, and all Work and material shall be furnished and installed in compliance with the requirements of the institutions making the construction and permanent mortgages on the property and all governmental or other authorities having jurisdiction thereof.

Prior to starting any field work, the SUBCONTRACTOR shall participate in a "SUBCONTRACTOR's Preparatory Meeting" with the CONTRACTOR at the jobsite, to thoroughly review the following items and procedures and sign-off as to the SUBCONTRACTOR's participation and understanding: (1) Subcontract Agreement & Exhibit "A", (2) possession of correct Drawings & Specifications, (3) SDS Sheets & OSHA Review, (4) Completed stamped and approved shop drawings & submittals, (5) required material installation procedures, and (6) Payment Procedures. SUBCONTRACTOR is solely responsible for its work being in full compliance with this Subcontract Agreement requirement. All subcontractors must attend project meetings that they are requested to attend (a two-day notice will be provided). Sending a laborer to a meeting will not count as a substitute. It must be an approved supervisor or an individual authorized to make decisions on behalf of your company. Subcontractors will be fined $250 for each meeting missed.

SUBCONTRACTOR is at all times to work ONLY from Drawings specifically issued by CONTRACTOR's Project Manager that identifies the documents as "For Construction". Under no circumstances is SUBCONTRACTOR to perform any work on the Project from any Drawings that do not include such identification. SUBCONTRACTOR is not to accept, process, bid, or perform any actual construction work based on any Drawings that have not been so identified by CONTRACTOR's Project Manager as described above. SUBCONTRACTOR shall be solely responsible for compliance with his requirement.

SUBCONTRACTOR jobsite supervisor shall submit Daily Reports (including manpower) to CONTRACTOR each day on separate forms provided by CONTRACTOR. Failure to provide these forms will be sufficient cause for CONTRACTOR to withhold payment until CONTRACTOR is provided with completed up-to-date reports.

**1.4    SUBMITTALS.** SUBCONTRACTOR shall promptly prepare or obtain and submit to CONTRACTOR in the quantity requested by CONTRACTOR, all shop and erection drawings, samples, product data, catalogue cuts, laboratory and inspection reports, and engineering calculations ("Submittals") required by the Contract Documents, or as may be necessary or appropriate to describe the details of the Work. All Submittals shall be submitted in a timely manner so as to permit the work to be performed in accordance with the Project Schedule. Neither review, nor approval, of Submittals by CONTRACTOR, Owner or Architect shall relieve SUBCONTRACTOR of its obligation to perform the Work in strict conformity with the Contract Documents or its responsibility for the proper matching of the Work to contiguous work. SUBCONTRACTOR shall identify each and every variance between any Submittals and the requirements of the Contract Documents at the time of transmission either prominently on the Submittal or specifically in a transmission letter accompanying the Submittal. No modification, revision or other notation on a Submittal that changes or modifies the Contract Documents shall be valid (even if the drawing or Submittal is approved) unless there is a Change Order issued approving same. No Work required or Work attaching to items requiring submittals or shop drawings shall be started by SUBCONTRACTOR until approved Submittals are returned to SUBCONTRACTOR. Materials ordered, fabricated, or installed prior to receipt of approved Submittals are at SUBCONTRACTOR's sole risk. All material submittals, shop drawings, affidavits, etc., that are required for your area of work need to be submitted to the CONTRACTOR within seven (7) days of signing your contract.

**3)    BONDS.** SUBCONTRACTOR shall not **X** furnish to CONTRACTOR, as Obligee, surety bonds to this Agreement, and through a surety mutually agreeable to CONTRACTOR and SUBCONTRACTOR, to secure faithful performance of Subcontract Work and to satisfy SUBCONTRACTOR payment obligations related to SUBCONTRACTOR's Work.

**4)    SAFETY AND CLEAN-UP.** To protect persons and property, SUBCONTRACTOR shall establish a safety program implementing safety measures, policies and standards conforming to (1) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (2) the requirements of this Agreement. SUBCONTRACTOR will abide by the Safety Program implemented by Portrait Construction of Florida attached as EXHIBIT "A".



Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 25 of 45
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**5)    SUPERVISON.** SUBCONTRACTOR is required to designate a competent supervisor to oversee all SUBCONTRACTORs work for the duration of the project. SUBCONTRACTOR must submit name and qualification of SUBCONTRACTOR's English speaking supervisor to Portrait Construction of Florida's project superintendent for acceptance. CONTRACTOR's Superintendent will schedule the different trades, supervise all construction, and with the concurrence of CONTRACTOR's Project Manager, approve monthly draws. His opinion that the job's progress for SUBCONTRACTOR's phase of the work is on schedule is a condition precedent to CONTRACTOR's obligation to make progress payments to SUBCONTRACTOR. **SUBCONTRACTOR'S Supervisor is responsible for verifying all of his "Scope of Work" is properly performed, shall complete a thorough inspection of the work and determine any and all repairs, rework, punchlist & verify the remediation is complete. If at any point during construction, the CONTRACTOR'S Superintendent determines that the SUBCONTRACTOR'S Supervisor is not completing his work as outlined in the above, he may request in writing that the SUBCONTRACTOR enforce the requirements of the Supervisor or replace him.**

**6)    SCHEDULE.** Time is of the essence as to SUBCONTRACTOR's obligations under this Agreement. All SUBCONTRACTOR's Work shall commence and proceed as scheduled by the CONTRACTOR. All SUBCONTRACTOR's Work shall be of the highest quality, and in compliance with all governing laws, ordinances, codes, regulations and requirements. The CONTRACTOR shall prepare the schedule for performance of CONTRACTOR's Work (HEREINAFTER THE "Progress Schedule") and shall revise and update such schedule, as necessary, as CONTRACTOR's work progresses. Each revision of the Progress Schedule, upon issuance to this SUBCONTRACTOR, shall supersede previous schedules and shall become part of this Agreement. SUBCONTRACTOR shall provide CONTRACTOR with any scheduling information proposed by SUBCONTRACTOR for Subcontract Work and submit any additional information or updates as requested by CONTRACTOR. SUBCONTRACTOR shall be bound by the Progress Schedule. Material procurement, shop fabrication and delivery must be coordinated by SUBCONTRACTOR, to ensure that the work is started and completed as required by the Progress Schedule.

The Subcontract price includes all overtime as required including Saturdays, Sundays, and holidays in order to maintain the Progress Schedule. Failure by this SUBCONTRACTOR to meet all obligations necessary to maintain the Progress Schedule dates will result in SUBCONTRACTOR being assessed appropriate damages and losses incurred by the CONTRACTOR. The CONTRACTOR shall have the rights to (1) expand, update and revise the Progress Schedule as necessary to correspond to project conditions and changes in order to ensure the overall completion date, and (2) to determine and, if necessary, change the time, order and priority in which various portions of Subcontract Work shall be performed.

SUBCONTRACTOR accepts the risk of delays and acceleration caused by the rate of progress of the Work changing as directed by CONTRACTOR. The SUBCONTRACTOR acknowledges that the CONTRACTOR has made no warranties to the SUBCONTRACTOR, express or implied, that the SUBCONTRACTOR will be able to follow normal, orderly sequence in the performance of SUBCONTRACTOR's Work or that there will be no delays in, or interference with, the SUBCONTRACTOR's Work. The SUBCONTRACTOR shall be prepared to do its Work out of sequence in accordance with the requirements of the Project, when and if required by CONTRACTOR. The Contract Sum includes all overtime, increase in crew size, etc. as required, including Saturdays, Sundays, and Holidays, in order for the SUBCONTRACTOR to maintain its Work item time duration schedule.

**LIMITATION OF REMEDIES -- NO DAMAGES FOR DELAY. The SUBCONTRACTOR's exclusive remedy for delays in the performance of the contract caused by events beyond its control, including delays claimed to be caused by the CONTRACTOR, Owner, Architect, or Engineer, or attributable to the CONTRACTOR, Owner, Architect, or Engineer and including claims based on breach of contract or negligence, shall be an extension of its contract time, and under no circumstances will SUBCONTRACTOR be entitled to any monetary claim or compensation.** Any claims for additional time by the SUBCONTRACTOR for delay must be submitted to the CONTRACTOR within the time and in the manner in which the CONTRACTOR must submit such claims to the Owner, and that failure to comply with the conditions for giving notice and submitting claims shall result in the waiver of such claims.

SUBCONTRACTOR is to perform work ONLY during specified authorized working hours as authorized in writing by the CONTRACTOR. Under no circumstances is SUBCONTRACTOR to perform ANY work or otherwise have any work crews present on the jobsite without the CONTRACTOR present. SUBCONTRACTOR is solely responsible for full compliance with this important Contract requirement.



Initial _____    Initial _____        **Alterations to this Agreement are Prohibited**        Page 26 of 45
Sub                Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

SUBCONTRACTOR agrees to complete work segments within the performance time durations as listed below and overall Progress Schedule. SUBCONTRACTOR specifically acknowledges and agrees to these duration times including completion of all punch list requirements for its work – as necessary to achieve final acceptance of its work by the CONTRACTOR and Owner and includes in the Subcontract Price all necessary costs required to achieve completion within the listed times. Duration times are all in calendar days and include sufficient time as required to receive inspection approvals from all authorities having jurisdiction.

**7)        CHANGE ORDERS.** When CONTRACTOR orders in writing, SUBCONTRACTOR, without nullifying this Agreement, shall make any and all changes in Subcontract Work. No adjustments shall be made for any changes performed by SUBCONTRACTOR that have not been ordered by CONTRACTOR. **The Subcontract Price may only be modified by written change order signed by both parties. Authorization for any changed or extra work or costs whatsoever may be only made in writing signed by CONTRACTOR'S Project Manager or Executive Officer. Contractor's Superintendent is not authorized to make any changes or issue any extra cost approvals to SUBCONTRACTOR either verbal or in writing. Any changes or extra costs attempted to be recovered by SUBCONTRACTOR based on any approvals or directives by CONTRACTOR's Superintendent or anyone else that is not CONTRACTOR's Project Manager or Executive Officer will not be recognized. The only CONTRACTOR representative authorized to approve additional scope and costs is the Project Manager or Executive Officer.** A Change Order is a written instrument prepared by CONTRACTOR and signed by SUBCONTRACTOR stating their agreement upon the change in Subcontract Work. In the event of a change in the work, the SUBCONTRACTOR's claim for adjustments in the contract sum are limited exclusively to its actual costs for such changes plus no more than 10% for overhead and 5% profit.

**8)        CHANGE ORDER ADJUSTMENTS.** In consideration for any adjustments in the time and the Subcontract Sum, SUBCONTRACTOR hereby releases CONTRACTOR and Owner from all claims, demands or causes of action arising out of the transactions, events and occurrences giving rise to the Change Order, including without limitation all direct and indirect costs and all schedule impacts.

**9)        PAYMENT.**

**9.1        SCHEDULE OF VALUES.** The schedule of values (SOV) is a condition of payment, per SOV detailed in Exhibit "A". SUBCONTRACTOR to provider progress invoicing per Exhibit "A"; and as provided by CONTRACTOR they may use the project Billing Invoice Tool in Procore.

**9.2        PROGRESS AND FINAL PAYMENTS.** Progress payments due to SUBCONTRACTOR, less retainage as specified herein, shall be made to SUBCONTRACTOR for Subcontract Work satisfactorily performed no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for SUBCONTRACTOR's Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for SUBCONTRACTOR's Work. These payments are not due if there is reason for withholding as specified herein and/or SUBCONTRACTOR has not satisfied all conditions precedent to payment specified herein.

**9.2.1        PROGRESS PAYMENTS.** Progress Payments due under the Subcontract will not be released until all of the following conditions have been met:
.1        Subcontract Agreement has been signed by SUBCONTRACTOR without modification and returned to CONTRACTOR;
.2        Proper Insurance Certificates have been received;
.3        CONTRACTOR's approval of SUBCONTRACTOR's Schedule of Values;
.4        SUBCONTRACTOR has presented to CONTRACTOR, for its approval, an Application for Payment and other documents required by Paragraph 10;
.5        Progress payments, less retainage, shall be made to SUBCONTRACTOR, for Subcontract Work satisfactorily performed, no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for Subcontract Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for Subcontract Work. These payments are subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or CONTRACTOR.



Initial _____ Sub        Initial _____ Contractor        **Alterations to this Agreement are Prohibited**        Page 27 of 45

## Standard Short Form Agreement Between Contractor and Subcontractor

.6      CONTRACTOR's receipt in current funds from the Owner for the progress payments due the SUBCONTRACTOR. It shall be an express condition precedent to any obligation or liability of the CONTRACTOR to the SUBCONTRACTOR for any payment to the SUBCONTRACTOR that the CONTRACTOR is in receipt of payment in current funds from the Owner for the SUBCONTRACTOR's work. If the Owner has not paid the CONTRACTOR for any reason whatsoever, including the Owner's financial inability to pay or other reason not related to this SUBCONTRACTOR, the SUBCONTRACTOR agrees that the CONTRACTOR shall not be liable for payment and not be indebted to the SUBCONTRACTOR. The SUBCONTRACTOR assumes the credit risk of the Owner and agrees that it is relying on the Owner's credit and not that of the CONTRACTOR. The SUBCONTRACTOR further agrees that, as a portion of the consideration for the award of this Subcontract, he agrees to assume, and hereby assumes, the same risk as does the CONTRACTOR for non-payment by the Owner and accordingly, in the event that the Owner fails to pay the CONTRACTOR progress payments, interim payment, claims for increased work, claims for changed work, final payments, or any other form of payment otherwise due to the CONTRACTOR, the SUBCONTRACTOR shall be absolutely barred, estopped, and precluded from instituting any suit, arbitration or other claim against the CONTRACTOR or the Surety until and unless the Owner first pays the CONTRACTOR. In other words, payment by the Owner to the CONTRACTOR of sums necessary to pay the SUBCONTRACTOR is a condition precedent to CONTRACTOR's obligation to pay SUBCONTRACTOR and to the bringing of any lawsuit, arbitration or other claims by the SUBCONTRACTOR against the CONTRACTOR. If CONTRACTOR has provided payment or performance bonds or a combination payment and performance bond, the obligation of CONTRACTOR and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of CONTRACTOR's prior receipt of payment from the Owner for the progress payments due the SUBCONTRACTOR. This provision is incorporated by reference into any such bond or bonds.

.7      Any supplemental work provided b others for this scope of work has been paid in full.

**9.2.2    FINAL PAYMENT.** All conditions precedent of this Subcontract which apply to progress payments shall also apply to final payment. As additional express conditions precedent to SUBCONTRACTOR's entitlement to final payment, the SUBCONTRACTOR shall have fully performed all its Work in accordance with the Contract Documents, the Architect shall have issued a certificate for payment covering the SUBCONTRACTOR's completed Work, any certificates of occupation or certificates of completion required to be issued by any authority having jurisdiction shall have been issued, the CONTRACTOR shall have received payment from the Owner, the CONTRACTOR shall have received consent of SUBCONTRACTOR's surety to final payment (if any), and the SUBCONTRACTOR shall provide to the CONTRACTOR its Affidavit and Final Release of Lien/Claim, all final lien waivers from its sub-subcontractors and vendors, warranties, special warranties, all required executed warranty and guaranty documents, guarantees, parts lists, all maintenance and operations manuals, all close-out documents described in the Project Manual (Specification Book), Bid Package Book, and Addenda, two complete sets of "As-Built" prints acceptable to the CONTRACTOR (one hard copy and one electronic copy), and other Project close-out documents required by the Contract Documents. Should CONTRACTOR's close-out of the entire Project and receipt of final payment from Owner be delayed as a result of SUBCONTRACTOR's delay or failure to submit all such Project close-out documents relating to SUBCONTRACTOR's Work, SUBCONTRACTOR will be responsible for any costs and expenses and damages sustained by CONTRACTOR as a result of such delay or failure. Further, SUBCONTRACTOR's compliance with all other provisions of the Contract Documents is a condition precedent to SUBCONTRACTOR's right to final payment.

**9.3      STORED MATERIALS.** Payments for stored materials will only be made subject to the pre-approval, restrictions and requirements of Owner and CONTRACTOR. Payments will be made, less retainage and only to extent of monies received by CONTRACTOR from Owner, for the stored items under the Owner – CONTRACTOR Agreement. Payments to SUBCONTRACTOR will be made no sooner than ten days after the date payment for the stored materials is received by CONTRACTOR from Owner. In no case, will stored materials be paid for items other than those necessary to be on site to guarantee the progress of the Project and as specifically pre-approved by CONTRACTOR. SUBCONTRACTOR includes protection of all stored materials and safeguards necessary to insure adequate protection to the satisfaction of the CONTRACTOR and OWNER. SUBCONTRACTOR must provide a proper and secure storage facility for all stored material at its own expense. SUBCONTRACTOR must also provide satisfactory insurance coverage as required in Exhibit 'E' attached hereto and made part of this Subcontract. CONTRACTOR will not reimburse SUBCONTRACTOR for materials either misplaced, damaged, or stolen.

**9.4      PAYMENTS WITHHELD.** CONTRACTOR shall have the right to withhold and to reduce any payments to SUBCONTRACTOR for (a) any indebtedness owed by SUBCONTRACTOR to CONTRACTOR, (b) defective work not remedied or defective materials not removed and replaced, (c) third-party claims filed or reasonable evidence indicating

## Standard Short Form Agreement Between Contractor and Subcontractor

probable filing of such claims, (d) claimed failure of the SUBCONTRACTOR to make payments to its subcontractors, suppliers, or laborers, (e) reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract Price, (f) damage to CONTRACTOR or another subcontractor, (g) reasonable indication that the Work will not be completed within the Contract Time/CONTRACTOR's Progress Schedule, (h) unsatisfactory or untimely prosecution of the Work by the SUBCONTRACTOR, or (i) any failure by the SUBCONTRACTOR to comply with the Contract Documents. Items (a) – (i) shall be grounds for default under this Agreement as well. Independent of any other right hereunder, CONTRACTOR may deduct from any payments due or to become due SUBCONTRACTOR amounts equal to any claims asserted against SUBCONTRACTOR in connection with SUBCONTRACTOR's Work on this Project or on any other Project including, but not limited to, lien claims, bond claims, unpaid bills, defective work, incomplete work, and damage to the work of CONTRACTOR. When the basis for disapproval or withholding has been remedied, the SUBCONTRACTOR shall be paid the amounts withheld.

**9.5    JOINT CHECK PAYMENTS.** CONTRACTOR reserves the right to pay any obligations of SUBCONTRACTOR arising on this Project by checks made payable jointly or directly to SUBCONTRACTOR and/or its suppliers or its SUBCONTRACTORs, with any amounts so paid reducing the balance due SUBCONTRACTOR. Joint or direct payments made by CONTRACTOR do not relieve SUBCONTRACTOR of any obligation under this Subcontract.

**9.6    WAIVER OF CLAIMS.** Final payment shall constitute a waiver of all claims by SUBCONTRACTOR relating to Subcontract Work, but shall in no way relieve SUBCONTRACTOR of any liability to CONTRACTOR, including liability for warranties, or for nonconforming or defective work discovered after final payment.

## 10)    INDEMNITY.

**10.1**    The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, Architect, Engineer, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work, or any breach of or failure to comply with any of the provisions of this SUBCONTRACT or the Contract Documents by SUBCONTRACTOR.

**10.2**    The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work (regardless of cause or of any concurrent or contributing fault or negligence of CONTRACTOR, Owner, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of this Subcontract or the Contract Documents by SUBCONTRACTOR. The SUBCONTRACTOR's indemnification obligation to CONTRACTOR, Owner, and all of their agents, officers, and employees (the "Indemnitees"), for occurrences caused by the sole, contributory, or concurrent negligence of the Indemnitees shall be limited, on a per occurrence basis, to the greater of $1,000,000.00 (as prescribed by Florida Statute § 725.06), the price of this Subcontract, or the limits of liability of the insurance policies provided pursuant to this Agreement, which SUBCONTRACTOR acknowledges and agrees bears a reasonable commercial relationship to this Subcontract.

**10.3**    SUBCONTRACTOR and its surety, if any, hereby agrees to defend, indemnify, and hold harmless CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives from any loss or damage and to reimburse CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives for any and all claims, costs, and expenses, including but not limited to attorneys' fees, legal fees, expert witness fees, and court costs that CONTRACTOR, CONTRACTOR's surety and/or Owner may incur because of:

**10.3.1**    Claims and liens for labor performed or materials used or furnished through or under SUBCONTRACTOR for the Project;



Initial ___ MS ___    Initial ___ BLA ___       **Alterations to this Agreement are Prohibited**        Page 29 of 45

Sub                     Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**10.3.2** any personal injury, loss, damage or death to any person or persons and any property damage arising out of the performance or nonperformance of Work required in this Subcontract, including, without limitation, any personal injury or loss, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, SUBCONTRACTOR's indemnity hereunder shall not arise if such injury, loss, damage or death results from the gross negligence or willful, wanton or intentional misconduct of a party indemnified hereunder;

**10.3.3** SUBCONTRACTOR's failure or the failure of any of its employees to comply with any law, ordinance, rule, regulation or requirement, including, but not limited to, any Occupational Safety and Health Administration violations and any penalties, including enhancements, resulting in whole or in part by SUBCONTRACTOR's acts or omissions.

**10.4** CONTRACTOR, in its sole discretion, may defend any or all of the indemnified claims or tender to SUBCONTRACTOR the defense of any or all of the indemnified claims. Upon such tender by CONTRACTOR to SUBCONTRACTOR, SUBCONTRACTOR shall be obligated to assume the defense of CONTRACTOR in the indemnified claims, including the settlement negotiations, and shall pay and satisfy any and all settlements, judgments, sanctions, awards, or expenses, including attorneys' fees, resulting from or arising out of the indemnified claims without reimbursement from CONTRACTOR.

**10.5** If CONTRACTOR tenders the defense of an indemnified claim to SUBCONTRACTOR and SUBCONTRACTOR fails or neglects to assume that defense, CONTRACTOR may compromise or settle or defend any such action, and SUBCONTRACTOR shall be bound and obligated to reimburse CONTRACTOR for the amount expended by it in settling, compromising, or defending any such claim, or in the amount expended by CONTRACTOR in paying any settlement or judgment rendered therein, together with all reasonable attorneys' fees and expenses of litigation incurred by CONTRACTOR by reason of its defense, settlement, or compromise of such indemnified claims.

**10.6** Neither final payment by CONTRACTOR nor acceptance of the Work performed by SUBCONTRACTOR shall constitute a waiver of the foregoing indemnities, and notwithstanding any other provision contained in this Subcontract, the provisions of this paragraph shall survive the termination of this Subcontract.

**10.7** In any claims by any employee of the SUBCONTRACTOR, the SUBCONTRACTOR's sub-contractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, against any persons or entities indemnified hereunder the indemnification obligation shall not be limited as to the amount or type of damages, compensation, or benefits payable by or for the SUBCONTRACTOR or the SUBCONTRACTOR's sub-contractors under Workers' Compensation acts, disability benefit acts or other employee benefit acts.

## 11) CORRECTION OF WORK, DEFAULT, AND TERMINATION.

**11.1** **CORRECTION OF WORK.** SUBCONTRACTOR shall promptly correct all of SUBCONTRACTOR's Work rejected by CONTRACTOR, Architect or Owner as defective or failing to conform to the Contract Documents, whether observed before or after Substantial Completion. SUBCONTRACTOR shall bear all costs of correcting rejected work, including compensation for Architect's or CONTRACTOR's additional services, if required.

**11.2** **FAILURE OF PERFORMANCE.** Should SUBCONTRACTOR fail to satisfy contractual deficiencies or to commence and continue satisfactory correction of any default with diligence or promptness within one (1) working day from receipt of CONTRACTOR's written notice, then CONTRACTOR, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and charge the cost thereof to SUBCONTRACTOR, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees. In the event of an emergency affecting safety of persons or property, CONTRACTOR may proceed as above without notice.

**11.3** **TERMINATION BY OWNER.** Should Owner terminate its prime agreement with the CONTRACTOR or any part which includes SUBCONTRACTOR's Work, CONTRACTOR shall notify SUBCONTRACTOR in writing within three (3) days of termination and, upon written notification, this Agreement shall be terminated and SUBCONTRACTOR shall immediately stop Subcontract Work, follow all of CONTRACTOR's instructions, and mitigate all costs. In the event of Owner termination, CONTRACTOR liability to SUBCONTRACTOR shall be limited to the extent of CONTRACTOR recovery on SUBCONTRACTOR's behalf under the prime agreement.



Initial _____  Initial _____
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**11.4    TERMINATION BY CONTRACTOR.** If SUBCONTRACTOR fails to commence and satisfactorily continue correction of a default within one (1) working day after written notification from CONTRACTOR, then CONTRACTOR may issue a second written notification, to SUBCONTRACTOR and its surety, if any. Such notice shall state that if SUBCONTRACTOR fails to commence and continue correction of a default within five (5) days of the written notification, the Agreement will be automatically terminated. CONTRACTOR may furnish those materials, equipment and/or employ such workers or replacement subcontractor(s) as CONTRACTOR deems necessary to maintain the orderly progress of CONTRACTOR's work. All costs incurred by CONTRACTOR in performing Subcontract Work, including damages, extended general conditions, liquidated damages, reasonable overhead, profit, and attorneys' fees, costs and expenses, shall be deducted from any monies due or to become due SUBCONTRACTOR. SUBCONTRACTOR shall be liable for payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount. At SUBCONTRACTOR's request, CONTRACTOR shall provide a detailed accounting of the costs to finish Subcontract Work.

## 12)    CLAIMS AND DISPUTES.

**12.1    CLAIMS RELATING TO CONTRACTOR.** SUBCONTRACTOR shall give CONTRACTOR written notice of all claims within seven (7) days of the existence of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed absolutely waived by SUBCONTRACTOR. All unresolved claims, disputes and other matters in question between CONTRACTOR and SUBCONTRACTOR shall be resolved in the manner provided in this Agreement.

**12.2    LIQUIDATED DAMAGES.** Inasmuch as SUBCONTRACTOR's failure to complete its Work within the timeframe specified herein will result in substantial injury to the Contractor and whereas damages arising from such failure cannot be calculated with any degree of certainty, it is hereby agreed that if such Subcontract Work is not substantially completed as herein defined within the time fixed herein or within such further time, if any, as shall be allowed for such performance or completion in accordance with the provisions of this Subcontract, the SUBCONTRACTOR shall pay to the Contractor, as liquidated damages for such delay and not as a penalty, One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) per day for each and every calendar day that the SUBCONTRACTOR fails to complete its Work, including all punchlist work ("CONTRACTOR's Liquidated Damages"). SUBCONTRACTOR's obligation for such liquidated damages is irrespective of, and is in no way dependent upon, whether Owner assesses liquidated damages against the Contractor or whether it is impossible to determine the degree of harm caused by SUBCONTRACTOR's delay. SUBCONTRACTOR acknowledges that its failure to timely complete its Subcontract Work will cause financial harm to Contractor irrespective of whether or not Owner assesses any liquidated damages against Contractor. This provision for liquidated damages shall in no manner affect the Contractor's right to terminate this Subcontract as provided for elsewhere in this Subcontract and other Contract Documents, and Contractor's exercise of the right to terminate shall not release the SUBCONTRACTOR from its obligation to pay said liquidated damages.

If the CONTRACTOR's agreement with the Owner provides for liquidated or other damages for delay, and such damages are assessed, CONTRACTOR may assess a share of the damages against SUBCONTRACTOR in proportion to SUBCONTRACTOR's share of responsibility for the delay. This apportionment shall be in addition to the CONTRACTOR's Liquidated Damages.

**12.3    WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, SUBCONTRACTOR shall continue Subcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. If SUBCONTRACTOR continues to perform, CONTRACTOR shall continue to make payments of amounts undisputedly owed to SUBCONTRACTOR in accordance with this Agreement.

**12.4    MULTIPARTY PROCEEDING.** The parties agree, to the extent permitted by the prime agreement, that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between CONTRACTOR and SUBCONTRACTOR involve in whole or in part disputes between CONTRACTOR and Owner, disputes between SUBCONTRACTOR and CONTRACTOR shall be decided by the same tribunal and in the same forum as disputes between CONTRACTOR and Owner, and SUBCONTRACTOR agrees to consolidation and joinder of the same.

**12.5    STAY OF PROCEEDINGS.** In the event that provisions for resolution of disputes between CONTRACTOR and Owner contained in the prime agreement do not permit consolidation or joinder with disputes of third parties, such as SUBCONTRACTOR, resolution of disputes between SUBCONTRACTOR and CONTRACTOR involving in whole or in

Initial _MS_    Initial _BLA_         **Alterations to this Agreement are Prohibited**         Page 31 of 45
Sub             Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

part disputes between CONTRACTOR and Owner shall be stayed pending conclusion of any dispute resolution proceeding between CONTRACTOR and Owner.

**12.6    DIRECT DISCUSSION.** If a dispute arises out of or relates to this Agreement, the parties shall endeavor to settle the dispute through direct discussion.

**12.7    MEDIATION.** Disputes between SUBCONTRACTOR and CONTRACTOR not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The parties shall select the mediator within fifteen (15) days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution.

**12.8    OTHER DISPUTE PROCESSES.** If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.

**ARBITRATION.** At the sole discretion of the CONTRACTOR or its Surety, all claims, counterclaims, disputes, and other matters in question between the CONTRACTOR or its Surety and the SUBCONTRACTOR or its Surety (if applicable) arising out of this Agreement or the breach thereof shall be decided by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining. CONTRACTOR expressly reserves its right on behalf of CONTRACTOR and its Surety to have any dispute resolved by binding arbitration, including but not limited to those initiated by SUBCONTRACTOR, in which event the parties agree that the litigation will be dismissed and the dispute will proceed in arbitration. If the CONTRACTOR or its Surety elects to submit the claims, counterclaims, disputes, and other matters in question to binding arbitration, it will give the other party notice of its intent, and the parties will proceed in accordance with the Construction Industry Rules of the American Arbitration Association. The award rendered by the arbitrator shall be final, and judgment shall be entered upon it in accordance with applicable Florida law.

**12.9    COST OF DISPUTE RESOLUTION.** The cost of any mediation proceeding shall be shared equally by the parties participating. Additionally, the parties agree to bear their own attorneys' fees and costs for any dispute arising out of this Agreement and/or the Project and knowingly, voluntarily, and intentionally and expressly waive and relinquish any and all statutory or other rights to recover attorney's fees' or costs from CONTRACTOR, its Surety, if any, and Owner for any dispute arising out of this Agreement and/or the Project.

**13)    NO PRESUMPTION AGAINST DRAFTER.** The Parties expressly agree that they freely and voluntarily enter into this Agreement and have had the opportunity to obtain assistance of legal counsel of their choice in reviewing its terms prior to execution. The Parties acknowledge and agree that no rule of construction applies to the disadvantage of a party because that party was responsible for the preparation of this Subcontract or part of it.

**14)    MISCELLANEOUS PROVISIONS.**

**14.1    **If required for this Subcontract, pursuant to Executive Order 11-02 signed by the Florida Governor on January 4, 2011 and other applicable law, SUBCONTRACTOR will utilize the E-verify system, established by the U.S. Department of Homeland Security to verify the employment eligibility of its employees and any of its subcontractors assigned to perform work on the Project. This, when required, is a continuing obligation that applies throughout the duration of the Project, and SUBCONTRACTOR acknowledges that any additional personnel, not previously verified, that may be assigned to the Project will be subject to the aforementioned E-verification. Results of the E-verification will be provided to CONTRACTOR and remain in the SUBCONTRACTOR's project records for review by CONTRACTOR and/or Owner as requested. Additionally, SUBCONTRACTOR shall certify to CONTRACTOR by affidavit that the SUBCONTRACTOR has verified through the E-verify system the employment status of each employee assigned to work on the Project. SUBCONTRACTOR shall be responsible for including this provision in all its' subcontracts issued as a result of this Subcontract.

**14.3    **The SUBCONTRACTOR has no power to assign its rights or duties under this Subcontract. The parties expressly acknowledge that in selecting the SUBCONTRACTOR, the CONTRACTOR considered various factors, including but not limited to the SUBCONTRACTOR's reputation, quality of work, and capacity to perform. SUBCONTRACTOR specifically agrees not to assign, sell, or transfer any accounts receivables under this Subcontract to any third-party factoring company or related business. NEITHER THE OWNER NOR THE CONTRACTOR SHALL BE LIABLE TO ANY THIRD PARTIES FOR PAYMENT OF ANY ASSIGNED ACCOUNTS RECEIVABLES.



Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 32 of 45
Sub                Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**14.4**    By acceptance of this Subcontract, SUBCONTRACTOR guarantees its prices contained herein for the duration of the Project, through the date of Final payment by the Owner. The SUBCONTRACTOR expressly agrees that external conditions outside the control of SUBCONTRACTOR, including but not limited to materials shortages and price escalations, have been accounted for in the Contract price and shall not constitute the basis for a time extension or a claim for additional compensation of any type.

**14.5**    This Contract is specifically intended to be for the benefit of the Owner. The Owner may maintain an action for breach of this Subcontract. However, SUBCONTRACTOR is not an intended third-party beneficiary of the Agreement between Owner and CONTRACTOR.

**14.6**    No right or remedy in this Subcontract is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.

**14.7**    The obligations of the CONTRACTOR and SUBCONTRACTOR under this Subcontract are expressly conditioned upon the CONTRACTOR's successfully entering into a contract with the Owner for the Project. If the Owner shall decline for any reason whatsoever to enter into a contract with the CONTRACTOR for the Project, then this Subcontract shall automatically become null and void and CONTRACTOR and SUBCONTRACTOR shall be discharged from their respective obligations hereunder. Further, in such event, CONTRACTOR shall have no liability of any kind to SUBCONTRACTOR including, without limitation, cancellation charges.

**14.8**    If applicable, the Owner may choose to directly purchase materials as a tax exempted entity as defined by the IRS and the State of Florida, and if this option is available to the Owner and the Owner decides to use this option, the SUBCONTRACTOR will be notified and shall comply with the Owner Direct Purchase program by providing a credit for the material being purchased directly including the sales tax attributable thereto.

**14.9**    The nondiscrimination clauses contained in Section 202 of Executive Order 11246, as amended; Section 402 of the Vietnam Era Veteran's Readjustment amended, relative to equal opportunity for all persons within regard to race, color, religion, sex national origin, handicapped, Vietnam Era or disabled veteran and the implementing rules and regulations prescribed by the Secretary of Labor are incorporated herein.

**15)**    **SUBCONTRACTOR'S WAIVER OF JURY TRIAL.** The SUBCONTRACTOR and its Surety expressly and voluntarily waive all rights to a jury trial in any claim or dispute arising from the Subcontract, the Project, and/or any associated Bond(s).

CONTRACTOR: Portrait Construction of Florida

BY: *Bruce L Abbey*

PRINT NAME:  Bruce L. Abbey

PRINT TITLE:  President

DATE:  5/14/2021

WITNESS:

SUBCONTRACTOR: Sousa Cabinets Inc.

BY: *Manny Sousa*

PRINT NAME:  Manny Sousa

PRINT TITLE:  G.Manager

DATE:  5/14/2021

WITNESS:

Initial  MS  Sub
Initial  BLA  Contractor

**Alterations to this Agreement are Prohibited**

Page 33 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

# EXHIBIT A
## SCHEDULE OF VALUES

| # | Cost Code | Description | Type | Amount |
|---|-----------|-------------|------|--------|
| 1 | 12-03530-50 - Cabinets | Hardware & Installation | Subcontract | $260,000.00 |
| | | | | |
| | | | Grand Total: | $260,000.00 |

Initial _____ MS _____    Initial _____ BLA _____
Sub    Contractor

# EXHIBIT B
## OCIP Manual and Requirements

Included by Separate Attachment,
Please Reference for Instructions



**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

| | | |
|---|---|---|
| **SUPPLEMENTARY CONDITIONS OF THE CONTRACT FOR CONSTRUCTION** | **U.S. Department of Housing and Urban Development**<br>Office of Housing | OMB Approval No. 2502-0598<br>(Exp. 06/30/2017) |

Public Reporting Burden for this collection of information is estimated to average 0.2 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Response to this request for information is required in order to receive the benefits to be derived. This agency may not collect this information, and you are not required to complete this form unless it displays a currently valid OMB control number. While no assurance of confidentiality is pledged to respondents, HUD generally discloses this data only in response to a Freedom of Information Act request.

### Article 1: Labor Standards

A. **Applicability.** The Project or program to which the construction work covered by this Contract pertains is being assisted or insured by the United States of America, and the following Federal Labor Standards Provisions are included in this Contract or related instrument pursuant to the provisions applicable to such Federal assistance or insurance. Any statute or regulation contained herein shall also include any subsequent amendment or successor statute or regulation.

B. **Minimum Wages.** Pursuant to Section 212 of the National Housing Act, as amended, 12 U.S.C. 1715c, the minimum wage provisions contained in this paragraph B do not apply to those projects with Security Instruments insured under Section 221(h)(1) designed for less than 9 families and they do not apply to those projects with Security Instruments insured under either Section 220 or 233 designed for less than 12 families.

1. (i) All laborers and mechanics employed or working upon the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the Project) shall be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR Part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics. Contributions made or costs reasonably anticipated for bona fide fringe benefits under Section 1 (b)(2) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)) on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of 29 CFR 5.5(a)(1)(iv); also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs, which cover the particular weekly period, are deemed to be constructively made or incurred during such weekly period. Such laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed, without regard to skill, except as provided in 29 CFR 5.5(a)(4). Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein: *Provided,* that the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classification and wage rates conformed under 29 CFR 5.5(a)(1)(ii)) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

(ii) (a) Any class of laborers or mechanics that is not listed in the wage determination and that is to be employed under this Contract shall be classified in conformance with the wage determination. HUD shall approve an additional classification and wage rate and fringe benefits only when the following criteria have been met:

---

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial ___M.S___ Initial ___BLA___
Sub          Contractor

**Alterations to this Agreement are Prohibited**          Page 36 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

(1) The work to be performed by the classification requested is not performed by a classification in the wage determination; and

(2) The classification is utilized in the area by the construction industry; and

(3) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(b) If the Contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and HUD or its designee agree on the classification and wage rate (including the amount designated for fringe benefits where appropriate), a report of the action taken shall be sent by HUD or its designee to the Administrator of the Wage and Hour Division, U.S. Department of Labor, Washington, D.C. 20210 (**"Administrator"**). The Administrator, or an authorized representative, shall approve, modify, or disapprove every additional classification action within thirty (30) days of receipt and so advise HUD or its designee or shall notify HUD or its designee within the thirty (30) day period that additional time is necessary. (Approved by the Office of Management and Budget under OMB control number 1215-0140.)

(c) In the event the Contractor, the laborers or mechanics to be employed in the classification or their representatives and HUD or its designee do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), HUD or its designee shall refer the questions, including the views of all interested parties and the recommendation of HUD or its designee, to the Administrator for determination. The Administrator, or an authorized representative, shall issue a determination within thirty (30) days of receipt and so advise HUD or its designee or shall notify HUD or its designee within the thirty (30) day period that additional time is necessary. (Approved by the Office of Management and Budget under OMB Control Number 1215-0140.)

(d) The wage rate (including fringe benefits where appropriate) determined pursuant to subparagraphs B.1.(ii)(b) or (c) of this Article, shall be paid to all workers performing work in the classification under this Contract from the first day on which work is performed in the classification.

(iii) Whenever the minimum wage rate prescribed in the Contract for a class of laborers or mechanics includes a fringe benefit that is not expressed as an hourly rate, the Contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(iv) If the Contractor does not make payments to a trustee or other third person, the Contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program, *Provided*, That the Secretary of Labor has found, upon the written request of the Contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Contractor to set aside in a separate account assets for the meeting of obligations under the plan or program. (Approved by the Office of Management and Budget under OMB Control Number 1215-0140.)

2. **Withholding**. HUD or its designee shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the Contractor under this Contract or any other Federal contract with the same prime contractor, or any other Federally-assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same prime contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees and helpers, employed by the Contractor or any subcontractor the full amount of wages required by the Contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee or helper, employed or working on the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the Project), all or part of the wages required by the Contract, HUD or its designee may, after written notice to the Contractor, sponsor, applicant, or Owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased. HUD or its designee may, after written notice to the Contractor, disburse such amounts withheld for and on account of the Contractor or subcontractor to the respective employees to whom they are due.

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial  M.S    Initial  BLA    **Alterations to this Agreement are Prohibited**    Page 37 of 45
Sub        Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

3. **Payrolls, records, and certifications.**

(i) Payrolls and basic records relating thereto shall be maintained by the Contractor during the course of the work and preserved for a period of three years thereafter for all laborers and mechanics working at the site of the work (or under the United States Housing Act of 1937, or under the Housing Act of 1949, in the construction or development of the Project). Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in Section 1 (b)(2)(B) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)), daily and weekly number of hours worked, deductions made and actual wages paid. Whenever the Secretary of Labor has found under 29 CFR 5.5(a)(1)(iv) that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in Section 1 (b)(2)(B) of the Davis-Bacon Act (40 U.S.C. 3141(2)(B)(ii)), the Contractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs. (Approved by the Office of Management and Budget under OMB Control Numbers 1215-0140 and 1215-0017.)

(ii)(a) The Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to HUD or its designee if the agency is a party to the Contract, but if the agency is not such a party, the Contractor shall submit the payrolls to the applicant, sponsor, or Owner, as the case may be, for transmission to HUD or its designee. The payrolls submitted shall set out accurately and completely all of the information required to be maintained under 29 CFR 5.5(a)(3)(i), except that full social security numbers and home addresses shall not be included on weekly transmittals. Instead the payrolls shall only need to include an individually identifying number for each employee (e.g., the last four digits of the employee's social security number). The required weekly payroll information may be submitted in any form desired. Optional Form WH-347 is available for this purpose from the Wage and Hour Division Web site at http://www.dol.gov/whd/forms/wh347.pdf or its successor site. The prime contractor is responsible for the submission of copies of payrolls by all subcontractors. Contractors and subcontractors shall maintain the full social security number and current address of each covered worker, and shall provide them upon request to HUD or its designee if the agency is a party to the Contract, but if the agency is not such a party, the Contractor will submit the payrolls to the applicant sponsor, or Owner, as the case may be, for transmission to HUD or its designee, the Contractor, or the Wage and Hour Division of the Department of Labor for purposes of an investigation or audit of compliance with prevailing wage requirements. It is not a violation of this subparagraph for a prime contractor to require a subcontractor to provide addresses and social security numbers to the prime contractor for its own records, without weekly submission to HUD or its designee.(Approved by the Office of Management and Budget under OMB Control Number 1215-0149.)

(b) Each payroll submitted shall be accompanied by a "Statement of Compliance," signed by the Contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the Contract and shall certify the following:

(1) That the payroll for the payroll period contains the information required to be provided under 29 CFR 5.5(a)(3)(ii), the appropriate information is correct and complete.

(2) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the Contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in 29 CFR Part 3;

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial M.S   Sub   Initial BLA   Contractor

**Alterations to this Agreement are Prohibited**   Page 38 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

(3) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the Contract.

(c) The weekly submission of a properly executed certification set forth on the everse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by subparagraph B.3.(ii)(b) of this Article.

(d) The falsification of any of the above certifications may subject the Contractor or subcontractor to civil or criminal prosecution under Section 1001 of Title 18 and Sections 3801 et seq of Title 31 of the United States Code.

(iii) The Contractor or subcontractor shall make the records required under subparagraph B.3.(i) of this Article available for inspection, copying, or transcription by authorized representatives of HUD or its designee or the Department of Labor, and shall permit such representatives to interview employees during working hours on the job. If the Contractor or subcontractor fails to submit the required records or to make them available, HUD or its designee may, after written notice to the Contractor, sponsor, applicant, or Owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

### 4. Apprentices and Trainees.

(i) **Apprentices.** Apprentices shall be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Office of Apprenticeship, or with a State Apprenticeship Agency recognized by such Office, or if a person is employed in his or her first ninety (90) days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Office of Apprenticeship, or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Contractor as to the entire work force under is not registered or otherwise employed as stated above, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where the Contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Contractor's or subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeymen hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. In the event the Office of Apprenticeship, or a State Apprenticeship Agency recognized by such Office, withdraws approval of an apprenticeship program, the Contractor shall no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(ii) **Trainees.** Except as provided in 29 CFR 5.16, trainees shall not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial MS    Initial BLA

Sub    Contractor

**Alterations to this Agreement are Prohibited**    Page 39 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

percentage of the journeyman's hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed on the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate on the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the Contractor shall no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(iii) **Equal employment opportunity.** The utilization of apprentices, trainees and journeymen under 29 CFR Part 5 shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30.

5. **Compliance with Copeland Act Requirements.** The Contractor shall comply with the requirements of 29 CFR Part 3, which are incorporated by reference in this Contract.

6. **Subcontracts.** The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in subparagraphs 1 through 10 of this paragraph B and such other clauses as HUD or its designee may by appropriate instructions require, and a copy of the applicable prevailing wage determination, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all Contract clauses referenced in this subparagraph.

7. **Contract termination and debarment.** A breach of the Contract clauses in 29 CFR 5.5 may be grounds for termination of the Contract, and for debarment as a contractor or a subcontractor as provided in 29 CFR 5.12.

8. **Compliance with Davis-Bacon and Related Act Requirements.** All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5 are herein incorporated by reference in this Contract.

9. **Disputes concerning labor standards.** Disputes arising out of the labor standards provisions of this Contract shall not be subject to the general disputes clause of this Contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and HUD or its designee, the U.S. Department of Labor, or the employees or their representatives.

10. **Certification of Eligibility.**

(i) By entering into this Contract, the Contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of Section 3(a) of the Davis- Bacon Act (40 U.S.C. 3144(b)(2)) or 29 CFR 5.12(a)(1) or to be awarded HUD contracts or participate in HUD programs pursuant to 24 CFR Part 24.

(ii) No part of this Contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of Section 3(a) of the Davis-Bacon Act (40 U.S.C. 3144(b)(2)) or 29 CFR 5.12(a)(1) or to be awarded HUD contracts or participate in HUD programs pursuant to 24 CFR Part 24.

(iii) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001. Additionally, U.S. Criminal Code, Section 1010, Title 18, U.S.C., "Federal Housing Administration transactions",



**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

provides in part: "Whoever, for the purpose of . . . influencing in any way the action of such Department . . . makes, passes, utters or publishes any statement, knowing the same to be false . . . shall be fined under this title or imprisoned not more than two years, or both."

### C. Contract Work Hours and Safety Standards Act.

**1. Applicability and Definitions.** This paragraph C of Article 1 is applicable only if a direct form of federal assistance is involved, such as Section 8, Section 202/811 Capital Advance, grants etc., and is applicable only where the prime contract is in an amount greater than $100,000. As used in this paragraph C, the terms "laborers" and "mechanics" include watchmen and guards.

**2. Overtime requirements.** No contractor or subcontractor contracting for any part of the Contract work that may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of forty (40) hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of forty (40) hours in such workweek.

**3. Violation; liability for unpaid wages; liquidated damages.** In the event of any violation of the immediately preceding subparagraph C.2, the Contractor and any subcontractor responsible therefore shall be liable for the unpaid wages. In addition, the Contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory) for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of such subparagraph, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of forty (40) hours without payment of the overtime wages required by the clause set forth in such subparagraph.

**4. Withholding for unpaid wages and liquidated damages.** HUD or its designee shall, upon its own action or upon written request of an authorized representative of the Department of Labor, withhold or cause to be withheld from any moneys payable on account of work performed by the Contractor or subcontractor under any such contract, or under any other Federal contract with the same prime contractor, or under any other Federally-assisted contract subject to the Contract Work Hours and Safety Standards Act which is held by the same prime contractor such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in subparagraph 3 of this paragraph C.

**5. Subcontracts.** The Contractor or subcontractor shall insert in any subcontracts the clauses set forth in subparagraphs 1 through 5 of this paragraph C and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the clauses set forth in such subparagraphs 1 through 5.

### D. Certification.

For projects with Security Instruments insured under the National Housing Act, as amended, that are subject to paragraph B of this Article 1, the Contractor is required to execute the Contractor's Prevailing Wage Certificate within HUD-92448 as a condition precedent to insurance by HUD of the Loan, or an advance thereof, made or to be made by the Lender in connection with the construction of the Project.

### Article 2: Equal Employment Opportunity

**A. Applicability.** This Article 2 applies to any contract for construction work, or modification thereof, as defined in the regulations of the Secretary of Labor at 41 CFR Chapter 60, which is paid for in whole or in part with funds obtained from the Federal Government or borrowed on the credit of the Federal Government pursuant to a grant, contract, loan insurance, or guarantee, or undertaken pursuant to any Federal program involving such grant, contract, loan, insurance, or guarantee.



Initial _____ Initial _____      **Alterations to this Agreement are Prohibited**      Page 41 of 45

Sub            Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

B. The Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, disability, or national origin. The Contractor shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment without regard to their race, color, religion, sex, disability or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training including apprenticeship. The Contractor agrees to post in conspicuous places available to employees and applicants for employment notices to be provided setting forth the provisions of this nondiscrimination clause.

C. The Contractor shall, in all solicitations or advertisements for employees placed by or on behalf of the Contractor state that all qualified applicants shall receive consideration for employment without regard to race, color, religion, sex, disability, or national origin.

D. The Contractor shall send to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding a notice to be provided advising the said labor union or workers representatives of the Contractor's commitments hereunder, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

E. The Contractor shall comply with all provisions of Executive Order 11246 of September 24, 1965 and of the rules, regulations, and relevant orders of the Secretary of Labor.

F. The Contractor shall furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and shall permit access to its books, records, and accounts by the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

G. In the event of the Contractor's noncompliance with the nondiscrimination clauses of this Contract or with any of the said rules, regulations, or orders, this Contract may be canceled, terminated, or suspended in whole or in part and Contractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rule, regulations or order of the Secretary of Labor, or as otherwise provided by law.

H. The Contractor shall include the provisions of paragraphs A through H of this Article 2 in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, so that such provisions shall be binding upon each subcontractor or vendor. The Contractor shall take such action with respect to any subcontract or purchase order as HUD or the Secretary of Labor may direct as a means of enforcing such provisions, including sanctions for noncompliance. Provided, however, that in the event the Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by HUD or the Secretary of Labor, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

**Article 3: Equal Opportunity for Businesses and Lower Income Persons Located Within the Project Area**

A. This Article 3 is applicable to projects covered by Section 3, as defined in 24 CFR Part 135.

B. The work to be performed under this Contract is on a project assisted under a program providing direct Federal financial assistance from HUD and is subject to the requirements of Section 3 of the Housing and Urban Development Act of 1968, as amended, 12 U.S.C. 1701u. Section 3 requires that to the greatest extent feasible opportunities for training and employment be given to lower income residents of the unit of local government or the



**Standard Short Form Agreement Between Contractor and Subcontractor**

## Exhibit C

metropolitan area (or non-metropolitan county) as determined by HUD in which the Project is located and contracts for work in connection with the Project be awarded to business concerns which are located in, or owned in substantial part by persons residing in the same metropolitan area (or non-metropolitan county) as the Project.

### Article 4: Health and Safety

A. This Article 4 is applicable only where the prime contract is in an amount greater than $100,000.

B. No laborer or mechanic shall be required to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his or her health and safety as determined under construction safety and health standards promulgated by the Secretary of Labor by regulation.

C. The Contractor shall comply with all regulations issued by the Secretary of Labor pursuant to 29 CFR Part 1926, and failure to comply may result in imposition of sanctions pursuant to the Contract Work Hours and Safety Standards Act, 40 USC 3701 et seq.

D. The Contractor shall include the provisions of this Article 4 in every subcontract so that such provisions shall be binding on each subcontractor. The Contractor shall take such action with respect to any subcontract as HUD or the Secretary of Labor shall direct as a means of enforcing such provisions.

Previous editions are obsolete;
Replaces form HUD-92554

Construction Contract Supp

HUD-92554M (06/14)

Initial _MS_    Initial _BLA_

Sub         Contractor

**Alterations to this Agreement are Prohibited**    Page 43 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit D**

### HUD IDENTITY OF INTEREST DISCLOSURE REQUIREMENT

HUD requires full disclosure of any Identity of Interest (IOI) for this project. An IOI is defined as a financial or business interest or family relationship that exists between Borrower, or any of its officers, directors, stockholders, partners, managers, managing members, members, or principals ("Principals") and the Architect, General Contractor, subcontractors, suppliers, equipment lessors, or any of their Principals.

**If Subcontractor has an Identity of Interest (IOI) with any party listed below, then Subcontractor is required to disclose the IOI and notify Mark Portrait Construction immediately:**

Berkadia Commercial Mortgage, LLC
LN Apartments, LLC
FLN Apts, LLC
Mark Baron Construction, Inc. dba Mark Portrait Construction
Charlan Brock & Associates

SUBCONTRACTOR:

By: _Manny Sousa_
(Signature)

Manny Sousa  G.Manager
(Name and Title)

Signed on (date): 5/14/2021

CONTRACTOR:

By: _Bruce L Abbey_
(Signature)

Bruce L Abbey president
(Name and Title)

Signed on (date): 5/14/2021

Initial MS   Initial BLA
Sub      Contractor

**Alterations to this Agreement are Prohibited**    Page 44 of 45

**Standard Short Form Agreement Between Contractor and Subcontractor**

**Exhibit E**

**HUD PREVAILING WAGE ACKNOWLEDGEMENT**

---

**FUTURA AT NONA COVE - EXHBIT "E" –**
**PREVAILING WAGE ACKNOWLEDGEMENT**

---

Subcontractor understands that the Futura at Nona Cove project is subject to the Davis-Bacon Act requirements. Subcontractor agrees to furnish all prevailing wage forms fully executed, prior to beginning of work (one-time forms). Subcontractor agrees to comply with all applicable requirements of the Davis-Bacon Act and submit reporting forms on a weekly basis.

**This project will require the payment of Davis-Bacon (FEDERAL) wage rate for each trade.**

Subcontractor shall comply with the Copeland Act Requirement pursuant to 29 CFR Part 32, Contract Work Hours and Safety Standards Act (CWHSSA), Equal Employment Opportunity (EEO) as defined in Secretary of Labor at 41 CFR Chapter 60 and Health and Safety as issued by the Secretary of Labor pursuant to 29 CFR Part 196.

Subcontractor shall include the Labor Compliance Contract Addendum in every contract and purchase order, unless exempted. The Labor Compliance Contract Addendum is included in the Prevailing Wage Manual.

**Please note that it is Subcontractor's responsibility to ensure that all Sub-Subcontractors comply with these requirements as well.**

SUBCONTRACTOR:

By: *Manny Sousa*

(Signature)

Manny Sousa, G. Manager

(Name and Title)

Signed on (date): 5/14/2021

CONTRACTOR:

By: *Bruce L Abbey*

(Signature)

Bruce L. Abbey, President

(Name and Title)

Signed on (date): 5/14/2021

Initial MS (Sub)  Initial BLA (Contractor)

# EXHIBIT I



## ADDITIONAL PROVISIONS TO THE SUBCONTRACT AGREEMENT

**HUD PROVISIONS:**

1) All parties hereby agree that SUBCONTRACTOR assures that either he or an authorized representative of his company will attend all jobsite meetings as established by CONTRACTOR's supervisory staff unless their presence is not requested by CONTRACTOR. In the event a representative shall represent SUBCONTRACTOR at these meetings, said representative shall be able to make binding commitments on all matters to be discussed at such meetings, including cost, payments, change orders, time schedules and manpower requirements. Further, financial penalties per meeting will be imposed if SUBCONTRACTOR or SUBCONTRACTOR's representative is not present at these meetings. The following person(s) are designated as SUBCONTRACTOR's representatives having the authority as stated herein.

| | |
|---|---|
| Subcontractor Designated Representative: | Kevin Patrick |
| (Optional Representative) | SA |
| Subcontractor Certified Payroll Contact & Phone # | SA |

2) Requirement of, per US Department of Housing and Urban Development, HUD 92442-A, SUBCONTRACTOR waives right to file a mechanic's or materialman's lien or maintain any claim against improvements for or on account of any work done, labor performed or materials furnished under this Subcontract agreement.

3) SUBCONTRACTOR agrees to send Certified HUD payroll sheets in weekly for this Subcontract Agreement. (Through Elations.com; #067-35564 Futura @ Nona Cove)

4) Before work commences, the SUBCONTRACTOR shall enroll in Futura at Nona Cove's Owner Controlled Insurance Policy with Willis Towers Watson with the contact listed below:

> **Janice McNary, CISR**
> OCIP Administrator, Construction Practice
> **Willis Towers Watson**
> 3407 W. Dr. Martin Luther King Blvd.
> Lakeside Suite #200
> Tampa, FL 33607
> Mobile: 813-450-9654
> Janice.mcnary@willistowerswatson.com
> www.willistowerswatson.com

5) It is fully understood that SUBCONTRACTOR will be responsible for keeping its part of the job clean and in an orderly fashion subject to the approval of CONTRACTOR and ARCHITECT. Further, SUBCONTRACTOR shall be totally responsible for the clean up on a daily basis of all debris generated by SUBCONTRACTOR'S daily operations. Should it become necessary for CONTRACTOR to incur any expenses performing cleanup work or removing debris from site for SUBCONTRACTOR, such expense will be deducted from SUBCONTRACTOR's contract amount.

6) All work shall be in accordance with Project Plans and Specifications.

7) Project Includes **Davis Bacon Wages rates**, see attached at end of Contract.

## Standard Short Form Agreement Between Contractor and Subcontractor

This Agreement is made this 1st day of December, 2021 by and between

**GENERAL CONTRACTOR:**
Portrait Construction of Florida, Inc
2452 Lake Emma Rd. #1040
Lake Mary, Florida 32746
Phone: (407) 831-6275

**SUBCONTRACTOR:**
KP's Contract Flooring, LLC
881 Paddington Terrace
Lake Mary, Florida 32746
Phone: (407) 562-6232

PROJECT:     Futura at Nona Cove

OWNER:      LN Apartments, LLC

ARCHITECT:   Charlan Brock & Associates

ENGINEER:    Z Development Services

**TERMS:**

**SUBCONTRACTOR'S WORK**. SUBCONTRACTOR agrees to provide and complete all Work ("Work") required of it under the Contract Documents, including, but not limited to, all labor, services, materials, installation, clean-up, hoisting, supplies, insurance equipment, scaffolding, tools, and other facilities of every kind required for the prompt and efficient performance of all Supply and Install of Tile, LV. The Work is per the Drawings and Specifications in strict accordance with the Contract Documents. SUBCONTRACTOR shall give timely notices to authorities pertaining to subcontract Work and shall be responsible for all permits, fees, licenses, assessments, inspections, testing and taxes necessary to complete subcontract Work.

**SUBCONTRACT AMOUNT**. CONTRACTOR agrees to pay SUBCONTRACTOR for satisfactory and timely performance and completion of subcontract Work: $1,276,390.00

Retainage shall be ten percent (10.0%).

**SCOPE:**

Subcontractor shall furnish all labor, materials, supervision, service, equipment, tools, taxes, insurance, licenses, and permits necessary for the complete and proper installation of the Work described below in accordance with the Construction Documents, Governing Authorities, manufacturers' specifications and recommendations, and the approved shop drawings. Work shall include, however not be limited to the "Clarifications" listed below and the following:

1. Residential carpet and pad including tack strips, adhesive, edge strips, etc.
2. Common area and corridor carpet and accessories.
3. Clubhouse flooring.
4. Pet Spa flooring.
5. All Vinyl Plank Flooring.
6. Tub strip at all tub and shower bases.
7. Rubber flooring.
8. Ceramic tile.



Initial Sub    Initial Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

9. Schluter edging.
10. Ceramic soap dishes and towel bars in tiled areas.
11. Elevator cab flooring.
12. Marble windowsills.
13. Crack Isolation.
14. Pet Spa.


****CLARIFICATIONS****

1. **The Clarifications** are an integral part of this Agreement and are for clarifications, additions and/or deletions to the plans and specifications.
2. **Subcontract Agreement:** It is understood that this Agreement is a lump sum contract. All work and associated costs to complete the work as required by the Construction Documents and specifications and herein described is this Subcontractors responsibility.
3. **On□Site Storage of Materials:** Storage of materials on□site shall be coordinated with Contractor. All space shall be assigned on an as needed basis as determined by Contractor. Subcontractor shall assume the risk for all material and equipment stored on-site. No payment shall be made for materials stored on□site.
4. **Product Substitution:** Subcontractor may, with prior approval from Contractor, provide products of equal or better quality, as determined by Contractor, than that specified in the drawings and/or specifications. Subcontractor shall make request for such product substitution in writing and shall include any changes in the scopes of work of other trades work that are affected by such substitution so that any and all costs incurred may be fully analyzed by Contractor. Any cost incurred by Contractor as a result of substitution to other trades work not brought to the attention of Contractor by Subcontractor as noted above will result in back charges for such cost plus Administrative charges as outlined in the Subcontract Agreement. Subcontractor shall provide, with request for product substitution, cut sheets of both the specified product and the substituted item. Contractor shall review product substitution for cost effectiveness, product quality and equality to specification. Any product substitution resulting in increased cost to other trades work that is not fully offset in cost by the substituted product will not be approved. All product substitution shall have warranties as provided by the specified product. Subcontractor shall warranty the difference between substituted products with lesser warranty periods or coverage and the specified products.
5. **Construction Documents:** As a part of this Agreement, Contractor shall provide Subcontractor with access (see login information below) to the Construction Documents listed in "Exhibit D" such that Subcontractor may either print or save those documents for their use. The Construction Documents are updated regularly, and while Contractor will make reasonable attempts to notify Subcontractor of revisions, it shall be the sole responsibility of this Subcontractor to monitor these documents throughout the duration of the project.

**www.procore.com**
**Project: Futura at Nona Cove**

1. **Submittals/Shop Drawings:** Submittals/Shop Drawings shall be delivered to Contractor within ten (10) days of the execution of this Agreement.
2. **Included Building/Structures**: The following buildings/structures are specifically included within this Agreement:

    1. Apartment building.
    2. Parking garage.

3. **Supervision:** Subcontractor to provide a full-time, on-site, non-working foreman/superintendent for the supervision of his work.  Additional supervision to be provided if requested by Contractor.
4. **Carpet Clarification:** Subcontractor to furnish and install carpet flooring as shown (including tack strips, carpet edge strip, transitions, etc.). Apartment unit carpet TBD based on approved submittals.
5. **Vinyl Plank Flooring Clarification:** Unit vinyl plank material Shaw Limitless 8mm in color "Drift". Vinyl Plank is located in all unit areas with the exception of the bedrooms, bedroom closets and HVAC closets. This applies to all units on all floors. Subcontractor to furnish and install gypcrete floor primer in accordance with the flooring manufacture's specifications prior to the installation of vinyl plank flooring. Contractor acknowledges that a minimum

Initial _____  Initial _____       **Alterations to this Agreement are Prohibited**       Page 3 of 37
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

temperature of 68 degrees, and a maximum temperature of 74 degrees, must be maintained in living areas for a period of no less than 24 hours prior to installing Floor Folio LVT. Subcontractor agrees to verify aforementioned conditions and any other conditions per the manufacturer's installation instructions and shall not install material if said conditions are not present. Material to be placed in units prior to installation for acclimation according to manufacturer's recommendations. Includes all transition, edging etc. for a complete installation.

6. **Mechanical, Storage and Telecom Flooring Clarification:** Subcontractor to furnish and install flooring TBD in all common area mechanical, storage, telecom and other back-of-house rooms. Subcontractor to supply color samples for Contractor's approval prior to installation. This is not included in the contract price.

7. **Clubhouse and Common Area Clarification:** Subcontractor to furnish and install all common area flooring in accordance with the Interior Design drawings dated 6/1/21 REV 4 by The Decorators Unlimited.

8. **Protection of Work:** Subcontractor responsible for the protection of all materials, specifically the vinyl plank flooring and ceramic tiles, until acceptance by Contractor. This includes, at a minimum, paper covering installed over floors directly after the final installation. Contractor will provide rolls of paper to Subcontractor who will provide the labor to install the paper over all vinyl plank flooring immediately after installation.

9. **Ordering, Stocking and Delivery:** Subcontractor responsible for the timely ordering and delivery of all flooring material, as well as, all measurements, takeoffs, shortages, mismatches, nonconforming dye lots and for immediate replacement or supplementation of such material at no additional cost to Contractor. Subcontractor to maintain a minimum of fifty (50) units of carpet and vinyl plank in stock at all times (in appropriate colors).

10. **Punch Out & Repairs:** Due to pre-leasing dates established by the Management Company, punch work scheduling is of prime importance. Subcontractor to make all repairs in a timely manner. Subcontractor to perform all punch work as directed by Contractor.

11. **Drywall Coordination:** Subcontractor to coordinate with the drywall subcontractor to ensure proper size and layout of drywall required for the tile installation at tub and shower surrounds.

12. **Wall and Floor Tile:** Tile to be installed in strict accordance with the manufacturer's recommendations and specifications including any required underlayment or sealers.

13. **Tub and Shower Surrounds:** Subcontractor to furnish and install ceramic tile at tub and shower surrounds to 7 foot above finished floor or wherever a full tile ends for tubs and at 8 foot above finished floor for shower enclosures.

    1. Standard Tubs and Showers: Tile TBD based on approved submittals. Terminate Schluter strip 2 inches past the shower edges. Also, to run along the ceiling lines in both showers and tubs on the first floor only. Tile to be installed in a pattern TBD based on approved submittals (including accessories and trim). Grout TBD based on approved submittals.

14. **Kitchen Backsplashes:** Subcontractor to furnish and install tile backsplashes in each kitchen as shown. Full tile backsplash to be installed between the top of the countertop and the bottom of the wall mounted upper cabinets. At units with kitchen windows, the tile will be returned and installed at the window jambs. Furthermore, the backsplash tile in all units includes an additional six inches (6") of height behind the microwave and 6" below the range top locations. Cutting and grouting to be performed with care to ensure all cover plates, microwaves, etc. have full coverage over tile and that no glass is chipped or splintered. Backsplash tile to be TBD based on approved submittals. Schluter strip terminations are included. Grout color TBD based on approved submittals. Pattern to be determined by Owner and Designer. Subcontractor to install on site mock-up of kitchen backsplash for final approval by Contractor.

15. **Elevator Tile Clarification:** Subcontractor to furnish and install tile flooring for three (3) elevator cabs floor tile to be T-01: Final tile TBD based on approved submittals.

16. **Clubhouse and Common Area Clarification:** Subcontractor to furnish and install all common area flooring and wall tile in accordance with the Interior Design drawings.

17. **Protection of Work:** Subcontractor responsible for the protection of all materials, specifically the vinyl plank flooring and ceramic tiles, until acceptance by Contractor. This includes, at a minimum, paper covering installed over floors directly after the final installation. Contractor will provide rolls of paper to Subcontractor who will provide the labor to install the paper over all vinyl plank flooring immediately after installation.

18. **Ordering, Stocking and Delivery:** Subcontractor responsible for the timely ordering and delivery of all flooring material, as well as, all measurements, takeoffs, shortages, mismatches, nonconforming dye lots and for immediate replacement or supplementation of such material at no additional cost to Contractor. Subcontractor to maintain a minimum of fifty (50) units of carpet and vinyl plank in stock at all times (in appropriate colors).

## Standard Short Form Agreement Between Contractor and Subcontractor

19. **Punch Out & Repairs:** Due to pre-leasing dates established by the Management Company, punch work scheduling is of prime importance. Subcontractor to make all repairs in a timely manner.  Subcontractor to perform all punch work as directed by Contractor.

20. **Marble Sills:** Subcontractor to furnish and install half inch (1/2") thick Dal Tile Carrera marble sills at all window openings. Window sills to overhang one inch (1") past the face of drywall.  Subcontractor is solely responsible for ordering appropriate sill depths for each location. Marble window sills to be installed prior to point up of drywall.

21. **Miscellaneous Flooring Clarifications:** The following items are included in this agreement:

    1. Subcontractor to furnish and install all fasteners, trims, incidentals and accessories for complete flooring systems functional for their intended usage.
    2. The Work includes any reasonable out-of-sequence and non-continuous installations, which may be required to meet the construction schedule.
    3. Subcontractor to install finished flooring below removable vanity cabinets in apartment units as required.
    4. Subcontractor to supply all material, equipment, manpower, resources, etc. necessary to meet or exceed Contractor's expedited construction schedule. Saturday's are considered working days

22. **Exclusions:**
23. Residential unit HVAC closets.
24. Pool tile.
25. Sound underlayment.


**DURATION:**



Initial [kP] — Sub

Initial [BLA] — Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

**1)     CONTRACT DOCUMENTS.** The "Contract Documents" include 1) this Subcontract Agreement and all documents attached hereto as Exhibits; 2) all documents which comprise the Contract between the Owner and CONTRACTOR; 3) all General Conditions, Supplementary Conditions and other conditions applicable to the Project; 4) the Plans and Drawings prepared for the Project; 5) the Project Manual or Specifications, including but not limited to Specification Divisions 1 through 16; 6) all bulletins and addenda issued in connection with the Project; 7) all standards, requirements or conditions incorporated into the Contract Documents by reference; and 8) any amendments, modifications, or changes to any or all of those documents identified in (1) – (7) which may occur during the Project. No other documents except those identified herein shall be considered Contract Documents. In the event of conflict, inconsistencies, variations between the provisions of the Subcontract Agreement and any other Contract Documents, including the Contract between the Owner and CONTRACTOR, the Subcontract Agreement shall govern. SUBCONTRACTOR and its sub-subcontractors and suppliers shall be bound to CONTRACTOR by all of the provisions of the Contract Documents and shall strictly comply therewith in all respects. SUBCONTRACTOR shall perform Subcontract Work under the general direction of CONTRACTOR and shall cooperate with CONTRACTOR so CONTRACTOR may fulfill obligations to Owner. A. This subcontractor agrees to specifically adhere to the requirements of Division 00 and 01 of the specifications. As the CONTRACTOR and SUBCONTRACTOR have been party to the design and engineering of the project, they have a thorough knowledge of the Contract Documents. Therefore, the SUBCONTRACTOR accepts full responsibility for the completeness and coordination of its scope of Work as to ensure quality installation and product. Any material, assembly, device, detail, component, and/or means/method which may not necessarily be shown on the Contract Documents but is required to make the project complete and suitable for its intended purpose shall be the SUBCONTRACTOR's sole responsibility without any adjustment to the subcontract amount.

**1a)     Drawing Log**

| Discipline | Drawing No. | Drawing Title | Revision | Drawing Date |
|---|---|---|---|---|
| FUTURA AT NONA COVE 10.16.19 | | | | |
| Civil | C0 | CIVIL DATA AND NOTES SHEET | 3 | 6/15/2020 |
| Civil | C1.0 | OVERALL SITE PLAN | 2 | 6/15/2020 |
| Civil | C1.1 | DEMOLITION PLAN | 2 | 6/15/2020 |
| Civil | C2.0 | SITE DIMENSION PLAN | 3 | 6/15/2020 |
| Civil | C2.1 | EMERGENCY & SOLID WASTE AUTO TURN ANALYSIS | 2 | 6/15/2020 |
| Civil | C3.0 | SITE UTILITY PLAN | 8 | 6/26/2020 |
| Civil | C4.0 | GRADING AND DRAINAGE PLAN | 2 | 6/15/2020 |
| Civil | C4.1A | CIVIL DATA AND NOTES SHEET | 1 | 6/15/2020 |
| Civil | C4.1B | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.1C | GRADING DETAILS | 1 | 6/15/2020 |
| Civil | C4.2 | COURTYARD & POOL AREA GRADING PLANS | 1 | 6/15/2020 |
| Civil | C4.3A | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3B | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C4.3C | PRECAST SCREEN WALL DETAILS | 1 | 6/15/2020 |
| Civil | C5.0 | SWPP PLAN | 3 | 6/15/2020 |
| Civil | C6 | CONSTRUCTION DETAILS | 4 | 6/15/2020 |
| Civil | C7 | OUC STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | C8 | OUC DETAILS/CITY OF ORLANDO STANDARD NOTES | 4 | 6/15/2020 |
| Civil | C9 | OCU SEWER STANDARD DETAILS | 2 | 6/15/2020 |
| Civil | CV | COVER SHEET | 7 | 6/26/2020 |
| Radon | R1.0 | UNITS S1-A2 | 0 | 11/15/2019 |
| Radon | R2.0 | UNITS A3 - B1 | 0 | 11/15/2019 |
| Radon | R3.0 | UNITS B2 - B3 | 0 | 11/15/2019 |
| Radon | R4.0 | UNITS C1-C2 | 0 | 11/15/2019 |
| Radon | R5.0 | CLUBHOUSE | 0 | 11/15/2019 |
| Architectural | A0.01 | PROJECT COVER SHEET | 5 | 7/31/2020 |
| Architectural | A0.02 | PROJECT INDEX OF DRAWINGS | 11 | 8/12/2020 |
| Architectural | A0.02a | DESIGN ASSUMPTIONS | 1 | 5/16/2019 |



Initial _____    Initial _____        **Alterations to this Agreement are Prohibited**        Page 6 of 37
Sub                Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Architectural | A0.03 | PROJECT INDEX OF DRAWINGS | 6 | 7/31/2020 |
| Architectural | A0.04 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.05 | PROJECT DATA SHEET | 4 | 7/31/2020 |
| Architectural | A0.06 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.07 | PROJECT DATA SHEET | 1 | 7/31/2020 |
| Architectural | A0.08 | PROJECT DATA SHEET | 2 | 7/31/2020 |
| Architectural | A0.10 | ARCHITECTURAL SITE PLAN | 4 | 7/31/2020 |
| Architectural | A0.11 | OVERALL BUILDING FIRST FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.12 | OVERALL BUILDING SECOND FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.13 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 4 | 7/31/2020 |
| Architectural | A0.21 | OVERALL CLUBHOUSE OCCUPANCY PLAN | 4 | 7/31/2020 |
| Architectural | A0.31 | FIRST FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.32 | SECOND FLOOR SEQUENCE PLAN | 3 | 7/31/2020 |
| Architectural | A0.33 | UPPER FLOORS SEQUENCE PLANS | 3 | 7/31/2020 |
| Architectural | A0.41 | OVERALL BUILDING GROUND FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.42 | OVERALL BUILDING TYPICAL UPPER FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.43 | OVERALL BUILDING SIXTH FLOOR LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A0.44 | OVERALL BUILDING TYPICAL ROOF LIFE SAFETY PLAN | 1 | 7/31/2020 |
| Architectural | A1.00 | OVERALL BUILDING SLAB CONTROL PLAN | 3 | 7/31/2020 |
| Architectural | A1.01 | OVERALL BUILDING FIRST FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.02 | OVERALL BUILDING SECOND FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.03 | OVERALL BUILDING THIRD FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.04 | OVERALL BUILDING FOURTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.05 | OVERALL BUILDING FIFTH FLOOR CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.06 | OVERALL BUILDING ROOF CONTROL PLAN | 6 | 7/31/2020 |
| Architectural | A1.11A | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11B | PARTIAL FIRST FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.11C | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11D | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11E | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.11F | PARTIAL FIRST FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12A | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12B | PARTIAL SECOND FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.12C | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12D | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12E | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.12F | PARTIAL SECOND FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13A | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13B | PARTIAL THIRD FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.13C | PARTIAL THIRD FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13D | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13E | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.13F | PARTIAL THIRD FLOOD BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14A | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14B | PARTIAL FOURTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.14C | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14D | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14E | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.14F | PARTIAL FOURTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15A | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |



Initial _____ Sub
Initial _____ Contractor

**Alterations to this Agreement are Prohibited**

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Architectural | A1.15B | PARTIAL FIFTH FLOOR BUILDING PLAN | 5 | 7/31/2020 |
| Architectural | A1.15C | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15D | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15E | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.15F | PARTIAL FIFTH FLOOR BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16A | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16B | PARTIAL ROOF PLAN | 5 | 7/31/2020 |
| Architectural | A1.16C | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16D | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.16E | PARTIAL ROOF PLAN BUILDING PLAN | 4 | 7/31/2020 |
| Architectural | A1.16F | PARTIAL ROOF PLAN | 4 | 7/31/2020 |
| Architectural | A1.21 | FIRST FLOOR GARAGE PLAN | 7 | 7/31/2020 |
| Architectural | A1.22 | SECOND FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.23 | THIRD FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.24 | FOURTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.25 | FIFTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.26 | SIXTH FLOOR GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.27 | ROOF LEVEL GARAGE PLAN | 6 | 7/31/2020 |
| Architectural | A1.28 | ROOF LEVEL GARAGE SLAB PLAN | 3 | 7/31/2020 |
| Architectural | A2.01 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.02 | OVERALL BUILDING ELEVATIONS | 6 | 7/31/2020 |
| Architectural | A2.03 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.04 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.05 | OVERALL BUILDING ELEVATIONS | 5 | 7/31/2020 |
| Architectural | A2.06 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.07 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.08 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.09 | OVERALL BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A2.11 | PARTIAL ENLARGED BUILDING ELEVATIONS | 4 | 7/31/2020 |
| Architectural | A3.11 | TYPICAL CLUB BUILDING SECTION | 1 | 7/31/2020 |
| Architectural | A3.21 | TYPICAL GARAGE BUILDING SECTION | 3 | 7/31/2020 |
| Architectural | A4.01 | UNIT S1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02 | UNIT A1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.02A | UNIT A1 PLAN | 2 | 7/31/2020 |
| Architectural | A4.03 | UNIT A2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.04 | UNIT A3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.05 | UNIT B1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.06 | UNIT B2 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.07 | UNIT B3 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.08 | UNIT C1 FLOOR PLAN | 7 | 7/31/2020 |
| Architectural | A4.21 | CLUB PLAN FIRST FLOOR DIMENSIONS | 7 | 8/12/2020 |
| Architectural | A4.22 | CLUB PLAN SECOND FLOOR DIMENSIONS | 5 | 7/31/2020 |
| Architectural | A4.23 | CLUB PLAN FIRST FLOOR NOTES | 4 | 8/12/2020 |
| Architectural | A4.24 | CLUB PLAN SECOND FLOOR NOTES | 4 | 7/31/2020 |
| Architectural | A4.25 | ENLARGED MAIL ROOM | 3 | 7/31/2020 |
| Architectural | A4.31 | ENLARGED GARAGE PLANS | 4 | 7/31/2020 |
| Architectural | A4.32 | ENLARGED CLOSET PLANS | 2 | 7/31/2020 |
| Architectural | A4.33 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.34 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.35 | ENLARGED CORRIDOR PLANS | 2 | 7/31/2020 |
| Architectural | A4.36 | ENLARGED TRASH AND RECYCLING PLANS | 2 | 7/31/2020 |
| Architectural | A4.71 | ACCESSIBILITY REQUIREMENTS DWELLING UNITS | 2 | 7/31/2020 |



Initial _____  Initial _____    **Alterations to this Agreement are Prohibited**    Page 8 of 37
Sub                Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Architectural | A4.72 | ACCESSIBILITY REQUIREMENT PUBLIC SPACES | 2 | 7/31/2020 |
| Architectural | A4.81 | ENLARGED UNIT ACCESSIBILITY PLANS | 3 | 7/31/2020 |
| Architectural | A4.91 | INTERIOR ELEVATIONS UNITS | 3 | 7/31/2020 |
| Architectural | A4.92 | INTERIOR ELEVATIONS UNITS | 1 | 7/31/2020 |
| Architectural | A5.01 | APARTMENT BUILDING WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.02 | GARAGE WALL TYPES | 2 | 7/31/2020 |
| Architectural | A5.11 | TYPICAL EXTERIOR WALL SECTIONS | 3 | 7/31/2020 |
| Architectural | A5.21 | TYPICAL TENANT WALL SECTIONS | 4 | 7/31/2020 |
| Architectural | A5.22 | TYPICAL TENANT WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.31 | TYPICAL BALCONY WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A5.41 | GARAGE WALL SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.01 | STAIR PLANS | 2 | 7/31/2020 |
| Architectural | A6.02 | STAIR SECTIONS | 3 | 7/31/2020 |
| Architectural | A6.03 | STAIR SECTION AND PLAN | 1 | 7/31/2020 |
| Architectural | A6.04 | STAIR SECTION AND PLANS | 2 | 7/31/2020 |
| Architectural | A6.11 | TYPICAL STAIR DETAILS | 2 | 7/31/2020 |
| Architectural | A6.12 | PRECAST STAIR DETAILS | 1 | 7/31/2020 |
| Architectural | A6.21 | ELEVATOR PLAN AND SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.41 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A6.42 | GARAGE SECTIONS | 1 | 7/31/2020 |
| Architectural | A7.01 | DOOR SCHEDULE | 4 | 7/31/2020 |
| Architectural | A7.02 | WINDOW SCHEDULE | 4 | 8/12/2020 |
| Architectural | A7.03 | DOOR & WINDOW INSTALLATION DETAILS | 3 | 7/31/2020 |
| Architectural | A7.11 | TYPICAL DOOR DETAILS | 3 | 7/31/2020 |
| Architectural | A7.21 | TYPICAL WINDOW DETAILS | 3 | 7/31/2020 |
| Architectural | A7.22 | TYPICAL STOREFRONT DETAILS | 4 | 7/31/2020 |
| Architectural | A7.31 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.32 | TYPICAL ARCHITECTURAL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.33 | TYPICAL ARCHITECTURAL DETAILS | 2 | 7/31/2020 |
| Architectural | A7.34 | TYPICAL ARCHITECTURAL DETAILS | 1 | 7/31/2020 |
| Architectural | A7.41 | TYPICAL WATERPROOFING & BALCONY FLASHING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.42 | TYPICAL WATERPROOFING DETAILS | 2 | 7/31/2020 |
| Architectural | A7.51 | TYPICAL ROOFING DETAILS | 3 | 7/31/2020 |
| Architectural | A7.52 | TYPICAL ROOF DETAILS | 3 | 7/31/2020 |
| Architectural | A7.61 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.62 | TYPICAL FIRE CONTROL DETAILS | 3 | 7/31/2020 |
| Architectural | A7.63 | TYPICAL FIRE CONTROL DETAILS | 4 | 7/31/2020 |
| Architectural | A7.71 | TYPICAL SOUND CONTROL DETAILS & NOTES | 3 | 7/31/2020 |
| Architectural | A7.81 | TYPICAL RADON CONTROL DETAILS & NOTES | 1 | 7/31/2020 |
| Architectural | A7.91 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.92 | TYPICAL GARAGE DETAILS | 1 | 7/31/2020 |
| Architectural | A7.93 | TYPICAL GARAGE SIGN DETAILS | 1 | 7/31/2020 |
| Architectural | A7.94 | TYPICAL GARAGE PAINT AND SIGN DETAILS | 2 | 7/31/2020 |
| Architectural | A8.11 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.12 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.13 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.14 | FIRE RATED ASSEMBLIES VERTICAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.21 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.22 | FIRE RATED ASSEMBLIES HORIZONTAL RATINGS | 2 | 7/31/2020 |
| Architectural | A8.31 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.32 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.33 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |



Initial ___ Sub    Initial ___ Contractor

**Alterations to this Agreement are Prohibited**    Page 9 of 37

## Standard Short Form Agreement Between Contractor and Subcontractor

| Architectural | A8.34 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
|---|---|---|---|---|
| Architectural | A8.35 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | A8.36 | FIRE RATED ASSEMBLIES PENETRATIONS | 2 | 7/31/2020 |
| Architectural | BACK | PROJECT BACK SHEET | 1 | 7/31/2020 |
| Structural | S1.01 | STRUCTURAL GENERAL NOTES | 2 | 12/20/2019 |
| Structural | S1.02 | STRUCTURAL GENERAL NOTES | 1 | 10/16/2019 |
| Structural | S1.03 | GENERAL NOTES AND WIND DIAGRAMS | 2 | 2/24/2020 |
| Structural | S1.04 | SHEARWALL SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.05 | SCHEDULE AND DETAILS | 1 | 10/16/2019 |
| Structural | S1.06 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.07 | TYPICAL DETAILS | 0 | 10/16/2019 |
| Structural | S1.11 | OVERALL BUILDING CONTROL PLAN - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11A | PARTIAL BUILDING PLAN - A - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11B | PARTIAL BUILDING PLAN - B - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11C | PARTIAL BUILDING PLAN - C - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11D | PARTIAL BUILDING PLAN - D - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11E | PARTIAL BUILDING PLAN - E - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.11F | PARTIAL BUILDING PLAN - F - FOUNDATION | 2 | 12/20/2019 |
| Structural | S1.12 | OVERALL BUILDING CONTROL PLAN - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12A | PARTIAL BUILDING PLAN - A - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12B | PARTIAL BUILDING PLAN - B - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12C | PARTIAL BUILDING PLAN - C - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12D | PARTIAL BUILDING PLAN - D - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12E | PARTIAL BUILDING PLAN - E - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.12F | PARTIAL BUILDING PLAN - F - SECOND FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13 | OVERALL BUILDING CONTROL PLAN - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13A | PARTIAL BUILDING PLAN - A - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13B | PARTIAL BUILDING PLAN - B - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13C | PARTIAL BUILDING PLAN - C - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13D | PARTIAL BUILDING PLAN - D - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13E | PARTIAL BUILDING PLAN - E - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.13F | PARTIAL BUILDING PLAN - F - THIRD FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14 | OVERALL BUILDING CONTROL PLAN - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14A | PARTIAL BUILDING PLAN - A - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14B | PARTIAL BUILDING PLAN - B - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14C | PARTIAL BUILDING PLAN - C - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14D | PARTIAL BUILDING PLAN - D - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14E | PARTIAL BUILDING PLAN - E - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.14F | PARTIAL BUILDING PLAN - F - FOURTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15 | OVERALL BUILDING CONTROL PLAN - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15A | PARTIAL BUILDING PLAN - A - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15B | PARTIAL BUILDING PLAN - B - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15C | PARTIAL BUILDING PLAN - C - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15D | PARTIAL BUILDING PLAN - D - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15E | PARTIAL BUILDING PLAN - E - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.15F | PARTIAL BUILDING PLAN - F - FIFTH FLOOR FRAMING | 2 | 12/20/2019 |
| Structural | S1.16 | OVERALL BUILDING CONTROL PLAN -  ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16A | PARTIAL BUILDING PLAN - A - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16B | PARTIAL BUILDING PLAN - B - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16C | PARTIAL BUILDING PLAN - C - ROOF FRAMING | 2 | 12/20/2019 |



Initial _____   Initial _____   **Alterations to this Agreement are Prohibited**   Page 10 of 37
Sub                  Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Structural | S1.16D | PARTIAL BUILDING PLAN - D - ROOF FRAMING | 2 | 12/20/2019 |
|---|---|---|---|---|
| Structural | S1.16E | PARTIAL BUILDING PLAN - E - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.16F | PARTIAL BUILDING PLAN - F - ROOF FRAMING | 2 | 12/20/2019 |
| Structural | S1.21 | FOUNDATION AND SLAB ON GRADE PLAN GARAGE | 3 | 5/20/2020 |
| Structural | S3.11 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.12 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.13 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.14 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.21 | SECTION AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.22 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.23 | SECTIONS AND DETAILS | 2 | 2/24/2020 |
| Structural | S3.24 | SECTIONS AND DETAILS | 0 | 5/16/2019 |
| Structural | S3.31 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.32 | SECTION AND DETAILS | 1 | 10/16/2019 |
| Structural | S3.41 | SECTIONS AND DETAILS | 1 | 5/20/2020 |
| Structural | S3.42 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.43 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Structural | S3.44 | SECTIONS AND DETAILS | 2 | 5/20/2020 |
| Electrical | E0.01 | ELECTRICAL SYMBOLS LEGEND AND GENERAL NOTES | 3 | 8/12/2020 |
| Electrical | E0.10 | ELECTRICAL SITE PLAN | 4 | 5/4/2020 |
| Electrical | E0.11 | ELECTRICAL SITE LIGHTING PLAN | 4 | 8/12/2020 |
| Electrical | E0.12 | ELECTRICAL SITE PHOTOMETRIC PLAN | 2 | 4/15/2020 |
| Electrical | E1.11A | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Electrical | E1.11B | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 8/12/2020 |
| Electrical | E1.11C | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 4 | 8/12/2020 |
| Electrical | E1.11D | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.11E | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.11F | ELECTRICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.12A | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.12B | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.12C | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.12D | ELECTRICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.12E | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.12F | ELECTRICAL PARTIAL BULDING PLAN - SECOND FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.13A | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.13B | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.13C | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.13D | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.13E | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.13F | ELECTRICAL PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.14A | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.14B | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.14C | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.14D | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.14E | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 3 | 2/24/2020 |



## Standard Short Form Agreement Between Contractor and Subcontractor

| Electrical | E1.14F | ELECTRICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 3 | 2/24/2020 |
|---|---|---|---|---|
| Electrical | E1.15A | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 3 | 2/24/2020 |
| Electrical | E1.15B | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 3 | 2/24/2020 |
| Electrical | E1.15C | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 3 | 2/24/2020 |
| Electrical | E1.15D | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Electrical | E1.15E | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 3 | 2/24/2020 |
| Electrical | E1.15F | ELECTRICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 3 | 2/24/2020 |
| Electrical | E1.16A | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 2 | 8/12/2020 |
| Electrical | E1.16B | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 8/12/2020 |
| Electrical | E1.16C | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 8/12/2020 |
| Electrical | E1.16D | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 2 | 8/12/2020 |
| Electrical | E1.16E | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 2 | 8/12/2020 |
| Electrical | E1.16F | ELECTRICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 2 | 8/12/2020 |
| Electrical | E1.21 | GARAGE LEVEL 1 - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E1.22 | GARAGE LEVEL 2 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.23 | GARAGE LEVEL 3 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.24 | GARAGE LEVEL 4 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.25 | GARAGE LEVEL 5 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.26 | GARAGE LEVEL 6 - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E1.27 | GARAGE LEVEL 7 - ROOF - ELECTRICAL | 2 | 2/24/2020 |
| Electrical | E4.01 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.02 | TYPICAL UNITS - ELECTRICAL | 4 | 8/12/2020 |
| Electrical | E4.03 | TYPICAL UNITS - ELECTRICAL | 3 | 2/24/2020 |
| Electrical | E4.04 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E4.05 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E4.06 | ELECTRICAL CEILING MOUNTED DEVICE DIMENSIONS | 1 | 12/20/2019 |
| Electrical | E5.01 | ELECTRICAL ONE LINE DIAGRAM | 4 | 5/4/2020 |
| Electrical | E6.01 | EQUIPMENT, PANEL FEEDER & UNIT SCHEDULES | 7 | 9/23/2020 |
| Electrical | E7.01 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.02 | ELECTRICAL SCHEDULES | 3 | 8/12/2020 |
| Electrical | E7.03 | ELECTRICAL SCHEDULES | 1 | 2/24/2020 |
| Electrical | E8.01 | ELECTRICAL DETAILS | 2 | 2/24/2020 |
| Electrical | E8.02 | ELECTRICAL DETAILS | 2 | 12/20/2019 |
| Plumbing | P0.01 | PLUMBING SYMBOLS LEGEND AND GENERAL NOTES | 2 | 5/20/2020 |
| Plumbing | P1.01A | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.01B | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.01C | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.01D | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.01E | CONDENSATE PARTIAL BUILDING PLAN - FIRST PART E | 0 | 10/16/2019 |
| Plumbing | P1.01F | CONDENSATE PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 0 | 10/16/2019 |
| Plumbing | P1.10 | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 5/16/2019 |
| Plumbing | P1.10A | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 4 | 8/12/2020 |
| Plumbing | P1.10B | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 4 | 4/15/2020 |
| Plumbing | P1.10C | UNDERGROUND PARTIAL BUILDING PLAN - FLOOR PART C | 3 | 8/12/2020 |
| Plumbing | P1.10D | UNDERGROUND PARTIAL BULDING FIRST FLOOR PART D | 2 | 12/20/2019 |
| Plumbing | P1.10E | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.10F | UNDERGROUND PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 3 | 8/12/2020 |



**Standard Short Form Agreement Between Contractor and Subcontractor**

| Plumbing | P1.11A | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
|---|---|---|---|---|
| Plumbing | P1.11B | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 12/20/2019 |
| Plumbing | P1.11C | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 8/12/2020 |
| Plumbing | P1.11D | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 1 | 10/16/2019 |
| Plumbing | P1.11E | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 1 | 10/16/2019 |
| Plumbing | P1.11F | PLUMBING PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 8/12/2020 |
| Plumbing | P1.12A | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Plumbing | P1.12B | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.12C | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.12D | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.12E | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.12F | PLUMBING PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.13A | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.13B | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.13C | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.13D | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.13E | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.13F | PLUMBING PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.14A | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.14B | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.14C | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.14D | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.14E | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.14F | PLUMBING PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.15A | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 0 | 10/16/2019 |
| Plumbing | P1.15B | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 0 | 10/16/2019 |
| Plumbing | P1.15C | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 0 | 10/16/2019 |
| Plumbing | P1.15D | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 0 | 10/16/2019 |
| Plumbing | P1.15E | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 0 | 10/16/2019 |
| Plumbing | P1.15F | PLUMBING PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 8/12/2020 |
| Plumbing | P1.16A | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART A | 0 | 10/16/2019 |
| Plumbing | P1.16B | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART B | 0 | 10/16/2019 |
| Plumbing | P1.16C | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART C | 0 | 10/16/2019 |
| Plumbing | P1.16D | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART D | 0 | 10/16/2019 |
| Plumbing | P1.16E | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART E | 0 | 10/16/2019 |
| Plumbing | P1.16F | PLUMBING PARTIAL BUILDING PLAN - ROOF PLAN PART F | 1 | 8/12/2020 |
| Plumbing | P1.21 | GARAGE LEVEL 1 - PLUMBING | 4 | 5/29/2020 |
| Plumbing | P1.22 | GARAGE LEVEL 2 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.23 | GARAGE LEVEL 3 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.24 | GARAGE LEVEL 4 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.25 | GARAGE LEVEL 5 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.26 | GARAGE LEVEL 6 - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P1.27 | GARAGE ROOF LEVEL - PLUMBING | 1 | 5/29/2020 |
| Plumbing | P4.01 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.02 | TYPICAL UNITS - PLUMBING | 2 | 8/12/2020 |
| Plumbing | P4.03 | ENLARGED PLUMBING PLANS | 1 | 12/20/2019 |
| Plumbing | P5.01 | PLUMBING RISER DIAGRAMS | 2 | 8/12/2020 |
| Plumbing | P5.02 | PLUMBING RISER DIAGRAMS | 1 | 8/12/2020 |
| Plumbing | P5.03 | GARAGE STORM SYSTEM RISER DIAGRAMS | 0 | 5/29/2020 |
| Plumbing | P8.01 | PLUMBING DETAILS | 1 | 10/16/2019 |
| Plumbing | P8.02 | PLUMBING DETAILS | 0 | 10/16/2019 |
| Mechanical | M0.01 | MECHANICAL SYMBOLS LEGEND AND GENERAL NOTES | 1 | 10/16/2019 |



Initial ___ Initial ___ **Alterations to this Agreement are Prohibited**    Page 13 of 37
Sub        Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

| Mechanical | M1.11A | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 8/12/2020 |
|---|---|---|---|---|
| Mechanical | M1.11B | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.11C | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 3 | 8/12/2020 |
| Mechanical | M1.11D | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.11E | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.11F | MECHANICAL PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.12A | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.12B | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 3 | 8/12/2020 |
| Mechanical | M1.12C | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.12D | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.12E | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.12F | MECHANICAL PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.13A | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.13B | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.13C | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.13D | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.13E | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.13F | MECHANICAL PARTIAL BUILDING PLAN -THIRD FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.14A | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.14B | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.14C | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.14D | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.14E | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.14F | MECHANICAL PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.15A | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 2 | 12/20/2019 |
| Mechanical | M1.15B | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 2 | 12/20/2019 |
| Mechanical | M1.15C | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 2 | 12/20/2019 |
| Mechanical | M1.15D | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 2 | 12/20/2019 |
| Mechanical | M1.15E | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 2 | 12/20/2019 |
| Mechanical | M1.15F | MECHANICAL PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 2 | 12/20/2019 |
| Mechanical | M1.16A | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART A | 3 | 8/12/2020 |
| Mechanical | M1.16B | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART B | 2 | 12/20/2019 |
| Mechanical | M1.16C | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART C | 2 | 12/20/2019 |
| Mechanical | M1.16D | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART D | 3 | 8/12/2020 |
| Mechanical | M1.16E | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART E | 3 | 8/12/2020 |
| Mechanical | M1.16F | MECHANICAL PARTIAL BUILDING PLAN - ROOF PLAN PART F | 3 | 8/12/2020 |
| Mechanical | M1.21 | GARAGE LEVEL 1 - MECHANCIAL | 1 | 2/24/2020 |
| Mechanical | M1.22 | GARAGE LEVEL 2 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.23 | GARAGE LEVEL 3 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.24 | GARAGE LEVEL 4- MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.25 | GARAGE LEVEL 5 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.26 | GARAGE LEVEL 6 - MECHANCIAL | 0 | 10/16/2019 |
| Mechanical | M1.27 | GARAGE ROOF - MECHANICAL | 1 | 2/24/2020 |



Initial ᴋᵖ    Initial BLA

Sub          Contractor

**Alterations to this Agreement are Prohibited**          Page 14 of 37

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Mechanical | M4.01 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
|---|---|---|---|---|
| Mechanical | M4.02 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M4.03 | TYPICAL UNITS - MECHANICAL | 3 | 2/24/2020 |
| Mechanical | M6.01 | MECHANICAL SCHEDULES | 2 | 12/20/2019 |
| Mechanical | M7.01 | MECHANICAL DETAILS | 2 | 2/24/2020 |
| Mechanical | M7.02 | MECHANICAL DETAILS | 1 | 10/16/2019 |
| Mechanical | M7.03 | MECHANICAL DETAILS | 1 | 2/24/2020 |
| Fire Protection | F0.01 | FIRE PROTECTION SYMBOLS AND SPECIFICATIONS | 2 | 4/15/2020 |
| Fire Protection | F1.11A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART A | 3 | 2/24/2020 |
| Fire Protection | F1.11B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART B | 2 | 2/24/2020 |
| Fire Protection | F1.11C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART C | 2 | 2/24/2020 |
| Fire Protection | F1.11D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART D | 2 | 2/24/2020 |
| Fire Protection | F1.11E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART E | 2 | 2/24/2020 |
| Fire Protection | F1.11F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIRST FLOOR PART F | 2 | 2/24/2020 |
| Fire Protection | F1.12A | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.12B | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.12C | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.12D | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.12E | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.12F | FIRE PROTECTION PARTIAL BUILDING PLAN - SECOND FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.13A | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART A | 1 | 2/24/2020 |
| Fire Protection | F1.13B | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.13C | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.13D | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.13E | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.13F | FIRE PROTECTION PARTIAL BUILDING PLAN - THIRD FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.14A | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART A | 0 | 10/16/2019 |
| Fire Protection | F1.14B | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART B | 0 | 10/16/2019 |
| Fire Protection | F1.14C | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART C | 0 | 10/16/2019 |
| Fire Protection | F1.14D | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART D | 0 | 10/16/2019 |
| Fire Protection | F1.14E | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART E | 0 | 10/16/2019 |
| Fire Protection | F1.14F | FIRE PROTECTION PARTIAL BUILDING PLAN - FOURTH FLOOR PART F | 0 | 10/16/2019 |



Initial ____ Sub    Initial ____ Contractor    **Alterations to this Agreement are Prohibited**    Page 15 of 37

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Fire Protection | F1.15A | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART A | 1 | 2/24/2020 |
|---|---|---|---|---|
| Fire Protection | F1.15B | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART B | 1 | 2/24/2020 |
| Fire Protection | F1.15C | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART C | 1 | 2/24/2020 |
| Fire Protection | F1.15D | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART D | 1 | 2/24/2020 |
| Fire Protection | F1.15E | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART E | 1 | 2/24/2020 |
| Fire Protection | F1.15F | FIRE PROTECTION PARTIAL BUILDING PLAN - FIFTH FLOOR PART F | 1 | 2/24/2020 |
| Fire Protection | F1.21 | GARAGE LEVEL 1 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.22 | GARAGE LEVEL 2 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.23 | GARAGE LEVEL 3 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.24 | GARAGE LEVEL 4 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.25 | GARAGE LEVEL 5 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F1.26 | GARAGE LEVEL 6 - FIRE PROTECTION | 0 | 10/16/2019 |
| Fire Protection | F6.01 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Fire Protection | F6.02 | FIRE PROTECTION DETAILS | 1 | 10/16/2019 |
| Low Voltage | T-000 | LOW VOLTAGE NOTES AND LEGENDS | 1 | 4/1/2020 |
| Low Voltage | T-100 | FIRST FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-100A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITIES | 0 | 12/20/2019 |
| Low Voltage | T-100B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-100D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-101 | SECOND FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-102 | THIRD FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-103 | FOURTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-104 | FIFTH FLOOR PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-105 | ROOF PLAN LOW VOLTAGE PATHWAYS | 0 | 12/20/2019 |
| Low Voltage | T-106 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-107 | LOW VOLTAGE UNIT PLANS | 0 | 12/20/2019 |
| Low Voltage | T-108 | LOW VOLTAGE UNIT DISTRIBUTION PANEL | 1 | 4/1/2020 |
| Low Voltage | T-200 | FIRST FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-201 | SECOND FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-202 | THIRD FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-203 | FOURTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-204 | FIFTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-205 | SIXTH FLOOR PLAN - GARAGE LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300 | FIRST FLOOR PLAN LOW VOLTAGE SECURITY | 0 | 12/20/2019 |
| Low Voltage | T-300A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-300D | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-302 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |



Initial _____ Sub    Initial _____ Contractor    **Alterations to this Agreement are Prohibited**    Page 16 of 37

**Standard Short Form Agreement Between Contractor and Subcontractor**

| | | | | |
|---|---|---|---|---|
| Low Voltage | T-303 | LOW VOLTAGE ACCESS CONTROL DETAILS | 0 | 12/20/2019 |
| Low Voltage | T-400 | FIRST FLOOR PLAN LOW VOLTAGE A/V | 0 | 12/20/2019 |
| Low Voltage | T-400A | FIRST & SECOND FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400B | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-400C | FIRST FLOOR PLAN LOW VOLTAGE ENLARGED AMENITITES | 0 | 12/20/2019 |
| Low Voltage | T-500 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (MDF) | 1 | 4/1/2020 |
| Low Voltage | T-501 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 1A & IDF 1B) | 1 | 4/1/2020 |
| Low Voltage | T-502 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3A & IDF 5A) | 1 | 4/1/2020 |
| Low Voltage | T-503 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3B & IDF 5B) | 1 | 4/1/2020 |
| Low Voltage | T-504 | LOW VOLTAGE COMMUNICATIONS ROOMS LAYOUTS (IDF 3C & IDF 5C) | 1 | 4/1/2020 |
| Low Voltage | T-600 | LOW VOLTAGE CONNECTIVITY DIAGRAM (UNIT) | 0 | 12/20/2019 |
| Low Voltage | T-601 | LOW VOLTAGE CONNECTIVITY DIAGRAM (ACCESS CONTROL) | 0 | 12/20/2019 |
| Low Voltage | T-602 | LOW VOLTAGE CONNECTIVITY DIAGRAM (SURVEILLANCE) | 0 | 12/20/2019 |
| Interior | ID-0.00 | COVER SHEET | 1 | 5/8/2020 |
| Interior | ID-0.01 | PLAN KEY | 3 | 5/8/2020 |
| Interior | ID-0.02 | GENERAL NOTES | 3 | 5/8/2020 |
| Interior | ID-0.03 | LEGENDS & ABBREVIATIONS | 2 | 5/8/2020 |
| Interior | ID-0.04 | OVERALL FLOOR PLAN FIRST FLOOR | 2 | 5/8/2020 |
| Interior | ID-0.05 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.06 | PART. FLOOR PLAN SECOND, THIRD & FOURTH FL. | 2 | 5/8/2020 |
| Interior | ID-0.07 | OVERALL FLOOR PLAN FIFTH FLOOR | 2 | 5/8/2020 |
| Interior | ID-1.00 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.01 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.02 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.03 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.04 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.05 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.06 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.07 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.08 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.09 | FURNITURE PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.10 | INTERIOR PLAN FIRST & FIFTHFLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.11 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.12 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.13 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.14 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.15 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.16 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.17 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.18 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.19 | INTERIOR PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.20 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.21 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.22 | FLOOR COVERING PLAN FIRST & FIFTH FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.23 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.24 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.25 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.26 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |



Initial ___ Sub   Initial ___ Contractor   **Alterations to this Agreement are Prohibited**   Page 17 of 37

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-1.27 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.28 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.29 | FLOOR COVERING PLAN FIRST FLOOR PARTIAL | 3 | 5/8/2020 |
| Interior | ID-1.30 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.31 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.32 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.33 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.34 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.35 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.36 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.37 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.38 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.39 | ELECTRICAL PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.40 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.41 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.42 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.43 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.44 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.45 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.46 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.47 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.48 | REFLECTED CEILING PLAN FIRST & FIFTH FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.49 | REFLECTED CEILING PLAN FIRST FLOOR PARTIAL | 2 | 5/8/2020 |
| Interior | ID-1.50.0 | FURNITURE PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.50.1 | FURNITURE PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.51 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.52 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.53 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.54 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.55 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.56 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.57 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.58 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.59 | FURNITURE PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.0 | FLOOR COVERING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.60.1 | FLOOR COVERING PLAN 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.61 | FLOOR COVERING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.62 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.63 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.64 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.65 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.66 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.67 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.68 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.69 | FLOOR COVERING PLAN 2ND, 3RD, 4TH, & 5TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.0 | ELECTRICAL PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.70.1 | ELECTRICAL PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.71 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.72 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.73 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.74 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.75 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |



Initial Sub    Initial Contractor    **Alterations to this Agreement are Prohibited**    Page 18 of 37

## Standard Short Form Agreement Between Contractor and Subcontractor

| Interior | ID-1.76 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-1.77 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.78 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.79 | ELECTRICAL PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.80.0 | REFLECTED CEILING PLAN 2ND FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.80.1 | REFLECTED CEILING PLAN 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.81 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.82 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.83 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.84 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.85 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.86 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.87 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.88 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.89 | REFLECTED CEILING PLAN 2ND, 3RD & 4TH FL. PART. | 2 | 5/8/2020 |
| Interior | ID-1.90 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.91 | INTERIOR PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.92 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-1.93 | FLOOR COVERING PLAN TYPICAL UNITS | 3 | 5/8/2020 |
| Interior | ID-2.00 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.01 | INTERIOR ELEVATIONS LEASING OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.02 | INTERIOR ELEVATIONS SALES OFF. / CLUB RM. | 2 | 5/8/2020 |
| Interior | ID-2.03 | INTERIOR ELEVATIONS CORRIDOR 1 | 2 | 5/8/2020 |
| Interior | ID-2.04 | INTERIOR ELEVATIONS CONF. RM. / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.05 | INTERIOR ELEVATIONS CONF. RM / CO-WORK | 2 | 5/8/2020 |
| Interior | ID-2.06 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.07 | INTERIOR ELEVATIONS GAME ROOM | 2 | 5/8/2020 |
| Interior | ID-2.08 | INTERIOR ELEVATIONS MEDIA THEATRE | 2 | 5/8/2020 |
| Interior | ID-2.09 | INTERIOR ELEVATIONS FITNESS | 2 | 5/8/2020 |
| Interior | ID-2.10 | INTERIOR ELEVATIONS YOGA | 2 | 5/8/2020 |
| Interior | ID-2.11 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.12 | INTERIOR ELEVATIONS MAIL ROOM | 2 | 5/8/2020 |
| Interior | ID-2.13 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.14 | INTERIOR ELEVATIONS ELEVATOR LOBBY | 2 | 5/8/2020 |
| Interior | ID-2.15 | INTERIOR ELEVATIONS CORRIDOR 2 | 2 | 5/8/2020 |
| Interior | ID-2.16 | INTERIOR ELEVATIONS CORRIDOR 3 | 2 | 5/8/2020 |
| Interior | ID-2.17 | INTERIOR ELEVATIONS CORRIDOR 4 | 2 | 5/8/2020 |
| Interior | ID-2.18 | INTERIOR ELEVATIONS CORRIDOR 5 | 2 | 5/8/2020 |
| Interior | ID-2.19 | INTERIOR ELEVATIONS CORRIDOR 6 | 2 | 5/8/2020 |
| Interior | ID-2.20 | INTERIOR ELEVATIONS CORRIDOR 7 | 2 | 5/8/2020 |
| Interior | ID-2.21 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.22 | INTERIOR ELEVATIONS CORRIDOR 8 | 2 | 5/8/2020 |
| Interior | ID-2.23 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.24 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.25 | INTERIOR ELEVATIONS CORRIDOR 9 | 2 | 5/8/2020 |
| Interior | ID-2.26 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.27 | INTERIOR ELEVATIONS CORRIDOR 10 | 2 | 5/8/2020 |
| Interior | ID-2.28 | INTERIOR ELEVATIONS CORRIDOR 11 | 2 | 5/8/2020 |
| Interior | ID-2.29 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.30 | INTERIOR ELEVATIONS CORRIDOR 12 | 2 | 5/8/2020 |
| Interior | ID-2.31 | INTERIOR ELEVATIONS CORRIDOR 13 | 2 | 5/8/2020 |
| Interior | ID-2.32 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |



Initial _____ Sub   Initial _____ Contractor   **Alterations to this Agreement are Prohibited**   Page 19 of 37

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Interior | ID-2.33 | INTERIOR ELEVATIONS CORRIDOR 14 | 2 | 5/8/2020 |
|---|---|---|---|---|
| Interior | ID-2.34 | INTERIOR ELEVATIONS CORRIDOR 15 | 2 | 5/8/2020 |
| Interior | ID-2.35 | INTERIOR ELEVATIONS CORRIDOR 16 | 2 | 5/8/2020 |
| Interior | ID-2.36 | INTERIOR ELEVATIONS CORRIDOR 17 | 2 | 5/8/2020 |
| Interior | ID-2.37 | INTERIOR ELEVATIONS VESTIBULE 1 AND 2 | 2 | 5/8/2020 |
| Interior | ID-2.38 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.39 | INTERIOR ELEVATIONS VESTIBULE 3 | 2 | 5/8/2020 |
| Interior | ID-2.40 | INTERIOR ELEVATIONS VESTIBULE 4 AND 5 | 2 | 5/8/2020 |
| Interior | ID-2.41 | INTERIOR ELEVATIONS VESTIBULE 5 AND 6 | 2 | 5/8/2020 |
| Interior | ID-2.42 | INTERIOR ELEVATIONS VESTIBULE 7 AND 8 | 2 | 5/8/2020 |
| Interior | ID-2.43 | INTERIOR ELEVATIONS VESTIBULE 8, 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.44 | INTERIOR ELEVATIONS VESTIBULE 9 AND 10 | 2 | 5/8/2020 |
| Interior | ID-2.50 | INTERIOR ELEVATIONS MEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.51 | INTERIOR ELEVATIONS WOMEN'S RESTROOM | 2 | 5/8/2020 |
| Interior | ID-2.60 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.61 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-2.62 | EXTERIOR ELEVATIONS OUTDOOR | 2 | 5/8/2020 |
| Interior | ID-3.00 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.01 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.02 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.03 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-3.04 | INTERIOR DETAILS & SECTIONS | 2 | 5/8/2020 |
| Interior | ID-4.00 | SCHEDULES | 3 | 5/8/2020 |
| Interior | ID-4.01 | DOOR SCHEDULE | 2 | 5/8/2020 |
| Interior | ID-4.02 | SCHEDULES TYPICAL UNITS | 3 | 5/8/2020 |
| Hardscape | H-1 | SITE PLAN PHASE 2 | 6 | 5/22/2020 |
| Hardscape | H-2.1 | HARDSCAPE LABEL PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.2 | HARDSCAPE DIMENSION PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-2.3 | HARDSCAPE FINISHES PLAN COURTYARD A | 8 | 8/31/2020 |
| Hardscape | H-3.1 | HARDSCAPE LABEL PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.2 | HARDSCAPE DIMENSION PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-3.3 | HARDSCAPE FINISHES PLAN COURTYARD B | 6 | 5/22/2020 |
| Hardscape | H-4.1 | HARDSCAPE LABEL PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-4.2 | HARDSCAPE DIMENSION PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-4.3 | HARDSCAPE FINISHES PLAN COURTYARD C | 6 | 5/22/2020 |
| Hardscape | H-5.1 | HARDSCAPE LABEL PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.2 | HARDSCAPE DIMENSION PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-5.3 | HARDSCAPE FINISHES PLAN COURTYARD D | 6 | 5/22/2020 |
| Hardscape | H-6 | HARDSCAPE LABEL PLAN | 3 | 5/16/2019 |
| Hardscape | H-6.1 | HARDSCAPE LABEL PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.2 | HARDSCAPE DIMENSION PLAN LAKE/DOG PARK | 6 | 5/22/2020 |
| Hardscape | H-6.3 | HARDSCAPE DIMESION PLAN | 6 | 5/22/2020 |
| Hardscape | H-7 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-8 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-9 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-10 | HARDSCAPE DETAILS | 6 | 5/22/2020 |
| Hardscape | H-11 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-12 | HARDSCAPE DETAILS | 7 | 8/12/2020 |
| Hardscape | H-13 | HARDSCAPE DETAILS | 8 | 8/31/2020 |
| Hardscape | H-14 | HARDSCAPE SPECIFICATIONS | 6 | 5/22/2020 |
| Landscape | L-1 | SITE PLAN PHASE 2 | 8 | 5/22/2020 |
| Landscape | L-2 | TREE DISPOSITION PLAN PHASE 2 | 8 | 5/14/2020 |



Initial _____   Initial _____   **Alterations to this Agreement are Prohibited**   Page 20 of 37
Sub                Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

| Landscape | L-3 | TREE DISPOSITION PLAN PH 2 | 7 | 5/14/2020 |
|-----------|-----|----------------------------|---|-----------|
| Landscape | L-4 | TREE DISPOSITION SCHEDULE PH 2 | 8 | 5/14/2020 |
| Landscape | L-5 | LANDSCAPE PLAN | 7 | 5/22/2020 |
| Landscape | L-6 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-7 | LANDSCAPE PLAN | 5 | 5/22/2020 |
| Landscape | L-8 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-9 | LANDSCAPE PLAN | 4 | 5/22/2020 |
| Landscape | L-10 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-11 | LANDSCAPE SCHEDULE | 3 | 5/22/2020 |
| Landscape | L-12 | LANDSCAPE SPECIFICATIONS | 3 | 5/22/2020 |
| Landscape | L-13 | LANDSCAPE SPECIFICATIONS | 0 | 5/16/2019 |
| Landscape | LI-1 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-2 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LI-3 | IRRIGATION PLAN | 0 | 2/25/2020 |
| Landscape | LLP-1 | SITE PLAN PHASE 2 | 2 | 5/22/2020 |
| Landscape | LLP-2 | LANDSCAPE LIGHTING PLAN | 3 | 5/22/2020 |
| Landscape | LLP-3 | LANDSCAPE LIGHT PLAN | 3 | 5/22/2020 |
| Landscape | LLP-4 | LANDSCAPE LIGHTING PLAN SCHEDULE | 3 | 5/22/2020 |
| Landscape | LLP-5 | LANDSCAPE LIGHT PLAN SPECIFICATIONS | 2 | 5/22/2020 |
| Surveys | 1 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 2 | 7/11/2019 |
| Surveys | 2 | BOUNDARY, TOPOGRAPHIC AND TREE SURVEY | 4 | 6/15/2020 |

**Architect:**
**Charlan Brock & Associates**

**Engineer:**
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

**Architect of Record:**
**Doug Anderson**
**1770 Fennell Street**
**Maitland, Florida 32751**

**Civil Engineer:**
**Z Development Services**
**708 E. Colonial Drive Suite 100**
**Orlando, Florida 32803**

**Structural Engineer:**
**John Bailes**
**1035 South Semoran Blvd**
**Winter Park, Florida 32792**

**Landscape Architect:**
**Aaron Mastin**
**101 SE 2nd Ave**
**Delray Beach, Florida 33444**

**Hardscape Architect:**
**Aaron Mastin**



Initial [ kP ]   Initial [ BLA ]          **Alterations to this Agreement are Prohibited**          Page 21 of 37

Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

101 SE 2nd Ave
Delray Beach, Florida 33444

Interior Design:
Jorge Garcia
4700 Riverside Drive, Suite 100
Palm Beach Gardens, Florida 33410

**EXHIBITS.** As applicable, the following Exhibits are incorporated by reference and made part of this Agreement:

EXHIBIT A:  Schedule of Values
EXHIBIT B:  Insurance

**1.1  SUBCONTRACTOR IS AN INDEPENDENT CONTRACTOR.** SUBCONTRACTOR is an independent contractor and shall, at its sole cost and expense, comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the Work. SUBCONTRACTOR shall have sole responsibility for the means and methods of performing the Work required under this Subcontract. SUBCONTRACTOR is responsible for securing timely inspections and approvals of its Work from all such authorities as required by the Contract Documents. All inspections must be coordinated with CONTRACTOR. SUBCONTRACTOR must obtain and pay for all necessary permits and licenses, including business licenses; pay all fees, manufacturer's taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes, insurance and contributions for Social Security and unemployment or disability insurance which are measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules, or regulations. SUBCONTRACTOR must maintain proof that it has complied with all aspects of this Paragraph and shall make such proof available for review by CONTRACTOR at CONTRACTOR's request. SUBCONTRACTOR agrees that any penalty, charge, fine, or other assessment made on account of SUBCONTRACTOR or SUBCONTRACTOR's work will be promptly paid in full by SUBCONTRACTOR. All of the SUBCONTRACTOR's Work shall be performed in strict accordance with the Occupational Safety and Health Act of 1970 and any other legislation enacted by federal, state, or local governing authorities or agencies. Additionally, SUBCONTRACTOR shall furnish a copy to CONTRACTOR the applicable Safety Data Sheets (SDS) for all hazardous materials or chemicals used in connection with or consumed or incorporated into this Project as required by the Hazard Communication Standard of the Occupational Safety and Health Administration (OSHA). The SUBCONTRACTOR shall report to the CONTRACTOR within one (1) day after an injury to an employee or agent of the SUBCONTRACTOR which occurs on the site.

**1.2A  SUBCONTRACTOR** shall not perform any labor services under this Subcontract with any persons or parties other than SUBCONTRACTOR's direct employees without first 1) providing CONTRACTOR with at least 24 hours prior written notice, and 2) providing CONTRACTOR with a copy of the agreement between SUBCONTRACTOR and any sub-subcontractor, employee leasing company, employee management company, labor supplier company, or individual ("third party labor provider") providing such labor at least 24 hours prior to beginning to perform the labor. SUBCONTRACTOR's failure to comply with these requirements shall be a material breach of the Subcontract allowing for termination of the Subcontract, and the CONTRACTOR will not be liable for payment of any labor costs of the third-party labor provider. Should the SUBCONTRACTOR be authorized to use a third-party labor provider on the project, the CONTRACTOR must receive written confirmation, via email, setting forth the specific names of each third-party labor provider employee onsite, the amount of the hours worked, and price per hour for each employee. This information must be received by 5:00 pm daily on same day that the third-party labor provider was onsite at the project. Failure to timely and completely provide this information will result in non-payment by the CONTRACTOR to the SUBCONTRACTOR for such third-party labor.

**1.3  QUALITY AND SCOPE OF WORK/FIELD VERIFICATIONS.** The Contract Documents are intended to and shall be considered to include all items which would normally be included in SUBCONTRACTOR's trade and are intended to include all Work that CONTRACTOR is called upon to perform under terms of its contract with Owner. The Plans and Specifications generally indicate the scope and quality of the work but are not represented as being free from errors or omissions and any work called for in the Specifications and not shown on the Plans, or vice versa, are to be furnished as if called for in both and, in addition SUBCONTRACTOR agrees that any and all work required and reasonably implied as necessary to complete the job, shall be furnished and installed by SUBCONTRACTOR without any additional cost. SUBCONTRACTOR shall notify CONTRACTOR in writing of any deviations from the Contract Documents. SUBCONTRACTOR's responsibility to conform to the Contract Documents is not relieved by Architect's or



Initial _____  Initial _____     **Alterations to this Agreement are Prohibited**     Page 22 of 37
Sub                 Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

CONTRACTOR's review unless there is written acceptance of the specific deviations. SUBCONTRACTOR agrees not to modify, withdraw, or cancel any alternate bids, for ninety (90) days after receipt of bid. SUBCONTRACTOR shall provide its own layout and make its own measurements and shall guarantee the accuracy thereof and shall not rely on the measurements of any other party.

The SUBCONTRACTOR represents that it is licensed (if applicable) and fully qualified to perform the Work required by this Subcontract and acknowledges that it has, by careful examination satisfied itself as to: (a) the nature, location and character of the Job Site including, but not limited to, the surface and subsurface conditions of the land and all structures and obstructions thereon, both natural and manmade, surface water conditions of the Job Site and the surrounding area and, to the extent pertinent to the Work, all other conditions; (b) the nature, location and character of the general area in which the Job Site is located including, without limitation, its climatic conditions, the availability and cost of labor and the availability and cost of materials, tools and equipment; the quality and quantity of all material, supplies, tools, equipment, labor and services necessary to complete the Work in the manner required by the Contract Documents; and (c) all other matters or things which could in any manner affect the performance of the Work. The SUBCONTRACTOR recognizes and understands the physical and operational restrictions on carrying on of the Work in or about the Project and expressly agrees that such conditions have been accounted for in the Subcontract price. **By commencing its Work, SUBCONTRACTOR accepts the surface or substrate on which such work is placed and all adjacent work of earlier subcontractors and other areas that interface with or connect to the SUBCONTRACTOR's Work or otherwise affect SUBCONTRACTOR's Work. The SUBCONTRACTOR shall take such measurements as will insure the proper matching and placement of the Work under this Subcontract and is otherwise responsible for compliance with the intent of the Contract Documents. The SUBCONTRACTOR shall immediately notify CONTRACTOR and the Architect of any unacceptable conditions or deviations from contract requirements affecting its Work and shall notify CONTRACTOR and Architect of any discrepancies or conflicts in the Contract Documents before performing its Work and shall be responsible for all costs resulting from its failure to do so. Any SUBCONTRACTOR that installs his work attached to an unacceptable substrate without written notification to CONTRACTOR shall bear the costs of removal and replacement of his work.** All Work shall be done in a good and workmanlike manner and all material shall be new and of specified grade, and all Work and material shall be furnished and installed in compliance with the requirements of the institutions making the construction and permanent mortgages on the property and all governmental or other authorities having jurisdiction thereof.

**Prior to starting any field work, the SUBCONTRACTOR shall participate in a "SUBCONTRACTOR's Preparatory Meeting" with the CONTRACTOR at the jobsite, to thoroughly review the following items and procedures and sign-off as to the SUBCONTRACTOR's participation and understanding: (1) Subcontract Agreement & Exhibit "A", (2) possession of correct Drawings & Specifications, (3) SDS Sheets & OSHA Review, (4) Completed stamped and approved shop drawings & submittals, (5) required material installation procedures, and (6) Payment Procedures. SUBCONTRACTOR is solely responsible for its work being in full compliance with this Subcontract Agreement requirement. All subcontractors must attend project meetings that they are requested to attend (a two-day notice will be provided). Sending a laborer to a meeting will not count as a substitute. It must be an approved supervisor or an individual authorized to make decisions on behalf of your company. Subcontractors will be fined $250 for each meeting missed.**

SUBCONTRACTOR is at all times to work ONLY from Drawings specifically issued by CONTRACTOR's Project Manager that identifies the documents as "For Construction". Under no circumstances is SUBCONTRACTOR to perform any work on the Project from any Drawings that do not include such identification. SUBCONTRACTOR is not to accept, process, bid, or perform any actual construction work based on any Drawings that have not been so identified by CONTRACTOR's Project Manager as described above. SUBCONTRACTOR shall be solely responsible for compliance with his requirement.

SUBCONTRACTOR jobsite supervisor shall submit Daily Reports (including manpower) to CONTRACTOR each day on separate forms provided by CONTRACTOR. Failure to provide these forms will be sufficient cause for CONTRACTOR to withhold payment until CONTRACTOR is provided with completed up-to-date reports.

**1.4    SUBMITTALS.** SUBCONTRACTOR shall promptly prepare or obtain and submit to CONTRACTOR in the quantity requested by CONTRACTOR, all shop and erection drawings, samples, product data, catalogue cuts, laboratory and inspection reports, and engineering calculations ("Submittals") required by the Contract Documents, or as may be necessary or appropriate to describe the details of the Work. All Submittals shall be submitted in a timely manner so as to



Initial _____    Initial _____    **Alterations to this Agreement are Prohibited**    Page 23 of 37

Sub            Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

permit the work to be performed in accordance with the Project Schedule. Neither review, nor approval, of Submittals by CONTRACTOR, Owner or Architect shall relieve SUBCONTRACTOR of its obligation to perform the Work in strict conformity with the Contract Documents or its responsibility for the proper matching of the Work to contiguous work. SUBCONTRACTOR shall identify each and every variance between any Submittals and the requirements of the Contract Documents at the time of transmission either prominently on the Submittal or specifically in a transmission letter accompanying the Submittal. No modification, revision or other notation on a Submittal that changes or modifies the Contract Documents shall be valid (even if the drawing or Submittal is approved) unless there is a Change Order issued approving same. No Work required or Work attaching to items requiring submittals or shop drawings shall be started by SUBCONTRACTOR until approved Submittals are returned to SUBCONTRACTOR. Materials ordered, fabricated, or installed prior to receipt of approved Submittals are at SUBCONTRACTOR's sole risk. All material submittals, shop drawings, affidavits, etc., that are required for your area of work need to be submitted to the CONTRACTOR within seven (7) days of signing your contract.

3)      **BONDS.** SUBCONTRACTOR shall not **X** furnish to CONTRACTOR, as Obligee, surety bonds to this Agreement, and through a surety mutually agreeable to CONTRACTOR and SUBCONTRACTOR, to secure faithful performance of Subcontract Work and to satisfy SUBCONTRACTOR payment obligations related to SUBCONTRACTOR's Work.

4)      **SAFETY AND CLEAN-UP.** To protect persons and property, SUBCONTRACTOR shall establish a safety program implementing safety measures, policies and standards conforming to (1) those required or recommended by governmental and quasi-governmental authorities having jurisdiction and (2) the requirements of this Agreement. SUBCONTRACTOR will abide by the Safety Program implemented by Portrait Construction of Florida attached as EXHIBIT "A".

5)      **SUPERVISON.** SUBCONTRACTOR is required to designate a competent supervisor to oversee all SUBCONTRACTORs work for the duration of the project. SUBCONTRACTOR must submit name and qualification of SUBCONTRACTOR's English speaking supervisor to Portrait Construction of Florida's project superintendent for acceptance. CONTRACTOR's Superintendent will schedule the different trades, supervise all construction, and with the concurrence of CONTRACTOR's Project Manager, approve monthly draws. His opinion that the job's progress for SUBCONTRACTOR's phase of the work is on schedule is a condition precedent to CONTRACTOR's obligation to make progress payments to SUBCONTRACTOR. **SUBCONTRACTOR'S Supervisor is responsible for verifying all of his "Scope of Work" is properly performed, shall complete a thorough inspection of the work and determine any and all repairs, rework, punchlist & verify the remediation is complete. If at any point during construction, the CONTRACTOR'S Superintendent determines that the SUBCONTRACTOR'S Supervisor is not completing his work as outlined in the above, he may request in writing that the SUBCONTRACTOR enforce the requirements of the Supervisor or replace him.**

6)      **SCHEDULE.** Time is of the essence as to SUBCONTRACTOR's obligations under this Agreement. All SUBCONTRACTOR's Work shall commence and proceed as scheduled by the CONTRACTOR. All SUBCONTRACTOR's Work shall be of the highest quality, and in compliance with all governing laws, ordinances, codes, regulations and requirements. The CONTRACTOR shall prepare the schedule for performance of CONTRACTOR's Work (HEREINAFTER THE "Progress Schedule") and shall revise and update such schedule, as necessary, as CONTRACTOR's work progresses. Each revision of the Progress Schedule, upon issuance to this SUBCONTRACTOR, shall supersede previous schedules and shall become part of this Agreement. SUBCONTRACTOR shall provide CONTRACTOR with any scheduling information proposed by SUBCONTRACTOR for Subcontract Work and submit any additional information or updates as requested by CONTRACTOR. SUBCONTRACTOR shall be bound by the Progress Schedule. Material procurement, shop fabrication and delivery must be coordinated by SUBCONTRACTOR, to ensure that the work is started and completed as required by the Progress Schedule.

The Subcontract price includes all overtime as required including Saturdays, Sundays, and holidays in order to maintain the Progress Schedule. Failure by this SUBCONTRACTOR to meet all obligations necessary to maintain the Progress Schedule dates will result in SUBCONTRACTOR being assessed appropriate damages and losses incurred by the CONTRACTOR. The CONTRACTOR shall have the rights to (1) expand, update and revise the Progress Schedule as necessary to correspond to project conditions and changes in order to ensure the overall completion date, and (2) to determine and, if necessary, change the time, order and priority in which various portions of Subcontract Work shall be performed.



Initial _____   Initial _____        **Alterations to this Agreement are Prohibited**        Page 24 of 37
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

SUBCONTRACTOR accepts the risk of delays and acceleration caused by the rate of progress of the Work changing as directed by CONTRACTOR. The SUBCONTRACTOR acknowledges that the CONTRACTOR has made no warranties to the SUBCONTRACTOR, express or implied, that the SUBCONTRACTOR will be able to follow normal, orderly sequence in the performance of SUBCONTRACTOR's Work or that there will be no delays in, or interference with, the SUBCONTRACTOR's Work. The SUBCONTRACTOR shall be prepared to do its Work out of sequence in accordance with the requirements of the Project, when and if required by CONTRACTOR. The Contract Sum includes all overtime, increase in crew size, etc. as required, including Saturdays, Sundays, and Holidays, in order for the SUBCONTRACTOR to maintain its Work item time duration schedule.

**LIMITATION OF REMEDIES – NO DAMAGES FOR DELAY. The SUBCONTRACTOR's exclusive remedy for delays in the performance of the contract caused by events beyond its control, including delays claimed to be caused by the CONTRACTOR, Owner, Architect, or Engineer, or attributable to the CONTRACTOR, Owner, Architect, or Engineer and including claims based on breach of contract or negligence, shall be an extension of its contract time, and under no circumstances will SUBCONTRACTOR be entitled to any monetary claim or compensation.** Any claims for additional time by the SUBCONTRACTOR for delay must be submitted to the CONTRACTOR within the time and in the manner in which the CONTRACTOR must submit such claims to the Owner, and that failure to comply with the conditions for giving notice and submitting claims shall result in the waiver of such claims.

SUBCONTRACTOR is to perform work ONLY during specified authorized working hours as authorized in writing by the CONTRACTOR. Under no circumstances is SUBCONTRACTOR to perform ANY work or otherwise have any work crews present on the jobsite without the CONTRACTOR present. SUBCONTRACTOR is solely responsible for full compliance with this important Contract requirement.

SUBCONTRACTOR agrees to complete work segments within the performance time durations as listed below and overall Progress Schedule. SUBCONTRACTOR specifically acknowledges and agrees to these duration times including completion of all punch list requirements for its work – as necessary to achieve final acceptance of its work by the CONTRACTOR and Owner and includes in the Subcontract Price all necessary costs required to achieve completion within the listed times. Duration times are all in calendar days and include sufficient time as required to receive inspection approvals from all authorities having jurisdiction.

7)    **CHANGE ORDERS.** When CONTRACTOR orders in writing, SUBCONTRACTOR, without nullifying this Agreement, shall make any and all changes in Subcontract Work. No adjustments shall be made for any changes performed by SUBCONTRACTOR that have not been ordered by CONTRACTOR. **The Subcontract Price may only be modified by written change order signed by both parties. Authorization for any changed or extra work or costs whatsoever may be only made in writing signed by CONTRACTOR's Project Manager or Executive Officer. Contractor's Superintendent is not authorized to make any changes or issue any extra cost approvals to SUBCONTRACTOR either verbal or in writing. Any changes or extra costs attempted to be recovered by SUBCONTRACTOR based on any approvals or directives by CONTRACTOR's Superintendent or anyone else that is not CONTRACTOR's Project Manager or Executive Officer will not be recognized. The only CONTRACTOR representative authorized to approve additional scope and costs is the Project Manager or Executive Officer.** A Change Order is a written instrument prepared by CONTRACTOR and signed by SUBCONTRACTOR stating their agreement upon the change in Subcontract Work. In the event of a change in the work, the SUBCONTRACTOR's claim for adjustments in the contract sum are limited exclusively to its actual costs for such changes plus no more than 10% for overhead and 5% profit.

8)    **CHANGE ORDER ADJUSTMENTS.** In consideration for any adjustments in the time and the Subcontract Sum, SUBCONTRACTOR hereby releases CONTRACTOR and Owner from all claims, demands or causes of action arising out of the transactions, events and occurrences giving rise to the Change Order, including without limitation all direct and indirect costs and all schedule impacts.

9)    **PAYMENT.**

9.1    **SCHEDULE OF VALUES.** The schedule of values (SOV) is a condition of payment, per SOV detailed in Exhibit "A". SUBCONTRACTOR to provider progress invoicing per Exhibit "A"; and as provided by CONTRACTOR they may use the project Billing Invoice Tool in Procore.



Initial _____    Initial _____        **Alterations to this Agreement are Prohibited**        Page 25 of 37
Sub                Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

**9.2    PROGRESS AND FINAL PAYMENTS.** Progress payments due to SUBCONTRACTOR, less retainage as specified herein, shall be made to SUBCONTRACTOR for Subcontract Work satisfactorily performed no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for SUBCONTRACTOR's Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for SUBCONTRACTOR's Work. These payments are not due if there is reason for withholding as specified herein and/or SUBCONTRACTOR has not satisfied all conditions precedent to payment specified herein.

**9.2.1    PROGRESS PAYMENTS.** Progress Payments due under the Subcontract will not be released until all of the following conditions have been met:

.1    Subcontract Agreement has been signed by SUBCONTRACTOR without modification and returned to CONTRACTOR;

.2    Proper Insurance Certificates have been received;

.3    CONTRACTOR's approval of SUBCONTRACTOR's Schedule of Values;

.4    SUBCONTRACTOR has presented to CONTRACTOR, for its approval, an Application for Payment and other documents required by Paragraph 10;

.5    Progress payments, less retainage, shall be made to SUBCONTRACTOR, for Subcontract Work satisfactorily performed, no later than ten (10) days after receipt by CONTRACTOR of payment from Owner for Subcontract Work. Final payment of the balance due shall be made to SUBCONTRACTOR no later than ten (10) days after receipt by CONTRACTOR of final payment from Owner for Subcontract Work. These payments are subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or CONTRACTOR.

.6    CONTRACTOR's receipt in current funds from the Owner for the progress payments due the SUBCONTRACTOR. It shall be an express condition precedent to any obligation or liability of the CONTRACTOR to the SUBCONTRACTOR for any payment to the SUBCONTRACTOR that the CONTRACTOR is in receipt of payment in current funds from the Owner for the SUBCONTRACTOR's work. If the Owner has not paid the CONTRACTOR for any reason whatsoever, including the Owner's financial inability to pay or other reason not related to this SUBCONTRACTOR, the SUBCONTRACTOR agrees that the CONTRACTOR shall not be liable for payment and not be indebted to the SUBCONTRACTOR. The SUBCONTRACTOR assumes the credit risk of the Owner and agrees that it is relying on the Owner's credit and not that of the CONTRACTOR. The SUBCONTRACTOR further agrees that, as a portion of the consideration for the award of this Subcontract, he agrees to assume, and hereby assumes, the same risk as does the CONTRACTOR for non-payment by the Owner and accordingly, in the event that the Owner fails to pay the CONTRACTOR progress payments, interim payment, claims for increased work, claims for changed work, final payments, or any other form of payment otherwise due to the CONTRACTOR, the SUBCONTRACTOR shall be absolutely barred, estopped, and precluded from instituting any suit, arbitration or other claim against the CONTRACTOR or the Surety until and unless the Owner first pays the CONTRACTOR. In other words, payment by the Owner to the CONTRACTOR of sums necessary to pay the SUBCONTRACTOR is a condition precedent to CONTRACTOR's obligation to pay SUBCONTRACTOR and to the bringing of any lawsuit, arbitration or other claims by the SUBCONTRACTOR against the CONTRACTOR. If CONTRACTOR has provided payment or performance bonds or a combination payment and performance bond, the obligation of CONTRACTOR and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of CONTRACTOR's prior receipt of payment from the Owner for the progress payments due the SUBCONTRACTOR. This provision is incorporated by reference into any such bond or bonds.

.7    Any supplemental work provided b others for this scope of work has been paid in full.

**9.2.2    FINAL PAYMENT.** All conditions precedent of this Subcontract which apply to progress payments shall also apply to final payment. As additional express conditions precedent to SUBCONTRACTOR's entitlement to final payment, the SUBCONTRACTOR shall have fully performed all its Work in accordance with the Contract Documents, the Architect shall have issued a certificate for payment covering the SUBCONTRACTOR's completed Work, any certificates of occupation or certificates of completion required to be issued by any authority having jurisdiction shall have been issued, the CONTRACTOR shall have received payment from the Owner, the CONTRACTOR shall have received consent of SUBCONTRACTOR's surety to final payment (if any), and the SUBCONTRACTOR shall provide to the CONTRACTOR its Affidavit and Final Release of Lien/Claim, all final lien waivers from its sub-subcontractors and vendors, warranties, special warranties, all required executed warranty and guaranty documents, guarantees, parts lists, all maintenance and operations manuals, all close-out documents described in the Project Manual (Specification Book), Bid Package Book, and Addenda, two complete sets of "As-Built" prints acceptable to the CONTRACTOR (one hard copy and one electronic copy), and other Project close-out documents required by the Contract Documents. Should CONTRACTOR's close-out of



Initial _____  Initial _____    **Alterations to this Agreement are Prohibited**    Page 26 of 37
Sub              Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

the entire Project and receipt of final payment from Owner be delayed as a result of SUBCONTRACTOR's delay or failure to submit all such Project close-out documents relating to SUBCONTRACTOR's Work, SUBCONTRACTOR will be responsible for any costs and expenses and damages sustained by CONTRACTOR as a result of such delay or failure. Further, SUBCONTRACTOR's compliance with all other provisions of the Contract Documents is a condition precedent to SUBCONTRACTOR's right to final payment.

**9.3      STORED MATERIALS.** Payments for stored materials will only be made subject to the pre-approval, restrictions and requirements of Owner and CONTRACTOR. Payments will be made, less retainage and only to extent of monies received by CONTRACTOR from Owner, for the stored items under the Owner – CONTRACTOR Agreement. Payments to SUBCONTRACTOR will be made no sooner than ten days after the date payment for the stored materials is received by CONTRACTOR from Owner. In no case, will stored materials be paid for items other than those necessary to be on site to guarantee the progress of the Project and as specifically pre-approved by CONTRACTOR. SUBCONTRACTOR includes protection of all stored materials and safeguards necessary to insure adequate protection to the satisfaction of the CONTRACTOR and OWNER. SUBCONTRACTOR must provide a proper and secure storage facility for all stored material at its own expense. SUBCONTRACTOR must also provide satisfactory insurance coverage as required in Exhibit 'E' attached hereto and made part of this Subcontract. CONTRACTOR will not reimburse SUBCONTRACTOR for materials either misplaced, damaged, or stolen.

**9.4      PAYMENTS WITHHELD.** CONTRACTOR shall have the right to withhold and to reduce any payments to SUBCONTRACTOR for (a) any indebtedness owed by SUBCONTRACTOR to CONTRACTOR, (b) defective work not remedied or defective materials not removed and replaced, (c) third-party claims filed or reasonable evidence indicating probable filing of such claims, (d) claimed failure of the SUBCONTRACTOR to make payments to its subcontractors, suppliers, or laborers, (e) reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract Price, (f) damage to CONTRACTOR or another subcontractor, (g) reasonable indication that the Work will not be completed within the Contract Time/CONTRACTOR's Progress Schedule, (h) unsatisfactory or untimely prosecution of the Work by the SUBCONTRACTOR, or (i) any failure by the SUBCONTRACTOR to comply with the Contract Documents. Items (a) – (i) shall be grounds for default under this Agreement as well. Independent of any other right hereunder, CONTRACTOR may deduct from any payments due or to become due SUBCONTRACTOR amounts equal to any claims asserted against SUBCONTRACTOR in connection with SUBCONTRACTOR's Work on this Project or on any other Project including, but not limited to, lien claims, bond claims, unpaid bills, defective work, incomplete work, and damage to the work of CONTRACTOR. When the basis for disapproval or withholding has been remedied, the SUBCONTRACTOR shall be paid the amounts withheld.

**9.5      JOINT CHECK PAYMENTS.** CONTRACTOR reserves the right to pay any obligations of SUBCONTRACTOR arising on this Project by checks made payable jointly or directly to SUBCONTRACTOR and/or its suppliers or its SUBCONTRACTORs, with any amounts so paid reducing the balance due SUBCONTRACTOR. Joint or direct payments made by CONTRACTOR do not relieve SUBCONTRACTOR of any obligation under this Subcontract.

**9.6      WAIVER OF CLAIMS.** Final payment shall constitute a waiver of all claims by SUBCONTRACTOR relating to Subcontract Work, but shall in no way relieve SUBCONTRACTOR of any liability to CONTRACTOR, including liability for warranties, or for nonconforming or defective work discovered after final payment.

## 10)    INDEMNITY.

**10.1**      The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, Architect, Engineer, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work, or any breach of or failure to comply with any of the provisions of this SUBCONTRACT or the Contract Documents by SUBCONTRACTOR.

**10.2**      The SUBCONTRACTOR shall fully protect, indemnify and defend CONTRACTOR, Owner, and all of their agents, officers, and employees, and hold them harmless from and against any and all claims, demands, liens, damages, causes of action, liabilities of any and every nature whatsoever, losses and expenses, including, but not limited to, attorneys' fees and court costs, arising in any manner, directly or indirectly, out of or in connection with, or in the course of, or incidental to



Initial _____      Initial _____      **Alterations to this Agreement are Prohibited**      Page 27 of 37
Sub                    Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

any of SUBCONTRACTOR's Work and obligations as provided in the Contract Documents, including any extra work (regardless of cause or of any concurrent or contributing fault or negligence of CONTRACTOR, Owner, or any of their agents, officers, or employees), or any breach of or failure to comply with any of the provisions of this Subcontract or the Contract Documents by SUBCONTRACTOR. The SUBCONTRACTOR's indemnification obligation to CONTRACTOR, Owner, and all of their agents, officers, and employees (the "Indemnitees"), for occurrences caused by the sole, contributory, or concurrent negligence of the Indemnitees shall be limited, on a per occurrence basis, to the greater of $1,000,000.00 (as prescribed by Florida Statute § 725.06), the price of this Subcontract, or the limits of liability of the insurance policies provided pursuant to this Agreement, which SUBCONTRACTOR acknowledges and agrees bears a reasonable commercial relationship to this Subcontract.

10.3    SUBCONTRACTOR and its surety, if any, hereby agrees to defend, indemnify, and hold harmless CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives from any loss or damage and to reimburse CONTRACTOR, CONTRACTOR's surety, and/or Owner, their agents, employees, elected officers and representatives for any and all claims, costs, and expenses, including but not limited to attorneys' fees, legal fees, expert witness fees, and court costs that CONTRACTOR, CONTRACTOR's surety and/or Owner may incur because of:

10.3.1  Claims and liens for labor performed or materials used or furnished through or under SUBCONTRACTOR for the Project;

10.3.2  any personal injury, loss, damage or death to any person or persons and any property damage arising out of the performance or nonperformance of Work required in this Subcontract, including, without limitation, any personal injury or loss, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, SUBCONTRACTOR's indemnity hereunder shall not arise if such injury, loss, damage or death results from the gross negligence or willful, wanton or intentional misconduct of a party indemnified hereunder;

10.3.3  SUBCONTRACTOR's failure or the failure of any of its employees to comply with any law, ordinance, rule, regulation or requirement, including, but not limited to, any Occupational Safety and Health Administration violations and any penalties, including enhancements, resulting in whole or in part by SUBCONTRACTOR's acts or omissions.

10.4    CONTRACTOR, in its sole discretion, may defend any or all of the indemnified claims or tender to SUBCONTRACTOR the defense of any or all of the indemnified claims. Upon such tender by CONTRACTOR to SUBCONTRACTOR, SUBCONTRACTOR shall be obligated to assume the defense of CONTRACTOR in the indemnified claims, including the settlement negotiations, and shall pay and satisfy any and all settlements, judgments, sanctions, awards, or expenses, including attorneys' fees, resulting from or arising out of the indemnified claims without reimbursement from CONTRACTOR.

10.5    If CONTRACTOR tenders the defense of an indemnified claim to SUBCONTRACTOR and SUBCONTRACTOR fails or neglects to assume that defense, CONTRACTOR may compromise or settle or defend any such action, and SUBCONTRACTOR shall be bound and obligated to reimburse CONTRACTOR for the amount expended by it in settling, compromising, or defending any such claim, or in the amount expended by CONTRACTOR in paying any settlement or judgment rendered therein, together with all reasonable attorneys' fees and expenses of litigation incurred by CONTRACTOR by reason of its defense, settlement, or compromise of such indemnified claims.

10.6    Neither final payment by CONTRACTOR nor acceptance of the Work performed by SUBCONTRACTOR shall constitute a waiver of the foregoing indemnities, and notwithstanding any other provision contained in this Subcontract, the provisions of this paragraph shall survive the termination of this Subcontract.

10.7    In any claims by any employee of the SUBCONTRACTOR, the SUBCONTRACTOR's sub-contractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, against any persons or entities indemnified hereunder the indemnification obligation shall not be limited as to the amount or type of damages, compensation, or benefits payable by or for the SUBCONTRACTOR or the SUBCONTRACTOR's sub-contractors under Workers' Compensation acts, disability benefit acts or other employee benefit acts.

## 11)  CORRECTION OF WORK, DEFAULT, AND TERMINATION.



Initial Sub    Initial Contractor    **Alterations to this Agreement are Prohibited**    Page 28 of 37

## Standard Short Form Agreement Between Contractor and Subcontractor

**11.1    CORRECTION OF WORK.** SUBCONTRACTOR shall promptly correct all of SUBCONTRACTOR's Work rejected by CONTRACTOR, Architect or Owner as defective or failing to conform to the Contract Documents, whether observed before or after Substantial Completion. SUBCONTRACTOR shall bear all costs of correcting rejected work, including compensation for Architect's or CONTRACTOR's additional services, if required.

**11.2    FAILURE OF PERFORMANCE.** Should SUBCONTRACTOR fail to satisfy contractual deficiencies or to commence and continue satisfactory correction of any default with diligence or promptness within one (1) working day from receipt of CONTRACTOR's written notice, then CONTRACTOR, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct deficiencies and charge the cost thereof to SUBCONTRACTOR, who shall be liable for such payment, including reasonable overhead, profit and attorneys' fees. In the event of an emergency affecting safety of persons or property, CONTRACTOR may proceed as above without notice.

**11.3    TERMINATION BY OWNER.** Should Owner terminate its prime agreement with the CONTRACTOR or any part which includes SUBCONTRACTOR's Work, CONTRACTOR shall notify SUBCONTRACTOR in writing within three (3) days of termination and, upon written notification, this Agreement shall be terminated and SUBCONTRACTOR shall immediately stop Subcontract Work, follow all of CONTRACTOR's instructions, and mitigate all costs. In the event of Owner termination, CONTRACTOR liability to SUBCONTRACTOR shall be limited to the extent of CONTRACTOR recovery on SUBCONTRACTOR's behalf under the prime agreement.

**11.4    TERMINATION BY CONTRACTOR.** If SUBCONTRACTOR fails to commence and satisfactorily continue correction of a default within one (1) working day after written notification from CONTRACTOR, then CONTRACTOR may issue a second written notification, to SUBCONTRACTOR and its surety, if any. Such notice shall state that if SUBCONTRACTOR fails to commence and continue correction of a default within five (5) days of the written notification, the Agreement will be automatically terminated. CONTRACTOR may furnish those materials, equipment and/or employ such workers or replacement subcontractor(s) as CONTRACTOR deems necessary to maintain the orderly progress of CONTRACTOR's work. All costs incurred by CONTRACTOR in performing Subcontract Work, including damages, extended general conditions, liquidated damages, reasonable overhead, profit, and attorneys' fees, costs and expenses, shall be deducted from any monies due or to become due SUBCONTRACTOR. SUBCONTRACTOR shall be liable for payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount. At SUBCONTRACTOR's request, CONTRACTOR shall provide a detailed accounting of the costs to finish Subcontract Work.

## 12)    CLAIMS AND DISPUTES.

**12.1    CLAIMS RELATING TO CONTRACTOR.** SUBCONTRACTOR shall give CONTRACTOR written notice of all claims within seven (7) days of the existence of facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed absolutely waived by SUBCONTRACTOR. All unresolved claims, disputes and other matters in question between CONTRACTOR and SUBCONTRACTOR shall be resolved in the manner provided in this Agreement.

**12.2    LIQUIDATED DAMAGES.** Inasmuch as SUBCONTRACTOR's failure to complete its Work within the timeframe specified herein will result in substantial injury to the Contractor and whereas damages arising from such failure cannot be calculated with any degree of certainty, it is hereby agreed that if such Subcontract Work is not substantially completed as herein defined within the time fixed herein or within such further time, if any, as shall be allowed for such performance or completion in accordance with the provisions of this Subcontract, the SUBCONTRACTOR shall pay to the Contractor, as liquidated damages for such delay and not as a penalty, One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) per day for each and every calendar day that the SUBCONTRACTOR fails to complete its Work, including all punchlist work ("CONTRACTOR's Liquidated Damages"). SUBCONTRACTOR's obligation for such liquidated damages is irrespective of, and is in no way dependent upon, whether Owner assesses liquidated damages against the Contractor or whether it is impossible to determine the degree of harm caused by SUBCONTRACTOR's delay. SUBCONTRACTOR acknowledges that its failure to timely complete its Subcontract Work will cause financial harm to Contractor irrespective of whether or not Owner assesses any liquidated damages against Contractor. This provision for liquidated damages shall in no manner affect the Contractor's right to terminate this Subcontract as provided for elsewhere in this Subcontract and other Contract Documents, and Contractor's exercise of the right to terminate shall not release the SUBCONTRACTOR from its obligation to pay said liquidated damages.



Initial _____ Sub     Initial _____ Contractor          **Alterations to this Agreement are Prohibited**          Page 29 of 37

## Standard Short Form Agreement Between Contractor and Subcontractor

If the CONTRACTOR's agreement with the Owner provides for liquidated or other damages for delay, and such damages are assessed, CONTRACTOR may assess a share of the damages against SUBCONTRACTOR in proportion to SUBCONTRACTOR's share of responsibility for the delay. This apportionment shall be in addition to the CONTRACTOR's Liquidated Damages.

**12.3    WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, SUBCONTRACTOR shall continue Subcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. If SUBCONTRACTOR continues to perform, CONTRACTOR shall continue to make payments of amounts undisputedly owed to SUBCONTRACTOR in accordance with this Agreement.

**12.4    MULTIPARTY PROCEEDING.** The parties agree, to the extent permitted by the prime agreement, that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between CONTRACTOR and SUBCONTRACTOR involve in whole or in part disputes between CONTRACTOR and Owner, disputes between SUBCONTRACTOR and CONTRACTOR shall be decided by the same tribunal and in the same forum as disputes between CONTRACTOR and Owner, and SUBCONTRACTOR agrees to consolidation and joinder of the same.

**12.5    STAY OF PROCEEDINGS.** In the event that provisions for resolution of disputes between CONTRACTOR and Owner contained in the prime agreement do not permit consolidation or joinder with disputes of third parties, such as SUBCONTRACTOR, resolution of disputes between SUBCONTRACTOR and CONTRACTOR involving in whole or in part disputes between CONTRACTOR and Owner shall be stayed pending conclusion of any dispute resolution proceeding between CONTRACTOR and Owner.

**12.6    DIRECT DISCUSSION.** If a dispute arises out of or relates to this Agreement, the parties shall endeavor to settle the dispute through direct discussion.

**12.7    MEDIATION.** Disputes between SUBCONTRACTOR and CONTRACTOR not resolved by direct discussion shall be submitted to mediation pursuant to the Construction Industry Mediation Rules of the American Arbitration Association. The parties shall select the mediator within fifteen (15) days of the request for mediation. Engaging in mediation is a condition precedent to any form of binding dispute resolution.

**12.8    OTHER DISPUTE PROCESSES.** If neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.

**ARBITRATION.** At the sole discretion of the CONTRACTOR or its Surety, all claims, counterclaims, disputes, and other matters in question between the CONTRACTOR or its Surety and the SUBCONTRACTOR or its Surety (if applicable) arising out of this Agreement or the breach thereof shall be decided by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association then obtaining. CONTRACTOR expressly reserves its right on behalf of CONTRACTOR and its Surety to have any dispute resolved by binding arbitration, including but not limited to those initiated by SUBCONTRACTOR, in which event the parties agree that the litigation will be dismissed and the dispute will proceed in arbitration. If the CONTRACTOR or its Surety elects to submit the claims, counterclaims, disputes, and other matters in question to binding arbitration, it will give the other party notice of its intent, and the parties will proceed in accordance with the Construction Industry Rules of the American Arbitration Association. The award rendered by the arbitrator shall be final, and judgment shall be entered upon it in accordance with applicable Florida law.

**12.9    COST OF DISPUTE RESOLUTION.** The cost of any mediation proceeding shall be shared equally by the parties participating. Additionally, the parties agree to bear their own attorneys' fees and costs for any dispute arising out of this Agreement and/or the Project and knowingly, voluntarily, and intentionally and expressly waive and relinquish any and all statutory or other rights to recover attorney's fees' or costs from CONTRACTOR, its Surety, if any, and Owner for any dispute arising out of this Agreement and/or the Project.

**13)    NO PRESUMPTION AGAINST DRAFTER.** The Parties expressly agree that they freely and voluntarily enter into this Agreement and have had the opportunity to obtain assistance of legal counsel of their choice in reviewing its terms prior to execution. The Parties acknowledge and agree that no rule of construction applies to the disadvantage of a party because that party was responsible for the preparation of this Subcontract or part of it.



Initial _____    Initial _____        **Alterations to this Agreement are Prohibited**        Page 30 of 37
Sub              Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

## 14)   MISCELLANEOUS PROVISIONS.

**14.1**   If required for this Subcontract, pursuant to Executive Order 11-02 signed by the Florida Governor on January 4, 2011 and other applicable law, SUBCONTRACTOR will utilize the E-verify system, established by the U.S. Department of Homeland Security to verify the employment eligibility of its employees and any of its subcontractors assigned to perform work on the Project. This, when required, is a continuing obligation that applies throughout the duration of the Project, and SUBCONTRACTOR acknowledges that any additional personnel, not previously verified, that may be assigned to the Project will be subject to the aforementioned E-verification. Results of the E-verification will be provided to CONTRACTOR and remain in the SUBCONTRACTOR's project records for review by CONTRACTOR and/or Owner as requested. Additionally, SUBCONTRACTOR shall certify to CONTRACTOR by affidavit that the SUBCONTRACTOR has verified through the E-verify system the employment status of each employee assigned to work on the Project. SUBCONTRACTOR shall be responsible for including this provision in all its' subcontracts issued as a result of this Subcontract.

**14.3**   The SUBCONTRACTOR has no power to assign its rights or duties under this Subcontract. The parties expressly acknowledge that in selecting the SUBCONTRACTOR, the CONTRACTOR considered various factors, including but not limited to the SUBCONTRACTOR's reputation, quality of work, and capacity to perform. SUBCONTRACTOR specifically agrees not to assign, sell, or transfer any accounts receivables under this Subcontract to any third-party factoring company or related business. NEITHER THE OWNER NOR THE CONTRACTOR SHALL BE LIABLE TO ANY THIRD PARTIES FOR PAYMENT OF ANY ASSIGNED ACCOUNTS RECEIVABLES.

**14.4**   By acceptance of this Subcontract, SUBCONTRACTOR guarantees its prices contained herein for the duration of the Project, through the date of Final payment by the Owner. The SUBCONTRACTOR expressly agrees that external conditions outside the control of SUBCONTRACTOR, including but not limited to materials shortages and price escalations, have been accounted for in the Contract price and shall not constitute the basis for a time extension or a claim for additional compensation of any type.

**14.5**   This Contract is specifically intended to be for the benefit of the Owner. The Owner may maintain an action for breach of this Subcontract. However, SUBCONTRACTOR is not an intended third-party beneficiary of the Agreement between Owner and CONTRACTOR.

**14.6**   No right or remedy in this Subcontract is intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.

**14.7**   The obligations of the CONTRACTOR and SUBCONTRACTOR under this Subcontract are expressly conditioned upon the CONTRACTOR's successfully entering into a contract with the Owner for the Project. If the Owner shall decline for any reason whatsoever to enter into a contract with the CONTRACTOR for the Project, then this Subcontract shall automatically become null and void and CONTRACTOR and SUBCONTRACTOR shall be discharged from their respective obligations hereunder. Further, in such event, CONTRACTOR shall have no liability of any kind to SUBCONTRACTOR including, without limitation, cancellation charges.

**14.8**   If applicable, the Owner may choose to directly purchase materials as a tax exempted entity as defined by the IRS and the State of Florida, and if this option is available to the Owner and the Owner decides to use this option, the SUBCONTRACTOR will be notified and shall comply with the Owner Direct Purchase program by providing a credit for the material being purchased directly including the sales tax attributable thereto.

**14.9**   The nondiscrimination clauses contained in Section 202 of Executive Order 11246, as amended; Section 402 of the Vietnam Era Veteran's Readjustment amended, relative to equal opportunity for all persons within regard to race, color, religion, sex national origin, handicapped, Vietnam Era or disabled veteran and the implementing rules and regulations prescribed by the Secretary of Labor are incorporated herein.

## 15)   SUBCONTRACTOR'S WAIVER OF JURY TRIAL. The SUBCONTRACTOR and its Surety expressly and voluntarily waive all rights to a jury trial in any claim or dispute arising from the Subcontract, the Project, and/or any associated Bond(s).



Initial _____   Initial _____          **Alterations to this Agreement are Prohibited**          Page 31 of 37
Sub            Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

CONTRACTOR: Portrait Construction of Florida

BY: *Bruce L. Abbey President*

PRINT NAME: Bruce L. Abbey President

PRINT TITLE: President

DATE: 12/1/2021

WITNESS:

SUBCONTRACTOR: KP's Contract Flooring, LLC

BY: *kevin Patrick*

PRINT NAME: Kevin Patrick

PRINT TITLE: Managing Member

DATE: 12/1/2021

WITNESS:

Initial _kP_ Sub

Initial _BLA_ Contractor

**Alterations to this Agreement are Prohibited**

Page 32 of 37

**Standard Short Form Agreement Between Contractor and Subcontractor**

## EXHIBIT A
## SCHEDULE OF VALUES

| # | Cost Code | Description | Type | Amount |
|---|-----------|-------------|------|--------|
| 1 | 09-03013-50 - Ceramic Tile - Units | Ceramic Tile | Subcontract | $519,198.00 |
| 2 | 09-06500-50 - Resilient Flooring - Units | Resilient Flooring | Subcontract | $465,246.00 |
| 3 | 09-06816-50 - Units Bedroom Carpet | Carpet | Subcontract | $291,946.00 |
| | | | Grand Total: | $1,276,390.00 |

Initial _____ Initial _____     **Alterations to this Agreement are Prohibited**     Page 33 of 37
Sub          Contractor

**Standard Short Form Agreement Between Contractor and Subcontractor**

# EXHIBIT B
# INSURANCE REQUIREMENTS

**INSURANCE.** Prior to commencement of its Work, the SUBCONTRACTOR shall furnish to CONTRACTOR policies of insurance and appropriate certificates evidencing that the below described insurance is in force and fully paid. All insurance policies and certificates provided for hereunder shall become a part of this Subcontract and the policies and insurance company issuing same must be acceptable to CONTRACTOR. The SUBCONTRACTOR shall purchase and maintain insurance of the following types of coverage and limits of liability:

A. Commercial General Liability (CGL) with limits of insurance not less than $1,000,000 each occurrence and $2,000,000 annual aggregate.
  i. If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.
  ii. No Residential Exclusion under GL Policy. No Exterior Insulation Finishing System (EIFS) under GL Policy for Subcontractors doing Exterior Walls.
  iii. CGL coverage shall be written on ISO Occurrence Form CG 00 01 1093 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, explosion, collapse and underground (XCU), broad-form property damage and personal injury, products-completed operations, and personal and advertising injury.
  iv. CONTRACTOR, Owner and all other parties required by the CONTRACTOR and/or by the Owner Contract, shall be included as additional insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85 or an endorsement providing equivalent coverage to the additional insureds. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured SUBCONTRACTOR. It shall apply as Primary Insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured.
  v. SUBCONTRACTOR shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least 10 years after completion of the Work.
  vi. Thirty (30) day notice of written cancellation
  vii. Waivers of Subrogation (applicable to property, auto, liability and workers compensation – in favor of Portrait Construction of Florida and the Owner) The CONTRACTOR and SUBCONTRACTOR waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Owner, Architect, Architect's consultants, separate contractors, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

B. Automobile Liability
  i. Business Auto Liability with limits of at least $1,000,000 each accident.
  ii. Business Auto coverage must include coverage for liability arising out of all owned, leased, hired and non-owned automobiles.
  iii. CONTRACTOR, Owner and all other parties required of the CONTRACTOR shall be included as additional insureds on the auto policy.

C. Commercial Umbrella
  i. Umbrella limits must be at least $3,000,000.
  ii. Umbrella coverage must include as insureds all entities that are additional insureds on the GL and Automobile.
  iii. Umbrella coverage for such additional insureds shall apply as primary before any other insurance or self-insurance, including any deductible, maintained by, or provided to the additional insured other than the CGL, Auto Liability and Employers Liability coverages maintained by the Subcontractor.

D. Workers Compensation and Employers Liability
  i. Employers Liability Insurance limits of at least $1,000,000 each accident for bodily injury by accident and $1,000,000 each employee for injury by disease.
  ii. If you lease employees, you must have a minimum premium worker's compensation policy.
  iii. If you lease employees, an alternate employer endorsement for worker's compensation is required.
  iv. If you lease employees, a Leased Employee Affidavit must be filled out. (See Exhibit of Contract)

Portrait Construction of Florida insurance requirements must be met (this includes an installation floater). In the event that materials under your contract are stolen/damaged while on the jobsite, you will be responsible for the replacement of these materials at your expense. If Portrait Construction of Florida and/or the Owner utilizes the builders risk policy for stolen/damaged materials that are under your subcontract, you will be responsible for reimbursing the CONTRACTOR or owner for the policy deductible of $5,000.00.

Initial _____ Initial _____     **Alterations to this Agreement are Prohibited**     Page 34 of 37
Sub            Contractor

## Standard Short Form Agreement Between Contractor and Subcontractor

Certificates of insurance acceptable to the CONTRACTOR shall be filed with the CONTRACTOR prior to commencement of the SUBCONTRACTOR's Work. Attached to each Certificate of Insurance shall be a copy of the Additional Insured Endorsement that is part of the SUBCONTRACTOR's Commercial General Liability, Auto and Umbrella Policies. CONTRACTOR's receipt of SUBCONTRACTOR's proof of insurance as required above at the beginning of the Project, and at any other time that the insurance required by the Contract Documents is required to be in place, is an express condition precedent to Subcontractor's right to commence work and SUBCONTRACTOR's right to payment at any time.

Coverages, written on an occurrence basis, shall be maintained without interruption from date of commencement of the SUBCONTRACTOR's Work until two years after the project completion date.

These certificates and the insurance policies shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the CONTRACTOR. If any of the foregoing insurance coverages are required to remain in force after final payment, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment. If SUBCONTRACTOR receives notice that any of its insurance carriers intend to cancel, non-renew, or materially change any of the policies required to be maintained by the Subcontract for any reason, it must immediately give written notice of the same to CONTRACTOR. Furthermore, if SUBCONTRACTOR cancels, non-renews, or materially changes any of the policies required to be maintained by the Subcontract for any reason, it must give written notice to CONTRACTOR thirty (30) days in advance of such changes becoming effective. SUBCONTRACTOR's failure at any time to have insurance coverage of the types and amounts listed herein is a material breach of contract and a default justifying termination of this Subcontract.

SUBCONTRACTOR waives all rights against CONTRACTOR, Owner and Architect and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by SUBCONTRACTOR's commercial general liability, commercial umbrella liability, business auto liability or worker's compensation and employer's liability insurance maintained per requirements stated above.

It is expressly agreed and understood by and between SUBCONTRACTOR and CONTRACTOR that all insurance, whether issued on a primary or excess basis, afforded the additional insureds shall be primary insurance to any other insurance available to CONTRACTOR and that any other insurance carried by CONTRACTOR shall be excess of all other insurance carried by the SUBCONTRACTOR and shall not contribute with the SUBCONTRACTOR's insurance. SUBCONTRACTOR further agrees to provide endorsements on its insurance policies that shall state the foregoing; however, SUBCONTRACTOR's failure to provide such endorsement shall not affect SUBCONTRACTOR's agreement hereunder.

It is understood and agreed that the insurance coverage and limits required herein shall not limit the extent of SUBCONTRACTOR's responsibilities and liabilities specified within the Contract Documents or by law. Equivalent insurance coverage must be obtained from each Sub-subcontractor and Supplier, if any, before permitting them on the site of the Project. Otherwise, such insurance for Sub-subcontractor and Supplier must be included within SUBCONTRACTOR's insurance policies.

The CONTRACTOR and SUBCONTRACTOR waive all rights against each other and against the Owner, the Architect/Engineer, separate contractors, and all other subcontractors for damages caused by fire or other perils to the extent covered by Builder's Risk or any other property insurance, except such rights as they may have to the proceeds of such insurance.

**Below is a checklist of all Insurance Requirements as stated in the Sub-Subcontract. A Sample COI follows.**
**GENERAL LIABILTIY**
- Liability Limits $1,000,000/$2,000,000
- Per Project Aggregate
- Include Primary Non-Contributory Coverage
- List as Additional Insured and Include in Waiver of Subrogation in favor of: (including Completed Operations) and must include copy of endorsement to the policy.
  - Portrait Construction of Florida
  - Owner
  - Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address – Must include a copy of endorsement to the policy
- Confirmation no Residential exclusion - MUST INCLUDE COPY OF FORMS PAGE FROM POLICY

**AUTOMOBILE**
- Liability Limits $1,000,000
- Portrait Construction of Florida & Owner listed as Additional Insured
- Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address



Initial Sub    Initial Contractor    **Alterations to this Agreement are Prohibited**    Page 35 of 37

## Standard Short Form Agreement Between Contractor and Subcontractor

### WORKERS COMPENSATION

- Limits - $1,000,000/$1,000,000/$1,000,000
- Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address

### UMBRELLA

- Limit of Liability - $3,000,000
- Verify box "OCCUR" and "UMB" boxes are checked
- Portrait Construction of Florida & Owner listed as Additional Insured
- Waiver of Subrogation in favor of Portrait Construction of Florida
- 30 Day Written Notice of Cancellation listing Portrait Construction of Florida and your mailing address

### INSTALLATION FLOATER (If required by CONTRACTOR)

- Special Form-(All Risk)
- Limit listed in amount of initial subcontract

Initial ⟮kp⟯    Initial ⟮BLA⟯
Sub            Contractor

**Alterations to this Agreement are Prohibited**    Page 36 of 37

**Standard Short Form Agreement Between Contractor and Subcontractor**

### ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)

| PRODUCER | THIS CERTIFICATION IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

SAMPLE

| | INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A: SAMPLE | |
| SAMPLE | INSURER B: SAMPLE | |
| 123 Anywhere Street | INSURER C: SAMPLE | |
| Anywhere, Anystate 00000-0000 | INSURER D: SAMPLE | |
| | INSURER E: SAMPLE | |
| | INSURER F: SAMPLE | |

**COVERAGES**

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | X | GENERAL LIABILITY X COMMERCIAL GENERAL LIABILITY  CLAIMS MADE X OCCUR | POLICY # | 00/00/0000 | 00/00/0000 | EACH OCCURRENCE | 1,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | 50,000 |
| | X | Includes Residential | | | | MED EXP (Any one person) | 5,000 |
| | | | | | | PERSONAL & ADV INJURY | 1,000,000 |
| | | | | | | GENERAL AGGREGATE | 2,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY X PRO-JECT LOC | | | | PRODUCTS - COMP/OP AGG | 2,000,000 |
| B | X | AUTOMOBILE LIABILITY X ANY AUTO | POLICY # | 00/00/0000 | 00/00/0000 | COMBINED SINGLE LIMIT (Ea accident) | 1,000,000 |
| | | ALL OWNED AUTOS  SCHEDULED AUTOS | | | | BODILY INJURY (Per person) | |
| | X | HIRED AUTOS | | | | BODILY INJURY (Per accident) | |
| | X | NON-OWNED AUTOS | | | | PROPERTY DAMAGE (Per accident) | |
| | | GARAGE LIABILITY  ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | |
| | | | | | | OTHER THAN EA ACC / AUTO ONLY AGG | |
| C | X | EXCESS/UMBRELLA LIABILITY X OCCUR  CLAIMS MADE | POLICY # | 00/00/0000 | 00/00/0000 | EACH OCCURRENCE | 1,000,000 |
| | | | | | | AGGREGATE | 1,000,000 |
| | X | DEDUCTIBLE X RETENTION $ 0 | | | | | |
| D | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | POLICY # | 00/00/0000 | 00/00/0000 | X WC STATU- TORY LIMITS  OTH- ER | |
| | | | | | | E.L. EACH ACCIDENT | 1,000,000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | 1,000,000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | 1,000,000 |
| E | | OTHER Installation Floater | POLICY # | 00/00/0000 | 00/00/0000 | Limit must be in the amount of materials brought to the jobsite. | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS

Re: Project. Portual Construction of Florida, Inc. Owner, its directors, officers, agents, employees and consultants are named as Additional Insureds for Ongoing & Completed Operations Per CG 2010 1185 or equivalent with regard to Auto Liability. Waiver of Subrogation in favor of additional insureds with regard to General Liability, Auto Liability, Umbrella Liability & Workers Compensation. Products and Completed Operations coverage shall remain in effect two years after the date of completion. All policies must be endorsed to provide 30 days' prior written notice of cancellation, material change or non-renewal and include Primary & Non-Contributory coverage. *Residential coverage included all policies

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Portual Construction of Florida, Inc. 2452 Lake Emma Road, Ste 1040 Lake Mary, FL 32746 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08)

© ACORD CORPORATION 1988

Initial — DS — kp  Sub

Initial — DS — BLA  Contractor

**Alterations to this Agreement are Prohibited**

Page 37 of 37